# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

        Plaintiff,

        v.

SCIENTIFIC GAMES INTERNATIONAL, INC., SCIENTIFIC GAMES HOLDINGS CORPORATION, SCIENTIFIC GAMES FINANCE CORPORATION, and SCIENTIFIC GAMES CORPORATION,

        Defendants.

C.A. No. 04-138-JJF

## DEFENDANTS' INITIAL DISCLOSURES PURSUANT TO FED. R. CIV. P. 26(a)(1)

Pursuant to Fed. R. Civ. P. 26(a)(1), defendants Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Scientific Games") make the following initial disclosures. Scientific Games reserves the right to supplement these initial disclosures pursuant to Fed. R. Civ. P. 26(e).

A.    Identification Of Individuals

The following individuals are likely to have discoverable information that Scientific Games may use to support its defenses:

| Name | Subject |
|---|---|
| Robert L. Burr | The subject matter of the '337 and '624 patents. |
| Laird A. Campbell | The subject matter of the '337 patent. |

| Name | Subject |
|---|---|
| Donald H. Keagle | The subject matter of the '337 patent. |
| Alfred L. Fulton | The subject matter of the '337 patent. |
| Bill Behm<br>Scientific Games International<br>Alpharetta, Georgia | The business of Scientific Games, the PlayCentral Kiosk and earlier devices made and sold by Scientific Games. |
| Tony Bartolone<br>Scientific Games International<br>Alpharetta, Georgia | The PlayCentral Kiosk |
| Vic Collucci<br>Scientific Games International<br>Alpharetta, Georgia | The PlayCentral Kiosk |
| Mark Gilmore<br>Scientific Games International<br>Alpharetta, Georgia | The PlayCentral Kiosk |
| Janine Whiteman<br>Scientific Games International<br>Alpharetta, Georgia | Marketing and sales relating to the PlayCentral Kiosk. |

B.    Identification Of Documents And Tangible Things

Scientific Games identifies the following categories of documents, data compilations, and tangible things currently within the possession, custody or control of Scientific Games that it may use to support its defenses:

1.    Documents relating to the '337 and '624 patents, their prosecution histories, and prior art to those patents.

2.    Documents relating to the PlayCentral Kiosk.

In addition to the foregoing documents, Scientific Games expects to discover relevant documents and tangible things within the possession, custody or control of others, including plaintiff, upon which Scientific Games may rely to support its defenses.

- 2 -

C.     <u>Computation Of Damages</u>

Scientific Games is not currently asserting a claim for damages in this action, other than its attorneys' fees.

D.     <u>Insurance Agreements</u>

Scientific Games is not currently aware of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action or to indemnify or reimburse for payments made to satisfy a judgment.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
   Attorneys for Defendants

August 13, 2004

416509

- 3 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served this 13th day of August 2004 upon the following in the manner indicated:

**BY HAND**

Josy W. Ingersoll, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

**BY FEDERAL EXPRESS**

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY 10004

_____
Rodger D. Smith II

# EXHIBIT D



**KENYON & KENYON**

Intellectual Property Law

Larissa A. Soccoli
Direct 212.908.6449
lsoccoli@kenyon.com

One Broadway
New York, NY 10004-1007
212.425.7200
Fax 212.425.5288

March 24, 2005

<u>**By Facsimile with First Class Mail Confirmation**</u>

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnel
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Re:    *GTECH Corp. v. Scientific Games International, Inc., et al.*
       *(D. Del. C.A. No. 04-138-JJF)*

Dear Rodger:

I write regarding deficiencies in Scientific Games' responses to GTECH's first set of interrogatories and first set of document requests. I also write to confirm representations and agreements that were made in your telephone conference with Tom Meloro on Friday, March 11, 2004.

Interrogatory Responses

General Objection No. 3:

We disagree that the definition is overly broad. As you know, the named defendants have an obligation to search for and produce responsive discovery within their possession, custody and control. The entities listed in this definition are controlled or related entities which we believe may possess responsive documents. For example, our preliminary review of the documents Scientific Games has produced thus far indicates that both Autotote (also called Scientific Games Racing) and IGT Online Entertainment Systems (also called OES) have been involved in the development and deployment of PlayCentral Kiosk.

Accordingly, please withdraw the objection and confirm that discovery has been provided, or will be provided immediately, for all entities under the named defendants' control that are involved in the development, sale, and deployment of lottery ticket vending machines such as the PlayCentral Kiosk including those listed in our definition.

Rodger D. Smith, Esq.
March 24, 2005
Page 2



General Objection No. 7:

To the extent that Scientific Games is relying on a third-party confidentiality agreement to avoid answering any of the interrogatories, please identify the third party, provide a copy of the agreement, and identify the interrogatory(ies) which are at issue. If no documents have been withheld on this basis, please so confirm.

Interrogatory No. 1:

Scientific Games' attempt to rely on Rule 33(d) in response to this interrogatory is improper. Rule 33(d) may only be used where the burden of deriving the answer from documents is the same for both parties. Scientific Games' personnel are no doubt intimately familiar with their own various products and the designations and names they use for their own product models. Moreover, to the extent Scientific Games is relying on Rule 33(d), Scientific Games is obligated to identify the records relied on for the answer with specificity, which you have not done. Finally, Scientific Games has also failed to identify the persons most knowledgeable about each type and model of PlayCentral Kiosk. Please promptly supplement this response to rectify these deficiencies.

Interrogatory No. 2:

Scientific Games' allegation that GTECH has not provided meaningful infringement contentions is without merit, as GTECH has identified asserted claims, a product against which that claim is asserted, and evidence showing where each element of the asserted claims are found in the accused product. Scientific Games has also failed to identify the persons most knowledgeable about Scientific Games non-infringement positions. Please promptly supplement this response.

Interrogatory No. 3:

Scientific Games' attempt to evade its obligation to answer this interrogatory by linking it to GTECH's responses to Scientific Games' interrogatories is improper. Scientific Games' claim that GTECH has not provided meaningful infringement contentions is without merit, as GTECH has identified asserted claims, a product against which that claim is asserted, and evidence showing where each element of the asserted claims are found in the accused product. Moreover, Scientific Games bears the burden of showing there are non-infringing substitutes or acceptable non-infringing alternatives for the accused PlayCentral Kiosk product. Please withdraw the objection and promptly supplement this response.

Interrogatory No. 4:

By this date, "investigating the circumstances" should have been completed. The answer provided is not responsive and not a proper objection. Please promptly supplement this response.

Rodger D. Smith, Esq.
March 24, 2005
Page 3



Interrogatory No. 5:

In the March 11th telephone conference, you agreed to provide a response to this interrogatory by March 31, 2004.

Interrogatory No. 6:

Scientific Games' attempt to avoid answering this interrogatory on the basis of an (incorrect) allegation that GTECH has failed to provide information is improper. Please withdraw the objection and promptly provide a complete response. Moreover, Scientific Games has failed to identify any evidence or person with knowledge relating to its response. Please do so promptly.

Interrogatory No. 7:

Scientific Games' attempt to avoid answering this interrogatory on the basis of an allegation that GTECH has failed to provide "its proposed constructions of the asserted claims" is improper. Further, a briefing schedule regarding claim construction is set forth in the Scheduling Order. Please withdraw the objection and promptly provide a complete response.

Further, Scientific Games' response identified a Scientific Games "Player Activated Terminal". However, Scientific Games fails to identify any persons with knowledge or any documents or facts whatsoever related to the architecture of this device. Scientific Games also fails to explain how this device allegedly renders the patents-in-suit invalid, nor does it identify with any particularity the facts and circumstances regarding the devices alleged sale or offer for sale. Please promptly supplement this response to provide this information.

Scientific Games' response also indicates that the claims of the patents-in-suit are "invalid under 35 U.S.C. § 112," but provides no further facts or response in support of this allegation. Please promptly supplement this response.

For each of the references cited, please identify the features in the references that you believe teach or suggest each element of the claims of the patents-in-suit. Where you contend a combination of references renders a claim obvious, please identify the proposed combination, identify the motivation for making the combination, and the source of that motivation.

Interrogatory No. 8:

Again, it is improper for Scientific Games to link its obligation to respond to this interrogatory to GTECH's responses to Scientific Games' interrogatories or any (incorrectly) perceived deficiency therein. Please withdraw the objection and promptly provide a complete response. Moreover, the field of the invention and level of ordinary skill in the art of factors in invalidity issues, on which Scientific Games bears the burden of proof, and of coming forward with evidence.

Rodger D. Smith, Esq.
March 24, 2005
Page 4



Interrogatory No. 10:

Scientific Games' "relevancy" objection to this interrogatory is not proper. To the extent agreements, contracts, and communications between Scientific Games and Mr. Nolan Bushnell or UWink concern TVMs, On-Point, Interlott, or the Patents-in-Suit, they are highly relevant and within the scope of discovery and must be produced. If Scientific Games had communications with Mr. Bushnell or UWink concerning the Patents-in-Suit or PlayCentral Kiosk, we are certainly entitled to know about those communications as any commentary by Scientific Games on the patent-in-suit is relevant. Similarly, communications concerning On-Point and Interlott, which produced numerous products covered by the patent-in-suit and about which Mr. Bushnell was aware, are likely relevant to, e.g., GTECH's willfulness claim and Scientific Games' knowledge of the patents-in-suit. Communications concerning TVMs are likely relevant to how Scientific Games characterizes the architecture and features of its own TVM products that have functions or components similar to PlayCentral Kiosk. Please supplement this response promptly.

### *Document Request Responses*

General Objection No. 1.

As discussed above in the interrogatory section, we disagree that the definition of Scientific Games is overly broad. Please confirm that your search for documents has included the full scope of Scientific Games entities defined in our definition, and in particular that the Autotote and Online Entertainment Systems units, as well as any other entity with any involvement with the PlayCentral Kiosk, have been searched for responsive documents.

General Objection No. 6:

Scientific Games objected to producing documents which include the confidential information of third parties. To the extent that Scientific Games is relying on a third-party confidentiality agreement to avoid producing any documents, please identify the third party or parties, identify the document requests implicated, provide a copy of the agreement, and provide a log of the documents which have been withheld. If no documents have been withheld on this basis, please so confirm.

General Objection No. 7:

Scientific Games made a blanket objection to documents relating to pending patent applications. However, how Scientific Games characterizes its accused products in its own patent applications is highly relevant. To the extent you allege that attorney-client privilege is claimed for any such document, we expect Scientific Games will list it with appropriate specificity on its privilege log. To the extent such documents are not claimed as privileged, we expect those documents will be produced promptly.

Rodger D. Smith, Esq.
March 24, 2005
Page 5



General Objection No. 11 & 12:

It was agreed in the telephone conference to exchange privilege logs on March 30.

Request No. 3:

In the telephone conference, you indicated that *all* documents concerning these patents have been produced, not just the documents concerning their prosecution. This would include all documents concerning their evaluation and licensing or acquisition by Scientific Games. This letter serves to confirm that a production was made of documents concerning licensing, acquisition, and evaluation of these patents, not just their prosecution.

Request No. 9 & 10:

Scientific Games unilaterally and improperly limited its response to a subset of the documents requested. These requests are not limited to the four sub-lettered categories, which are exemplary, not limiting.

That being said, in the spirit of compromise, in the telephone conference, GTECH agreed to limit the request to all documents concerning the burster and/or ticket dispensing mechanisms, all documents concerning the user interface and display, all documents concerning the creation or management of graphics information for the vending machines, and all documents concerning loading or downloading of graphical information the machine. Please confirm that you have searched for and produced all of these documents. Please also confirm that you have produced all software and documentation related to these functions or subsystems.

Request Nos. 11 & 12:

In the telephone conference, GTECH agreed to limit the request to documents concerning testing of the burster and/or ticket dispensing mechanism, documents concerning testing of the user interface and display, and documents concerning testing of the loading or downloading of graphical information to the machine. Please confirm that you have searched for and produced all of these documents.

Request Nos. 19, 25, & 72:

How Scientific Games characterizes the PlayCentral Kiosk and other Scientific Games TVM products in invention disclosures is relevant to infringement issues. How prior art to these applications, including the patents-in-suit, is characterized is similarly relevant. How Scientific Games uses various terms in its patent applications may be relevant to claim construction issues. Please promptly produce all non-privileged documents responsive to this request. We expect Scientific Games will appropriately list any claimed privileged documents on its privilege log.

Rodger D. Smith, Esq.
March 24, 2005
Page 6



Request Nos. 23 & 24:

How Scientific Games characterizes the subsystem or components of its TVM's, and particularly of PlayCentral Kiosk is relevant to infringement. This includes, in particular, any documents dealing with the housing, ticket dispensing mechanisms, ticket separation mechanisms, and/or the user interface.

In the telephone conference, again in the spirit of compromise, GTECH agreed to limit the request to documents concerning testing the burster and/or ticket dispensing mechanisms, documents concerning the user interface and display, and documents concerning creation or management of graphical images for ticket vending machines, and loading or downloading of graphical information to the machine. Please confirm that you have searched for and produced all of these documents.

Request No. 26:

GTECH is entitled to discover information concerning what entities are controlled by the defendants and which may have discoverable information. As such, it is a proper request and should be answered in full, not unilaterally limited to the defendants. This is particularly true in light of your General Objection to the definition of Scientific Games. Please promptly provide all documents sought by this request, as originally set forth, or confirm in writing that you have done so.

Request Nos. 32, 33, 34, 35, 36, 37, 38, 39, 41, & 42:

Scientific Games has unilaterally limited its responses to "the Patents-in-Suit" and deleted "Patents Related to the Patents-in-Suit". This is improper. For example, knowledge of foreign counterparts of the patents-in-suit may be used to infer knowledge of the asserted patents in this case.

During the telephone conference, you indicated no search had been made for responsive documents beyond Scientific Games' limited response. Please produce all responsive documents for these requests.

Request No. 39:

Again, Scientific Games unilaterally limited its response to produce only documents related to the patents in suit. This narrowed reading does not include all documents which are related to the accused products, or to products which have similar components to the accused products. Please produce all responsive documents for these requests.

Request No. 45.

Scientific Games also narrowed its response to this request to only subparts (a), (b), and (c). Please confirm that all documents concerning PlayCentral Kiosk were produced, including

Rodger D. Smith, Esq.
March 24, 2005
Page 7



without limitation, the documents requested in sub-part (d) of the request.

Request No. 48 and 79:

The requested documents may be relevant to Scientific Games' knowledge of the patents in suit, relevant to market definition for damages, and also may be relevant to various secondary considerations of nonobviousness. Please produce the requested documents promptly.

Request No. 53:

Please confirm that, as indicated at the telephone conference, documents responsive to this request were searched for and produced.

Request No. 78:

Scientific Games limited its response to documents concerning "PlayCentral Kiosk." However, documents responsive to this request are relevant to, e.g., derivation of the design of the separator mechanism in the accused product, willfulness issues, such as the knowledge of the patents by the designer of the burster and by Scientific Games, and damages issues, such as the valuations placed on the Menna patents or licenses taken for the Menna patents. Accordingly, please produce all the documents responsive to this request.

Request No. 81:

This request is not a blanket request for information concerning Mr. Bushnell and Uwink, but rather is a specific request limited to TVMs and Scientific Games' TVM products, the Patents-in-Suit, and the owners of the patents-in-suit. The documents called for by this request concern and are relevant to many issues in this case including but not limited to willfulness issues such as knowledge of the patents-in-suit, how Scientific Games and others characterize the accused products and their subsystems, and communications regarding the patents-in-suit.

During the telephone conference, you did not indicate whether responsive documents had been searched for or whether they even existed. To the extent responsive documents exist, please produce them promptly.

Sincerely,

Larissa A. Soccoli / av

# EXHIBIT E



**KENYON & KENYON**

Intellectual Property Law

Larissa A. Soccoli
Direct 212.908.6449
lsoccoli@kenyon.com

One Broadway
New York, NY 10004-1007
212.425.7200
Fax 212.425.5288

April 1, 2005

**By Facsimile**

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnel
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Re:   *GTECH Corp. v. Scientific Games International, Inc., et al.*
      *(D. Del. C.A. No. 04-138-JJF)*

Dear Rodger:

   We have not received a response to my March 24, 2005 letter concerning deficiencies in Scientific Games' document production and responses to GTECH's interrogatories. As the time for discovery in this case is short and depositions will be going forward imminently, please provide us with the responses and requested documents immediately.

   In addition to the deficiencies noted in my March 24th letter, we have noted further significant deficiencies. Certain categories of documents central to the issues in this case are conspicuously absent from Scientific Games' production to date. These include the following:

1. Schematic drawings, design documents, and documentation for each version of the burster mechanism(s) used in the PlayCentral Kiosk. While schematics for the PlayCentral <u>cabinet</u> were produced, the drawings and documentation for the critical part of the PlayCentral, the <u>burster,</u> are absent.

2. Contracts, specifications, designs, etc. exchanged between Scientific Games and/or subcontractors and/or suppliers working on the burster mechanism of the PlayCentral Kiosk. Although some limited e-mail materials supplied showed correspondence with the Danish Company I/F-Com AS, the only documentation provided is a burster firmware interface specification. Other specifications, documentation, mechanical designs, contracts, orders, and non-email correspondence appear to be almost completely absent.

3. Documents detailing the acquisition and/or license of the Menna patents and the bursters previously manufactured by Instant Technologies Inc., as well as any other documents related to these patents or the burster manufactured and sold by Instant Technologies Inc..

Rodger D. Smith, Esq.
April 1, 2005
Page 2



Emails produced suggest that a license or other agreement was entered into; however, no copy of the license or any documents related to it appear to have been produced.

4. Software source code and/or software documentation for the PlayCentral Kiosk, and, in particular, software used to run the machine and operate the user interface, software used to store and display graphic information on the machine, and software used by the machine to download game graphic information, all appear to be completely absent from the production.

5. Software source code and documentation for the systems used to store, manage, and download graphical information to the PlayCentral Kiosk were not produced. Also missing are data or table definitions, documentation, and/or code from the Relational Database used for this purpose.

6. Documents related to Scientific Games' testing of On-Point or Interlott Ticket vending machines were not produced.

7. Documents related to Scientific Games' offers or bids to state lotteries that included On-Point or Interlott Ticket vending machines were also not produced.

Please provide the above documentation immediately.

Sincerely,

Larissa A. Soccoli

# EXHIBIT F



**KENYON & KENYON**

Intellectual Property Law

Larissa A. Soccoli
Direct 212.908.6449
lsoccoli@kenyon.com

One Broadway
New York, NY 10004-1007
212.425.7200
Fax 212.425.5288

April 12, 2005

**By Facsimile**

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnel
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Re:     *GTECH Corp. v. Scientific Games International, Inc., et al.*
        *(D. Del. C.A. No. 04-138-JJF)*

Dear Rodger:

We have still not received responses to my letters of March 24 and April 1, and Andrew Reibman's letter of March 16, noting Scientific Games' discovery deficiencies. Given the time that has elapsed since these requests and that time is of the essence given the imminent commencement of depositions, if we do not receive the requested documents and information by Friday April 15th, we will take this matter up with the Court.

In addition to the issues raised in my prior letters, we have noted further deficiencies in Scientific Games' document production. Please provide copies of the following specific documents:

1. The PlayCentral direct mail advertisement referenced in SGI074713

2. The 32-page booklet articulating PlayCentral products and features, referenced in SGI074713.

3. The report on, and electronic copies of, screens tested in the July 2003 Georgia focus groups.

4. The powerpoint presentation showing "various color schemes" for the ITVM, referenced in SGI078117.

5. The attachment to a March 24, 2003 email from Thomas Brewer to Lorne Weil et al. entitled "Mark's Vision for a CO Kiosk" (SGI092281).

Rodger D. Smith, Esq.
April 12, 2005
Page 2



6.  The presentation attached to a January 21, 2004 email from Janine Whiteman to Amy Hill (SGI094175).

7.  The focus group report attached to a February 15, 2004 email from Janine Whiteman to Steve Saferin and Bill Behm (SGI095807).

8.  The burster flow charts attached to SGI098890.

9.  The burster specification referenced in an October 18, 2004 email from Tom Herrick to Tony Bartolone (SGI098930).

10. The pictures of push-button terminals saved at Enghome:\Interlot\2004_09_25 and referenced in Tom Herrick's September 25, 2004 email (SGI099075).

11. The on-line proposal submitted to the Colorado Lottery in August 2002, referenced in SGI099606.

12. Notes from the Retail Solutions Meeting held on June 16, 2004, referenced in SGI099259.

13. The document beginning at SGI017787 appears to be a compilation of notes from the May 7, 2004 PlayCentral design review meeting, referenced in the email at SGI075579. Please produce all the notes and agenda from that meeting.

These above items in no way limit the scope of our requests in the March 24 or April 1 letters.

In addition to the above, there were some documents in your production to us that were visually unclear or of which we would like copies produced in their original form. These include:

1.  A color copy of SGI104443.

2.  An electronic version of the screen image depicted in SGI080327.

3.  Clear copies of SGI085122, SGI103360, and SGI104590.

Please produce these documents to us.

Rodger D. Smith, Esq.
April 12, 2005
Page 3



We look forward to receiving the above documents and those requested in our previous letters so that motion practice on these issues can be avoided.

Sincerely,

Larissa A. Soccoli

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GTECH CORPORATION,<br><br>     Plaintiffs,<br><br>   v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC.,<br>SCIENTIFIC GAMES HOLDINGS<br>CORPORATION, SCIENTIFIC GAMES<br>FINANCE CORPORATION, and SCIENTIFIC<br>GAMES CORPORATION,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-138-JJF |

## PLAINTIFF GTECH CORPORATION'S FIRST SET OF
## REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

  Plaintiff, GTECH Corporation, through its undersigned counsel, hereby requests that

Defendants Scientific Games International, Inc., Scientific Games Holdings Corporation,

Scientific Games Finance Corporation, and Scientific Games Corporation produce at the office

of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, Wilmington, DE

19899, the documents and things set forth below for inspection and copying.  These requests are

to be answered within thirty (30) days of service, pursuant to Rules 26 and 34 of the Federal

Rules of Civil Procedure.

  These discovery requests are deemed to be continuing.  With respect to any of the

following document requests as to which Defendants, after responding, discovers or acquires

additional responsive material, Plaintiff requests that Defendants produce such additional

material for inspection and copying, in accordance with Rule 26(c) of the Federal Rules of Civil

Procedure, no more than thirty days after Defendants discover or acquire such additional material.

## DEFINITIONS

A.    "GTECH" means GTECH Corporation, any predecessor in interest of GTECH Corporation, including On-Point Technology Systems, Inc. and Interlott Technologies, or any officer, agent, representative, servant, employee, attorney, or other person acting on its behalf of GTECH Corporation or any predecessor in interest of GTECH Corporation.

B.    "Scientific Games" means Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, or Scientific Games Corporation; or any predecessor-in-interest of Scientific Games International, Inc., Scientific Games Holdings Corporation, or Scientific Games Finance Corporation, including IGT Online Entertainment Systems, Inc. and Autotote Enterprises, Inc.; or any other business, corporation, or other legal entity that is a subsidiary of the previously listed entities; or any other business, corporation, or other legal entity which any of the previously listed entities controls or in which any of the preceding entities has a majority ownership interest; or any officer, agent, representative, servant, employee, attorney, or other person acting on behalf of any of the previously listed entities.

C.    "Interlott" means Interlott Technologies, Inc., or any predecessor-in-interest of Interlott Technologies, Inc., or any officer, agent, representative, servant, employee, attorney, or other person acting on behalf of Interlott Technologies, Inc. or on behalf of any predecessor-in-interest of Interlott Technologies, Inc.

D.    "On-Point" means On-Point Technology System, Inc. or any predecessor-in-interest of On-Point Technology System, Inc., or any officer, agent, representative, servant,

employee, attorney, or other person acting on behalf of On-Point Technology System, Inc. or on behalf of any predecessor-in-interest of On-Point Technology System, Inc.

E.    As used herein, the connectives "and" and "or" shall be construed either disjunctively or conjunctively so as to acquire the broadest possible meaning.

F.    As used herein, the terms "any," "all," or "each" shall be construed as "any, all and each" inclusively.

G.    "Including" means "including without limitation."

H.    The past tense includes the present tense and the present tense includes the past tense. The use of the singular form of any word includes the plural form and vice versa. The masculine form of any word includes the feminine form and vice versa.

I.    As used herein, the term "prosecution of" shall mean prosecution of the indicated patent or patent application in the United States Patent and Trademark Office or any foreign patent office.

J.    As used herein, the term "Patents-in-Suit" means either or both United States Patent Nos. 4,982,337 and 5,222,624.

K.    "Patents Related to the Patents-in-Suit" means any and all domestic patents and patent applications, and any and all foreign patents and patent applications, that claim priority from the Patents-in-Suit or that claim priority from any patent(s) or patent application(s) from which the Patents-in-Suit claim priority.

L.    The "'898 Patent" means United States Patent No. 5,950,898.

M.    "Patents Related to the '898 Patent" means any and all domestic patents and patent applications, and any and all foreign patents and patent applications, that claim priority

3

from the '898 Patent or that claim priority from any patent(s) or patent application(s) from which the '898 Patent claims priority.

     N.    As used herein, the term "document" shall have the broadest meaning permitted by Rule 34(a) of the Federal Rules of Civil Procedure, and shall include, without limitation, any tangible record of intelligence or information, whether handwritten, typed, printed or otherwise visually or orally reproduced, including information stored on electronic, magnetic or optical media or in solid state storage devices, notes, drafts, reports, art-work, films, videotape, drawings, graphs, photographs, agreements, letters, test data, circuit diagrams, software structure charts, software flow charts, software code, data flow diagrams, hardware schematic diagrams, hardware logic diagrams, field maintenance print sets, timing diagrams, technical summaries, product description documents, software description documents, laboratory or engineers' notebooks, project or progress reports, database information, whether for prototypes or production products, and the like that are in the possession, custody or control of Scientific Games, or to which Scientific Games otherwise has access. Any such documents bearing on any sheet (front or back), margins, attachment, enclosure thereof, or any mark that is not a part of the original text or reproduction thereof, is to be considered and produced in its entirety as a separate document.

     O.    As used herein, the term "person" shall refer to any natural person, as well as any other cognizable entity, including, but not limited to, any corporations, proprietorships, partnerships, joint ventures, consortiums, clubs, associations, foundations, governmental agencies or instrumentalities, quasi-public entities, societies, orders and any other specifically identifiable legal entity.

4

P.    As used herein, the term "product" shall include, without limitation, products, devices, machines, apparatus, circuits, components, software, firmware, systems, methods and/or services (including software) that are, or were ever under development or that have been made available, or are intended to be made available, for use by Scientific Games or outside of Scientific Games, or for sale by Scientific Games or on behalf of Scientific Games, whether or not such products are still available for sale or for use.

Q.    "Concerning" shall mean, without limitation, relate(d) to, refer(s) or relate(s) to, embodying, directly or indirectly identifying, revealing, confirming, constituting, containing, referring or relating to, showing, reflecting, evidencing, representing, discussing, describing, involving or mentioning, being connected with or pertaining to in any way, directly or indirectly, or having any logical or factual connection with the subject matter in question.

R.    "Complaint" shall mean the complaint filed by Plaintiff in this action.

S.    "Communication" shall mean, without limitation, any written, electronic or oral communication, including any conversation in person, by telephonic, electronic or by any other means. A document or thing transferred, whether temporarily or permanently, from one person to another shall be deemed to be a communication between such persons whether or not such document or thing was prepared or created by the transferor or addressed to the transferee.

T.    "Sale" shall mean, without limitation, sale, donation, lease, rent, provided as part of a service contract, or any other exchanges of value, service, product or information for consideration.

U.    "TVM" shall mean lottery ticket vending or dispensing machines, instant lottery ticket vending or dispensing machines, and pull-tab or scratch-off game ticket vending or

dispensing machines, including self-service or operator-attended machines, and including on-line, networked, or stand-alone machines.

    V.    "PlayCentral Kiosk" shall mean the lottery ticket dispensing system manufactured by or for, distributed by, and/or sold by Scientific Games under the name PlayCentral Kiosk; and the same lottery ticket dispensing system manufactured, distributed, or sold under any other name; and any lottery ticket dispensing system substantially similar to the system sold by Scientific Games under the name PlayCentral Kiosk.

    W.    "Scientific Games' TVM" shall mean the lottery ticket dispensing system manufactured by or for, distributed by, and/or sold by Scientific Games under the names PlayCentral Kiosk, C-Central, or Convenience Central; and the same lottery ticket dispensing systems manufactured, distributed, or sold under any other name; and any lottery ticket dispensing system substantially similar to the systems sold by Scientific Games under the name PlayCentral Kiosk, C-Central, Convenience Central, or Extrema.

## INSTRUCTIONS

    1.    If any document responsive to these requests has been destroyed, describe the content of said document, the location of any copies of said document, the date of such destruction and the name of the person who ordered or authorized such destruction.

    2.    With respect to any documents otherwise responsive to this request that Defendants withhold or refuse to divulge on privilege grounds, provide a statement setting forth as to each:

        a.    the names of the sender, author and recipient of the document and any persons to whom the document was shown;

b.    the date of the document, or if no date appears, the date on which the

document was prepared;

c.    a general description of the nature and subject matter of the document;

d.    the name of the person who has custody of the document; and

e.    the grounds upon which the document is being withheld.

3.    Documents produced pursuant to these requests are to be organized as they are
kept in the usual course of business, and clearly designated so as to reflect the individual (and, as
appropriate, his or her job title) from whose files each document was produced, the file from
which each document was produced, and the location of such file.

4.    Documents produced pursuant to these requests that are ordinarily kept in
electronic form are to be produced in electronic form, where possible, with identification of the
program(s) used to open and view such documents.

## DOCUMENT REQUESTS

**Discovery Request No. 1:**

All documents concerning Scientific Games' TVM products.

**Discovery Request No. 2:**

All documents concerning the process by which TVM products are exported to,
imported into, and distributed in the United States, including all documents concerning any
transaction between Scientific Games and any State Lottery Agency concerning Scientific
Games' TVM products.

WP3:1034674.1                                                                      63055.1001

**Discovery Request No. 3:**

        All documents concerning the '898 Patent or Patents Related to the '898 Patent, including, without limitation, all documents concerning the prosecution, issuance, assignments, grants, licensing, acquisition, or evaluation of the '898 Patent or Patents Related to the '898 Patent.

**Discovery Request No. 4:**

        All documents concerning any communication by Scientific Games with a third party concerning Scientific Games' TVM products.

**Discovery Request No. 5:**

        One copy of each document received by purchasers of each Scientific Games' TVM, including service manuals, instructions or instruction(al) manuals, operating instructions, operations manuals, training manuals or materials, specifications, datasheets and booklets.

**Discovery Request No. 6:**

        All documents concerning any training or instruction of personnel by or on behalf of Scientific Games concerning the sales, marketing, sales forecasts, market forecasts, service, repair, maintenance, or technical support of Scientific Games' TVM products in the United States.

**Discovery Request No. 7:**

        All documents concerning business activities conducted by Scientific Games in the United States concerning Scientific Games' TVM, including all documents concerning

8

marketing, sales forecasts, market forecasts, advertising, promotion, offers for sale, sales, deliveries, customer service, and technical support directed to any person in the United States.

**Discovery Request No. 8:**

All documents prepared by or on behalf of Scientific Games concerning the marketing of Scientific Games' TVM in the United States, including, all marketing plans, marketing surveys, marketing forecasts, sales forecasts, competitive product analysis, promotional material, informational material, and advertising material.

**Discovery Request No. 9:**

All documents and things concerning Scientific Games' conception, design, development, production and manufacture of any Scientific Games' TVM products including: (a) documents and things concerning the process used to manufacture any Scientific Games' TVM products; (b) documents and things concerning any technical, production, operational, or validation issues concerning any Scientific Games' TVM product; (c) all design, development, and engineering documents concerning any of Scientific Games' TVM products, (d) all engineering notebooks, laboratory notebooks, invention disclosures, product proposals, drawings, specifications, product evaluations, test reports, and technical reports concerning any of Scientific Games' TVM products.

**Discovery Request No. 10:**

All documents and things concerning Scientific Games' conception, design, development, production, manufacturing of the PlayCentral Kiosk product, including: (a)

documents and things concerning the process used to manufacture PlayCentral Kiosk products;

(b) documents and things concerning any technical, production, operational, or validation issues

concerning PlayCentral Kiosk products; (c) all design, development, and engineering documents

concerning PlayCentral Kiosk products, (d) all engineering notebooks, laboratory notebooks,

invention disclosures, product proposals, drawings, specifications, product evaluations, test

reports, and technical reports concerning PlayCentral Kiosk products.


**Discovery Request No. 11:**

      All documents and things concerning the testing or analysis of any Scientific

Games' TVM product.


**Discovery Request No. 12:**

      All documents and things concerning the testing or analysis of PlayCentral Kiosk

products.


**Discovery Request No. 13:**

      All documents and things concerning each and every design modification made to

PlayCentral Kiosk products from its initial design, prototype, or development to the present.


**Discovery Request No. 14:**

      All engineering change notices or equivalents thereof that concern PlayCentral

Kiosk products.

WP3:1034674.1                                                          63055.1001

**Discovery Request No. 15:**

Documents sufficient to identify every person who has or had any responsibility for the design or development of PlayCentral Kiosk products.

**Discovery Request No. 16:**

All documents and things prepared or distributed in connection with any meeting concerning the research, conception, design, or development of PlayCentral Kiosk products, including any agendas and any minutes or notes taken during such meetings.

**Discovery Request No. 17:**

A copy of each published article or literature produced by or on behalf of Scientific Games that concerns PlayCentral Kiosk and all documents concerning the preparation thereof including all drafts and notes.

**Discovery Request No. 18:**

A copy of each advertisement or promotional material used by or on behalf of Scientific Games that concerns PlayCentral Kiosk.

**Discovery Request No. 19:**

All invention records, invention disclosure documents, inventor notebooks, or similar documents representing or recording an invention, potential invention, or development for consideration as subject matter for a patent application, concerning PlayCentral Kiosk products.

WP3:1034674.1                                                        63055.1001

**Discovery Request No. 20:**

Documents and things sufficient to identify all sales, purchases or leases of PlayCentral Kiosk products in the United States, including documents sufficient to identify the purchasers, lessees, lessors, date of purchase or lease, and items included in such purchases or leases.

**Discovery Request No. 21:**

Documents and things sufficient to identify all sales, purchases or leases of Scientific Games' TVMs in the United States, including documents sufficient to identify the purchasers, lessees, lessors, date of purchase or lease, and items included in such purchases or leases.

**Discovery Request No. 22:**

All design documents, engineering documents, specifications, and manuals concerning Scientific Games' TVM products, including the PlayCentral Kiosk.

**Discovery Request No. 23:**

All documents and things concerning any subsystem or component of Scientific Games' TVM products, any suppliers of those subsystems and components, and any contracts, licenses or agreements with those suppliers.

12

**Discovery Request No. 24:**

        All documents and things concerning any subsystem or component of PlayCentral Kiosk products, any suppliers of those subsystems and components, and any contracts, licenses or agreements with those suppliers.

**Discovery Request No. 25:**

        All documents concerning any patent or patent application concerning Scientific Games' TVM products.

**Discovery Request No. 26:**

        Documents sufficient to identify the relationships between and among Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation, and any other entity which is part of, controlled by, or owned in whole or part by Scientific Games.

**Discovery Request No. 27:**

        Documents sufficient to identify the management and organizational structure of Scientific Games, including, without limitation, documents concerning the functional relationships between and among management groups, divisions, departments, and any other business units of Scientific Games, including but not limited to any persons responsible for the design, development, manufacturing, sale, marketing, sales forecasts, market forecasts or any other aspect of Scientific Games' TVM products.

13

**Discovery Request No. 28:**

      All contracts or agreements referring or relating to the design, development, exportation, importation, sale, use or distribution of Scientific Games' TVM.

**Discovery Request No. 29:**

      All documents concerning Scientific Games' business or marketing strategy relating to Scientific Games' TVM.

**Discovery Request No. 30:**

      Documents sufficient to identify any Scientific Games facility in the United States, where (a) orders for Scientific Games' TVM are processed; (b) Scientific Games' TVM are stored and handled for distribution; and (c) payments for Scientific Games' TVM are processed or made.

**Discovery Request No. 31:**

      Documents sufficient to identify any facility owned, operated, managed, or used by Scientific Games for any purpose related to Scientific Games' TVM products, including the nature, function, and location of the office.

**Discovery Request No. 32:**

      All documents concerning the Patents-In-Suit or any Patents Related to the Patents-in-Suit.

63055 1001

**Discovery Request No. 33:**

      All documents concerning Scientific Games knowledge of the Patents-in-Suit, or of any Patents Related to the Patents-in-Suit, including any document concerning the date when, and the circumstances under which, Scientific Games became aware of the Patents-in-Suit.

**Discovery Request No. 34:**

      All opinions of counsel concerning the Patents-in-Suit or concerning any Patents Related to the Patents-in-Suit.

**Discovery Request No. 35:**

      All documents that concern any action taken by or on behalf of Scientific Games that was prompted by or motivated by the Patents-in-Suit or any Patents Related to the Patents-in-Suit, including any attempts to design around the Patents-in-Suit or any Patents Related to the Patents-in-Suit.

**Discovery Request No. 36:**

      All documents and things that comment upon or express any opinion about the Patents-in-Suit or any Patents Related to the Patents-in-Suit, or which concern any investigation of the infringement or any alleged noninfringement of the Patents-in-Suit or any Patents Related to the Patents-in-Suit, by Scientific Games or any other person.

**Discovery Request No. 37:**

All documents concerning opinions of counsel concerning the Patents-in-Suit or any Patents Related to the Patents-in-Suit.

**Discovery Request No. 38:**

All documents and things relied upon in any opinion of counsel concerning the Patents-in-Suit or any Patents Related to the Patents-in-Suit.

**Discovery Request No. 39:**

All minutes taken at and documents and things distributed in connection with, any meeting of Scientific Games' boards of directors or other corporate committees or subcommittees concerning any of Scientific Games' TVM products, GTECH, the Patents-in-Suit, or Patents Related to the Patents-in-Suit.

**Discovery Request No. 40:**

All documents and things concerning communications, either direct or indirect, between Scientific Games and any other person concerning the possibility that Scientific Games or their customers or potential customers may be subject to liability for infringement of the Patents-in-Suit.

**Discovery Request No. 41:**

All patents, patent applications, and patent prosecution files concerning the Patents-in-Suit or any Patents Related to the Patents-in-Suit, including any patent, patent

application, or patent prosecution file which includes reference to or discussion of the Patents-in-Suit or any Patents Related to the Patents-in-Suit.

**Discovery Request No. 42:**

Any communication by Scientific Games with a third party concerning the Patents-in-Suit or any Patents Related to the Patents-in-Suit.

**Discovery Request No. 43:**

All financial statements of Scientific Games, including, without limitation, all accounting, income, budgets, budget reports, pricing, price determination, profit and loss calculations, concerning Scientific Games' TVM, or any contract with any state lottery agency that concerns Scientific Games' TVM.

**Discovery Request No. 44:**

All contracts, agreements, licenses between, or proposals from Scientific Games and any third party concerning Scientific Games' TVM.

**Discovery Request No. 45:**

All documents concerning Scientific Games' business activities in the United States concerning Scientific Games' TVM, including documents concerning: (a) the number, type, and dollar volume of Scientific Games' TVM sold in the United States; (b) the number of Scientific Games' TVM customers in the United States; (c) quantity and type of advertising or other promotional activities concerning Scientific Games' TVM reaching persons in the United

17

States; (d) any follow-up activity concerning any of the above business activities including technical support, maintenance, and servicing in the United States.

**Discovery Request No. 46:**

Documents sufficient to identify the number, type, price, and dollar volume of each Scientific Games' TVM Scientific Games has sold in the United States.

**Discovery Request No. 47:**

Documents sufficient to identify all recipients of Scientific Games' TVMs in the United States.

**Discovery Request No. 48:**

All documents concerning any GTECH, Interlott, or On-Point TVM.

**Discovery Request No. 49:**

All documents and things concerning any sale, offer for sale, attempted offer for sale, or service agreement by or for Scientific Games' TVM.

**Discovery Request No. 50:**

Documents sufficient to show Scientific Games' monthly and quarterly sales volume in both units and U.S. dollars for PlayCentral Kiosks sold to entities in the United States from January 1, 1991 to the present.

**Discovery Request No. 51:**

Documents sufficient to show Scientific Games' profit margins for sales of PlayCentral Kiosks from January 1, 1991 to the present.

**Discovery Request No. 52:**

Documents sufficient to show Scientific Games' monthly and quarterly manufacturing volume for PlayCentral Kiosk and the location of such manufacturing from January 1, 1991 to the present.

**Discovery Request No. 53:**

All documents concerning customer surveys concerning PlayCentral Kiosk.

**Discovery Request No. 54:**

All business plans concerning PlayCentral Kiosk.

**Discovery Request No. 55:**

All documents concerning the marketing of goods and services sold in conjunction with or incident to a sale of PlayCentral Kiosk in the United States, including marketing studies, marketing forecasts, marketing plans, sales training materials, and communications to or from sales personnel.

WP3:1034674.1                                                                63055 1001

**Discovery Request No. 56:**

Documents sufficient to show the price paid by customers for goods and services sold in conjunction with or incident to a sale of PlayCentral Kiosk in the United States.

**Discovery Request No. 57:**

Documents sufficient to show Scientific Games' monthly and quarterly sales volume in both units and U.S. dollars for goods and services sold in conjunction with or incident to a sale of PlayCentral Kiosk sold to entities in the United States from January 1, 1991 to the present.

**Discovery Request No. 58:**

Documents sufficient to show Scientific Games' profit margins for sales of goods and services sold in conjunction with or incident to sales of PlayCentral Kiosks from January 1, 1991 to the present.

**Discovery Request No. 59:**

Documents sufficient to show Scientific Games' monthly and quarterly sales volume in both units and U.S. dollars for Scientific Games' TVM sold to entities in the United States from January 1, 1991 to the present.

**Discovery Request No.60:**

Documents sufficient to show Scientific Games' profit margins for sales of Scientific Games' TVM from January 1, 1991 to the present.

20

**Discovery Request No. 61:**

Documents sufficient to show Scientific Games' monthly and quarterly manufacturing volume for Scientific Games' TVM and the location of such manufacturing from January 1, 1991 to the present.

**Discovery Request No. 62:**

All documents concerning customer surveys concerning Scientific Games' TVM.

**Discovery Request No. 63:**

All business plans concerning Scientific Games' TVM.

**Discovery Request No. 64:**

All documents concerning the marketing of goods and services sold in conjunction with or incident to a sale of Scientific Games' TVM in the United States, including marketing studies, marketing forecasts, marketing plans, sales training materials, and communications to or from sales personnel.

**Discovery Request No. 65:**

Documents sufficient to show the price paid by customers for goods and services sold in conjunction with or incident to a sale of Scientific Games' TVM in the United States.

21

**Discovery Request No. 66:**

Documents sufficient to show Scientific Games' monthly and quarterly sales volume in both units and U.S. dollars for goods and services sold in conjunction with or incident to a sale of Scientific Games' TVM sold to entities in the United States from January 1, 1991 to the present.

**Discovery Request No. 67:**

Documents sufficient to show Scientific Games' profit margins for sales of goods and services sold in conjunction with or incident to sales of Scientific Games' TVM from January 1, 1991 to the present.

**Discovery Request No. 68:**

All documents concerning Scientific Games' factual basis for asserting that the Patents-in-Suit are invalid under 35 U.S.C. §102.

**Discovery Request No. 69:**

All documents concerning Scientific Games' factual basis for asserting that the Patents-in-Suit are invalid under 35 U.S.C. §103.

**Discovery Request No. 70:**

All documents concerning Scientific Games' factual basis for asserting that the Patents-in-Suit are invalid under 35 U.S.C. §112.

**Discovery Request No. 71:**

   All documents concerning any patent or patent application concerning Scientific Games' TVMs.

**Discovery Request No. 72:**

   All documents concerning any patent or patent application concerning the PlayCentral Kiosk.

**Discovery Request No. 73:**

   All documents and things requested to be identified in response to Plaintiff GTECH Corporation's First Set of Interrogatories to Scientific Games.

**Discovery Request No. 74:**

   All documents identified in response to Plaintiff GTECH Corporation's First Set of Interrogatories to Scientific Games.

**Discovery Request No. 75:**

   All documents and things that Scientific Games will rely on at trial or in any hearing or motion in this proceeding.

**Discovery Request No. 76:**

   All documents concerning Scientific Games' acquisition of IGT Online Entertainment Systems, Inc, that also concern Scientific Games' TVMs or the Patents-in-Suit.

23

**Discovery Request No. 77:**

All documents concerning any litigation, arbitration, interference, opposition proceeding, or other legal proceedings concerning Scientific Games' TVMs.

**Discovery Request No. 78:**

All documents and things concerning Louis P. Menna, Instant Technologies, Inc., or PMV Products, Inc.

**Discovery Request No. 79:**

All documents and things concerning Scientific Games' TVMs which also concern Interlott, On-Point or GTECH.

**Discovery Request No. 80:**

All documents concerning this lawsuit, including press releases, letters to customers, internal statements, litigation cost analysis, presentations to or minutes of the Scientific Games Board of Directors.

**Discovery Request No. 81:**

All documents concerning Mr. Nolan Bushnell or Uwink, Inc. which also concern TVMs, Scientific Games' TVM products, the Patents-in-Suit, Interlott, On-Point, or GTECH.

24

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Dated: August 27, 2004

Josy W. Ingersoll (#1088)

The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253

OF COUNSEL:

Thomas J. Meloro
Robert A. Whitman
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

25

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that copies of the foregoing document were caused to be served on August 27, 2004 upon the following counsel of record:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

Josy W. Ingersoll