# EXHIBIT D

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

RODGER D. SMITH
302 575 7205
302 498 6209 FAX
rsmith@mnat.com

September 28, 2004

BY FACSIMILE

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY 10004-1050

Re:    GTECH Corp. v. Scientific Games International, Inc., et al.,
C.A. No. 04-138-JJF

Dear Tom:

I am writing in response to your September 17, 2004 letter concerning GTECH's responses to Scientific Games' First Set of Interrogatories and First Set of Document Requests.

## General Objections

*Interrogatory General Objection No. 2, Interrogatory No. 5, and Document Request General Objection No. 6.* GTECH's refusal to produce documents and information until there is a Protective Order in place is wholly inappropriate and inconsistent with Local Rule 26.2, which was designed to avoid this very circumstance. *See Pitney Bowes, Inc. v. Stamps.com, Inc.*, C.A. No. 99-381-JJF (D. Del. Apr. 24, 2000) (ordering defendant to produce documents pursuant to D. Del. L.R. 26.2). Moreover, GTECH's failure to respond to the draft Protective Order -- while at the same time using the lack of a Protective Order as an excuse for not producing its documents -- is unacceptable. We intend to raise these issues with the Court.

*Interrogatory General Objection No. 3 and Document Request General Objection Nos. 14 & 15.* Please identify immediately what documents or information, if any, GTECH is withholding based on protective orders in other litigation or third-party confidentiality agreements, and identify the protective order or confidentiality agreement on which GTECH is relying. Scientific Games should not be required to wait until it receives GTECH's privilege log to assess the basis on which GTECH is withholding such documents or information.

Thomas J. Meloro, Esquire
September 28, 2004
Page 2

## Interrogatories

*Interrogatory No. 1, 2 & 3.* Scientific Games is not required to wait until expert discovery to obtain discovery concerning the basis for GTECH's infringement claims, and is not required to wait until claim construction briefing to obtain discovery concerning GTECH's proposed claim constructions. We intend to raise these issues with the Court.

*Interrogatory No. 4.* If GTECH intends to rely on earlier priority dates, it should immediately supplement its response to Interrogatory No. 4 to provide the basis for those dates. Otherwise, Scientific Games will continue to operate on the assumption that GTECH is not asserting a priority date earlier than its filing dates.

*Interrogatory Nos. 6, 7 & 8.* GTECH still has not produced any documents, and has not provided any comments on the draft Protective Order. We intend to raise these issues with the Court.

*Interrogatory No. 10.* The field of invention and level of skill in the art are also relevant to the issue of infringement, on which GTECH bears the burden of proof. We intend to raise with the Court GTECH's failure to respond to Interrogatory No. 10.

*Interrogatory Nos. 11 & 14.* Scientific Games is not required to wait until expert discovery to obtain discovery concerning the factual basis for GTECH's damages claim. It is also improper for GTECH to rely on Rule 33(d) in responding to a contention interrogatory seeking the factual basis for its allegations. We intend to raise these issues with the Court.

*Interrogatory No. 13.* Scientific Games does not agree that Interrogatory No. 13 is "facially over broad." Please let us know when GTECH will supplement its response to provide the requested information.

## Document Requests

*Document Request No. 13 & 14.* Scientific Games is entitled to obtain discovery concerning any products that embody or use the inventions of the patents in suit, and any decision to discontinue selling or marketing such products, in connection with defending against GTECH's damages claim and with respect to other issues as well. We intend to raise with the Court GTECH's refusal to produce the requested documents.

*Document Request No. 24.* Please confirm that GTECH will produce documents concerning "any lottery ticket dispensing machines designed, manufactured or marketed before 1990."

Thomas J. Meloro, Esquire
September 28, 2004
Page 3

   *Document Response No. 26.*  We intend to raise with the Court GTECH's refusal to produce documents relating to lottery ticket dispensing technology authored or received by the inventors.

   *Document Request No. 27.*  We intend to raise with the Court GTECH's refusal to produce documents concerning the relationship between GTECH and the inventors or anyone else involved in the development of the patented inventions.

   *Document Request No. 29.*  We intend to raise with the Court GTECH's refusal to produce documents received from, sent to, or written by Mr. Burr.

   *Document Request No. 35.*  We are not amending this request, and intend to raise with the Court GTECH's refusal to produce responsive documents.

   *Document Request No. 41.*  License agreements involving patents other than the patents in suit may be relevant to GTECH's damages claim.  Please confirm that GTECH will produce license agreements, and related documents, under "any patents relating to lottery ticket distribution and/or ticket dispensing technology," not just those related to the patents in suit.

   *Document Request No. 42.*  GTECH's profits and losses are relevant to GTECH's damages claim.  Please confirm that GTECH will produce documents concerning its profits and losses.

   *Document Request No. 49.*  GTECH has made public statements in its SEC filings that an allegation or finding of improper conduct in the context of civil or criminal allegations in Brazil may have a material effect on GTECH's ability to obtain or retain contracts (*see, e.g.*, GTECH's 10-K, filed on May 12, 2004, at 98).  Please confirm that GTECH will produce documents responsive to this request.

   Sincerely,

   Rodger D. Smith

429684

# EXHIBIT E

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Rodger D. Smith
02 575 7205
02 498 6209 Fax
smith@mnat.com

February 1, 2005

BY FACSIMILE

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY 10004-1050

Re:    GTECH Corp. v. Scientific Games International, Inc., et al.,
       C.A. No. 04-138-JJF

Dear Tom:

This will confirm that the parties have agreed to extend the date for the "[e]xchange and completion of contention interrogatories and identification of fact witnesses" until February 25, 2005.

Sincerely,

Rodger D. Smith

RDS/dal
446910

cc:    Josy W. Ingersoll, Esquire (By Facsimile)

# EXHIBIT F

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET

P.O. BOX 1347

WILMINGTON, DELAWARE 19899-1347

302 658 9200

302 658 3989 FAX

ROGER D. SMITH

: 575 7205

: 498 6209 FAX

rsmith@mnat.com

February 28, 2005

BY FACSIMILE

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY 10004-1050

> Re:    GTECH Corp. v. Scientific Games International, Inc., et al.,
> C.A. No. 04-138-JJF

Dear Tom:

     This will confirm that the parties have agreed to extend the date for the "[e]xchange and completion of contention interrogatories and identification of fact witnesses" until March 31, 2005.  This also will confirm that Scientific Games has agreed to produce any opinions of counsel on which it intends to rely in defending against GTECH's allegation of willful infringement approximately one month before the close of fact discovery, on March 31, 2005.

     Sincerely,

     Rodger D. Smith

RDS/dal
453043

cc:    Josy W. Ingersoll, Esquire (By Facsimile)

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

          Plaintiff,

          v.

SCIENTIFIC GAMES INTERNATIONAL,
INC., SCIENTIFIC GAMES HOLDINGS
CORPORATION, SCIENTIFIC GAMES
FINANCE CORPORATION, and
SCIENTIFIC GAMES CORPORATION,

          Defendants.

C.A. No. 04-138-JJF

## SCIENTIFIC GAMES' SUPPLEMENTAL RESPONSES TO PLAINTIFF'S INTERROGATORIES NOS. 2 AND 7

Defendants Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Scientific Games") hereby supplement their responses and object to plaintiff's Interrogatories Nos. 2 and 7 as follows:

## GENERAL OBJECTIONS

1.      Scientific Games objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

2.      Scientific Games objects to the Interrogatories and the Instructions to the extent they seek to impose obligations not required under the Federal Rules of Civil Procedure or the Local Rules of the District of Delaware.

3.      Scientific Games objects to the definition of "Scientific Games" as overly broad.

4.      Scientific Games objects to the definition of "TVM" as overly broad.

5.      Scientific Games objects to the definition of "Scientific Games' TVM" as overly broad to the extent it seeks to include products that have not been accused of infringement.

6.      Scientific Games objects to the Interrogatories to the extent they seek Scientific Games' confidential information.

7.      Scientific Games objects to the Interrogatories to the extent they seek production of confidential information of third parties.

8.      Scientific Games objects to the Interrogatories to the extent they seek information that is not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence.

9.      Scientific Games objects to the Interrogatories to the extent they are overly broad and unduly burdensome.

10.      Scientific Games objects to the Interrogatories to the extent they seek information not in the possession, custody, or control of Scientific Games.

11.      Scientific Games reserves the right to supplement its responses to the Interrogatories as appropriate.

The foregoing General Objections are incorporated into each of the Specific Responses to the Interrogatories.

2

## SUPPLEMENTAL RESPONSES TO PLAINTIFF'S INTERROGATORIES

### INTERROGATORY NO. 2:

For each product identified in Interrogatory No. 1, state all reasons why Defendants contend the product does not infringe any of the claims of the Patents-in-Suit, identify each person with knowledge of the reasons and all facts and documents tending to support that contention, and identify each person with knowledge of the reasons and all facts and documents tending to contradict that contention.

### RESPONSE TO INTERROGATORY NO. 2:

Scientific Games objects to Interrogatory No. 2 as seeking information that is protected by the attorney-client privilege, work product immunity or any other applicable privilege or immunity. Scientific Games also objects to Interrogatory No. 2 as overly broad and as seeking information not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence insofar as GTECH has alleged infringement only with respect to claim 18 of the '624 patent and claims 20, 21 and 28 of the '337 patent. Scientific Games also objects to Interrogatory No. 2 because, although GTECH has the burden of proof on infringement, it has provided no explanation whatsoever in response to Scientific Games' Interrogatory No. 1 as to how the PlayCentral Kiosk allegedly infringes claim 18 of the '624 patent or claims 20, 21 or 28 of the '337 patent. Scientific Games will supplement this response, as appropriate, after GTECH has provided meaningful infringement contentions. Subject to these and the General Objections, Scientific Games responds as follows:

### A.     Claims 20 and 21 of the '337 patent

Scientific Games does not infringe claims 20 or 21 of the '337 patent for at least the following reasons. Claim 20 requires a "means for separating each of said tickets from said strip," which GTECH acknowledges is a means-plus-function limitation. The claimed function

of this limitation is to separate each ticket from a strip of tickets.  The specification of the '337 patent discloses the following structure for performing this function:

> [T]he separation means includes a *dull edge bursting blade moveably mounted* adjacent a predetermined bursting position along the path, *holding means* for holding the stream of tickets against substantial deflection from the path at the bursting position, and *bursting blade drive means* for bringing the bursting blade into bursting contact with the stream of tickets at the bursting position to burst the leading ticket from the next following ticket.

(col. 3, ll. 55-63; emphasis added).  The "means for separating" limitation thus includes at least three distinct elements:  (1) a dull edge bursting blade moveably mounted; (2) a holding means; and (3) a bursting blade drive means.

The only "dull edge bursting blade" disclosed in the '337 patent is a circular burster wheel with a dull, rounded edge:  "[B]urster wheel 68 is advantageously in the form of a circular burster blade which, in an advantageous aspect, has a dull, rounded edge . . . ." (col. 10, ll. 58-63).  *See* col. 10, ll. 39-41 ("burster wheel"); col. 10, ll. 52-57 ("burster wheel"); col. 11, ln. 8 ("burster wheel"); col. 11, ln. 12 ("burster wheel"); col. 11, ln. 24 ("burster wheel"); col. 11, ln. 29 ("burster wheel"); col. 11, ln. 32 ("burster wheel"); col. 11, ln. 47 ("burster wheel"); col. 11, ln. 54 ("burster wheel"); col. 13, ln. 23 ("burster wheel"); col. 13, ll. 29-30 ("burster wheel"); *see also* U.S. Patent No. 5,836,498, col. 2, ll. 65-67; col. 3, ll. 1, 3-5 ("The separation mechanism of the '337 patent comprises a bursting wheel which separates the leading ticket from the next following ticket . . . .  The burster wheel of the '337 patent is in the form of a circular burster blade which has a dull rounded edge . . . .").

Scientific Games' PlayCentral Kiosk does not have a moveably mounted burster wheel with a dull, rounded-edge.  The PlayCentral Kiosk uses a stationary cutting blade with a sharp edge.

4

The "means for separating" also includes a "holding means for holding the stream of tickets against substantial deflection from the path at the bursting position." The corresponding structure disclosed in the specification of the '337 patent are feed rollers and exit feed rollers (col. 10, ll. 65-68; col. 11, ll. 1-2). The PlayCentral Kiosk does not "hold[] the stream of tickets against substantial deflection from the path at the bursting position." The PlayCentral Kiosk uses rollers to pull the stream of tickets against a stationary cutting blade.

The "means for separating" also includes a bursting blade drive means, which brings the burster wheel into contact with and across the stream of tickets (col. 13, ll. 23-32, 36-38). The corresponding structure disclosed in the specification of the '337 patent is a burster block, burster motor, cable spool arrangement, and tensioning spring: "Burster wheel 68 is shown mounted on a burster block 98 driven by a burster motor 100 through a cable spool arrangement 102 including tensioning spring 104" (col. 13, ll. 23-25). The PlayCentral Kiosk uses a stationary cutting blade to separate tickets, and does not have any structures that perform the function of the bursting blade drive means described in the '337 patent.

Claim 20 also requires a "housing means for storing a strip of tickets to be dispensed, said housing means having an outlet opening accessible to the purchaser of the tickets from said machine." This is a means-plus-function element, as GTECH's predecessor, Interlott, acknowledged in prior litigation (*see* GTECH 033460).

The claimed function of the housing means is to store tickets and permit tickets to be dispensed directly to the purchaser. The structure disclosed in the specification of the '337 patent for performing this function is (col. 7, ll. 5-11):

> [A] housing with a front surface 28 which . . . is intended to face
> the sales agent or vendor standing behind a counter 26. . . . An
> opposed back surface 30 . . . is intended to face the customers
> when . . . in operation. In accordance with an advantageous aspect

5

of the present invention, a control panel 32 including all necessary agent-operated controls is mounted at front surface 28, while a dispensing outlet 34 is manually accessible at the back surface 30 by the customers.

The specification also discloses that (col. 7, ll. 26-37):

[C]ontrol panel 32 is mounted at front surface 28 on an upper portion 36 thereof. Upper portion 36 is inclined relative to front surface 28 for ergonomic reasons; that is, to permit comfortable access to control panel 32. The angle of inclination of panel 32 is limited so that control panel 32 remains in substantially opposed relation to back surface 30. The angle of inclination is limited not only so that control panel 32 may be easily viewed and operated by the sales agent, but also so that it will be substantially blocked from view by any customer standing in front of counter 26 and facing back surface 30.

The structure of the "housing means" is depicted in Figures 3 and 4 of the '337 patent, which show a housing with the front surface having an inclined upper portion on which the control panel is mounted, and an opposed back surface having a dispensing outlet opening. During the prosecution of the '624 patent, the applicant represented to the patent examiner that the '337 patent discloses only a dispensing unit with an outlet opening in the back surface of the housing: "[The '337 patent] shows an instant winner lottery ticket dispenser which is intended to be attended by an agent. [The dispenser] is designed to dispense tickets from the rear of the unit . . . [and is] not suitable for use as [an] unattended ticket vending device[]."

The PlayCentral Kiosk does not have the claimed "housing means" of claims 20 or 21. The PlayCentral Kiosk is a customer-operated (not an agent-operated) terminal with customer-operated touch-screen controls and a dispensing outlet on the front surface of the housing. The PlayCentral Kiosk does not have a front surface "which . . . is intended to face the sales agent or vendor standing behind a counter" and an opposed surface "intended to face the customers when . . . in operation." The front surface of the PlayCentral Kiosk also does not have an inclined upper portion.

6

Claim 20 also requires a "means operable for ordering a plurality of tickets in a single batch," which GTECH acknowledges is a means-plus-function element. The function of this element is to allow ordering of a plurality of tickets in a single batch. The structure disclosed in the specification of the '337 patent for performing this function is a control panel, keypad, push-buttons, and control circuit (col. 7, ll. 41-46, 48-50).[1] The PlayCentral Kiosk does not have either push-buttons or a keypad for ordering tickets, but instead utilizes a touch-screen display to permit the customer to purchase tickets.

**B.    Claim 28 of the '337 patent**

Scientific Games does not infringe claim 28 of the '337 patent for at least the following reasons. Claim 28 requires "means for severing a ticket from said strip," which GTECH acknowledges is a means-plus-function element. This limitation has the same function and structure as the "means for separating" limitation in claim 20.[2] For at least all the reasons that the PlayCentral Kiosk does not infringe claim 20 because it does not have the claimed "means for separating," the PlayCentral Kiosk also does not infringe claim 28 because it does not have the claimed "means for severing."

Claim 28 also requires "position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means to drive said strip until said output signal indicates that said strip actually has moved by said pre-determined distance to dispense one of said tickets, and to control means for severing a ticket from said strip." GTECH acknowledges that the "position detecting means" is a means-plus-

---

[1]    *See Interlott Tech., Inc. v. Pollard Banknote Ltd.*, Case No. 02cv02157, slip op. at 31 (N.D. Ohio Aug. 4, 2003).

[2]    *See Interlott*, slip op. at 31.

7

function element.   The claimed function is to detect the distance that the strip of tickets has actually moved, and produce an output signal to control the drive means and to control the separation means.  The structure disclosed in the specification of the '337 patent for detecting the distance actually moved is a code wheel and code wheel sensor (col. 12, ll. 36-54; col. 13, ll. 16-22).

The PlayCentral Kiosk does not detect the distance that the strip has actually moved.  The PlayCentral Kiosk also does not have a code wheel or code wheel sensor.  It uses a stepper motor to move the tickets by a predetermined distance.  The use of a stepper motor was expressly disclaimed during prosecution of the '337 patent, because it did not detect "the distance actually moved" by the strip:

> The [prior art] Hartmann device does not have means for measuring the <u>actual</u> distance traveled by the strip and using of the information so detected to control the drive motor and severing means to dispense tickets. . . .  The measurement of the distance traveled by the ticket strip during the actual dispensing of tickets is determined by or counting the steps of the stepping drive motor. This permits a major inaccuracy in the driving of the strip in that, if the drive slips and fails to move the ticket strip forward for any particular distance, this creates an error in the location of the cut made by the cutting means. . . .  This is because the device which counts stepping motor pulses simply does not detect the <u>actual</u> position of the strip.

The PlayCentral Kiosk does not have the claimed "position detecting means."  Further, GTECH is estopped from asserting infringement of this claim limitation under the doctrine of equivalents by virtue of amendment of the claim during prosecution, as well as by its distinction over stepper motors during prosecution.

### C.     Claim 18 of the '624 patent

Scientific Games does not infringe claim 18 of the '624 patent for at least the following reasons.  Claim 18 requires a "display means for displaying an array of lottery ticket

representations viewable from outside of said housing by a customer, said array representing tickets in said machine available for purchase . . . in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen."

The PlayCentral Kiosk does not display "a plurality of arrays of ticket images on a video screen." The PlayCentral Kiosk initially displays icons of the tickets offered for sale -- not "ticket images" or a plurality of arrays of ticket images -- on a touch-screen user interface. Only after the purchaser selects a game logo area on the touch-screen is a representation of a single ticket -- not a plurality of arrays of ticket images -- displayed to the purchaser. Moreover, GTECH is estopped from asserting infringement of this claim limitation under the doctrine of equivalents because the claim was amended during prosecution.

The '624 patent also requires that the "array" of ticket images be movable on a video screen (see Abstract; col. 1, ll. 64-68; col. 10, ll. 64-68). There is no movable array of ticket images on the video screen of the PlayCentral Kiosk.

Claim 18 also requires a "means for dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer." This claim limitation is written in means-plus-function form and should be interpreted accordingly. The function of this claim limitation is to dispense tickets corresponding to the amount of money input into the machine. The structure disclosed in the specification of the '624 patent for performing this function is (col. 4, ll. 48-55):

> The feeding and bursting mechanism 112 is essentially identical to that disclosed in the above-identified copending patent application ['337 patent] . . . . It will not be described in detail herein; rather, the disclosure of that mechanism, and all other disclosure in the pending application, hereby is incorporated herein by reference.

The specification of the '624 patent discloses that the feeding and bursting mechanism includes four drive rollers, a rotary bursting wheel, and "a precise code wheel and detector arrangement"

9

(col. 4, ll. 56-63; col. 5, ll. 14-18). The feeding and bursting mechanism disclosed in the '337 patent, and incorporated by reference into the '624 patent, also requires a burster block, burster motor, cable spool arrangement, and tensioning spring ('337 patent, col. 3, ll. 55-63; col. 13, ll. 23-32).

For at least the same reasons that the PlayCentral Kiosk does not have the "means for separating" of claim 20 of the '337 patent, the PlayCentral Kiosk does not have the "means for dispensing" of claim 18 of the '624 patent. The PlayCentral Kiosk also does not have a "precise code wheel and detector arrangement" as described in the '337 patent, and as incorporated by reference into the '624 patent.

Individuals with knowledge of the design and operation of the PlayCentral Kiosk include: Bill Behm, Tony Bartolone, Janine Whiteman, Vic Collucci and Mark Gilmore. Documents describing the design and operation of the PlayCentral Kiosk include: SGI104995; SGI043580-81; SGI011043-44; SGI007437-621; SGI009906-07; SGI010758-85; SGI016905-17028; SGI018897-19340. In addition, the PlayCentral Kiosk is covered by U.S. Patent No. 5,950,898, U.S. Patent No. 6,609,644 B1, and U.S. Patent No. 6,669,071 B1.

## INTERROGATORY NO. 7:

For each claim of the Patents-in-Suit which Defendants contend is invalid, state with particularity the basis for such contention, including but not limited to, identifying with particularity each event or disclosure in a reference or publication forming in whole or in part the basis for such contention, each person with knowledge of the event or reference, and all documents relating to the contention, event or reference.

## RESPONSE TO INTERROGATORY NO. 7:

Scientific Games objects to Interrogatory No. 7 as seeking information that is protected by the attorney-client privilege, work product immunity or any other applicable privilege or immunity. Scientific Games also objects to Interrogatory No. 7 as overly broad and

10

as seeking information not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence. Scientific Games also objects to Interrogatory No. 7 because GTECH has failed to disclose its proposed constructions of the asserted claims. Scientific Games will supplement its response to Interrogatory No. 7, as appropriate, after GTECH has disclosed its proposed constructions of the asserted claims, and after Scientific Games has had an opportunity to take additional discovery.

Subject to these and the General Objections, Scientific Games responds as follows with respect to the claims asserted by GTECH -- claims 20, 21 and 28 of the '337 patent and claim 18 of the '624 patent:

### A.     Claims 20 and 21 of the '337 patent

If claims 20 and 21 of the '337 patent are construed to cover Scientific Games' PlayCentral Kiosk, those claims are invalid under 35 U.S.C. § 102 in light of the Player-Activated Terminals ("PAT") that Scientific Games offered for sale and sold in the United States more than one year before the application for the '337 patent was filed.

Scientific Games' PATs were lottery ticket vending machines that included a housing with an outlet opening accessible to the ticket purchaser, a touch-screen for ordering multiple tickets in a single batch, and dispensing means for dispensing the instant lottery tickets through the outlet opening (*see* SGI002060-163; SGI104830-31; SGI104811-12; SGI105153; SGI106615). The PATs also had control and separating means that separated and dispensed each ticket individually, regardless of the number of tickets ordered in a batch (*see* SGI002121 ("Our dispenser is designed to cut each continuous form computer-produced ticket individually. Each ticket then drops into a hopper for removal by the customer.")).

11

As discussed above, in response to Interrogatory No. 2, the PlayCentral Kiosk does not have the "housing means" of claims 20 and 21. If the "housing means" limitation, however, is construed to cover the PlayCentral Kiosk, it would also cover the housing means in Scientific Games' prior art PATs.

The PlayCentral Kiosk also does not contain the claimed "means operable for ordering a plurality of tickets in a single batch." If "means . . . for ordering," however, is construed to cover the PlayCentral Kiosk, it would also cover Scientific Games' prior art PATs.

The PlayCentral Kiosk does not have the claimed "means for separating." If the "means for separating," however, is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it also covers the separating and dispensing mechanism in the Scientific Games' prior art PATs. Indeed, the separating means used in the prior art PATs is more like the mechanism disclosed in the '337 patent than the PlayCentral Kiosk. The prior art PAT used a moving separation blade, blade drive means, and holding means for holding the ticket as it was being separated (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)). Thus, if claims 20 and 21 of the '337 patent are construed to cover the PlayCentral Kiosk, they will also cover Scientific Games' prior art PATs and are invalid under 35 U.S.C. § 102.

In addition, if claims 20 and 21 of the '337 patent are construed so as to cover the PlayCentral Kiosk, they are also invalid under 35 U.S.C. § 102 and § 103 over U.S. Patent No. 4,716,799 (to Hartmann) alone, and in combination with Scientific Games' prior art PAT. Hartmann disclosed an automatic lottery ticket dispensing machine that included a housing, a control panel for ordering multiple tickets, a means for separating tickets from the strip, and a means for dispensing tickets through an outlet opening (*see* Hartmann '799 patent, Fig. 1, col. 2,

12

ll. 56-60, col. 3, ll. 41-63, col. 4, ll. 49-52).  Hartmann also taught that the machine could be mounted as a user activated terminal, providing an outlet opening directly accessible to the purchaser (*see id.*, col. 2, ln. 68 - col. 3, ln. 2).  To the extent Hartmann disclosed cutting, and not bursting, the necessary modification would have been obvious in light of Scientific Games' prior art PATs, which burst tickets (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)).

If claims 20 and 21 are construed to cover Scientific Games' PlayCentral Kiosk, they are also invalid as obvious under 35 U.S.C. § 103 over the following references, alone or in combination:  Scientific Games' prior art PATs; U.S. Patent No. 4,716,799 (to Hartmann); U.S. Patent No. 3,978,958 (to Zandstra); U.S. Patent No. 4,623,081 (to Hain et al.); U.S. Patent No. 4,157,670 (to Herring); U.S. Patent No. 4,094,451 (to Wescoat); U.S. Patent No. 3,894,669 (to Wescoat); U.S. Patent No. 4,401,249 (to Kadlecik et al.); and U.S. Patent No. 4,261,497 (to Roetter).

Claims 20 and 21 of the '337 patent may also be invalid under 35 U.S.C. § 102(b) as a result of public use or offers to sell its ITRs more than a year before the December 3, 1987 application for the '337 patent.  GTECH's documents, including an attachment to Mr. Burr's September 25, 1992 Declaration in the Patent Office, refer to "various field tests since 1986." *See also* INLO-030513, INLO-035497, INLO-041626, INLO-200612 ("patents invalid showed publicly").

**C.    Claim 28 of the '337 patent**

If claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, that claim is invalid under 35 U.S.C. § 102 in light of Scientific Games' prior art PAT, for the reasons set forth with respect to claims 20 and 21.

If claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid under 35 U.S.C. § 102 and § 103 over U.S. Patent No. 3,978,958 (to Zandstra) and U.S. Patent No. 4,716,799 (to Hartmann) alone and in combination, and in combination with Scientific Games' prior art PAT.

Zandstra disclosed an automatic ticket dispenser "especially adapted to vend articles such as lottery tickets" (Zandstra '958 patent, col. 2, ll. 5-7). Zandstra disclosed drive means for moving a strip of tickets connected by perforations to a separation location (*id.*, col. 2, ll. 33-36). Zandstra also disclosed a means for separating tickets (*id.*, col. 4, ll. 11-15). Zandstra also disclosed an optical detector for detecting the distance that the strip of tickets has actually moved and producing an output signal to control the drive means and to control the ticket separation means (*id.*, col. 2, ll. 40-50).

Hartmann disclosed an automatic lottery ticket dispensing machine that uses rollers driven by a stepper motor to advance a strip of tickets to a separation location (Hartmann '799 patent, col. 2, ll. 56-58). Hartmann also disclosed a ticket separation means (*id.*, col. 4, ll. 4-9), and a position detecting means (*id.*, col. 7, ll. 15-17).

As discussed above in response to Interrogatory No. 2, the PlayCentral Kiosk does not have the claimed "means for severing" of claim 28. The means for separating tickets disclosed in Zandstra and Hartmann, however, are more like the mechanism disclosed in the '337 patent than the mechanism used in the PlayCentral Kiosk. Both Hartmann and Zandstra use moving blades, blade drive means, and holding means to separate the tickets. Thus, if the "means for separating" limitation of claim 28 is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it would also cover the separation mechanisms described in Zandstra and Hartmann. Finally, to the extent Zandstra and Hartmann disclosed cutting, and not

14

bursting, the necessary modification would have been obvious in light of Scientific Games' prior art PATs, which burst tickets (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)).

Finally, if claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid as obvious under 35 U.S.C. § 103 over the following references, alone or in combination:  Scientific Games' prior art PATs; U.S. Patent No. 4,716,799 (to Hartmann); U.S. Patent No. 3,978,958 (to Zandstra); U.S. Patent No. 4,623,081 (to Hain et al.); U.S. Patent No. 4,157,670 (to Herring); U.S. Patent No. 4,094,451 (to Wescoat); U.S. Patent No. 3,894,669 (to Wescoat); U.S. Patent No. 4,401,249 (to Kadlecik et al.); and U.S. Patent No. 4,261,497 (to Roetter).

Claim 28 of the '337 patent may also be invalid under 35 U.S.C. § 102(b) as a result of a public use or offer to sell, for the same reasons set forth with respect to claims 20 and 21.

C.    **Claim 18 of the '624 patent**

If claim 18 of the '624 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is invalid under 35 U.S.C. § 102 and § 103 over Scientific Games' prior art PATs, which Scientific Games offered for sale and sold in the United States more than one year before the application for the '624 patent was filed.  Scientific Games' prior art PATs were lottery ticket vending machines that included a housing, a video display screen viewable by a customer, a bill acceptor, and a dispensing mechanism for dispensing lottery tickets in a number corresponding to the amount of money input into the machine by a customer (*see* SGI002060-163; SGI104830-31; SGI104811-12; SGI105153; SGI106615).

As discussed above, in response to Interrogatory No. 2, the PlayCentral Kiosk does not display "a plurality of arrays of ticket images on a video screen."  If, however, the

15

"video display means" limitation of claim 18 is construed to cover the PlayCentral Kiosk, it also covers Scientific Games' prior art PATs.  The PlayCentral Kiosk also does not contain the "means for dispensing" of claim 18.  The separation mechanism in the prior art PATs was more like the mechanism claimed in the '624 patent than the PlayCentral Kiosk.  The prior art PATs used a moving separation blade, blade drive means, and holding means for holding the ticket as it was being separated (*see* SGI002121; *see also* U.S. Patent No. 4,157,670).  Thus, if the "means for dispensing" limitation of claim 18 is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it also covers the separation mechanism used in Scientific Games' prior art PATs.

If claim 18 of the '624 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid under 35 U.S.C. § 103 as obvious in light of Scientific Games' prior art PATs in combination with the '337 patent.  The prior art PATs included a housing, a video display screen, a bill acceptor, and a mechanism for dispensing lottery tickets in a number corresponding to the amount of money input into the machine by a customer.  The '337 patent taught a mechanism for separating and dispensing lottery tickets.  In view of the stated advantages of the mechanism disclosed in the '337 patent, it would have been obvious to a person having ordinary skill in the art to combine Scientific Games' prior art PATs with the '337 patent.

Claim 18 of the '624 patent may also be invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 in light of other prior art lottery ticket vending machines with video screens offered for sale and sold by Electro-Sport, Syntech, AmTote/General Instruments, IGT and Video Lottery Consultants.  *See, e.g.,* SGI105003-08; SGI105132; SGI105271; SGI105280-83; SGI105367; SGI105411; SGI105482; SGI105491; SGI105535-38; SGI105546; SGI105563;

16

SGI105568-69;   SGI105595-96;   SGI105618;   SGI105643;   SGI105919-20;   SGI105924;

SGI105988-91;   SGI106023;   SGI106064-68;   SGI106117-18;   SGI106651-52;   SGI106797;

SGI106836-37;   SGI106866;   SGI106874;   SGI106904-07;   SGI106913-14;   SGI106930;

SGI106938; SGI106954-55; SGI106235; SGI106236; SGI106298; SGI106603; SGI106607.

Finally, if the "means for dispensing" of claim 18 of the '624 patent is not the structure disclosed in the '337 patent, then claim 18 is invalid under 35 U.S.C. § 112 because the '624 patent does not disclose any other structure corresponding to the means for dispensing.

Individuals with knowledge of Scientific Games' prior art PATs include:  Bill Behm and Mark Hoffman.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
    Attorneys for Defendants Scientific Games
    International, Inc., Scientific Games Holdings
    Corporation, Scientific Games Finance
    Corporation and Scientific Games Corporation

April 29, 2005
443944

17

<u>CERTIFICATE OF SERVICE</u>

I, Rodger D. Smith II, hereby certify that copies of the foregoing were caused to be served on April 29, 2005, on the following in the manner indicated:

**<u>BY HAND</u>**

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

**<u>BY FEDERAL EXPRESS</u>**

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY  10004

Rodger D. Smith II

# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,  )
)
Plaintiffs,  )
)  Civil Action No. 04-138-JJF
v.  )
)
SCIENTIFIC GAMES INTERNATIONAL, INC.,  )
SCIENTIFIC GAMES HOLDINGS  )
CORPORATION, SCIENTIFIC GAMES  )
FINANCE CORPORATION, and SCIENTIFIC  )
GAMES CORPORATION,  )
)
Defendants.  )

## PLAINTIFF GTECH CORPORATION'S SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 8, 9, 10, 11, 12, AND 14)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, GTECH Corporation ("GTECH"), hereby serves the following supplemental objections and responses to Defendants', Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Defendants"), Interrogatories Nos. 8, 9, 10, 11, 12, and 14.

## GENERAL OBJECTIONS

GTECH incorporates by reference the General Objections set forth in its *Response to Defendants' First Set of Interrogatories* dated August 18, 2004.

## SUPPLEMENTAL RESPONSES

**Interrogatory No. 8**

     For each asserted claim of the Patents-in-Suit, describe in detail the first embodiment of each claimed invention in the United States, identify by name or other designation each product that GTECH contends embodies any claimed invention and the claims allegedly embodied, identify when each such embodiment was first offered for sale, sold, publicly used or disclosed, and the circumstances surrounding the offer, sale, use or disclosure, and identify each person with knowledge relating to these facts and each document relating to these facts.

**Supplemental Response No. 8**

     In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known. GTECH objects to the terms "the first embodiment of each claimed invention", "embodies any claimed invention", "claims allegedly embodied", "each such embodiment", and "circumstances surrounding", as vague, ambiguous, and overbroad.

     Subject to the General Objections and the foregoing specific objections, GTECH has already produced or will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained. Persons having knowledge of the facts concerning this upon which GTECH intends to rely include Robert Burr, Brian Roberts, Ed Turek, George Voutes, David Wagoner, and Robert Nealon.

2

**Interrogatory No. 9**

State whether GTECH will rely on any secondary considerations or objective indicia of nonobviousness of any asserted claim of the Patents-in-Suit and, if so, state in detail GTECH's contentions with respect to each such consideration or indicia, state each fact supporting GTECH's contentions, and identify each person with knowledge of each such fact and each document relating to that fact.

**Supplemental Response No. 9**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. GTECH further objects to this Interrogatory to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege or work product doctrine and to the extent that it is premature given the current phase of the case. Additionally, GTECH specifically objects to the term "any asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known.

Subject to the General Objections and the foregoing specific objections, GTECH responds that it intends to rely on secondary considerations or objective indicia of nonobviousness including the following: commercial success, long-felt need and failure of others, commercial acquiescence and licensing, professional approval, and copying. Persons having knowledge of the facts concerning this upon which GTECH intends to rely include Ed Turek, Brian Roberts, and Robert Burr.

**Interrogatory No. 10**

For each asserted claim of the Patents-in-Suit, identify the field of the invention, state the level of ordinary skill in the art, state each fact relating to your contention, and identify each person with knowledge of that fact and each document relating to that fact.

**Supplemental Response No. 10**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, GTECH objects to the terms "field of the invention" as vague and overly broad. Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known. GTECH specifically objects to this interrogatory because it is a compound interrogatory which asks discrete questions that should have been asked, and should be counted, as separate interrogatories.

GTECH further objects to the extent that this interrogatory is premature given the current stage of the case and is more appropriately the subject of expert discovery, for which a schedule has been set by the Court.

**Interrogatory No. 11**

State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, including but not limited to the methods and factors used in the calculation, and identify each person with knowledge of each such fact and each document relating to that fact.

**Supplemental Response No. 11**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

As to the extent of the injury suffered and the amount of damages, GTECH objects to the extent that this interrogatory is more appropriate for expert discovery, for which a schedule has been set by the Court.

Subject to the General Objections and the foregoing specific objections, GTECH has produced or will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained. GTECH's further states that its claim for damages includes that it is entitled to not less than a reasonable royalty including lost profits. Persons having knowledge of the facts concerning this upon which GTECH intends to rely include Patrick Costaregni and George Voutes.

**Interrogatory No. 12**

State each fact supporting your allegation that defendants' infringement of the Patents-in-Suit "has been and will be willful," and identify each person with knowledge relating to each such fact and each document relating to that fact.

**Supplemental Response No. 12**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to General Objections and the foregoing specific objections, GTECH states that Defendants have had knowledge of their willful conduct and are in the best position to

supply information responsive to this request. On information and belief, GTECH asserts that

Scientific Games has been aware of the patents-in-suit as least as early as its 1997 business

interaction with On-Point Technologies regarding ticket vending machines. Further, Scientific

Games witnesses have testified that they were aware of the patents in suit before the launch of

the PlayCentral. Notwithstanding, Scientific Games continued to make, use, sell, offer to sell,

lease, or otherwise make available for the use of others the infringing PlayCentral product.

Moreover, Scientific Games has not elected to rely upon a produced opinion of counsel and

therefore cannot advance an advice of counsel defense to GTECH's willfulness claim.


**Interrogatory No. 14**

        Identify each product that you contend competes with the PlayCentral Kiosk,
describe the markets in which it competes, and identify each person with knowledge of that
product and each document relating to that product.


**Supplemental Response No. 14**

        In addition to the General Objections, GTECH objects to this interrogatory as

vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery

of admissible evidence. Specifically "competes with" and "relating to" are vague and

ambiguous.

        GTECH also objects to this interrogatory to the extent it is premature, and calls

for information more appropriately obtained in expert discovery, for which the Court has set a

schedule.

        Subject to the General Objections and the foregoing specific objections, products

which compete with the PlayCentral Kiosk include GTECH's GamePoint™ and EDS-Q™ ticket

vending machine compete with the PlayCentral Kiosk. Persons having knowledge of facts

6

concerning this upon which GTECH intends to rely include George Voutes, Robert Nealon, and

David Wagoner.


Dated: April 29, 2005

As to objections:

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253


KENYON & KENYON
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

7

<u>CERTIFICATE OF SERVICE</u>

I, Phillip K. Lum, hereby certify that on this 29thd day of April, 2005, I did cause a true and correct copy of Plaintiff GTech's Supplemental Responses to Defendants' First Set of Interrogatoreis (Nos. 8, 9, 10, 11, 12, and 14) to be served by overnight courier on the following:

Jack B. Blumenfeld, Esq.
Morris, Nichols, Arsht, & Tunnell
1201 N. market Street
Wilmington, DE 19801

Phillip K. Lum

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on May 4, 2005, I caused to be electronically filed Defendants' Motion To Preclude Plaintiff From Relying On Undisclosed Contentions with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

### BY FEDERAL EXPRESS

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY 10004

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
Attorneys for Defendants