REDACTED - PUBLIC VERSION, filed 5/24/05

# EXHIBIT E

10 of 26 DOCUMENTS

TULIP COMPUTERS INTERNATIONAL B.V., Plaintiff, v. DELL COMPUTER CORPORATION, Defendant.

Civil Action No. 00-981-RRM

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 7792; 52 Fed. R. Serv. 3d (Callaghan) 1420; 63 U.S.P.Q.2D (BNA) 1527

April 30, 2002, Decided

**DISPOSITION:** Court held Defendant had not fulfilled many basic discovery obligations, and ordered relief in five areas identified by Plaintiff. Plaintiff's motion for sanctions denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holder sued defendant alleged infringer for patent infringement of computer technology. Following fact discovery, a number of discovery disputes arose. The patent holder moved to compel and for sanctions. The alleged infringer opposed the motion.

**OVERVIEW:** The holder alleged that five problem areas evidenced that the alleged infringer had actively interfered with its ability to obtain basic discovery by either delaying production of responsive documents or inaccurately representing or assuming that the documents sought did not exist. The parties appeared to have resolved the issue of the production of documents from the alleged infringer's warehouse. The holder and its consultant had been given access to the alleged infringer's databases, and had conducted data searches appropriate for discovery purposes. Therefore, the court need not order further relief to resolve the data warehouse issue. The procedure that the holder suggested for the discovery of e-mail documents seemed fair, efficient, and reasonable. The alleged infringer would provide the e-mails from the hard disks of the identified executives in electronic form to the holder's consultant. The alleged infringer was ordered to identify the contents of a particular destroyed box of documents and recreate its contents. The alleged infringer's failure to produce an adequately prepared Fed. R. Civ. P. 30(b)(6) witness was not deserving of sanctions.

**OUTCOME:** The court would enter an order in accordance with its memorandum opinion.

**COUNSEL:** [*1] Steven J. Balick, Esquire and John G. Day, Esquire, Ashby & Geddes, Wilmington, Delaware, for Tulip Computers International B.V., plaintiff.

Dirk B. Thomas, Esquire, Robert A. Auchter, Esquire, and Bradley J. Olson, Esquire, Robins, Kaplan, Miller & Ciresi L.L.P., for Tulip Computers International B.V., plaintiff.

Frederick L. Cottrell, III, Esquire, Richards, Layton & Finger, Wilmington, Delaware, for Dell Computer Corporation, defendant.

Scott F. Partridge, Esquire and Howard L. Speight, Esquire, Baker Botts L.L.P., Houston, Texas, for Dell Computer Corporation, defendant.

**JUDGES:** McKELVIE, District Judge.

**OPINIONBY:** McKELVIE

**OPINION:**

MEMORANDUM OPINION

Wilmington, Delaware
April 30, 2002

McKELVIE, District Judge

2002 U.S. Dist. LEXIS 7792, *; 52 Fed. R. Serv. 3d (Callaghan) 1420;
63 U.S.P.Q.2D (BNA) 1527

This is a patent infringement case. Plaintiff Tulip Computers International B.V. is a Dutch corporation having its principal place of business in the Netherlands. Dell Computer Corporation is a Delaware corporation having its principal place of business in Round Rock, Texas. Dell is in the business of making and selling personal computer products.

Tulip is the owner of U.S. Patent No. 5,594,621 ("the '621 patent"), entitled "Motherboard for a computer [*2] of the AT type, and a computer of the AT type comprising such Motherboard." The claims of the '621 patent are generally directed at a personal computer motherboard that has a uniquely arranged expansion card slot which has the capability of supporting both ISA and PCI type expansion cards. The invention provides for improved cooling of the expansion card components, reduced number of connector terminals for expansion card on the motherboard, and shortened length of the connections from the motherboard to the expansion cards. n1 The parties both characterize the invention as a transition device, which at the time when personal computer peripherals were moving towards the 32 bit standard provided a solution that could accommodate both 16 bit and 32 bit devices.

N1 According to the '621 patent, in order to arrange both ISA and PCI expansion cards on a riser card, prior art devices employed a "combi-connector," consisting of two connections -- one for each type of expansion card." The drawback of this solution was that, due to the physical design and dimensions of PCI cards, it was necessary to arrange the PCI expansion cards on the upper part of the riser card. As a result, the linking tracks that transmit high frequency signals are longest, which is undesirable. Moreover, the PCI expansion cards had to lie on the connector in a downward orientation, which impeded the proper cooling of the PCI cards.

[*3]

On November 24, 2000 Tulip filed its complaint in this case alleging that Dell is infringing one or more of the claims of the '621 patent by making, offering to sell, and selling personal computers embodying the claimed invention. Dell answered Tulip's complaint on January 19, 2001, and the parties proceeded to take discovery in the case. Fact discovery is now scheduled to close on May 10, 2002, although the parties may agree or ask the court to extend that deadline.

In the past months, a number of discovery disputes have arisen between the parties. These disputes have culminated with Tulip's filing, on March 25, 2002, of a motion to compel and for sanctions against Dell. Tulip's brief in support of its motion, focuses on a number of areas of discovery on which it asserts Dell's cooperation must be required by the court, and requests broad relief to effect that cooperation. Dell opposes Tulip's motion.

Briefing on the motion is now complete. On April 24, 2002 the court heard oral argument from the parties on Tulip's motion. This is the court's decision on Tulip's motion to compel and for sanctions.

I. BACKGROUND AND PARTIES' CONTENTIONS

Tulip's brief in support of its [*4] motion primarily relates to five contentions regarding problems it has encountered in seeking to obtain certain discovery from Dell. They are: (i) Dell's failure to inform Tulip of its document archives, which upon investigation contained responsive information; (ii) Dell's delay and lack of cooperation in providing Tulip with the ability to search Dell's electronic data warehouse to gather responsive information; (iii) Dell's destruction of responsive documents; and (iv) Dell's failure to provide a sufficiently knowledgeable 30(b)(6) witness; (v) Dell's refusal to provide Tulip with reasonable discovery of the e-mails of certain Dell executives.

Tulip contends that the above five problem areas evidence that Dell has actively interfered with Tulip's ability to obtain basic discovery by either delaying production of responsive documents or inaccurately representing or assuming that the documents sought did not exist. Tulip argues that the record before the court demonstrates that Dell has exhibited an improper and cavalier attitude towards its discovery obligations. Tulip seeks a court order to remedy Dell's alleged discovery failures. Before determining whether to grant Tulip's motion, [*5] the court will summarize the details of the parties' discovery disputes.

1. Dell's Failure to Timely Identify the Existence of its Off-Site Warehouse

Beginning in September 2001, Tulip has expressed its concerns to the court about what it perceived to be gaps in Dell's document production relating to Dell's decision to adopt the allegedly accusing components in its personal computer products. In response, Dell denied that such documents existed and maintained that they had produced all responsive documents that they had. During the September 26, 2001 conference with the court, Dell's counsel stated that: "The fact that an invention is of such minor character, and so inconsequential, probably explains why there aren't memos to officers of the company." At that time, the court suggested that Tulip proceed with its discovery and to "come back and show if there is a basis for believing the documents existed and weren't produced."

2002 U.S. Dist. LEXIS 7792, *; 52 Fed. R. Serv. 3d (Callaghan) 1420;
63 U.S.P.Q.2D (BNA) 1527

On January 25, 2002, nine months after Tulip served Dell with its requests for production of documents, Dell disclosed to Tulip, for the first time, the existence of an off-site warehouse containing over 44,300 boxes of documents. Soon thereafter, Dell [*6] informed Tulip of the existence of a large number of backup tapes that it had previously failed to identify. During a February 19, 2002 conference call, the court questioned Dell concerning the documents stored in its off-site warehouse. Counsel for Dell replied that "It would be a miracle, we think, to find [the types of documents Tulip seeks] in that warehouse . . . ." At the suggestion of the court, Tulip spent a week reviewing documents contained in approximately 450 of the boxes, using an index of the boxes provided by Dell. Tulip represents that this search has led to the identification of more than 70 boxes and 100,000 pages of responsive documents. The boxes have been marked for copying. As of the date of the oral argument, Tulip had not yet received the documents, although counsel Dell ensured that they would be promptly produced as soon as copying was completed.

Dell asserts that as soon as it discovered that responsive documents might be stored at its off-site records storage facility, it agreed to make the records stored there available to Tulip and provided Tulip with its indexes of those records. Dell points out that, using that index, Tulip searched for, marked, and [*7] will receive the requested responsive documents that it sought.

Due to Dell's alleged failure to perform the adequate inquiry and search for responsive documents that is contemplated by the rules and in light of Dell's erroneous representations to Tulip and the court that all existing responsive documents had been produced, Tulip requests that the court order the following relief: (i) require Dell to confirm the content description in Dell's index of the boxes of documents located at the off-site warehouse; (ii) require Dell to certify to Tulip and the court that its search was complete and thorough; (iii) allow Tulip, but not Dell, to conduct fact discovery beyond the current fact discovery deadline.

2. Dell's Failure to Produce Sales Documents From Its Data Warehouse and Dell's Obstruction of Tulip's Efforts to Access Its Data Warehouse

Last Fall, Dell offered Tulip complete access to its electronic documents as they are kept in the ordinary course of business. Those documents are kept in Dell's data warehouse. By searching the data warehouse, a user can identify whether and how many of the specific components of the accused infringing products were sold and when they were [*8] sold.

Dell's data warehouse contains damages information sought by Tulip, such as unit prices and model types of the allegedly infringing products. To obtain the damages information it sought, Tulip first requested that Dell search its own databases and provide the requested information. Dell refused, however, explaining that it did not have the ability to search the data warehouse at the level of detail that Tulip sought. Instead Dell suggested that Tulip hire its own database consultant and offered to make its databases fully accessible to Tulip and its consultants. Dell's counsel confirmed to the court, at that time, that whatever search capabilities are available to Dell would be made available to Tulip. Thereafter, Tulip's discovery team met with Dell's counsel and Dell employees, including Dell's Data Warehouse Manager, Sue Patti. At that meeting she informed Tulip that the information related to sales of the accused infringing computers, which Tulip had been requesting for nearly a year, was in fact available in the data warehouse and that Dell employees knew how to conduct search queries that could cull that type of information from the database system.

Dell states that it [*9] believes that its data warehouse and internal documents could provide evidence for its own case about the conception and adoption of the allegedly infringing invention at Dell. Therefore, Dell asserts it had every motivation to enable a search of its records. It maintains that simply believed, at first, that the desired data could not be extracted from the data warehouse. Only after its employees worked with Tulip's data consultants were they able to perform the searches that Tulip sought.

After agreeing to give Tulip access to its data warehouse, Dell raised the concern that Tulip's use of the data warehouse may cause an undue burden on Dell's day to day operations. According to Tulip, when it took steps to obtain access to Dell's electronic records, Dell attempted to impose numerous conditions on Tulip's inspection and gave Tulip access to only a subset of the data warehouse. These restrictions included restricting the fields to which Tulip would have access in the search process and filtering out data fields, such as customer names, which Dell asserted were non-responsive.

It appears from the oral argument, that the parties have now resolved this discovery dispute. Only recently [*10] was Tulip able to extract the documents that it sought. Tulip, along with its consultants, have worked with Ms. Patti to obtain the responsive information from Dell's data warehouse. Tulip urges the court that this dispute, while resolved, is still relevant to indicate just how difficult Dell has made the discovery process.

3. Discovery of The Email Records of Dell Executives

Case 1:04-cv-00138-JJF   Document 77-3   Filed 05/24/2005   Page 5 of 9

REDACTED - PUBLIC VERSION, filed 5/24/05

Page 4
2002 U.S. Dist. LEXIS 7792, *; 52 Fed. R. Serv. 3d (Callaghan) 1420;
63 U.S.P.Q.2D (BNA) 1527

Tulip also contends that Dell has refused to produce email or electronic documents for any senior Dell executive, "unless Tulip can demonstrate a direct connection to this matter." Tulip seeks such production to gather discovery on Dell management's decision to adopt the *'621* patented invention in its products. Dell states that it has circulated Tulip's document requests to over 300 Dell employees and has already produced all responsive documents. Furthermore, Dell asserts that none of the senior executives from whom Tulip seeks information would have relevant and responsive information. Dell thus contends that a production of executive's e-mails is cumulative and that its only purpose is to harass Dell's senior executives.

Tulip seeks this discovery, and contends that Dell's prior pattern of behavior in [*11] blocking discovery and inaccurately stating that no responsive documents could exist in certain places that were subsequently found to have responsive documents, causes it to doubt Dell's representation that all relevant documents have been produced. Tulip suggests a solution that it asserts is sensitive to concerns that Dell may have about privilege and confidentiality. Tulip seeks the following relief: Tulip suggests that the e-mails on the current hard drives of the identified Dell executives be placed on a searchable CD ROM or database. Tulip's consultant will search the CD ROM on certain mutually agreed upon search terms that relate to the infringing products or to this case. Such terms may involve "Tulip" or code words for the allegedly infringing models such as "STINGER," "MASH," or "HONEYCUT." If the search terms generate hits, Dell will review the documents and produce them to Tulip subject to the privilege and confidentiality designations provided under the protective order.

4. Dell's Destruction of Responsive Documents

Tulip also urges the court to impose sanctions on Dell for Dell's destruction of a box of documents that contained responsive information relating to [*12] this lawsuit. The facts regarding Dell's document destruction are as follows.

On March 26, 2001, Tulip served Dell with its First Set of Requests for Production of Documents, pursuant to *Fed. R. Civ. P. 34*. On June 15, 2001, in keeping with its document retention policy, Dell ordered its off-site document warehouse service vendor, Iron Mountain, to destroy approximately one hundred boxes of documents. On March 21, 2002, counsel for Dell wrote to counsel for Tulip, informing them that the documents were destroyed, and enclosing an index of the boxes. The parties agree that at least Box 92, which contained market research concerning the accused Dell Optiplex products, contained documents responsive to Tulip's document requests. Dell has offered to attempt to recreate the contents of that box, and notes that the documents on Box 92 "are likely cumulative" of already-produced materials.

Tulip requests that the court order Dell to take immediate steps to ensure that responsive documents, whether hard copy or electronic, are preserved and produced. To that end, Tulip's proposed order requests that the court order Dell to cease and desist from destroying all documents until such time as [*13] the court grants it permission to do so. It has also stated that once the full scope of destruction has been identified, Tulip will request an adverse inference against Dell related to issues associated with the documents destroyed.

5. Dell's Failure to Provide a Knowledgeable 30(b)(6) Witness

Last, Tulip contends that Dell failed to adequately prepare a knowledgeable 30(b)(6) witness to give testimony of behalf of Dell on issues relating to the production, retention, and destruction of documents. Tulip asserts that Henry Garrana, the 30(b)(6) witness produced by Dell to be deposed on these issues was unable to answer many of the questions asked. Tulip lists fifteen questions which Garrana was unable to answer with any degree of specificity. Those questions include whether Dell circulated a memo requesting that individuals not destroy or delete documents, whether there is a corporate policy that describes how files are to be kept and/or destroyed, whether Dell has a system-wide document storage system for electronic documents, and whether Dell had searched its off-site warehouse in response to Tulip's initial document requests.

According to Dell, Garrana was produced because [*14] the witness that was most knowledgeable, Diana Roberts, no longer works for Dell. Dell asserts that it prepared Garrana as best as it could and that he answered most of the questions to the best of his ability. Dell has offered to provide another witness if Tulip wants to deepen its inquiry on those topics covered. Tulip requests the court to order Dell to produce a properly prepared and knowledgeable 30(b)(6) witness. It further requests that Dell be ordered to pay Tulip's costs, expenses, and attorney's fees for the Garrana deposition.

II. DISCUSSION

A. Standard of Decision

While the discovery rules set forth in the Federal Rules of Civil Procedure are meant to "secure the just, speedy, and inexpensive determination of every action," *Fed. R. Civ. P. 1.*, the parties are well aware that the process of taking discovery in complex civil litigation is

2002 U.S. Dist. LEXIS 7792, *; 52 Fed. R. Serv. 3d (Callaghan) 1420; 63 U.S.P.Q.2D (BNA) 1527

often time-consuming, burdensome, and expensive. As the advisory committee explanatory statement to *Fed. R. Civ. P. 26-37* notes, however, the discovery procedures set forth under the rules make trial and settlement fairer by providing the parties with a mechanism to obtain evidence that would not otherwise to them.

In an [*15] ideal world, counsel for the parties would work together to streamline the discovery process. The amount of time that the court spends resolving discovery disputes suggests that, in reality, this is not often the case, perhaps due to the aggressive adversarial nature of litigation and the duty of each litigant's counsel to protect its own clients, where possible, from excessive burdens. In order to ensure that the adversarial process works effectively, therefore, courts implementing those rules must, when necessary, step in to ensure that discovery proceeds in a manner that is fair. In shepherding cases along to trial, the court seeks to encourage parties to work together to take discovery in a manner that is sensitive to the parties' interests in both gaining information from each other and in minimizing the potential burdens of the discovery process.

In this case, Tulip has come to court seeking an order to compel and seeking sanctions, because it believes that Dell is not cooperating in fulfilling its discovery obligations. The court reviews Tulip's assertions and the relief that it seeks, with an eye towards ensuring that parties participating in the discovery process fulfill [*16] their obligations under the rules while guarding against ordering relief that places an unfair burden on any one party.

B. Should the Court Grant Relief to Tulip Based on the Discovery Problems Raised in its Motion?

Tulip's motion raises significant concerns about a number of commonly raised discovery issues-- the discovery of electronically stored information, the production of a well-prepared 30(b)(6) witness, and the destruction of documents. After reviewing the briefing and listening to the parties at oral argument, it is apparent that Dell has not fulfilled many of its basic discovery obligations in this case. Dell's failure to identify an off-site warehouse which contained responsive information, its failure to take steps to prevent the destruction of potentially responsive documents, and its inaccurate representations about the scope of discoverable information accessible in its own data warehouse indicates either a failure to take its discovery obligations with the required degree of seriousness and diligence or an extreme lack of knowledge and control over its own files and procedures. The latter seems unlikely for a party as large and sophisticated as Dell.

That being [*17] said, the court also believes that the relief that Tulip seeks on its motion is far too broad.

Therefore, the court will briefly set forth the relief that it will order for each of the five areas identified by Tulip. By ordering such relief, however, the court does not seek to preclude Tulip from seeking broader relief, should it be able to demonstrate that the relief ordered by the court is insufficient.

1. Documents From Dell's Off-Site Warehouse

Dell and Tulip seem to have resolved the issue of the production of documents from Dell's off-site warehouse. Using the index provided by Dell, Tulip has asked for and shortly will receive copies of responsive documents.

Tulip's request that Dell review its index to ensure it is accurate and that Dell certify that it correctly describes the content of over forty-four thousand boxes stored in the off-site facility would require Dell to physically review every one of those boxes. Such a request is too burdensome and impractical. Instead, the court will order that Dell certify that the indexes provided to Tulip are the indexes that it uses in the ordinary course of its business. Further, the court will order Dell to provide Tulip with [*18] any other existing documentation that catalogs the contents of the off-site warehouse and that would be of assistance in determining whether further responsive documents exist at the site. Naturally, should Tulip request additional responsive documents based on the index or catalog, Dell shall promptly comply.

2. Electronic Documents

The court will discuss the discovery issues pertaining to e-mails and to access to Dell's data warehouse together. With regard to the data warehouse, it seems that the parties have already agreed to the very solution that Tulip requested the court to impose. Tulip and its consultant, Ontrack International, Inc. have been given access to Dell's databases, and, with the assistance of Ms. Sue Patti, have conducted data searches appropriate for Tulips' discovery purposes. Therefore, the court need not order further relief to resolve the data warehouse issue.

The court will next turn to the e-mail based discovery that Tulip seeks. Counsel for Dell has repeatedly argued that because Tulip has not shown that Dell breached its discovery obligations with regard to e-mail, the court should not accede to Tulip's request. Dell's argument misses the mark. The [*19] history of Dell's failures to cooperate in the discovery process -- and its sweeping but inaccurate positions that Tulip would never find certain documents that Tulip, through persistence and diligence, later uncovered -- counsel in favor of awarding Tulip some relief that allows them to ascertain for themselves whether Dell's representations that all responsive documents have been produced are accurate. Moreover, counsel for Dell could not represent

2002 U.S. Dist. LEXIS 7792, *; 52 Fed. R. Serv. 3d (Callaghan) 1420;
63 U.S.P.Q.2D (BNA) 1527

to the court that it has thoroughly searched these e-mail records for responsive information.

The procedure that Tulip has suggested for the discovery of e-mail documents seems fair, efficient, and reasonable. Dell shall provide the e-mails from the hard disks of the identified executives in electronic form to Ontrack. Ontrack will search the e-mails based on an agreed upon list of search terms. Tulip will give Dell a list of the e-mails that contain those search terms. Dell will then produce the e-mails to Tulip, subject to its own review for privilege and confidentiality designations.

While Tulip has stated that certain of the identified executives were involved in the 1994 roll-out of the allegedly infringing Optiplex device and that [*20] others may have had relevant communications with third parties about that device, it is, by contrast, unclear to the court that a search of Dell CEO Michael Dell's e-mails will produce responsive discovery in this case n2.

> n2 The only link that Tulip can point to between Michael Dell and any issue in this case is an e-mail from Michael Dell to another Dell executive, stating that he was happy that his project was completed. This does not indicate that Michael Dell's involvement in the alleged incorporation of the patented device into the Optiplex was at a detailed level, such that discovery of his e-mail records would uncover in relevant documents.

Therefore, the court will adopt the relief suggested by Tulip for all of the identified executives, except Michael Dell. If Tulip obtains additional information that leads it to believe that a search of Michael Dell's e-mail will produce responsive documents, it should present that information to the court. Until then, the parties should proceed with the e-mail discovery [*21] procedure outlined above and in Tulip's motion, for the following persons: John Stuewe, Jeff Clarke, Gary Curtis, Karl Steffes, Timothy Radloff, Ajay Kwatra, Abeye Teshome, Matthew Mendelow, Kevin Miller, Richard Chan, Neil Hand, Joseph Marengi, Eric Sholder, and Ro Parra.

3. Document Destruction

Dell concedes that it improperly destroyed Box 92. Even though Dell asserts that the box at issue was targeted for destruction in accordance with Dell's document retention policy and before Dell had received any document requests in this case, it is well established that once Dell had notice of this case, it had an affirmative obligation to preserve potentially responsive documents. Despite its failure to fulfill this obligation vis-a-vis Box 92, there is no evidence of bad faith on Dell's part or of the destruction of other potentially responsive boxes of information.

Tulip's requested relief would enjoin Dell from destroying any documents until the close of discovery in this case. Such relief is overly broad.

The person who submitted the documents in Box 92 into storage is a Dell employee named Barry Jennings, who has declared that he has personal knowledge as to the contents of [*22] that box. The court will order Dell, through Jennings, to identify the contents of Box 92 to Tulip and to recreate those contents to the best of his ability. Jennings should also be available to be deposed by Tulip, should it seek to do so. In addition, Dell should continue to submit to Tulip a list of document that are to be destroyed, so that Tulip can request that certain boxes, which it believes are responsive, be maintained for a period to allow them to be copied and produced.

4. Dell's 30(b)(6) Witness

The court finds that Dell's purported failure to produce an adequately prepared 30(b)(6) witness is not deserving of sanctions. At oral argument, Dell represented that the person most knowledgeable about the issues that Garrana was deposed on was no longer with the company. Dell also offered to produce another witness to answer the questions that Garrana was not able to. While the court hesitates to sanction Dell, Dell should work diligently to ensure that Tulip receives the answers to the questions that Garrana could not answer. This can be accomplished by producing another deponent for a short deposition, by producing documents, or by producing answers to interrogatories [*23] submitted by Tulip. The court leaves it to the parties to work out the most efficient manner for Tulip to obtain the answers to its questions. Should another deposition be required, however, the court will order Dell to pay the costs of that deposition.

III. CONCLUSION

The court will enter an order in accordance with this memorandum opinion.

REDACTED - PUBLIC VERSION, filed 5/24/05

## CERTIFICATE OF SERVICE

I, Glenn C. Mandalas, Esquire, hereby certify that on May 18, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE  19899-1347

I further certify that on May 18, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Glenn C. Mandalas

Glenn C. Mandalas (#4432)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
gmandalas@ycst.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Glenn C. Mandalas, Esquire, hereby certify that on May 24, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on May 24, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _/s/ Glenn C. Mandalas_
> Glenn C. Mandalas (#4432)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> gmandalas@ycst.com
>
> Attorneys for Plaintiff