IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GTECH CORPORATION,<br><br>      Plaintiff,<br><br>  v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC.,<br>SCIENTIFIC GAMES HOLDINGS<br>CORPORATION, SCIENTIFIC GAMES<br>FINANCE CORPORATION, and SCIENTIFIC<br>GAMES CORPORATION,<br><br>      Defendants. | Civil Action No. 04-138-JJF<br><br>**EXPEDITED CONSIDERATION**<br>**REQUESTED** |

## GTECH'S OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM DISCLOSING SCIENTIFIC GAMES' CONFIDENTIAL INFORMATION TO JOSEPH C. PERIN, JR.

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

Dated: June 10, 2005

WP3:1120535.1

63055.1001

## INTRODUCTION

Scientific Games moves to preclude GTECH from disclosing Scientific Games' confidential information to GTECH's expert Joseph C. Perin, Jr., on grounds that Mr. Perin, a *former* employee of GTECH who has not worked for GTECH since October 2004, is not "independent." Scientific Games cites no case law or any other authority in its motion. Its motion is in fact contrary to the Stipulated Protective Order to which Scientific Games itself agreed, and even a cursory review of case law and pertinent precedent shows that Scientific Games' motion is meritless.

The lack of merit fully exposes the true intent of Scientific Games in filing this motion – *delay*. Scientific Games repeatedly has been attempting to derail this case from being able to meet the Court-set Markman hearing date of September 15, 2005.[1] Opening expert reports are currently due June 20, 2005, and by objecting to Mr. Perin and filing this motion, Scientific Games is unilaterally preventing Mr. Perin and GTECH from being able to complete and serve a full report by that date, thereby threatening the remainder of the schedule. Given the upcoming deadline for opening expert reports, GTECH requests expedited consideration of this motion.

## ARGUMENT

Because Scientific Games has designated critical evidence regarding its accused product as "confidential" under the Protective Order, any expert on liability issues would need access to Scientific Games' "confidential" information to testify. Therefore, Scientific Games' motion to deny Mr. Perin access to that information is, in effect, a motion to disqualify him as an expert.

Courts have repeatedly recognized that "disqualification is 'a *drastic* measure which courts should hesitate to impose *except when absolutely necessary*.'" *Syngenta Seeds, Inc. v Monsanto Co.*, 2004 U.S. Dist LEXIS 19817, *4-*5 (D. Del. 2004) (Exh. A) (emphasis added), *quoting Owen*

---

[1] For example, just this afternoon, Defendants' counsel advised that they intend to request that the Court extend the schedule for completion of fact discovery, expert discovery, summary judgment and claim construction briefing and move the Markman hearing date, all over GTECH's objection. Defendants' cite in support of its purported reason for requiring this extension of fact discovery delays caused by Defendants, not GTECH, and contention interrogatory responses, which GTECH has provided previously and is supplementing today, and which GTECH could not have supplemented earlier due to Defendants' failure to provide the requisite fact discovery necessary for such supplementation previously. Defendants' delay tactics should not be countenanced.

1

*v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). Courts should grant disqualification "only hesitantly, reluctantly, and rarely." *Hewlett-Packard Co. v. EMC Corp.*, 330 F.Supp.2d 1087, 1094 (N.D. Cal. 2004). "The policy considerations militating against disqualification are ensuring that parties have access to qualified expert witnesses and allowing experts to pursue their professional calling." *Syngenta*, 2004 U.S. Dist. LEXIS at *12.

In this case, Scientific Games objects to Mr. Perin on grounds that he is not "independent" due to his previous employment by GTECH. However, the Protective Order – which Scientific Games and GTECH negotiated and to which Scientific Games expressly agreed – states that the parties' confidential information may be disclosed to "independent consultants and experts who are not *current* employees of any party in this matter," implicitly permitting former employees of a party to qualify as independent experts. (*See* D.I. 26 at ¶ 6(b)). In its motion to the Court, Scientific Games omits any reference to the Protective Order's prohibition of only "current" employees.

Scientific Games' argument that Mr. Perin is not "independent" is contrary to both fact and law. Mr. Perin became employed by GTECH due to GTECH's acquisition in 2003 of Interlott Technologies, Inc., which was headquartered in Mason, Ohio. (*See* Exhibit B, Perin Affidavit at ¶¶ 2-3). After the acquisition, GTECH transitioned Interlott's operations to Rhode Island, where GTECH is headquartered and where GTECH's engineering operations are located, and GTECH eventually closed the Interlott Ohio facilities. (*Id.* at ¶ 5). Mr. Perin's state of residence is Ohio. (*Id.* at ¶ 4). Mr. Perin did not want to relocate to Rhode Island and continued employment at GTECH would have required that relocation. (*Id.* at ¶ 5). In October 2004, Mr. Perin ended his employment at GTECH. (*Id.* at ¶¶ 2-3, 5).

Shortly thereafter, Mr. Perin became employed by Harris Corp., in Ohio. (*Id.* at ¶ 6). At Harris Corp., Mr. Perin works on data transmission products, in a business completely unrelated to the lottery business of GTECH and Scientific Games. (*Id.* at ¶¶ 6-7). Since October 2004, Mr. Perin has not done any lottery-related work or any work for GTECH, and he has no plans to do so. (*Id.* at ¶ 8).

In its motion, Scientific Games cites no authority for its argument that Mr. Perin is not an "independent" expert, and it fails to bring to the attention of the Court any prior case law regarding

2

who is considered an "independent" expert and, in particular, case law that supports GTECH's position that Mr. Perin is independent. In *Ares-Serono, Inc. v. Organon International B.V.*, 153 F.R.D. 4 (D. Mass. 1993), the court found that a former employee of a party, who has no present involvement in the party's competitive decisions, is "independent." The court said:

> Significantly, Carter *no longer occupies a position at Serono. In the past*, however, she, she was actively involved in decisions connected with securing regulatory approval for fertility drugs. The extent of Carter's <u>employment</u> and association with Serono *in the past* is therefore considerable. The extent of her present involvement, however, is minimal. To state the obvious, she *no longer participates in Serono's competitive decisions*. Similarly, the possibility of future involvement with Serono is remote. Accordingly, ... Carter is properly characterized as an *independent* expert.

(*Id.* at 6-7 (emphasis added). The court in *Ares-Serono* also found significant that Carter had agreed to be bound by the terms of the Protective Order that was entered in that case. (*Id.* at 7).

The facts are similar here. Mr. Perin has no longer occupies a position with GTECH and is not involved in any of GTECH's competitive decision-making. Further, Mr. Perin has executed the required undertaking which, states, *inter alia*, that he "will be bound by and will comply with all of the provisions of" the Protective Order entered in this case. (*See* Defendants' Motion Exh. A (D.I. 82)).

Scientific Games raises a "red herring" argument that the fact that Mr. Perin made inventions while employed by GTECH resulting in patents owned by GTECH supports the argument that he is not "independent." Those patents are not owned by Mr. Perin (they are owned by GTECH), so there is no danger of Mr. Perin using Scientific Games information to assert those patents. Moreover, those patents are not involved in this case. Scientific Games points out that those patents reference the asserted '337 patent, but they do so because they are related to lottery machines. The patents, though, are all directed to different inventions made roughly <u>ten years</u> or more after the invention of the '337 patent, which was made in 1987.[2]

---

[2] Insofar as Defendants request a covenant not to sue on these patents, that should be rejected. There is no basis for such relief, and the Defendants cite none. Further, Defendants claim that such a covenant is necessary is nonsensical at best.

3

Significantly, the fact that Mr. Perin was an inventor while at GTECH does not put Scientific Games confidential information at risk. In *Standard Space Platforms Corp. v. United States*, 35 Fed. Cl. 505 (U.S. Claims Ct. 1996), the plaintiff and patent owner Standard Space sought to disclose the defendant's confidential information to the plaintiff's CEO. The plaintiff's CEO previously was "an inventor of space technology," which was the technology at issue in the case. However, the plaintiff had become an inactive corporation, and the CEO was no longer involved in space technology. The court in *Standard Space* stated:

> [T]he court finds that defendant has failed to show that there is any greater risk that Mr. Perkins would misuse confidential information as compared to an aerospace or other technical expert. In fact, there may well be less risk because, by all appearances, he is no longer active in the aerospace field ... .

*Id.* at 509.

Given the policy consideration in protecting the parties' abilities to retain qualified experts and the fact that Mr. Perin poses absolutely no threat to misuse Scientific Games' confidential information, Scientific Games' motion should be denied.

## CONCLUSION

Based on the foregoing, Defendants' Motion To Preclude Plaintiff From Disclosing Scientific Games' Confidential Information to Joseph C. Perin, Jr., should be denied.

YOUNG, CONAWAY, STARGATT
& TAYLOR, LLP

_____
Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19889
(302) 571-6600
Attorneys for Plaintiff GTECH Corporation

OF COUNSEL
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

Dated: June 10, 2005

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on June 10, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld, Esquire
>Morris Nichols Arsht & Tunnell
>1201 North Market Street
>PO Box 1347
>Wilmington, DE 19899-1347

I further certify that on June 10, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>_/s/ John W. Shaw_____
>John W. Shaw (#3362)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware 19801
>(302) 571-6600
>jshaw@ycst.com
>
>Attorneys for Plaintiff