# EXHIBIT A

LEXSEE 2004 U.S. DIST LEXIS 19817

**SYNGENTA SEEDS, INC., Plaintiff, v. MONSANTO COMPANY, DEKALB GENETICS CORP., PIONEER HI-BRED INTERNATIONAL, INC., DOW AGROSCIENCES, LLC, and MYCOGEN PLANT SCIENCE, INC. and AGRIGENETICS, INC., collectively d.b.a. MYCOGEN SEEDS, Defendants.**

Civ. No. 02-1331-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 19817*

**September 27, 2004, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted, in part, summary judgment denied, in part by *Syngenta Seeds, Inc. v. Monsanto Co., 2004 U.S. Dist. LEXIS 24252 (D. Del., Nov. 19, 2004)*

**PRIOR HISTORY:** *Syngenta Seeds, Inc. v. Monsanto Co., 2004 U.S. Dist. LEXIS 19173 (D. Del., Sept. 21, 2004)*

**DISPOSITION:** [*1] Defendant's motion to disqualify was denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed a complaint alleging defendant infringed three of its patents. Defendant moved to disqualify plaintiff's expert witness.

**OVERVIEW:** Counsel for defendant contacted the expert to discuss the prospect of the expert serving as an expert for defendant in related litigation. The expert never signed or returned the letter from defendant's attorney, and he ignored follow-up phone calls. Plaintiff subsequently retained the expert. Defendant argued that defendant had an objectively reasonable expectation of confidentiality and that the expert received privileged and confidential information from defendant. The expert served as a consultant for defendant in unrelated litigation. With respect to the present litigation, the length of the relationship and the amount of contact between the expert and defendant was limited. Based on the conflicting representations of defendant and the expert, defendant did not show that it was more likely than not that the expert developed a basic understanding of defendant's modus operandi, patterns of operations, and decision making-process. Consequently, defendant did not have an objectively reasonable belief that it had a confidential relationship with the expert. In addition, the policy considerations balanced in favor of recognizing the expert.

**OUTCOME:** Defendant's motion was denied.

**LexisNexis(R) Headnotes**

*Evidence > Witnesses > Expert Testimony*
[HN1] Federal courts have the inherent power to disqualify experts. However, disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary. Courts have adopted a two-part inquiry to determine whether disqualification of an expert is necessary: (1) was it objectively reasonable for the party seeking disqualification to have concluded that a confidential relationship existed with the expert; and (2) was confidential or privileged information actually disclosed to the expert. If only one of these two factors is present, disqualification likely is inappropriate. The party moving for disqualification bears the burden of proof with respect each of these factors. In analyzing the disqualification issue, courts also balance competing policy objectives and concerns for fundamental fairness.

*Evidence > Witnesses > Expert Testimony*
[HN2] In determining the reasonableness of a party's conclusion that a fiduciary relationship existed between one party and another party's expert witness, courts consider several factors, including: (1) the length of the relationship and the frequency of contact; (2) whether the moving party funded or directed the formation of the opinion to be offered at trial; (3) whether the parties entered into a formal confidentiality agreement; (4) whether the expert was retained to assist in the litigation; (5) whether the expert was paid a fee; and (6) whether the expert was asked to agree not to discuss the case with opposing parties or counsel.

*Evidence > Witnesses > Expert Testimony*
[HN3] The policy considerations favoring disqualification

Case 1:04-cv-00138-JJF   Document 83-2   Filed 06/10/2005   Page 3 of 8

Page 2
2004 U.S. Dist. LEXIS 19817, *1

of an expert witness include preventing conflicts of interest and maintaining the integrity of the judicial process. The policy considerations militating against disqualification are ensuring that parties have access to qualified expert witnesses and allowing experts to pursue their professional calling.

**COUNSEL:** For SYNGENTA SEEDS INC., plaintiff: Paul M. Lukoff, Prickett, Jones & Elliott, Wilmington, DE.

For MONSANTO COMPANY, DEKALB GENETICS CORP, PIONEER HI-BRED INTERNATIONAL INC., DOW AGROSCIENCES LLC, MYCOGEN PLANT SCIENCES, INC., AGRIGENETICS INC., d.b.a. Mycogen Seeds, defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For DEKALB GENETICS CORP, MONSANTO COMPANY, DOW AGROSCIENCES LLC, PIONEER HI-BRED INTERNATIONAL INC., MYCOGEN PLANT SCIENCES, INC., AGRIGENETICS INC., counter-claimants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For SYNGENTA SEEDS INC., counter-defendant: Paul M. Lukoff, Prickett, Jones & Elliott, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

### MEMORANDUM ORDER

At Wilmington this 27th day of September, 2004, having reviewed defendant Pioneer Hi-Bred International, Inc.'s ("defendant's") motion to disqualify Dr. Michael Lee as an expert witness;

IT IS ORDERED that defendant's motion (D.I. 249) is denied for the reasons that follow:

1. On July 25, 2002, plaintiff Syngenta Seeds, Inc., filed a complaint alleging [*2] defendant infringed three of its patents. (D.I. 1)

2. In October of 2002, defendant brought suit against plaintiff, alleging misappropriation of defendant's corn germplasm. (D.I. 257) This suit, titled Pioneer Hi-Bred International, Inc. v. Syngenta Seeds, Inc., was brought in the Southern District of Iowa (the "Iowa Litigation"). (D.I. 253)

3. Shortly after defendant initiated the Iowa Litigation, Lindley Brenza, counsel for defendant, contacted Dr. Michael Lee to discuss the prospect of Dr. Lee serving as an expert for defendant in the Iowa Litigation. (D.I. 257 at 2)

4. On February 4, 2003 Brenza sent Dr. Lee a letter purporting to be a consultation agreement. (D.I. 250, ex. A) In this letter Mr. Brenza stated, "If the foregoing accurately sets forth the terms of your engagement, please confirm your agreement by signing and returning a copy of this letter." (D.I. 250, ex. A-1) Dr. Lee never signed or returned this letter, and likewise ignored follow-up phone calls from Mr. Brenza. (D.I. 257 at 2)

5. On May 19th, 2004 plaintiff retained Dr. Lee as a consultant in the present litigation. (D.I. 250, ex. B) In response defendant filed the present motion to disqualify Dr. Lee [*3] as an expert witness adverse to defendant. (D.I. 249) Defendant claims Dr. Lee's work for plaintiff creates a conflict of interest because of: (1) Dr. Lee's previous involvement, on behalf of defendant, in the Iowa Litigation; (2) Dr. Lee's previous involvement in other litigations involving the defendant; n1 (3) Dr. Lee's extensive dealings with defendant as a research collaborator; and (4) confidential information Dr. Lee received from all of his interactions with defendant. (D.I. 250 at 1) Defendant argues that Dr. Lee should be disqualified because defendant had an objectively reasonable expectation of confidentiality and because Dr. Lee received privileged and confidential information from defendant. (Id. at 6)

> n1 Dr. Lee served as a consultant for defendant in unrelated litigations titled Pioneer Hi-Bred International v. Asgrow Seed Co. and Pioneer Hi-Bred International v. DeKalb Genetics Corp., (D.I. 250 at 3)

6. Plaintiff contends, however, that defendant does not have an on-going confidential [*4] relationship with Dr. Lee and that defendant cannot demonstrate that Dr. Lee was ever in possession of any confidential information belonging to defendant that is relevant to the current proceedings. (D.I. 253 at 4) As a result, plaintiff argues that Dr. Lee should not be disqualified as plaintiff's expert in this case.

7. [HN1] Federal courts have the inherent power to disqualify experts. *Koch Ref. Co. v. Jennifer L. Boudreaux MV, 85 F.3d 1178, 1181 (5th Cir. 1996) Crenshaw v. Mony Life Ins. Co., 318 F. Supp. 2d 1015, 1026 (S.D. Cal. 2004); Grant Thornton, LLP v. F.D.I.C., 297 F. Supp. 2d 880, 881-82 (S.D. W. Va. 2004); Stencel v. Fairchild Corp., 174 F. Supp.2d 1080, 1083 (C.D. Cal. 2001); United States ex rel., Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc., 994 F. Supp. 244, 248 (D.N.J. 1997); Hansen v. Umtech Industrieservice*

*Und Spedition, 1996 U.S. Dist. LEXIS 10949, Civ. No. 95-516, slip op. at 3 (D. Del. July 3, 1996)*. However, disqualification is "a drastic measure which courts should hesitate to impose except when absolutely necessary." *Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993)*; [*5] *Grant Thornton, 297 F. Supp. 2d at 882*; *United States v. Salamanca, 2003 DSD 1, 244 F. Supp. 2d 1023, 1025 (D.S.D. 2003)*; see also *Palmer v. Ozbek, 144 F.R.D. 66, 67 (D. Md. 1992)* ("Courts are generally reluctant to disqualify expert witnesses.").

8. Courts have adopted a two-part inquiry to determine whether disqualification of an expert is necessary: (1) was it objectively reasonable for the party seeking disqualification to have concluded that a confidential relationship existed with the expert; and (2) was confidential or privileged information actually disclosed to the expert. *Crenshaw, 318 F. Supp. 2d at 1026*; *Mays v. Reassure Am. Life Ins. Co., 293 F. Supp. 2d 954, 957 (E.D. Ark. 2003)*; *Hansen v. Umtech Industrieservice Und Spedition, 1996 U.S. Dist. LEXIS 10949, Civ. No. 95-516, slip op. at 4 (D. Del. July 3, 1996)*. If only one of these two factors is present, disqualification likely is inappropriate. *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C., 202 F.R.D. 426, 428 (E.D. Pa. 2001)*; *Wang Labs., Inc. v. Toshiba Corp., 762 F. Supp. 1246, 1248 (E.D Va. 1991)* [*6] ("But disqualification is likely inappropriate if either inquiry yields a negative result."); *Hansen v. Umtech Industrieservice Und Spedition, 1996 U.S. Dist. LEXIS 10949, Civ. No. 95-516, slip op. at 4 (D. Del. July 3, 1996)*. The party moving for disqualification bears the burden of proof with respect each of these factors. *Koch Ref. Co. v. Jennifer L. Boudreaux MV, 85 F.3d 1171, 1181 (5th Cir. 1996)*; *Rodriguez v. Pataki, 293 F. Supp. 2d 305, 312 (S.D.N.Y. 2003)* (requiring the moving party to proffer evidence and stating that a conclusory assertion is insufficient); *Larson v. Rourick, 284 F. Supp. 2d 1155, 1156 (N.D. Iowa 2003)*. In analyzing the disqualification issue, courts also balance competing policy objectives and concerns for fundamental fairness. *Koch, 85 F.3d at 1182*; *Cordy v. Sherwin-Williams Co., 156 F.R.D. 575, 580 (D.N.J. 1994)*.

9. Although several opinions have analyzed the issue of expert disqualification, none of these rulings are binding precedent in the present matter. Nevertheless, existing persuasive authority points to the conclusion that Dr. Lee should not be disqualified.

10. [HN2] In determining [*7] the reasonableness of a party's conclusion that a fiduciary relationship existed, courts consider several factors, including: (1) the length of the relationship and the frequency of contact; (2) whether the moving party funded or directed the formation of the opinion to be offered at trial; (3) whether the parties entered into a formal confidentiality agreement; (4) whether the expert was retained to assist in the litigation; (5) whether the expert was paid a fee; and (6) whether the expert was asked to agree not to discuss the case with opposing parties or counsel. *Stencel, 174 F. Supp. 2d at 1083 (C.D. Cal. 2001)*; *Mayer v. Dell, 139 F.R.D. 1, 3 (D.D.C. 1991)*; *Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271, 280 (S.D. Ohio 1988)*.

11. With respect to the present litigation, the length of the relationship and the amount of contact between Dr. Lee and defendant was limited. According to Dr. Lee, "Prior to being retained by [plaintiff], I was not retained or contacted by [defendant] to act as an expert in connection with the present litigation." (D.I. 254 at B002) Some courts have found an implied confidential relationship based [*8] on a "long-standing series of interactions, which have more likely than not coalesced to create a basic understanding of the retaining party's modus operandi, patterns of operations, decision making-process, and the like." *Koch, 85 F.3d at 1182*. Defendant claims that in the past, Dr. Lee collaborated with defendant on numerous research projects over many years; that Dr. Lee consulted with defendant on two separate litigations; and that Dr. Lee was retained by defendant in the Iowa Litigation. (D.I. 250 at 2-3) Dr. Lee, however, describes his research with defendant as "several minor research projects" over the last several years. (D.I. 254 at B003) Furthermore, Dr. Lee described his consulting with defendant in the previous two litigations as consisting of reviewing documents and spending a few days preparing for his deposition. (D.I. 254 at B003) Finally, Dr. Lee claims that he never accepted defendant's offer to serve as an expert in the Iowa Litigation. Based on these conflicting representations, defendant has not shown that it is more likely than not that Dr. Lee developed a basic understanding of defendant's modus operandi, patterns of operations, and decision [*9] making-process. Consequently, the court concludes that the duration of the relationship and the frequency of contacts does not establish that defendant had an objectively reasonable belief that it had a confidential relationship with Dr. Lee.

12. The remaining factors also indicate a lack of an objectively reasonable expectation of a confidential relationship. First, defendant did not fund Dr. Lee's opinion in the present matter. Second, Dr. Lee and defendant did not enter into a formal confidentiality agreement for the present matter. n2 Third, Dr. Lee was not retained to assist in the present litigation. Fourth, defendant did not pay Dr. Lee a fee for the present litigation. Finally, in connection with the present litigation, Dr. Lee was not asked to agree not to discuss the case with plaintiff. n3 Consequently, the court concludes that it was not objectively reasonable for defendant to conclude that it had a fiduciary relationship

with Dr. Lee.

n2 Even in the Iowa Litigation, Dr. Lee did not enter into a formal confidentiality agreement with defendant. In that litigation Lindley Brenza, counsel for defendant, sent Dr. Lee a "retention letter" which defendant asked Dr. Lee to sign and return if he agreed to consult with defendant. (D.I. 250, ex. A) Dr. Lee never signed or returned the letter. (Id.)

[*10]

n3 In the Iowa Litigation, Dr. Lee was asked, in the retention letter from Lindly Brenza, to preserve the confidentiality of defendant's proprietary information. (D.I. 250, ex. A) However, this was a separate litigation and, furthermore, Dr. Lee did not sign or return this letter, manifesting his refusal to agree to the terms of the retention letter.

13. Even if defendant had established a reasonable expectation of a fiduciary relationship with Dr. Lee, it did not establish that confidential information has been exchanged. Confidential information, in the context of expert disqualification, includes discussion of: litigation strategy, the kinds of experts the party expects to retain, views on the strengths and weaknesses of each side, the role of each witness, and anticipated defenses. *Cherry Hill, 994 F. Supp. at 250* (quoting *Koch Refining Co., 85 F.3d at 1181*). Defendant has the burden of pointing to specific and unambiguous confidential disclosures that it made to Dr. Lee. *Mays, 293 F. Supp. 2d at 957*; *Cherry Hill, 994 F. Supp. at 251* [*11] (refusing to disqualify an expert because "the defendants [did] not submit[] any evidence to the court to suggest that [confidential communications or documents pertaining to litigation] were ever exchanged between [defendant] and [the expert]."); *In re Ambassador Group, Inc. Litig., 879 F. Supp. 237, 243 (E.D.N.Y. 1994)*. Defendant fails to point to any specific confidential communications that were shared with Dr. Lee. Defendant claims that Dr. Lee received confidential know-how and proprietary materials from defendant through research collaborations and litigation preparation. (D.I. 250 at 8-9) Defendant also points to "the evident exchange of confidential information that took place and that is inevitably a part of preparing a witness for deposition." (D.I. 257 at 10) Neither of these allegations identify specific confidential information defendant gave to Dr. Lee or explain how this information relates to the present matter. As a result, defendant has not satisfied its burden of showing confidential information was shared with Dr. Lee.

14. Finally, this court finds that policy considerations balance in favor of recognizing Dr. Lee. [HN3] The policy considerations [*12] favoring disqualification include preventing conflicts of interest and maintaining the integrity of the judicial process. *English Feedlot, Inc. v. Norden Labs., Inc., 833 F. Supp. 1498, 1505 (D. Colo. 1993)*. The policy considerations militating against disqualification are ensuring that parties have access to qualified expert witnesses and allowing experts to pursue their professional calling. Id. The court does not believe that allowing Dr. Lee to serve as an expert adverse to defendant creates a conflict of interest or that it challenges the integrity of the judicial process. The court has already found that Dr. Lee's previous work with defendant does not create a conflict of interest. Furthermore, Dr. Lee made a conscious decision to turn down the consulting position with defendant in the Iowa Litigation and take the position with plaintiff in this case. As a result, the policy consideration of allowing experts to pursue their professional calling marshals in favor of recognizing Dr. Lee.

15. In light of the forgoing, the court denies defendant's motion to disqualify Dr. Lee. (D.I. 249)

Sue L. Robinson

United States District Judge

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GTECH CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> SCIENTIFIC GAMES INTERNATIONAL, INC., SCIENTIFIC GAMES HOLDINGS CORPORATION, SCIENTIFIC GAMES FINANCE CORPORATION, and SCIENTIFIC GAMES CORPORATION, <br><br> Defendants. | Civil Action No. 04-138-JJF |

### AFFIDAVIT OF JOSEPH C. PERIN, JR.

I, Joseph C. Perin, Jr. hereby declare, under penalty of perjury:

1. I have been retained by GTECH Corporation as an Expert in the above-captioned matter.

2. I was employed by Interlott Corporation, in Mason, Ohio, until Interlott's acquisition by GTECH in 2003.

3. After Interlott's acquisition by GTECH, I was employed by GTECH Corporation until October 2004.

4. GTECH's engineering operations are in Rhode Island, not in Ohio, my state of residence.

5. In connection with the acquisition of Interlott, GTECH closed Interlott's Ohio facilities and integrated the engineering operations into its facilities in Rhode Island. Accordingly, continued employment with GTECH would have required that I relocate to Rhode Island. I left my employ with GTECH because, for personal reasons, I did not wish to relocate to GTECH's headquarters in Rhode Island.

6. Upon leaving the employ of GTECH, I became employed by, and am currently employed by, Harris Corporation, a communications equipment company, in work relating to data transmission products.

7. My work at Harris Corporation is entirely unrelated to the lottery business, GTECH, and Scientific Games.

8. Other than my work as an expert in this case, I am not currently involved in any lottery-related work or in any work with GTECH. At present, I also have no plans to become involved in the future in any other lottery-related work or work with GTECH.

Joseph C. Perin, Jr.

1