# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

                Plaintiff,

        v.

SCIENTIFIC GAMES INTERNATIONAL,
INC.; SCIENTIFIC GAMES HOLDINGS
CORPORATION; SCIENTIFIC GAMES
FINANCE CORPORATION; AND
SCIENTIFIC GAMES CORPORATION,

                Defendants.

Civil Action No. 04-138-JJF

## DEFENDANTS' FIRST SET OF INTERROGATORIES
## DIRECTED TO PLAINTIFF GTECH CORPORATION

Pursuant to Fed. R. Civ. P. 33, defendants Scientific Games International, Inc.,

Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific

Games Corporation (collectively "Scientific Games") request that plaintiff GTECH Corporation

("GTECH") answer the following interrogatories under oath, within thirty (30) days of service.

## DEFINITIONS

1.      The "Patents-in-Suit" means United States Patent Nos. 4,982,337 and

5,222,624.

2.      "Related Patent" or "Related Application" means each patent or

application, whether United States or foreign and whether abandoned or issued, to which any

Patent-in-Suit claims priority, or that claims priority to any of the Patents-in-Suit, or that claims

priority to the same patents and applications to which any Patent-in-Suit claims priority,

including any continuations, continuations-in-part, divisions, re-examinations, reissues, and any

other patents or applications disclosing, describing, or claiming any invention disclosed,

described, or claimed in the Patents-in-Suit.

3.    "GTECH" means plaintiff GTECH Corporation, its parents, subsidiaries

and affiliated companies, including Interlott Technologies, Inc.

## INTERROGATORIES

INTERROGATORY NO. 1:

With respect to your allegation that Scientific Games is infringing the Patents-In-

Suit "under 35 U.S.C. § 271(a), (b) and/or (c) by making, using, offering for sale, selling and/or

importing into the United States products . . . and/or by contributing to or inducing such

infringement by others," identify each claim of the Patents-in-Suit that you contend is infringed,

and for each asserted claim, identify each allegedly infringing product and describe in detail the

basis for your allegation of infringement (including whether literal or under the doctrine of

equivalents), state each fact supporting that allegation, identify each person with knowledge

relating to that fact and each document relating to that fact, and provide claim charts setting forth

how each limitation of each asserted claim of the Patents-in-Suit is met by each allegedly

infringing product.

INTERROGATORY NO. 2:

For each limitation of any asserted claim of the Patents-in-Suit written in means-

plus-function or step-plus-function format pursuant to 35 U.S.C. § 112, ¶ 6, identify the structure

or act corresponding to each such claim limitation described in the specification of the patent,

identify each element or step of any allegedly infringing product that you contend has the same

function and the same or equivalent structure or act, state each fact supporting that allegation,

and identify each person with knowledge relating to that fact and each document relating to that fact.

INTERROGATORY NO. 3:

For each asserted claim of the Patents-in-Suit, state GTECH's proposed construction of each claim term and identify any special or uncommon meaning, state in detail the basis for GTECH's construction, state each fact supporting GTECH's construction, identify each part of the specification or prosecution history that supports GTECH's construction, identify any extrinsic evidence that supports GTECH's construction, identify any item of evidence that is contrary to GTECH's construction, and identify each person with knowledge relating to GTECH's construction and each document relating to GTECH's construction.

INTERROGATORY NO. 4:

State the date of conception and reduction to practice of each asserted claim of the Patents-in-Suit, describe in detail the circumstances surrounding the conception and reduction to practice of that claim, state whether there was diligence from conception to reduction to practice, and if there was, state each fact relating to such diligence, and identify each person with knowledge of any fact relating to conception, reduction to practice or diligence, and identify each document relating to conception, reduction to practice or diligence.

INTERROGATORY NO. 5:

For each of the named inventors of the Patents-in-Suit, and any other persons involved in the development of each invention of the Patents-in-Suit, state the last known address of such person, describe in detail that person's past and present relationship with GTECH, and identify any agreements that person has with GTECH.

- 3 -

INTERROGATORY NO. 6:

State the basis for your allegation that GTECH is the owner of the entire right, title and interest in the Patents-in-Suit, state each fact supporting that allegation, and identify each person with knowledge relating to that fact and each document relating to that fact.

INTERROGATORY NO. 7:

Identify each item of prior art, or possible prior art, to any Patent-in-Suit, Related Patent, or Related Application, state the date GTECH or its counsel became aware of it, describe how GTECH or its counsel became aware of it, and identify each document relating to that prior art or possible prior art.

INTERROGATORY NO. 8:

For each asserted claim of the Patents-in-Suit, describe in detail the first embodiment of each claimed invention in the United States, identify by name or other designation each product that GTECH contends embodies any claimed invention and the claims allegedly embodied, identify when each such embodiment was first offered for sale, sold, publicly used or disclosed, and the circumstances surrounding the offer, sale, use or disclosure, and identify each person with knowledge relating to these facts and each document relating to these facts.

INTERROGATORY NO. 9:

State whether GTECH will rely on any secondary considerations or objective indicia of nonobviousness of any asserted claim of the Patents-in-Suit and, if so, state in detail GTECH's contentions with respect to each such consideration or indicia, state each fact

supporting GTECH's contentions, and identify each person with knowledge of each such fact and each document relating to that fact.

INTERROGATORY NO. 10:

      For each asserted claim of the Patents-in-Suit, identify the field of the invention, state the level of ordinary skill in the art, state each fact relating to your contention, and identify each person with knowledge of that fact and each document relating to that fact.

INTERROGATORY NO. 11:

      State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, including but not limited to the methods and factors used in the calculation, and identify each person with knowledge of each such fact and each document relating to that fact.

INTERROGATORY NO. 12:

      State each fact supporting your allegation that defendants' infringement of the Patents-in-Suit "has been and will be willful," and identify each person with knowledge relating to each such fact and each document relating to that fact.

INTERROGATORY NO. 13:

      Describe in detail all communications that GTECH, or any representative of GTECH, has had with any third party, including but not limited to any state lottery agency, concerning this lawsuit, either or both of the Patents-in-Suit, or any allegation of infringement of any patent by any of the defendants, and identify each person with knowledge of any such communication and each document relating to any such communication.

- 5 -

INTERROGATORY NO. 14:

Identify each product that you contend competes with the PlayCentral Kiosk, describe the markets in which it competes, and identify each person with knowledge of that product and each document relating to that product.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
    Attorneys for Defendants

July 9, 2004

414834

- 6 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served this 9th day of July 2004 upon the following in the manner indicated:

### BY HAND

Josy W. Ingersoll, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY  10004


Rodger D. Smith II

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GTECH CORPORATION, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC., )<br>SCIENTIFIC GAMES HOLDINGS )<br>CORPORATION, SCIENTIFIC GAMES )<br>FINANCE CORPORATION, and SCIENTIFIC )<br>GAMES CORPORATION, )<br><br>Defendants. ) | Civil Action No. 04-138-JJF |

## PLAINTIFF GTECH CORPORATION'S RESPONSE TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, GTECH

Corporation ("GTECH"), hereby serves the following objections and responses to Defendants',

Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games

Finance Corporation, and Scientific Games Corporation (collectively, "Defendants"), First Set of

Interrogatories.

## GENERAL OBJECTIONS

1.    GTECH objects to the interrogatories to the extent that the interrogatories, the

instructions and/or definitions contained or incorporated therein are inconsistent with and/or

attempt to impose obligations beyond those imposed by the Federal Rules of Civil Procedure

and/or by the Local Rules of the United States District Court for the District of Delaware ("Local

Rules"), or to the extent that they contravene orders of this Court, or to the extent that they assume facts not in evidence or not otherwise accepted or conceded by GTECH.

2.    GTECH objects to the interrogatories to the extent that they seek confidential technical and financial information. GTECH will produce such information only under an appropriate Protective Order entered by the Court in this Action.

3.    GTECH objects to each interrogatory to the extent that they call for information covered by protective orders in other litigations, third-party confidentiality agreements, or other legal duties of confidentiality.

4.    GTECH objects to each interrogatory to the extent that it calls for information that is protected by the attorney-client privilege and/or the attorney work-product doctrine or is otherwise immune from discovery. Such information will not be produced. Inadvertent disclosure of such information shall not constitute a waiver of the right of GTECH to object to the use of, and/or seek the return of, any such information that may be inadvertently disclosed. GTECH will comply with the Federal Rules of Civil Procedure and the Local Rules in identifying privileged material and work product immune material.

5.    GTECH objects to each interrogatory to the extent that it seeks information not relevant to the claim or defense of any party in this Action and/or not reasonably calculated to lead to the discovery of admissible evidence.

6.    GTECH objects to each interrogatory to the extent that it requests information that is not within the possession, custody, or control of GTECH, or that is publicly available, uniquely within the control of Defendants, or equally unavailable to both GTECH and Defendants, and therefore improperly seeks to extend GTECH's obligations beyond the requirements of the Federal Rules of Civil Procedure and the Local Rules.

2

7.    GTECH objects to each interrogatory to the extent that it seeks discovery of information available through other means that are less burdensome, less expensive, or more appropriate than through these interrogatories.

8.    GTECH objects to each interrogatory to the extent that it is vague, overly broad and unduly burdensome.

9.    GTECH objects to each interrogatory to the extent it seeks information without reference or limitation to any relevant time period as overbroad, unduly burdensome and seeking information that is neither relevant to the claim or defense of any party in this Action, nor reasonably calculated to lead to the discovery of admissible evidence.

10.    GTECH objects to each interrogatory to the extent that it incorporates, and seeks responses based on, erroneous statements of pertinent law.  No response by GTECH is not to be construed as agreement with Defendants' erroneous statements of pertinent law.

11.    The disclosure of any irrelevant information, whether or not in response to any interrogatory, is not to be construed as a waiver of any claim of irrelevancy.

12.    GTECH expressly reserves the right to supplement, amend, modify or correct these General Objections, as well as its specific Responses and Objections to Defendants' interrogatories.

13.    GTECH objects to the Definitions as vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, GTECH objects to the terms "affiliated companies" and "Interlott Technologies, Inc."

14.    All responses are made on an express reservation of the general objections and responses set forth above, and any specific objections set forth below.

3

**Interrogatory No. 1**

With respect to your allegation that Scientific Games is infringing the Patents-In-Suit "under 36 U.S.C. 271(a), (b) and/or (c) by making, using, offering for sale, selling and/or importing into the Untied States products ... and/or by contributing to or inducing such infringement by others," identify each claim of the Patents-in-Suit that you contend is infringed and for each asserted claim, identify each allegedly infringing product and describe in detail the basis for your allegation of infringement (including whether literal or under the doctrine of equivalents), state each fact supporting that allegation, identify each person with knowledge relating to that fact and each document relating to that fact, and provide claim charts setting forth how each limitation of each asserted claim of the Patents-in-Suit is met by each allegedly infringing product.

**Response No. 1**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known. GTECH further objects to this interrogatory to the extent that it is premature given the early stages of the litigation. Details of claims of infringement are more appropriately addressed in expert discovery, for which the Court has set a schedule. In addition, GTECH specifically objects to this interrogatory because it is a compound interrogatory which asks discrete questions that should have been asked, and should be counted, as separate interrogatories.

Subject to the General Objections and the foregoing specific objections, GTECH contends that Defendants' ticket dispenser machines, including but not limited to the PlayCentral Kiosk, directly infringe at least claim 18 of U.S. Patent No. 5,222,624 (the "'624 Patent"), and at least claims 20, 21 and 28 of U.S. Patent No. 4,982,337 (the "'337 Patent"), literally and/or under the doctrine of equivalents.

4

With respect to the '624 patent, GTECH believes that infringement can be determined from a visual inspection of machines as they are presently installed, as well as from publicly available Scientific Games machine specifications and marketing material, e.g. "Scientific Games International PlayCentral™ Lottery Ticket Kiosk" ("R1"), Scientific Games International's "Proposal to Tennessee Lottery" ("R2"), Scientific Games International's 2004 Advertisement from LAFLEURS ("R3") and the September 2003 issue of *SGI Today* ("R4").

| Patent | Claim | Infringing Product |
|---|---|---|
| 5,222,624 | 18. A lottery ticket vending machine comprising, in combination, | |
| | a housing, | *See, e.g.,* R1. |
| | display means for displaying an array of lottery ticket representations viewable from outside of said housing by a customer, said array representing tickets in said machine available for purchase, | *See, e.g.,* R2 & R4. |
| | acceptor means for receiving and accepting a means of monetary exchange, and | *See, e.g.,* R2. |
| | means for dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer, | *See, e.g.,* R1 & R2. |
| | in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen. | *See, e.g.,* R2 & R3. |

With respect to the '337 Patent, GTECH states that these claims are grounded on information and belief that literature for the Defendants' machines, such as the PlayCentral Kiosk, is marked with the U.S. Patent No. 5,950,898 ("R5"). The PlayCentral Kiosk is believed to operate as disclosed therein. In addition, GTECH states that these claims are also grounded on the references cited above for the '624 Patent.

| Patent | Claim | Infringing Product |
|---|---|---|
| 4,982,337 | 20. A ticket dispensing machine for dispensing tickets directly to the purchaser thereof, said dispenser comprising the combination of | |
| | housing means for storing a strip of tickets to be dispensed, | *See, e.g.,* R1. |
| | said housing means having an outlet opening accessible to the purchaser of tickets from said machine, | *See, e.g.,* R2. |
| | means operable for ordering a plurality of tickets in a single batch, | *See, e.g.,* R4. |
| | means for separating each of said tickets from said strip, | *See, e.g.,* R2 & R5. |
| | dispensing means for dispensing tickets through said outlet opening, and | *See, e.g.,* R2 & R5. |
| | control means for causing each ticket in said batch to be separated and dispensed separately from the other tickets in said batch regardless of the number of tickets in said batch. | *See, e.g.,* R2 & R5. |
| 4,982,337 | 21. A machine as in claim 20 in which said tickets are instant-winner lottery tickets. | *See, e.g.,* R1 & R2. |
| 4,982,337 | 28. A dispenser for dispensing tickets from a strip of tickets printed in a strip with the individual tickets being delineated from one another by lines of weakness, | |
| | moving means for moving said strip by a pre-determined distance to a position in which one of said lines is near a separation location at which adjacent tickets are separated from one another, | *See, e.g.,* R1 & R5. |
| | said moving means comprising drive means for moving said strip by a pre-determined distance, and | *See, e.g.,* R1 & R5. |

| | position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means to drive said strip until said output signal indicates that said strip actually has moved by said pre-determined distance to dispense one of said tickets, and to control means for severing a ticket from said strip. | *See, e.g.,* R1, R2, & R5. |
|---|---|---|

It is believed that the persons most knowledgeable about the accused products are current and former employees or agents of the Defendants.

**Interrogatory No. 2**

For each limitation of any asserted claim of the Patents-in-Suit written in means-plus-function or step-plus-function format pursuant to 35 U.S.C. § 112, ¶ 6, identify the structure or act corresponding to each such claim limitation described in the specification of the patent, identify each element or step of any allegedly infringing product that you contend has the same function and the same or equivalent structure or act, state each fact supporting that allegation, and identify each person with knowledge relating to that fact and each document relating to that fact.

**Response No. 2**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. GTECH further objects to this interrogatory to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege or work product doctrine. GTECH also objects to this interrogatory to the extent it is premature given the current phase of this case. The function and supporting structure of elements is a claim construction issue, for which the Court has set a claim construction briefing schedule. Additionally, GTECH specifically objects to the term "any asserted claim" as being vague since

discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known.

Subject to the General Objections and the foregoing specific objections, GTECH does not contend that any elements of claim 18 of the '624 Patent are subject to interpretation pursuant to 35 U.S.C. §112, ¶6. In the event the Court were to find otherwise, GTECH reserves the right to supplement this interrogatory.

Claims 20, 21 and 28 of the '337 Patent are written in means-plus-function or step-plus-function format pursuant to 35 U.S.C. §112, ¶6.

|  | Means |
|---|---|
| **Claim 20** | means for separating |
|  | means operable for ordering a plurality of tickets in a single batch |
| **Claim 28** | means for severing |
|  | position detecting means |

**Interrogatory No. 3**

For each asserted claim of the Patents-in-Suit, state GTECH's proposed construction of each claim term and identify any special or uncommon meaning, state in detail the basis for GTECH's construction, state each fact supporting GTECH's construction, identify each part of the specification or prosecution history that supports GTECH's construction, identify any extrinsic evidence that supports GTECH's construction, identify any item of evidence that is contrary to GTECH's construction, and identify each person with knowledge relating to GTECH's construction and each document relating to GTECH's construction.

**Response No. 3**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery

8

of admissible evidence.  GTECH further objects to this Interrogatory to the extent that it seeks

documents and information protected from disclosure by the attorney-client privilege or work

product doctrine and to the extent that it is premature given the early stages of the litigation.

Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since

discovery has not yet been completed and all the claims to be asserted in this Action cannot yet

be known.

GTECH also objects to this interrogatory to the extent it is premature.  The

Court's scheduling order provides a scheduled period for claim construction briefing.


**Interrogatory No. 4**

State the date of conception and reduction to practice of each asserted claim of the
Patents-in-Suit, describe in detail the circumstances surrounding the conception and reduction to
practice of that claim, state whether there was diligence from conception to reduction to practice,
and if there was, state each fact relating to such diligence, and identify each person with
knowledge of any fact relating to conception, reduction to practice or diligence, and identify each
document relating to conception, reduction to practice or diligence.


**Response No. 4**

In addition to the General Objections, GTECH objects to this interrogatory as

vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery

of admissible evidence.  The conception and reduction to practice of the invention is not relevant

to any presently asserted claim or defense in the case.  GTECH further objects to this

Interrogatory to the extent that it is premature given the early stages of the litigation.

Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since

discovery has not yet been completed and all the claims to be asserted in this Action cannot yet

be known.

9

Subject to the General Objections and the foregoing specific objections, GTECH states that it will rely on a date not later than February 17, 1989 for the '624 Patent and December 3, 1987 for the '337 Patent.

**Interrogatory No. 5**

For each of the named inventors of the Patents-in-Suit, and any other persons involved in the development of each invention of the Patents-in-Suit, state the last known address of such person, describe in detail that person's past and present relationship with GTECH, and identify any agreements that person has with GTECH.

**Response No. 5**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. GTECH further objects to this interrogatory to the extent that it seeks documents and information obtainable through other means that are less burdensome, less expensive, or more appropriate than through these interrogatories.

Subject to the General Objections and the foregoing specific objections, GTECH states the following:

| Name | Last Known Address |
|------|--------------------|
| Robert L. Burr | 7515 Charmant Dr. Ste. 1407 San Diego, CA |
| Laird A. Campbell | Rte. 2, Box 223 Laceys Springs, Alabama |
| Donald H. Keagle | 2018 Hensel Avenue Huntsville, Alabama |
| Alfred L. Fulton | 9423 O'Jay Dr. Huntsville, Alabama |
| Ed Turek | 5691 Kugler Mill Rd. Cincinnati, OH |

Additionally, subject to a Protective Order being entered by the Court in this Action, GTECH will produce available, non-privileged documents from which information responsive to this interrogatory may be derived or ascertained.

**Interrogatory No. 6**

State the basis for your allegation that GTECH is the owner of the entire right, title and interest in the Patents-in-Suit, state each fact supporting that allegation, and identify each person with knowledge relating to that fact and each document relating to that fact.

**Response No. 6**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, and unduly burdensome. GTECH further objects to this interrogatory to the extent that it seeks documents and information obtainable through other means that are less burdensome, less expensive, or more appropriate than through these interrogatories. Subject to the General Objections and the foregoing specific objections, GTECH states that it is the owner of the entire right, title and interest in the Patents-in-Suit as documented with the United States Patent and Trademark Office.

Subject to the General Objections and the foregoing specific objections, GTECH will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained.

**Interrogatory No. 7**

Identify each item of prior art, or possible prior art, to any Patents-in-Suit, Related Patent, or Related Application, state the date GTECH or its counsel became aware of it, describe how GTECH or its counsel became aware of it, and identify each document relating to that prior art or possible prior art.

11

**Response No. 7**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, GTECH objects to the terms "possible prior art" as being undefined, vague, and ambiguous.

Subject to the General Objections and the foregoing specific objections, GTECH will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained.

**Interrogatory No. 8**

For each asserted claim of the Patents-in-Suit, describe in detail the first embodiment of each claimed invention in the United States, identify by name or other designation each product that GTECH contends embodies any claimed invention and the claims allegedly embodied, identify when each such embodiment was first offered for sale, sold, publicly used or disclosed, and the circumstances surrounding the offer, sale, use or disclosure, and identify each person with knowledge relating to these facts and each document relating to these facts.

**Response No. 8**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known. GTECH objects to the terms "the first embodiment of each claimed invention", "embodies any claimed invention", "claims allegedly embodied", "each such embodiment", and "circumstances surrounding", as vague, ambiguous, and overbroad.

Subject to the General Objections and the foregoing specific objections, GTECH will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained.

**Interrogatory No. 9**

State whether GTECH will rely on any secondary considerations or objective indicia of nonobviousness of any asserted claim of the Patents-in-Suit and, if so, state in detail GTECH's contentions with respect to each such consideration or indicia, state each fact supporting GTECH's contentions, and identify each person with knowledge of each such fact and each document relating to that fact.

**Response No. 9**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. GTECH further objects to this Interrogatory to the extent that it seeks documents and information protected from disclosure by the attorney-client privilege or work product doctrine and to the extent that it is premature given the early stages of the litigation. Additionally, GTECH specifically objects to the term "any asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known.

GTECH also objects to this interrogatory as premature and irrelevant to any presently asserted claim or defense in the case. The Patents-in-Suit are lawfully issued and presumed valid.

13

**Interrogatory No. 10**

    For each asserted claim of the Patents-in-Suit, identify the field of the invention, state the level of ordinary skill in the art, state each fact relating to your contention, and identify each person with knowledge of that fact and each document relating to that fact.

**Response No. 10**

    In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, GTECH objects to the terms "field of the invention" as vague and overly broad.  Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known.  GTECH specifically objects to this interrogatory because it is a compound interrogatory which asks discrete questions that should have been asked, and should be counted, as separate interrogatories.

    GTECH also objects to this interrogatory as premature and irrelevant to any presently asserted claim or defense in the case.   The Patents-in-Suit are lawfully issued and presumed valid.

**Interrogatory No. 11**

    State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, including but not limited to the methods and factors used in the calculation, and identify each person with knowledge of each such fact and each document relating to that fact.

**Response No. 11**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

As to the extent of the injury suffered and the amount of damages, GTECH objects to the extent that this interrogatory is more appropriate for expert discovery, for which a schedule has been set by the Court.

Subject to the General Objections and the foregoing specific objections, GTECH will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained.

**Interrogatory No. 12**

State each fact supporting your allegation that defendants' infringement of the Patents-in-Suit "has been and will be willful," and identify each person with knowledge relating to each such fact and each document relating to that fact.

**Response No. 12**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to General Objections and the foregoing specific objections, GTECH states that Defendants have had knowledge of their willful conduct and are in the best position to supply information responsive to this request. On information and belief, GTECH asserts that Scientific Games has been aware of the Patents-in-Suit as least as early as its 1997 business interaction with On-Point Technologies regarding ticket vending machines.

**Interrogatory No. 13**

        Describe in detail all communications that GTECH, or any representative of GTECH, has had with any third party, including but not limited to any state lottery agency, concerning this lawsuit, either or both of the Patents-in-Suit, or any allegation of infringement of any patent by any of the defendants, and identify each person with knowledge of any such communication and each document relating to any such communication.

**Response No. 13**

        In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The requested information is not relevant to any claim or defense presently asserted in this lawsuit, nor is it reasonably calculated to lead to such information.

**Interrogatory No. 14**

        Identify each product that you contend competes with the PlayCentral Kiosk, describe the markets in which it competes, and identify each person with knowledge of that product and each document relating to that product.

**Response No. 14**

        In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically "competes with" and "relating to" are vague and ambiguous.

GTECH also objects to this interrogatory to the extent it is premature, and calls for information more appropriately obtained in expert discovery, for which the Court has set a schedule.

As to objections:

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Dated: August 18, 2004

Josy W. Ingersoll (#1088)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253

OF COUNSEL:

Thomas J. Meloro
Robert A. Whitman
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

17

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that copies of the foregoing

document were caused to be served on August 16, 2004 upon the following counsel of

record:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

Josy W. Ingersoll

# EXHIBIT C

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

RODGER D. SMITH
302 575 7205
302 498 6209 FAX
rsmith@mnat.com

August 30, 2004

BY FACSIMILE

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY 10004-1050

> Re:    GTECH Corp. v. Scientific Games International, Inc., et al.,
>        C.A. No. 04-138-JJF

Dear Tom:

I am writing about a number of discovery-related matters.

First, we have not received a response to my August 11, 2004 letter, in which we inquired as to whether your firm is representing the named inventors on the '337 and '624 patents, whether they have any documents relevant to this litigation, and whether they will appear voluntarily for deposition. Please provide us with that information as soon as possible.

Second, we have reviewed GTECH's responses to Scientific Games' First Set of Interrogatories and First Set of Document Requests, and have identified numerous improper objections and insufficient responses, as outlined below. Please let us know as soon as possible whether GTECH will withdraw its improper objections and provide proper discovery responses, or whether we will need to seek the Court's assistance.

### Interrogatory Responses

*General Objection No. 2.* GTECH states that it will produce confidential information "only under an appropriate Protective Order entered by the Court in this Action." That objection is inconsistent with the Local Rules in the District of Delaware. Local Rule 26.2 requires the production of confidential information, even before a formal Protective Order has been entered by the Court.

Thomas J. Meloro, Esquire
August 30, 2004
Page 2

*General Objection No. 3.*    GTECH objects to providing information covered by protective orders in other litigation and third-party confidentiality agreements. Please identify what information, if any, GTECH is withholding based on this objection, and identify the specific protective order or confidentiality agreement on which GTECH is withholding the information.

*General Objection No. 13.*    Please explain the basis for GTECH's objection to the terms "affiliated companies" and "Interlott Technologies, Inc."

*Interrogatory No. 1.*    GTECH objects to this interrogatory as premature, claiming that "[d]etails of claims of infringement are more appropriately addressed in expert discovery." Scientific Games is entitled to obtain discovery concerning the basis for GTECH's infringement claims now. Indeed, the Scheduling Order requires responses during fact discovery. Moreover, GTECH's "claim charts" provide no information whatsoever indicating how the PlayCentral Kiosk satisfies the limitations of the asserted claims. GTECH's response also fails to "describe in detail the basis for your allegation of infringement," fails to "state each fact supporting that allegation," and fails to "provide claim charts setting forth how each limitation of each asserted claim . . . is met by each allegedly infringing product." In essence, GTECH has done nothing more than list four claims that it is asserting, without asserting how it contends that those claims are infringed.

*Interrogatory No. 2.*    GTECH objects to this interrogatory claiming that the "function and supporting structure of elements is a claim construction issue, for which the Court has set a claim construction briefing schedule." Again, Scientific Games is entitled to obtain discovery concerning the basis for GTECH's infringement claims during the fact discovery period. Moreover, although GTECH states that claims 20 and 28 of the '337 patent are written in means-plus-function or step-plus-function format, it fails to "identify the structure or act corresponding to each such claim limitation described in the specification of the patent," fails to "identify each element or step of any allegedly infringing product that you contend has the same function and the same or equivalent structure or act," and fails to "state each fact supporting that allegation." Finally, is it GTECH's position that the "housing means," "dispensing means," and "control means" of claim 20 and the "moving means" and "drive means" of claim 28 are not means-plus-function elements?

*Interrogatory No. 3.*    GTECH also objects to this interrogatory claiming that "[t]he Court's scheduling order provides a scheduled period for claim construction briefing." Again, Scientific Games is entitled to obtain discovery concerning the basis for GTECH's infringement claims, including GTECH's proposed claim construction, during the fact discovery period.

*Interrogatory No. 4.*    Based on GTECH's response, we will operate on the assumption that GTECH is not asserting a priority date earlier than its filing dates.

*Interrogatory No. 5.*    GTECH's response fails to "describe in detail" the individuals' "past and present relationship with GTECH," and fails to "identify any agreements that person has with GTECH." Moreover, GTECH's objection to providing information until a Protective Order has been entered by the Court is inappropriate under the Local Rules, as discussed above.

Thomas J. Meloro, Esquire
August 30, 2004
Page 3

*Interrogatory Nos. 6, 7 & 8.* Please produce the documents immediately.

*Interrogatory No. 10.* We do not understand GTECH's position that the field of the invention and the level of skill in the act are not relevant. Please provide answers.

*Interrogatory Nos. 11 & 14.* GTECH objects to these interrogatories claiming that they are "more appropriate for expert discovery, for which a schedule has been set by the Court." Scientific Games is entitled to obtain discovery concerning the factual basis for GTECH's damages claim during the fact discovery period. Moreover, GTECH's attempt to rely on Rule 33(d) in response to a contention interrogatory seeking the factual basis for allegations is improper.

*Interrogatory No. 13.* GTECH refuses to provide any information claiming that the "requested information is not relevant to any claim or defense presently asserted in this lawsuit, nor is it reasonably calculated to lead to such information." GTECH's communications with state lottery agencies or others concerning the patents in suit, its allegations of infringement, and this litigation are relevant to GTECH's infringement claims and are a proper subject for discovery. Is GTECH seriously contending that statements it made about the patents and its infringement allegations are not relevant to this case?

Document Requests

*General Objection No. 6.* GTECH objects to the production of confidential information "prior to the entry of a suitable protective order." As discussed above, this objection is improper. When will GTECH produce the documents responsive to Scientific Games' First Set of Document Requests, which were requested nearly two months ago?

*General Objection Nos. 14 & 15.* GTECH objects to producing documents covered by protective orders in other litigation and third-party confidentiality agreements. Please identify what documents, if any, GTECH is withholding based on this objection, and identify the specific protective order or confidentiality agreement on which GTECH is withholding documents.

*Document Request No. 5.* GTECH has asserted privilege and work product objections, in response to this and other requests. When will GTECH provide a privilege log?

*Document Request No. 13 & 14.* GTECH objects to producing responsive documents claiming they are "neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence." Scientific Games is entitled to obtain discovery concerning any products that embody or use the inventions of the patents in suit, and any decision to discontinue selling or marketing such products, in connection with defending against GTECH's damages claim and with respect to other issues as well.

Thomas J. Meloro, Esquire
August 30, 2004
Page 4

     *Document Request No. 24.* GTECH objects to producing responsive documents claiming they are "neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence." Scientific Games is entitled to obtain discovery about prior art to the patents in suit, including "any lottery ticket dispensing machines designed, manufactured or marketed before 1990."

     *Document Response No. 26.* We do not understand GTECH's objection to providing documents relating to lottery ticket dispensing technology authorized or received by the inventors. Please produce those documents.

     *Document Request No. 27.* GTECH objects to producing responsive documents claiming they are "neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence." In this case, however, where none of the inventors are employed by GTECH, it is important for Scientific Games to obtain discovery concerning the relationship between GTECH and the inventors. Moreover, in response to Interrogatory No. 5, which asks GTECH to describe the inventors' "past and present relationship with GTECH, and identify any agreements that person has with GTECH," GTECH has agreed already to "produce available, non-privileged documents from which information responsive to this interrogatory may be derived or ascertained."

     *Document Request No. 29.* GTECH objects to producing documents received from, sent to, or written by, Mr. Burr. There is no legitimate basis for that objection. The documents should be produced.

     *Document Request No. 35.* GTECH objects to producing responsive documents claiming they are "neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence." Presentations to GTECH's board of directors concerning the patents in suit, the accused products, and this litigation are certainly relevant to GTECH's claim, and are a proper subject for discovery.

     *Document Request No. 41.* GTECH seeks to limit its response to "license agreements involving the patents-in-suit." Scientific Games is entitled to license agreements, and related documents, under "any patents relating to lottery ticket distribution and/or ticket dispensing technology," not just those related to the patents in suit.

     *Document Request No. 42.* GTECH objects to producing responsive documents claiming they are "neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence." Given that GTECH is claiming damages for Scientific Games' alleged patent infringement, Scientific Games is entitled to discovery concerning GTECH's profits and losses.

     *Document Request No. 49.* GTECH objects to producing responsive documents claiming they are "neither relevant to the claim or defense of any party or the subject matter

Thomas J. Meloro, Esquire
August 30, 2004
Page 5

involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence." GTECH, however, has made public statements that an allegation or finding of improper conduct in the context of civil or criminal allegations in Brazil may have a material effect on GTECH's ability to obtain or retain contracts. Accordingly, Scientific Games is entitled to obtain discovery concerning these proceedings in connection with GTECH's damages claim.

Sincerely,

Rodger D. Smith

RDS/dal

425034

# EXHIBIT D

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

RODGER D. SMITH
302 575 7205
302 498 6209 FAX
rsmith@mnat.com

September 28, 2004

BY FACSIMILE

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY  10004-1050

> Re:     GTECH Corp. v. Scientific Games International, Inc., et al.,
>         C.A. No. 04-138-JJF

Dear Tom:

I am writing in response to your September 17, 2004 letter concerning GTECH's responses to Scientific Games' First Set of Interrogatories and First Set of Document Requests.

## General Objections

*Interrogatory General Objection No. 2, Interrogatory No. 5, and Document Request General Objection No. 6.* GTECH's refusal to produce documents and information until there is a Protective Order in place is wholly inappropriate and inconsistent with Local Rule 26.2, which was designed to avoid this very circumstance. *See Pitney Bowes, Inc. v. Stamps.com, Inc.*, C.A. No. 99-381-JJF (D. Del. Apr. 24, 2000) (ordering defendant to produce documents pursuant to D. Del. L.R. 26.2). Moreover, GTECH's failure to respond to the draft Protective Order -- while at the same time using the lack of a Protective Order as an excuse for not producing its documents -- is unacceptable. We intend to raise these issues with the Court.

*Interrogatory General Objection No. 3 and Document Request General Objection Nos. 14 & 15.* Please identify immediately what documents or information, if any, GTECH is withholding based on protective orders in other litigation or third-party confidentiality agreements, and identify the protective order or confidentiality agreement on which GTECH is relying. Scientific Games should not be required to wait until it receives GTECH's privilege log to assess the basis on which GTECH is withholding such documents or information.

Thomas J. Meloro, Esquire
September 28, 2004
Page 2

## Interrogatories

*Interrogatory No. 1, 2 & 3.* Scientific Games is not required to wait until expert discovery to obtain discovery concerning the basis for GTECH's infringement claims, and is not required to wait until claim construction briefing to obtain discovery concerning GTECH's proposed claim constructions. We intend to raise these issues with the Court.

*Interrogatory No. 4.* If GTECH intends to rely on earlier priority dates, it should immediately supplement its response to Interrogatory No. 4 to provide the basis for those dates. Otherwise, Scientific Games will continue to operate on the assumption that GTECH is not asserting a priority date earlier than its filing dates.

*Interrogatory Nos. 6, 7 & 8.* GTECH still has not produced any documents, and has not provided any comments on the draft Protective Order. We intend to raise these issues with the Court.

*Interrogatory No. 10.* The field of invention and level of skill in the art are also relevant to the issue of infringement, on which GTECH bears the burden of proof. We intend to raise with the Court GTECH's failure to respond to Interrogatory No. 10.

*Interrogatory Nos. 11 & 14.* Scientific Games is not required to wait until expert discovery to obtain discovery concerning the factual basis for GTECH's damages claim. It is also improper for GTECH to rely on Rule 33(d) in responding to a contention interrogatory seeking the factual basis for its allegations. We intend to raise these issues with the Court.

*Interrogatory No. 13.* Scientific Games does not agree that Interrogatory No. 13 is "facially over broad." Please let us know when GTECH will supplement its response to provide the requested information.

## Document Requests

*Document Request No. 13 & 14.* Scientific Games is entitled to obtain discovery concerning any products that embody or use the inventions of the patents in suit, and any decision to discontinue selling or marketing such products, in connection with defending against GTECH's damages claim and with respect to other issues as well. We intend to raise with the Court GTECH's refusal to produce the requested documents.

*Document Request No. 24.* Please confirm that GTECH will produce documents concerning "any lottery ticket dispensing machines designed, manufactured or marketed before 1990."

Thomas J. Meloro, Esquire
September 28, 2004
Page 3

      *Document Response No. 26.*  We intend to raise with the Court GTECH's refusal to produce documents relating to lottery ticket dispensing technology authored or received by the inventors.

      *Document Request No. 27.*  We intend to raise with the Court GTECH's refusal to produce documents concerning the relationship between GTECH and the inventors or anyone else involved in the development of the patented inventions.

      *Document Request No. 29.*  We intend to raise with the Court GTECH's refusal to produce documents received from, sent to, or written by Mr. Burr.

      *Document Request No. 35.*  We are not amending this request, and intend to raise with the Court GTECH's refusal to produce responsive documents.

      *Document Request No. 41.*  License agreements involving patents other than the patents in suit may be relevant to GTECH's damages claim.  Please confirm that GTECH will produce license agreements, and related documents, under "any patents relating to lottery ticket distribution and/or ticket dispensing technology," not just those related to the patents in suit.

      *Document Request No. 42.*  GTECH's profits and losses are relevant to GTECH's damages claim.  Please confirm that GTECH will produce documents concerning its profits and losses.

      *Document Request No. 49.*  GTECH has made public statements in its SEC filings that an allegation or finding of improper conduct in the context of civil or criminal allegations in Brazil may have a material effect on GTECH's ability to obtain or retain contracts (*see, e.g.,* GTECH's 10-K, filed on May 12, 2004, at 98).  Please confirm that GTECH will produce documents responsive to this request.

      Sincerely,

      Rodger D. Smith

429684

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

        Plaintiff,

        v.

SCIENTIFIC GAMES INTERNATIONAL,
INC., SCIENTIFIC GAMES HOLDINGS
CORPORATION, SCIENTIFIC GAMES
FINANCE CORPORATION, and
SCIENTIFIC GAMES CORPORATION,

        Defendants.

C.A. No. 04-138-JJF

## SCIENTIFIC GAMES' SUPPLEMENTAL RESPONSES TO PLAINTIFF'S INTERROGATORIES NOS. 2 AND 7

Defendants Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Scientific Games") hereby supplement their responses and object to plaintiff's Interrogatories Nos. 2 and 7 as follows:

## GENERAL OBJECTIONS

1.      Scientific Games objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

2.      Scientific Games objects to the Interrogatories and the Instructions to the extent they seek to impose obligations not required under the Federal Rules of Civil Procedure or the Local Rules of the District of Delaware.

3.      Scientific Games objects to the definition of "Scientific Games" as overly broad.

4.    Scientific Games objects to the definition of "TVM" as overly broad.

5.    Scientific Games objects to the definition of "Scientific Games' TVM" as overly broad to the extent it seeks to include products that have not been accused of infringement.

6.    Scientific Games objects to the Interrogatories to the extent they seek Scientific Games' confidential information.

7.    Scientific Games objects to the Interrogatories to the extent they seek production of confidential information of third parties.

8.    Scientific Games objects to the Interrogatories to the extent they seek information that is not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence.

9.    Scientific Games objects to the Interrogatories to the extent they are overly broad and unduly burdensome.

10.    Scientific Games objects to the Interrogatories to the extent they seek information not in the possession, custody, or control of Scientific Games.

11.    Scientific Games reserves the right to supplement its responses to the Interrogatories as appropriate.

The foregoing General Objections are incorporated into each of the Specific Responses to the Interrogatories.

## SUPPLEMENTAL RESPONSES TO PLAINTIFF'S INTERROGATORIES

### INTERROGATORY NO. 2:

For each product identified in Interrogatory No. 1, state all reasons why Defendants contend the product does not infringe any of the claims of the Patents-in-Suit, identify each person with knowledge of the reasons and all facts and documents tending to support that contention, and identify each person with knowledge of the reasons and all facts and documents tending to contradict that contention.

### RESPONSE TO INTERROGATORY NO. 2:

Scientific Games objects to Interrogatory No. 2 as seeking information that is protected by the attorney-client privilege, work product immunity or any other applicable privilege or immunity. Scientific Games also objects to Interrogatory No. 2 as overly broad and as seeking information not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence insofar as GTECH has alleged infringement only with respect to claim 18 of the '624 patent and claims 20, 21 and 28 of the '337 patent. Scientific Games also objects to Interrogatory No. 2 because, although GTECH has the burden of proof on infringement, it has provided no explanation whatsoever in response to Scientific Games' Interrogatory No. 1 as to how the PlayCentral Kiosk allegedly infringes claim 18 of the '624 patent or claims 20, 21 or 28 of the '337 patent. Scientific Games will supplement this response, as appropriate, after GTECH has provided meaningful infringement contentions. Subject to these and the General Objections, Scientific Games responds as follows:

### A.    Claims 20 and 21 of the '337 patent

Scientific Games does not infringe claims 20 or 21 of the '337 patent for at least the following reasons. Claim 20 requires a "means for separating each of said tickets from said strip," which GTECH acknowledges is a means-plus-function limitation. The claimed function

3

of this limitation is to separate each ticket from a strip of tickets.  The specification of the '337 patent discloses the following structure for performing this function:

> [T]he separation means includes a *dull edge bursting blade moveably mounted* adjacent a predetermined bursting position along the path, *holding means* for holding the stream of tickets against substantial deflection from the path at the bursting position, and *bursting blade drive means* for bringing the bursting blade into bursting contact with the stream of tickets at the bursting position to burst the leading ticket from the next following ticket.

(col. 3, ll. 55-63; emphasis added).  The "means for separating" limitation thus includes at least three distinct elements:  (1) a dull edge bursting blade moveably mounted; (2) a holding means; and (3) a bursting blade drive means.

The only "dull edge bursting blade" disclosed in the '337 patent is a circular burster wheel with a dull, rounded edge:  "[B]urster wheel 68 is advantageously in the form of a circular burster blade which, in an advantageous aspect, has a dull, rounded edge . . . ." (col. 10, ll. 58-63).  *See* col. 10, ll. 39-41 ("burster wheel"); col. 10, ll. 52-57 ("burster wheel"); col. 11, ln. 8 ("burster wheel"); col. 11, ln. 12 ("burster wheel"); col. 11, ln. 24 ("burster wheel"); col. 11, ln. 29 ("burster wheel"); col. 11, ln. 32 ("burster wheel"); col. 11, ln. 47 ("burster wheel"); col. 11, ln. 54 ("burster wheel"); col. 13, ln. 23 ("burster wheel"); col. 13, ll. 29-30 ("burster wheel"); *see also* U.S. Patent No. 5,836,498, col. 2, ll. 65-67; col. 3, ll. 1, 3-5 ("The separation mechanism of the '337 patent comprises a bursting wheel which separates the leading ticket from the next following ticket . . . .  The burster wheel of the '337 patent is in the form of a circular burster blade which has a dull rounded edge . . . .").

Scientific Games' PlayCentral Kiosk does not have a moveably mounted burster wheel with a dull, rounded-edge.  The PlayCentral Kiosk uses a stationary cutting blade with a sharp edge.

4

The "means for separating" also includes a "holding means for holding the stream of tickets against substantial deflection from the path at the bursting position." The corresponding structure disclosed in the specification of the '337 patent are feed rollers and exit feed rollers (col. 10, ll. 65-68; col. 11, ll. 1-2). The PlayCentral Kiosk does not "hold[] the stream of tickets against substantial deflection from the path at the bursting position." The PlayCentral Kiosk uses rollers to pull the stream of tickets against a stationary cutting blade.

The "means for separating" also includes a bursting blade drive means, which brings the burster wheel into contact with and across the stream of tickets (col. 13, ll. 23-32, 36-38). The corresponding structure disclosed in the specification of the '337 patent is a burster block, burster motor, cable spool arrangement, and tensioning spring: "Burster wheel 68 is shown mounted on a burster block 98 driven by a burster motor 100 through a cable spool arrangement 102 including tensioning spring 104" (col. 13, ll. 23-25). The PlayCentral Kiosk uses a stationary cutting blade to separate tickets, and does not have any structures that perform the function of the bursting blade drive means described in the '337 patent.

Claim 20 also requires a "housing means for storing a strip of tickets to be dispensed, said housing means having an outlet opening accessible to the purchaser of the tickets from said machine." This is a means-plus-function element, as GTECH's predecessor, Interlott, acknowledged in prior litigation (*see* GTECH 033460).

The claimed function of the housing means is to store tickets and permit tickets to be dispensed directly to the purchaser. The structure disclosed in the specification of the '337 patent for performing this function is (col. 7, ll. 5-11):

> [A] housing with a front surface 28 which . . . is intended to face the sales agent or vendor standing behind a counter 26. . . . An opposed back surface 30 . . . is intended to face the customers when . . . in operation. In accordance with an advantageous aspect

5

of the present invention, a control panel 32 including all necessary agent-operated controls is mounted at front surface 28, while a dispensing outlet 34 is manually accessible at the back surface 30 by the customers.

The specification also discloses that (col. 7, ll. 26-37):

[C]ontrol panel 32 is mounted at front surface 28 on an upper portion 36 thereof. Upper portion 36 is inclined relative to front surface 28 for ergonomic reasons; that is, to permit comfortable access to control panel 32. The angle of inclination of panel 32 is limited so that control panel 32 remains in substantially opposed relation to back surface 30. The angle of inclination is limited not only so that control panel 32 may be easily viewed and operated by the sales agent, but also so that it will be substantially blocked from view by any customer standing in front of counter 26 and facing back surface 30.

The structure of the "housing means" is depicted in Figures 3 and 4 of the '337 patent, which show a housing with the front surface having an inclined upper portion on which the control panel is mounted, and an opposed back surface having a dispensing outlet opening. During the prosecution of the '624 patent, the applicant represented to the patent examiner that the '337 patent discloses only a dispensing unit with an outlet opening in the back surface of the housing: "[The '337 patent] shows an instant winner lottery ticket dispenser which is intended to be attended by an agent. [The dispenser] is designed to dispense tickets from the rear of the unit . . . [and is] not suitable for use as [an] unattended ticket vending device[]."

The PlayCentral Kiosk does not have the claimed "housing means" of claims 20 or 21. The PlayCentral Kiosk is a customer-operated (not an agent-operated) terminal with customer-operated touch-screen controls and a dispensing outlet on the front surface of the housing. The PlayCentral Kiosk does not have a front surface "which . . . is intended to face the sales agent or vendor standing behind a counter" and an opposed surface "intended to face the customers when . . . in operation." The front surface of the PlayCentral Kiosk also does not have an inclined upper portion.

6

Claim 20 also requires a "means operable for ordering a plurality of tickets in a single batch," which GTECH acknowledges is a means-plus-function element. The function of this element is to allow ordering of a plurality of tickets in a single batch. The structure disclosed in the specification of the '337 patent for performing this function is a control panel, keypad, push-buttons, and control circuit (col. 7, ll. 41-46, 48-50).[1] The PlayCentral Kiosk does not have either push-buttons or a keypad for ordering tickets, but instead utilizes a touch-screen display to permit the customer to purchase tickets.

B.    Claim 28 of the '337 patent

Scientific Games does not infringe claim 28 of the '337 patent for at least the following reasons. Claim 28 requires "means for severing a ticket from said strip," which GTECH acknowledges is a means-plus-function element. This limitation has the same function and structure as the "means for separating" limitation in claim 20.[2] For at least all the reasons that the PlayCentral Kiosk does not infringe claim 20 because it does not have the claimed "means for separating," the PlayCentral Kiosk also does not infringe claim 28 because it does not have the claimed "means for severing."

Claim 28 also requires "position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means to drive said strip until said output signal indicates that said strip actually has moved by said pre-determined distance to dispense one of said tickets, and to control means for severing a ticket from said strip." GTECH acknowledges that the "position detecting means" is a means-plus-

---

[1]    *See Interlott Tech., Inc. v. Pollard Banknote Ltd.*, Case No. 02cv02157, slip op. at 31 (N.D. Ohio Aug. 4, 2003).

[2]    *See Interlott*, slip op. at 31.

function element. The claimed function is to detect the distance that the strip of tickets has actually moved, and produce an output signal to control the drive means and to control the separation means. The structure disclosed in the specification of the '337 patent for detecting the distance actually moved is a code wheel and code wheel sensor (col. 12, ll. 36-54; col. 13, ll. 16-22).

The PlayCentral Kiosk does not detect the distance that the strip has actually moved. The PlayCentral Kiosk also does not have a code wheel or code wheel sensor. It uses a stepper motor to move the tickets by a predetermined distance. The use of a stepper motor was expressly disclaimed during prosecution of the '337 patent, because it did not detect "the distance actually moved" by the strip:

> The [prior art] Hartmann device does not have means for measuring the _actual_ distance traveled by the strip and using of the information so detected to control the drive motor and severing means to dispense tickets. . . . The measurement of the distance traveled by the ticket strip during the actual dispensing of tickets is determined by or counting the steps of the stepping drive motor. This permits a major inaccuracy in the driving of the strip in that, if the drive slips and fails to move the ticket strip forward for any particular distance, this creates an error in the location of the cut made by the cutting means. . . . This is because the device which counts stepping motor pulses simply does not detect the _actual_ position of the strip.

The PlayCentral Kiosk does not have the claimed "position detecting means." Further, GTECH is estopped from asserting infringement of this claim limitation under the doctrine of equivalents by virtue of amendment of the claim during prosecution, as well as by its distinction over stepper motors during prosecution.

**C.     Claim 18 of the '624 patent**

Scientific Games does not infringe claim 18 of the '624 patent for at least the following reasons. Claim 18 requires a "display means for displaying an array of lottery ticket

8

representations viewable from outside of said housing by a customer, said array representing tickets in said machine available for purchase . . . in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen."

The PlayCentral Kiosk does not display "a plurality of arrays of ticket images on a video screen." The PlayCentral Kiosk initially displays icons of the tickets offered for sale -- not "ticket images" or a plurality of arrays of ticket images -- on a touch-screen user interface. Only after the purchaser selects a game logo area on the touch-screen is a representation of a single ticket -- not a plurality of arrays of ticket images -- displayed to the purchaser. Moreover, GTECH is estopped from asserting infringement of this claim limitation under the doctrine of equivalents because the claim was amended during prosecution.

The '624 patent also requires that the "array" of ticket images be movable on a video screen (see Abstract; col. 1, ll. 64-68; col. 10, ll. 64-68). There is no movable array of ticket images on the video screen of the PlayCentral Kiosk.

Claim 18 also requires a "means for dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer." This claim limitation is written in means-plus-function form and should be interpreted accordingly. The function of this claim limitation is to dispense tickets corresponding to the amount of money input into the machine. The structure disclosed in the specification of the '624 patent for performing this function is (col. 4, ll. 48-55):

> The feeding and bursting mechanism 112 is essentially identical to that disclosed in the above-identified copending patent application ['337 patent] . . . . It will not be described in detail herein; rather, the disclosure of that mechanism, and all other disclosure in the pending application, hereby is incorporated herein by reference.

The specification of the '624 patent discloses that the feeding and bursting mechanism includes four drive rollers, a rotary bursting wheel, and "a precise code wheel and detector arrangement"

9

(col. 4, ll. 56-63; col. 5, ll. 14-18). The feeding and bursting mechanism disclosed in the '337 patent, and incorporated by reference into the '624 patent, also requires a burster block, burster motor, cable spool arrangement, and tensioning spring ('337 patent, col. 3, ll. 55-63; col. 13, ll. 23-32).

For at least the same reasons that the PlayCentral Kiosk does not have the "means for separating" of claim 20 of the '337 patent, the PlayCentral Kiosk does not have the "means for dispensing" of claim 18 of the '624 patent. The PlayCentral Kiosk also does not have a "precise code wheel and detector arrangement" as described in the '337 patent, and as incorporated by reference into the '624 patent.

Individuals with knowledge of the design and operation of the PlayCentral Kiosk include: Bill Behm, Tony Bartolone, Janine Whiteman, Vic Collucci and Mark Gilmore. Documents describing the design and operation of the PlayCentral Kiosk include: SGI104995; SGI043580-81; SGI011043-44; SGI007437-621; SGI009906-07; SGI010758-85; SGI016905-17028; SGI018897-19340. In addition, the PlayCentral Kiosk is covered by U.S. Patent No. 5,950,898, U.S. Patent No. 6,609,644 B1, and U.S. Patent No. 6,669,071 B1.

## INTERROGATORY NO. 7:

For each claim of the Patents-in-Suit which Defendants contend is invalid, state with particularity the basis for such contention, including but not limited to, identifying with particularity each event or disclosure in a reference or publication forming in whole or in part the basis for such contention, each person with knowledge of the event or reference, and all documents relating to the contention, event or reference.

## RESPONSE TO INTERROGATORY NO. 7:

Scientific Games objects to Interrogatory No. 7 as seeking information that is protected by the attorney-client privilege, work product immunity or any other applicable privilege or immunity. Scientific Games also objects to Interrogatory No. 7 as overly broad and

as seeking information not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence. Scientific Games also objects to Interrogatory No. 7 because GTECH has failed to disclose its proposed constructions of the asserted claims. Scientific Games will supplement its response to Interrogatory No. 7, as appropriate, after GTECH has disclosed its proposed constructions of the asserted claims, and after Scientific Games has had an opportunity to take additional discovery.

Subject to these and the General Objections, Scientific Games responds as follows with respect to the claims asserted by GTECH -- claims 20, 21 and 28 of the '337 patent and claim 18 of the '624 patent:

### A.    Claims 20 and 21 of the '337 patent

If claims 20 and 21 of the '337 patent are construed to cover Scientific Games' PlayCentral Kiosk, those claims are invalid under 35 U.S.C. § 102 in light of the Player-Activated Terminals ("PAT") that Scientific Games offered for sale and sold in the United States more than one year before the application for the '337 patent was filed.

Scientific Games' PATs were lottery ticket vending machines that included a housing with an outlet opening accessible to the ticket purchaser, a touch-screen for ordering multiple tickets in a single batch, and dispensing means for dispensing the instant lottery tickets through the outlet opening (*see* SGI002060-163; SGI104830-31; SGI104811-12; SGI105153; SGI106615). The PATs also had control and separating means that separated and dispensed each ticket individually, regardless of the number of tickets ordered in a batch (*see* SGI002121 ("Our dispenser is designed to cut each continuous form computer-produced ticket individually. Each ticket then drops into a hopper for removal by the customer.")).

11

As discussed above, in response to Interrogatory No. 2, the PlayCentral Kiosk does not have the "housing means" of claims 20 and 21. If the "housing means" limitation, however, is construed to cover the PlayCentral Kiosk, it would also cover the housing means in Scientific Games' prior art PATs.

The PlayCentral Kiosk also does not contain the claimed "means operable for ordering a plurality of tickets in a single batch." If "means ... for ordering," however, is construed to cover the PlayCentral Kiosk, it would also cover Scientific Games' prior art PATs.

The PlayCentral Kiosk does not have the claimed "means for separating." If the "means for separating," however, is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it also covers the separating and dispensing mechanism in the Scientific Games' prior art PATs. Indeed, the separating means used in the prior art PATs is more like the mechanism disclosed in the '337 patent than the PlayCentral Kiosk. The prior art PAT used a moving separation blade, blade drive means, and holding means for holding the ticket as it was being separated (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)). Thus, if claims 20 and 21 of the '337 patent are construed to cover the PlayCentral Kiosk, they will also cover Scientific Games' prior art PATs and are invalid under 35 U.S.C. § 102.

In addition, if claims 20 and 21 of the '337 patent are construed so as to cover the PlayCentral Kiosk, they are also invalid under 35 U.S.C. § 102 and § 103 over U.S. Patent No. 4,716,799 (to Hartmann) alone, and in combination with Scientific Games' prior art PAT. Hartmann disclosed an automatic lottery ticket dispensing machine that included a housing, a control panel for ordering multiple tickets, a means for separating tickets from the strip, and a means for dispensing tickets through an outlet opening (*see* Hartmann '799 patent, Fig. 1, col. 2,

12

ll. 56-60, col. 3, ll. 41-63, col. 4, ll. 49-52). Hartmann also taught that the machine could be mounted as a user activated terminal, providing an outlet opening directly accessible to the purchaser (*see id.*, col. 2, ln. 68 - col. 3, ln. 2). To the extent Hartmann disclosed cutting, and not bursting, the necessary modification would have been obvious in light of Scientific Games' prior art PATs, which burst tickets (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)).

If claims 20 and 21 are construed to cover Scientific Games' PlayCentral Kiosk, they are also invalid as obvious under 35 U.S.C. § 103 over the following references, alone or in combination: Scientific Games' prior art PATs; U.S. Patent No. 4,716,799 (to Hartmann); U.S. Patent No. 3,978,958 (to Zandstra); U.S. Patent No. 4,623,081 (to Hain et al.); U.S. Patent No. 4,157,670 (to Herring); U.S. Patent No. 4,094,451 (to Wescoat); U.S. Patent No. 3,894,669 (to Wescoat); U.S. Patent No. 4,401,249 (to Kadlecik et al.); and U.S. Patent No. 4,261,497 (to Roetter).

Claims 20 and 21 of the '337 patent may also be invalid under 35 U.S.C. § 102(b) as a result of public use or offers to sell its ITRs more than a year before the December 3, 1987 application for the '337 patent. GTECH's documents, including an attachment to Mr. Burr's September 25, 1992 Declaration in the Patent Office, refer to "various field tests since 1986." *See also* INLO-030513, INLO-035497, INLO-041626, INLO-200612 ("patents invalid showed publicly").

### C.    Claim 28 of the '337 patent

If claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, that claim is invalid under 35 U.S.C. § 102 in light of Scientific Games' prior art PAT, for the reasons set forth with respect to claims 20 and 21.

13

If claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid under 35 U.S.C. § 102 and § 103 over U.S. Patent No. 3,978,958 (to Zandstra) and U.S. Patent No. 4,716,799 (to Hartmann) alone and in combination, and in combination with Scientific Games' prior art PAT.

Zandstra disclosed an automatic ticket dispenser "especially adapted to vend articles such as lottery tickets" (Zandstra '958 patent, col. 2, ll. 5-7). Zandstra disclosed drive means for moving a strip of tickets connected by perforations to a separation location (id., col. 2, ll. 33-36). Zandstra also disclosed a means for separating tickets (id., col. 4, ll. 11-15). Zandstra also disclosed an optical detector for detecting the distance that the strip of tickets has actually moved and producing an output signal to control the drive means and to control the ticket separation means (id., col. 2, ll. 40-50).

Hartmann disclosed an automatic lottery ticket dispensing machine that uses rollers driven by a stepper motor to advance a strip of tickets to a separation location (Hartmann '799 patent, col. 2, ll. 56-58). Hartmann also disclosed a ticket separation means (id., col. 4, ll. 4-9), and a position detecting means (id., col. 7, ll. 15-17).

As discussed above in response to Interrogatory No. 2, the PlayCentral Kiosk does not have the claimed "means for severing" of claim 28. The means for separating tickets disclosed in Zandstra and Hartmann, however, are more like the mechanism disclosed in the '337 patent than the mechanism used in the PlayCentral Kiosk. Both Hartmann and Zandstra use moving blades, blade drive means, and holding means to separate the tickets. Thus, if the "means for separating" limitation of claim 28 is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it would also cover the separation mechanisms described in Zandstra and Hartmann. Finally, to the extent Zandstra and Hartmann disclosed cutting, and not

14

bursting, the necessary modification would have been obvious in light of Scientific Games' prior art PATs, which burst tickets (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)).

Finally, if claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid as obvious under 35 U.S.C. § 103 over the following references, alone or in combination: Scientific Games' prior art PATs; U.S. Patent No. 4,716,799 (to Hartmann); U.S. Patent No. 3,978,958 (to Zandstra); U.S. Patent No. 4,623,081 (to Hain et al.); U.S. Patent No. 4,157,670 (to Herring); U.S. Patent No. 4,094,451 (to Wescoat); U.S. Patent No. 3,894,669 (to Wescoat); U.S. Patent No. 4,401,249 (to Kadlecik et al.); and U.S. Patent No. 4,261,497 (to Roetter).

Claim 28 of the '337 patent may also be invalid under 35 U.S.C. § 102(b) as a result of a public use or offer to sell, for the same reasons set forth with respect to claims 20 and 21.

## C.    Claim 18 of the '624 patent

If claim 18 of the '624 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is invalid under 35 U.S.C. § 102 and § 103 over Scientific Games' prior art PATs, which Scientific Games offered for sale and sold in the United States more than one year before the application for the '624 patent was filed. Scientific Games' prior art PATs were lottery ticket vending machines that included a housing, a video display screen viewable by a customer, a bill acceptor, and a dispensing mechanism for dispensing lottery tickets in a number corresponding to the amount of money input into the machine by a customer (*see* SGI002060-163; SGI104830-31; SGI104811-12; SGI105153; SGI106615).

As discussed above, in response to Interrogatory No. 2, the PlayCentral Kiosk does not display "a plurality of arrays of ticket images on a video screen." If, however, the

"video display means" limitation of claim 18 is construed to cover the PlayCentral Kiosk, it also covers Scientific Games' prior art PATs. The PlayCentral Kiosk also does not contain the "means for dispensing" of claim 18. The separation mechanism in the prior art PATs was more like the mechanism claimed in the '624 patent than the PlayCentral Kiosk. The prior art PATs used a moving separation blade, blade drive means, and holding means for holding the ticket as it was being separated (*see* SGI002121; *see also* U.S. Patent No. 4,157,670). Thus, if the "means for dispensing" limitation of claim 18 is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it also covers the separation mechanism used in Scientific Games' prior art PATs.

If claim 18 of the '624 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid under 35 U.S.C. § 103 as obvious in light of Scientific Games' prior art PATs in combination with the '337 patent. The prior art PATs included a housing, a video display screen, a bill acceptor, and a mechanism for dispensing lottery tickets in a number corresponding to the amount of money input into the machine by a customer. The '337 patent taught a mechanism for separating and dispensing lottery tickets. In view of the stated advantages of the mechanism disclosed in the '337 patent, it would have been obvious to a person having ordinary skill in the art to combine Scientific Games' prior art PATs with the '337 patent.

Claim 18 of the '624 patent may also be invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 in light of other prior art lottery ticket vending machines with video screens offered for sale and sold by Electro-Sport, Syntech, AmTote/General Instruments, IGT and Video Lottery Consultants. *See, e.g.,* SGI105003-08; SGI105132; SGI105271; SGI105280-83; SGI105367; SGI105411; SGI105482; SGI105491; SGI105535-38; SGI105546; SGI105563;

16

SGI105568-69; SGI105595-96; SGI105618; SGI105643; SGI105919-20; SGI105924; SGI105988-91; SGI106023; SGI106064-68; SGI106117-18; SGI106651-52; SGI106797; SGI106836-37; SGI106866; SGI106874; SGI106904-07; SGI106913-14; SGI106930; SGI106938; SGI106954-55; SGI106235; SGI106236; SGI106298; SGI106603; SGI106607.

Finally, if the "means for dispensing" of claim 18 of the '624 patent is not the structure disclosed in the '337 patent, then claim 18 is invalid under 35 U.S.C. § 112 because the '624 patent does not disclose any other structure corresponding to the means for dispensing.

Individuals with knowledge of Scientific Games' prior art PATs include: Bill Behm and Mark Hoffman.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
    Attorneys for Defendants Scientific Games
    International, Inc., Scientific Games Holdings
    Corporation, Scientific Games Finance
    Corporation and Scientific Games Corporation

April 29, 2005
443944

17

<u>CERTIFICATE OF SERVICE</u>

I, Rodger D. Smith II, hereby certify that copies of the foregoing were caused to

be served on April 29, 2005, on the following in the manner indicated:

**<u>BY HAND</u>**

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899


**<u>BY FEDERAL EXPRESS</u>**

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY  10004

Rodger D. Smith II