# EXHIBIT A

LEXSEE 2004 U.S. DIST. LEXIS 20429

**TERRA NOVO, INC. a California corporation, Plaintiff, v. GOLDEN GATE PRODUCTS, INC., a California corporation, Defendant.**

No. C-03-2684 MMC EDL

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**2004 U.S. Dist. LEXIS 20429**

**October 1, 2004, Decided**

**DISPOSITION:** Litigation counsel's Motion to Quash Subpoena Granted in Part and Denied in Part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff accused defendant of infringing a patent. Defendant asserted the advice of counsel defense to willful infringement. Litigation counsel's filed a motion to quash a subpoena.

**OVERVIEW:** The dispute was over whether the waiver of the attorney-client privilege extended to litigation counsel. A press release that did no more than state a contention asserted by litigation counsel in defendant's answer did not waive the privilege. The statement, "based on advice from our lawyers, we were continuing to sell" was not a sufficient disclosure of a privileged communication to warrant abrogation of the privilege. In the circumstances of this case, the court found that the scope of the waiver was limited to communications between litigation counsel and opinion counsel. Provision of non-confidential documents did not create a waiver. Litigation counsel had to disclose his firm's work product, if any, that was communicated to opinion counsel, whether directly or through the client.

**OUTCOME:** The motion to quash was granted in part and denied in part. Defendant waived the attorney-client privilege for all communications between litigation counsel and opinion counsel relating to invalidity of the patent in suit, but the waiver did not extend to any communications between litigation counsel and defendant or any work product of litigation counsel not disclosed to opinion counsel.

**LexisNexis(R) Headnotes**

*Evidence > Privileges > Attorney-Client Privilege*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
*Patent Law > Infringement Actions > Defenses > General Overview*
[HN1] In an action for patent infringement, where a party is accused of acting willfully, and where that party asserts an advice of counsel defense, a party waives the attorney-client privilege as to communications and documents relating to the advice. The general rule is that a party cannot disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position. Accordingly, fairness may dictate waiver of the attorney-client privilege to prevent its use as both a sword and a shield. The waiver, however, is only as broad as necessary to assure fair disclosure on the subject matter of the advice. Furthermore, because obtaining an opinion of counsel to defend against willfulness was close to compulsory in the pre-Knorr timeframe, waiver should be construed narrowly.

*Evidence > Privileges > Attorney-Client Privilege*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
*Patent Law > Infringement Actions > Defenses > General Overview*
[HN2] The question of whether a waiver of the attorney-client privilege extends to litigation counsel in a patent infringement suit puts two important goals in competition: preventing unfairness resulting from the

defendant's use of the attorney-client privilege as both sword and shield, and preservation of the confidential relationship between client and counsel. After litigation has commenced, the dangers inherent in invading the confidentiality of the attorney-client privilege are magnified.

*Evidence > Privileges > Attorney-Client Privilege*
[HN3] Provision of non-confidential documents does not create a waiver of the attorney-client privilege.

*Evidence > Privileges > Attorney-Client Privilege*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN4] The assertion of the advice of counsel defense in a patent infringement suit waives any communications between opinion counsel and litigation counsel on invalidity.

**COUNSEL:** [*1] For Terra Nova, Inc., a California corporation, Plaintiff: Jay Stephen McClaugherty, McClaugherty & Associates, Arcadia, CA; Matthew A. Newboles, Stetina Brunda Garred & Brucker, Aliso Viejo, CA; David Howard Ryan, McClaugherty & Associates, Arcadia, CA.

For Golden Gate Products, Inc., a Caoifornia corporation, Defendant: Jeffrey L. Fillerup, Luce Forward Hamilton & Scripps LLP, San Francisco, CA.

For Golden Gate Products, Inc., a Caoifornia corporation, Counter-claimant: Jeffrey L. Fillerup, Luce Forward Hamilton & Scripps LLP, San Francisco, CA.

**JUDGES:** ELIZABETH D. LAPORTE, United States Magistrate Judge.

**OPINIONBY:** ELIZABETH D. LAPORTE

**OPINION:**

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH DEPOSITION SUBPOENA

### I. INTRODUCTION

Plaintiff Terra Novo, Inc. ("Plaintiff") has accused Defendant Golden Gate Products, Inc. ("Defendant") of infringing U.S. Patent 6,562,882 (the "'882 Patent"). The '882 Patent provides for the application of a combination of polyacrylamide ("PAM"), water and mulch to soil to prevent erosion. Defendant claims that its accused product, Terra-Lock-50, does not infringe and has filed a counterclaim alleging that the '882 Patent is invalid. [*2] Defendant has asserted the advice of counsel defense to

willful infringement. Defendant concedes that the assertion of this defense acts as a waiver of the attorney-client privilege and the work product immunity as to the opinion prepared by Opinion Counsel Ted Bielen ("Opinion Counsel."). The dispute is over whether the waiver extends to Litigation Counsel Jeffrey Fillerup and his law firm, Luce, Forward, Hamilton & Scripps (collectively, "Litigation Counsel"). Plaintiff issued a deposition subpoena and document requests to Litigation counsel. Litigation counsel's Motion to Quash the Subpoena is presently before the court. For the following reasons, the Motion to Quash is Granted in Part and Denied in Part as follows.

### II. DISCUSSION

Defendant began selling the allegedly infringing product in July of 2001. (Fillerup Supp. Decl. Exh. E, Haille Depo. at 87.) In December of 2001, Plaintiff sent a letter to Defendant accusing it of infringement. Defendant's President Michael Haile then consulted with Jeffrey Fillerup, who later became Litigation Counsel, and continued to sell Terra-Lock-50. The Patent and Trademark Officer ("PTO") issued the '882 patent in early 2003. On June 9, 2003, Plaintiff [*3] filed the Complaint in this case. On July 25, 2003, Defendant filed its Answer. In February 2004, seven months after Defendant answered, Opinion Counsel produced an opinion stating that the '882 patent is invalid (except for certain claims and in certain very small concentrations of PAM) based upon specific pieces of prior art. (Fillerup Decl. Exh. C.) (the "Bielen Opinion"). The Bielen opinion does not address any issues outside of validity and specifically does not address whether Defendant's product infringes the '882 patent. On March 22, 2004, Defendant issued a press release which announced that, based on "advice from our lawyers," Defendant was continuing to market and sell the accused product. (Ryan Decl. Exh. 1.)

Plaintiff issued a deposition subpoena and document request to Litigation counsel. Plaintiff argues that Defendant's issuance of a press release waived the attorney-client privilege as to infringement and Defendant's assertion of the advice of counsel defense waived all attorney-client privileged communications and all work product on any issue relating to validity.

#### A. The Press Release Did Not Create a Waiver

The press release states that: "As to our Terra-Lock [*4] 50 product, we denied Terra Novo's patent infringement claims for different reasons. (Ryan Decl. exh. 1.) Our patent lawyer has issued an opinion letter stating that Terra Novo's patent is invalid and unenforceable." The release attaches a summary of the opinion letter and includes the following:

our opinion states that virtually all the claims of the (Harrison) patent are invalid because of prior art. . . . Thus, we feel that in view of the invalidity of the vast majority of the claims of the patent. . . . You are free to continue manufacturing using and selling your products at Golden Gate Products, Inc.

(Id.). The release continues:

Our patent litigator is also contending in the suit that even if the patent is valid, then Terra-Lock 50 is not infringing Terra Novo's patent. Based on advice from our lawyers, we are continuing to sell Terra-Lock 50.

(id).

Plaintiff contends that this release waives the attorney-client privilege as to "Litigation Counsel's opinion that Terra-Lock 50 does not infringe on the patent in issue." (Opp. at 9.) Defendant responds that the press release does not waive the privilege because it does no more than state [*5] a contention asserted by Litigation Counsel in Defendant's Answer. The Court agrees.

The next question is whether the statement, "Based on advice from our lawyers, we are continuing to sell Terra-Lock 50," is a sufficient disclosure of a privileged communication to warrant, in fairness, abrogation of the privilege. Weil v. Investment/Indicators, Research & Management, 647 F.2d 18, 24 (9th Cir. 1981). While the press release could have been more carefully worded, the Court does not believe that fairness dictates a waiver. The contention that the accused product does not infringe has been publicly made, as it must be for Defendant to defend itself. Additionally, the continued sale of the product speaks for itself. Accordingly, the statement does not disclose a privileged communication and does not create a waiver.

**B. Waiver From Assertion of Advice of Counsel Defense**

[HN1] In an action for patent infringement, where a party is accused of acting willfully, and where that party asserts an advice of counsel defense, a party waives "the attorney-client privilege as to communications and documents relating to the advice." Handgards, Inc. v. Johnson & Johnson, 413 F. Supp. 926, 929. [*6] (N.D. Cal. 1976). The general rule is that a "party cannot disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts

adverse to its position." Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 944 (Fed.Cir. 1992) (citation omitted.) Accordingly, fairness may dictate waiver of the attorney-client privilege to prevent its use as both a sword and a shield. Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992). The waiver, however, is only as broad as necessary to assure fair disclosure on the subject matter of the advice. Furthermore, because obtaining an opinion of counsel to defend against willfulness was close to compulsory in the pre-Knorr timeframe (Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 2004 U.S. App. LEXIS 19185, 2004 WL 2029912 (Fed. Cir. Sep. 13, 2004)), waiver should be construed narrowly.

Litigation Counsel contends that the waiver of the attorney-client privilege is limited to communications from Opinion Counsel and does not extend to communications involving Litigation Counsel. [HN2] The question of whether a waiver extends to litigation counsel [*7] puts two important goals in competition: preventing unfairness resulting from the Defendant's use of the attorney-client privilege as both sword and shield, and preservation of the confidential relationship between client and counsel. After litigation has commenced, the dangers inherent in invading the confidentiality of the attorney-client privilege are magnified. See, e.g., Sharper Image Corp v. Honeywell Int'l, Inc., 222 F.R.D. 621, 2004 WL 1739467 (N.D. Cal. July 28, 2004) at * 20; see also Electro Scientific Indus., Inc. v. General Scanning, Inc., 175 F.R.D. 539 (N. D. Cal. 1997) (Extending waiver to litigation or patent counsel, but limiting waiver to period before suit filed.).

In the circumstances of this case, the Court finds that the scope of the waiver is limited to communications between Litigation Counsel and Opinion Counsel. At the hearing, Litigation Counsel stated that he had only provided Opinion Counsel with pleadings filed in the case and documents served on Plaintiff, not confidential work product. [HN3] Provision of non-confidential documents does not create a waiver. Litigation counsel also attended a meeting with Defendant's [*8] President, Mr. Haile, and Opinion Counsel at which the topic of invalidity of the patent in suit was discussed. (Haile Depo. at 97.) Litigation counsel stated at the hearing that he had not voiced an opinion on invalidity at the meeting but listened to Opinion Counsel. However, [HN4] the assertion of the advice of counsel defense waives any communications between Opinion Counsel and Litigation Counsel on invalidity, and Plaintiff should be able to probe this issue. Accordingly, Defendant must disclose all communications between Opinion Counsel and Litigation Counsel. Litigation Counsel must also disclose his firm's work product, if any, that was communicated to Opinion Counsel, whether directly or

through the client, prior to the issuance of the Bielen Opinion.

Under the case law at the time Defendant asserted the advice of counsel defense, "Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention. Fromson v. Western Litho Plate and Supply Co., 853 F.2d 1568, 1572-73 (Fed. Cir. 1988). [*9] Thus, as recognized by Sharper Image, the negative inference rendered the waiver of attorney-client privilege less than voluntary. However, the Federal Circuit recently reaffirmed the critical importance of the attorney-client privilege and overruled the cases establishing a negative inference. Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 2004 U.S. App. LEXIS 19185, 2004 WL 2029912 (Fed. Cir. Sep 13, 2004). Accordingly, Defendant may now wish to change its election to rely upon the advice of counsel. If Defendant files a statement of intent not to rely upon the advice of counsel defense against willfulness, Defendant need not submit to the discovery authorized in this Order.

## III. CONCLUSION

For the foregoing reasons, It Is Hereby Ordered that:

1. Defendant has waived the attorney-client privilege for all communications prior to the issuance of the Bielen Opinion between Litigation Counsel and Opinion Counsel relating to invalidity of the patent in suit; and

2. The waiver does not extend to any communications between Litigation Counsel and Defendant or any work product of Litigation Counsel not disclosed to Opinion Counsel. [*10]

IT IS SO ORDERED.

Dated: October 1, 2004

ELIZABETH D. LAPORTE

United States Magistrate Judge

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

INTERLOTT TECHNOLOGIES, INC.,       )
                                    )
              Plaintiff,            )
                                    )     Civil Action No. C-1-00-328
      v.                            )
                                    )     Judge Sandra S. Beckwith
ON-POINT TECHNOLOGY                 )     Magistrate Judge Jack Sherman, Jr.
SYSTEMS, INC.,                      )
                                    )
              Defendant.            )

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Interlott Technologies, Inc. (hereinafter "Interlott") complains against

defendant On-Point Technology Systems, Inc. (hereinafter "On-Point") as follows:

### NATURE OF THE ACTION

1)     This is an action for breach of contract arising under the laws of the State

of Ohio and for patent infringement arising under the patent laws of the United States, Title 35,

United States Code.

### THE PARTIES

2)     Interlott is a Delaware Corporation having its principal place of business at

7697 Innovation Way, Cincinnati, Ohio, 45240.

3)     On-Point is a Nevada Corporation having its principal place of business at

1370 West San Marcos Boulevard, Suite 100, San Marcos, California, 92069. On-Point has done

substantial business in the State of Ohio, including this judicial district.

1

INLO-005916

GTech v. Scientific Games
04-128-JJF

## JURISDICTION AND VENUE

4)    The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Federal jurisdiction is conferred pursuant to 28 U.S.C. § 1332. Federal question jurisdiction over Count II is conferred pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has personal jurisdiction over On-Point pursuant to O.R.C. § 2307.382.

5)    Venue in this Court is based upon 28 U.S.C. § 1391.

## BACKGROUND FACTS

6)    Interlott markets instant ticket vending machines ("ITVMs") for the lottery industry throughout the United States, as well as internationally. Interlott's ITVMs allow a lottery customer to purchase an "instant winner" or "scratch-off" ticket from the machine by insertion of money and the selection of the game to be played. Tickets are stored within the machine in a continuous string or series that is generally stored in a "fan-fold" configuration. As each ticket is purchased by a customer, it is separated within the machine by the use of a dull blade which is passed across the perforation or point of weakness between the ticket being purchased and the next ticket in the series. This causes a clean separation of the ticket within the machine before it is dispensed to the customer. This technology as well as related technology for the dispensing of lottery tickets from ITVMs was incorporated into ITVMs manufactured by Interlott and the technology is known as the "Model ITR-6000 Technology."

7)    On-Point has, since 1990, engaged in the business of marketing a competing ITVM design known as the "Model ITR-7000" which it represented incorporated technology that is different from the ITR-6000 Technology. On-Point markets its lottery machines nationally, and internationally as well. On-Point was known until 1996 as Lottery Enterprises, Inc. ("LEI"). In 1996, LEI changed its name to On-Point Technology Systems, Inc.

8)    On February 28, 1990, Interlott's predecessor in interest, BLM Technologies, Inc. ("BLM"), initiated a lawsuit in the United States District Court for the

2

INLO-005917

GTech v. Scientific Games
04-128-JJF

Southern District of Ohio, Case Number C-1-90-170 ("Ohio Litigation") against Lottery
Concepts, Inc. ("LCI") and Robert Burr ("Burr"), claiming, *inter alia*, that the ITVMs being
marketed by them included technology that infringed BLM's proprietary rights in the ITR-6000
Technology. Lottery Enterprises, Inc. ("LEI") is a successor in interest to LCI and Burr.

9)      On January 1, 1991, United States Letters Patent No. 4,982,337, entitled
"System for Distributing Lottery Tickets" (hereinafter "the '337 patent") was duly and legally
issued to Burr, Laird A. Campbell, Donald H. Keagle, and Alfred L. Fulton. A copy of the '337
patent is attached to this First Amended Complaint as Exhibit 1. The '337 patent is directed to
the Model ITR-6000 Technology, among other things.

10)     The Ohio Litigation was settled by Settlement Agreement and Mutual
Release dated May 30, 1991 ("Settlement Agreement") that was entered into by BLM, Edmund
F. Turek ("Turek"), who was a principal of BLM and Interlott, on the one hand and LCI, Burr
and LEI on the other hand. A true and accurate copy of this Settlement Agreement is attached to
this First Amended Complaint as Exhibit 2. Pursuant to this Settlement Agreement, LEI
expressly disclaimed "any past, present or future interest in or right to the Model ITR-6000
Technology . . ." and agreed that it would not "utilize the Model ITR-6000 Technology in the
design, manufacture or sale of any automatic lottery ticket dispensing machine."

11)     Pursuant to the Settlement Agreement, Burr and LCI assigned to BLM
sole ownership rights in the Model ITR-6000 Technology including, specifically, any and all
rights to the '337 patent. The '337 patent includes certain, but not all of the Model ITR-6000
Technology. The Model ITR-6000 Technology is broader or more comprehensive than the '337
patent.

12)     Recently, On-Point has commenced marketing certain newly designed
ITVMs including, but not limited to, ITVMs marketed under the names "Playpoint" and
"Counterpoint". These ITVMs incorporate the Model ITR-6000 Technology in certain respects,
including, without limitation, a process to separate the ticket being purchased by a customer from

3

INLO-005918

GTech v. Scientific Games
04-128-JJF

the remainder of the series with the use of a dull blade that is applied to the perforation between the ticket being purchased and the remainder of the series. To Interlott's knowledge, from 1990 through On-Point's recent development of the Playpoint and Counterpoint machines, On-Point had not utilized this technology. The Settlement Agreement precludes it from doing so.

### COUNT I

### BREACH OF CONTRACT

13) The allegations of paragraphs 1-12 are incorporated herein by reference as though fully set forth herein.

14) Interlott has duly and legally acquired the rights and benefits of the May 30, 1991, Settlement Agreement.

15) On-Point has duly and legally acquired the responsibility and obligations of the Settlement Agreement.

16) In breach of the Settlement Agreement, On-Point, is employing elements of the Model ITR-6000 Technology in certain ITVMs being marketed by it including, but not limited to, the Playpoint ITVM and the Counterpoint ITVM.

### COUNT II

### INFRINGEMENT OF U.S. LETTERS PATENT NO. 4,982,337

17) The allegations of paragraphs 1-16 are incorporated herein by reference as though fully set forth herein.

18) Interlott is the owner of the '337 patent.

19) On information and belief, On-Point has infringed and continues to infringe one or more claims of the '337 patent by its manufacture, use, offer for sale and/or sale of certain ITVMs including, but not limited to, the Playpoint ITVM and the Counterpoint ITVM.

4

INLO-005919

GTech v. Scientific Games
04-128-JJF

20)    On information and belief, the acts of infringement complained of herein, are being carried out willfully and with full knowledge by On-Point of the '337 patent.

21)    As a result of On-Point's actions, Interlott has suffered and continues to suffer substantial injury, including irreparable injury, and will result in damages to Interlott, including loss of sales and profits, which Interlott would have made but for the infringement by On-Point, unless On-Point is enjoined by this Court.

WHEREFORE, Interlott Technologies, Inc. prays for relief against On-Point Technology Systems, Inc. as follows:

A.    That a judgment be entered that On-Point has breached the May 30, 1991, Settlement Agreement;

B.    That a judgment be entered that On-Point has infringed United States Letters Patent No. 4,982,337;

C.    That On-Point, its agents, sales representatives, servants and employees, associates, attorneys, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or in participation with any or all of them, be enjoined and restrained preliminarily during the pendency of this action, and thereafter permanently, from:

1.    breaching the Settlement Agreement; and

2.    infringing United States Letters Patent No. 4,982,337;

D.    That a judgment be entered that On-Point be required to pay over to Interlott all damages sustained by Interlott due to breach of the Settlement Agreement;

E.    That a judgment be entered that On-Point be required to pay over to Interlott all damages sustained by Interlott due to such patent infringement and that such damages be trebled pursuant to 35 U.S.C. § 284 for the willful acts of infringement complained of herein;

5

INLO-005920

F.    That this case be adjudged and decreed exceptional under 35 U.S.C. § 285 entitling Interlott to an award of its reasonable attorney fees and that such reasonable attorney fees be awarded;

G.    That Interlott be awarded its costs and prejudgment interest on all damages;

H.    That On-Point be required to destroy all machines, components, systems and sub-systems in its possession, custody or control that utilize, employ and/or embody the Model ITR-6000 technology in any manner or form;

I.    That On-Point be required to notify each person or entity to whom the Playpoint and/or Counterpoint system has been offered or presented that On-Point has been enjoined from marketing, selling and manufacturing the Playpoint system and/or Counterpoint system;

J.    That On-Point be required to file with the Court within thirty (30) days after the entry of the final judgment of this cause a written statement under oath setting forth in detail the manner in which On-Point has complied with the judgment; and

K.    That Interlott be awarded such other and further relief as the Court deems just and proper.

6

INLO-005921

GTech v. Scientific Games
04-128-JJF

## JURY DEMAND

Plaintiff Interlott Technologies, Inc. hereby demands and requests trial by jury of all the issues raised above that are triable by jury.

Respectfully submitted,

INTERLOTT TECHNOLOGIES, INC.

Dated: July 10, 2000

J. Robert Chambers/by Theodore R. Remaklus
per authorization

J. Robert Chambers (0039421)
Trial Attorney
Keith R. Haupt (0059180)
Theodore R. Remaklus (0061557)
WOOD, HERRON & EVANS, L.L.P.
2700 Carew Tower
441 Vine Street
Cincinnati, Ohio 45202-2917
(513) 241-2324

Attorneys for Plaintiff
Interlott Technologies, Inc.

OF COUNSEL:

L. Clifford Craig (0024859)
John M. McCoy (002097)
TAFT, STETTINIUS & HOLLISTER, LLP
1800 Firstar Tower
425 Walnut Street
Cincinnati, Ohio 45202-3957
(513) 381-2838

K:\INLO.23\Second Amended Complaint.wpd

7

INLO-005922

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing Second Amended Complaint and Jury Demand was served on this _11th_ day of July, 2000, upon the counsel of record for defendant On-Point Technology Systems, Inc., Frederic X. Shadley, Esq. and Linda E. Maichl, Esq., Ulmer & Berne LLP, 600 Vine Street, Suite 2800, Cincinnati, Ohio 45202, by hand delivery.

Theodore R. Remaklus

8

INLO-005923

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

INTERLOTT TECHNOLOGIES,
INC.,

               Plaintiff,

          v.

ON-POINT TECHNOLOGY
SYSTEMS, INC.,

              Defendant.

Civil Action No. C-1-00-328
(Judge Beckwith)
(Magistrate Judge Sherman)

ANSWER OF ON-POINT
TECHNOLOGY SYSTEMS, INC.,
TO PLAINTIFF'S SECOND
AMENDED COMPLAINT

Defendant, On-Point Technology Systems, Inc. ("On-Point"), answers plaintiff's Second

Amended Complaint ("Complaint") as follows:

## NATURE OF ACTION

1.    Defendant admits plaintiff has asserted a claim of breach of contract and patent

infringement. Defendant denies all remaining allegations of paragraph 1 of plaintiff's

Complaint.

## THE PARTIES

2.    Defendant is without knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 2 of plaintiff's Complaint.

3.    Defendant admits that On-Point is a Nevada corporation having its principal place

of business at 1370 West San Marcos Boulevard, Suite 100, San Marco, California, 92069.

Defendant denies all remaining allegations of paragraph 3 of plaintiff's Complaint.

## JURISDICTION AND VENUE

4.    Denied.

5.    Denied.

INLO-005962

GTech v. Scientific Games
04-128-JJF

6.    Defendant admits Interlott markets instant ticket vending machines ("ITVMs") for the lottery industry throughout the United States, as well as internationally. As defendant is uncertain what "Interlott ITVMs" are referenced in the remaining allegations of paragraph 6 of plaintiff's Complaint, and further as defendant has not had the opportunity to inspect all machines so referenced, defendant denies all remaining allegations of paragraph 6 of plaintiff's Complaint.

7.    Defendant admits that On-Point is or has engaged in the business of marketing an ITVM design known as the "Model ITR-7000". The "Model ITR-7000" incorporates technology that is different than the technology of the ITR-6000 product. Defendant admits it markets its lottery machines nationally and internationally. Defendant admits its name was change from Lottery Enterprises, Inc. ("LEI") in 1996. Defendant denies all remaining allegations of paragraph 7 of plaintiff's Complaint.

8.    Defendant admits BLM Resources, Inc. ("BLM") initiated a lawsuit in the United States District Court for the Southern District of Ohio, Case Number C-1-90-170 ("Ohio Litigation") against Lottery Concepts, Inc. ("LCI") and Robert Burr ("Burr") seeking, *inter alia*, a declaration of its rights under certain contracts attached to the complaint. Defendant denies all remaining allegations of paragraph 8 of plaintiff's Complaint.

9.    Defendant admits that on January 1, 1991, United States Patent No. 4,982,337, entitled "System for Distributing Lottery Tickets" (hereinafter "the '337 patent") was duly and legally issued to Burr, Laird A. Campbell, Donald H. Keagle, and Alfred L. Fulton. Defendant admits a copy of the '337 patent is attached to plaintiff's Complaint as Exhibit 1. Defendant is uncertain what plaintiff means by asserting the 337 patent "is directed to the Model ITR-6000

2

INLO-005963

Technology", and therefore denies same. Defendant denies all remaining allegations of paragraph 9 of plaintiff's Complaint.

10.     Defendant admits the allegations contained in the first two sentences of paragraph 10 of plaintiff's Complaint. Defendant denies all remaining allegations of paragraph 10 to the extent they are inconsistent with the referenced Settlement Agreement.

11.     Defendant denies all allegations of paragraph 11 of plaintiff's Complaint regarding the Settlement Agreement, to the extent they are inconsistent with the Settlement Agreement. Defendant denies all remaining allegations of paragraph 11 of plaintiff's Complaint.

12.     Defendant admits it has commenced marketing newly designed ITVMs known as the "PlayPoint" and "CounterPoint." Defendant denies all remaining allegations of paragraph 12 of plaintiff's Complaint.

**COUNT I**
**BREACH OF CONTRACT**

13.     Defendant denies each and every allegation contained in paragraphs 1 through 12 of plaintiff's Complaint, except as admitted above.

14.     Denied.

15.     Defendant admits its legally responsible for the obligations undertaken by LEI in the Settlement Agreement, if any. Defendant denies all remaining allegations of paragraph 15 of plaintiff's Complaint.

16.     Denied.

3

INLO-005964

## COUNT II
### INFRINGEMENT OF U.S. LETTERS PATENT NO. 4,982,337

17.     Defendant denies each and every allegation contained in paragraphs 1 through 16 of plaintiff's Complaint, except as admitted above.

18.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of plaintiff's Complaint.

19.     Denied.

20.     Denied.

21.     Denied.

### DEFENSES

1.     Plaintiff's Complaint fails to state a cause of action upon which relief can be granted.

2.     Plaintiff's complaint is barred by the applicable statute of limitations.

3.     Plaintiff acknowledged, ratified, consented to, and acquiesced in the alleged acts or omissions, if any, of defendant, thus barring recovery.

4.     Plaintiff has failed to join necessary parties as required by Rule 19 of the Ohio Rules of Civil Procedure.

5.     If plaintiff sustained damages as alleged in its Complaint, which is denied, plaintiff has failed to mitigate its damages.

6.     Plaintiff's claims are barred as a result of laches, waiver, and/or estoppel.

7.     Plaintiff's claims are barred by the doctrine of accord and satisfaction, failure of consideration, release, and *res judicata*.

4

INLO-005965

8.    Plaintiff's breach of contract claim is barred as the agreement upon which plaintiff bases its claims is not a valid, enforceable contract.

9.    Defendant is not a successor in interest to Lottery Concepts International, Inc.

10.    This court lacks jurisdiction and venue over the subject matter of the claims brought within this action.

11.    This court lacks personal jurisdiction over defendant.

12.    Defendant has not infringed and is not now infringing, either directly, contributorily, or through inducement, any properly construed or valid claims of U.S. Letters Patent No. 4, 982,337.

13.    Plaintiff's Complaint and requested relief are barred by the doctrine of prosecution history estoppel.

14.    Plaintiff's Complaint and requested relief are barred by the doctrine of patent misuse.

15.    Plaintiff cannot enforce U.S. Letters Patent No. 4, 982,337 based on the doctrine of patent misuse.

16.    Plaintiff cannot enforce U.S. Letters Patent No. 4,982,337 because it is invalid.

17.    Plaintiff's claims are preempted by federal law.

18.    Plaintiff's Complaint and requested relief are barred as contrary to federal and state antitrust laws.

19.    Defendant incorporates the defenses of all others who may become parties to this action as though more fully set forth herein.

5

INLO-005966

20.    Plaintiff's claims are barred by additional defenses that may arise during the course of this litigation, which defendant reserves the right to assert.

### REQUEST FOR RELIEF

Defendant, On-Point Technology Systems, Inc., respectfully requests that this Court:

1.    Declare that plaintiff's complaint should be dismissed with prejudice and without cost to defendant;

2.    Award to defendant its costs and attorneys fees incurred in the defense of this action; and

3.    Award to defendant such other relief as this Court deems just and equitable.

Respectfully submitted,

*F. X. Shadley*

Frederic X. Shadley (0028584)
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
(513) 762-6215
Trial Attorney for On-Point Technology
Systems, Inc.

OF COUNSEL:

Linda E. Maichl (0042042)
Ulmer & Berne, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202-2409
(513) 762-6212

6

INLO-005967

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Answer of On-Point Technology Systems, Inc., was upon J. Robert Chambers and Keith R. Haupt, Wood, Herron, & Evans, L.L.P., 2700 Carew Tower, 441 Vine Street, Cincinnati, Ohio, 45202-2917 and L. Clifford Craig and John J. McCoy, Taft, Stettinius & Hollister, LLP, 1800 Firstar Tower, 425 Walnut Street, Cincinnati, Ohio, 45202-3957, Attorneys for plaintiff by regular, U.S. mail postage prepaid this _____ day of July, 2000.

FX Stadley

7

INLO-005968

# EXHIBIT D

LEXSEE 2004 U.S. DIST. LEXIS 11258

**PFIZER INC., PFIZER IRELAND PHARMACEUTICALS, WARNER–LAMBERT COMPANY, WARNER–LAMBERT COMPANY, LLC, and WARNER–LAMBERT EXPORT, LTD., Plaintiffs, v. RANBAXY LABORATORIES LIMITED and RANBAXY PHARMACEUTICALS, INC., Defendants.**

**Civil Action No. 03–209–JJF (Consolidated)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 11258*

**June 18, 2004, Decided**

**SUBSEQUENT HISTORY:** Claim dismissed by, Motion denied by *Pfizer Inc. v. Ranbaxy Labs. Ltd., 321 F. Supp. 2d 612, 2004 U.S. Dist. LEXIS 11248 (D. Del., June 18, 2004)*

**PRIOR HISTORY:** *Pfizer Inc. v. Ranbaxy Labs. Ltd., 2004 U.S. Dist. LEXIS 6553 (D. Del., Apr. 12, 2004)*

**DISPOSITION:** [*1] Motion to compel production of documents denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff pharmaceutical corporations filed a motion to compel production of documents withheld on the ground of privilege by defendant companies in connection with an action for patent infringement.

**OVERVIEW:** The corporations contends that the company improperly refused to produce e-mail letters reflecting the review, analysis, and written opinions of the company's in-house and outside counsel in relation to the company's notification letters in connection with an abbreviated new drug application (ANDA) under *21 U.S.C.S. § 355(j)(2)(A)(vii)(IV)*. The corporations contended that the company waived any claim of attorney–client privilege by including information from the documents in its non–privileged Paragraph IV notification letters. The court held that the fact that an ANDA applicant based its Paragraph IV notification letter on the opinions and advice of its attorneys was insufficient to constitute a waiver of the attorney–client privilege and/or work product immunity with respect to the underlying documents expressing that advice or opinion. Because the issue of willful infringement had been bifurcated from the issues of infringement and validity, the issue of whether the company relied on its opinions of counsel to defend against

the corporations' claims of willful infringement was not currently an active issue.

**OUTCOME:** The court denied the corporations' motion to compel production of documents.

**LexisNexis(R) Headnotes**

*Governments > Agriculture & Food > Federal Food, Drug & Cosmetic Act*
*Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge*
*Patent Law > Infringement Actions > Defenses > Experimental Use & Testing*
[HN1] Pursuant to *21 U.S.C.S. § 355(j)(2)(A)(vii)(IV)*, an abbreviated new drug application (ANDA) must contain a certification that, in the opinion of the applicant and to the best of his or her knowledge, the patent on the subject drug is invalid or will not be infringed by the manufacture, use or sale of the new drug for which the application is submitted. In addition, the ANDA applicant is required to provide the patent owner with a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed. *21 U.S.C.S. § 355 (j)(2)(B)(iv)(II)*.

*Governments > Agriculture & Food > Federal Food, Drug & Cosmetic Act*
*Civil Procedure > Disclosure & Discovery > Privileged Matters*
*Civil Procedure > Disclosure & Discovery > Work Product*
[HN2] The fact that an abbreviated new drug application applicant bases its Paragraph IV notification letter on the opinions and advice of its attorneys is insufficient to constitute a waiver of the attorney–client privilege and/or work product immunity with respect to the underlying documents expressing that advice or opinion.

**COUNSEL:** Rudolf E. Hutz, Esquire, Jeffrey B. Bove, Esquire and Mary W. Bourke, Esquire of CONNOLLY BOVE LODGE & HUTZ, LLP, Wilmington, Delaware. Attorneys for Plaintiffs.

Steven J. Balick, Esquire and John G. Day, Esquire of ASHBY & GEDDES, Wilmington, Delaware.

Of Counsel: Darrell L. Olson, Esquire, John P. Giezentanner, Esquire and William R. Zimmerman, Esquire of KNOBBE, MARTENS, OLSON & BEAR, LLP, Irvine, California. Jay R. Deshmukh, Esquire and George E. Heibel, Esquire of RANBAXY INC., Princeton, New Jersey. Attorneys for Defendants.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge.**

Pending before me is a Motion To Compel Production Of Documents Withheld On Grounds Of Privilege (D.I. 122) filed by Plaintiffs Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, Warner-Lambert Company, LLC and Warner-Lambert Export, Ltd. (collectively, "Pfizer") against Ranbaxy Laboratories Limited and Ranbaxy Pharmaceuticals, Inc. (collectively, [*2] "Ranbaxy"). By its Motion, Pfizer contends that Ranbaxy has improperly refused to produce certain documents forming the basis of the statements and conclusions made in Ranbaxy's Paragraph IV notification letters. The documents at issue are three e-mail letters reflecting the review, analysis and written opinions of Ranbaxy's in-house and outside counsel. Pfizer contends that Ranbaxy waived any claim of attorney-client privilege with respect to these documents by including information from the documents in its non-privileged paragraph IV notification letters.

In response, Ranbaxy contends that it has not waived any claim of attorney-client privilege or work product immunity with respect to the documents at issue. Ranbaxy contends that the mere fact that the ANDA notification was based on or consistent with the opinions of its counsel does not amount to a waiver of the attorney-client privilege or work product immunity. Ranbaxy further contends that Pfizer's motion to compel is an attempt to circumvent

my order bifurcating the issue of willful infringement from the other issues in the case. Ranbaxy contends that it has not yet made the decision of whether it will rely on the opinions [*3] of its counsel in the willfulness phase of the trial, and it should not have to make that decision during this phase of the case.

Based on the parties' respective arguments, it appears that Pfizer does not contest Ranbaxy's assertion that the documents at issue are protected by work product immunity and/or the attorney-client privilege. Thus, the only question remaining for me is the narrow inquiry of whether Ranbaxy waived its privilege and/or immunity by filing its Paragraph IV notification letters based on the advice and opinions of its counsel as relayed in the subject documents. [HN1] Pursuant to *21 U.S.C. § 355(j)(2)(A)(vii)(IV)*, an abbreviated new drug application ("ANDA") must contain a certification that, in the opinion of the applicant and to the best of his or her knowledge, the patent on the subject drug is "invalid or will not be infringed by the manufacture, use or sale of the new drug for which the application is submitted." In addition, the ANDA applicant is required to provide the patent owner with a "detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed." *21 U.S.C. § 355 (j)(2)(B)(iv)(II)* [*4] .

I conclude that [HN2] the fact that an ANDA applicant bases its Paragraph IV notification letter on the opinions and advice of its attorneys is insufficient to constitute a waiver of the attorney-client privilege and/or work product immunity with respect to the underlying documents expressing that advice or opinion. Pfizer points to several cases suggesting that a party's partial disclosure of attorney-client communications is sufficient to waive the privilege; however, none of these cases involve an ANDA applicant. In this regard, I agree with Ranbaxy that the circumstances of this case are analogous to the numerous litigation circumstances in which a client and attorney discuss general information and some of that information makes its way into public filings, such as complaints and answers to interrogatories. Courts considering such circumstances have concluded that the privileges are not waived with respect to the underlying communication between the attorney and the client. See *Beery v. Thomson Consumer Electronics, Inc., 218 F.R.D. 599 (S.D. Ohio 2003)* (plaintiff in patent infringement suit did not waive attorney-client privilege by relying on attorney's [*5] claim construction or infringement opinions at deposition); *Frieman v. USAir Group, 1994 U.S. Dist. LEXIS 16994, 1994 WL 675221, *7 (E.D. Pa. 1994)* (holding that privilege was not waived with respect to attorney-client communications about cause of accident where certain information was divulged in interviews, depositions and

pleadings); *Bristol-Myers Co. v. Sigma Chemical Co., 1988 U.S. Dist. LEXIS 12051, 7 U.S.P.Q.2d 1574 (D. Del. 1988)* (holding that *Rule 11* affidavit submitted for purposes of demonstrating a good faith basis for instituting infringement actions did not waive privilege with respect to documents protected by privileges); *Knogo Corp. v. United States, 1980 U.S. Ct. Cl. LEXIS 1262, 213 U.S.P.Q. 936, 941 (Ct. Cl. 1980)* (holding that assertion of privilege is not precluded over communications in which attorney and client discussed technical information concerning the patent, and some of the technical information was later disclosed in patent application and recognizing that client does not waive privilege by testing validity of patent).

Further, I am persuaded, based on the line of questioning pursued by Pfizer at the deposition of Ranbaxy's [*6] Jay R. Deshmukh, Esquire, that the subject documents relate primarily to Pfizer's allegations of willful infringement. I have bifurcated the issue of willful infringement from the issues of infringement and validity, and therefore, the issue of whether Ranbaxy will rely on its opinions of counsel to defend against Pfizer's claims of willful infringement is not currently an active issue.

Accordingly, Pfizer is not yet entitled to the discovery of these otherwise privileged documents.

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 18th day of June 2004, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiff Pfizer's Motion To Compel Production Of Documents Withheld On Grounds Of Privilege (D.I. 122) is DENIED.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE