IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**REDACTED**

| | |
|---|---|
| GTECH CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SCIENTIFIC GAMES INTERNATIONAL, INC., )<br>SCIENTIFIC GAMES HOLDINGS )<br>CORPORATION, SCIENTIFIC GAMES )<br>FINANCE CORPORATION, and SCIENTIFIC )<br>GAMES CORPORATION, )<br>)<br>Defendants. ) | Civil Action No. 04-138-JJF<br><br>**CONFIDENTIAL**<br>**FILED UNDER SEAL** |

**GTECH'S MOTION FOR RECONSIDERATION OF THE
COURT'S JUNE 14TH ORDER GRANTING DEFENDANTS' MOTION TO
PRECLUDE GTECH FROM ASSERTING NEW CLAIMS (D.I. 84)**

Plaintiff, GTECH Corporation ("GTECH") respectfully requests that the Court reconsider the Court's June 14, 2005 Order (D.I. 87) granting *Defendants' Emergency Motion to Preclude Plaintiff From Asserting New Patent Claims Or, In the Alternative, To Amend the Scheduling Order* (D.I. 84).

The Court's preclusion order imposes a severe sanction on GTECH – denial of the opportunity to seek compensatory and injunctive relief for Scientific Games' infringing activity concerning patent claims 22 and 24 of the '337 patent-in-suit. Scientific Games requested preclusion on the grounds that GTECH allegedly was late in asserting those two claims. However, GTECH could not have asserted those two claims earlier because Scientific Games improperly withheld the information evidencing infringement of those two claims until the very end of the fact discovery period.

Claims 22 and 24 of the '337 patent recite a limitation – a "means for holding [a ticket] strip adjacent one line along which said strip is to be separated" ("means for holding") – that is not recited in the other asserted claims. During discovery, despite GTECH's repeated requests, Scientific Games improperly withheld the actual engineering drawings of the accused "PlayCentral" machines.

[REDACTED]

However, after the date for providing contention interrogatory responses passed, and after

GTECH filed a motion to compel the engineering drawings, Scientific Games finally produced the drawings. ████████████████████████████████████████

Promptly upon discovering this, GTECH supplemented its contentions and asserted claims 22 and 24 of the '337 patent. In these circumstances, preclusion is inappropriate.

GTECH did not have sufficient opportunity to present these details to the Court in connection with the underlying motion. Indeed, because Scientific Games requested an emergency hearing on its motion, the motion was decided within hours of it being filed without GTECH having been given an opportunity to file a responsive brief. As a result, the Court misunderstood GTECH and the specific circumstances of the discovery withholding by Defendants. It also misapprehended how that withholding made it impossible for GTECH to have asserted these additional patent claims when the suit was initiated or at any time prior to having received the withheld discovery. This misunderstanding of the facts has caused manifest injustice to GTECH. Thus, reconsideration should be granted.

I.   **RECONSIDERATION IS APPROPRIATE AND SHOULD BE GRANTED**

A motion for reconsideration should be granted if "it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension." *Inline Connection Corp. v. AOL Time Warner, Inc.*, 347 F. Supp. 2d 56, 59 (D. Del. 2004) (citations omitted); *Willow Bay Assocs., LLC v. Immunomedics Inc.*, 2002 U.S. Dist. LEXIS 10566, at *5-6 (D. Del. Jun. 12, 2002) (Ex. A). Further, a district court should grant a motion for reconsideration when "(1) there has been an intervening change in controlling law; (2) there is newly discovered evidence which was not available to the moving party at the time of judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice." *Id.* (citations omitted). Reconsideration motions should not be used "as a means to argue new facts or issues that *inexcusably* were not presented to the court in the matter previously decided." *Id. (emphasis added)*. This is clearly not the case here.

2

Here, reconsideration is appropriate because the Court has misunderstood GTECH and failed to appreciate the facts and the specific circumstances of why patent claims 22 and 24 were not *and could not* have been asserted earlier. In particular, the Court did not appreciate, nor did GTECH have the opportunity to present to the Court, that Scientific Games withheld highly relevant discovery for the better part of a year, providing it only at the close of fact discovery. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ GTECH could not have known this without this discovery.[1] Further, insofar as the Court precluded the additional claims because they were not asserted in the Complaint, as discussed further herein, the Court has misapprehended case law holding that specific patent claims need not be asserted in a Complaint and that additional patent claims may be asserted later in the case upon receipt of relevant discovery.

As explained in detail below, these legal and factual misunderstandings have resulted in manifest injustice to GTECH because they have deprived GTECH of two additional bases upon which to establish infringement of the '337 patent. This is a significant penalty and tantamount to the dismissal of a "claim" under Rule 72.

GTECH did not have an opportunity to present these issues and specifics to the Court in connection with the underlying motion to preclude (D.I. 84). Scientific Games filed its motion seeking preclusion on June 13, 2005, on an "emergency" basis, causing the motion to be heard and ruled on by the Court that same day. Scientific Games thereby deprived GTECH of the opportunity to file a responsive brief or to otherwise bring to the Court's attention the facts and specific circumstances showing why GTECH could not have asserted these claims at the initiation of the suit and how Scientific Games' lengthy delay in providing relevant, requested discovery was the reason that GTECH was unable to assert the two additional patent claims at an earlier date. Indeed,

---

[1] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

3

Plaintiff's counsel attending the hearing on the preclusion motion had not even had the opportunity to see Scientific Games' brief of earlier that day which requested the preclusion relief. In these circumstances, reconsideration is particularly appropriate and should be granted.

## II. GTECH IS UNFAIRLY PREJUDICED BY THE PRECLUSION ORDER

GTECH filed this action against Scientific Games with enough knowledge about the accused PlayCentral machines to know that at least some of the '337 patent claims were being infringed. GTECH identified those claims in its responses to Scientific Games' First Set of Interrogatories, and further noted that because discovery was not yet complete, all the claims it may assert could not yet be known. (*See* Ex. B at Response No. 1.) It is not necessary that a plaintiff know all claims that are to be asserted when filing a complaint for patent infringement. *See R2 Technology, Inc. v. Intelligent Systems Software, Inc.*, 2002 U.S. Dist. LEXIS 19110 at *7 (D. Del. 2002) (A complaint for patent infringement "need only identify the patent, not the specific claims, being asserted.") (Ex. C). As discovery progresses, certain information will be learned about the Defendants' accused device that may cause plaintiff to believe that additional patent claims are infringed. A plaintiff who learns of grounds for asserting additional patent claims after gaining pertinent information during discovery should be entitled to then assert those claims, even late in the case. *See Bayer AG v. Sony Elecs., Inc.*, C.A. 95-8-JJF, 2001 U.S. Dist. LEXIS 25559 at *3-4 (D. Del. Dec. 20, 2001) (J. Farnan) (Ex. D); *Int'l Truck & Engine Corp. v. Caterpillar, Inc.*, 2004 U.S. Dist. LEXIS 27447, at *7 (N.D. Ind. May 26, 2004) (Ex. E).[2]

Precluding GTECH's ability to assert additional patent claims that are being infringed is a severe sanction, tantamount to claim dismissal because each patent claim is a separate right and provides a separate basis for relief:

> Because a putative infringer can be held liable for infringement on a single patent claim, *see Panduit Corp. v. Denison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987), patent claim 34 is not merely an 'alternative theory of infringement,' but rather provides a substantive

---

[2] Further, F.R.C.P. 26(e) allows parties to "seasonably . . . amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect."

4

> basis for relief. If Mopex is precluded from asserting claim 34, it will have one less basis upon which to establish infringement of patent '685, which is a significant penalty. Thus, the involuntary dismissal of patent claim 34 constitutes the dismissal of a "claim" under Rule 72, even though it will not result in dismissal of the entire action for patent infringement, and is clearly dispositive as to that claim.

*AMEX v. Mopex, Inc.*, 215 F.R.D. 87, 92 (S.D.N.Y. 2002).[3]

GTECH submits that preclusion here is unfairly prejudicial because GTECH is being deprived of the ability to seek relief for Scientific Games' infringement of claims 22 and 24 of the '337 patent, and, further, because that severe penalty is being imposed due to *Scientific Games'* withholding of the discovery. A Defendant should not be able to conceal and withhold documents that reveal infringement, and then later argue that the Plaintiff was at fault for discovering that infringement too late. This Court has in fact previously *permitted* the assertion of additional patent claims even as late as the submission of the PreTrial Order in exactly this circumstance – where the discovery needed to assert the new patent claims was withheld by Defendants. *Bayer AG v. Sony Elecs., Inc.*, C.A. 95-8-JJF, 2001 U.S. Dist. LEXIS 25559 at * 3-4 (D. Del. Dec. 20, 2001). (J. Farnan) (Ex. D):

> In the Proposed PreTrial Order Bayer asserts infringement of Claims 3 and 5 of the '799 Patent. (D.I. 412 at Ex. 15). Defendants object to the assertion of infringement of Claims 3 and 5 after this extended litigation, particularly on the eve of trial. (D.I. 418 at 4). In reply, Bayer contends that because discovery with regard to Claims 3 and 5 was not forthcoming from Defendants there was a corresponding delay in the assertion of infringement of Claims 3 and 5. (D.I. 419 at 2). The Court is persuaded that Bayer did not have sufficient discovery to assert infringement of Claims 3 and 5 until recently, particularly in light of the Court's recent ruling on discovery. Therefore, the Court will not preclude Bayer from asserting the infringement of Claims 3 and 5 of the '799 Patent, literally or by the doctrine of equivalents, at trial.

*Id.*

---

[3] Defendants cite the *AMEX* case as support for preclusion. However, *AMEX*, unlike here, involves a situation, where "there was no valid reason why the discovery had not timely been provided," which as discussed herein, is hardly the case here.

### III. DEFENDANTS WITHHELD THE DISCOVERY NECESSARY FOR GTECH TO DETERMINE THAT THE SCIENTIFIC GAMES' BURSTERS CONTAINED A "MEANS FOR HOLDING" AS REQUIRED BY CLAIMS 22 AND 24 OF THE '337 PATENT

Claims 22 and 24 of the '337 patent both recite the "means for holding" limitation, which is not recited in the other asserted claims of the '337 patent.[4] At the time this action was filed and even near the end of fact discovery when contention interrogatory responses were due on April 29, 2005, GTECH did not know enough about the PlayCentral mechanism to know if the PlayCentral was using the "means for holding" feature. This was not for lack of trying to find out the information. GTECH had repeated and long-standing requests for the critical documents and things concerning the "burster" mechanism used in Defendants' PlayCentral machines. ███████████████████
████████████████████████████████████████████████████████████████████████████████

It is undisputed that Scientific Games had no legitimate basis for withholding these documents. As the Court stated at the June 13th hearing,

> I do find that the Burster design is relevant. And, as I understand it, it's the separator of the lottery tickets. It should have been given over. It is certainly encompassed by the claims. If th[at] hasn't been fully given over, it should. . . .

(D.I. 89 at 4). Scientific Games also had no legitimate basis for withholding the samples of the actual bursters, which it did not produce until two days before the close of fact discovery:

---

[4] Claim 22 recites:

> Apparatus for dispensing tickets from a strip of tickets dilineated from one another by lines along which the material of said strip is weakened, said apparatus comprising, in combination, means for moving said strip towards a dispensing position, a separation member, *means for holding said strip adjacent one line along which said strip is to be separated*, ...

(Ex. F, '337 patent at col.19:57-20:4) (emphasis added). Claim 24 also recites the "means for holding." (Ex. F, '337 patent at col. 20:11-27).

[5] This withholding is not atypical for Defendants in this case. In the last 30 days of fact discovery (May 2005) alone, Scientific Games produced well over 100,000 pages of documents to GTECH, as well as 9 CDs containing over 8000 different files and over 4 gigabytes of data. These files included many highly relevant documents, including the schematics and CAD drawings of the burster, which had repeatedly been requested by GTECH and long withheld by Defendants.

6

> MR. SHAW: Looking at my notes, Mr. Smith is correct, last week of the discovery period were the samples that we were asking for to see how the things operated along with the 30(b)(6) witness.
>
> THE COURT: They could have been turned over earlier. I don't disagree.

(D.I. 89 at 5).[6]

GTECH's first request for the schematics, CAD drawings, design and other documents and things concerning the bursters goes back to August 16, 2004 – almost a year ago – when it served its first set of document requests on Scientific Games. (*See* Ex. G, *Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents and Things* at, *e.g.*, Resps. 9, 10, 23 and 24.) GTECH followed up numerous times asking for production of the design documents concerning the bursters and Scientific Games continually evaded production of these documents. GTECH requested the PlayCentral burster design documents on *at least eight different occasions* in March, April and early May alone. (*See* Ex. H, Letter from L. Soccoli of 3/24/05; *see also* Ex. I, Letter from L. Soccoli of 4/1/05; Ex. J, Letter from L. Soccoli of 4/12/05, Ex. K, Letter from L. Soccoli of 4/20/05, Ex. L, Letter from L. Soccoli of 4/22/05, Ex. M, 4/26/05 Gilmore Transcript at 86-7; Ex. N, 4/27/05 Bartolone Transcript at 95; Ex. O, Letter from L. Soccoli of 5/3/05; Ex. P, Letter from L. Soccoli of 5/4/05.)

Scientific Games indicated that it had conducted a reasonable search and produced responsive documents to GTECH's requests for these design drawings. (*See* Ex. Q, Letter from Smith to Soccoli of 4/15/04 at 2, 3.) It hadn't. (*See* Ex. K, Letter from Soccoli to Smith of 4/20/05, at 1, 2.) Under threat of GTECH filing a motion for an order for production of the burster design documents, Scientific Games advised that it "has produced *or will produce* any such documents in its possession, custody, or control." (*See* Ex. R, Letter from Smith to Soccoli of 4/22/05, at 2) (emphasis added). It didn't until much later and after the depositions of its two witnesses with technical knowledge of the structure and operation of the "bursters" – Mark Gilmore (who testified

---

[6] Defendants' argument that GTECH only asked for these samples the week before they were provided is disingenuous at best. (*See* D.I. 89, June 13, 2005 Hearing Transcript at 5) As the Court notes, the samples were clearly relevant and they were responsive to GTECH's requests and could have and should have been provided to GTECH much earlier in discovery. The fact that GTECH only received the samples after it chased them down through follow-up correspondence is irrelevant to Defendants' obligation to have provided them earlier.

7

████████████████████████████ *see* Ex. M, Gilmore Transcript at 152) and Anthony Bartolone (who testified that ████████████████████████████ ████████████████████ *see* Ex. N, Bartolone Transcript at 33-35). GTECH deposed these witnesses on April 26th and 27th, 2005, respectively.

Scientific Games represented at Mr. Gilmore's deposition on April 26th in Atlanta that the schematics and CAD drawings for the bursters were being produced that day on CD to GTECH's counsel's office *in New York* "to the extent the company [had]" them. (*See* Ex. M, Gilmore Transcript at 86-87). The next day at Mr. Bartolone's deposition,[7] Scientific Games indicated it would not be producing any further CAD files beyond what had been produced on the CD the day before. (*See* Ex. N, Bartolone Transcript at 95).

The CD produced on April 26th, however, did not contain the burster design documents so GTECH requested them yet again. (*See* Ex. O, Letter from Soccoli to Smith dated 5/3/05). GTECH ultimately was forced to file a motion for these documents (D.I. 65) and, only then, did it finally receive them on May 7, 2005. Even then, these files were not readily identifiable on the CD (Scientific Games identified the files on May 11, 2005, *see* Ex. S, letter from Smith to Soccoli dated May 11, 2005), did not come with any instructions on how to open or view them, and upon investigation, GTECH learned special software was required to view them. This caused further delay in accessing and reviewing the files.



---

[7] The design drawings were not used at Mr. Bartolone's deposition because, as explained below, the drawings were not even on the CD provided on April 26th.

8



The date for supplementing contention interrogatories was April 29, 2005. By that date, GTECH had provided contention interrogatory responses that asserted only claims 20, 21 and 28 of the '337 patent, and not claims 22 and 24. In those responses, GTECH noted that discovery was ongoing and reserved the right to provide supplemental responses, particularly because Scientific Games had still not produced drawings or samples of the actual PlayCentral bursters. (*See* Ex. B)

# REDACTED

The figures below demonstrate the differences between the structure disclosed in the Menna '071 patent and the structure of the bursters used on the accused PlayCentral. Figs. 11 and 12 of the '071 Menna Patent shows only a shaft offset in front of the blade. ███████████



FIG. 11



FIG. 12



On May 25th, two days before the close of fact discovery, Scientific Games finally produced actual samples of the PlayCentral bursters. On May 27th, the last day of fact discovery, GTECH deposed Scientific Games' 30(b)(6) witness on the structure and operation of the bursters, Mr. William Behm.



11



## IV. DEFENDANTS' CLAIMS OF ALLEGED PREJUDICE SHOULD BE REJECTED

Defendants' only argument for preclusion is that it is allegedly prejudiced because it has already taken discovery, including depositions of the inventors. This argument fails to take into

---

[8] Defendants' excuse for the late 30(b)(6) testimony from Mr. Behm is that it offered him for deposition on May 5 and May 12th, thereby contending that GTECH could have had the information earlier. Notably, had GTECH proceeded with the deposition on either of those dates, it would have been further prejudiced given that the burster drawings were only identified by Scientific Games on May 11, 2005 and were not accessible to GTECH until after the 12th. GTECH did not receive the samples until May 25th and June 1st. Further, Scientific Games did not designate Mr. Behm on the structure, design and operation of the burster until May 16th notwithstanding that GTECH's 30(b)(6) notice was outstanding for a month and a half. Even if GTECH had taken Mr. Behm's deposition on May 5th or 12th, that was still after the April 29th deadline Defendants' assert GTECH failed to comply with in adding these additional claims.

account that all relevant facts for deposing the inventors were available to Scientific Games. The PlayCentral machine accused of infringement is *Defendants'* machine. Thus, Defendants had all the information they needed in order to assess infringement of claims 22 and 24. Further, Defendants have not, and cannot, articulate anything in particular that they would have asked any of GTECH's witnesses concerning claims 22 and 24 that they did not already ask.

In any event, Defendants' cry foul concerning having conducted depositions without knowing these patent claims were at issue was of their own making. Had Defendants' provided the discovery months ago when it was obligated to do so, these claims would have been added with plenty of time and opportunity for Defendants to take discovery concerning them. Defendants should not be permitted to withhold vital information from GTECH until after the date for submitting contentions and until just prior to the close of fact discovery, and then profit from that withholding through preclusion of GTECH on additional claims.

## CONCLUSION

Based on the foregoing, Defendants' respectfully request that the Court reconsider its ruling on *Defendants' Emergency Motion to Preclude Plaintiff From Asserting New Patent Claims Or, In the Alternative, To Amend the Scheduling Order* (D.I. 84).

YOUNG, CONAWAY, STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
jshaw@ycst.com
Attorneys for Plaintiff GTECH Corporation

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
(212) 425-7200

Dated: June 27, 2005

## CERTIFICATE OF SERVICE

I, Gelnn C. Mandalas, Esquire, hereby certify that on June 30, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on June 30, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ Glenn C. Mandalas
> Glenn C. Mandalas (#4432)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> gmandalas@ycst.com
>
> Attorneys for Plaintiff

WP3:1094661.1                                    63055.1003