Exhibit   E

Redacted

Exhibit   F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GTECH CORPORATION,<br><br>      Plaintiffs,<br><br>    v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC.,<br>SCIENTIFIC GAMES HOLDINGS<br>CORPORATION, SCIENTIFIC GAMES<br>FINANCE CORPORATION, and SCIENTIFIC<br>GAMES CORPORATION,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 04-138-JJF |

## PLAINTIFF GTECH CORPORATION'S RESPONSE TO
## DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, GTECH

Corporation ("GTECH"), hereby serves the following objections and responses to Defendants',

Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games

Finance Corporation, and Scientific Games Corporation (collectively, "Defendants"), First Set of

Interrogatories.

## GENERAL OBJECTIONS

1.  GTECH objects to the interrogatories to the extent that the interrogatories, the

instructions and/or definitions contained or incorporated therein are inconsistent with and/or

attempt to impose obligations beyond those imposed by the Federal Rules of Civil Procedure

and/or by the Local Rules of the United States District Court for the District of Delaware ("Local

discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known.

Subject to the General Objections and the foregoing specific objections, GTECH does not contend that any elements of claim 18 of the '624 Patent are subject to interpretation pursuant to 35 U.S.C. §112, ¶6. In the event the Court were to find otherwise, GTECH reserves the right to supplement this interrogatory.

Claims 20, 21 and 28 of the '337 Patent are written in means-plus-function or step-plus-function format pursuant to 35 U.S.C. §112, ¶6.

| | Means |
|---|---|
| **Claim 20** | means for separating |
| | means operable for ordering a plurality of tickets in a single batch |
| **Claim 28** | means for severing |
| | position detecting means |

**Interrogatory No. 3**

For each asserted claim of the Patents-in-Suit, state GTECH's proposed construction of each claim term and identify any special or uncommon meaning, state in detail the basis for GTECH's construction, state each fact supporting GTECH's construction, identify each part of the specification or prosecution history that supports GTECH's construction, identify any extrinsic evidence that supports GTECH's construction, identify any item of evidence that is contrary to GTECH's construction, and identify each person with knowledge relating to GTECH's construction and each document relating to GTECH's construction.

**Response No. 3**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery

8

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that copies of the foregoing document were caused to be served on August 16, 2004 upon the following counsel of record:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

Josy W. Ingersoll

WP3:1029708.1

63055.1001

Exhibit   G

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


INTERLOTT TECHNOLOGIES, INC.,    )    JUDGE PAUL R. MATIA
                                 )
            Plaintiff,           )    CASE NO. 1:02CV02157
                                 )
         -vs-                    )    MEMORANDUM OF OPINION
                                 )    AND ORDER
POLLARD BANKNOTE LIMITED,         )
et al.,                          )
                                 )
            Defendants.          )


        Plaintiff, Interlott Technologies, Inc. ("Interlott"),

brings this action against defendants Pollard Banknote Limited and

Pollard (U.S.) Ltd. (collectively, "Pollard"), asserting that Pollard

has infringed its "System for Distribution of Lottery Tickets" patent,

U.S. Patent. No. 4,982,337 ("the '337 patent"), in violation of 35

U.S.C. § 271(a).  Specifically, Interlott argues that Pollard

infringes Claims 20, 22-25, 28-33, and 35.

        In response, Pollard has asserted counterclaims

against Interlott, seeking both to declare its own products non-

infringing and also to invalidate Interlott's patent.  Specifically,

Pollard claims that (1) it has not infringed, contributed to

I hereby certify that this instrument,
document no. _HC_____, filed on 5-1-03 is a true
and correct copy of the electronically filed original.
Attest: Geri M. Smith, Clerk
U.S. District Court
Northern District of Ohio

By: _____
Deputy Clerk

GTech v. Scientific Games
04-128-JJF

infringement, or actively induced infringement of the '337 patent; (2)

the '337 patent is invalid under 35 U.S.C.

§§ 102, 103, and/or 112 or, alternatively, the '337 patent is

unenforceable; and (3) pursuant to 35 U.S.C. 41(c), plaintiff's

petition for reinstatement of the '337 patent after the failure to pay

maintenance fees should not have been granted.

Pursuant to *Markman v. Westview Instruments*, 517 U.S.

370 (1996) and *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448 (Fed. Cir.

1998), the Court held a hearing on July 2, 2003, to determine the

meaning or construction of the patent's claims, as a matter of law.

In advance of this hearing, the parties submitted: (1) a joint claims

construction chart, identifying areas of agreement and areas of

dispute (Doc. 26), and (2) separate briefs urging a certain

construction for each disputed claim (Docs. 27, 30, 33). The Court

has considered the parties' filings[1] and sets forth its analysis and

construction of the disputed terms below. The following charts

summarize the Court's conclusions.

------------

[1]Although Interlott's reply brief (Doc. 33) exceeded the
applicable page limitation and thus violated the Court's Case
Management Plan (Doc. 16, at ¶ 11), as well as this Court's Local
Rules (L.R. 7.1(g)), Pollard did not file a motion to strike or
otherwise object to Interlott's filing. Thus, the Court will consider
this filing in its analysis of the patent claim terms.

2

GTECH 033744

| INDEPENDENT CLAIM 20 | |
|---|---|
| **Disputed Term** | **Construction** |
| "a ticket dispensing machine" | A machine for dispensing tickets |
| "means operable for ordering a plurality of tickets in a single batch" | <u>Function</u>: To allow ordering of a plurality of tickets in a single batch<br><br><u>Meaning of words used</u>: None in dispute<br><br><u>Structure for Performing Function</u>: control panel 32, keypad 37, push buttons 38, and control circuit 40. |
| "means for separating each of said tickets from said strip" | <u>Function</u>: To separate the leading ticket from the remaining tickets in a strip<br><br><u>Meaning of words used</u>: None in dispute<br><br><u>Structure for Performing Function</u>: the combination of the 'separator member,' 'holding means' and 'drive means,' as used consistently throughout the patent claims. |

| INDEPENDENT CLAIM 22 | |
|---|---|
| **Disputed Term** | **Construction** |
| "apparatus for dispensing tickets" | (see Claim 20) |
| "a separation member" | A distinct part used to disconnect or sever the tickets |
| "dispensing position" | The location where the ticket is dispensed |

3

GTech v. Scientific Games
04-128-JJF

GTECH 033745

| INDEPENDENT CLAIMS 22 | |
|---|---|
| "drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line" | **Function**: To create motion of the separator member and the strip relative to each other in a direction that is transverse to the strip while the separator member is in contact with and deflecting the strip to bend it along the line of weakness and to burst the ticket apart along the line of weakness.<br><br>**Meaning of words used**:<br><br>*direction transverse*: direction perpendicular to the direction of travel of the strip<br><br>*burst said tickets apart upon said one line*: to separate the tickets by application of pressure along the line of weakness<br><br>**Structure for Performing Function**: a burster block, driven by a burster motor through a cable spool arrangement, including a tensioning spring. |

4

| DEPENDENT CLAIM 22 | |
|---|---|
| Disputed Term | Construction |
| "means for releasing said strip under the pull exerted by the deflecting contact of said separator member with said strip to adjust the longitudinal position of said strip in order to align said one line with said member" | **Function:** To release the strip under the pull exerted by the deflecting contact of the separator member with the strip to adjust the longitudinal position of the strip in order to align the line of weakness with the separator member.<br><br>**Meaning of words used:**<br><br>*adjust the longitudinal position:* [none][2]<br><br>*align said one line with said member:* [none]<br><br>**Structure for Performing Function:** rollers 60, 62, 64 and 66. |

| INDEPENDENT CLAIM 24 | |
|---|---|
| Disputed Term | Construction |
| "apparatus for dispensing tickets" | (see Claim 20) |
| "separation means" | (see Claim 20) |
| "separator member" | (see Claim 22) |

---

[2]In the instances where no construction is given, the Court has concluded that the disputed terms are sufficiently clear that they need no special construction by the Court.

5

| INDEPENDENT CLAIM 24 | |
|---|---|
| "drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line" | (see Claim 22) |
| "means for causing said separator member to break through said strip in one locale and then traverse the strip along said line" | <u>Function</u>: To cause the separator member to break through the strip in one locale and then traverse the strip along the line of weakness.<br><br><u>Meaning of words used</u>:<br><br>*in one locale*: at a point or position.<br><br>*traverse the strip along said line*: to travel across, over, or through the strip along the line of weakness.<br><br><u>Structure for Performing Function</u>: a burster block, driven by a burster motor through a cable spool arrangement, including a tensioning spring. |

6

| DEPENDENT CLAIM 25 | |
|---|---|
| Disputed Term | Construction |
| "means for mounting said separator member to traverse said strip, starting from a position in which said separator member is out of contact with said strip" | <u>Function</u>: To mount the separator member to traverse the strip starting from a position in which said separator member is out of contact with said strip.<br><br><u>Meaning of words used</u>:<br><br>*mount*: to put or have in position<br><br>*to traverse said strip*: (see Claim 24)<br><br>*starting from a position*: starting from a place or location.<br><br><u>Structure for Performing Function</u>: burster block 98. |

7

| INDEPENDENT CLAIM 28 | |
|---|---|
| Disputed Term | Construction |
| "a dispenser for dispensing tickets" | (see Claim 20) |
| "position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means to drive said strip until said output signal indicates that said strip actually has moved by said pre-determined distance to dispense one of said tickets" | **Function**: To detect the distance actually moved by the strip and to produce an output signal to control the drive means and to control the means for severing.<br><br>**Meaning of words used**:<br><br>*distance actually moved*: an accurate measurement of the distance traveled by the strip, as opposed to a false reading that could occur when tickets slip and fail to move along the path as intended.<br><br>**Structure for Performing Function**: ticket sensor 76, code wheel 86, and code wheel sensor 88. |
| "means for severing a ticket from a strip" | (see Claim 20) |
| DEPENDENT CLAIM 29 | |
| Disputed Term | Construction |
| "drivably coupled to said strip" | [ruling reserved]³ |

---

³The Court reserves ruling on this element, as the Court has insufficient information to make a determination, and a construction of this term will not be helpful at this point.

8

| INDEPENDENT CLAIM 30 | |
|---|---|
| Disputed Term | Construction |
| "a dispenser for dispensing tickets" | (see Claim 20) |
| "position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means" | (see Claim 28) |
| "drivably coupled to said strip" | (see Claim 29) |
| "said code wheel being mounted on said shaft" | [none] |

| DEPENDENT CLAIM 31 | |
|---|---|
| Disputed Term | Construction |
| "means for comparing the stored information with the output of said position detecting means and for actuating separating means when a pre-determined comparison condition is reached" | **Function**: To compare the stored information with the output of the position detecting means and to actuate the separating means when a pre-determined comparison condition is reached.<br><br>**Meaning of words used**:<br><br>*separating means*: (see Claim 20)<br><br>*pre-determined comparison condition*: a condition for comparison that is determined, decided, or established in advance.<br><br>**Structure for Performing Function**: control circuit 40. |

9

| INDEPENDENT CLAIM 3 | |
|---|---|
| Disputed Term | Construction |
| "a dispenser for dispensing tickets" | A machine for dispensing tickets (see Claim 20) |
| "position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means" | (see Claim 28) |
| "separating means" | (see Claim 20) |
| "separator means at said separation location" | (see Claim 20) |

| DEPENDENT CLAIM 5 | |
|---|---|
| Disputed Term | Construction |
| "separator means for pushing on said strip with a separator member in the vicinity of said one line while gripping said strip on opposite sides of said one line to bend said strip along said line and tear said tickets apart along said one line" | Function: To push on the strip with a separator member in the vicinity of the line of weakness while the strip is gripped on opposite sides of the line of weakness to bend the strip and tear it along the line of weakness.<br><br>Meaning of words used:<br><br>separator member: (see Claim 22)<br><br>Structure for Performing Function: [none] |

| DEPENDENT CLAIM 15 | |
|---|---|
| Disputed Term | Construction |
| "dispensing apparatus being mounted in said housing" | [none] |

10

I.  Legal Standards for Claims Construction

The construction of a patent and the terms contained therein is an issue to be determined by the Court as a matter of law. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *affd*, 517 U.S. 370, 372 (1996).  In construing a claim, the Court determines "the meaning and scope of the patent claims asserted to be infringed." *Id.*

To ascertain the meaning of the claims, a court should consider three things: the patent claims, the patent specification, and the prosecution history. *See Insituform Techs., Inc. v. Cat Contr.*, 99 F.3d 1098, 1105 (Fed. Cir. 1996); *Markman*, 52 F.3d at 979. The claim language itself defines the scope of the claim, and "a construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claims themselves, but consults these sources to give the necessary context to the claim language." *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1552 (Fed. Cir. 1997), *abrogated on other grounds by Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998).

In addition to the claim language and intrinsic evidence, a court may consult dictionary definitions at any time in order to aid in establishing a claim term's ordinary meaning. *See Tex.*

11

*Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).
The Court should analyze the intrinsic evidence in view of the "heavy
presumption' that claim terms carry their ordinary meaning as viewed
by one of ordinary skill in the art." *Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363, 1369 (Fed. Cir. 2003), citing *CCS Fitness Inc. v.
Brunswick Corp.* 288 F.3d 1359, 1366 (Fed. Cir. 2002).

"Claim language is given its ordinary and accustomed
meaning except where a different meaning is clearly set forth in the
specification or where the accustomed meaning would deprive the claim
of clarity." *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d
1281, 1287 (Fed. Cir. 2000). While a patentee can "act as his own
lexicographer to specifically define terms of a claim contrary to
their ordinary meaning, the written description in such a case must
clearly redefine a claim term so as to put a reasonable competitor or
one reasonably skilled in the art on notice that the patentee intended
to so redefine that claim term." *Elekta Instrument S.A. v. O.U.R. Sci.
Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000)(quoting *Process
Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir.
1999))(internal quotation marks omitted). For purposes of construing
the claim, the written description contained in the specification may
"act as a sort of dictionary, which explains the invention and may
define terms used in the claims." *Markman*, 52 F.3d at 979.

12

Although a claim should be read in view of its specification, *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), the Federal Circuit has repeatedly cautioned against limiting the scope of a claim to the preferred embodiment or specific examples disclosed in the specification. *See Ekchian v. Home Depot*, 104 F.3d 1299, 1303 (Fed. Cir. 1997) ("[w]hile examples disclosed in the preferred embodiment may aid in the proper interpretation of a claim term, the scope of a claim is not necessarily limited by such examples"); *Intervet America, Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989) ("limitations appearing in the specification will not be read into claims, and. . . interpreting what is meant by a word in a claim 'is not to be confused with adding an extraneous limitation appearing in the specification, which is improper'") (citation omitted).

In construing the claims, the Court may look to the patent's prosecution history if it is a part of the record in the case. *See Markman*, 52 F.3d at 980. "This 'undisputed public record' of proceedings in the Patent and Trademark Office is of primary significance in understanding the claims." *Id.* Although the prosecution history "can and should be used" when construing the claims, it "cannot 'enlarge, diminish, or vary' the limitations in the claims." *Id.* (citation omitted). Prosecution history is relevant to

13

GTECH 033755

the construction of a claim written in means-plus-function form. Indeed, "just as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction under § 112, P 6. Clear assertions made in support of patentability thus may affect the range of equivalents under § 112, P 6." *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998)(citations and internal quotation marks omitted). The Court does not, however, apply the doctrine of prosecution history estoppel at this stage of the analysis. "There is a clear line of distinction between using the contents of the prosecution history to reach an understanding about disputed claim language. . . and the doctrine of prosecution history estoppel which 'estops' or limits later expansion of the protection accorded by the claim to the patent owner under the doctrine of equivalents when the claims have been purposefully amended or distinguished over relevant prior art to give up scope." *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 862 (Fed. Cir. 1991)(citations omitted).

Extrinsic evidence such as expert testimony may be considered, if needed to assist the Court, in understanding the technology at issue or in determining the meaning or scope of technical terms in a claim. See *Aqua-Aerobic Sys. v. Aerators, Inc.*,

14

211 F.3d 1241, 1244-45 (Fed. Cir. 2000); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1579 (Fed. Cir. 1996), *cert. denied*, 117 S.Ct. 275 (1996). Expert testimony may not be relied upon, however, to "correct errors or erase limitations or otherwise diverge from the description of the invention as contained in the patent documents." *Aqua Aerobic Sys.*, 211 F.3d at 1245 (*citing Markman*, 52 F.3d at 981). Reliance on any extrinsic evidence is also discouraged where the public record--that is the claims themselves, the specification, and the file history--unambiguously defines the scope of the claims. *Vitronics*, 90 F.3d at 1583. "[E]xtrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history." *Bell Atl. Network Servs., Inc. v. Covad Communs. Group, Inc.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001). Courts are not prohibited, though, from examining extrinsic evidence, even when the patent document is itself clear. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308 (Fed. Cir. 1999).

There is presumed to be "a difference in meaning and scope when different words or phrases are used in separate claims." *United States v. Telectronics, Inc.*, 857 F.2d 778, 783 (Fed. Cir. 1988). There is a presumption against construing claims as so similar

15

as to "make a claim superfluous." *Id.* at 784.  That claims are
presumed to differ in scope, however, "does not mean that every
limitation must be distinguished from its counterpart in another
claim, but only that at least one limitation must differ." *Kraft
Foods, Inc. v. International Trading Co.*, 203 F.3d 1362, 1368 (Fed.
Cir. 2000); *see also Mantech Envtl. Corp. v. Hudson Envtl. Servs.*, 152
F.3d 1368, 1376 (Fed. Cir. 1998).  The doctrine of claim
differentiation, moreover, "only creates a presumption that each claim
in a patent has a different scope; it is not a hard and fast rule of
construction.'" *Kraft Foods*, 203 F.3d at 1369 (*citing Comark Communs.,
Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998)).  "[C]laim
differentiation can not broaden claims beyond their correct scope."
*Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1480 (Fed.
Cir. 1998).

When construing claims, the Court must be mindful of
the word "means." As explained in 35 U.S.C. § 112, ¶ 6:

> An element in a claim for a
> combination may be expressed as a
> means or step for performing a
> specified function without the recital
> of structure, material, or acts in
> support thereof, and such claim shall
> be construed to cover the
> corresponding structure, material, or
> acts described in the specification
> and equivalents thereof.

16

GTECH 033758

Thus, when claim terms are in the form commonly referred to as "means-plus-function," the language must be construed as limited to the specific structure described in the specification "and equivalents thereof." *Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352, 1356 (Fed. Cir. 1999). Application of § 112, ¶ 6 is normally required if the claim language includes the word "means." If a claim element uses the word "means," but recites no function corresponding to that means, § 112, ¶ 6 does not apply, however. Also, if a claim element recites sufficient structure or material for performing a function, then § 112, ¶ 6 does not apply, even if the claim element also specifies a function. *See Personalized Media Communs. L.L.C. v. ITC*, 161 F.3d 696, 704 (Fed. Cir. 1998); *Desper Prods. v. Qsound Lab*, 157 F.3d 1325, 1336 (Fed. Cir. 1998); *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213-15 (Fed. Cir. 1998); *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996).

When applying a means-plus-function analysis, the claimed element must be specifically limited to the structure disclosed in the patent specification for performing the stated function, and very limited "equivalents" of such structure within the meaning of "equivalents" set forth in § 112, ¶ 6. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989). A means-plus-function limitation incorporates only the disclosed structure necessary to

17

GTECH 033759

perform the specified function. *See General Electric Co. v. United States,* 572 F.2d 745, 776 (Ct. Cl. 1978) (refusing to incorporate elements into limitation from the specification not necessary for performing the function); *Lockheed Aircraft Corp. v. United States,* 553 F.2d 69, 81 (Ct. Cl. 1977) ("a 'means-plus-function' claim covers the structure necessary to perform the specified function"). The function which defines the limitation is determined by the terms of the claim, not the specification. Section 112, ¶ 6 restricts the scope of a functional claim limitation as part of a literal infringement analysis. *See Al-Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1320 (Fed. Cir. 1999). Thus, § 112, ¶ 6 procedures restrict a functional claim element's "broad literal language . . . to only those means that are 'equivalent' to the actual means shown in the patent specification." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 26 (1997).

## II.  Claim Construction Analysis

### A.  Construction of the "Structural Elements"

The Court first examines the disputed terms that are presented as "structural elements," that is, those terms that are not set forth in means-plus-function format in the '337 patent.

#### 1.  "Ticket Dispensing Machine"

18

Claim 20 of the '337 patent contains the term "ticket dispensing machine." The parties dispute the construction of this term; however, both parties agree that the disputed term has the same meaning as its analogues, which are set forth in other portions of the patent: (1) "apparatus for dispensing tickets" (Claims 22, 24); and (2) "dispenser for dispensing tickets" (Claims 28, 30, 32). Thus, the Court's construction of the term "ticket dispensing machine" also shall apply to such analogues, as set forth above.

Plaintiff Interlott argues that the term "ticket dispensing machine" should be limited to its plain and ordinary meaning and construed as "a machine for dispensing tickets." Pollard, however, relies on both intrinsic and extrinsic evidence to argue that the meaning of the term, as used in the specification, is much narrower. Pollard argues that the term "ticket dispensing machine" should be limited to an <u>agent-operated</u> machine for dispensing tickets. For several reasons, the Court adopts Interlott's construction.

First, the plain language of the term "ticket dispensing machine" is unambiguous and, even without the aid of a dictionary, the Court interprets that term to refer to a broad universe of machines that are capable of dispensing tickets. The Court is aware, however, that it must not construe patent terms in a "lexicographic vacuum," *Toro Co. v. White Consol. Indus.*, 199 F.3d

19

1295, 1301 (Fed. Cir. 1999); *see also ADE Corp. v. Kla-Tencor Corp.*, 252 F. Supp. 2d 40, 58 ("context is critical, and the import of the intrinsic record cannot be ignored."). Thus, the Court also reviews the intrinsic evidence presented by Pollard to determine the context of Interlott's use of this term.

Since the claim language is facially unambiguous, however, the "consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). Upon close review of the intrinsic evidence presented by Pollard, the Court has determined that no such deviation is appropriate, and the evidence does not support Pollard's proposed construction.

Pollard relies on Interlott's use of the term "ticket dispensing machine" (and its similar related terms) throughout the specification with reference to the preferred embodiment, which describes an agent-operated machine. A construction so limiting the patent term to include only the features of the preferred embodiment, however, runs the risk of adopting a narrow construction at the expense of the plain language of the patent claims. *See Tex. Digital Sys., Inc.*, 308 F.3d at 1205. The Federal Circuit has cautioned that

20

"particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments. . . ." *Electro Medical Sys., S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

Rather, the Court notes the existence of a "heavy presumption" that claim terms "mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art." *Tex. Digital Sys.*, 308 F.3d at 1202. Interlott's mere usage of the term "ticket dispensing machine" within the specification to refer to an agent-operated machine is insufficient to create either an express or implied limitation on the ordinary meaning of the term "ticket dispensing machine." Such a term would not be so narrowly understood by persons skilled in the art, nor does the Court so understand it.

The rule of interpretation consistent with a term's plain meaning holds true even where, as here, the preferred embodiment is the only embodiment set forth in the specification. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)(". . . the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms."). Interlott, the patentee, has used a term with an unambiguous ordinary meaning, and the Court will not graft ambiguities onto a clear patent term.

21

Likewise, since the term is unambiguous, there is no need to resort to extrinsic evidence in construing the term, *see Vitronics*, 90 F.3d at 1583, and the Court thus disregards Pollard's proffered extrinsic evidence. "Ticket dispensing machine," as used in the '337 patent, shall be construed to mean "a machine for dispensing tickets."

　　　　2.　'Separation Member"

　　　　The parties dispute the meaning of the terms "separation member" (Claim 22) and "separator member" (Claim 24); however, both Interlott and Pollard agree that these two claim limitations have the same meaning. Interlott relies on dictionary definitions to argue that a separation member is a "distinct part used to disconnect or sever the tickets." Pollard, on the other hand, references the intrinsic evidence to support its assertion that a "separator member" is "a dull, rounded edge burster wheel."

　　　　According to *The American Heritage Dictionary* (2d College Ed. 1991, cited by Interlott, "to separate" means "to become disconnected or severed; come apart." (Interlott Exh. 4, at 1118). A "member" is "a distinct part of a whole." *Id.* at 784. Interlott relies almost exclusively on these definitions and strenuously argues that no further limitations should be read from the specification into the claims.

22

Defendant Pollard places great weight on the language
of the specification, which on numerous occasions refers to a "wheel"
or "burster wheel" rather than to a "separation member." *See, e.g.,*
'337 Patent, Pollard Exh. 4, at col. 10 ("a burster wheel positioned
adjacent dispensing path 57 at a bursting position. . . ."); col. 11
("a slight deflection of strip of tickets . . . in response to
pressure exerted by the burster wheel. . . ."); col. 13 ("Burster
wheel 68 is shown mounted on a burster block 98 driven by a burster
motor. . . ."). Pollard argues that, since the specification uses the
term "burster wheel" in place of the term "separation member," these
terms must be construed to have the same meaning, and the term
"separation member" must be construed as limited to a dull-edge
rounded wheel.

Alternatively, Pollard argues that the consistent use
of the term "burster wheel" at least creates ambiguity with respect to
the meaning of the term "separation member." Thus, Pollard asks that
the Court review its extrinsic evidence, including statements made by
Interlott and its representatives during the prosecution of subsequent
patents.

While the Court agrees with Pollard that the
specification does not contain the language "separation member" or
"separator member," Interlott's use of the "burster wheel" language

23

within the specification is far less consistent than Pollard suggests. In fact, the abstract and specification use a variety of terms to describe the separating structure. *See, e.g.,* '337 Patent, Pollard Exh. 4, at col. 3 ("bursting blade"), col. 9 (heading, "Ticket Separator or 'Burster'"), col. 10 ("burster mechanism"), col. 11 ("bursters"). Moreover, the references cited by Pollard to "burster wheel" all appear in the description of the preferred embodiment which, undisputedly, does utilize a "burster wheel" mechanism to separate tickets. It appears, therefore, that the references cited by Pollard are more descriptive than dispositive.

The Court follows established law in relying on the ordinary meaning of a claim term, where no "deviation from the clear language of the claims is specified." *Interactive Gift Express*, 256 F.3d at 1331. It is clear to the Court that a "separation member," as that term is ordinarily understood, need not be of any particular shape, as long as it is a distinct part used in separating. As noted above, there is a heavy presumption that claim terms "mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art." *Tex. Digital Sys.*, 308 F.3d at 1202.

Pollard's citations provide no clear evidence that the patentee has acted "as his own lexicographer" here, *Elekta*, 214 F.3d

24

at 1307, and the use of the term "burster wheel" in describing the preferred embodiment is insufficient to refute the weight of the presumption. Moreover, since the claim term "separation member" unambiguously fails to incorporate any limitation as to shape, the Court need not consider further extrinsic evidence to determine the meaning of this term. The Court adopts Interlott's proposed construction.

### 3. "Dispensing Position" (Claim 22)

At the Court's July 2, 2003 *Markman* hearing, the parties agreed that the claim term "dispensing position" means "the location where the ticket is dispensed." The Court thus adopts the parties' proposed construction without further analysis.

### 4. "Drivably Coupled to Said Strip" (Claims 29, 30)

The parties dispute the meaning of the term "drivably coupled to said strip," found in dependent claim 29 and independent claim 30. Interlott contends that the plain meaning of this term is that the code wheel is "moved not under its own power, but by the strip." Pollard, on the other hand, counters that the code wheel must be "mounted on the same shaft as the upper feed rollers, which move the ticket strip."

25

GTech v. Scientific Games
04-128-JJF

GTECH 033767

Interlott relies on the prosecution history (specifically a May 1989 amendment)[4] to support its position. *(See Interlott Exh 3, '337 Prosecution History, at 293)*. Defendant Pollard gives little discussion to this claim term, but Pollard appears to argue that the code wheel must be mounted on the same shaft as the upper feed rollers, and that the code wheel thus is moved not by the ticket strip, but by the movement of the shaft itself.

Surprisingly, although the meaning of this claim term appears to hinge on a definition of the word "drivably," neither party has provided a dictionary definition to establish the ordinary meaning of this term, and the Court has been unable to locate any such definition. Given this fact, and given the parties' abbreviated discussion of the issue in their briefs, the Court is uncertain whether any Court construction will materially advance the resolution of the parties dispute at this point in time. Thus, the Court declines to construe the term "drivably coupled to said strip" and reserves ruling on that element.

---

[4]The relevant language reads:

> . . . the code wheel 86 is secured to
> a shaft to which rollers 60 are
> coupled. The rollers 60 are idlers
> which move only as the result of
> movement of the ticket strip.

Interlott Exh. 3, '337 Prosecution History, at 293.

26

5.  "Said Code Wheel Being Mounted on Said Shaft" (Claim
30)

The parties dispute the meaning of this term, and the
crux of the dispute appears to be the parties' disagreement as to
whether the claims require the code wheel to be mounted on the same
shaft as the upper feed rollers, or merely mounted upon any shaft.
Pollard seeks to limit the term to include only the shaft upon which
the upper rollers are mounted, while Interlott seeks a broader and
more inclusive definition.

The relevant portion of Claim 30 reads as follows:

> . . . and including an idler roller
> driven by the motion of said strip and
> drivably coupled to a shaft, said code
> wheel being mounted on said shaft.

(Pollard Exh. 4, '337 Patent, at col. 21).  Figure 7 of the patent also
provides a diagram illustrating the relevant parts, specifically
rollers 60 and 62.

In support of its construction, Pollard relies upon a
particular portion of the specification, which describes the preferred
embodiment:

> Code wheel 6 is shown mounted on the
> same shaft 97 on which upper feed
> roller 60 is mounted to provide an
> accurate measure of ticket
> displacement.  Although driven lower
> feed roller 62 may slip while stream
> of tickets 50 is stationary, upper

27

> feed roller 60 is rotated only when
> stream of tickets 50 moves, thereby
> providing an accurate output from code
> wheel 86.

(Pollard Exh. 4, '337 Patent, at col. 13). Pollard argues that this portion of the specification demonstrates the importance of mounting the code wheel on the same shaft as the upper feed rollers, rather than on the bottom shaft or some other shaft.

Upon review of the parties' evidence, the Court concludes that the term "said code wheel being mounted on said shaft" is sufficiently clear in the context of the '337 patent. Thus, no further construction by this Court is needed.

### 6. "Dispensing Apparatus Being Mounted in Said Housing" (Claim 35)

The parties dispute the term "dispensing apparatus being mounted in said housing," which appears in dependent Claim 35. Pollard indicates, in the parties' Joint Claim Construction and Prehearing Statement (Doc. 26), that it believes this term to mean that "the dispensing apparatus and all of its components are secured to the outer housing of the ticket machine." Pollard's brief, however, does not address the dependent claims. Interlott, on the other hand, contends that the term means that "the dispensing apparatus is mounted in the housing." Each party cites a dictionary definition of the word "mounted" as the sole support for its claims.

28

GTECH 033770

The Court has reviewed the language of Claim 35[5] and has determined that the claim term is sufficiently clear as to need no further construction from this Court.

**B.  Construction of the "Means-Plus-Function Elements"**

The Court turns now to evaluate the claim elements written in means-plus-function format.  Such claims are governed by 35 U.S.C. § 112, which provides, in pertinent part:

> . . . [a]n element in a claim . . . may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6.  Where a patent contains a term written in means-plus-function format, the Court must determine the function recited in the claim and the corresponding structure disclosed in the specification necessary to perform that function.  *See Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1360 (Fed. Cir. 2000).  In making such construction, the Court may not "impermissibly limit the claim by adopting a function different from that explicitly recited in

---

[5]"A dispenser as in claim 28 in which said tickets are lottery tickets, and including housing means for storing said tickets in fan-fold form, said dispensing apparatus being mounted in said housing."

29

the claim." *Generation II Orthotics, Inc. v. Medical Tech., Inc.*, 263 F.3d 1356, 1364 (Fed. Cir. 2001).

Additionally, once the Court has identified the claimed function, the Court must identify only that structure necessary to perform the claimed function. ". . . [T]he statute [does not] permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem. Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). Finally, the structure identified as necessary to performance of the function "must actually perform the recited function, not merely enable the pertinent structure to operate as intended. . . ." *Asyst Technologies, Inc. v. Empak, Inc.*, 268 F.3d 1364, 1371 (Fed. Cir. 2001). With these established rules in mind, the Court turns to consider the disputed terms set forth in means-plus-function format.

:.    **"Means operable for ordering a plurality of tickets in a single batch" (Claim 20)**

The parties generally agree on the function set forth in this claim term, which is allowing the ordering of a plurality of tickets in a single batch. The parties also agree that 35 U.S.C. § 112, as set forth above, governs this Court's analysis of this claim term.

30

The sole question at issue is the scope of the "structure" identified in the specification for performing the recited function. The parties agree that the designated "structure" includes a control panel, keypad, push buttons and a control circuit. Pollard, however, argues that the designated keypad must be an agent-operated keypad. Interlott contends that the individual operating the keypad is not a "structure"; thus, the agent cannot constitute a necessary part of the "structure" of the claim.

For the reasons stated by Interlott, and for the reasons set forth above (*see* section II.A.1., *supra*), the Court adopts Interlott's proposed construction.

### 2. "Means for separating each of said tickets from said strip" (Claim 20)

The parties dispute the meaning of the claim limitation "means for separating each of said tickets from said strip." Both parties agree, however, that this term has the same meaning as each of its analogues: (1) "Separation means"[6] (Claim 24); (2) "Means for severing a ticket from a strip" (Claim 28); (3) "Separating means" and "separator means at said separation location" (Claim 32). The parties agree that the claimed function in each of these limitations is "to separate the leading ticket from the

_____

[6]*See* discussion note 8, *infra*.

31

remaining tickets in the strip of tickets." Additionally, both parties agree that the burster (or burster wheel) 68 is an essential part of the structure disclosed for performing the recited function. Interlott claims that the burster is the only structure necessary to performing this function, while Pollard seeks to incorporate additional structure.

Interlott relies simply on the language of the patent itself, which states that "the separation means includes a dull edge bursting blade" and explains that the leading ticket is severed from the rest of the strip by the application of pressure on the strip by the burster. (Pollard Exh. 4, '337 patent, at cols. 3, 10).

Pollard, on the other hand, states that the required "structure" includes the upper and lower feed rollers, a burster block, a burster motor, a cable spool arrangement and a tensioning spring. Pollard, like Interlott, relies on the specification in support of its position. The cited portion reads, in relevant part:

> [T]he separation means includes a dull edge
> bursting blade moveably mounted adjacent a
> predetermined bursting position along the
> path, holding means for holding the stream
> of tickets against substantial deflection
> from the path at the bursting position, and
> bursting blade drive means for bringing the
> bursting blade into bursting contact with
> the stream of tickets at the bursting
> position to burst the leading ticket from
> the next following ticket.

32

(Pollard Exh. 4, '337 patent, col. 3). Since this language states that the separation means includes "holding means," as well as "bursting blade drive means," Pollard asserts that the structure must include the rollers (holding means), burster block, motor, cable spool arrangement and tensioning spring (all bursting blade drive means). Pollard further asserts that the language of the specification indicates that these additional structures are directly involved in the function of separating the leading ticket from the strip, such that they should be incorporated into the structure necessary for performing that function.[7]

The Court believes that the plain language of the specification is consistent only with a broader definition of

---

[7]See, e.g., Pollard Exh. 4, '337 patent, at col. 13, which provides:

> Burster wheel 68 is shown mounted on a burster block 98 driven by a burster motor 100 through a cable spool arrangement 102 including tensioning spring 104. When burster block 98 is moved from the illustrated rest position towards interception with dispensing path 57 through the action of cable spool device 102, burster wheel 68 will come into contact with the stream of tickets 50 at the side thereof initially and then across stream of tickets 50 to burst same apart.

Pollard Exh. 4, '337 patent, at col. 13.

33

GTech v. Scientific Games
04-128-JJF

GTECH 033775

"structure" than that set forth by Interlott. The language cited by both parties indicates that the separation means includes not only a "dull edge bursting blade" but also "holding means" and "bursting blade drive means." Moreover, Claim 24 refers to "separation means having a separation member and drive means for creating motion of said separator member. . . ." (Pollard Exh. 4, '337 patent, at col. 20). Interlott cites this provision, apparently not recognizing that this language is inconsistent with limiting the separation means structure to the burster element only."

The Court declines to adopt Pollard's proposed interpretation in its entirety, however. As this Court's expertise does not extend to engineering matters, the Court refuses to determine whether the rollers, bursting block and other elements set forth by Pollard each should be included as part of the "holding means" and

_____

"On July 3, 2003, Interlott filed a "corrected" page to be inserted into the parties' Joint Claim Construction and Prehearing Statement (Doc. 36). Pollard objects to the corrected page, contending that Interlott has made a substantive change in its position regarding its proposed construction of the term "separation means."

The Court agrees with Pollard that such a change has been made, since Interlott states that "separation means" should be construed to mean "the combination of the 'separator member' and 'drive means' set forth below." Interlott thus appears now to assert that "separation means" should be construed differently from its analogues. The Court does not strike Interlott's filing, however, as the Court adopts neither of the parties' proposed constructions with respect to this term.

34

"drive means." Rather, the Court concludes, based on the clear language of the patent claims, that the structure designated for performing the function of separating the leading ticket from the remaining tickets in the strip should be construed to mean "the combination of the 'separator member,' 'holding means' and 'drive means,' as used consistently throughout the patent claims."

3. "Drive means . . . along said one line")(Claims 22, 24)

The parties dispute the meaning of a claim limitation appearing in independent claims 22 and 24, which term reads as follows:

> Drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line.

Joint Claim Construction and Prehearing Statement (Doc. 26, at 6).

The parties agree that this is a means-plus-function limitation, to which 35 U.S.C. § 112, ¶ 6 applies. Additionally, the parties agree that the function described by this claim limitation is "to create motion between the separator member and the strip of tickets relative to one another in a direction transverse to the strip, with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line."

35

GTECH 033777

The matters in debate, therefore, involve the appropriate meaning of two phrases used to describe the claimed function, as well as the structure disclosed in the specification for performing the claimed function.  The Court addresses each of these matters in turn.

   a.  "Direction transverse"

   With respect to the parties' differing constructions of the term "direction transverse," each party submits its own dictionary definition to bolster its proposed construction of that term.  Interlott submits two proposed definitions, and contends that "transverse" means 'situated or lying across; crosswise" (Interlott Exh. 4, *The American Heritage Dictionary* (2d College Ed. 1991), at 1289), or, alternatively, "made at right angles to the anterior-posterior axis of the body." (Interlott Exh. 5, *Webster's New Collegiate Dictionary* (1973), at 1242).  Interlott's interpretation would result in a construction defining "transverse" as any direction perpendicular to the direction of travel of the ticket strip.  Interlott thus requests that the Court construe the phrase "transverse direction" as including a vertical, or up-and-down bursting motion, as well as a horizontal, or side-to-side motion.

36

GTECH 033778

Pollard, similarly, relies on a dictionary definition of the word "transverse," and claims that the word means "to direct across . . . situated or lying across: CROSSWISE." (Pollard Exh. 9, *Webster's II New College Dictionary* (2001), at 1172). Pollard thus argues that the ordinary meaning of the word "transverse" is more consistent with a construction limiting the term to include only a "side-to-side" bursting motion--that is, a bursting motion <u>across</u> the ticket.

The Court believes that, based on these definitions, the ordinary meaning of the term "transverse" is in accordance with Interlott's broader construction of the term. There is nothing in the definitions or in ordinary usage that would suggest that "transverse" must be limited to horizontal motion, and even Pollard's proposed definitions do not support a definition which includes only side-to-side movement. The specification also appears to be devoid of any guidance as to the meaning of the term "transverse direction." The Court thus turns to the prosecution history to determine whether the evidence there indicates that a "deviation from the clear language of the claims is specified." *Interactive Gift Express*, 256 F.3d at 1331. No such evidence exists, since the intrinsic evidence of record is equally consistent with either a broad or narrow construction of the term "transverse."

37

Interlott cites a prior determination made by the patent Examiner in a July 1989 Office Action. (*See* Interlott Exh. 3, '337 Prosecution History, at 300-308). In that action, the Examiner rejected application claim 59 (which recited the claim limitation at issue here) over Wescoat U.S. Patent No. 3,894,669. In so doing, the Examiner concluded that ". . . the downward movement of the breaker bar 72 in Wescoat is considered to be in a direction transverse to the longitudinal direction of the strip."[9] Thus, the Examiner concluded that both vertical and horizontal movement were encompassed by the phrase "transverse direction."

Pollard, on the other hand, relies on a representation made by Interlott during prosecution of the '337 patent. Interlott at that time claimed "a method. . . in which said separator member has a relatively dull edge, and said relative transverse motion comprises moving said member across said strip with its edge contacting said strip along a line spaced transversely of the plane of longitudinal travel of said strip." (Interlott Exh. 3, 5/17/89 Amend., at 280). Pollard maintains that this statement by Interlott is entitled to more weight than the Examiner's conclusion, especially since Interlott

---

[9]In that action, Interlott did not challenge the Examiner's conclusion that the Wescoat patent disclosed transverse motion of the separation means but distinguished the Wescoat patent on the basis that Wescoat's device cut rather than burst the tickets.

38

distinguished its patent on other grounds and had no need to challenge the Examiner's conclusion.[10]

The Court believes that the intrinsic evidence of record could be equally well utilized to support the proposed construction of either of the parties here. Thus, in the absence of a clear intent to deviate from the ordinary meaning of the term, the Court applies the "'heavy presumption' that claim terms carry their ordinary meaning. . . ." *Altiris*, 318 F.3d at 1369. The Court finds that the term "direction transverse to the strip" should be construed to mean "direction perpendicular to the direction of travel of the strip" of tickets.

b. "Burst said tickets apart along said one line"

---

[10]Alternatively, Pollard contends that the intrinsic evidence relating to claim construction is ambiguous, and that the Court may therefore look to extrinsic evidence to resolve the ambiguity. *See Vitronics*, 90 F.3d at 1584. On this point, Pollard presents a separate patent, U.S. Patent No. 4,688,708, entitled "Bursting Machine," in which the patentee describes the lines of perforations connecting multiple sheets in a strip as "transverse lines[s] of perforation[]." (Pollard Exh. 10, at col. 2).

Without determining, however, whether reference to extrinsic evidence might be appropriate here, the Court has reviewed the extrinsic evidence presented by Pollard, and has concluded that this evidence is neither relevant nor helpful to resolution of the point in question. Although the '708 patent refers to "transverse lines[s] of perforation[]," such language goes no further than to <u>include</u> horizontal lines within the definition of "transverse." This language does not speak to the appropriateness of inclusion of vertical lines where such lines are perpendicular to the longitudinal axis; thus, the Court finds that such evidence does not indicate an intent to deviate from the ordinary meaning of the term "transverse."

39

GTECH 033781

The parties dispute the meaning of the term limitation "burst said tickets apart along said one line." Interlott states that the plain meaning of this term is simply that the burster mechanism separates adjacent tickets by applying pressure along the line of weakness. Pollard, however, seeks to limit the meaning of the term "along" to include only the application of pressure beginning at one end of the line of weakness and continuing across that line.

Pollard's definition relies on its prior assertion that "direction transverse" should be properly construed as a direction "across." Pollard does not argue that, in the absence of such a directional construction, "along" must also be construed in such a limited manner. The definition for the word "along," located through the Court's own research, is "in a line parallel with the length or direction of." *See Merriam Webster's Collegiate Dictionary* (10th ed. 1993)(online version). This definition does not suggest that "along" should be limited in accordance with Pollard's definition. Thus, the Court construes "burst said tickets apart along said one line" to mean "to separate the tickets by application of pressure along the line of weakness."

Thus, now that the Court has construed the disputed terms in this means-plus-function claim, the claimed function is "to create motion of the separator member and the strip relative to each

40

other in a direction that is perpendicular to the direction of travel
of the ticket while the separator member is in contact with and
deflecting the strip to bend it along the line of weakness and to
separate the tickets by application of pressure along the line of
weakness."

       c.  Structure disclosed for performing function

       Finally, the parties dispute the structure necessary
to perform the above function.  Interlott claims that only the burster
motor is necessary, since that is the structure that creates motion of
the separator member and causes the application of pressure along the
line of weakness.  Pollard, on the other hand, again argues that the
burster block, cable spool arrangement and tensioning spring should be
incorporated into the performance of this function.  Pollard argues
that, in order to perform the stated function, a structure must be
capable not only of moving the separator member but also of
controlling the direction of that member and effecting a bursting
action.

       Pollard's construction is consistent with the
specification and with the Court's understanding of the function
stated in claim 22.  The specification provides:

       [b]urster wheel 68 is shown mounted on
       a burster block 98 driven by a burster
       motor 100 through a cable spool

41

arrangement 102 including tensioning
spring 104.  When burster block 98 is
moved from the illustrated rest
position towards interception with
dispensing path 57 through the action
of cable spool device 102, burster
wheel 68 will come into contact with
stream of tickets 50 to burst the same
apart.

(Pollard Exh. 4, at 13).  The Court disagrees with Interlott that the

function recited requires only a burster motor, since the stated

function requires not only the creation of movement of the separator

member but also the placing of the member in contact with the strip of

tickets.  Thus, the Court agrees with Pollard that directional

control, as well as the ability to create motion, are directly

necessary to performance of this function.  The structure disclosed

for performing the claimed function is "a burster block, driven by a

burster motor through a cable spool arrangement, including a

tensioning spring."

     4.   "Means for releasing. . . with said member" (Claim 23)

     The parties dispute the meaning of a claim term,

contained in dependent Claim 23, which reads: "means for releasing

said strip under the pull exerted by the deflecting contact of said

separator member with said strip to adjust the longitudinal position

of said strip in order to align said one line with said member."  The

parties agree that this is a means-plus-function limitation, to which

42

GTECH 033784

35 U.S.C. § 112 applies, and the parties also generally agree that the recited function is "to release the strip under the pull exerted by the deflecting contact of the separator member with the strip to adjust the longitudinal position of the strip in order to align the line of weakness with the separator member." The parties disagree on the meaning of two phrases used in this claim and also disagree on the structure disclosed for performing this function.

a. "Adjust the longitudinal position"

Interlott argues that this term means to move the strip of tickets longitudinally, or in a direction along the length of the ticket. Pollard provides no discussion of this term in its brief but states in the parties' Joint Claim Construction and Prehearing Statement (Doc. 26, at 0), that the phrase means "the strip is moved forwards or backwards as opposed to side to side or up or down." Upon review of the parties' respective positions, the Court concludes that this term is sufficiently clear and requires no special construction by this Court.

b. "Align said one line with said member"

Interlott cites a dictionary definition and contends that the word align means "to adjust. . . to produce a proper relationship or condition." (See Interlott Exh. 4, *The American Heritage Dictionary*, at 33). Interlott relies on this definition to

43

support its contention that the strip of tickets must be "adjusted until the line of weakness on the strip of tickets is in the proper relationship with the separator member." Pollard's definition is slightly more limited; Pollard asks the Court to find that the perforation line must be brought "to within at least a predetermined incremental distance of the path of the burster wheel."

Each party relies on the specification in support of its position. The portion cited by Interlott reads, in pertinent part:

> [i]n order for burster wheel 68 to effectively burst the leading ticket. . . it must be sufficiently aligned with lines of weakness at least close to the line. A separate alignment mechanism, discussed below, is used to bring line of weakness 56 to within at least a predetermined incremental distance of bursting position 70. Even within this incremental distance it is still advantageous to have line of weakness 56 precisely aligned with bursting position 70, for best results. . . In accordance with the present invention, the very action of burster wheel 68. . . provides a mechanical alignment to correct any errors within the incremental distance.

(Pollard Exh. 4, '337 Patent, at col. 11). Pollard's cited language falls within the same column of the specification and merely repeats the language contained above regarding the predetermined incremental

44

distance.  The Court has considered the parties' arguments and evidence and has determined that this term is sufficiently clear and requires no special construction by the Court.

        c.  **Structure disclosed for performing function**

        The parties essentially agree that the structure disclosed in the specification for performance of the recited function is the rollers 60, 62, 64 and 66.  Pollard requests that the Court identify these as the "upper and lower two-way bearing feed and exit rollers."  The Court believes that the identification of the rollers as the relevant structure is sufficient and declines to provide further limitation or clarification.

        5.  **"Means for causing. . . along said line" (Claim 24)**

        The parties dispute the meaning of a term appearing in Claim 24, which reads: "means for causing said separator member to break through said strip in one locale and then traverse the strip along said line. . . ."  The parties agree generally that the function of this limitation is to cause the separator member to break through the strip in one locale and then traverse the strip along the line of weakness.  However, the parties dispute the meaning of two terms used to describe this function and on the identity of the structure disclosed in the specification for performing the recited function.

        a.  **"In one locale"**

45

GTech v. Scientific Games
04-128-JJF

GTECH 033787

The parties dispute the meaning of the term "in one locale." Interlott claims that the plain meaning of "in one locale" is "at a point or position." Pollard, rather, seeks to limit the term to require that the location be either the left or the right edge of the ticket.

Each party relies on intrinsic evidence to support its respective position. Pollard cites the '337 patent specification, while Interlott relies on the prosecution history. (See, e.g., Pollard Exh. 4, '337 patent, at col. 13; Interlott Exh. 3, '337 Patent Amendment, 5/17/89, at 290-291). Although the Court has considered this intrinsic evidence, the Court believes that the plain meaning of "in one locale" is clear. The ordinarily understood meaning of that phrase will not allow the Court to limit the term "in one locale" to a point or position either at the left or right edge of the line of weakness. The Court thus adopts Interlott's proposed construction and determines that "in one locale" means "at a point or position."

> b. **"Traverse the strip along said line"**

The parties also dispute the meaning of the term "traverse the strip along said line." Interlott asserts that this term requires only that the separator member pass across or through the strip along the line of weakness, while Pollard contends that the member must actually travel from one edge of the ticket strip to the

46

GTECH 033788

other.  Both parties agree, however, that the definition of "traverse"

is "pass across, over or

through. . . ."[11]

          This Court previously has construed the term "along."

*See* Section II.B.3.b., *supra*.[12]  The Court concludes that the

definition of "along," as used in this context, is consistent with the

meaning earlier determined by the Court.  Such meaning is inconsistent

with Pollard's requirement that the burster member must travel from

one edge of the strip to the other.  The Court thus determines that

"traverse the strip along said line" means "to travel across, over, or

through the strip along the line of weakness."  Thus, the recited

function in Claim 24 is "to cause the separator member to break

through the strip at a point or position and then travel across, over

or through the strip along the line of weakness."

          c.  Structure disclosed for performing function

          Interlott claims that only the burster member is

essential structure for performing the above function.  Pollard

contends that the structure must be capable not only of moving the

_____

     [11]Interlott claims that the definition of "traverse" is "[t]o
travel across, over, or through. . . ."  The Court determines,
however, that this slight difference in language is immaterial.

     [12]  "Along" means: "in a line parallel with the length or
direction of." *See Merriam Webster's Collegiate Dictionary* (10th ed.
1993)(online version).

                              47

separator member but also of directional control.  Thus, Pollard asks the Court to incorporate the burster block, cable spool arrangement and tensioning spring.

The Court previously has resolved a similar dispute. *See* Section II.B.3.b., *supra*.  For the same reasons, the Court finds that directional control, as well as the ability to create motion, are directly necessary to performance of this function.  The structure disclosed for performing the claimed function is "a burster block, driven by a burster motor through a cable spool arrangement, including a tensioning spring."

6.  "Means for mounting. . . with said strip" (Claim 25)

The disputed term, which appears in dependent Claim 25, reads as follows: "means for mounting said separator member to traverse said strip, starting from a position in which said separator member is out of contact with said strip. . . ."  The parties agree that the recited function of this term is "to mount the separator member to traverse the strip starting from a position in which said separator member is out of contact with said strip."

The parties have resolved their dispute regarding the meaning of the term "mounting," and have agreed that this term means "to secure to something."  Additionally, the parties agree that the phrase "to traverse said strip" has the same meaning as determined by

48

GTech v. Scientific Games
04-128-JJF

GTECH 033790

the Court in Claim 24. *See* Section II.B.5.b., *supra*. The parties continue to dispute one phrase used in this claim term, as well as the structure necessary for performing the recited function.

      a. "Starting from a position"

      Interlott cites a dictionary definition of the word "position" to support its contention that "starting from a position" means "starting from a place or location." (*See* Interlott Exh. 4, *The American Heritage Dictionary*, at 967). Pollard cites the specification and the prosecution history and argues that the phrase should mean "starting from either the right or left side of the dispensing path."

      In determining the plain meaning of the phrase "starting from a position," the Court is not to import limitations from the specification into the claims where such limitations are inconsistent with the plain language of the patent claims. *See Comark Communs., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). The limitation proposed by Pollard is inappropriately drawn from the preferred embodiment as set forth in the specification, and thus the Court will not so limit this claim term. Rather, in accordance with the ordinary meaning, the Court construes the phrase "starting from a position" to mean "starting from a place or location."

      b. Structure disclosed for performing function

49

GTECH 033791

Once again, the crux of the parties' dispute focuses on the scope of the parts of the bursting mechanism that should be included in the structure necessary to perform the disclosed function. Interlott contends that only the burster block is necessary, while Pollard requests that the Court incorporate the burster motor, cable spool arrangement and tensioning spring as well.

In making the structure determination, the Court looks only to the disclosed structure that is strictly necessary to performance of the specified function. *See General Electric Co. v. United States*, 572 F.2d 745, 776 (Ct. Cl. 1978). The Court has reviewed the relevant patent claim, as well as the portions of the specification cited by the parties. As it appears that the burster member is mounted directly to the burster block, the Court determines that this is the only structure necessary to perform the function of "mounting" the separator member.

7. **"Position detecting means. . . to dispense one of said tickets" (Claims 28, 30, 32)**

The claim term at issue here reads: "position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means to drive said strip until said output signal indicates that said strip actually has moved by said pre-determined distance to dispense one of

50

said tickets." The parties agree that this is a means-plus-function limitation, to which 35 U.S.C. § 112 applies. Additionally, the parties agree generally on the recited function.[13] They disagree, however, on the meaning of one phrase used to describe the function and the necessary structure for performance of the recited function.

### a. "Distance actually moved"

Interlott asserts that "distance actually moved" means "the distance the strip travels." Pollard contends that this phrase means "an accurate measurement of the distance traveled by the strip, as opposed to a false reading that could occur when tickets slip and fail to move along the path as intended." The difference between the parties' positions appears to be Pollard's desire to clarify that the phrase "distance actually moved" refers to an accurate measurement of the distance traveled by the strip, rather than a potentially false reading. Each party contends that its interpretation is consistent with the plain meaning of the claim term. Pollard argues that

---

[13]Interlott contends that the function at issue should be construed to read "to detect the distance the strip has moved and produce an output signal to control the drive means until the output signal indicates the strip has moved the predetermined distance to dispense a ticket." Pollard uses slightly different language: "to detect the distance actually moved by the strip and to produce an output signal to control the drive means and to control the means for severing." Since the parties do not dispute the claimed function in their briefs, the Court believes that there is no genuine dispute as to the claimed function.

GTech v. Scientific Games
04-128-JJF

GTECH 033793

Interlott's construction reads out the word "actually" and fails to give meaning to all words in the phrase.

Pollard further supports its position by citing to the patent prosecution history. Pollard cites a representation and disclaimer made by Interlott to the patent Examiner:

> Specifically, applicants provide position detecting means for detecting the distance actually moved by the strip. . . The Examiner might think that the Hartmann device detects the position of the strip by counting electrical pulses delivered to its ticket advance stepper motor 40. . . However, the use of the stepper motor is flawed in that, if there is slippage between the strip and the drive roller driven by the stepper motor, as is so very likely with such stiff and slick materials, then the stepper motor pulse count does not accurately represent the actual position of the ticket strip. Therefore, Hartmann does not reliably detect the actual movement of the strip by his approach.

(Interlott Exh. :, '337 Patent Prosecution History, 5/17/89 amendment, at 292-93); *see also Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) "since, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, [and] he is by implication surrendering such protection.").

52

GTECH 033794

Interlott points to nothing, either in the language of the patent claim itself or in the intrinsic evidence, which refutes Pollard's position. The Court believes that Pollard's construction is consistent with the plain meaning of the term and the ordinary use of the word "actually." Thus, the Court adopts Pollard's construction and determines that "distance actually moved" means "an accurate measurement of the distance traveled by the strip, as opposed to a false reading that could occur when tickets slip and fail to move along the path as intended."

### b. Structure disclosed for performing function

Similarly, the parties dispute the necessary structure for performing the recited function. Interlott states that the relevant structure is ticket sensor 76, code wheel 86 and code wheel sensor 88. Pollard apparently agrees that these elements should be included but wishes to further define the code wheel as "mounted on the same shaft as upper feed rollers." The Court has previously refused to construe the term "said code wheel being mounted on said shaft," *see* Section II.F.5, *supra*. For the same reasons set forth in that section, the Court refuses to add any additional defining terms or limitations to the necessary structural elements in this claim. The Court finds that the structure necessary to performing the recited

53

GTECH 033795

function is "ticket sensor 76, code wheel 86, and code wheel sensor 88."

### 8. "Means for comparing the stored information. . . when a pre-determined comparison condition is reached" (Claim 31)

The parties dispute a claim term, set forth in dependent Claim 31, which reads: "means for comparing the stored information with the output of said position detecting means and for actuating separating means when a pre-determined comparison condition is reached." The parties agree on the recited function of this claim term, and they additionally agree that the phrase "separating means" has the same function, meaning and structure as previously construed by the Court in Claim 20. Finally, Interlott defines a "pre-determined comparison condition" as a condition for comparison that is determined, decided, or established in advance," *see* Interlott Exh. 4, *The American Heritage Dictionary*, at 975, and Pollard does not dispute that definition.

Thus, the only dispute between the parties regarding this claim term is the structure disclosed in the specification for performing the claimed function. Interlott claims that the necessary structure includes only control circuit 40. Pollard agrees that the control circuit is the appropriate structure for performing this function but suggests that the court should functionally limit this

54

structure, defining it as "a control circuit that counts the number of pulses generated by the code member. . . ." This contention is based on the specification and its description of Interlott's preferred embodiment. (*See* Pollard Exh. 4, '337 patent, at col. 12).

The Court rejects Pollard's proposed limitation.

Although the Court acknowledges that Interlott's preferred embodiment does function in the way Pollard suggests, imposing such a limitation is inconsistent with the plain language of the claim term. Moreover, it is not strictly "necessary" to performance of the stated function that the control circuit operate by counting pulses. Thus, the Court finds that the necessary structure for performing the recited function in this claim term is "control circuit 40."

9. "Separator means for pushing. . . along said one line" (Claim 33)

The final claim term disputed in this litigation reads: "separator means for pushing on said strip with a separator member in the vicinity of said one line while gripping said strip on opposite sides of said one line to bend said strip along said line and tear said tickets apart along said one line." The parties agree on the function set forth in this claim but disagree on the necessary structure.

55

GTech v. Scientific Games
04-128-JJF

GTECH 033797

Interlott contends that the burster 68, rollers 60, 62, 64 and 66 are the only necessary structures to perform the itemized functions. Pollard seeks to incorporate the burster block, burster motor, cable spool arrangement and tensioning spring; however, Interlott argues that none of these structures are necessary to the functions of pushing on the strip, gripping the tickets or bending the strip. Pollard provides no argument in support of its position, as its brief does not discuss the dependent claims.

This Court previously has construed "separator means" as "the combination of the 'separator member,' 'holding means' and 'drive means,' as used consistently throughout the patent claims." *See* Section II.B.2., *supra*.[14] The Court notes that the parties, in setting forth their proposed structure, have set forth much of the same

---

[14]The Court based its conclusion, in part, upon a portion of the specification, which reads:

> [T]he separation means includes a dull edge bursting blade moveably mounted adjacent a predetermined bursting position along the path, holding means for holding the stream of tickets against substantial deflection from the path at the bursting position, and bursting blade drive means for bringing the bursting blade into bursting contact with the stream of tickets at the bursting position to burst the leading ticket from the next following ticket.

Pollard Exh. 4, '337 patent, col. 3.

GTech v. Scientific Games
04-128-JJF

GTECH 033798

structure involved in construing "separation means." (*See* Joint Claim Construction and Prehearing Statement, Doc. 26, at 4). Essentially, the parties are repeating the same debate regarding the structure incorporated into Claim 20's use of "separator means." Given the Court's earlier construction, the Court believes that, at the very least, the claim term here must contain all of the structure contained in the Court's definition of "separator means." The Court believes that, once the present claim term is read in light of the Court's previous definition of "separator means," it becomes sufficiently clear and needs no further construction by this Court. Thus, the Court provides no additional guidance as to the necessary structure for performing the function set forth in this claim term.

### III.  Conclusion

For the foregoing reasons, the Court adopts the constructions for the '337 patent summarized in the table on pages 2-10. Having construed the claims, the next step in this litigation is to determine validity and infringement. The parties are hereby reminded that dispositive motions, if any are to be filed in this case, are due on or before October 31, 2003.

GTech v. Scientific Games
04-128-JJF

GTECH 033799

The provisions of the Case Management Plan (Doc. 16) are to be complied with by the parties and lead counsel of record.

IT IS SO ORDERED.

s/ PAUL R. MATIA
JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

CERTIFICATE OF SERVICE

A copy of the foregoing Order was filed electronically this 4th day of August, 2003. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ PAUL R. MATIA
JUDGE PAUL R. MATIA
CHIEF JUDGE
UNITED STATES DISTRICT COURT

GTech v. Scientific Games
04-128-JJF

GTECH 033800

## Other Orders

1-02-02157-PRM Interlott Technologies. Inc. v. Pollard Banknote Limited et al

### U.S. District Court

### Northern District of Ohio

Notice of Electronic Filing

The following transaction was received from R, J entered on 8/4/2003 at 11:47 AM EDT and filed on 8/4/2003

**Case Name:**    Interlott Technologies, Inc. v. Pollard Banknote Limited et al
**Case Number:**   1:02-cv-2157
**Filer:**
**Document Number:** 40

**Docket Text:**
Memorandum of Opinion and Order adopting the constructions for the '337 patent summarized on the table on pages 2-10. Having construed the claims, the next step in this litigation is to determine validity and infringement. The parties are reminded that dispositive motions, if any, are due on or before 10/31/03. Provisions of the Case Management Plan (Doc. 16) are to be complied with by the parties and lead counsel of record. Signed by Judge Paul R. Matia on 8/4/03.(R, J)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP OHNDStamp_ID=875560366 [Date=8/4/2003] [FileNumber=1047250-0] [ b555a46ebd6cf2243439b037d1480ac517aa284c24a765ad56eca2b01903206b0047c3 96ba686085132240ca46d73a78fadf65727c672cc4b841855e39f30028]]

**1:02-cv-2157 Notice will be electronically mailed to:**

Kristen J. Allen    kristen.allen@chicago.kirkland.com

J. Robert Chambers    bchambers@whepatent.com,

Luke L. Dauchot    ldauchot@thf.com;bradley.triplett@thompsonhine.com

Russell E. Levine    rlevine@kirkland.com,

John J. McCoy    mccoy@taftlaw.com,

Stephen M. O'Bryan    sobryan@taftlaw.com

Jennifer S. Roach    Jennifer.Roach@thompsonhine.com, bradley.triplett@thompsonhine.com

8/4/03 11:47 AM

GTECH 033801

David H. Wallace    dwallace@taftlaw.com, ltropp@taftlaw.com

**1:02-cv-2157 Notice will not be electronically mailed to:**

David Callahan
Kirkland & Ellis
200 East Randolph Street
Chicago, IL 60601

Theodore R. Remaklus
Wood, Herron & Evans
2700 Carew Tower
441 Vine Street
Cincinnati, OH 45202

GTech v. Scientific Games                                    GTECH 033802
04-128-JJF