

**EXHIBIT E**



8070    PATENT D

| ERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 07/128,070 | 12/03/87 | 221 36 | 479 | 314 236 | RUGGIER |

ROBERT L. BURR, SAN DIEGO, CA; LAIRD A. CAMPBELL, LACEYS SPRINGS, AL; DONALD H. KEAGLE, HUNTSVILLE, AL; ALFRED L. FULTON, HUNTSVILLE, AL.

**CONTINUING DATA********************
VERIFIED                    NONE

----9C----

364-479

4982337

**FOREIGN/PCT APPLICATIONS************
VERIFIED                    NONE

----9C----

FOREIGN FILING LICENSE GRANTED 07/01/88

| Foreign priority claimed ☐yes ☒no<br>35 USC 119 conditions met ☐yes ☒no<br>Verified and Acknowledged ___Examiner's Initials | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| | | CA | 9 | 35 | 7 | $ 934.00 | 332-2130 |

CURTIS, MORRIS & SAFFORD
530 FIFTH AVENUE
NEW YORK, NY 10036

SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

S OF APPLICATION
SEPARATELY

| E OF ALLOWANCE MAILED | PREPARED FOR ISSUE 7/25/90 | | CLAIMS ALLOWED | |
|---|---|---|---|---|
| 7-19-90 | Assistant Examiner | Docket Clerk | Total Claims<br>35 | Print Claim<br>1 |
| ISSUE FEE | | JOSEPH RUGGIERO<br>PRIMARY EXAMINER<br>ART UNIT 236 | DRAWING | |
| t Due<br>$1620.00 | Date Paid (SU)<br>8/22/90 | Primary Examiner | Sheets Drwg.<br>8 | Figs. Drwg.<br>16 | Print Fig.<br>10 |
| | ISSUE CLASSIFICATION | | ISSUE BATCH NUMBER | H27 |
| | Class<br>364 | Subclass<br>479 | | |
| Label Area | WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only. | | | |

128070

PATENT APPLICATION SERIAL NO._____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

```
090  12/09/87  128070              1 101    340.00 CK
090  12/09/87  128070              1 102    136.00 CK
090  12/09/87  128070              1 103    348.00 CK
```

PTO-1556
(5/87)

128070

**RTIS, MORRIS & SAFFORD,**

**530 FIFTH AVENUE**

**NEW YORK, NEW YORK 10036**

**TEL. (212) 840-3333**

Date: _December 3, 1987_

Re: _332-2130_

**TO THE COMMISSIONER OF PATENTS AND TRADEMARKS**
Washington, D.C. 20231

Sir:

With reference to the filing in the United States Patent and Trademark Office of an application for patent in the name(s) of:  Robert L. Burr et al.

entitled:  SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS

☐   This is an application of a small entity under 37CFR 1.9(f) and the amounts shown in paren-

theses below have been employed in calculating the fee.        ☐ Small Entity Verified

Statement(s) is (are) enclosed.

The following are enclosed:

☒   Specification

☒   _49_ Claims(s) (including _7_ independent claims)

☐   This application contains a multiple dependent claim.

☐   Oath or Declaration and Power of Attorney

☒   9 _(informal)_ Sheet(s) of Drawings

☒   Our check for $ _824.00_, calculated as follows:

| | | |
|---|---|---|
| Basic Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $340.00(170.00) | | $340.00 |
| Total Number of Claims in excess of 20 at $12.00 (6.00) each . . . . . . . . . . . . . . . . | | $348.00 |
| Number of Independent Claims in excess of 3 at $34.00 (17.00) each . . . . . . . . . . . . | | $136.00 |
| Multiple Dependent Claim Fee at $110.00 (55.00) . . . . . . . . . . . . . . . . . . . . . . . . | | |
| Total Filing Fee . . . . . . . . . . . . . . . . . . . . . . | | |
| Assignment Recording Fee $7.00 (+ $2 for each additional patent in the assignment) . . | | $824.00 |

☐   Order Form for Recording Assignment

☐   Certified copy of each of the following application(s) to substantiate the
       claim(s) for priority made in the Declaration:

Application No.                          filed                          in

Please charge any additional fees required for the filing of this application or credit any overpayment to Deposit Account No. 03-3925. A duplicate copy of this letter is enclosed.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.
*Attorneys for Applicant(s)*

By: Abigail F. Cousins
Reg. No. 29,292
Abigail F. Cousins

*128070*

PATENT
332-2130

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

## APPLICATION FOR LETTERS PATENT

Title       :       SYSTEM AND METHOD FOR DISTRIBUTING
                    LOTTERY TICKETS

Inventor    :       Robert L. Burr
                    Laird A. Campbell
                    Donald Keagle

45   Pages

49   Claims

9    Sheets of Drawings

Gregor N. Neff
Registration No. 20,596
Abigail F. Cousins
Registration No. 29,292

CURTIS, MORRIS & SAFFORD, P.C.
530 Fifth Avenue
New York, New York  10036
(212) 840-3333

81051151

"EXPRESS MAIL" mailing label number........................

Date of Deposit..................December 3, 1987....

I hereby certify that this paper or fee is
being deposited with the United States Postal
Service "Express Mail Post Office to
Addressee" service under 37 CFR 1.10 on the
date indicated above and is addressed to the
Commissioner of Patents and Trademarks,
Washington, D.C. 20231.
        Abigail F. Cousins

(Type or printed name of person mailing paper or fee)

Abigail F. Cousins

(Signature of person mailing paper or fee)

PATENT
332-2130

~~SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS~~

## FIELD OF THE INVENTION

The present invention relates generally to ticket dispensing systems and more particularly relates to a system and method for distributing lottery tickets.

## BACKGROUND OF THE INVENTION

State-sponsored lotteries are now a popular and accepted method of generating revenue in place of taxes. One popular form of the lotteries is the Lotto-type game where the player selects his own numbers, for example by filling out a computer card, and receives a lottery ticket which has been printed with his selected numbers. A drawing is then held at a later time to determine the winning numbers. Another popular form of lottery uses the so-called instant lottery tickets, on which winning or non-winning combinations are preprinted before distribution so that no later drawing is necessary and the player knows immediately after purchasing his ticket whether or not he has won.

The usual system for distributing Lotto-type lottery tickets includes a large number of ticket-dispensing remote units located at drug stores, supermarkets, liquor stores and the like. Each unit is independent and is operated by the store owner, who customarily receives a portion of the ticket price for each lottery ticket sold. The usual system for distributing instant lottery tickets, on the other hand, is entirely clerical, with the tickets being stored in a drawer and counted out by hand. The store owner typically is responsible for keeping track of the

PATENT
332-2130

number of tickets sold, making redemption payments up to a certain amount for certain types of winning tickets and for providing such sales and pay-out information to the state. The state in turn calculates the money due from or owing to the store owner and sends an invoice and/or money payment. Given the very large number of stores which now sell lottery tickets, it would be highly desirable to simplify the accounting procedure so as to avoid any mistakes or improprieties by the store owner and to assure proper and prompt payment of all monies due. It would also be valuable to the state to know on a daily basis whether each store owner has a sufficient supply of tickets, as well as how much money is due that day.

Another consideration in lottery ticket distribution is the speed with which the lottery tickets may be sold. It is a frequent occurrence in large cities for long lines of ticket buyers to form at lunch time or after work in order to buy tickets. As mentioned above, the ticket seller has conventionally had to count out and hand instant lottery tickets himself to the customers. It would be highly advantageous and to have a ticket-dispensing unit which would itself dispense instant or other lottery tickets at an outlet where they are easily accessible to the customer.

Sill another consideration in a lottery ticket-dispensing unit is security. Particularly when instant tickets are being dispensed, the unsold tickets should be locked up in the unit or drawer to prevent their theft. Since the unit or drawer must be periodically opened to allow a new supply of lottery tickets to be inserted, it is

-2-

PATENT
332-2130

*desirable*
~~important~~ to keep track of when and how often the tickets

are replaced. In addition, it may be necessary, for security

reasons, to keep track of which lottery tickets were sold

from which location, both to detect and prevent forgeries

and unauthorized sales and to assist the customers in making

complaints, suggestions or the like.

Particularly when a large number of tickets, ~~are~~ *is*

stored within the dispensing unit, it is an advantageous

feature, ~~in~~ *of* the present invention to ~~provide the tickets in a~~ *dispense Tickets*

*stored in   form*
~~fan-fold stream,~~ so that they may be rapidly fed out from

storage without the risk of, *unintentionally dispensing too many tickets* ~~double feeding present~~ when

separated tickets are stored. There is as yet no

standardization in the size of the tickets, which come in

*a1 Therefore, it*
various widths and lengths. ~~It~~ would be highly advantageous

*ticket*
to provide a dispensing mechanism ~~within the dispensing unit~~

*one another*
to separate the tickets from ~~the stream~~ while ensuring that

the separation of the tickets occurs only at the joinder

line therebetween, *despite the variation in the* ~~since again for security reasons~~

*a2*
~~generally only complete tickets are redeemable.~~

## OBJECTS AND SUMMARY OF THE INVENTION

Accordingly, it is an object of the present

invention to provide a system and method for distributing

lottery tickets which avoid the above-described difficulties

of the prior art.

It is another object of the present invention to

provide a system and method for distributing lottery tickets

in which sales data for a number of different ticket-

PATENT
332-2130

dispensing units is automatically transmitted to a central data processor for system-wide accounting evaluation.

It is yet another object of the present invention to provide a system and method for distributing lottery tickets in which accounting information may be automatically calculated at each appropriate ticket-dispensing unit for print-out thereat.

It is still another object of the present invention to provide a method and system for distributing lottery tickets in which communication between the central data processor and the dispensing units is periodically established so as to transfer the sales data during limited intervals of time, thereby avoiding the need for a permanent communication link.

It is still another object of the present invention to provide a method and system for dispensing lottery tickets in which an accurate and current account of the ticket supply and monies due is available both to a controlling authority and to the sales agents.

It is a further object of the present invention to provide an apparatus for dispensing lottery tickets including a control panel mounted at the front and accessible to the sales agent and a dispensing outlet at the back and accessible to the customer so as to speed up the dispensing of tickets.

It is still a further object of the present invention to provide a method and apparatus for dispensing tickets in which the tickets are stored in a fan-fold *strip or* stream and are separable from each other along lines of weakness.

-4-

PATENT
332-2130

It is yet a further object of the present invention to provide a method and apparatus for dispensing tickets in which the tickets are separated by bursting the lines of weakness to provide an automatic mechanical alignment of the tickets.

It is yet a further object of the present invention to provide a method and apparatus for dispensing lottery tickets in which each access to a ticket storage area is detected and recorded.

In accordance with an aspect of the present invention, a system for distributing lottery tickets comprises central processing means, a plurality of remote units for dispensing lottery tickets, each remote unit including memory means for storing sales data indicating at least a number of lottery tickets dispensed by the respective remote unit, and communication means actuable for selectively placing the data processing means in communication with at least one remote unit, the remote unit transferring the sales data to the data processing means and the data processing means transferring at least message data to the remote unit through the communication means. Advantageously, the communication means includes dial-up modem means which may be actuated at pre-selected intervals, for example, once a day, to transmit data between the data processing means and one remote unit.

In accordance with this aspect of the present invention, a method of distributing lottery tickets comprises the steps of dispensing lottery tickets at a plurality of remote locations, memorizing at each remote

−5−

PATENT
332-2130

location sales data indicating at least a number of lottery tickets dispensed at the respective location, transferring the memorized sales data from at least one remote location to a central data processing location over an electronic communication system and transferring message data from the central data processing location to the remote location over the system.

In accordance with a further aspect of the present invention, apparatus for dispensing lottery tickets comprises a box-like module having opposed front and back surfaces, ticket storage means within the module for storing a plurality of lottery tickets, control panel means mounted at the front surface of the module and being actuable for initiating dispensing of the lottery ticket, a dispensing outlet manually accessible at the back surface for receiving a dispensed lottery ticket from the ticket storage means and ticket dispensing means responsive to the control panel means for dispensing a lottery ticket from the ticket storage means to the dispensing outlet, whereby the dispensed lottery ticket may be manually removed from the apparatus.

In accordance with yet another aspect of the present invention, apparatus for dispensing tickets comprises ticket storage means for storing a plurality of tickets connected in a fan-fold stream headed by a leading ticket, the tickets being separable from each other along lines of weakness, transport means for feeding the stream of tickets from the ticket storage means along a predetermined dispensing path, separation means for separating the leading

-6-

PATENT
332-2130

ticket from the stream along a leading line of weakness
between the leading ticket and a next following ticket and
manually accessible outlet means for receiving the separated
ticket.  Advantageously, the separation means includes a
dull edge bursting blade moveably mounted adjacent a
predetermined bursting position along the path, holding
means for holding the stream of tickets against substantial
deflection from the path at the bursting position, and
bursting blade drive means for bringing the bursting blade
into bursting contact with the stream of tickets at the
bursting position to burst the leading ticket from the next
following ticket.  In a further development of this aspect
of the present invention, the separation means includes feed
alignment means including sensor means for detecting a
present position of the leading ticket relative to the
bursting position, means for determining a transport
direction and a displacement distance necessary to bring the
leading line of weakness to the bursting position and
transport control means for generating a transport control
signal indicative of the transport direction and
displacement distance, the transport means being responsive
to the transport control signal for transporting the ticket
stream in transport direction by the displacement distance.

These and other objects, features and advantages
of the present invention will become clear from the
following detailed description of a preferred embodiment of
the present invention taken in connection with the
accompanying drawings, throughout which like reference
numerals identify like elements and parts.

PATENT
332-2130

BRIEF DESCRIPTION OF THE DRAWINGS

Fig. 1 is a schematic diagram illustrating a preferred embodiment of the system for distributing lottery tickets according to the present invention;

Fig. 2A is an exemplary daily sales report produced by the present invention;

Fig. 2B is an exemplary weekly sales report produced by the system according to the present invention;

Fig. 2C is an exemplary weekly invoice produced by the system according to the present invention;

Fig. 2D is an exemplary current sales report produced by the system according to the present invention;

Fig. 3 is a front elevational view of the preferred embodiment of a ticket-dispensing unit according to the present invention;

Fig. 4 is a partial rear elevational view of the embodiment of Fig. 3;

Fig. 5 is a schematic view of the ticket transport mechanism of the preferred embodiment;

Fig. 6 is a schematic view of a leading edge ticket sensor of the preferred embodiment;

Fig. 7 is a ~~partial elevational mechanical~~ perspective view of the ticket drive and burster assembly of the preferred embodiment;

Fig. 8A is a diagrammatic illustration for explaining the alignment process of the ticket drive and burster assembly of Fig. 7;

Fig. 8B is a second diagrammatic illustration for explaining the alignment process of Fig. 8A;

-8-

PATENT
332-2130

Fig. 9 is a perspective ~~an elevational mechanical~~ view of an imprinter assembly of the preferred embodiment;

Fig. 10 is a functional block diagram of the preferred embodiment;

Fig. 11 is an electronic block diagram corresponding to Fig. 10; and

Fig. 12 is a flowchart illustrating certain ~~fundamental~~ operations of the preferred embodiment.

GENERAL ~~DETAILED~~ DESCRIPTION ~~OF THE PREFERRED EMBODIMENT~~

Referring now to the drawings, and initially to Fig. 1 thereof, a system 10 for dispensing lottery tickets includes a central computer 12 and three remote ticket-dispensing units 14, 16 and 18. Although the illustrated embodiment includes three such ticket-dispensing units, it will be understood that any number of units may be employed, and indeed it is anticipated that a very large number of units will be employed in a state-wide or nation-wide lottery system. For the purposes of the present description, the lottery will be assumed to be a state-wide lottery run by a state authority. However, the present invention is applicable to other lotteries such as nation-wide or city-wide lotteries.

Each unit 14, 16, 18 is located at a separate location across the state in, for example, grocery stores, liquor stores and the like, and functions completely independently of the other units. Each remote unit 14, 16, 18 is independently operated by a sales agent or vendor, generally the store owner who sells the lottery tickets as part of his business, receiving a percentage of the purchase

PATENT
332-2130

price of each ticket sold from the state agency which runs the lottery.  However, each unit 14, 16, 18 can be placed independently and selectively ~~placeable~~ in communication with central computer 12 through a respective modem 20, 22, and 24.  Each modem 20, 22, 24 is advantageously positioned within its associated unit 14, 16, 18 at the particular location, or alternatively, it may be located adjacent thereto.  Advantageously, each of the modems 20, 22 and 24 is a dial-up modem which is actuated by its own conventional touch-tone telephone circuitry ~~(Fig. 10)~~ to access a telephone line between each of the modems 20, 22, 24 and the central computer 12.

In accordance with an aspect of the present invention, each unit 14, 16, 18 independently records each ticket sale ~~thereat~~ and stores sales data indicating at least the number of tickets sold and, more generally, the numbers, types and prices of different tickets sold.  At periodic intervals, such as several times a day, once each day or once each week, each unit 14, 16, 18 is placed in communication with the ~~central computer~~ 12 by central computer ~~12~~ dialing-up the respective modem 20, 22, 24.  Once temporary communication is established, the ~~respective~~ sales data is transmitted from the units 14, 16, 18 to the central computer 12.  Central computer 12 ~~can~~ operates as a central data processor to perform all the necessary accounting functions, including determining such information as the volume of sales and money due to or from each sales agent at his particular location.  In addition, each unit 14, 16, 18 itself performs accounting functions on its own sales data.  The transfer of the sales information from each unit

-10-

PATENT
332-2130

14, 16, 18 takes only a very short period of time, usually
on the order of seconds, and so the time during which modems
20, 22 and 24 ~~respectively~~ access the telephone lines is
very brief, resulting in significant cost savings over
systems which may require a continuous or extended
connection over the phone lines to a central control *station*.

Thus, in accordance with the present invention, it
is unnecessary for the sales agent to prepare any paperwork
to keep track of ticket sales, to make any accounting of the
sales or to otherwise report such sales to the state
authority.  Similarly, it is unnecessary for the state
authority to physically collect such sales data from the
numerous individual sales agents.  Instead, central computer
12, at the appropriate time several times a day, *once* each day or
~~week~~ *once each week,* simply actuates each modem 20, 22, 24 by dialing the
telephone number assigned thereto, as is conventional, and
the sales data is transmitted from the respective unit 14,
16, 18 to central computer 12 without further intervention
or action by either the agent or the state authority.  This
insures that sales data is sent promptly to central computer
12 *with minimum* ~~without the~~ risk of tampering and without *the* possible delays
or losses, *at* ~~through the mails.~~  *F*urthermore, both the state
authority using central computer 12 and the sales agent
using his unit 14 have access to a current, up-to-the minute
sales accounting of how many tickets have been sold and how
much money is due.  The state authority can then *determine* ~~know~~ each
sales agent's current *stock* ~~stock~~ of tickets and can resupply him
before the stock runs out, *This capability is commercially* ~~which is a valuable commercial~~
~~advantage for stabilizing cash flow, and can also~~ *can be used to*
efficiently close out a particular game.  Central computer

-11-

PATENT
332-2130

12 may account for each unit 14, 16 and 18 separately, and
may also combine the sales data from all the units so as to
provide a state-wide summary.

Of course, the sales data advantageously includes
more data than just the number of tickets sold.  It should
include, for example, an agent number identifying the sales
agent, a machine number identifying the particular remote
unit, the sales agent's commission, frequently in the form
of the percentage of the sales price, winning ticket values
which the sales agent has redeemed, and the ticket purchase
price, frequently in one dollar increments.  Other sales
data which may be automatically recorded by units 14, 16, 18
may be transmitted from an electronic cash register or
entered by the agent on a control panel, as discussed below.
This sales data, plus other types of sales data related to
the particular use application, may also be included and
transmitted to central computer 12.

Remote units 14, 16, 18 are responsive to
acounting data calculated from the respective sales data
stored therein to print a report for the sales agent,
summarizing the accounting results.  The format of these
reports may vary with the particular lottery system used,
but may advantageously take the form of the exemplary
reports illustrated in Figs. 2A-D.  Fig. 2A illustrates a
daily sales report, Fig. 2B illustrates a weekly sales
report, Fig. 2C illustrates a weekly invoice and Fig. 2D
illustrates a current sales report.  As shown, each report
is individualized to the particular unit 14, 16, 18.

PATENT
332-2130

Since each unit 14, 16, 18 can record both the number of tickets sold at the particular location and also the amount of money paid by the sales agent in redeeming certain types of winning tickets, the reports are then a thorough reflection of the sales and redemption activity and may completely replace the use of invoices between the state authority and individual sales agents.

Central computer 12 can be programmed to dial up any modem 20, 22, 24 in off hours to interrogate it and get an up-to-the minute accounting, which is an advantage in increasing cash flow. Modems 20, 22, 24 may alternatively include a timer mechanism programmed so as to automatically dial up central computer 12 at preselected intervals to ensure that the sales data is regularly transmitted. For security reasons, the sales agent advantageously should not have the responsibility for connecting central computer 12 and modems 20, 22, 24.

Central computer 12 is operative to send message data indicative of messages to units 14, 16, 18. These messages may be individualized for the respective units 14, 16, 18, for example stating whether the particular sales agent is behind in his payments. Alternatively, central computer 12 may send the same message to all units 14, 16 and 18. Such a message may be, for example, advertising announcing a new game or a special jackpot. These messages may be intended either for the agent or for the customers and, as discussed below, an advantageous embodiment of unit 14, 16, 18 includes separate message display sections for the two types of messages.

-13-

PATENT
332-2130

Referring now to Figs. 3 and 4, a preferred
embodiment of unit 14 will now be described.  It will be
understood that units 14, 16, 18 and all others within the
lottery ticket distributing system are intended to be
identical.  Therefore, while a detailed description is
given only with respect to unit 14, it will be understood
that this description applies equally well to all other
units within the system.

Referring first to Fig. 3, unit 14 is constructed
as a box-like module advantageously designed to rest upon
the surface of a counter 26 or the like.  Unit 14 includes a
front surface 28 which, when unit 14 is positioned on
counter 26 and is in operation, is intended to face the
sales agent or vendor standing behind counter 26.  A
corresponding opposed back surface 30 of unit 14 is
intended to face the customers when unit 14 is in operation.
In accordance with an important aspect of the present
invention, a control panel 32 including all necessary
agent-operated controls is mounted at front surface 28,
while a dispensing outlet 34 is manually accessible at back
surface 30 by the customers.  Thus, the sales agent may
quickly and efficiently enter a sales command, for example
in the form of the number of tickets to be dispensed, on
control panel 34 at front surface 28, while the tickets are
automatically presented in response to the command in
dispensing outlet 32 at back surface 30.  This structure
eliminates the need for the sales agent to physically

-14-

PATENT
332-2130

receive the lottery tickets from unit 14 and to personally

hand the lottery tickets to the customer, as is done in

conventional lottery ticket dispensers.

As illustrated in Fig. 3, control panel 32 is

mounted at front surface 28 on an upper portion 36 thereof.

Upper portion 36 ~~may be provided at an~~ inclined ~~angle~~

relative to front surface 28 for ergonomic reasons to permit

comfortable access to control panel 32 ~~but the~~ angle of

inclination is limited so that control panel 32 remains in

substantially opposed relation to back surface 30.  The

angle of inclination is limited not only so that control

panel 32 may be easily viewed and operated by the sales

agent, but also so that it will be substantially blocked

from view by any customer standing in front of counter 26

and facing back surface 30.  This ~~prevents~~ any interference

by the customer in reaching towards control panel 32 in an

attempt to operate unit 14 in an unauthorized manner.

Control panel 32 includes a keypad 37 having a

plurality of push-buttons 38 for entering data and commands

into a control circuit 40 (Fig. 10), ~~within~~ unit 14.  Control

~~unit 40 may be a microprocessor based~~ circuit or

minicomputer which controls the operation of unit 14, ~~and is~~

described in greater detail below.  Push-buttons 38 include

numerical buttons bearing the digits 0-10 and an entry

PATENT
332-2130

button for entering the corresponding numbers ~~to~~ _into_ control

circuit 40.  Push-buttons 38 further may include a cash

button, a report button, a sign•on button, a ticket length

load button, a storage access button, and all other buttons

necessary for entering all appropriate data ~~entry~~ and

commands in accordance with the functions described below.

In particular, when unit 14 has been activated, any number

of tickets from 1 through 999 may be dispensed simply by

depressing the appropriate numerical push-button ~~38~~ and the

entry button 38.  Thus, if the sales agent depresses the

numerical push-button 38 bearing the digit "1", a confirming

~~display~~ _number_ will appear on an operator LCD ~~device~~ _display_ 42, discussed

below, and the sales agent may depress entry button 38 and a

single lottery ticket will be dispensed and deposited in

dispensing outlet 34 at back surface 30 (Fig. 4).  The

customer simply reaches into dispensing outlet 34 to remove

the ticket.  Alternatively, if the sales agent depresses the

numerical push-button ~~38~~ bearing the digit "5" and then _the_

entry button ~~38~~, remote unit 14 will automatically deposit

five/ separated lottery tickets into dispensing outlet 34.

There is no need for the sales agent either to count out the

tickets or to physically receive the tickets and hand them

to the customer.  This significantly speeds up the ticket

selling process, as the sales agent may concentrate on

receiving money and giving change, a task which is both

easier to perform ~~when not handling tickets~~ and more likely

to be accurate, _when the agent is not handling tickets_.  Each ticket sold is counted, advantageously

in response to operation of the mechanism which provides a

separated ticket to dispensing outlet 34, and the number is

PATENT
332-2130

(Figure 10)

stored as sales data in memory within control circuit 40.
Other sales data, such as the price of the tickets ~~may~~ also may
be stored ~~therein~~ in memory.  When communication with central computer
12 is established, the sales data is send out from the
memory by control circuit 40 and fed out over the phone line
to the central computer 12.

Control circuit 40 similarly ~~may~~ receives message
data from the central computer 12 and stores it in the memory
along with the sales data and the accounting data calculated
therefrom.  The report push-button 38 causes a selected one
of the reports illustrated in Figs. 2A-D to be printed, for
example on a tape by a thermal printer 140 (Fig. 10) and
issued in the front surface 28, through a slot 34 ~~presented at front surface 38 through slot 39~~.  [As mentioned
above, central computer 12 may send messages to unit 14.
Some of these messages will be intended for the sales agent
and not for customers, and so are considered to be control
messages rather than advertising messages.  To display these
control messages, a display device, such as the conventional
LCD ~~device~~ display 42 is provided in control panel 32 on the inclined
surface 36 ~~and~~ adjacent keypad 37.  In accordance with
conventional techniques, central computer 12 can transmit
message data indicative of these messages through modem 20
whenever modem 20 is actuated to transmit sales data from
unit 14 to central computer 12.  This down-loading of
message data is achieved without any need to request the
same by the sales agent.  The placement of LCD display 42 on
inclined surface 36 further shields the control message
displayed thereon from the eyes of customers.

Alternatively, the control or other messages may be printed
by thermal printer 140 on the tape and presented through
slot 27.

-17-

PATENT
332-2130

A key 44 is also provided on control panel 32 for the purpose of controlling the operating mode of unit 14. In a locked or "off" mode of operation, unit 14 is disabled both from receiving commands from control panel 32 and from communicating with central computer 12 through modem 20. In a "normal" mode of operation, unit 14 is enabled to receive commands entered on control panel 32 and to dispense tickets, but remains disabled from communication with central computer 12. In a "communication" mode of operation, unit 14 is enabled for receiving commands through control panel 32 and is responsive to modem 20 to permit two-way communication between the unit 14 and the central computer 12. In the communication mode, unit 14 and modem 20 will answer a telephone call from central computer 12, or may be actuated, as by dialing the telephone circuitry within modem 20 to place a telephone call to central computer 12, and to thereafter exchange information. Key 44 has three different positions respectively associated with the three different operating modes of unit 14. Advantageously, key 44 must be inserted into unit 14 and turned to place unit 14 in either of the normal or communication modes, and is removeable from unit 14 only when it is in the locked position to place unit 14 in the locked mode.

A second message display device 46, advantageously an LCD device, is located at back surface 30, advantageously on an upper inclined portion 48 thereof, for easy viewing by the customers. When message data from central computer 12 contains ~~advertising data indicative of~~ an advertising slogan or the like, a corresponding message will be displayed on LCD display 46. Control circuit 40 in remote unit 14

-18-

PATENT
332-2130

distinguishes between the two types of data and selects the
appropriate LCD device 42, 46 or thermal printer 140 *(figure 10)*
~~display~~ *to display the messages*   *TICKET∫ PARATOR OR "BURSTER"*

A highly advantageous aspect of the present
invention is that the lottery tickets within unit 14 are
stored in a fan-fold *strip or "stream"* ~~stream headed by a leading ticket~~ and
are not, as in *most* conventional lottery tickets dispensers,
~~provided~~ *stored* in stacks of pre-cut tickets for individual
dispensing.  Prior art ticket dispensers which did store the
tickets in pre-cut form had the difficulty that two tickets
*could be dispensed accidently* ~~could accidently could be dispensed~~ instead of a single
ticket when two tickets within the stack were stuck
together.  The present invention *essentially eliminates* ~~completely removes~~ the risk
that two or more tickets may be dispensed *unintentionally* ~~in place of a~~.
*This is accomplished, in part* ~~single ticket first~~ by storing the tickets in *fan-fold form* ~~a fan-fold~~ *and*
~~stream and secondly~~ by providing a highly advantageous
ticket separation *or "burster"* mechanism for separating the leading
ticket from the stream of tickets.  This novel separation
mechanism *eliminates* ~~addresses and removes~~ a difficulty which arises
*New ¶* when tickets are to be dispensed from a fan-fold stream.  ¶ In
particular, a most common item fed from a fan-fold stream is
the paper used to feed a printer controlled by a computer or
the like.  Such paper is relatively thin and flexible and
~~further~~ *often* has a column of perforations or holes at either side
*so that it can be driven*
~~which may be fed into and positively held~~ by a tractor feed *mechanism*
of the printer.  Such a ~~feeding~~ feed mechanism provides automatic
lengthwise and widthwise alignment of the paper as it is fed
through the printer.  However, lottery tickets
conventionally do not have such columns of perforations and
indeed, are constructed from laminated layers of paper or

-19-

PATENT
332-2130

cardboard so as to be relatively stiff. The problem faced

and solved by the transport mechanism in accordance with the

present invention is how to ensure that each ticket as it

becomes the leading ticket will be separated from the next

following ticket precisely along the joinder line between

the tickets.  In such a fan-fold scheme, a line of weakness,

for example a perforation line, is provided to define each

ticket and to permit folding of the stream of connected

tickets.  In the illustrated embodiment shown in Fig. 5,

each fold contains a single ticket, for clarity of

illustration, but in a preferred embodiment a number of

tickets, for example five, may be provided within each fold.

Simply to provide a knife edge or cutting blade to slice

through the stream of tickets is disadvantageous, since such

a knife edge may cut through the stream at any point, such

as in the middle of a ticket, and so a highly precise

alignment device must be provided with such a knife edge to

bring it into precise alignment with the joinder line

between tickets.  The present invention provides a novel

separation mechanism which bursts the leading ticket from

the next following ticket along the line of weakness

therebetween, instead of cutting the two tickets apart.  Not

only does this inherently reduce the risk of producing only

half a ticket, but also it provides an automatic mechanical

alignment of the tickets to their proper position for

bursting.  A separate alignment mechanism is also provided

to adapt the burster mechanism to tickets of different,

selected lengths and cooperates with the burster mechanism

-20-

PATENT
332-2130

to provide precise, rapid separation of each ticket from the
stream.

    More particularly, an advantageous embodiment of
the ticket transport/separation system in unit 14 is
schematically illustrated in Fig. 5.  A plurality of
individual tickets 49 are connected in a fan-fold strip or stream 50
which is drawn from the top of a stack 51.  The tickets 49
are provided by the state authority in fan-fold stack form, which is
compact and easily transportable when including, for
example, as many as 1500 tickets.  The illustrated embodiment shows a
single ticket 49 within each fold, but it will be understood
that a greater number of tickets could be provided within
each fold.  ~~Stream of tickets 50~~ Referring now to Figure 6, the ticket strip 50 is headed by a leading
ticket 52 which is connected to a next following ticket 54
along a line of weakness 56, ~~(Fig. 6)~~ and it will be
understood that each successive following ticket is
separable from its neighbors by similar lines of weakness.
~~56.~~ Returning to figure 5, ticket strip ~~(Stream of tickets~~ 50 is fed along a dispensing path 57
from a storage area 58 holding stack 51 within unit 14
towards the dispensing outlet 34, and is transported along
dispensing path 57 by a transport mechanism including
opposed upper and lower feed rollers 60, 62 and opposed
upper and lower exit rollers 64, 66.  The leading ticket 52 is
separated from next following ticket 54 by a burster wheel
68 positioned adjacent dispensing path 57 at a bursting
position 70 ~~therealong~~.  Consequently, ~~upper and lower~~ feed
rollers 60, 62 are driven separately from ~~upper and lower~~ (also see figure 7)
exit rollers 64, 66 so that ~~upper and lower~~ feed rollers 60,
62 transport the stream of tickets 50 from the storage area 58 up to the

-21-

PATENT
332-2130

bursting position 70, ~~while upper and lower exit~~ *Exit* rollers 64,
66 operate as "kick-out" rollers to discharge the separated
leading ticket 52 from dispensing path 57 into dispensing
outlet 34. *As shown in figure 7, a* drive motor 72 ~~(Fig. 8)~~ is provided to drive
~~upper and lower~~ feed rollers 60, 62, while a separate
"kick-out" motor 74 is provided to drive *the* ~~upper and lower~~
exit rollers 64, 66.

When stream of tickets 50 has been transported to
bring the line of weakness 56 between *the* leading ticket 52 and
next following ticket 54 to *the* bursting position 70, *a* burster
wheel 68 is moved into bursting contact therewith in order
to separate leading ticket 52 from next following ticket 54.
As indicated schematically in Fig *and in perspective in figure 7,* 5, burster wheel 68 is
advantageously in the form of a circular burster blade
which, in an ~~important~~ *advantageous* aspect, has a dull, rounded edge
which does not cut stream of tickets 50, but rather exerts
pressure against the top of stream of tickets 50 in a
direction to deflect it from dispensing path 57. *When* line
of weakness 56 is at bursting position 70, ~~upper and lower~~
exit rollers 64, 66 *grip* ~~are gripping~~ a portion of *the* leading ticket
52, while *exit* ~~upper and lower~~ feed rollers 60, 62 ~~are~~ similarly
~~gripping~~ *grip* a following portion of *the* stream of tickets 50, with
the result that stream of tickets 50 is held between the two
sets of rollers against substantial deflection from
dispensing path 57. This enables the bursting force from
bursters 68 to separate the tickets 52, 54. However, the
grip on stream of tickets 50 by upper and lower feed rollers
60, 62 and upper and lower exit rollers 64, 66,
respectively, ~~nevertheless~~ permits a slight deflection of

-22-