PATENT
3390-2010

The Examiner's rejection of claim 30 is respectfully traversed. It also is submitted that the other claims directed to this feature are patentable over Hartmann.

Given the problems mentioned above, it would not have been obvious to one skilled in the art to provide a ticket dispensing means and method which facilitates accurate tearing or bursting of the tickets rather than cutting them apart.

Those of ordinary skill in the art would recognize, as did Hartmann, that the ticket stock material is tough and the perforations are long, so that the bursting or tearing of the tickets apart would present substantial problems which could be solved easily by cutting the tickets apart.

In fact, Hartmann himself teaches away from the invention. In Column 1, lines 10-17, Hartmann discloses prior art which tears cards in a perforated strip apart from one another, and then goes on to teach that this is not the way to do it; instead, Hartmann suggests using a rotary cutter.

The Examiner also has cited Roetter 4,261,497, in combination with Hartmann, in rejecting the claims here under discussion.

Roetter does not disclose or suggest the invention, and, like Hartmann, actually teaches away from the invention. Roetter shows a mechanism for bursting printed business forms apart. He does not disclose a ticket bursting machine. The computer paper handled by the Roetter device is relatively thin

gn/3390.amd                    32

PATENT
3390-2010

and can be torn apart relatively easily.  Therefore, Roetter
merely suggests stopping one set of rollers while the other set
of rollers continues to turn, thus pulling the sheets apart,
while being stretched over a roller with spheres on it.

Contrary to the Examiner's assertion that Roetter
suggests the use of his invention in bursting tickets apart,
Roetter actually teaches away from such a concept.  In Column 1,
lines 34-44, he denigrates a prior mechanism used in ticket
dispensing.  This hardly is a suggestion that Roetter's invention
would be usable in dispensing tickets.

Finally, there is no suggestion in either Hartmann or
Roetter that their inventions should be combined.

Applicants have created a particularly desirable and
advantageous ticket separation method and apparatus as set forth
in new claims 52 and 58.  In this feature of the invention, the
weakened line between two adjacent tickets is moved to a position
near a separation station, and the strip is held and bent along
the line in order to facilitate the accurate tearing of the strip
along the line.  Preferably, a separator member is provided.
Relative motion between the separator member and the strip is
created so as to create transverse deflection and bending of the
strip and tear the tickets apart along the line.  This feature of
the invention is illustrated schematically in Figures 8A and 8B
of the drawings.  The separator member takes the specific form of
a wheel 68 (see Figures 5 and 7) which presses downwardly on the

gn/3390.amd                        33

PATENT
3390-2010

ticket strip as shown in Figures 8A and 8B to deflect it downwardly to bend the strip along the perforated line and burst the tickets apart.

By bending the strip along the desired tear line, the probability that the stock will tear along the right line is greatly enhanced and made easier. Another excellent advantage of this feature of the invention also is illustrated in Figures 8A and 8B. If the perforation line 56 is not correctly aligned with the bursting wheel at point 70, as the bursting wheel presses downwardly on the ticket stock, it naturally forces the tickets to adjust themselves longitudinally so that the perforation line 56 is correctly aligned with the burster wheel. This automatic mechanical correction means is a clever and unobvious feature of the invention. The invention thus uses one means or mechanism to perform two different functions; bursting the tickets apart, and re-aligning them.

Furthermore, this feature of the invention makes the bursting mechanism much less sensitive to accurate location of the perforation line at the bursting station. All that is necessary is that the perforation line be reasonably close to its desired location, and the automatic correction feature of the invention does the rest. This feature of the invention is emphasized particularly in claims 31, 54 and 60.

Claims 55, 56, 61 and 62 emphasize the further advantageous feature in that the tearing starts at one point in

gn/3390.amd                        34

PATENT
3390-2010

the strip, and then traverses across the strip. This provides an initial breakthrough, which then progresses across the strip. This makes the separation of the tough card stock considerably easier than if it were attempted to tear through the entire line all at once.

Neither Hartmann nor Roetter, nor any other reference of record shows or suggests these additional advantageous features of the invention.

Another serious drawback of the Hartmann approach to dispensing tickets from a perforated strip is the means for moving the strip accurately to the proper location for cutting. Hartmann depends upon detecting the passage of light through the perforation holes in successive perforation lines in order to initially calibrate his machine to move the tickets the right distance before being cut. This approach has serious inherent flaws.

First, as the Examiner can tell by holding the enclosed lottery ticket samples up to a strong light, the size of the perforation holes varies so significantly that much less light shines through some of the holes than through others. Perhaps more significantly, it does not appear that any light at all shines through the holes in some of the tickets. Hartmann himself admits that light does not shine through the perforation holes reliably, and admits that he must go through a complicated calibration routine in an attempt to overcome this problem.

gn/3390.amd                    35

PATENT
3390-2010

However, even that does not solve the problem when there are no holes at all through which light will shine. Applicant's device does not depend upon light shining through holes in the tickets. Thus, the Hartmann device often is inoperative in dispensing tickets which applicants' device will dispense with ease.

Another problem is created due to the fact that, because of the unreliability of perforations as position indicating means, Hartmann has no reliable means for determining the instantaneous position of the ticket strip. As Hartmann says in Column 5, lines 24-28, "the device according to the present invention does not rely upon the detection of a perforation after calibration to issue a ticket, thus eliminating errors due to blocked perforations." This causes problems in controlling the movement of the strip.

Claim 65 (and the more limited allowed claims 34 and 35) are directed to the advantageous feature of the present invention which overcomes the latter problems of the Hartmann device. Specifically, applicants provide position-detecting means for detecting the distance actually moved by the strip while it is being moved to a bursting or tearing position, and using the signal produced by the detecting means to control the drive means for moving the strip to the desired position. Claim 66 specifies the detecting means as including a rotary code member drivably coupled to the strip, and means for detecting the incremental movements of the code member and converting them into

gn/3390.amd                    36

PATENT
3390-2010

electrical signals.  The code member preferably is the optical code wheel 86 (Figures 5 and 7) which accurately determines the actual position and movement of the ticket strip.

The Examiner might think that the Hartmann device detects the position of the strip by counting electrical pulses delivered to its ticket advance stepper motor 40 (see Figure 1). However, the use of the stepper motor is flawed in that, if there is slippage between the strip and the drive roller driven by the stepper motor, as is so very likely with such stiff and slick materials, then the stepper motor pulse count does not accurately represent the actual position of the ticket strip.  Therefore, Hartmann does not reliably detect the actual movement of the strip by his approach.

As is indicated in claim 67, for example, and as it is explained on page 28 of the specification and shown in Figure 7 of the drawings, the code wheel 86 is secured to a shaft to which rollers 60 are coupled.  The rollers 60 are idlers which move only as the result of movement of the ticket strip.  Thus, if the driven rollers 62 slip when attempting to drive the strip, unlike the Hartmann device, applicants' device does not register movement.

Applicants also have a highly superior and very simple method of determining the distance to move each ticket of a given length.  As it is set forth in claims 68 and 69, for example, a front edge detector is provided to detect the front edge of a

gn/3390.amd                    37

PATENT
3390-2010

ticket to be separated.  The information telling the mechanism how far to move the ticket after that point is stored in memory, and the ticket is moved until it has moved by that distance. This is a far simpler system than the Hartmann system, which requires a complex calibration routine, etc.

Claims 71 and 36-39 are directed to the extremely simple feature of the invention in which the differing lengths of different tickets is accommodated by simply imputting different information into the memory means to indicate how far each ticket is to be moved.  This is in direct contrast to Hartmann who requires a complicated calibration routine each time a new size of ticket is to be dispensed from the machine.

In applicants' invention, the information can be simply input by operating the keypad on the front of the machine, or by inputting it from a central computer.  Hartmann does not suggest this simplicity.

Another highly advantageous feature of the invention, emphasized in claims 50, 51 and 69, for example, is one in which each ticket in a batch of tickets ordered by a particular customer is individually separated from the other tickets in the batch so that the tickets are dispensed one at a time. At first, this might appear to be disadvantageous.  However, it has unobvious and unpredictable advantages that make it unobvious.

gn/3390.amd                    38

PATENT
3390-2010

This feature produces at least three different advantages.  One is that the front edge detector recited in claims 68 and 69 can be used to great advantage in determining a reference point for determining how far to move each ticket. This greatly simplifes the mechanism and circuitry of the device.

A second advantage is that this feature takes advantage of the automatic position adjustment capabilities of the burster mechanism of the invention.  Thus, a correction operation automatically is engaged in for each ticket which is dispensed. This prevents individual small errors in ticket location from accumulating over a long period of time and become major errors.

A third advantage, which is emphasized by claims 50 and 51, is where the housing which dispenses the tickets has an outlet opening (e.g. opening 34 shown in Figure 4 of the drawings) which is accessible to the purchaser of the tickets. If the machine were to issue a strip of say 10 tickets or so without separating each individual ticket from its neighbors, during the dispensing of the tickets the purchaser could grab the end of the uncut strip of tickets and pull many more tickets than he paid for out of the machine.  Thus, the dispensing of one ticket at a time helps prevent theft or vandalism.

It does not appear that Hartmann dispenses tickets directly to the purchaser.  Therefore, he has nothing to even remotely suggest this feature of the invention.

gn/3390.amd                    39

PATENT
3390-2010

The rejection of claim 20 as being anticipated by Koza or obvious over Hartmann is respectfully traversed. Claim 20 is directed to the feature of the invention in which a control panel is mounted on the front surface of the ticket dispenser and a dispensing outlet is located on the rear surface. This arrangement is not shown or suggested either by Koza or Hartmann. In Koza, any lottery ticket which might be dispensed from the video game terminal is dispensed from a small closed box 42 in the front of the video game terminal (see Figure 2 and column 3 lines 56-61). In the Hartmann device (see Figure 1), the ticket outlet 18 is on the front of the device, just above the control panel 20.

The arrangement of claim 20 is advantageous in that, in the typical retail store such as a candy or cigar store, the dispensing unit can rest on the counter, with the ticket agent or seller on one side of the counter, and the customer on the other. The ticket can be issued directly to the customer so that he can take it quickly and make room for the next person in line. This can be very advantageous when there are long lines of people waiting to buy tickets. It eases the ticket agent's job and makes for faster ticket vending, thus increasing both the ticket seller's commissions and the state's revenues.

Claims 21, 24, 25 and 27-29 depend from and are allowable with claim 20. Claim 21 calls specifically for means to generate a ticket number specification signal to order the

gn/3390.amd                    40

PATENT
3390-2010

dispensing of multiple tickets.  This emphasizes the ease with which multiple tickets can be issued by the ticket agent without his having to handle the tickets.

Claim 24 is directed to the feature discussed above in which each of a batch of tickets is separated from the other tickets, thus providing the security feature described above.

Claims 27-29 are directed to the advantageous message display means mounted at the back surface adjacent the dispensing outlet of applicants' machine.  This display is shown at 46 in Figure 4, for example.  Moreover, there is a second display on the front of the machine 32 for informing the agent of information that he needs.  This second display is recited in claim 29.  Claim 28 is directed to central data processing means for selectively transmitting messages to the unit.

The foregoing specific combinations of features are not shown in or suggested by either Koza or Hartmann, or any combination of those references.

Claims 27-29 have been rejected as obvious over Troy in view of Hartmann.  The Examiner relies on Troy primarily for his display 128 (Figs. 8 and 9).  However, such a display is not provided specifically on the rear surface of a dispensing unit with tickets being dispensed from the same rear surface. Similarly, the features of claims 28 and 29, which also are dependent from claim 20, are not suggested by Troy.

gn/3390.amd                        41

PATENT
3390-2010

Claims 40, 46 and 48 are directed to the feature of the invention in which the opening of an access door to the dispensing unit is detected and counted. By this means, the agent can determine whether an employee or other person who has no valid reason for entering the cabinet has done so. Since the number of accesses is recorded and printed out for the agent, he can determine whether security may have been breached.

None of the references suggests the novel concept of these claims in which the number of accesses is counted. Alarms are sounded and other indicia are activated to indicate when an access door is opened, but an accounting system for openings is a different and novel concept not suggested by these references. Thus, the Examiner's comment on page 4 of the official action regarding the disclosure of Koza as applied to claims 46-48, does not anticipate the invention as set forth in these claims.

Claims 42-45 and 49 are directed to the feature of the invention in which an imprinter is provided in the dispensing unit to imprint on the ticket itself the identification of the agent or station issuing the ticket. This concept is not shown or suggested by any of the references. The Examiner's contention on page 6 of the official action that vendor identification is printed on Troy's checks is not believed to be supported by the reference to the specification. Moreover, even if some identification of the vendor did appear on the checks, this is not at all the same as imprinting the vendor's identification on

gn/3390.amd                        42

PATENT
3390-2010

each of the lottery tickets.     The checks are used to provide payoffs to winners, whereas lottery tickets still must be redeemed at some later point in time.  By imprinting the vendor's identification on each ticket, the buyer has a convenient reference for determining where to go to claim credit for the winning ticket.

Claims 34 and 35 have been indicated to be allowable if rewritten as suggested by the Examiner.  They have been so rewritten and are believed to be allowable.

The prior art which was cited but not specifically relied on is not believed to be any more pertinent than that relied on.

Accordingly, it is respectfully requested that the claims be allowed and that the application be passed to issue.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.
Attorneys for Applicants

By:   _Gregory N. Neff_
Gregory N. Neff
Reg. No. 20,596
(212) 840-3333

gn/3390.amd

43



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/128,070 | 12/03/87 | BURR | 592-2136 |

CURTIS, MORRIS & SAFFORD
530 FIFTH AVENUE
NEW YORK, NY 10036

| EXAMINER |
|---|
| RUGGIERO, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 236 | 9 |

DATE MAILED: 07/25/89

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined  ☑ Responsive to communication filed on _5-19-89_  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.   35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.   4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☑ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _20, 21, 24 25, 27-40, 42-46 and 48-72_ are pending in the application.

   Of the above, claims _52-57_ are withdrawn from consideration.

2. ☑ Claims _1-19, 22, 23, 26, 41 and 47_ have been cancelled.

3. ☑ Claims _20, 21, 24, 25, 27-29, 34, 35, 50 and 51_ are allowed.

4. ☑ Claims _30-32, 40 42-46, 48, 49, 58-66, 68 and 70-72_ are rejected.

5. ☐ Claims _33, 36-39, 67 and 69_ are objected to.

6. ☑ Claims _52-57_ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____ . Under 37 C.F.R. 1.84 these drawings are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

Serial Number: 128070                          -2-

Art Unit: 236

1.        It is noted that page 24, line 4, as presently
amended, has poor syntax.  Also, the first line of claim
46₫, as now amended, has poor syntax.

2.        The drawings are objected to because Reference
numerals "90" at page 26, line 22 of the specification and
"39" at the last line of page 17 are not shown in the
drawing.  Correction is required.

3.        Applicant is required to submit a proposed
drawing correction in response to this Office action.
However, correction of the noted defect can be deferred
until the application is allowed by the examiner.

4.        Claims 61-64 are rejected under 35 U.S.C. 112,
second paragraph, as being indefinite for failing to
particularly point out and distinctly claim the subject
matter which applicant regards as the invention.

          In claim 61, the use of "adapted" in the
expression "adapted to ⬛⬛ break through" is not
sufficient to provide a positive recitation of
structural cooperation among the elements of the device.
In claim 64, the wording "relatively stiff stock" is
vague and indefinite.  Claim 62 and 63 incorporate the
deficiencies of claim 61 by dependence.

5.        The following is a quotation of the
appropriate paragraphs of 35 U.S.C. 102 that form the
basis for the rejections under this section made in this
Office action:

6.            (b) the invention was patented or described in
              a printed publication in this or a foreign
              country or in public use or on sale in this
              country, more than one year prior to the date
              of application for patent in the United
              States.

Serial Number: 128070                              -3-

Art Unit: 236


7.        Claims 30-32, 58-60 and 64 are rejected under
35 U.S.C. 102(b) as being anticipated by Wescoat '669.

          Wescoat '669 discloses an apparatus for
dispensing lottery tickets including ticket storage
means 34 for storing a plurality of lottery tickets 36
in a fan fold stream separated by lines of weakness 37,
transport means 47 for feeding the tickets, separations
means 71 including breaker bar 72 for separating the
tickets by bursting along the lines of weakness and
manually accessible outlet means 46 for receiving the
separated ticket.  Further included in Wescoat is a
hold down roll 79 which prevents deflection of the
tickets from the feed path during bursting.  Wescoat
also provides a feed alignment means (bowing means 81)
to control the transport means.  Further, with regard to
claim 59, the downward movement of the breaker bar 72 in
Wescoat is considered to be in a direction transverse to
the longitudinal direction of the strip.  With regard to
claim 60, it is noted that the language in the "so that"
clause is given no patentable weight in determining
distinguishable structure.

8.        The following is a quotation of the
appropriate paragraphs of 35 U.S.C. 102 that form the
basis for the rejections under this section made in this
Office action:


          A person shall be entitled to a patent unless-

9.            (a) the invention was known or used by others
              in this country, or patented or described in a
              printed publication in this or a foreign
              country, before the invention thereof by the
              applicant for patent.

Serial Number: 128070                           -4-

Art Unit: 236

10.      Claims 46 and 48 are rejected under 35 U.S.C.
102(a) as being anticipated by Koza et al.

        The merits of Koza et al. have been discussed
at par. 6 of the previous Office action, paper no. 6.
In particular, at col. 24, lines 11-19, Koza et al.
clearly provide for the detection and storage of
information relating the opening of the terminal doors.
Although, Koza et al. do not explicitly disclose the
counting of each access, this information is inherently
included since all accesses to the terminal doors are
detected and stored.

11.      The following is a quotation of 35 U.S.C. 103
which forms the basis for all obviousness rejections set
forth in this Office action:

> A patent may not be obtained though the invention
> is not identically disclosed or described as set
> forth in section 102 of this title, if the
> differences between the subject matter sought to be
> patented and the prior art are such that the
> subject matter as a whole would have been obvious
> at the time the invention was made to a person
> having ordinary skill in the art to which said
> subject matter pertains.  Patentability shall not
> be negatived by the manner in which the invention
> was made.
>
> Subject matter developed by another person, which
> qualifies as prior art only under subsection (f)
> and (g) of section 102 of this title, shall not
> preclude patentability under this section where the
> subject matter and the claimed invention were, at
> the time the invention was made, owned by the same
> person or subject to an obligation of assignment to
> the same person.

12.      Claim 40 is rejected under 35 U.S.C. 103 as
being unpatentable over Wescoat '669 in view of Koza et
al.

Serial Number: 128070                          -5-
Art Unit: 236

        The merits of Wescoat '669 have been discussed
in par. 7 above.  As such, Wescoat discloses the claimed
invention except for the detection and counting of each
access to the ticket storage means.  However, Koza et
al. clearly teach the advantage of providing and storing
information related to the access of ticket storage
compartments in a ticket dispensing environment as
discussed in par. 10 above.  It would be obvious to
provide such a door access counting feature in the
system of Wescoat in view of the advantages taught by
Koza et al.

13.        Claims 42-45 and 49 are rejected under 35
U.S.C. 103 as being unpatentable over Muller et al. in
view of Wescoat '699.

        The merits of Wescoat have been discussed at
par. 7, above.  Muller et al. disclose an instant
lottery system in which information including vendor
identification data is printed on the ticket, col. 5,
line 20.

        Muller et al. further contemplate the use of
plural dispensing units, col. 6, line 32.  It is
recognized that Muller et al. provide no details of the
feeding and separation of tickets.  However, these
features are clearly disclosed by Wescoat. To provide the
feeding and ticket separation features of Wescoat in the
system of Muller et al. would be obvious in view of the
teachings of Wescoat.  It is further noted that the
particular form of the vendor identification data is a

Serial Number: 128070                                    -6-

Art Unit: 236


matter of obvious design choice.

14.       The following is a quotation of the

appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this

Office action:

        A person shall be entitled to a patent unless-

15,            (e) the invention was described in a patent
               granted on an application for patent by
               another filed in the United States before the
               invention thereof by the applicant for patent,
               or on an international application by another
               who has fulfilled the requirements of
               paragraphs (1), (2), and (4) of section 371(c)
               of this title before the invention thereof by
               the applicant for patent.

16.       Claims 65, 68, 71 and 72 are rejected under 35

U.S.C. 102(e) as being anticipated by Hartmann.

        Hartmann discloses a ticket dispenser

including moving means (e.g., 44) for moving a strip a

predetermined distance to be separated (Hartmann, col.

4, line 58 to col. 5 line 31), and position detector

means (optical detector 31) for detecting the position

moved.  The comparison and storing operations are

discussed at col. 4, lines 23-46.

17.       Claim 66 is rejected under 35 U.S.C. 103 as

being unpatentable over Hartmann as applied to claims

65, 68, 71 and 72 above, and further in view of Kondur,

Jr. et al.

        The advantages of using a rotary code wheel

such as 34 for position detection is disclosed by

Kondur, Jr. et al. To use such a rotary code wheel for

Serial Number: 128070                    -7-
Art Unit: 236

position detection in Hartman would be obvious in view
of the techniques of Kondur, Jr. et al.

18.      Claim 70 is rejected under 35 U.S.C. 103 as
being unpatentable over Hartmann as applied to claims
65, 68, 71 and 72 above, and further in view of Wescoat
'699.

        The advantages of using a bursting operation
to separate tickets in disclosed by Wescoat as discussed
in par. 7 above. To use such a bursting operation to
separate tickets in Hartmann would be obvious in view of
the teachings of Wescoat.

19.      Newly submitted claims 52-57 are directed to
an invention that is independent or distinct from the
invention originally claimed for the following reasons:
Claims 52-57 are drawn to a method of separating tickets
which is usable in combination other than the claimed
dispenser of the remaining claims.  Further, the claimed
dispenser of the originally presented claims does not
require the particulars of the ticket separator means of
claims 52-57 as evidenced, for example, by claim 30.

        Since applicant has received an action on the
merits for the originally presented invention, this
invention has been constructively elected by original
presentation for prosecution on the merits.
Accordingly, claims 52-57 are withdrawn from
consideration as being directed to a non-elected
invention. See 37 CFR 1.142(b) and MPEP 821.03.

20.      Claims 33, 36-39, 67 and 69 are objected to as

Serial Number: 128070                          -8-

Art Unit: 236


being dependent upon a rejected base claim, but would be

allowable if rewritten in independent form including all

of the limitations of the base claim and any intervening

claims.

21.      Claims 61-63 would be allowable if rewritten

to overcome the rejection under 35 U.S.C. 112 and to

include all of the limitations of the base claim and any

intervening claims.

22.      The prior art made of record and not relied

upon is considered pertinent to applicant's disclosure.

         Berner is cited of particular interest in

disclosing a ticket(label) dispenser with position

control for proper bursting operation.

23.      Any inquiry concerning this communication or
earlier communications from the examiner should be
directed to J.F. Ruggiero whose telephone number is
(703) 557-0470.

     Any inquiry of a general nature or relating to the
status of this application should be directed to the
Group receptionist whose telephone number is (703)
557-2878.


JFR/jrm

7/24/89

*Joseph Ruggiero*
JOSEPH RUGGIERO
PRIMARY EXAMINER
ART UNIT 236

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNาP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 128,070 | GROUP ART UNIT 236 | ATTACHMENT TO PAPER NUMBER | 9 |
|---|---|---|---|---|---|
| | **NOTICE OF REFERENCES CITED** | APPLICANT(S) R.L. BURR et al | | | |

### U.S. PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 3 8 9 4 6 6 9 | 7-1975 | WESCOAT | 225 | 103 | |
| | B | 4 8 3 2 3 4 1 | 5-1989 | MULLER et al | 273 | 138A X | 8-21-86 |
| | C | 4 1 9 2 6 1 8 | 3-1980 | KONOUR, JR. et al | 226 | 44 X | |
| | D | 3 6 2 1 9 6 4 | 11-1971 | RIDDLE et al | 231 | 7 X | |
| | E | 4 0 9 4 4 5 1 | 6-1978 | WESCOAT | 225 | 96 | |
| | F | 4 3 7 5 1 8 9 | 3-1983 | BERNER et al | 225 | 100 X | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| • | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER RUGGIERO | DATE 7-19-89 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

$215 ᵀᵛ 217 /p/p/
## 230
10

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: Robert L. Burr, et al.

Serial No.   128,070                    Examiner: J. Ruggiero

Filed        December 3, 1987            Group No.  230

For          SYSTEM AND METHOD FOR      Date:  January 25 , 19 90
             DISTRIBUTING LOTTERY TICKETS      RECEIVED

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Sir:

     Transmitted herewith is an amendment in the above-identified
application.

     X   No additional fee is required.

         The fee has been calculated as shown below.

                    ___  This is an application of a small entity
                         under 37 CFR 1.9(f), and the amounts shown
                         in parentheses apply.

                         CLAIMS AS AMENDED

| (1) | (2) Claims remaining after amendment | (3) | (4) Highest number previously paid for | (5) Present extra | (6) Rate | (7) Add'l fee |
|-----|------|-----|------|------|------|------|
| Total Claims | * | minus | ** | = | X | $12(6) = |
| Independent Claims | * | minus | *** | = | X | $36(18) = |
|  |  |  | Total additional fee for this amendment |  |  |  |

*     If the entry in Column 2 is less than the entry in Column 4, write "0" in Column 5.

**    If the highest number of total claims previously paid for is less than 20, write "20" in this space.

***   If the highest number of independent claims previously paid for is less than 3, write "3" in this space.

                    080   01/31/90   07128070

[MLB]C:\WP50\F\COVERPTO.AM                    1 217        215.00 CK

____  This application contains a multiple dependent claim.  The required fee of $120(60) has been previously paid ___, or is paid herewith ____.

____  This response is being filed within the ___ first month, ___ second month, _3_ third month, ___ fourth month following the expiration of the term originally set therefor, and the fee of ___ $62 (31), ___ $180 (90), ___ $430 (215), ___ $680 (340) for the requisite extension is due and ___ paid herewith.

_X_  A check in the amount of $ 215.00  is attached.

____  Charge $_____ to Deposit Account No. 03-3925.

_X_  Please charge any additional fees incurred by reason of this response or credit any overpayment to Deposit Account No. 03-3925.  A duplicate copy of this sheet is enclosed.

CURTIS, MORRIS & SAFFORD, P.C.
Attorneys for Applicant(s)

By _____

Reg. No. 20,596

(212) 840-3333

[MLB]C:\WP50\F\COVERPTO.AM

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant        :   Robert L. Burr, et al.

Serial No.       :   128,070

Filed            :   December 3, 1987

For              :   SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY
                     TICKETS

Group Art Unit   :   230

Examiner         :   J. Ruggiero

                     530 Fifth Avenue
                     New York, New York 10036
                     January 25, 1990

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to:
Commissioner of Patents and Trademarks,
Washington, D.C. 20231, on January 25, 1990

    Gregor N. Neff, Reg. No 20,596
Name of Applicant, Assignee or Registered
        Representative

        Signature

    January 25, 1990
    Date of Signature

                    **AMENDMENT**

Hon. Commissioner of Patents and Trademarks
Washington, D.C.   20231

Sir:

        In response to the Official Action of July 25, 1989,

please amend the above-identified patent application as follows:

IN THE SPECIFICATION:

        Page 17, lines 13 and 31, change "39" to --27--;

        Page 24, line 24, replace the entire line with the

following new line: "reflected slightly downwardly".

PATENT
3390-2010

<u>IN THE CLAIMS</u>:

¶ 26.   (Twice Amended) Apparatus for dispensing <u>lottery</u> tickets, comprising:

ticket storage means for storing a plurality of <u>lottery</u> tickets connected in a fan-fold stream headed by a leading ticket, said tickets being separable from each other along lines of weakness;

transport means for feeding said stream of tickets from said ticket storage means along a predetermined dispensing path;

separation means for separating said leading ticket from said stream of tickets along a leading line of weakness between said leading ticket and a next following ticket by bursting said tickets apart along said leading line; [and]

manually accessible outlet means for receiving the separated ticket[.];

<u>wherein said separation means includes a dull-edged bursting blade movably mounted adjacent a predetermined bursting position along said path, holding means for holding said stream of tickets against substantial deflection from said path at said bursting position and bursting blade drive means for bringing said bursting blade into bursting contact with said stream of tickets at said bursting position to burst said leading ticket from said next following ticket</u>;

GN1.2010.Am.mm

2

PATENT
3390-2010

wherein said separation means includes feed alignment means for controlling said transport means to bring said leading line of weakness to said bursting position; and

wherein said alignment means includes sensor means for detecting a present position of said leading ticket relative to said bursting position, determining means for determining a transport direction and a displacement distance necessary to bring said leading line of weakness to said bursting position, and transport control means for generating a transport control signal indicative of said transport direction and displacement distance, said transport means being responsive to said transport control signal for transporting said stream of tickets in said transport direction by said displacement distance;

Cancel claims 31-33;

Claim 36, line 1, change "33" to --30--;

Cancel claims 46 and 48;

Cancel claims 52-57, subject to the right to pursue the claims in a divisional patent application.

Rewrite claims 58-61, 64, 65, 67, 69, 70 and 72 as follows:

58. (Amended) Apparatus for dispensing tickets from a strip of tickets delineated from one another by lines along which the material of said strip is weakened, said apparatus comprising, in combination, means for moving said strip towards a

GN1.2010.Am.mm

3

PATENT
3390-2010

dispensing position, a separation member, means for holding said strip adjacent one line along which said strip is to be separated, and [bending] causing said strip to bend along said one line at said dispensing position to facilitate tearing of said strip by engagement with said separator member along said one line while said strip is bent.

59.  (Amended)  Apparatus as in Claim 58 including [separation means, having a separator member and] drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip, with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line.

73 60.  (Amended)  Apparatus as in Claim 59 in which said means for holding said strip includes means for releasing [holds] said strip [reasonably so that the] under the pull exerted by the deflecting contact of said separator member with said strip [tends to pull said strip] to adjust [its] the longitudinal position of said strip in order to align said one line with said member.

74 61.  (Amended)  Apparatus for dispensing tickets from a strip of tickets delineated from one another by lines along which the material of said strip is weakened, said apparatus comprising, in combination, means for moving said strip towards a

GN1.2010.Am.mm

4