

EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

    Plaintiff,

v.

SCIENTIFIC GAMES INTERNATIONAL,
INC., SCIENTIFIC GAMES HOLDINGS
CORPORATION, SCIENTIFIC GAMES
FINANCE CORPORATION, and
SCIENTIFIC GAMES CORPORATION,

    Defendants.

C.A. No. 04-138-JJF

## SCIENTIFIC GAMES' SUPPLEMENTAL RESPONSES TO PLAINTIFF'S INTERROGATORIES NOS. 2 AND 7

Defendants Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Scientific Games") hereby supplement their responses and object to plaintiff's Interrogatories Nos. 2 and 7 as follows:

### GENERAL OBJECTIONS

1. Scientific Games objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity.

2. Scientific Games objects to the Interrogatories and the Instructions to the extent they seek to impose obligations not required under the Federal Rules of Civil Procedure or the Local Rules of the District of Delaware.

3. Scientific Games objects to the definition of "Scientific Games" as overly broad.

4. Scientific Games objects to the definition of "TVM" as overly broad.

5. Scientific Games objects to the definition of "Scientific Games' TVM" as overly broad to the extent it seeks to include products that have not been accused of infringement.

6. Scientific Games objects to the Interrogatories to the extent they seek Scientific Games' confidential information.

7. Scientific Games objects to the Interrogatories to the extent they seek production of confidential information of third parties.

8. Scientific Games objects to the Interrogatories to the extent they seek information that is not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence.

9. Scientific Games objects to the Interrogatories to the extent they are overly broad and unduly burdensome.

10. Scientific Games objects to the Interrogatories to the extent they seek information not in the possession, custody, or control of Scientific Games.

11. Scientific Games reserves the right to supplement its responses to the Interrogatories as appropriate.

The foregoing General Objections are incorporated into each of the Specific Responses to the Interrogatories.

## SUPPLEMENTAL RESPONSES TO PLAINTIFF'S INTERROGATORIES

### INTERROGATORY NO. 2:

For each product identified in Interrogatory No. 1, state all reasons why Defendants contend the product does not infringe any of the claims of the Patents-in-Suit, identify each person with knowledge of the reasons and all facts and documents tending to support that contention, and identify each person with knowledge of the reasons and all facts and documents tending to contradict that contention.

### RESPONSE TO INTERROGATORY NO. 2:

Scientific Games objects to Interrogatory No. 2 as seeking information that is protected by the attorney-client privilege, work product immunity or any other applicable privilege or immunity. Scientific Games also objects to Interrogatory No. 2 as overly broad and as seeking information not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence insofar as GTECH has alleged infringement only with respect to claim 18 of the '624 patent and claims 20, 21 and 28 of the '337 patent. Scientific Games also objects to Interrogatory No. 2 because, although GTECH has the burden of proof on infringement, it has provided no explanation whatsoever in response to Scientific Games' Interrogatory No. 1 as to how the PlayCentral Kiosk allegedly infringes claim 18 of the '624 patent or claims 20, 21 or 28 of the '337 patent. Scientific Games will supplement this response, as appropriate, after GTECH has provided meaningful infringement contentions. Subject to these and the General Objections, Scientific Games responds as follows:

    **A.    Claims 20 and 21 of the '337 patent**

Scientific Games does not infringe claims 20 or 21 of the '337 patent for at least the following reasons. Claim 20 requires a "means for separating each of said tickets from said strip," which GTECH acknowledges is a means-plus-function limitation. The claimed function

3

of this limitation is to separate each ticket from a strip of tickets. The specification of the '337 patent discloses the following structure for performing this function:

> [T]he separation means includes a *dull edge bursting blade moveably mounted* adjacent a predetermined bursting position along the path, *holding means* for holding the stream of tickets against substantial deflection from the path at the bursting position, and *bursting blade drive means* for bringing the bursting blade into bursting contact with the stream of tickets at the bursting position to burst the leading ticket from the next following ticket.

(col. 3, ll. 55-63; emphasis added). The "means for separating" limitation thus includes at least three distinct elements: (1) a dull edge bursting blade moveably mounted; (2) a holding means; and (3) a bursting blade drive means.

The only "dull edge bursting blade" disclosed in the '337 patent is a circular burster wheel with a dull, rounded edge: "[B]urster wheel 68 is advantageously in the form of a circular burster blade which, in an advantageous aspect, has a dull, rounded edge . . . ." (col. 10, ll. 58-63). *See* col. 10, ll. 39-41 ("burster wheel"); col. 10, ll. 52-57 ("burster wheel"); col. 11, ln. 8 ("burster wheel"); col. 11, ln. 12 ("burster wheel"); col. 11, ln. 24 ("burster wheel"); col. 11, ln. 29 ("burster wheel"); col. 11, ln. 32 ("burster wheel"); col. 11, ln. 47 ("burster wheel"); col. 11, ln. 54 ("burster wheel"); col. 13, ln. 23 ("burster wheel"); col. 13, ll. 29-30 ("burster wheel"); *see also* U.S. Patent No. 5,836,498, col. 2, ll. 65-67; col. 3, ll. 1, 3-5 ("The separation mechanism of the '337 patent comprises a bursting wheel which separates the leading ticket from the next following ticket . . . . The burster wheel of the '337 patent is in the form of a circular burster blade which has a dull rounded edge . . . .").

Scientific Games' PlayCentral Kiosk does not have a moveably mounted burster wheel with a dull, rounded-edge. The PlayCentral Kiosk uses a stationary cutting blade with a sharp edge.

4

The "means for separating" also includes a "holding means for holding the stream of tickets against substantial deflection from the path at the bursting position." The corresponding structure disclosed in the specification of the '337 patent are feed rollers and exit feed rollers (col. 10, ll. 65-68; col. 11, ll. 1-2). The PlayCentral Kiosk does not "hold[] the stream of tickets against substantial deflection from the path at the bursting position." The PlayCentral Kiosk uses rollers to pull the stream of tickets against a stationary cutting blade.

The "means for separating" also includes a bursting blade drive means, which brings the burster wheel into contact with and across the stream of tickets (col. 13, ll. 23-32, 36-38). The corresponding structure disclosed in the specification of the '337 patent is a burster block, burster motor, cable spool arrangement, and tensioning spring: "Burster wheel 68 is shown mounted on a burster block 98 driven by a burster motor 100 through a cable spool arrangement 102 including tensioning spring 104" (col. 13, ll. 23-25). The PlayCentral Kiosk uses a stationary cutting blade to separate tickets, and does not have any structures that perform the function of the bursting blade drive means described in the '337 patent.

Claim 20 also requires a "housing means for storing a strip of tickets to be dispensed, said housing means having an outlet opening accessible to the purchaser of the tickets from said machine." This is a means-plus-function element, as GTECH's predecessor, Interlott, acknowledged in prior litigation (*see* GTECH 033460).

The claimed function of the housing means is to store tickets and permit tickets to be dispensed directly to the purchaser. The structure disclosed in the specification of the '337 patent for performing this function is (col. 7, ll. 5-11):

> [A] housing with a front surface 28 which ... is intended to face
> the sales agent or vendor standing behind a counter 26. ... An
> opposed back surface 30 ... is intended to face the customers
> when ... in operation. In accordance with an advantageous aspect

5

> of the present invention, a control panel 32 including all necessary agent-operated controls is mounted at front surface 28, while a dispensing outlet 34 is manually accessible at the back surface 30 by the customers.

The specification also discloses that (col. 7, ll. 26-37):

> [C]ontrol panel 32 is mounted at front surface 28 on an upper portion 36 thereof. Upper portion 36 is inclined relative to front surface 28 for ergonomic reasons; that is, to permit comfortable access to control panel 32. The angle of inclination of panel 32 is limited so that control panel 32 remains in substantially opposed relation to back surface 30. The angle of inclination is limited not only so that control panel 32 may be easily viewed and operated by the sales agent, but also so that it will be substantially blocked from view by any customer standing in front of counter 26 and facing back surface 30.

The structure of the "housing means" is depicted in Figures 3 and 4 of the '337 patent, which show a housing with the front surface having an inclined upper portion on which the control panel is mounted, and an opposed back surface having a dispensing outlet opening. During the prosecution of the '624 patent, the applicant represented to the patent examiner that the '337 patent discloses only a dispensing unit with an outlet opening in the back surface of the housing: "[The '337 patent] shows an instant winner lottery ticket dispenser which is intended to be attended by an agent. [The dispenser] is designed to dispense tickets from the rear of the unit . . . [and is] not suitable for use as [an] unattended ticket vending device[]."

The PlayCentral Kiosk does not have the claimed "housing means" of claims 20 or 21. The PlayCentral Kiosk is a customer-operated (not an agent-operated) terminal with customer-operated touch-screen controls and a dispensing outlet on the front surface of the housing. The PlayCentral Kiosk does not have a front surface "which . . . is intended to face the sales agent or vendor standing behind a counter" and an opposed surface "intended to face the customers when . . . in operation." The front surface of the PlayCentral Kiosk also does not have an inclined upper portion.

6

Claim 20 also requires a "means operable for ordering a plurality of tickets in a single batch," which GTECH acknowledges is a means-plus-function element. The function of this element is to allow ordering of a plurality of tickets in a single batch. The structure disclosed in the specification of the '337 patent for performing this function is a control panel, keypad, push-buttons, and control circuit (col. 7, ll. 41-46, 48-50).[1] The PlayCentral Kiosk does not have either push-buttons or a keypad for ordering tickets, but instead utilizes a touch-screen display to permit the customer to purchase tickets.

### B.   Claim 28 of the '337 patent

Scientific Games does not infringe claim 28 of the '337 patent for at least the following reasons. Claim 28 requires "means for severing a ticket from said strip," which GTECH acknowledges is a means-plus-function element. This limitation has the same function and structure as the "means for separating" limitation in claim 20.[2] For at least all the reasons that the PlayCentral Kiosk does not infringe claim 20 because it does not have the claimed "means for separating," the PlayCentral Kiosk also does not infringe claim 28 because it does not have the claimed "means for severing."

Claim 28 also requires "position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means to drive said strip until said output signal indicates that said strip actually has moved by said predetermined distance to dispense one of said tickets, and to control means for severing a ticket from said strip." GTECH acknowledges that the "position detecting means" is a means-plus-

---

[1]   *See Interlott Tech., Inc. v. Pollard Banknote Ltd.*, Case No. 02cv02157, slip op. at 31 (N.D. Ohio Aug. 4, 2003).

[2]   *See Interlott*, slip op. at 31.

7

function element. The claimed function is to detect the distance that the strip of tickets has actually moved, and produce an output signal to control the drive means and to control the separation means. The structure disclosed in the specification of the '337 patent for detecting the distance actually moved is a code wheel and code wheel sensor (col. 12, ll. 36-54; col. 13, ll. 16-22).

The PlayCentral Kiosk does not detect the distance that the strip has actually moved. The PlayCentral Kiosk also does not have a code wheel or code wheel sensor. It uses a stepper motor to move the tickets by a predetermined distance. The use of a stepper motor was expressly disclaimed during prosecution of the '337 patent, because it did not detect "the distance actually moved" by the strip:

> The [prior art] Hartmann device does not have means for measuring the <u>actual</u> distance traveled by the strip and using of the information so detected to control the drive motor and severing means to dispense tickets. . . . The measurement of the distance traveled by the ticket strip during the actual dispensing of tickets is determined by or counting the steps of the stepping drive motor. This permits a major inaccuracy in the driving of the strip in that, if the drive slips and fails to move the ticket strip forward for any particular distance, this creates an error in the location of the cut made by the cutting means. . . . This is because the device which counts stepping motor pulses simply does not detect the <u>actual</u> position of the strip.

The PlayCentral Kiosk does not have the claimed "position detecting means." Further, GTECH is estopped from asserting infringement of this claim limitation under the doctrine of equivalents by virtue of amendment of the claim during prosecution, as well as by its distinction over stepper motors during prosecution.

### C.   Claim 18 of the '624 patent

Scientific Games does not infringe claim 18 of the '624 patent for at least the following reasons. Claim 18 requires a "display means for displaying an array of lottery ticket

8

representations viewable from outside of said housing by a customer, said array representing tickets in said machine available for purchase ... in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen."

The PlayCentral Kiosk does not display "a plurality of arrays of ticket images on a video screen." The PlayCentral Kiosk initially displays icons of the tickets offered for sale -- not "ticket images" or a plurality of arrays of ticket images -- on a touch-screen user interface. Only after the purchaser selects a game logo area on the touch-screen is a representation of a single ticket -- not a plurality of arrays of ticket images -- displayed to the purchaser. Moreover, GTECH is estopped from asserting infringement of this claim limitation under the doctrine of equivalents because the claim was amended during prosecution.

The '624 patent also requires that the "array" of ticket images be movable on a video screen (see Abstract; col. 1, ll. 64-68; col. 10, ll. 64-68). There is no movable array of ticket images on the video screen of the PlayCentral Kiosk.

Claim 18 also requires a "means for dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer." This claim limitation is written in means-plus-function form and should be interpreted accordingly. The function of this claim limitation is to dispense tickets corresponding to the amount of money input into the machine. The structure disclosed in the specification of the '624 patent for performing this function is (col. 4, ll. 48-55):

> The feeding and bursting mechanism 112 is essentially identical to that disclosed in the above-identified copending patent application ['337 patent] .... It will not be described in detail herein; rather, the disclosure of that mechanism, and all other disclosure in the pending application, hereby is incorporated herein by reference.

The specification of the '624 patent discloses that the feeding and bursting mechanism includes four drive rollers, a rotary bursting wheel, and "a precise code wheel and detector arrangement"

9

(col. 4, ll. 56-63; col. 5, ll. 14-18). The feeding and bursting mechanism disclosed in the '337 patent, and incorporated by reference into the '624 patent, also requires a burster block, burster motor, cable spool arrangement, and tensioning spring ('337 patent, col. 3, ll. 55-63; col. 13, ll. 23-32).

For at least the same reasons that the PlayCentral Kiosk does not have the "means for separating" of claim 20 of the '337 patent, the PlayCentral Kiosk does not have the "means for dispensing" of claim 18 of the '624 patent. The PlayCentral Kiosk also does not have a "precise code wheel and detector arrangement" as described in the '337 patent, and as incorporated by reference into the '624 patent.

Individuals with knowledge of the design and operation of the PlayCentral Kiosk include: Bill Behm, Tony Bartolone, Janine Whiteman, Vic Collucci and Mark Gilmore. Documents describing the design and operation of the PlayCentral Kiosk include: SGI104995; SGI043580-81; SGI011043-44; SGI007437-621; SGI009906-07; SGI010758-85; SGI016905-17028; SGI018897-19340. In addition, the PlayCentral Kiosk is covered by U.S. Patent No. 5,950,898, U.S. Patent No. 6,609,644 B1, and U.S. Patent No. 6,669,071 B1.

**INTERROGATORY NO. 7:**

For each claim of the Patents-in-Suit which Defendants contend is invalid, state with particularity the basis for such contention, including but not limited to, identifying with particularity each event or disclosure in a reference or publication forming in whole or in part the basis for such contention, each person with knowledge of the event or reference, and all documents relating to the contention, event or reference.

**RESPONSE TO INTERROGATORY NO. 7:**

Scientific Games objects to Interrogatory No. 7 as seeking information that is protected by the attorney-client privilege, work product immunity or any other applicable privilege or immunity. Scientific Games also objects to Interrogatory No. 7 as overly broad and

as seeking information not relevant to the claim or defense of any party and not reasonably calculated to lead to the discovery of admissible evidence. Scientific Games also objects to Interrogatory No. 7 because GTECH has failed to disclose its proposed constructions of the asserted claims. Scientific Games will supplement its response to Interrogatory No. 7, as appropriate, after GTECH has disclosed its proposed constructions of the asserted claims, and after Scientific Games has had an opportunity to take additional discovery.

Subject to these and the General Objections, Scientific Games responds as follows with respect to the claims asserted by GTECH -- claims 20, 21 and 28 of the '337 patent and claim 18 of the '624 patent:

### A.     Claims 20 and 21 of the '337 patent

If claims 20 and 21 of the '337 patent are construed to cover Scientific Games' PlayCentral Kiosk, those claims are invalid under 35 U.S.C. § 102 in light of the Player-Activated Terminals ("PAT") that Scientific Games offered for sale and sold in the United States more than one year before the application for the '337 patent was filed.

Scientific Games' PATs were lottery ticket vending machines that included a housing with an outlet opening accessible to the ticket purchaser, a touch-screen for ordering multiple tickets in a single batch, and dispensing means for dispensing the instant lottery tickets through the outlet opening (*see* SGI002060-163; SGI104830-31; SGI104811-12; SGI105153; SGI106615). The PATs also had control and separating means that separated and dispensed each ticket individually, regardless of the number of tickets ordered in a batch (*see* SGI002121 ("Our dispenser is designed to cut each continuous form computer-produced ticket individually. Each ticket then drops into a hopper for removal by the customer.")).

11

As discussed above, in response to Interrogatory No. 2, the PlayCentral Kiosk does not have the "housing means" of claims 20 and 21. If the "housing means" limitation, however, is construed to cover the PlayCentral Kiosk, it would also cover the housing means in Scientific Games' prior art PATs.

The PlayCentral Kiosk also does not contain the claimed "means operable for ordering a plurality of tickets in a single batch." If "means ... for ordering," however, is construed to cover the PlayCentral Kiosk, it would also cover Scientific Games' prior art PATs.

The PlayCentral Kiosk does not have the claimed "means for separating." If the "means for separating," however, is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it also covers the separating and dispensing mechanism in the Scientific Games' prior art PATs. Indeed, the separating means used in the prior art PATs is more like the mechanism disclosed in the '337 patent than the PlayCentral Kiosk. The prior art PAT used a moving separation blade, blade drive means, and holding means for holding the ticket as it was being separated (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)). Thus, if claims 20 and 21 of the '337 patent are construed to cover the PlayCentral Kiosk, they will also cover Scientific Games' prior art PATs and are invalid under 35 U.S.C. § 102.

In addition, if claims 20 and 21 of the '337 patent are construed so as to cover the PlayCentral Kiosk, they are also invalid under 35 U.S.C. § 102 and § 103 over U.S. Patent No. 4,716,799 (to Hartmann) alone, and in combination with Scientific Games' prior art PAT. Hartmann disclosed an automatic lottery ticket dispensing machine that included a housing, a control panel for ordering multiple tickets, a means for separating tickets from the strip, and a means for dispensing tickets through an outlet opening (*see* Hartmann '799 patent, Fig. 1, col. 2,

ll. 56-60, col. 3, ll. 41-63, col. 4, ll. 49-52). Hartmann also taught that the machine could be mounted as a user activated terminal, providing an outlet opening directly accessible to the purchaser (*see id.*, col. 2, ln. 68 - col. 3, ln. 2). To the extent Hartmann disclosed cutting, and not bursting, the necessary modification would have been obvious in light of Scientific Games' prior art PATs, which burst tickets (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)).

If claims 20 and 21 are construed to cover Scientific Games' PlayCentral Kiosk, they are also invalid as obvious under 35 U.S.C. § 103 over the following references, alone or in combination: Scientific Games' prior art PATs; U.S. Patent No. 4,716,799 (to Hartmann); U.S. Patent No. 3,978,958 (to Zandstra); U.S. Patent No. 4,623,081 (to Hain et al.); U.S. Patent No. 4,157,670 (to Herring); U.S. Patent No. 4,094,451 (to Wescoat); U.S. Patent No. 3,894,669 (to Wescoat); U.S. Patent No. 4,401,249 (to Kadlecik et al.); and U.S. Patent No. 4,261,497 (to Roetter).

Claims 20 and 21 of the '337 patent may also be invalid under 35 U.S.C. § 102(b) as a result of public use or offers to sell its ITRs more than a year before the December 3, 1987 application for the '337 patent. GTECH's documents, including an attachment to Mr. Burr's September 25, 1992 Declaration in the Patent Office, refer to "various field tests since 1986." *See also* INLO-030513, INLO-035497, INLO-041626, INLO-200612 ("patents invalid showed publicly").

### C. Claim 28 of the '337 patent

If claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, that claim is invalid under 35 U.S.C. § 102 in light of Scientific Games' prior art PAT, for the reasons set forth with respect to claims 20 and 21.

If claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid under 35 U.S.C. § 102 and § 103 over U.S. Patent No. 3,978,958 (to Zandstra) and U.S. Patent No. 4,716,799 (to Hartmann) alone and in combination, and in combination with Scientific Games' prior art PAT.

Zandstra disclosed an automatic ticket dispenser "especially adapted to vend articles such as lottery tickets" (Zandstra '958 patent, col. 2, ll. 5-7). Zandstra disclosed drive means for moving a strip of tickets connected by perforations to a separation location (*id.*, col. 2, ll. 33-36). Zandstra also disclosed a means for separating tickets (*id.*, col. 4, ll. 11-15). Zandstra also disclosed an optical detector for detecting the distance that the strip of tickets has actually moved and producing an output signal to control the drive means and to control the ticket separation means (*id.*, col. 2, ll. 40-50).

Hartmann disclosed an automatic lottery ticket dispensing machine that uses rollers driven by a stepper motor to advance a strip of tickets to a separation location (Hartmann '799 patent, col. 2, ll. 56-58). Hartmann also disclosed a ticket separation means (*id.*, col. 4, ll. 4-9), and a position detecting means (*id.*, col. 7, ll. 15-17).

As discussed above in response to Interrogatory No. 2, the PlayCentral Kiosk does not have the claimed "means for severing" of claim 28. The means for separating tickets disclosed in Zandstra and Hartmann, however, are more like the mechanism disclosed in the '337 patent than the mechanism used in the PlayCentral Kiosk. Both Hartmann and Zandstra use moving blades, blade drive means, and holding means to separate the tickets. Thus, if the "means for separating" limitation of claim 28 is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it would also cover the separation mechanisms described in Zandstra and Hartmann. Finally, to the extent Zandstra and Hartmann disclosed cutting, and not

14

bursting, the necessary modification would have been obvious in light of Scientific Games' prior art PATs, which burst tickets (*see* SGI002121; *see also* U.S. Patent No. 4,157,670 (to Herring)).

Finally, if claim 28 of the '337 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid as obvious under 35 U.S.C. § 103 over the following references, alone or in combination: Scientific Games' prior art PATs; U.S. Patent No. 4,716,799 (to Hartmann); U.S. Patent No. 3,978,958 (to Zandstra); U.S. Patent No. 4,623,081 (to Hain et al.); U.S. Patent No. 4,157,670 (to Herring); U.S. Patent No. 4,094,451 (to Wescoat); U.S. Patent No. 3,894,669 (to Wescoat); U.S. Patent No. 4,401,249 (to Kadlecik et al.); and U.S. Patent No. 4,261,497 (to Roetter).

Claim 28 of the '337 patent may also be invalid under 35 U.S.C. § 102(b) as a result of a public use or offer to sell, for the same reasons set forth with respect to claims 20 and 21.

### C.    Claim 18 of the '624 patent

If claim 18 of the '624 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is invalid under 35 U.S.C. § 102 and § 103 over Scientific Games' prior art PATs, which Scientific Games offered for sale and sold in the United States more than one year before the application for the '624 patent was filed. Scientific Games' prior art PATs were lottery ticket vending machines that included a housing, a video display screen viewable by a customer, a bill acceptor, and a dispensing mechanism for dispensing lottery tickets in a number corresponding to the amount of money input into the machine by a customer (*see* SGI002060-163; SGI104830-31; SGI104811-12; SGI105153; SGI106615).

As discussed above, in response to Interrogatory No. 2, the PlayCentral Kiosk does not display "a plurality of arrays of ticket images on a video screen." If, however, the

"video display means" limitation of claim 18 is construed to cover the PlayCentral Kiosk, it also covers Scientific Games' prior art PATs. The PlayCentral Kiosk also does not contain the "means for dispensing" of claim 18. The separation mechanism in the prior art PATs was more like the mechanism claimed in the '624 patent than the PlayCentral Kiosk. The prior art PATs used a moving separation blade, blade drive means, and holding means for holding the ticket as it was being separated (see SGI002121; see also U.S. Patent No. 4,157,670). Thus, if the "means for dispensing" limitation of claim 18 is construed to cover the separating and dispensing mechanism in the PlayCentral Kiosk, it also covers the separation mechanism used in Scientific Games' prior art PATs.

If claim 18 of the '624 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is also invalid under 35 U.S.C. § 103 as obvious in light of Scientific Games' prior art PATs in combination with the '337 patent. The prior art PATs included a housing, a video display screen, a bill acceptor, and a mechanism for dispensing lottery tickets in a number corresponding to the amount of money input into the machine by a customer. The '337 patent taught a mechanism for separating and dispensing lottery tickets. In view of the stated advantages of the mechanism disclosed in the '337 patent, it would have been obvious to a person having ordinary skill in the art to combine Scientific Games' prior art PATs with the '337 patent.

Claim 18 of the '624 patent may also be invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103 in light of other prior art lottery ticket vending machines with video screens offered for sale and sold by Electro-Sport, Syntech, AmTote/General Instruments, IGT and Video Lottery Consultants. See, e.g., SGI105003-08; SGI105132; SGI105271; SGI105280-83; SGI105367; SGI105411; SGI105482; SGI105491; SGI105535-38; SGI105546; SGI105563;

SGI105568-69; SGI105595-96; SGI105618; SGI105643; SGI105919-20; SGI105924; SGI105988-91; SGI106023; SGI106064-68; SGI106117-18; SGI106651-52; SGI106797; SGI106836-37; SGI106866; SGI106874; SGI106904-07; SGI106913-14; SGI106930; SGI106938; SGI106954-55; SGI106235; SGI106236; SGI106298; SGI106603; SGI106607.

Finally, if the "means for dispensing" of claim 18 of the '624 patent is not the structure disclosed in the '337 patent, then claim 18 is invalid under 35 U.S.C. § 112 because the '624 patent does not disclose any other structure corresponding to the means for dispensing.

Individuals with knowledge of Scientific Games' prior art PATs include: Bill Behm and Mark Hoffman.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
   Attorneys for Defendants Scientific Games
   International, Inc., Scientific Games Holdings
   Corporation, Scientific Games Finance
   Corporation and Scientific Games Corporation

April 29, 2005
443944

CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that copies of the foregoing were caused to be served on April 29, 2005, on the following in the manner indicated:

**BY HAND**

Josy W. Ingersoll
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

**BY FEDERAL EXPRESS**

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY 10004

Rodger D. Smith II