IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GTECH CORPORATION,<br><br>                Plaintiff,<br><br>          v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC.,<br>SCIENTIFIC GAMES HOLDINGS<br>CORPORATION, SCIENTIFIC GAMES<br>FINANCE CORPORATION, and SCIENTIFIC<br>GAMES CORPORATION,<br><br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 04-138-JJF

*Confidential – Filed Under Seal*

# REDACTED

## PLAINTIFF GTECH CORPORATION'S
## ANSWERING CLAIM CONSTRUCTION BRIEF

Dated: October 28, 2005

Josy W. Ingersoll (#1088)
jingersoll@ycst.com
Andrew A. Lundgren (#4429)
alundgren@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19889
Telephone: (302) 571-6600

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200

Douglas E. Ringel
KENYON & KENYON
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200

*Attorneys for Plaintiff GTECH Corporation*

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................ 1

II.   DEFENDANTS' CLAIM CONSTRUCTIONS ARE CONTRARY TO
      CONTROLLING FEDERAL CIRCUIT CASE LAW .................................... 3

      A.    Limitations from the Specification May Not Be Imported into the Claims .......... 3

      B.    Extrinsic Evidence May Not Be Used to Vary or Contradict the Claim
            Construction Established by the Intrinsic Record ................................................. 6

III.  DEFENDANTS' PROPOSED CONSTRUCTION OF THE ASSERTED
      CLAIMS  SHOULD BE REJECTED ............................................................ 8

      A.    '624 Patent -- Claim 18 ........................................................................................ 8

            1.    "Display Means" and "Video Display Means" ........................................ 8

                  a.    The display means elements are not governed by § 112, ¶ 6 ......... 8

                  b.    Even if the "display means" were governed by § 112, ¶ 6,
                        the "video screen" is the proper corresponding structure ............ 10

                  c.    "Arrays," "Lottery ticket representations," and "Ticket
                        images" are not means-plus-function terms ................................. 11

                  d.    Defendants improperly limit the "arrays," "ticket images"
                        and "lottery ticket representations" of claim 18 to the
                        example, preferred embodiment in the specification .................. 12

            2.    "Means for dispensing" ........................................................................ 20

                  a.    Defendants ignore corresponding structure – the gravity
                        chute ........................................................................................... 21

                  b.    The "means for dispensing" does not include the function
                        of separating or separating structure ........................................... 21

      B.    The '337 Patent – Claims 20 and 21 ................................................................. 26

            1.    "Housing Means For Storing A Strip Of Tickets To Be Dispensed" ...... 26

                  a.    Claim 20's Housing Means is Not Subject to §112, ¶ 6
                        Because "Housing" is Sufficient Structure To Perform The
                        Recited Function ........................................................................ 26

            2.    "Means For Separating Each of Said Tickets From Said Strip" ............. 32

            3.    "Means for Ordering" and "Dispensing Means" of Claim 20 ................. 39

IV.   CONCLUSION ............................................................................................ 40

# TABLE OF AUTHORITIES

Page

**Cases**

*Acromed Corp. v. Sofamor Danek Group, Inc.,*
253 F.3d 1371, 1382-3 (Fed. Cir. 2001) .................................................................... 35, 36

*Allen Eng'g Corp. v. Bartell Indus., Inc.,*
299 F.3d 1336 (Fed. Cir. 2002).................................................................................... 29

*Allen Engineering Corp. v. Bartell Indus.,*
299 F.3d 1336, 1343, 1348 (Fed. Cir. 2002).................................................................... 10

*Alloc, Inc. v. International Trade Com'n,*
342 F.3d 1361, 1370 (Fed. Cir. 2003)............................................................................ 12

*Asyst Technologies, Inc. v. Empak, Inc.,*
268 F.3d 1364, 1371 (Fed. Cir. 2001)......................................................................... 22, 37

*Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,*
296 F.3d 1106, 1113 (Fed. Cir. 2002)............................................................................ 11

*Caterpillar, Inc. v. Deere & Co.,*
224 F.3d 1374, 1380 (Fed. Cir. 2000)............................................................................ 33

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,*
145 F.3d 1303, 1308-09 (Fed. Cir. 1998) ....................................................................... 27

*D.M.I., Inc. v. Deere & Co.,*
755 F.2d 1570, 1574 (Fed. Cir. 1985)............................................................................. 5

*Envirco Corp. v. Clestra Cleanroom,*
209 F.3d 1360, 1365 (Fed. Cir. 2000)...................................................................... 8, 29, 30

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
93 F.3d 1572 (Fed. Cir. 1996)..................................................................................... 17

*IMS Technology, Inc. v. Haas Automation, Inc.,*
206 F.3d 1422, 1432 (Fed. Cir. 2000)............................................................................. 5

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,*
381 F.3d 1111, 1115 (Fed. Cir. 2004)............................................................................. 4

*JVW Enterprises, Inc. v. Interact Accessories, Inc.,*
2005 U.S. App. LEXIS 21426 .................................................................................. 5, 13

*Laitram Corp. v. Rexnord, Inc*, 939 F.2d 1533 (Fed. Cir. 1991) ............................................ 28, 29

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967, 980 (Fed. Cir. 1995) .................................................................................. 4

*McGinley v. Franklin Sports, Inc.,*
    262 F.3d 1339 (Fed. Cir. 2001) ..................................................................................... 39

*Med. Instrumentation and Diagnostics Corp. v. Elekta AB,*
    344 F.3d 1205 (Fed. Cir. 2003) ..................................................................................... 23

*Northrop Grumman Corp. v. Intel Corp.,*
    325 F.3d 1346, 1352 (Fed. Cir. 2003) .............................................................. 8, 16, 23, 32

*Oakley, Inc. v. Sunglass Hut Intern.,*
    316 F.3d 1331, 1342 n.2 (Fed. C Cir. 2003) .................................................................... 7

*Odetics, Inc. v. Storage Technology Corp.,*
    185 F.3d 1259, 1268 (Fed. Cir. 1999) ........................................................................... 27

*Omega Eng'g, Inc. v. Raytek Corp.,*
    334 F.3d 1314 (Fed. Cir. 2003); ......................................................................... 8, 23, 34

*Orthotics, Inc. v. Med. Tech., Inc.,*
    263 F.3d 1356, 1364-65 (Fed. Cir. 2001) ................................................................. 5, 22

*Personalized Media Communications, LLC v. ITC,*
    161 F.3d 696, 703-04 (Fed. Cir. 1998) ............................................................... 11, 29, 30

*Phillips v. AWH Corp.,*
    415 F.3d 1303, 1323 (Fed. Cir. 2005) ..................................................................... passim

*Rodime PLC v. Seagate Tech., Inc.,*
    174 F.2d 1294, 1303 (Fed. Cir. 1999) ..................................................................... passim

*SRI Int'l v. Matsushita Elec. Corp. of Am.,*
    775 F.2d 1107, 1121 (Fed. Cir. 1985) ............................................................................ 4

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE,*
    264 F.3d 1111 (Fed. Cir. 2001) ..................................................................................... 28

*Unidynamics v. Automatic Prods. Int'l, Ltd,*
    157 F.3d 1311 (Fed. Cir. 1998) ................................................................................ 28, 29

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576, 1582 (Fed. Cir. 1996) .............................................................................. 4

**Statutes**

35 U.S. C. § 112, ¶ 6 ........................................................................................................... passim

Plaintiff GTECH Corporation ("GTECH" or "Plaintiff") hereby submits this answering brief in response to *Scientific Games' Opening Claim Construction Brief* [D.I. 110] addressing Defendants' proposed claim constructions of certain terms of the asserted claims of the patents-in-suit, U.S. Patent Nos. 5,222,624 (the "'624 patent"), and 4,982,337 (the "'337 patent").

## I.    INTRODUCTION

Defendants' proposed claim constructions have two consistent themes, both contrary to well-established Federal Circuit law. First, they improperly limit the disputed terms of the '624 and '337 patents to the *example* embodiments shown in the specifications. Second, Defendants seek to vary what the intrinsic record establishes by resorting to improper extrinsic evidence.

Defendants include in their opening brief a discussion of their accused PlayCentral instant ticket vending machine. This discussion highlights that Defendants' proposed, overly restrictive constructions are simply an attempt to escape the asserted claims' embrace.

Defendants construe "arrays of ticket images" of claim 18 of the '624 patent to mean only strips of tickets (or exact replicas of tickets) from the same game that move. This improperly limits the claim to the preferred, example embodiment. Defendants propose this restrictive construction because Defendants' accused PlayCentral has a video touchscreen which displays a game selection screen showing "arrays of tickets images." The game selection screen identifies all the tickets for sale in the machine by displaying arrays ("groupings") of ticket images ("graphical representations of the tickets for sale").



**REDACTED**

[REDACTED BLACK BAR]

Defendants, however, relying heavily on extrinsic evidence, attempt to vary the ordinary definition of these terms as established by the intrinsic record, proposing that "arrays of ticket images" means only strips of tickets (or exact replicas of tickets) from the same game that move because the ticket images on the PlayCentral game selection screen are not necessarily from the same game, are not "exact" pictures or replicas of the tickets, and do not move. Defendants' construction is litigation-designed and is not supported by the intrinsic record.

Similarly, Defendants attempt to limit the asserted claims of the '337 patent to the preferred, example embodiment, to achieve the same goal. [REDACTED] However, Defendants improperly import an unrecited function, "dispensing," into the "housing means" and, along with it, additional structure related to an agent-operated machine that has opposed front and back surfaces, with a control panel mounted at the front and a dispensing outlet at the back. This construction is legally improper and designed to attempt to exclude the PlayCentral, which is a customer-operated machine, from being covered by the asserted '337 patent claims. [REDACTED] Defendants, however, seek a hypertechnical claim construction of the "means for separating" of claim 20 which limits the asserted claims to the specific details of the example preferred embodiment described in the '337 specification, even details that do not correspond to the function of this element, again, relying heavily on extrinsic evidence. This is improper under Federal Circuit law.

# REDACTED

2

The intrinsic record here determines what the claims mean. Extrinsic evidence cannot be used to vary what the intrinsic evidence establishes. Further, the accused product should not dictate the construction of the claims. Accordingly, Plaintiff's proposed claim constructions should be accepted, and Defendants' rejected.

## II. DEFENDANTS' CLAIM CONSTRUCTIONS ARE CONTRARY TO CONTROLLING FEDERAL CIRCUIT CASE LAW

### A. Limitations from the Specification May Not Be Imported into the Claims

The Federal Circuit recently confirmed in *Phillips v. AWH Corp.*:

> [A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. . . . *In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.* That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, *but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.*

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*) (citations omitted) (emphasis added).

Defendants' claim constructions in this case are premised on an incorrect reading of *Phillips* and other Federal Circuit case law. Defendants cite to cases stating that the specification is the "single best guide to the meaning of a disputed term" and that claim terms "must be read in view of the specification, of which they are a part." (*See* Defs. Brf.[1] at 11). However, these cases – including *Phillips* – do not hold that claims are limited to only the embodiments disclosed in the specification. Yet that is Defendants' argument here.

---

[1] "Defs. Brf. at ___" refers to *Scientific Games' Opening Claim Construction Brief* [D.I. 110].

The Federal Circuit has repeatedly stated, including in *Phillips*, that claims claim and the specification teaches.

> It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude. . . ." The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.

*Phillips*, 415 F.3d at 1313 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995)(citing *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Further,

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as the specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment. Nor would a basis remain for the statutory necessity that an applicant conclude his specification with claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. 35 U.S.C. § 112. It is the claims that measure the invention.

*SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (emphasis added).

These principles control in this case, and the presence of means-plus-function claim elements governed by 35 U.S.C. § 112, ¶ 6 ("§ 112, ¶ 6") does not alter them. While the specification determines the corresponding structure to the specifically recited function when § 112, ¶ 6 applies, that does not mean, as Defendants contend here, that the claim only covers the preferred, *example* embodiments described in the specification. The Federal Circuit has confirmed that means-plus-function elements are not so limited:

> To interpret "means plus function" limitations as limited to a
> particular means set forth in the specification would be to nullify
> the provision of § 112 requiring that the limitation shall be
> construed to cover the structure described in the specification and
> equivalents thereof. Patentees are required to disclose in the
> specification some enabling means for accomplishing the function
> set forth in the "means plus function" limitation. At the same time,
> there is and can be no requirement that applicants describe or
> predict every possible means of accomplishing that function. The
> statute, §112-6, was written precisely to avoid a holding that a
> means-plus-function limitation must be read as covering only the
> means disclosed in the specification.

*D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed. Cir. 1985).

Further, additional functions not specifically recited may not be imported into the claim.

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 2005 U.S. App. LEXIS 21426 at * 16 (Fed.

Cir. Oct. 3, 2005) (Ex. L to Plaintiff's Opening Brief[2])("A court may not construe a means-plus-

function limitation 'by adopting a function different from that explicitly recited in the claim.'");

*see also Generation II Orthotics, Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1364-65 (Fed. Cir.

2001).

Certain terms in means-plus-function elements are not governed by § 112, ¶ 6 because

they are not the means – they are the function. *IMS Technology, Inc. v. Haas Automation, Inc.*,

206 F.3d 1422, 1432 (Fed. Cir. 2000); *see also JVW Enterprises*, 2005 U.S. App. LEXIS 21426

at *26-27; *Phillips*, 415 F.3d at 1323.

Defendants' claim construction arguments tacitly acknowledge that the intrinsic record

does not limit the asserted claims in the manner Defendants suggest. Tellingly, nowhere do

Defendants point to any definition in the intrinsic record as a basis for the constructions they

propose. Instead, the intrinsic record supports Plaintiff's proposed constructions, which interpret

the claim terms consistently with their ordinary and customary meanings. In contrast,

---

[2]    Plaintiff's Opening Brief and exhibits thereto are filed with the Court at D.I. 112.

Defendants attempt to support their constructions with improper extrinsic evidence, which, even if relevant, would not support Defendants' proposed constructions.

### B. Extrinsic Evidence May Not Be Used to Vary or Contradict the Claim Construction Established by the Intrinsic Record

Claim construction begins with the intrinsic evidence -- the patent itself, including the claims, the specification and the prosecution history. *Vitronics*, 90 F.3d at 1582 (citing *Markman*, 52 F.3d at 979). The claims themselves, both asserted and nonasserted, are considered first. *Id* (citation omitted). The words of a claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1313 (citations omitted).[3]

The claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 978-79). This does not, however, mean, as discussed above, that the specification is to be used to limit the claims. The prosecution history of the patent is also part of the intrinsic record and should be consulted, but is of lesser importance and usefulness than the claims and specification. *Phillips*, 415 F.3d at 1317.

Extrinsic evidence is all evidence external to the public record concerning the patent, such as expert testimony and inventor testimony. *Vitronics*, 90 F.3d at 1584; *Phillips*, 415 F.3d at 1317. Extrinsic evidence should only be relied on to construe a claim term when that term is left ambiguous after the intrinsic evidence has been consulted. *Id.* Extrinsic evidence "may not be used to vary or contradict the claim language." *Id.; see also Phillips*, 415 F.3d at 1318-19.

Defendants ignore these fundamental tenets of claim construction, relying heavily on extrinsic evidence in an attempt to vary or contradict the claim language. Indeed, Defendants' opening brief is rife with citations to and quotations of extrinsic sources such as deposition

---

[3] "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *See Phillips*, 415 F.3d at 1314.

testimony from experts, inventors and non-inventors,[4] later-issued patents to non-inventors, prosecution histories of these non-inventor later-issued patents, including declarations (from non-inventors) and other submissions made during these unrelated prosecutions. Tellingly, Defendants have not established, or even advocated, that any claim term or element at issue is ambiguous and requires resort to extrinsic sources. Extrinsic evidence such as this is generally considered less reliable and thus of little use because "it does not have the specification's virtue of being created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning," and may suffer from bias that is not present in intrinsic evidence. *Phillips*, 415 F.3d at 1318; *see also Markman*, 52 F.3d at 985 (concluding that litigation derived testimony is entitled to little, if any, probative value in the context of claim construction); *Vitronics*, 90 F.3d at 1584; *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331, 1342 n.2 (Fed. Cir. 2003). Most importantly, "undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Phillips*, 415 F.3d at 1318-19.

In contrast, Plaintiff does not rely on any extrinsic sources, with the exception of some dictionary definitions which may always be consulted. As the Federal Circuit confirmed in *Phillips*:

> [J]udges are free to consult dictionaries . . . "at any time in order
> to better understand the underlying technology and may also rely
> on dictionary definitions when construing claim terms, so long as
> the dictionary definition does not contradict any definition found in
> or ascertained by a reading of the patent documents.

---

[4] "Non-inventors" as used here refers to individuals other than the named inventors of the '624 and '337 patents.

415 F.3d at 1322-23.  Notably, the dictionary definitions Plaintiff cites *confirm* the ordinary

meaning of the claim terms as evidenced by the intrinsic record, rather than contradict it.  Thus,

Plaintiff conducts a proper claim construction analysis that consults the right sources in the right

order and does not consult the wrong sources – Defendants' extrinsic evidence.

## III.    DEFENDANTS' PROPOSED CONSTRUCTION OF THE ASSERTED CLAIMS SHOULD BE REJECTED

### A.    '624 Patent -- Claim 18

Defendants have disputed Plaintiff's construction of only three elements of claim 18 of

the '624 patent: the "display means," "video display means," and "means for dispensing."

Defendants' proposed claim construction of these elements, and of certain terms used in them –

"plurality," "arrays," "lottery ticket representations," and "ticket images" – are based on the

incorrect legal premise, discussed above, that these elements and terms are limited to the

specifics of the example, preferred embodiments in the specification.

#### 1.    "Display Means" and "Video Display Means"

##### a.    The display means elements are not governed by § 112, ¶ 6

Sufficient structure, a video screen, is recited in claim 18 to perform the recited function

of "displaying" arrays of ticket representations or ticket images.  This recital of structure in the

claim itself removes the "display means" and "video display means" elements from the ambit of

§ 112, ¶ 6. *See Envirco Corp. v. Clestra Cleanroom*, 209 F.3d 1360, 1365 (Fed. Cir. 2000).

Since corresponding structure is linked to the function recited, construing the function

correctly is crucial.  Only structure that is necessary to perform the recited function is included.

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003) (citing *Northrop

Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1352 (Fed. Cir. 2003)).  Thus, if the function is

wrong, the structure will be as well.

> When construing the functional statement in a means-plus-function
> limitation, we must take great care not to impermissibly limit the
> function by adopting a function different from that explicitly
> recited in the claim.

*Generation II Orthotics*, 263 F.3d at 1364-65 (citation omitted); *see also JVW Enterprises*, 2005

U.S. App. LEXIS 21426 at * 16; *Rodime PLC v. Seagate Tech., Inc.,* 174 F.2d 1294, 1303 (Fed.

Cir. 1999).

Here, Defendants incorrectly construe the function of the "display means" elements to be

"*causing to be* displayed a plurality of arrays of ticket images on a video screen." (*See* Defs. Brf.

at 28). That is not, however, the recited function. The recited function is "*displaying* a plurality

of arrays of ticket images," not *causing* those images to be displayed. Claim 18 also says

expressly that that displaying is done "on a video screen." Thus, the structure (the video screen)

which corresponds to the function of displaying is provided in the claim.

Because Defendants misidentify the function, they also misidentify the corresponding

structure as a CPU. (*See* Defs. Brf. at 28) While a CPU may "cause" ticket images to be

displayed, the CPU does not "display." It is the video screen that performs that function; the

video screen is the "means *for displaying a plurality of arrays of lottery tickets.*" The '624

patent specification explicitly confirms this:

> Instead of the four windows in the unit 10, *a video display screen*
> 218 is provided *for displaying a plurality of arrays of lottery*
> *tickets.*

(*See. e.g.,* '624 patent, col. 10:12-14; *see also* col. 11:15-25 ("… it may be desired to use the

video screen *to display* the ticket images …") (emphasis added)).

Defendants argue that the video screen cannot be corresponding structure because the

claim would then read "[a video screen] for displaying a plurality of arrays of ticket images on a

video screen." (*See* Defs. Brf. at 27-8). This artificial rewriting of the claim has no support in

9

Federal Circuit law. For example, the Federal Circuit considered whether "gearbox means for rotating said blade means, said gearbox means comprising a pair of rotatable shafts ..." was a means-plus-function element governed by § 112, ¶ 6 in light of the structure, "rotatable shafts," specified in the claim itself. *See Allen Engineering Corp. v. Bartell Indus.*, 299 F.3d 1336, 1343, 1348 (Fed. Cir. 2002). The Court concluded that "rotatable shafts" was the "means" described in the specification for performing the recited function. *Id.* Using Defendants' argument in this case, the "rotatable shafts" could not be the "means" because the clause would then read: "rotatable shafts for rotating said blade means, said rotatable shafts comprising a pair of rotatable shafts," an awkward and nonsensical construction. The fact that the Federal Circuit found the "rotatable shafts" to be the "means" in *Allen* demonstrates that Defendants' argument is without merit. *Id.* at 1348.

Defendants also contend that "mere recitation of structure . . . does not prevent the application of § 112, ¶ 6." (*See* Defs. Brf. at 13). However, recitation of *sufficient* structure to perform the claimed function does. *See, e.g., Rodime*, 174 F.2d at 1304. Not every detail of structure disclosed in the specification for performing the claimed function must be recited in the claim itself to avoid application of § 112, ¶ 6. *Id.* Here, sufficient structure for performing the *recited* function of "displaying" is included in the claim – the video screen.

> **b.** **Even if the "display means" were governed by § 112, ¶ 6, the "video screen" is the proper corresponding structure**

Even assuming Defendants' (improper) construction of the "display means" as a means-plus-function element were correct, as discussed above, the recited function in the claim is "displaying," not "causing to be displayed." The specification explicitly indicates that the video screen is what displays the plurality of arrays of ticket images. A CPU, the structure Defendants incorrectly identify, does not display anything. Thus, even if the "video display means" is

10

interpreted as a means-plus-function element, it covers a video screen and equivalents thereof, as the '624 patent specification explicitly confirms. (*See, e.g.,* '624 patent, col. 10:12-14 ("Instead of the four windows in the unit 10, *a video display screen* 218 is provided *for displaying a plurality of arrays of lottery tickets*."); *see also* '624 patent, col. 11:15-25 ("... it may be desired to use the video screen *to display* the ticket images ...")).

       **c.**     **"Arrays," "Lottery ticket representations," and "Ticket images" are not means-plus-function terms**

     Regardless of whether the display means are construed as means-plus-function elements, the terms "arrays," "lottery ticket representations," and "ticket images" which are used in the function of the display means elements are not means-plus-function terms. Accordingly, they are not limited by the structure disclosed in the specification (and equivalents thereof).

     None of these terms use the word "means." Thus, the presumption is that they are not means-plus-function and are not controlled by corresponding structure disclosed in the specification and equivalents thereof. *Phillips*, 415 F.3d at 1311 (citing *Personalized Media Communications, LLC v. ITC*, 161 F.3d 696, 703-04 (Fed. Cir. 1998). Further, even if the "display means" elements were considered means-plus-function, section 112, ¶ 6 applies only to interpreting the means for performing the recited function, not the function itself. *IMS Technology*, 206 F.3d at 1432 (holding that "data block inquiries" in "means to sequentially display data block inquiries" was not subject to construction under § 112, ¶ 6 because a "data block" is not the means for performing the recited function of sequential display); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002) ("ordinary principles of claim construction govern interpretation of the claim language used to describe the function.") (citation omitted). As discussed above, the "display means" elements recite a "means *for displaying*" (emphasis added). The arrays and tickets images are not the means for

performing the "displaying" function. Rather they are part of the function itself; they are what is *being displayed*. Thus, their interpretation is not subject to § 112, ¶ 6 (even if the "display means" were) and standard non-§112, ¶6 claim construction rules apply. *Id.*

> **d.**   **Defendants improperly limit the "arrays," "ticket images" and "lottery ticket representations" of claim 18 to the example, preferred embodiment in the specification**

Defendants limit "arrays," "ticket images," and "lottery ticket representations" to the example preferred embodiments in the specification, in contravention of Federal Circuit law. Defendants assert that an "array" means a strip of tickets from the same game that moves. (*See* Defs. Brf. at 2). Defendants contend that a "plurality" of arrays, then, means more than one strip of tickets from the same game that moves. (*Id.* at 33). Defendants say "lottery ticket representations" and "ticket images" mean the same thing and are defined as "graphical representations of *actual* tickets to be dispensed by the machine," arguing the ticket images and representations must be exact replicas or complete pictures of the tickets sold in the machine. (*Id.* at 33-34). There is simply no support in the intrinsic record for such restricted definitions. None of these terms, as discussed in more detail below, is defined in the specification in the way Defendants define them. In fact, what the intrinsic record indicates is that these terms have their ordinary and customary meanings.

Defendants' basis for its constructions of these terms is the preferred embodiments which utilize strips of moving tickets from the same game behind windows or simulated on a video screen. But embodiments are *examples*. They do not define these terms or limit them. Even the very cases Defendants' cite confirm this. *See, e.g., Alloc, Inc. v. International Trade Com'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) ("[I]t is impermissible to read the one and only disclosed embodiment into a claim without other indicia that the patentee so intended to limit the invention.") (citations omitted). The Federal Circuit recently re-emphasized its prohibition on

importing limitations from the specification into the claims and limiting claims to preferred

example embodiments:

> We do not import limitations into claims from examples or
> embodiments appearing only in a patent's written description, *even*
> *when a specification describes very specific embodiments of the*
> *invention or even describes only a single embodiment,* unless the
> specification makes it clear that "the patentee . . . intends for the
> claims and the embodiments in the specification to be strictly
> coextensive."

*JVW Enterprises*, 2005 U.S. App. LEXIS 21426 at *26-27 (quoting *Phillips*, 415 F.3d at 1323).

(i)     **"Plurality of arrays" is not limited to more than one**
**array where each array is a different game for sale from**
**the machine**

"Plurality" means more than one or containing more than one. (*See* Ex. K, Webster's

Ninth New Collegiate Dictionary at 906 (1986) ("Plurality: 1a: the state of being plural"; "Plural:

2: relating to or consisting of or containing more than one). Defendants agree that "plurality"

means more than one, (*see* Defs. Brf. at 33), but attempt to further limit the "more than one" to

the number of games depicted on the screen and available for purchase from the machine (*see*

*id.*; *see also* Ex. G to Plaintiff's Opening Brief, Myers Opening Report at ¶ 20; Ex. H to

Plaintiff's Opening Brief, Myers Rebuttal Report at ¶ 23). In other words, Defendants contend

that "more than one" means there must be one array for each game for sale from the machine.

There is no basis for such a construction in the intrinsic record. Nowhere is "plurality" given this

specialized meaning. Rather, Defendants focus on the preferred embodiment and attempt to

improperly import the specifics of it into the claim.

(ii)    **Defendants improperly redefine "arrays" to mean strips**
**of tickets from the same game that move**

Defendants' redefinition of the term "array" also violates the Federal Circuit's

prohibition on importing limitations from the specification into the claims. Nowhere does the

13

intrinsic record provide a definition of "array" that deviates from its ordinary and customary meaning, which would be understood by one of ordinary skill in the art to mean a grouping, arrangement, or ordering of two or more things. (*See* Ex. K to Plaintiff's Opening Brief, Webster's Ninth New Collegiate Dictionary at 104 (1986) ("a regular and imposing grouping or arrangement: ORDER")). Both rows and columns are arrays.

The specification of the '624 patent shows examples of such orderings and groupings of two or more tickets. (*See, e.g.,* '624 patent, col. 11:1-4 ("Although only 2 tickets are shown in each of the arrays A, B, C, D, E and F, it should be understood that each array can be made to contain more tickets, if it is desired to do so."), Figs. 8 and 10 ("218" and "[A]"-"[F]"). Nowhere, though, does the intrinsic record indicate that the word "array" is *defined as* moving strips of tickets from the same game. In fact, to the contrary, the intrinsic record, specifically other claims of the '624 patent and the patent specification, establish that "array" was used as a broader term which may *include* strips of tickets from the same game that move, but is not defined as that or limited to that. Claims 13, 21, and 23 of the '624 patent recite an "array of tickets" with the "tickets being formed in a continuous strip," while claim 18 has no such limitation. If "array" were defined as a strip of tickets from the same game, language in these other '624 patent claims specifying that the array contained "tickets being formed in a continuous strip" would be redundant. *See Phillips,* 415 F.3d at 1315-16 ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.") (internal citations omitted). Similarly, the '624 patent's abstract refers to "*moveable* arrays." Further, if "arrays" included motion by definition, the inventor would not have specified that the arrays *could* move. (*See also* '624 patent, col. 10: 65-6)(". . . each of the arrays of ticket images

**REDACTED**

. . . *can be* made to move . . .")(emphasis added).   Moreover, claim 19, which depends from

asserted claim 18, adds the limitation of motion to those already in claim 18, thereby

presumptively establishing that the arrays of claim 18 are broader.  *See Phillips*, 415 F.3d at

1315-16 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a

presumption that the limitation in question is not present in the independent claim.") (internal

citations omitted); *see also* at 1324 ("The inclusion of [a] limitation in the term "baffles" in

[dependent] claim 2  makes it likely that the patentee did not contemplate that the term "baffle"

already contained that limitation.") (citation omitted).  Claims 13, 21, 23, and 24 also expressly

recite motion, again confirming that the word "arrays" by itself does not include by definition

motion.

   Defendants improperly rely on extrinsic evidence, ███████████████████

██████████ to purportedly support their construction that "array" is limited to a strip of tickets

from the same game that move.  This extrinsic evidence should not be used to vary or contradict

what the intrinsic record, as discussed above, clearly indicates.  *Vitronics*, 90 F.3d at 1584; *see*

*also Phillips*, 415 F.3d at 1318-19.



## REDACTED



Defendants also base their construction of "arrays" on the incorrect assertion that "movement of the tickets as they are dispensed is the key to the invention," (*see* Defs. Brf. at 30).



That embodiment, as discussed above, is an example and does not limit the claims. The Federal Circuit has confirmed that inventor statements, including in the "background" and "objects" of the invention, as well as in the description of the advantageous features of the preferred embodiment, are not limiting on the scope of the invention. *Northrop Grumman*, 325 F.3d at 1355. Absent a clear disclaimer, which is not present here, this is so even if the inventor anticipated that the invention would be used in a particular way, such as consistent with the preferred embodiment. *Id.*

Defendants also mischaracterize arguments and a declaration Mr. Burr submitted to the Patent Office during prosecution of the '624 patent as "distinguishing his invention by emphasizing the importance of having the tickets move past the window as they are dispensed."

---

<sup>5</sup> 

16                    **REDACTED**

(*See* Defs. Brf. at 8-9). Defendants cryptically refer to these arguments and this declaration as having been submitted in response to the rejection of "*certain* claims of the application". (*Id.* at 8) (emphasis added). The claims being discussed, though, *were not claim 18*. Claim 18 (original claim 38) was allowed in substance on the very first office action, before any of these arguments or submissions were made. (*See* Ex. C to Plaintiff's Opening Brief, '624 file wrapper, app. 312,111 2/11/91 Office Action at 5; 6/5/91 Amendment at 12; 10/11/91 Office Action). Unlike claim 18, the claims that were discussed in the amendment and declaration were all claims which specifically recited movement as a limitation. (*See, e.g.*, Ex. C to Plaintiff's Opening Brief, '624 file wrapper, app. 312,111 filed Feb. 17, 1989 at 26, 28, 35). Original claim 1 recited a "moving means for moving an array of tickets past said window," original claim 16 recited "a powered drive means for moving an array of tickets past a viewing window," and original claim 46 recited "causing the selected array to move to indicate the dispensing of tickets therefrom." Thus, the statements cited by Defendants do not establish that claim 18's arrays must be movable. If anything, the claims being discussed in the amendment and declaration show that movement of tickets is *not* part of claim 18, because when moving tickets were intended to be part of other claims they were expressly recited.

(iii)    **"Lottery ticket representations" and "ticket images"<br>are not synonymous**

Defendants state that "lottery ticket representations" and "ticket images" mean the same thing – "graphical representations of actual tickets to be dispensed by the vending machine." (*See* Defs. Brf. at 33). However, the specification of the patent and Federal Circuit law belie this conclusion. Two different terms used in the same claim are presumed to mean different things. *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (one would expect claims to refer to an element with one term, not two synonymous terms). The very

17

sections of the specification that Defendants cite (*see* Defs. Brf. at 33), purportedly in support of their definition, actually confirm that the terms are not synonymous. The specification states:

> The above description of the invention is intended to be illustrative and not limiting. Various changes or modifications in the embodiments described may occur to those skilled in the art and these can be made without departing from the spirit and scope of the invention. *For example*, either the ticket itself or a video *image* of a ticket should be considered to be a *"representation"* of the ticket. *Means other than the specific ones described above can be used* to create *representations* of tickets without departing from the invention.

(*See* '624 patent, col. 11: 26-35)(emphasis added). Thus, the specification teaches that "lottery ticket representations" include many things, two *examples* of which are "ticket images" and a physical ticket, making "lottery ticket representations" a broader term that encompasses "ticket images."

"Lottery ticket representations" is defined in the specification in accordance with its ordinary and customary meaning: it is a visual representation of the lottery tickets available for sale from the machine which communicates to the customer what tickets are sold inside the machine. (*See* '624 patent, col. 1:23-34 (the machine "is improved in its ability to communicate to the customer the tickets available"); 36-38 ("a representation of the tickets is displayed ... so that customers can see what they are buying"); 64-66; col. 2:1-5; col. 11:30-35).

"Ticket images" also visually represent the tickets for sale in the machine, but they do so *graphically*.

> A video memory 230 is provided to store *graphical representations* of the lottery tickets . . . *These ticket images* are digitized by conventional graphic digitizing means, and the digital signals are stored in the video memory 230 periodically as the games and the lottery tickets are changed."

(*See, e.g.,* '624 patent, col. 10:45-51 (emphasis added); *see also* col. 1:64-66 ("In another embodiment of the vending machine, *graphic* representations of the lottery tickets are displayed on a video screen, rather than through windows.") (emphasis added)).

(iv)    **"Ticket images" are not limited to exact or complete pictures of the actual tickets for sale**

Defendants assert that "ticket images" must be exact or complete pictures of the actual tickets in the machine. To Defendants, a close association or "visual correspondence," even using graphical elements, is not sufficient to make something a ticket image.



Accordingly, Defendants advance the construction that "ticket images" mean "graphical representations of *actual* lottery tickets," intending that only exact replicas or complete pictures of the tickets are encompassed by the term. (*See* Defs. Brf. at 34) (emphasis added).

Defendants' argument is a legally impermissible attempt to limit the term "ticket image" to the preferred, example embodiment. Defendants argue this strained construction because there is no dispute regarding what its accused PlayCentral machine looks like or that the so-called "icons" shown on the accused PlayCentral's game selection screen are "graphical representations of tickets for sale in the machine," i.e. "ticket images" under Plaintiff's definition. The "icons" *visually represent* the tickets for sale in the machine, and the "icons" use *graphical* elements taken directly from the ticket artwork used to print the physical tickets dispensed by the machine to create those representations.

**REDACTED**

19

Further, there is simply no support for reading into the "graphical representation" definition of the term "ticket image" the word "exact." Nowhere is the term "ticket image" defined in the intrinsic record as an "*exact* graphical representation" or as an image identical to the physical ticket. Moreover, the specification teaches the opposite, that an exact or complete image is *not* required since in the windows embodiment, not all the details of the actual physical ticket sold by the machine need be shown. ('624 patent, col. 3:17-20 ("each of the four windows shows *most* of the front faces of three lottery tickets" (i.e. part of the ticket could be truncated outside the window), and Fig. 2) (emphasis added).

### 2.    "Means for dispensing"

Defendants agree that the function for the "means for dispensing" is to "dispense said tickets [i.e. the tickets for sale in the machine] in a number corresponding to the amount of money input into said machine by said customer." (*See* Defs. Brf. at 35). Defendants also agree that the specification of the '624 patent discloses corresponding structure for that function: an outlet opening in the housing for tickets to exit, outfeed rollers to issue the tickets through the opening, a receptacle to receive the tickets that fall through the outlet opening, and a keypad for entering the number of tickets to be dispensed, up to the amount of credit a player has in the machine. (*See* Defs. Brf. at 38-39; *see also* '624 patent, col. 2:63-68 ("ticket dispensing outlet"); Fig. 1 at ticket dispensing outlets 44, 46, 48, 50 and curved fingers 64; col. 4:64 – 5:13 and Fig. 5 at metal guides 136 and 138 which form outlet opening 139 through which outfeed rollers 158 feed and issue the ticket into the receptacle formed by 140 and upturned fingers 64; col. 3:55-59; col. 10:15-18; Figs. 8-10 (showing outlets 220 and 222; col. 3: 25-59); Figs. 3 and 8 (showing "keypad 28"), col. 6: 18-28). Defendants, however, improperly omit certain corresponding structure and impermissibly import non-corresponding structure into this claim element.

### a. Defendants ignore corresponding structure – the gravity chute

Defendants omit the gravity chute clearly shown in Figure 5 of the '624 patent between the outfeed roller 158 and the receptacle from the structure corresponding to the recited dispensing function of this element. (*See* '624 patent, Fig 5 at 136, 138, 139, 140 (showing ticket fed through opening and dropping by gravity into receptacle)). The outfeed roller 158, which the parties agree is corresponding structure, does not get the ticket to the receptacle where the customer receives it alone; the ticket drops by gravity from the outfeed roller 158 through a chute formed by the metal guides 136 and 138 (*see* Fig. 5) and the outlet opening 139 into the receptacle. It is therefore improper to exclude such specifically identified structure. Defendants have no doubt excluded this by design since their accused PlayCentral dispenses its tickets through a gravity chute into a receptacle.

### b. The "means for dispensing" does not include the function of separating or separating structure

Defendants improperly include feeding and bursting mechanism 112 of the '337 patent and drive roller 166 (which Defendant improperly calls an "outfeed roller") (*see* Defs. Brf. at 39) in the corresponding structure of this claim element. The drive roller 166 is part of the feeding and bursting mechanism 112, both of which have nothing to do with the recited dispensing function. (*See* '624 patent, col. 56-59 ("Each feeding and bursting mechanism 112 includes four drive rollers 154, 158, 162, and 166 . . . ")).

### (i) Defendants' incorporation of the separating mechanism is contrary to case law

Defendants argue that the additional function of separating the tickets must be read into this element because the tickets could not be dispensed unless they were separated first. (*See* Defs. Brf. at 36). This position is legally and factually incorrect for several reasons.

Nowhere in claim 18 is the function of "separating" the lottery tickets recited. The only function recited is dispensing tickets in a number corresponding to the amount of money input into the machine by the customer. In a telling (albeit likely unintended) admission, Defendants rewrite the claim function from "dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer" to "dispensing tickets in a number corresponding to the amount of money input into said machine by the customer *to separate each ticket from a strip of tickets*." (*See* Defs. Brf. at 3, 38) (emphasis added).[6] The last clause (emphasized in the quote) is the addition Defendants make to the claim language and, notably, that additional language is nowhere in the claim. Defendants' attempt to import an unrecited function into this claim element is improper and impermissible. *JVW Enterprises*, 2005 U.S. App. LEXIS 21426 at * 16; *Generation II Orthotics, Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1364-65 (Fed. Cir. 2001).

Defendants' assertion that dispensing simply could not happen unless the feeding and bursting mechanism 112 separates the tickets first is misleading and irrelevant. Whether or not separation must take place in order to dispense is beside the point. "It is well established that 'it is not necessary to claim in a patent every device required to enable the invention to be used.'" *Asyst Technologies, Inc. v. Empak, Inc.*, 268 F.3d 1364, 1371 (Fed. Cir. 2001) (citations omitted). "Corresponding structure to a function set forth in a means-plus-function limitation must actually perform the recited function, not merely enable the pertinent structure to operate as intended. . .." *Id.* Since separating is not the recited function, structure pertaining to separation of the tickets, such as the feeding and bursting mechanism 112, is not corresponding structure that performs the recited dispensing function. The feeding and bursting mechanism does not

---

[6] Apparently recognizing this admission, Defendants today filed a correct brief with the Court deleting this phrase from Defendants' proposed function. [D.I. 114].

perform the dispensing function nor does the specification associate it with the dispensing function. It therefore has no part in the construction of this element. *See JVW Enterprises*, 2005 U.S. App. LEXIS 21426 at * 14, fn 1 ("the structure must not only perform the claimed function, but the specification must clearly associate the structure with performance of the function.")(citation omitted). *See also Northrop Grumman*, 325 F.3d at 1352; *Omega Eng'g*, , 334 F.3d at 1322; *Med. Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1219 (Fed. Cir. 2003).[7]

Further, it is clear that separation is not a prerequisite to dispensing in claim 18. Unlike some other claims of the '624 patent, claim 18 is not limited to fan-folded or connected tickets in a strip that must be separated. (*See* claims 13, 21 and 23). Nowhere in claim 18 is such a limitation recited. Claim 18 could therefore cover a machine that dispenses pre-separated tickets like pull-tab tickets.  In such a case, tickets are dispensed without separation at all. Thus, Defendants' factual premise that tickets "would not be dispensed at all" without the feeding and bursting mechanism is false.

# REDACTED



(ii)    The '624 intrinsic record makes clear that "dispensing" is an entirely different function from "separating" in claim 18 of the '624 patent.

The '624 patent specification indicates that separating and dispensing are two *different* functions. (*See* '624 patent, col. 1:15-18 (referring to bursting and dispensing as two different things: "[The lottery ticket vending machine] advantageously stores lottery tickets in fan-fold form, *bursts* them apart accurately and reliably, and *dispenses* the tickets one-by-one.") (emphasis added); col. 10:28-30 (". . . *separates* the proper number of tickets, *and dispenses* them through the outlet opening 220.") (emphasis added); col. 4:64 – 5:13 ("The severed [i.e. already separated] ticket 128 *is dispensed* past metal guides . . . ")(emphasis added)).

Other claims of the '624 patent also recite a "separator means for . . . separating said tickets" as a means that is distinct from the "dispensing means", (*see, e.g.,* claims 13, 21 and 23), further confirming that separating is different, and not part of, dispensing. *Phillips*, 415 F.3d at 1315-16 (differences between claims are "a useful guide in understanding the meaning of particular claim terms."). If "dispensing" included "separating," separating would not have been claimed separately from, and in addition to, dispensing in these other claims.

The prosecution history of the '624 patent confirms this as well. When the application that led to the '624 patent was filed, claim 18, at issue in this case, was originally a dependent claim (claim 38 in the original application) which depended from another base claim (claim 23 in the original application). (*See* Ex. C, '624 file wrapper, app. 312,111, at 2/17/89 Application at 30-33). Original claim 38 read: "A machine as in Claim 23 in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen." (*Id.*). Original base claim 23 did not recite the "video display means" found in claim 18, but otherwise was identical to claim 18, including in its recitation of "means for dispensing"

24

identical to the "means for dispensing" at issue here in claim 18. (*See* Ex. C to Plaintiff's Opening Brief, '624 file wrapper, app. 312,111, at 2/17/89 Application at 30-33).

A second dependent claim (original claim 26)[8] also depended from base claim 23. This second dependent claim recited "separator means for . . . *separating* said tickets from one another," which was not found in either the original base claim or in claim 18. (*See* Ex. C, '624 file wrapper, app. 312,111, at 2/17/89 Application at 30-33) (emphasis added). This separator means separated tickets from one another, which were then dispensed by the dispensing means. *Id.* This confirms that separating and dispensing are two different functions.[9]

The Federal Circuit recently confirmed in *Phillips* that the presence of a dependent claim (such as original claim 26 here) that adds a particular limitation (separating) to the independent claim (original claim 23), gives rise to a presumption that the limitation in question (separating) is not present in the independent claim (nor in claim 18). *Phillips*, 415 F.3d at 1315-16 (internal citations omitted). In other words, the doctrine of claim differentiation confirms that the function of "dispensing" of original claim 23, and the identical function of "dispensing" of claim 18, at issue in this case, is a function that does *not* include the distinct function of "separating."

> (iii) **Defendants' position is also inconsistent with their own arguments concerning the '337 patent**

Even the '337 patent, which describes the "feeding and bursting mechanism 112" of the '624 patent, indicates that dispensing is distinct from separating. (*See, e.g.*, claim 20 which claims a "means for separating each of said tickets from said strip" and "dispensing means for dispensing tickets through said outlet opening" as two different elements and functions). Notably, Defendants do not contend that the "means for separating" is part of the "dispensing

---

[8]  Original claim 26 depended from original claim 25 which depended from original claim 23. (*Id.*)

[9]  ████████████████████████████████████████████████████████████████████████

**REDACTED**

means" of '337 patent claim 20.   Defendants admit that the bursting mechanism of the '337

patent corresponds to the "means for separating" of that patent.  (*See* Defs. Brf. at 15; Ex. F to

Plaintiff's Opening Brief at 10).  Further, Defendants concede that structure corresponding to the

"dispensing means" of claim 20 are the "kick out" or "exit rollers," and do not contend that the

burster assembly of the "means for separating" must be included in this element.  The

inconsistency in Defendants' arguments is telling.

 Any attempted reliance by Defendants on Mr. Burr's (extrinsic) testimony to vary or

contradict the construction of the "means for dispensing" element as made clear in the intrinsic

record should be rejected.  As the Federal Circuit pointed out in *Markman*, the inventor is not as

reliable as the intrinsic record in construing patent claims because, while presumably the

inventor has reviewed and approved any changes concerning claim scope that were made during

prosecution, "it is not unusual for there to be a significant difference between what the inventor

thinks his patented invention is and what the ultimate scope of the claims is after allowance by

the PTO." *Markman*, 52 F.3d at 985.

 **B.** **The '337 Patent – Claims 20 and 21**

 Defendants dispute Plaintiff's proposed constructions of two limitations in claims 20 and

21 of the '337 patent  – the "housing means" and the "means for separating."

  **1.** **"Housing Means For Storing A Strip Of Tickets To Be Dispensed"**

   **a.** **Claim 20's Housing Means is Not Subject to §112, ¶ 6 Because "Housing" is Sufficient Structure To Perform The Recited Function**

 The "housing" recited in the "housing means" of claim 20 is sufficient structure to

perform the recited function of "storing a strip of tickets to be dispensed."  As discussed in

Plaintiff's opening brief, this removes the "housing means" from the ambit of § 112, ¶ 6

notwithstanding that the word "means" is used.

Defendants improperly recast the explicitly recited "storing" function by importing an entirely different function into this claim element – dispensing tickets. (*See* Defs. Brf. at 22, 25 ("The function . . . is to store a strip of tickets *so they can be* dispensed.")(emphasis added). *See JVW Enterprises*, 2005 U.S. App. LEXIS 21426 at * 16; *Generation II Orthotics*, 263 F.3d at 1364-65; *Rodime*, 174 F.3d at 1303. "Dispensing tickets," though, is not part of the function of the housing. In fact, a "dispensing means" is already expressly recited in claim 20 to perform the function of dispensing the tickets.

While the language of claim 20 does include the words "to be dispensed," this is an attribute of the ticket strip which is stored in the housing, not a function of the housing means. In other words, the housing *stores* the tickets which are later dispensed by the dispensing means recited in the claim.

Defendants are not only incorrect in identifying a function that does not exist in this element, Defendants are also incorrect in identifying the corresponding structure. Defendants assert that the structure requires opposed front and back surfaces with a control panel on the front and a dispensing outlet on the back. Since these structures are not recited in the claim, Defendants argue, sufficient structure is not recited to avoid the application of § 112, ¶ 6. In fact, the recited function is "storing tickets to be dispensed," and these additional structures do not perform the function of "storing tickets to be dispensed." Thus, these structures are irrelevant to this element and to the determination of whether § 112, ¶ 6 applies to it. *See Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1268 (Fed. Cir. 1999) (citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308-09 (Fed. Cir. 1998) ("structure 'unrelated to the recited function' disclosed in the patent is irrelevant to § 112, ¶ 6)).

The *Unidynamics* case relied on by Defendants is inapposite. *Unidynamics v. Automatic Prods. Int'l, Ltd*, 157 F.3d 1311 (Fed. Cir. 1998). In *Unidynamics*, the claim at issue recited a "spring means." *Id.* at 1318-1319. The specification *expressly* indicated that the recited claim term "spring means" was intended to have a different meaning than the term "spring," as a "spring" was one example within "spring means":

> The written description [states] that "[t]he spring 46 is an *example of spring means* tending to keep the door closed" '750 patent, col. 3, ll. 31-32.

*Id.* at 1319 (citation in original). In marked contrast, there is no such express recitation in the specification of the '337 patent that "housing means" is meant to embrace other structures besides a "housing." *See TurboCare Div. of Demag Delaval Turbomachinery Corp. v. GE*, 264 F.3d 1111 (Fed. Cir. 2001) (construing "compressed spring means biased against said ring segments to forcibly cause said segments to move to said large clearance position" as not a means-plus function element because the specification's structure for performing the recited function, a "compressed spring" was recited in the claim).

Further, the *Unidynamics* court based its conclusion on *Laitram Corp. v. Rexnord, Inc.*, as do Defendants, but that case is also distinguishable. *Unidynamics*, 157 F.3d at 1319 (citing *Laitram*, 939 F.2d 1533 (Fed. Cir. 1991)). In *Laitram*, the court held that a particular recitation of structure in a claim element did not take the element out of § 112, ¶ 6 because the structural description given in the claim language *only* related to what the claim element *did*, not what the claim element *was*. *Laitram*, 939 F.2d at 1536. The claim read:

> [1] a plurality of like modules, each of said modules including a first and second like pluralities of link ends of substantially identical width, each such end being formed to circumscribe a pivotal hole through said width;
> [2] *means for joining said pluralities [of link ends] to one another* so that the axes of said holes of said first plurality are

28

> arranged coaxially, the axes of said holes of said second plurality
> are arranged coaxially and the axes of respective holes of both
> pluralities of link ends are substantially parallel.

*Id.* at 1535 (emphasis added). The claim element at issue was the "means for joining." Structure

was recited in the "joining means," but that structure merely described what was joined (i.e. axes

of holes arranged coaxially), not the structure that did the joining. This is quite different from

the "housing means" here in claim 20 of the '337 patent, because the recited "housing" relates to

what the "housing means" *is* as opposed to what it does (which is store tickets).

"Housing" in claim 20 is, in and of itself, a structural term with an ordinary, well

accustomed meaning – a cabinet, case or enclosure. *See, e.g., Envirco*, 209 F.3d at 1365

(holding that the term "baffle" in "second baffle means" itself is a structural term, which rebuts

the presumption § 112, ¶6 applies); *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336,

1347 (Fed. Cir. 2002). "Housing" in claim 20 is unlike the terms in *Unidynamics* and *Laitram*,

but akin to the "baffles" in *Phillips* and the "detector" in *Personalized Media Communications v.*

*ITC*, 161 F.3d 696 (Fed. Cir. 1998). In *Phillips*, the Federal Circuit reversed the district court's

interpretation of "means disposed inside the shell for increasing its load bearing capacity

comprising internal steel baffles extending inwardly from the steel shell walls," as a means-plus-

function element because the claim specifically identifies structure, "internal steel baffles," in the

claim itself for performing the recited function of increasing the shell's load-bearing capacity.

415 F.3d at 1309, 1311. The Federal Circuit held those "baffles" were "not a purely functional

placeholder in which structure is filled in by the specification." *Id.* at 1311. In *Personalized*

*Media,* "detector" in "digital detector" was considered sufficient structure in and of itself to

avoid application of § 112, ¶ 6 because it had a well-known meaning to those of skill in the art

and notwithstanding that it did not necessarily connote a precise physical structure, as opposed to a variety of structures known as "detectors." *Id.* at 704-5.

Like in *Envirco*, *Phillips* and *Personalized Media*, the Court should find that the "housing means" is not within the ambit of § 112, ¶ 6.

> **(i)    Even if the housing means were construed under § 112, ¶ 6, the structure in the specification that performs the function is a box.**

Notably, the additional structures Defendants attempt to link with "storing the tickets to be dispensed" are incorrect even if the "housing means" were construed under § 112, ¶ 6. The specification makes clear that "a box-like module 14" stores the tickets. (*See, e.g.*, '337 patent, col. 3: 29-32). The specification also specifically recites that the unit described in the preferred embodiment "could be adapted as a player-activated terminal, for example, in an isolated area." (*See, e.g.*, '337 patent, col. 16:60-61). This expressly rebuts Defendants' contention that only an agent-operated structure can be the housing of the housing means.

Further, the opposed front and back surfaces with a control panel on the front and a dispensing outlet on the back do not perform the function of storing the tickets.[10] The Federal Circuit has confirmed that structure corresponding to a recited function in a means-plus-function element is limited to the actual structure in the specification necessary for performing that function, not other structures which enable or assist or perform related functions. *Asyst Technologies*, 268 F.3d at 1371. Further, even if the housing performed multiple functions, such as storing and dispensing, that does not mean that the claim must be read to cover all of those

---

[10]   Defendants cite to a discussion of the preferred embodiment which indicates that the front/back oriented housing arrangement allows for speeding up of the dispensing of tickets. (*See* Defs. Br. at 24). Insofar as Defendants attempt to rely on this statement to exclude a customer operated machine from the scope of the claims, that should be rejected. The reason why the transaction is expedited is because the tickets are dispensed directly out the dispensing outlet to the customer rather than to the retailer who must then hand the tickets to the customer. ('337 patent, col. 2:22-25). Tickets are dispensed directly to the customer in a fully customer operated machine as well.

30

functions. *See Rodime*, 174 F.3d at 1303 ("This passage . . . merely highlights the unremarkable fact that a particular means may perform more than one function. It does not follow, however, that the positioning means [claimed] necessarily performs both these functions.") (citations omitted); *see also Phillips*, 415 F.3d at 1327 ("[T]he fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives.") (citation omitted). The only corresponding structure in a means-plus-function element is that which is specifically linked to the recited function, not other functions that the structure may perform but which are not recited in the claim. *See JVW Enterprises*, 2005 U.S. App. LEXIS 21426 at * 16, *18; *Generation II Orthotics*, 263 F.3d at 1364-65.

Defendants place heavy reliance on improper extrinsic evidence in support of their construction of this element. For example, Defendants rely on inventor testimony of Mr. Burr, one of the inventors of the '337 patent, the prosecution history of the '624 patent which was later issued, not cited as prior art to the '337 patent, and is not in the same patent family as the '337 patent, and the prosecution history of an unrelated, later-issued patent of Plaintiff's expert, Mr. Perin (again not prior art to the '337 patent and not part of the '337 patent's prosecution history). These sources are all extrinsic to the '337 patent and should not be used to vary or contradict what the intrinsic record establishes.

Moreover, none of Defendants' extrinsic citations actually support their arguments anyway.

**REDACTED**

31



In another example of Defendants' "picking and choosing,"
notably, while Defendants reference the *Pollard* Court's prior claim construction of certain claims and elements of the '337 patent in an earlier litigation in connection with other claim elements, they tellingly fail to point out that the *Pollard* Court considered exactly the argument Defendants make here and expressly rejected it. (*See* Ex. N to Plaintiff's Opening Brief, *Pollard* Markman ruling at GTECH 33760-64). Defendants also notably fail to mention that the intrinsic record, including the '337 prosecution history, is devoid of any statement limiting the claims of the '337 patent to an agent-operated ticket vending machine and that the '337 patent specification confirms the opposite - that the unit described "could be adapted as a player-activated terminal, for example, in an isolated area." (*See, e.g.*, '337 patent, col. 16:60-61). Further, cites to discussion of "objects" and "advantageous features" and the preferred embodiment are not limiting on the claims. *Northrop Grumman*, 325 F.3d at 1355 (citations omitted).

### 2. "Means For Separating Each of Said Tickets From Said Strip"

The parties agree that the "means for separating" of claim 20 is a means-plus-function claim element and that its function is to separate each of the ordered tickets from the strip of tickets, i.e., to separate the leading ticket from the remaining tickets in the strip. However, the '337 patent expressly excludes cutting from the means for separating, which Defendants ignore. (*See, e.g.*, '337 patent at col. 9:62-10:8).

**REDACTED**

The parties also agree that the corresponding structure to perform the recited function is a separator member, holding means, and drive means that work in combination. (*See* '337 patent, col. 3:54-63; Defs. Brf. at 15;  . The *Pollard* Court considered this element and agreed that this was the corresponding structure. (*See* Ex. N to Plaintiff's Opening Brief, *Pollard* Markman ruling at GTECH 33745, 33776-77). The Court, here, need go no further.

Defendants, however, without any legal support, interpret the corresponding *structure* as means-plus-function elements themselves, and thereby attempt to import additional unnecessary details into the agreed-upon corresponding structure. This addition of extra details is designed to direct the ultimate infringement analysis to a component-by-component comparison that is legally improper. *Caterpillar, Inc. v. Deere & Co.,* 224 F.3d 1374, 1380 (Fed. Cir. 2000) (quoting *Odetics,* 185 F.3d at 1268). The '337 specification makes clear that the tickets are held against substantial deflection from the path at the bursting location through the "holding means" structure, the separator member is brought into bursting contact with the stream of tickets at the bursting location through the "drive means" structure, and the leading ticket is separated from the strip through the relative motion of the ticket strip and separator member, in combination with the holding means, when the separator member contacts the strip and separates it through pressure bursting, as opposed to cutting.

Defendants, recognizing this, advocate their hyper-technical construction that further limits the

**REDACTED**

corresponding structure by including additional unnecessary features. Defendants' attempt should be rejected.

Not every detail of the structure described in a preferred embodiment is corresponding structure for a recited function. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1322 (Fed. Cir. 2003. Further only structure necessary to perform the recited function is considered corresponding structure. *Id.* The only necessary structure is that which the *Pollard* Court has already found: a separator member, holding means and drive means.

### (i)    The "Separator Member" is a "Dull Edged Bursting Blade" and Equivalents

Defendants argue that the separator member corresponding structure is limited to "a burster wheel with a dull, rounded edge that is moveably mounted." The specification indicates, however, that such a burster wheel is just an example, preferred form of a "separator member." In fact, the specification indicates that the "separator member" is broader than that: it is simply a "dull edged bursting blade". (*See, e.g.*, '337 patent, col. 3:54-55 ("the separation means includes a dull edge bursting blade"). That blade can take many forms. A round, moveably mounted wheel is but one.

The separator member, though, is not a cutter. The '337 patent expressly disclaims separation through cutting:

> Simply to provide a knife edge or cutting blade to slice through the stream of tickets is disadvantageous, since such a knife edge may *cut* through the tickets at any point, such as in the middle of a ticket. . . . the present invention provides a novel separation mechanism which *bursts* the leading ticket from the next following ticket along the line of weakness therebetween, *instead of cutting* the two tickets apart.

(*See* '337 patent, col. 9:62-10:4) (emphasis added); *see also* '337 patent, col. 10:61-62 (". . . does not cut stream of tickets"). The prosecution history of the '337 patent confirms this as well.

Claims 20 and 21 (original claims 50 and 51) were added in an amendment during prosecution and were supported by the argument that cited prior art cut the tickets from the strip rather than bursting them. (*See* Ex. E to Plaintiff's Opening Brief, '337 prosecution history, app. 07/128,070 at 5/19/89 Amendment at 31-32). Claims 20 and 21 were allowed in the next office action. (*Id.* at 7/25/89 Office Action).

(ii)    <b>The "Holding Means" Does Not Include Additional<br>Functions such as "Tensioning the Ticket"</b>

Assuming the holding means is further interpreted under § 112, ¶ 6, the function for the holding means is to hold the stream of tickets against substantial deflection from the path at the bursting position. ('337 patent, col. 3:57-59). The specification says that this function is performed by a "holding means." (*Id.*) The '337 patent specification provides an example of a holding means structure that holds the ticket strip against substantial deflection from the path at the bursting position: rollers 60, 62, 64 and 66. Defendants, however, improperly attempt to import additional functions and features into the holding means structure by importing into the claim the language "which hold the strip of tickets in tension as the burster wheel is brought into contact with the tickets" and "one set [of rollers] on each side of the perforation to be separated." Neither of these features are *necessary* to perform the recited function. That an example holding means may perform additional functions such as "tensioning the ticket" does not make it proper to read that function in as an additional claim limitation. *See Rodime*, 174 F.3d at 1303-05; *JVW Enterprises*, 2005 U.S. App. LEXIS 21426 at* 16 (citation omitted).

Further, the particulars of the example, preferred holding means structure with two sets of rollers does not limit the claim to only that structure. *See Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1382-3 (Fed. Cir. 2001). It is not necessary to perform the "holding against substantial deflection . . ." function that there be two sets of rollers positioned one on

35

either side of the perforation. The preferred embodiment supports the more detailed holding

means element of claim 22 which recites a different function from claim 20: "holding said strip

*adjacent one line along which said strip is to be separated*" (claim 22) vs. "holding the stream

of tickets against substantial deflection from the path at the bursting position" (claim 20).[11]

However, the particular configuration and positioning of the rollers is not necessary for the

function of claim 20 which only requires that substantial deflection does not occur, not that the

holding occur at a particular location. It is therefore improper to limit this element to the

preferred embodiment in light of the indications in the specification itself that the structure could

be broader. *Acromed*, 253 F.3d at 1382-3.

(iii)    The "Drive Means" Does Not Include a Burster Block,<br>Cable Spool Arrangement, and Tensioning Spring.

Defendants agree that the function of the "drive means" structure, assuming it is further

interpreted under § 112, ¶ 6, is to " bring the bursting blade into bursting contact with the stream

of tickets." (*See* Defs. Br. at 15). Notably, there is no requirement in the claim that the drive

means moves the separator member. Rather, the drive means structure must simply bring the

ticket strip and separator member into contact. (*See* '337 patent, col. 3:59-63). This leaves open

the way that bursting contact is brought about, implying relative motion. In the example

preferred embodiment of the '337 patent, the bursting contact is brought about through a motor.

(*See* '337 patent, col. 13:24-26 ("Burster wheel 68 is shown mounted on a burster block 98

driven by a burster motor 100 through a cable spool arrangement 102 including tensioning spring

104")(emphasis added)).

---

[11]   The "at the bursting position" language of claim 20's function refers to preventing "substantial
deflection from the path" at that position, rather than holding at that position.

Defendants contend that the drive means must be limited to not just the motor, but also a burster block 97, cable spool arrangement 102, and tensioning spring 104. First, as explained above, the corresponding structure for the means for separating is the separator member, holding means structure and drive means structure. Not all the specific detailed components of those structures are claim limitations. (*See* Ex. N to Plaintiff's Opening Brief, *Pollard* Markman ruling at GTECH 33745, 33776-77). Further, the drive means structure does not include the additional burster block, cable spool arrangement and tensioning spring because this structure is not directly linked to the "bringing into bursting contact" function of the "drive means" structure. The specification specifically indicates that the motor drives. (*See* '337 patent, col. 13:24-26 ("Burster wheel 68 is shown mounted on a burster block 98 *driven by* a burster motor 100 through a cable spool arrangement 102 including tensioning spring 104")(emphasis added)). The burster block, in contrast, is something which is driven, not something that drives. (*Id.*) Drive from the motor is transferred "through" the cable spool arrangement which includes a tensioning spring. (*Id.*) But this is transfer not driving. Rather, the additional burster block, cable spool arrangement and tensioning spring components work in conjunction with the driving motor to provide direction to the motion of the separator member of the preferred embodiment. Directional control, though, is not a requirement of the "bringing into bursting contact" function of the drive means structure of claim 20's "means for separating." While in the preferred example embodiment the additional components cited by Defendants may be used in concert with the drive means to help provide direction control and/or to transfer power from the motor, that does not mean that all of those components are corresponding structure.

The structure associated with a means is not every component or structure required to enable the invention to be used. *Asyst Techs.*, 268 F.3d at 1371. In *Asyst*, the court held that a

"microcomputer means for receiving and processing digital information with [said communication means]" did not include the network communication line between the communication means and the microcomputer means. *Id.* at 1370. Even though the network communication line was involved with the transfer of information and enabled the microcomputer means to perform its function, the line did not actually perform either of the recited functions of receiving and processing. *Id.* at 1370-71. Similarly, here, only the motor drives, while the cable, burster block, and tensioning spring are merely adjuncts which transfer the drive from the motor.

Defendants point to the construction of the "fourth means" in *Asyst* because the court construed a connecting structure to be part of a means. (*See* Defs. Br. at 15). However, the "fourth means" of *Asyst* recited two functions – controlling and processing. The communication line structure was included in the "fourth means" because it was necessary to connect two elements to allow the "fourth means" to perform both functions. *Id.* at 1372. Here, though, the "means for separating" recites only a single function, "separating each of said tickets from said strip." Thus, like the communication line which was not part of the microcomputer means of *Asyst*, the additional components of the burster block, cable spool, and tensioning spring should not be including as corresponding structure for the "means for separating."

### (iv) The Extrinsic Evidence Cited by Defendants Cannot be Used to Vary the Construction of the "Means for Separating"

Defendants rely heavily on extrinsic evidence, including prosecution histories of patents by other inventors and expert testimony, in its attempt to limit the "means for separating." This extrinsic evidence, as discussed above, cannot be used to vary the construction of this element as made clear by the intrinsic record. Moreover, the extrinsic evidence Defendants cite does not actually support their claim construction position. None of these extrinsic documents and

testimony establishes, or even suggests, that the claims of the '337 patent are limited; they merely describe example embodiments.



### 3.    "Means for Ordering" and "Dispensing Means" of Claim 20

Defendants improperly exclude equivalent structures from the construction of these claim elements. Defendants state the corresponding structure for the "means for ordering" is a control panel, keypad, push buttons and control circuit. For the "dispensing means," Defendants state the corresponding structure is kick out rollers. The corresponding structure of each of these elements must also include "equivalents thereof." *IMS Technology*, 206 F.3d at 1429-30; *see also McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1347 (Fed. Cir. 2001) ("Drafters of

**REDACTED**

means-plus-function claim limitations are statutorily guaranteed a range of equivalents extending beyond that which is explicitly disclosed in the patent document itself.").

## IV.     CONCLUSION

Based on the foregoing, and on the proposed claims constructions and arguments set forth in Plaintiff's Opening Claim Construction Brief [D.I. 112], Plaintiff's proposed constructions of the asserted claims of the '624 patent and '337 patent should be accepted.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Dated: October 28, 2005          By:     _____
                                         Josy W. Ingersoll (#1088)
                                         jingersoll@ycst.com
                                         Andrew A. Lundgren (#4429)
                                         alundgren@ycst.com
                                         The Brandywine Building
                                         1000 West Street, 17th Floor
                                         Wilmington, Delaware 19889
                                         Telephone: (302) 571-6600
                                         Facsimile: (302) 571-1253

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288


Douglas E. Ringel
KENYON & KENYON
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on October 28, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on October 28, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> Josy W. Ingersoll (#1088)
> John W. Shaw (#3362)
> Karen E. Keller (#4489)
> Andrew A. Lundgren (#4429)
> YOUNG CONAWAY STARGATT & TAYLOR, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> (302) 571-6600
> alundgren@ycst.com
>
> *Attorneys for GTECH Corporation*

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on November 10, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE  19801

I further certify that on November 10, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew A. Lundgren (#4429)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
kkeller@ycst.com

*Attorneys for GTECH Corporation*