REDACTED--Public Version

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GTECH CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC., SCIENTIFIC GAMES HOLDINGS CORPORATION, SCIENTIFIC GAMES FINANCE CORPORATION, and SCIENTIFIC GAMES CORPORATION,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No. 04-138-JJF<br>)<br>)  *Confidential – Filed Under Seal*<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## GTECH'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF U.S. PATENTS 4,982,337 AND 5,222,624 ARE NOT INVALID UNDER 35 U.S.C. § 102

Dated: November 14, 2005

Josy W. Ingersoll (#1088)
Karen Keller (#4489)
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200

Douglas E. Ringel
KENYON & KENYON
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
*Attorneys for Plaintiff GTECH Corporation*

REDACTED--Public Version

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1
II. NATURE AND STAGE OF THE PROCEEDINGS ....................................................1
III. BACKGROUND ............................................................................................................2
    A. The '624 Patent ....................................................................................................2
    B. The '337 Patent ....................................................................................................4
    C. Scientific Games' Iowa PAT ...............................................................................6
IV. SUMMARY OF THE ARGUMENT ............................................................................7
V. RELEVANT LEGAL AUTHORITY ............................................................................8
VI. STATEMENT OF FACTS ..........................................................................................10
    A. The '624 Patent ..................................................................................................10
    B. The '337 patent ..................................................................................................11
    C. Scientific Games' Iowa PAT .............................................................................12
VII. THE IOWA PAT DID NOT DISPLAY A "PLURALITY OF ARRAYS" AS REQUIRED BY CLAIM 18 OF THE '624 PATENT ...............................................14
    A. Claim Construction ...........................................................................................15
    B. The Undisputed Record Shows The Iowa PAT Did Not Display A "Plurality Of Arrays" ..............................................................................................................17
VIII. CLAIMS 20 AND 21 OF THE '337 PATENT ARE NOT ANTICIPATED BY THE IOWA PAT ...............................................................................................................19
    A. The Iowa PAT Did Not Contain "Means Operable For Ordering A Plurality Of Tickets In a Single Batch" ................................................................................21
    B. The Iowa PAT Did Not Contain "Control Means For Causing Each Ticket In Said Batch To Be Separated And Dispensed Separately From the Other Tickets In Said Batch Regardless of the Number of Tickets in Said Batch" ..................23
IX. CONCLUSION ............................................................................................................25

REDACTED--Public Version

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370 (Fed. Cir. 2003) .................................................. 10

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553 (Fed. Cir. 1995) ........................... 16

*Juicy Whip Inc. v. Orange Bang, Inc.*, 292 F.3d 728 (Fed. Cir. 2002) ......................................... 8

*Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420 (Fed. Cir. 1997) ............................................... 8

*Oney v. Ratliff*, 182 F.3d 893 (Fed. Cir. 1999) ........................................................................... 8

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057 (Fed. Cir. 2003) ......... 10

*TechSearch LLC v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002) ................................................. 8

*Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364 (Fed. Cir. 2002) ....................... 7

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292 (Fed. Cir. 2002) ................................... 9

*Union Carbide Chems. & Plastics Tech. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002) ......... 8

**Statutes**

35 U.S.C. § 282 ............................................................................................................................ 10

35 U.S.C. § 102 ..................................................................................... 1, 2, 7, 8, 9, 12, 13, 14, 18, 19, 20, 23

35 U.S.C. §103 ............................................................................................................................. 14

35 U.S.C. §112 ¶6 ................................................................................................................... 19, 22

REDACTED--Public Version

I.  **INTRODUCTION**

Plaintiff GTECH Corporation ("GTECH") respectfully requests that the Court enter partial summary judgment that the asserted claims -- claim 18 of U.S. Patent No. 5,222,624 (the "'624 patent," Ex. A) and claims 20 and 21 of U.S. Patent No. 4,982,337 (the "'337 patent," Ex. B) -- are not invalid under 35 U.S.C. § 102. Defendants Scientific Games et al. ("Scientific Games") admit, through their own testimony, through testimony of their witnesses, and through their own experts, that the prior art asserted lacks at least one element of each of those claims. Accordingly, that prior art does not anticipate '624 claim 18 and '337 claims 20 and 21, and summary judgment of no invalidity under 35 U.S.C. § 102 is appropriate.

II. **NATURE AND STAGE OF THE PROCEEDINGS**

GTECH asserts in this action that Scientific Games infringes claim 18 of the '624 patent and claims 20 and 21 of the '337 patent[1] (collectively "the asserted claims") through its making, using, offering for sale, and selling of a lottery ticket vending machine called the PlayCentral Kiosk ("the PlayCentral").

Fact and expert discovery in this case is complete. Claim construction briefing has been fully submitted to the Court and a *Markman* hearing is currently scheduled for November 18, 2005. A Pre-Trial Conference is scheduled for January 12, 2006. No trial date is set.

---

[1] GTECH has also asserted claims 22 and 24 of the '337 patent against Scientific Games. GTECH was precluded from asserting these two claims by the Court's 6/14/05 Order [D.I. 87], and GTECH filed a motion for reconsideration of that decision [D.I. 91] which is still pending. To date, Scientific Games has not alleged that claims 22 and 24 of the '337 patent are invalid.

REDACTED--Public Version

## III. BACKGROUND

The '337 and the '624 patents (together "the patents-in-suit") are both owned by GTECH. The patents in-suit both relate to lottery ticket vending machines. GTECH asserts that Scientific Games' PlayCentral lottery ticket vending machine infringes claim 18 of the '624 patent and claims 20 and 21 of the '337 patent.

### A. The '624 Patent

Because a prior art reference can only anticipate a patent claim under 35 U.S.C. § 102 if it includes every element of that patent claim, GTECH need only demonstrate that one claim element of asserted claim 18 of the '624 patent is not met by the prior art. The '624 patent is based on an invention by Mr. Robert Burr of a novel lottery ticket vending machine. Claim 18 of the '624 patent specifically recites the element of displaying "a plurality of arrays" of ticket images on a video screen. This feature of the '624 patent is novel and not found in the prior art.

Until the early 1980s, instant "scratch-off" lottery tickets were sold manually by retail clerks at the checkout counter. Sales were thus limited because customers could not buy tickets from unattended locations or from locations where clerk time could not be dedicated to handling instant tickets (e.g., most supermarkets and drug stores). In an attempt to address this problem, in the mid 1980s, some ticket vending machines were introduced. These machines were primarily intended to vend "online" or "lotto" type lottery tickets, not pre-printed scratch-off or instant tickets. If the functionality to sell instant tickets was enabled on the machines at all, at most they sold tickets from only one instant ticket game. Multiple types of instant ticket games could not be stored and vended from the machines at the same time. The machines' "user interface" (e.g., a video or touch screen display) did not change when the type of instant ticket

REDACTED--Public Version

inside the machine was changed, so the user had no way of knowing from the user interface what type of instant games were available from the machine.

In contrast with early attempts at ticket vending machines, retailers selling at the counter sold many types of instant tickets to allow customers a range of choices, e.g., by hanging them in view of the customer at convenience store checkout counters. Mr. Burr understood that instant lottery ticket sales are often the result of "impulse" purchases. Instant tickets attract the attention of the customer through bright colors and bold graphics. Mr. Burr recognized that, to sell multiple types of instant tickets from a vending machine, representations of each of the tickets for sale would need to be shown in a manner that would allow a customer to associate the visible representations with the different tickets available from the machine. However, Mr. Burr recognized more than just the importance of allowing the customer to see what he or she was getting. He also recognized that it was important that the customer be able to see the range of possible ticket selections at the same time, so that the customer could select a desired ticket from those that were available for purchase from the machine.

The use of representations of the instant tickets for sale stimulated the impulse purchase by using colors and graphics associated with the tickets for sale in the machine. The ticket representations would capture the customer's attention in the same way as those "hanging" instant tickets at the retailer's counter. Customers could be given more choices, resulting in more ticket sales, by showing the customer multiple ticket representations.

The '624 patented invention, as specifically recited in claim 18, included a video display means showing "a plurality of arrays" of ticket images, so that a customer could see what games were available from the machine and make his or her selection from those choices.

### B. The '337 Patent

Mr. Burr and his co-inventors, Messrs. Keagle, Fulton, and Campbell, invented and patented a novel ticket dispensing machine that is embodied in the '337 patent. Prior art ticket dispensers that dispensed tickets from fan-folded strips of tickets would separate the tickets by cutting, rather than bursting, the tickets apart. One novel feature of the '337 machine was that it incorporated a "bursting" mechanism which reliably separated individual tickets from fan-folded strips of tickets stored in the machine. "Bursting" separates the tickets by application of pressure at or near the perforations to "burst" tickets apart at the perforation, rather than by cutting the tickets apart. Cutting is problematic for separating instant tickets because such tickets are bearer instruments, like cash, which can be destroyed by being cut apart at locations other than the perforation between the tickets. Replacing cutting with bursting resulted in more reliable and accurate separation of fan-folded instant tickets. [REDACTED]

In addition to recognizing and solving problems with cutting, the inventors of the '337 patent also recognized and solved another problem with prior art ticket vending machines. Prior

art machines operated in one of two ways. The first type of machine allowed customers to purchase tickets only one individual ticket at a time. A single "batch" of multiple tickets could not be ordered. When a customer wanted to buy a large number of tickets at once, each ticket would have to be ordered and dispensed separately, slowing the order process. The second type of machine allowed customers to buy multiple tickets, but it dispensed the multiple tickets at once in a single connected strip which the customer would then have to separate on his or her own. Dispensing multiple tickets in a single strip presented a security and reliability issue, because an unscrupulous customer could try to grab the strip while it was dispensed to pull more than the purchased number of tickets out of the machine. Leaving the customer to separate the individual tickets from the dispensed strip also allowed for potential destruction or damage to those tickets when the customer tore them apart. The '337 patented invention resolved the issues in these prior art machines. The invention, as recited in claim 20 (and in claim 21 which depends from claim 20), includes means for "ordering a plurality of tickets in a single batch" and means for "causing each ticket in said batch to be separated and dispensed separately from the other tickets in said batch regardless of the number of tickets in said batch." Tickets no longer needed to be ordered individually or to be separated from strips of tickets. The claimed feature of a machine that allows the ordering of a plurality of tickets in a single batch and that automatically separates the individual tickets is not found in the prior art advanced by Scientific Games in this case.

GTECH's expert, Shelia Smith, who was deputy director of the Ohio lottery and worked in the lottery industry for more than 25 years, noted:

> [S]eparately (one by one) dispensing multiple tickets in a single batch is an important feature of today's ITVMS. In fact, today, this feature is considered the standard with many state lotteries requiring dispensing multiple tickets in a single batch with each ticket being dispensed separately.... Prior to Mr. Burr, the

REDACTED--Public Version

implications and importance of dispensing this way simply was not recognized or appreciated.

(Ex. D, Smith Rebuttal Report at ¶42).

### C. Scientific Games' Iowa PAT



REDACTED--Public Version



The Iowa PAT is the only prior art system or reference which Scientific Games has asserted with any specificity in their interrogatory responses and expert reports as allegedly invalidating the asserted claims under 35 U.S.C. § 102. (*See generally*, Ex. F, *Scientific Games' Suppl. Resp. to Pltf.'s Interrog. Nos. 2 and 7*, at 11-13, 15-16; *see also* Ex. G, Keefe Opening Report at 22-25; Ex. H, Myers Opening Report at 11-13).

## IV. SUMMARY OF THE ARGUMENT

Summary judgment that the asserted claims are not invalidated under § 102 by the Iowa PAT is appropriate because at least one element of each asserted claim is not found in the Iowa PAT. Scientific Games' anticipation claim fails because to anticipate a claim and render it invalid under 35 U.S.C. § 102, a prior art reference must include *every* limitation of the asserted claim. The absence of even a single claim limitation from the alleged prior art system is fatal, as a matter of law, to a claim of invalidity by anticipation under § 102.

Several of the material differences between the Iowa PAT and the asserted claims are not the subject of a genuine factual dispute. Scientific Games' own evidence and testimony acknowledges the omission of claimed features from the Iowa PAT. For example, there is no evidence that the Iowa PAT's video screen displayed "a plurality of arrays" as required by claim 18 of the '624 patent. Similarly, there is no evidence that the Iowa PAT allowed the ordering of a "plurality of tickets [i.e. more than one] in a single batch" as required in claims 20 and 21 of the '337 patent. In light of the absence of any genuine factual dispute concerning these missing