elements, summary judgment that the asserted claims are not anticipated under 35 U.S.C. § 102 is warranted, and it reduces the number of issues for trial.

## V. RELEVANT LEGAL AUTHORITY

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Transclean Corp. v. Bridgewood Services, Inc.*, 290 F.3d 1364, (Fed. Cir. 2002) (citing Fed. R. Civ. P. 56(c)). When there is no material factual dispute, it is appropriate to grant summary judgment that a patent is not invalid for lack of novelty as defined in 35 U.S.C. § 102. *See, e.g., Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1430 (Fed. Cir. 1997) (affirming summary judgment that the asserted patent was not anticipated under § 102(b) by a prior art device); *Transclean*, 290 F.3d at 1373 (affirming summary judgment that asserted patent was not invalidated by either of two prior art references).

A factual dispute is genuine only if the nonmovant's evidence is substantial enough to require trial. Conclusory statements are not sufficient to create a genuine issue; the party opposing summary judgment must point to an evidentiary conflict created on the record. *See TechSearch LLC v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002). In other words, "the summary judgment material must contain probative evidence that would allow a trier of fact to find in the nonmovant's favor." *Oney v. Ratliff*, 182 F.3d 893, 895 (Fed. Cir. 1999).

This motion addresses conditions for patentability set out in 35 U.S.C. § 102:

A person shall be entitled to a patent unless –

(a) the invention was known or used by others in this country ... before the invention thereof by the applicant for patent, or

(b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States ...

35 U.S.C. § 102 (2002). To invalidate a patent for lack of novelty under § 102 requires that *each and every* element of the asserted claim be present in a *single* prior art reference. *Union Carbide Chems. & Plastics Tech. v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002) (citing *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001)). This is commonly referred to as the "all elements rule." Where the asserted basis of anticipation is prior public use, the "all elements rule" requires that, to invalidate an asserted claim, a single publicly used device must have actually included *each and every* limitation of the claim. *Juicy Whip Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 737 (Fed. Cir. 2002). The mere possibility that a prior art device *might* have included a particular feature is not sufficient to make a showing of invalidity under 35 U.S.C. § 102. *Id.* at 740 (rejecting testimony that a feature was "possibly" present as insufficient evidence to overcome JMOL of no prior public use). The accused infringer bears the ultimate burden of proving invalidity with facts supported by clear and convincing evidence. *Id.* at 736.

The "all elements rule" also applies equally to functional language in claims, both for "means-plus-function" claims interpreted under 35 U.S.C. § 112, ¶ 6 and for other claims. *Transclean*, 290 F.3d at 1372; *Juicy Whip*, 292 F.3d at 732, 738. In either case, the recited function must be performed *exactly*. *Transclean*, 290 F.3d at 1372 ("To anticipate a claim reciting a means-plus-function limitation, the anticipatory reference must disclose the recited function identically."); *Juicy Whip*, 292 F.3d at 738 (a prior art device having a container did not satisfy a claim limitation that the container should be positioned "to create the visual impression that said container is the reservoir and principal source of said dispensed beverage issuing from said outlet"). This rule is strictly interpreted; it is not enough that a device could be modified or adjusted to perform the function. *See Transclean*, 290 F.3d at 1372 (finding no anticipation of

"means for equalizing fluid flow" where, although a device described in a prior art patent could be operated in a manner as to equalize flow rates, the prior art patent did not disclose such manner nor was it inherent in the invention's operation); *see also Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1296 (Fed. Cir. 2002) (finding no anticipation of a claim that required a color photocopier by a catalogue reference that disclosed a color printer, although "the difference between a printer and a photocopier may be minimal and obvious to those of skill in [the] art.").

Moreover, evidence of prior public use must be corroborated; uncorroborated oral testimony by interested parties is insufficient as a matter of law to establish invalidity of a patent. *Juicy Whip*, 292 F.3d at 737-8; *see also Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1378 (Fed. Cir. 2003) ("Corroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest")(citations omitted).

A party seeking to invalidate particular claims must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence. *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003).

## VI. STATEMENT OF FACTS

This statement is submitted pursuant to this Court's standing Memorandum Order and certifies that no genuine issues of material fact exist with regard to the following facts which are argued in support of this motion.

### A. The '624 Patent

1. U.S. Patent 5,222,624 was issued on June 29, 1993. It is based on U.S. Application 07/912,005, filed July 10, 1992, which claims priority to U.S. Application 07/312,111, filed Feb. 17, 1989. (Ex. A, '624 Patent).

2. Claim 18 is the only claim of the '624 patent asserted against Scientific Games in this lawsuit. (Ex. I, *Pltf. GTECH Corp.'s Suppl. Resp. to Def.'s First Set of Interrog. (No. 1)* at 2).

3. Broken down into constituent clauses (with letters added for ease of reference and clarity), claim 18 reads as follows:

[A]  A lottery ticket vending machine comprising, in combination,
[B]  a housing,
[C1] display means for displaying an array of lottery ticket representations viewable from outside of said housing by a customer, said array representing tickets in said machine available for purchase,
[D]  acceptor means for receiving and accepting a means of monetary exchange, and
[E]  means for dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer,
[C2] in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen.

(Ex. A, '624 Patent, col. 13:25-36).

4. Claim 18 pertains to a video embodiment in which a video screen displays "a plurality of arrays" of ticket images. (Ex. A, '624 Patent, col.13:25-36; col. 9:66-10:2; Ex. G, Keefe Opening Report at 6.)

### B. The '337 patent

5. U.S. Patent 4,982,337 ("the '337 patent"), was issued on Jan. 1, 1991. It is based on U.S. Patent Application No. 07/128,070, which was filed Dec. 3, 1987. (Ex. B, '337 Patent).

6. Claims 20 and 21 of the '337 patent are asserted against Scientific Games in this lawsuit.[2] (Ex. I, *Pltf. GTECH Corp.'s Suppl. Resp. to Def.'s First Set of Interrog. (No. 1)* at 2).

7. Asserted Claim 20 of the '337 Patent, divided into constituent clauses (with letters added for ease of reference and clarity), recites:

---

[2] GTECH has also asserted claims 22 and 24 and has requested reconsideration of the Court's order precluding assertion of those claims. *See supra*, note 1.

[A] A ticket dispensing machine for dispensing tickets directly to the purchaser thereof, said dispenser comprising the combination of
[B] housing means for storing a strip of tickets to be dispensed,
[C] said housing means having an outlet opening accessible to the purchaser of tickets from said machine,
[D] means operable for ordering a plurality of tickets in a single batch,
[E] means for separating each of said tickets from said strip,
[F] dispensing means for dispensing tickets through said outlet opening, and
[G] control means for causing each ticket in said batch to be separated and dispensed separately from the other tickets in said batch regardless of the number of tickets in said batch.

(Ex. B, '337 Patent, col. 19:42-54).

8. Asserted Claim 21 reads : "A machine as in claim 20 in which said tickets are instant-winner lottery tickets." Claim 21 depends from claim 20 and contains all the elements of claim 20. (Ex. B, '337 Patent, col. 19:55-56).

C.  **Scientific Games' Iowa PAT**

9. GTECH requested in its Interrogatory No. 7 that Scientific Games "state with particularity the basis" for any invalidity contention concerning any patent claim that Scientific Games contended is invalid, "identifying with particularity" any prior art relied upon in support of such contention. (Ex. F, *Scientific Games' Suppl. Resp. to Pltf.'s Interrog. Nos. 2 and 7* at 10). Scientific Games' response stated "[i]f claims 20 and 21 of the '337 patent are construed to cover Scientific Games' PlayCentral Kiosk, those claims are invalid under 35 U.S.C. § 102 in light of the Player-Activated Terminals ("PAT") that Scientific Games offered for sale and sold in the United States more than one year before the application for the '337 patent was filed." (*Id.* at 11). Scientific Games' response also stated "[i]f claim 18 of the '624 patent is construed to cover Scientific Games' PlayCentral Kiosk, it is invalid under 35 U.S.C. § 102 and § 103 over Scientific Games' prior art PATs, which Scientific Games offered for sale and sold in the United States more than one year before the application for the '624 patent was filed." (*Id.* at 15).

REDACTED--Public Version



10.

11. GTECH requested in its Interrogatory No. 7 that Scientific Games identify all witnesses with knowledge concerning any prior art reference they were asserting. In response to GTECH's interrogatories, Scientific Games identified only two individuals with knowledge of the Iowa PATs – William Behm and Mark Hoffman, who are both Scientific Games employees. (*See* Ex. F, *Scientific Games' Suppl. Resp. to Pltf.'s Interrog. Nos. 2 and 7* at 17; Ex. J, Hoffman Dep. at 15). Mr. Behm was also Scientific Games' designated witness on GTECH's 30(b)(6) deposition topic concerning the Iowa PAT:

> The conception, design, development, manufacture operation, sale, offer for sale, and use of the "Player Activated Terminal" identified in Scientific Games to GTECH's Interrogatory No. 7, which Scientific Games alleges was "offered for sale and sold more than one year before the application for the '624 patent was filed," and any substantially similar terminal.

(Ex. K, *Pltf. GTECH Corp.'s Notice of Dep. of Defs.* at ¶ 58;

12.



13. A copy of what is alleged to be a photograph of the Iowa PAT is attached as an exhibit. (Ex. E, SGI104830A).

## VII. THE IOWA PAT DID NOT DISPLAY A "PLURALITY OF ARRAYS" AS REQUIRED BY CLAIM 18 OF THE '624 PATENT

Scientific Games has articulated with specificity only one basis for the contention that claim 18 of the '624 patent is invalid under 35 U.S.C. § 102 -- that claim 18, if construed as

---

[3] For the limited purpose of arguing this motion only, GTECH accepts Scientific Games' contentions that the Iowa PAT, as it was deployed in Iowa in the 1980s, is prior art to the '337 and '624 patents, and that the Iowa PAT was publicly used in Iowa and/or sold to the Iowa lottery more than one year prior to the priority dates of both the '337 and '624 patents. In actuality, this is far from an established, undisputed fact. However, for the purposes of this motion, that issue need not be resolved.

-14-

GTECH advocates, is anticipated by the prior public use or sale of the Iowa PAT. (*See, e.g.*, Ex. F, *Scientific Games' Suppl. Resp. to Pltf.'s Interrog. Nos. 2 and 7* at 15-17; Ex. G, Keefe Opening Report at 22-25; Ex. H, Myers Opening Report at 11-13.) Scientific Games has not advanced any other reference or system that allegedly invalidates claim 18 of the '624 patent under 35 U.S.C. § 102.[4]

According to Scientific Games, the Iowa PAT was allegedly sold or publicly used in Iowa more than one year prior to the priority date of the '624 patent. However, the deployment of the Iowa PAT cannot invalidate claim 18 under § 102 because the Iowa PAT did not possess every element of claim 18. The Iowa PAT did not display a "plurality of arrays" as required by claim 18. The omission of this feature from the Iowa PAT, on its own, is fatal to Scientific Games' attempt to invalidate claim 18 under 35 U.S.C. § 102. *See, e.g., Juicy Whip*, 292 F.3d at 737. Accordingly, as a matter of law, claim 18 of the '624 patent cannot be invalid under 35 U.S.C. § 102 over the Iowa PAT.

### A.   Claim Construction

GTECH's proposed claim construction of "plurality of arrays" is that these terms have their ordinary and customary meaning consistent with the '624 patent specification: "plurality" means "more than one; " and an "array" is a grouping, arrangement, or ordering of two or more things, such as a row or column. (*See* D.I. 112, *GTECH's Opening Claim Construction Brief* at 19, 22; D.I. 117, *GTECH's Answering Claim Construction Brief* at 13, 14). The specification of

---

[4]   Scientific Games interrogatory responses also mention that claim 18 "*may* also be invalid under 35 U.S.C. § 102, and/or 35 U.S.C. §103 in light of other prior art lottery ticket vending machines...." (*See* Ex. F, *Scientific Games' Suppl. Resp. to Pltf.'s Interrog. Nos. 2 and 7*, at 16-17) (emphasis added). This is a conclusory, speculative statement that is insufficient as a matter of law to create a genuine issue of material fact in opposition to this motion. *TechSearch*, 286 F.3d at 1371. Other than the Iowa PAT, Scientific Games' experts offer no other basis for their conclusions concerning invalidity under § 102. (*See generally*, Ex. G, Keefe Opening Report, Ex. H, Myers Opening Report).

REDACTED--Public Version

the '624 patent defines "array" as having two or more elements. (*See, e.g.,* Ex. A, '624 patent, col. 11:1-4).

> Although only *2 tickets are shown* in each of the arrays A, B, C, D, E and F, it should be understood that *each array can be made to contain more tickets*, if it is desired to do so."

*Id* (emphasis added). *One* thing (e.g., *one* ticket) cannot be an "array," not only because that is inconsistent with the specification passage above (which defines an array as showing "2" or "more" tickets), but also because under such a construction a "plurality of arrays of ticket images" would have no different meaning than "plurality of ticket images." The word array would be effectively, and improperly, read out of the claim. *See, e.g. K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1363-1364 (rejecting a construction that would "effectively expunge" a word from the claim); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) ("[w]e must give meaning to all the words in [the] claims").

GTECH contends that the "video display means" of claim 18 is not a means-plus-function element limited under 35 U.S.C. §112, ¶6 to the particular corresponding structures in the specification and equivalents thereof. (*See* D.I. 112, *GTECH's Opening Claim Construction Brief* at 13.) However, as a matter of law, whether "video display means" is construed as a means-plus-function element governed by §112, ¶ 6 is irrelevant to the construction of the terms "plurality" and "arrays" because these terms are not the *means* for performing the recited function of displaying, but rather part of what is displayed. Therefore, even if "video display means" were considered means-plus-function, the "plurality of arrays of tickets images" is not

governed by §112, ¶ 6.[5] *See, e.g., IMS Tech. v. Haas Automation, Inc.*, 206 F.3d 1422, 1432 (Fed. Cir. 2000).

Scientific Games' contention is that an "array" must be a moveable strip of lottery tickets from the same game. (*See* D.I. 115 at 33-34). Scientific Games has not asserted claim 18 is invalid by anticipation under Scientific Games' proposed construction. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Because Scientific Games' sole § 102 invalidity theory regarding claim 18 is based upon GTECH's proposed construction of "plurality of arrays," only that construction is addressed in detail in the rest of this analysis.

### B.   The Undisputed Record Shows The Iowa PAT Did Not Display A "Plurality Of Arrays"

Under GTECH's proposed construction (based on the specification and the claim language), a "plurality of arrays" requires more than one grouping or set (e.g. a row or a column) of two or more things. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] Even if the "video display means" were construed as a means-plus-function claim element, Scientific Games would still need to show that the undisputed function of the video display means, "displaying a plurality of arrays of ticket images" (*see* D.I. 116 at 31; D.I. 112 at 13) was performed *exactly* by the Iowa PAT. *Transclean*, 290 F.3d at 1372 ("To anticipate a claim reciting a means-plus-function limitation, the anticipatory reference must disclose the recited function identically.") Scientific Games cannot do so because, as explained herein, "a plurality of arrays of ticket images" were not displayed on the Iowa PAT.