# EXHIBIT H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GTECH CORPORATION,      .     ) | |
|         ) | |
|         Plaintiffs,    ) | Civil Action No. 04-138-JJF |
|         ) | |
|         v.        ) | |
|         ) | |
| SCIENTIFIC GAMES INTERNATIONAL, INC., ) | |
| SCIENTIFIC GAMES HOLDINGS     ) | |
| CORPORATION, SCIENTIFIC GAMES    ) | |
| FINANCE CORPORATION, and SCIENTIFIC ) | |
| GAMES CORPORATION,        ) | |
|         ) | |
|         Defendants.    ) | |

## PLAINTIFF GTECH CORPORATION'S SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NO. 1)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, GTECH

Corporation ("GTECH"), hereby serves the following supplemental objections and responses to

Interrogatory No. 1 of Defendants, Scientific Games International, Inc., Scientific Games

Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation

(collectively, "Defendants").

## GENERAL OBJECTIONS

GTECH incorporates by reference the General Objections set forth in its *Response to*

*Defendants' First Set of Interrogatories* dated August 18, 2004.

## SUPPLEMENTAL RESPONSES

**Interrogatory No. 1**

With respect to your allegation that Scientific Games is infringing the Patents-In-Suit "under 35 U.S.C. 271(a), (b) and/or (c) by making, using, offering for sale, selling and/or importing into the Untied States products ... and/or by contributing to or inducing such infringement by others," identify each claim of the Patents-in-Suit that you contend is infringed and for each asserted claim, identify each allegedly infringing product and describe in detail the basis for your allegation of infringement (including whether literal or under the doctrine of equivalents), state each fact supporting that allegation, identify each person with knowledge relating to that fact and each document relating to that fact, and provide claim charts setting forth how each limitation of each asserted claim of the Patents-in-Suit is met by each allegedly infringing product.

**Supplemental Response No. 1**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known. GTECH further objects because details of claims of infringement are more appropriately addressed in expert discovery, for which the Court has set a schedule. In addition, GTECH specifically objects to this interrogatory because it is a compound interrogatory which asks discrete questions that should have been asked, and should be counted, as separate interrogatories.

Subject to the General Objections and the foregoing specific objections, GTECH contends that Defendants' PlayCentral Kiosk directly infringes claim 18 of U.S. Patent No. 5,222,624 (the "'624 Patent"), and claims 20, 21, 22, 24, and 28 of U.S. Patent No. 4,982,337 (the "'337 Patent"), literally and/or under the doctrine of equivalents.

2

With respect to the '624 patent, GTECH believes that infringement can be determined from a visual inspection of machines as they are presently installed, as well as from publicly available Scientific Games machine specifications and marketing material, e.g., "Scientific Games International PlayCentral™ Lottery Ticket Kiosk" ("R1"), Scientific Games International's "Proposal to Tennessee Lottery" ("R2"), Scientific Games International's 2004 Advertisement from LAFLEURS ("R3") and the September 2003 issue of *SGI Today* ("R4"), as well as additional documents and testimony including but not limited to those cited below.

| '624 LANGUAGE | INFRINGING ELEMENT | EVIDENTIARY SUPPORT |
|---|---|---|
| 18. A lottery ticket vending machine comprising, in combination, | The Play Central Kiosk is a lottery ticket vending machine. | |
| a housing, | The PlayCentral Kiosk includes a cabinet. This cabinet is a housing. | *See, e.g.,* R1;<br><br>Behm Ex. 20, SGI108355-410, at, e.g., 108375 (GA Functional Spec);<br><br>Behm Ex. 15, SGI23092-109, at, e.g., 23094 (4/16/03 submission to CO lottery);<br><br>CO Functional Spec Version 1.4, SGI036474-610, at, e.g., 36498;<br><br>Behm Ex. 12, SGI-E107970-11 (CAD drawing of cabinet) and related testimony from 5/27/05 deposition at, e.g., 118-127;<br><br>Behm Ex. 18, GTECH39791 (photograph of the PlayCentral). |

| | | |
|---|---|---|
| display means for displaying an array of lottery ticket representations viewable from outside of said housing by a customer, said array representing tickets in said machine available for purchase, | This element is not subject to interpretation under 35 U.S.C. §112, ¶6, because the claim recites sufficient structure, i.e. a video display with a video screen, to perform the recited function.<br><br>The PlayCentral includes a video touch screen. One of the screens displayed on the video touch screen is a "game selection screen" (or "selection screen"). The selection screen includes rows of graphic images representing instant lottery tickets available for purchase from the PlayCentral. These graphic images are variously referred to as, e.g., "icons", "logos", "attract mode graphics", "games", "tickets" and "ticket images" in Scientific Games' own documents. These graphic images are viewable from outside of the housing by a customer. These graphic images are created from the computer art files which are used to print the instant tickets dispensed by the PlayCentral, and incorporate text and graphic elements from the instant tickets.<br><br>Even if this element were interpreted under 35 U.S.C. §112, ¶6, the PlayCentral selection screen is the same as or equivalent to the video display disclosed in the '624 patent. | *See, e.g.,* R2 & R4;<br><br>Behm Ex. 17, SGI081151-84, at, e.g., 81173 (PlayCentral spec.) and related testimony from 5/27/05 deposition at, e.g., 141-3;<br><br>Behm Ex. 19, GTECH39790 (photo of PlayCentral screen) and related testimony from 5/27/05 deposition at, e.g., 146-8;<br><br>Behm Ex. 15, SGI23092-109, at, e.g., 23096-9 (4/16/03 submission to CO lottery) and related testimony from 5/27/05 deposition at, e.g., 134-6;<br><br>Behm Ex. 20, SGI108355-410 (GA Functional Spec.);<br><br>Behm Ex. 13, SGI085114-32 (AEGIS Multi-States Release 1.0) and related testimony from 5/27/05 deposition at, e.g., 128-9;<br><br>SGI067586-67595, 67576-67585, 65666-65675, E-108489-00-001 -- 0011, and the related 30b(6) testimony of James Farrell;<br><br>GA STVM proposal, SGI029720-35, at, e.g., 29724 (selection screen);<br><br>PA 6/9/03 ITVM proposal, SGI04415-77 at, e.g., 4465;<br><br>TN functional spec., 44395-44516 at, e.g., SGI044445, 44447. |

4

| | | |
|---|---|---|
| | | SGI-E108490-0001 -- 0108, and SGI-E-1008494-0001 -- 0096, SGI-E-108495-0001 -- 0100. and SGI-E-1088493 -- 0001 - 0100 and related 30b(6) testimony of James Farrell; <br><br> CO Functional Spec Version 1.4, SGI036474-610 at, e.g., 19390, 19396. |
| acceptor means for receiving and accepting a means of monetary exchange, and | The PlayCentral includes a bill acceptor for receiving and accepting cash payments by a customer. | *See, e.g., R2;* <br><br> Behm Ex. 12, SGI-E107970-11 (CAD drawing of cabinet) and Behm testimony from 5/27/05 deposition at, e.g., 120. |

| | | |
|---|---|---|
| means for dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer, | The dispensing means disclosed in the '624 patent includes a receptacle and an opening in the housing. The tickets are dispensed through the opening into the receptacle. The number of tickets which are dispensed may be indicated by use of a keypad, up to the amount of credit a player has in the machine.<br><br>The PlayCentral Kiosk includes a dispensing chute and receptacle for dispensing tickets to customers.<br><br>The PlayCentral also includes a "ticket purchase screen" which is displayed on the touch screen after one of the ticket representations on the "game selection screen" is pressed. The "ticket purchase screen" allows a customer to select a quantity of tickets to purchase, up to a number of tickets corresponding to the amount of money the customer has input into the machine.<br><br>The PlayCentral Kiosk then dispenses the appropriate number of purchased tickets by dropping them through the dispensing chute into the receptacle.<br><br>The PlayCentral dispensing chute and receptacle are the same as or equivalent to the opening and receptacle disclosed in the '624 patent. | See, e.g., R1 & R2;<br><br>Behm testimony from 5/27/05 deposition at, e.g., 138-139;<br><br>Behm Ex. 12, SGI-E107970-11 (CAD drawing of cabinet);<br><br>CO Functional Spec Version 1.4, SGI036474-610;<br><br>Behm Ex. 17, SGI081151-84, at 81173 and Behm testimony from 5/27/05 deposition at, e.g., 142-3;<br><br>TN PlayCentral proposal, SGI025641-25671 at, e.g., 25647<br><br>TN functional spec., 44395-44516 at, e.g., 44446;<br><br>Johnson testimony from 5/10/05 deposition at, e.g., 31-34, 51;<br><br>Johnson Ex. 9, SGI086210 (PA Game Purchase Screen). |

| | | |
|---|---|---|
| in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen. | This element is not subject to interpretation under 35 U.S.C. §112, ¶6, because the claim recites sufficient structure, i.e. a video display with a video screen, to perform the recited function.<br><br>The PlayCentral includes a video touch screen. The graphic images displayed on the "game selection screen" are ticket images which are displayed on the screen in multiple rows. The ticket images are created, transferred to the PlayCentral, and stored on the PlayCentral as so-called ".bmp" files, which are a common type of image file format.<br><br>Even if this element were interpreted under 35 U.S.C. §112, ¶6, the PlayCentral game selection screen is the same as or equivalent to the video display disclosed in the '624 patent. | *See, e.g.,* R2 & R3;<br><br>*See also* above display means element. |

With respect to the '337 Patent, GTECH states that these claims are grounded on information and belief that literature for the Defendants' machines, such as the PlayCentral Kiosk, is marked with the U.S. Patent No. 5,950,898. The PlayCentral Kiosk is believed to operate as disclosed in U.S. Patents No. 5,950,898, 6,669,071, and 6,609,644 (collectively "R5"). In addition, GTECH states that these claims are also grounded on the references cited above for the '624 Patent as well as additional documents and testimony including but not limited to those cited below.

| '337 LANGUAGE | INFRINGING ELEMENT | EVIDENTIARY SUPPORT |
|---|---|---|
| 20. A ticket dispensing machine for dispensing tickets directly to the purchaser thereof, said dispenser comprising the combination of | The PlayCentral is a ticket dispensing machine which dispenses instant lottery tickets directly to a ticket purchaser. | |
| housing means for storing a strip of tickets to be dispensed, | This element is not subject to interpretation under 35 U.S.C. §112, ¶6, because the claim recites sufficient structure, i.e. a "housing", to perform the recited function.<br><br>In the '337 patent, the means disclosed in the specification for storing a strip of tickets includes a housing. *See, e.g.,* col. 7, lines 5-6 ("Unit 14 includes a housing ... ."); Fig. 3. The tickets are located in the housing.<br><br>The PlayCentral includes a cabinet. The PlayCentral cabinet is a housing which stores strips of instant tickets to be dispensed.<br><br>Even if this element were interpreted under 35 U.S.C. §112, ¶6, the PlayCentral cabinet is the same as or equivalent to the housing disclosed in the '337 patent. | *See, e.g.,* R1;<br><br>Behm Ex. 20, SGI108355-410 (GA Functional Spec.);<br><br>Behm Ex. 15, SGI23092-109 (4/16/03 submission to CO lottery);<br><br>CO Functional Spec Version 1.4, SGI036474-610;<br><br>Behm Ex. 12, SGI-E107970-11 (CAD drawing of cabinet);<br><br>Behm Ex. 18, GTECH39791 (photograph of the PlayCentral);<br><br>TN PlayCentral proposal, SGI025641-25671. |
| said housing means having an outlet opening accessible to the purchaser of tickets from said machine, | The PlayCentral cabinet includes an outlet opening from which tickets can be removed by a purchaser. | *See, e.g.,* R2;<br><br>Behm Ex. 12, SGI-E107970-11 (CAD drawing of cabinet);<br><br>Behm testimony from 5/27/05 deposition at, e.g., 122;<br><br>Illinois proposal, 1/28/04, |

8

| | | SGI011763- 11835. |
|---|---|---|
| means operable for ordering a plurality of tickets in a single batch, | In the '337 patent, the means disclosed for ordering a plurality of tickets in a single batch includes a keypad.<br><br>The PlayCentral includes a "Ticket Purchase Screen" which enables a customer to order multiple tickets of the same type in a single batch. A person of ordinary skill in the art would have understood the touch screen used in the PlayCentral for ordering a plurality of tickets in a single batch to be equivalent to the keypad shown in the '337 patent. | *See, e.g.,* R4;<br><br>Behm Ex. 17, SGI081151-84, at, e.g., 81173 and Behm testimony from 5/27/05 deposition at, e.g., 142-3;<br><br>TN PlayCentral proposal, SGI025641-25671 at, e.g., 25647<br><br>TN functional spec., 44395-44516 at, e.g., 44446;<br><br>Johnson testimony from 5/10/05 deposition at, e.g., 31-34, 51;<br><br>Johnson Ex. 9, SGI086210 (PA Game Purchase Screen). |
| means for separating each of said tickets from said strip, dispensing means for dispensing tickets through said outlet opening, and | In the '337 patent, the means disclosed for separating each of said tickets from said strip includes a burster wheel. The ticket strip is held, and a drive mechanism creates relative motion  between the ticket strip and the burster wheel.<br><br>The PlayCentral includes a burster mechanism for separating individual tickets from the strips of tickets stored within the cabinet.  The burster mechanism includes a dull, v-shaped separator member.   In the PlayCentral, the ticket strip is held, and a drive mechanism creates relative motion between the ticket strip and burster.<br><br>A person of ordinary skill in | *See, e.g.,* R2 & R5;<br><br>Behm testimony from 5/27/05 deposition at, e.g., 107, 121;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 11, SGI084606-14 (burster hardware & firmware interface spec.);<br><br>TN PlayCentral proposal, SGI025641-25671 at, e.g., 25653;<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition;<br><br>Defendants' Ex. 19  and |

9

|  | the art would have understood the burster mechanism in the PlayCentral to be equivalent to the burster disclosed in the '337 patent. In both mechanisms, the separator member bursts the strip in one locale at the perforation and then sequentially bursts along the perforation as the relative motion continues through the bursting operation. The PlayCentral dispenses tickets through an outlet accessible to a customer. | related Behm testimony from 5/27/05 deposition at, e.g., 104-108. |
|---|---|---|
| control means for causing each ticket in said batch to be separated and dispensed separately from the other tickets in said batch regardless of the number of tickets in said batch. | The means disclosed in the '337 patent for performing the recited function includes a processor.<br><br>The PlayCentral includes a processor which controls its operation. In response to a request to purchase a batch of tickets received from the PlayCentral purchase screen, the processor issues a series of instructions to the burster mechanism to separate each ticket in the batch. Each ticket, after being separated, is dispensed via an outlet accessible to the customer. The PlayCentral control means is a processor, which is the same or equivalent structure to that disclosed in the '337 patent for performing the recited function. | *See, e.g.,* R2 & R5;<br><br>CO Functional Spec Version 1.4, SGI036474-610 at, e.g., SGI036505-6;<br><br>Johnson testimony from 5/10/05 deposition at, e.g., 64;<br><br>Behm Ex. 20, SGI108355-410, at, e.g., 108375 (GA Functional Spec) at, e.g., 108382-3;<br><br>TN functional spec., 44395-44516 at, e.g., 44421-2. |

| 21. A machine as in claim 20 in which said tickets are instant-winner lottery tickets. | The PlayCentral dispenses instant-winner lottery tickets. | *See, e.g.,* R1 & R2; |
|---|---|---|

10

| | | |
|---|---|---|
| 22.  Apparatus for dispensing tickets from a strip of tickets delineated from one another by lines along which the material of said strip is weakened, said apparatus comprising, in combination, | The PlayCentral dispenses instant lottery tickets delineated from each other by perforations. | |
| means for moving said strip towards a dispensing position, | The means disclosed in the '337 patent for moving the strip of tickets towards a dispensing position includes a motor which rotates a roller in a set of rollers, with the ticket strip between the rollers, such that movement of the motor causes movement of the rollers and ticket strip.<br><br>The PlayCentral includes a motor  which rotates a roller in a set of rollers, with the ticket strip between the rollers, such that movement of the motor causes movement of the rollers and ticket strip.  To burst a ticket, the motor causes movement of the rollers which advances the ticket strip towards a dispensing position.<br><br>The PlayCentral means for performing the recited function is the same or equivalent to the means disclosed in the '337 patent for performing this function. | *See, e.g.,* Behm testimony from 5/27/05 deposition at, e.g., 109;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition. |
| a separation member, | The PlayCentral's burster mechanism includes a dull, V-shaped separation member. | *See, e.g.,* Defendants' Ex. 19 and related Behm testimony from 5/27/05 deposition at, e.g., 104-108.<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and |

11

| | | related testimony from 5/27/05 deposition;<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition. |
|---|---|---|
| means for holding said strip adjacent one line along which said strip is to be separated, and causing said strip to bend along said one line at said dispensing position to facilitate tearing of said strip by engagement with said separator member along said one line while said strip is bend, | The means disclosed in the '337 patent for holding the strip includes a set of rollers. As the tickets are held, a motor causes relative motion between the ticket strip and the separation member, causing the strip to bend along the line to facilitate tearing of the strip.<br><br>The PlayCentral's burster mechanism has a movable "gate" and a roller that hold the ticket strip adjacent one line along which the strip is to be separated. As the tickets are held, a motor causes relative motion between the ticket strip and the separation member, causing the strip to bend along the line to facilitate the tearing of the strip of tickets by engagement with the separation member while the strip is bent.<br><br>The means in the PlayCentral for performing the recited function is the same as or equivalent to the means disclosed in the '337 patent. | *See, e.g.,* CO Functional Spec Version 1.4, SGI036474-610 at, e.g., SGI036513.<br><br>Bartolone testimony from 4/27/05 deposition at, e.g., 45;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition. |

| | | |
|---|---|---|
| and including drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip, with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line. | The drive means disclosed in the '337 patent includes a motor, which creates relative motion between the ticket strip and a separation member.<br><br>The PlayCentral's burster mechanism includes a motor. The motor pulls the ticket against separator. This creates relative motion between the strip and the separator member. The separator member, as it enters the perforation moves transverse to the strip. Also, the points of contact between the separator member and the perforation radiate in transverse direction, starting in the center of the strip, and moving in a transverse direction towards the edge of the strip. The separator member contacts the strip and causes it to deflect and bend along the perforation, causing the bursting apart of the ticket strip at the line of perforation.<br><br>This is the same as or equivalent to the structure disclosed in the '337 patent. | *See, e.g.,* R5;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 11, SGI084606-14 (burster hardware & firmware interface spec.);<br><br>Bartolone testimony from 4/27/05 deposition at, e.g., 45;<br><br>Behm testimony from 5/27/05 deposition at, e.g., 108. |

| | | |
|---|---|---|
| 24. Apparatus for dispensing tickets from a strip of tickets delineated from one another by lines along which the material of said strip is weakened, said apparatus comprising, in combination, | The PlayCentral dispenses instant lottery tickets delineated by perforations. | |
| means for moving said strip towards a dispensing position, | See same element of claim 22 above. | *See, e.g.,* same element of claim 22 above. |

| means for holding said strip adjacent one line along which said strip is to be separated, and bending said strip along said line to facilitate tearing of said strip along said one line, | See similar element of claim 22 above. | *See, e.g.,* similar element of claim 22 above;<br><br>Bartolone testimony from 4/27/05 deposition at, e.g., 45;<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 11, SGI086406-414 (burster hardware & firmware spec.) at, e.g., SGI084610. |
| including separation means having a separator member and drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip, with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line, | The "separation means" element is not subject to interpretation under 35 U.S.C. §112, ¶6, because the claim recites sufficient structure, i.e. a "separator member" and a "drive means", to perform the recited function.<br><br>The PlayCentral burster mechanism includes a dull, v-shaped separator member.<br><br>As to the drive means for creating motion, see the similar element of claim 22 above.<br><br>In the PlayCentral burster mechanism, relative motion between the ticket strip and the separator member in a direction transverse to the ticket strip is created by the drive means, deflecting the strip so that it bends along the perforation and bursts the stickets apart along the | *See, e.g.,* defendants' Ex. 19 and related Behm testimony from 5/27/05 deposition at, e.g., 104-108;<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 11, SGI086406-414 (burster hardware & firmware spec.) at, e.g., SGI084610;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition. |

14

| | perforation line.<br><br>Even if this element were subject to interpretation under 35 U.S.C. §112, ¶6, the Play Central burster mechanism is the same as or equivalent to the burster disclosed in the '337 patent. | |
| --- | --- | --- |
| and including means for causing said separator member to break through said strip in one locale and then traverse the strip along said line. | The burster wheel disclosed in the '337 patent breaks through the ticket strip at one locale, and from the perspective of the ticket strip, the burster wheel traverses the strip.<br><br>The relative motion between the separator member and the ticket strip in the PlayCentral is such that the separator member breaks through the ticket strip at one locale, and, from the perspective of the ticket strip, the separator member traverses the strip.<br><br>This is the same as or equivalent to the relative motion between the burster wheel and ticket strip in the '337 patent. | *See, e.g.,* Defendants' Ex. 19 and related Behm testimony from 5/27/05 deposition at, e.g., 107-8.<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 11, SGI086406-414 (burster hardware & firmware spec.) at, e.g., SGI084610;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition. |

| | | |
|---|---|---|
| 28. A dispenser for dispensing tickets from a strip of tickets printed in a strip with the individual tickets being delineated from one another by lines of weakness, | The PlayCentral dispenses instant lottery tickets from a strip of fan-folded tickets delineated from each other by perforated lines. | |
| moving means for moving said strip by a pre-determined distance to a position in which one of said lines is near a separation location at which adjacent tickets are separated from one another,    said moving means comprising drive means for moving said strip by a pre-determined distance, and | The means disclosed in the '337 patent for moving the strip of tickets towards a dispensing position includes a motor which rotates a roller in a set of rollers, with the ticket strip between the rollers, such that movement of the motor causes movement of the rollers which results in movement of the ticket strip. To burst a ticket, the motor causes movement of the rollers, advancing the ticket strip towards a dispensing position.<br><br>The PlayCentral includes a motor which rotates a roller in a set of rollers, with the ticket strip between the rollers, such that movement of the motor causes movement of the rollers which results in the movement of the ticket strip.<br><br>The PlayCentral means for performing the recited function is the same or equivalent to the means disclosed in the '337 patent for performing this function. | *See, e.g.,* R1 & R5;<br><br>Behm Ex. 11, SGI086406-414 (burster hardware & firmware spec.) at, e.g., SGI084610;<br><br>SGI033854 (Burster Firmware Operation email);<br><br>Behm Ex. 9, SGI108488 (sample burster) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition. |
| position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means to drive said strip until said output signal indicates that said strip | The mechanism disclosed in the '337 patent for performing the recited function includes a sensor which detects that the strip actually has moved by a predetermined distance. | *See, e.g.,* R1, R2, & R5;<br><br>Behm Ex. 11, SGI086406-414 (burster hardware & firmware spec.) at, e.g., SGI084611;<br><br>Behm Ex. 9, SGI108488 |

16

| | | |
|---|---|---|
| actually has moved by said pre-determined distance to dispense one of said tickets, and to control means for severing a ticket from said strip. | The PlayCentral burster mechanism includes two sensors, a load sensor and a leading edge sensor, which are used in conjunction with the burster controller, to detect actual ticket positions and distances actually moved by the ticket strip, and to control the separation of tickets for dispensing.<br><br>At the load and initialization stage, the load and leading edge sensors are used in conjunction to measure the actual distance a ticket moves to advance it past the sensors, which is used to determine the actual length of an instant ticket.<br><br>Prior to dispensing, the leading edge sensor is used to detect the actual position of the ticket strip so that the ticket strip can be positioned at a known position.  The ticket is then advanced a predetermined distance forward under the control of the burster controller.<br><br> The motor is then reversed, pulling the ticket strip against the separator member to separate the tickets.  The motor is moved by a predetermined distance in the reverse direction.   The leading edge sensor is monitored  to insure that the ticket strip's leading edge has actually moved backwards by the correct distance and that  the separator member has actually separated the leading ticket in the strip.  Thus, an output signal indicates that the strip actually | (sample burster) and related testimony from 5/27/05 deposition;<br><br>Behm Ex. 8, SGI-E107907-4 (burster CAD drawing) and related testimony from 5/27/05 deposition. |

| | has moved by the predetermined distance.<br><br>The means in the PlayCentral is the same as or equivalent to the means disclosed in the '337 patent. | |
|---|---|---|

Dated: June 10, 2005

As to objections:

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253

KENYON & KENYON
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

<u>CERTIFICATE OF SERVICE</u>

I, Larissa A. Soccoli hereby certify that on this 10th day of June, 2005, I did cause a true and correct copy of *Plaintiff GTech's Supplemental Responses to Defendants' First Set of Interrogatories (No. 1)* to be served by e-mail on the following:

Rodger D. Smith, Esq.
Morris, Nichols, Arsht, & Tunnell
1201 N. market Street
Wilmington, DE 19801


Larissa A. Soccoli

<u>CERTIFICATE OF SERVICE</u>

I, Phillip K. Lum, hereby certify that on this 11th day of June, 2005, I did cause a true and correct copy of Plaintiff GTech's Corporation's Supplemental Responses to Defendants' First Set of Interrogatories (No. 1) to be served by overnight courier on the following:

Jack B. Blumenfeld, Esq.
Morris, Nichols, Arsht, & Tunnell
1201 N. market Street
Wilmington, DE 19801

Phillip K. Lum

# EXHIBIT J

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| GTECH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-138-JJF |
| | ) | |
| v. | ) | |
| | ) | |
| SCIENTIFIC GAMES INTERNATIONAL, INC., | ) | |
| SCIENTIFIC GAMES HOLDINGS | ) | |
| CORPORATION, SCIENTIFIC GAMES | ) | |
| FINANCE CORPORATION, and SCIENTIFIC | ) | |
| GAMES CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF GTECH CORPORATION'S NOTICE OF DEPOSITION OF
DEFENDANTS SCIENTIFIC GAMES INTERNATIONAL, INC., SCIENTIFIC GAMES
HOLDINGS CORPORATION, SCIENTIFIC GAMES FINANCE CORPORATION AND
SCIENTIFIC GAMES CORPORATION PURSUANT TO FED. R. CIV. P. 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiff, GTECH

Corporation ("GTECH"), through its attorneys, will take the deposition upon oral examination of

Defendants, Scientific Games International, Inc., Scientific Games Holdings Corporation,

Scientific Games Finance Corporation, and Scientific Games Corporation (collectively

"Scientific Games") commencing at 9:00 a.m. on April 8, 2005, and continuing from day to day

thereafter until completed, at the law offices of KENYON & KENYON, One Broadway, New

York, New York, 10004, or at any other time and place as may be mutually agreed to by counsel

for the parties.  Scientific Games shall designate one or more of its officers, directors, managing

agents, or other persons who consent to testify on its behalf, and shall set forth for each person

the matters on which they are to testify.  The topics for examination listed are in the attached

Schedule A.

The deposition will be taken before a notary public or other officer duly authorized to administer oaths and take testimony, and will be recorded by stenographic means, and/or audiotape(s) and/or videotape.

You are invited to attend.

Dated: March 29, 2005

By _____
Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253

OF COUNSEL:

Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

2

## SCHEDULE A

The instructions and definitions set forth in *Plaintiff GTECH Corporation's First Set of Requests for the Production of Documents and Things* are incorporated by reference herein and shall apply to this Notice of Deposition.

1.    Conception, research, design, engineering, development, testing, manufacture, and/or operation of TVMs made, used, sold, or offered for sale by Scientific Games.

2.    Conception, research, design, engineering, development, testing, manufacture, and/or operation of Scientific Games' PlayCentral Kiosk.

3.    Conception, design, development, operation, manufacture, and/or testing of the ticket dispensing apparatus or "burster" used in Scientific Games' PlayCentral Kiosk.

4.    Conception, design, development, testing, and operation of the customer interface for the Scientific Games' PlayCentral Kiosk, including the design, development, testing, and operation of any touch screen user interface screens.

5.    Conception, design, source code, development, testing, and operation of any programs, code, software, or firmware which are part of or run on Scientific Games' PlayCentral Kiosk.

6.    Conception, design, coding, documentation, development, testing, and operation of any programs, code, software, or firmware which are part of or run on Scientific Games' PlayCentral Kiosk and which are used to control or operate the ticket dispensing apparatus or "burster."

7.   Conception, design, coding, documentation, development, testing, and operation of any programs, code, software which are part of or run on Scientific Games' PlayCentral Kiosk and which are used to control or operate the touch screen user interface.

8.   Conception, design, coding, documentation, development, testing, and operation of any procedures, programs, code, or software which are used to load or download graphical information, graphics files, and/or graphical display information on or to Scientific Games' PlayCentral Kiosk.

9.   The format, creation, layout, and/or design of graphical information, graphics files, and/or graphical display information for use on the Scientific Games' PlayCentral Kiosk, and any procedures and processes used to create such information or files.

10.  Trials, pilots, and/or tests of PlayCentral Kiosk by any state lottery, foreign lottery, or other Scientific Games customer, including field test results, maintenance, or defect correction issues.

11.  Trial, pilot, test deployment, and/or field testing of the PlayCentral Kiosk by, with, or for the Pennsylvania Lottery Corporation, including field test results, maintenance, or defect correction issues.

12.  Trial, pilot, test deployment, and/or field testing of the PlayCentral Kiosk by, with, or for the Georgia Lottery Corporation, including field test results, maintenance, or defect correction issues.

4

13. Trial, pilot, test deployment, and/or field testing of the PlayCentral Kiosk by, with, or for the Colorado Lottery, including field test results, maintenance, or defect correction issues.

14. Trial, pilot, test deployment, and/or field testing of the PlayCentral Kiosk by, with, or for the Tennessee Education Lottery, including field test results, maintenance, or defect correction issues.

15. Bids, Proposals, Responses to Request for Proposals, and/or other offers by Scientific Games to any state or foreign lottery which included, featured, or offered TVMs.

16. Communications between Scientific Games and any state lottery, foreign lottery, or other Scientific Games' customer concerning TVMs.

17. Communications between Scientific Games and any state lottery, foreign lottery, or other Scientific Games' customer concerning PlayCentral Kiosk.

18. Bids, Proposals, Responses to Request for Proposals, and/or other offers by Scientific Games to any state or foreign lottery which included, featured, or offered Scientific Games' PlayCentral Kiosk.

19. Negotiations, contracts and/or agreements between Scientific Games and any state lottery, foreign lottery, or other Scientific Games customer for the purchase, sale, lease, delivery, use, or deployment of TVMs.

20. Negotiations, contracts and/or agreements between Scientific Games and any state lottery, foreign lottery, or other Scientific Games customer for the purchase, sale, lease, delivery, use, or deployment of Scientific Games' PlayCentral Kiosk.

21. Negotiations, contracts and/or agreements between Scientific Games and any state lottery, foreign lottery, or other Scientific Games customer, where the contracts or other agreements permit or include as an option the sale, lease, purchase, use, or deployment of Scientific Games' PlayCentral Kiosk.

22. Negotiations, contracts and/or agreements between Scientific Games and the Colorado Lottery that concern TVMs.

23. Negotiations, contracts and/or agreements between Scientific Games and the Colorado Lottery that concern Scientific Games' PlayCentral Kiosk.

24. Negotiations, contracts and/or agreements between Scientific Games and the Georgia Lottery Corporation that concern TVMs.

25. Negotiations, contracts and/or agreements between Scientific Games and the Georgia Lottery Corporation that concern Scientific Games' PlayCentral Kiosk.

26. Negotiations, contracts and/or agreements between Scientific Games and Pennsylvania Lottery Corporation that concern TVMs.

27. Negotiations, contracts and/or agreements between Scientific Games and Pennsylvania Lottery Corporation that concern Scientific Games' PlayCentral Kiosk.

28. Negotiations, contracts and/or agreements between Scientific Games and Tennessee Education Lottery Corporation that concern TVMs.

29. Negotiations, contracts and/or agreements between Scientific Games and Tennessee Education Lottery Corporation that concern Scientific Games' PlayCentral Kiosk.

6

30. Delivery to, deployment by, or use of PlayCentral Kiosk by any state lottery, foreign lottery, or other Scientific Games customer, including dates and numbers of machines actually deployed and/or delivered, and dates and numbers of machines planned, committed, and/or contracted for delivery.

31. Scientific Games' revenue, costs, expenses, and profits or losses (gross and net), including forecasted and actual revenue, costs, expenses, and profits and losses generated by Scientific Games' PlayCentral Kiosk; and how such revenue, costs, expenses, and profits or losses are accounted for and reported, including but not limited to Scientific Games' sales, accounting, and financial systems.

32. Scientific Games' revenue, costs, expenses, and profits or losses (gross and net), including forecasted and actual revenue, costs, expenses, and profits and losses generated by Scientific Games' TVMs; and how such revenue, costs, expenses, and profits or losses are accounted for and reported, including but not limited to Scientific Games' sales, accounting, and financial systems.

33. Marketing, promotion, advertising, and offering for sale of TVMs by Scientific Games.

34. Marketing, promotion, advertising, and offering for sale of Scientific Games' PlayCentral Kiosk.

35. The market(s) for instant ticket vending or dispensing machines, the market(s) for products covered by the Patents-in-Suit, and the market(s) for Scientific Games' PlayCentral Kiosk, and any market research, studies, or analyses, competitive analysis, sales forecasts, strategic or business plans concerning those markets.

7

36.    Competitors and/or competition in the market place for TVMs sold or offered for
sale by Scientific Games, including but not limited to: (a) the identity of each
actual and forecasted competitor in the market place; (b) and the market share of
each competitor, (c) the market share of Scientific Games in relation to each of its
competitors; (d) documents concerning competition between Scientific Games and
GTECH or any third party in the market place for TVMs; and (e) any studies,
analyses or evaluations made by or on behalf of Scientific Games regarding its
market share of the TVM market.

37.    Competitors and/or competition in the market place for the PlayCentral Kiosk sold
or offered for sale by Scientific Games, including but not limited to: (a) the
identity of each actual and forecasted competitor in the market place; (b) and the
market share of each competitor, (c) the market share of Scientific Games in
relation to each of its competitors; (d) documents concerning competition between
Scientific Games and GTECH or any third party in the market place for
PlayCentral Kiosk; and (e) any studies, analyses or evaluations made by or on
behalf of Scientific Games regarding its market share in the market for
PlayCentral Kiosk.

38.    Any products which Scientific Games believes or alleges are acceptable, non-
infringing substitutes or alternatives to the inventions claimed in the patents-in-
suit, including: (a) all reasons why such products would be acceptable to the
customers who use Scientific Games' TVMs and/or PlayCentral Kiosks; (b) all
reasons why such products would be available to Scientific Games; (c) all reasons
why such products would not be infringing the patents-in-suit; (d) all attempts by

8

Scientific Games to implement such a system; and (e) any successes and failures in implementing such a system.

39. Scientific Games' pricing, costs, expenses, revenues, and profits attributable to the sale, lease, deployment, delivery, or operation of TVMs, and the basis and method for determining such pricing, costs, expenses, revenues, and profits

40. Scientific Games' pricing, costs, expenses, revenues, and profits attributable to the sale, lease, deployment, delivery, or operation, or maintenance of Scientific Games' PlayCentral Kiosk, the basis and method for determining such pricing, costs, expenses, revenues, and profits.

41. Any comparisons between any of Scientific Games' TVMs and GTECH's or Interlott's TVMs.

42. The values of Scientific Games' TVMs and/or PlayCentral Kiosk to Scientific Games, investors in Scientific Games, or any other third party, including: (any opinions and/or analyses ascribing overall value or worth to Scientific Games' TVMs and/or PlayCentral Kiosks; (b) the methods used in such valuations, studies and analyses; (c) the benefits provided to Scientific Games because of the operation and use of such TVMS and/or PlayCentral Kiosk; (d) the increase in customer value attributable from the operation and use of such TVMs and/or PlayCentral Kiosks; (e) any impact on Scientific Games' business as a result of the operation and use of such TVMs and/or PlayCentral Kiosks; and (f) any impact on any competitor's business, including GTECH, as a result of the operation and use of such TVMS and PlayCentral Kiosks.

9

43. The reasons for launching each version of Scientific Games' PlayCentral Kiosk, including any business plans, revenue forecasts, projections, reports, proposals, studies, market research, or business models performed by or on behalf of Scientific Games or any third party.

44. The licenses or agreements entered into by Scientific Games, including (a) the terms of such licenses or agreements; (b) the purposes for entering into such licenses or agreements; (c) Scientific Games' licensing policies, whether formal or informal, relating to such licenses or agreements; and (d) all documents relating to licenses pursuant to which Scientific Games pays or received royalties.

45. The licenses or agreements entered into by Scientific Games concerning TVMs, including (a) the terms of such licenses or agreements; (b) the purposes for entering into such licenses or agreements; (c) Scientific Games' licensing policies, whether formal or informal, relating to such licenses or agreements; and (d) all documents relating to licenses pursuant to which Scientific Games pays or received royalties.

46. The licenses or agreements entered into by Scientific Games concerning PlayCentral Kiosk including (a) the terms of such licenses or agreements; (b) the purposes for entering into such licenses or agreements; (c) Scientific Games' licensing policies, whether formal or informal, relating to such licenses or agreements; and (d) all documents relating to licenses pursuant to which Scientific Games pays or received royalties.

47. Agreements to indemnify, hold harmless or defend against infringement of the patents-in-suit, and the terms of such agreements.

10

48. Scientific Games' first knowledge or awareness of: (i) the application that resulted in the '337 patent; (ii) the '337 patent; (iii) the application that resulted in the '624 patent; and/or (iv) the '624 patent, and the circumstances concerning such awareness, including the identification of the name and address of the individual(s) who first became aware, the date such individual(s) first became aware, any actions taken following such awareness and the identification (including by production number) of all documents referring or relating to any of the foregoing.

49. All communications made to or by Scientific Games that refer or relate to Scientific Games' awareness of: (i) the application that resulted in the '337 patent; (ii) the '337 patent; (iii) the application that resulted in the '624 patent; and/or (iv) the '624 patent.

50. All opinions and draft opinions of counsel, both written and oral, communicated to Scientific Games relating to the infringement or non-infringement, validity or invalidity, or enforceability or unenforceability of any claim of the patents-in-suit, including the identification of all authors and recipients thereof, the identification of all individuals who provided information in connection with the preparation of such opinions, and any reliance or lack of reliance thereof by Scientific Games on such opinions.

51. All communications made to or by Scientific Games concerning any opinions or draft opinions of counsel, both written and oral, communicated to Scientific Games that refer or relate to the infringement or non-infringement, validity or invalidity, or enforceability or unenforceability of any claim of the patents-in-suit,

11

including but not limited to communications made prior to the dates such opinions and draft opinions were made in connection with the preparation of such opinions and draft opinions, communications made with such opinions and draft opinions, and communications made subsequent to the dates such opinions and draft opinions were provided to Scientific Games.

52. All work and other activities engaged in by Scientific games in response to Scientific Games' awareness of: (i) the application that resulted in the '337 patent; (ii) the '337 patent; (iii) the application that resulted in the '624 patent; and/or (iv) the '624 patent, including but not limited to any attempt by Scientific Games to determine whether any of Scientific Games' products or services infringed any claim of the patents-in-suit.

53. Any attempt by Scientific Games to design around either of the Patents-in-Suit.

54. Any comparisons of Scientific Games' PlayCentral Kiosk with TVMs made, sold, or offered for sale by GTECH and/or Interlott.

55. Communication to or from Scientific Games personnel regarding this lawsuit and/or the Patents-in-Suit, including any communications from or to customers by Scientific Games personnel involved in sales, marketing, public relations, or government relations.

56. Communications between Scientific Games and On-Point Technologies concerning TVMs.

57. Communications between Scientific Games and Interlott concerning TVMs.

58. The conception, design, development, manufacture, operation, sale, offer for sale, and use of the "Player Activated Terminal" identified in Scientific

Games' Response to GTECH's Interrogatory No. 7, which Scientific Games alleges was "offered for sale and sold more than one year before the application for the '624 patent was filed," and any other substantially similar terminal.

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> Wilmington, DE  19801

I further certify that on March 29, 2005,  I caused a copy of the foregoing document to be served by hand-delivery on the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> Wilmington, DE  19801

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
kkeller@ycst.com

*Attorneys for GTECH Corporation*

## Discovery Documents
1:04-cv-00138-JJF Gtech Corporation v. Scientific Games Int, et al

**U.S. District Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Keller, Karen entered on 3/29/2005 at 5:45 PM EST and filed on 3/29/2005

| | |
|---|---|
| **Case Name:** | Gtech Corporation v. Scientific Games Int, et al |
| **Case Number:** | 1:04-cv-138 |
| **Filer:** | Gtech Corporation |
| **Document Number:** | 48 |

**Docket Text:**
NOTICE to Take Deposition of Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation on April 8, 2005 by Gtech Corporation.(Keller, Karen)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=3/29/2005] [FileNumber=18352-0]
[ae9d031fe4816deb49d612fedc1c93eb16297dcc6ba1ec47e73b0491f24a460334896
e5f44fefe064ffea1432147a7c16db3e718e8af1dc018c30d9ad3d21636]]

**1:04-cv-138 Notice will be electronically mailed to:**

Jack B. Blumenfeld    jbbefiling@mnat.com

Josy W. Ingersoll    jingersoll@ycst.com, corporate@ycst.com;cglover@ycst.com;corpcal@ycst.com

Karen Elizabeth Keller    kkeller@ycst.com, corporate@ycst.com;corpcal@ycst.com

**1:04-cv-138 Notice will be delivered by other means to:**

# EXHIBIT L

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT M

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY



# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT O

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY