# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

                    Plaintiff,

        v.

SCIENTIFIC GAMES INTERNATIONAL, INC.,
SCIENTIFIC GAMES HOLDINGS
CORPORATION, SCIENTIFIC GAMES
FINANCE CORPORATION, and SCIENTIFIC
GAMES CORPORATION,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

REDACTED

Civil Action No. 04-138-JJF

~~Confidential – Filed Under Seal~~

## GTECH'S ANSWERING BRIEF IN OPPOSITION TO
## SCIENTIFIC GAMES' MOTION FOR SUMMARY JUDGMENT

Dated: December 2, 2005

Josy W. Ingersoll (#1088)
Karen Keller (#4489)
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
jingersoll@ycst.com

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200

Douglas E. Ringel
KENYON & KENYON
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Attorneys for Plaintiff GTECH Corporation

## TABLE OF CONTENTS

Page No.

INTRODUCTION ........................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 2

BACKGROUND FACTS ............................................................................................. 2

STATEMENT OF DISPUTED FACTS ...................................................................... 4

I.     THE '337 PATENT ........................................................................................... 4

       A.     "Means for Separating"........................................................................ 4

       B.     "Dispensing Means" ............................................................................ 9

       C.     "Housing Means"............................................................................... 10

II.    THE '624 PATENT ......................................................................................... 12

       A.     "A Plurality of Arrays of Ticket Images" .......................................... 12

       B.     "Means for Dispensing"..................................................................... 15

III.   MARKING OF MACHINES WITH THE '337 AND '624 PATENT NUMBERS
       BY GTECH AND ITS PREDECESSORS ..................................................... 17

ARGUMENT ............................................................................................................. 18

I.     RELEVANT LEGAL AUTHORITY ............................................................. 18

II.    THE ISSUE OF INFRINGEMENT OF THE '337 PATENT SHOULD BE LEFT
       FOR THE JURY BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST ...... 19

       A.     Substantial Evidence Exists to Support a Finding From a Reasonable Jury
              That the PlayCentral Has the Claimed "Means for Separating."........................ 19

       B.     Substantial Evidence Exists to Support a Finding From a Reasonable Jury
              That the PlayCentral Has the Claimed "Dispensing Means.".............................. 25

       C.     Substantial Evidence Exists to Support a Finding From a Reasonable Jury
              That the PlayCentral Has the Claimed "Housing Means." ................................... 27

III.   THE ISSUE OF INFRINGEMENT OF THE '624 PATENT SHOULD BE LEFT
       FOR THE JURY BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST ...... 29

       A.     Substantial Evidence Exists to Support a Finding From a Reasonable Jury
              That the PlayCentral Has the Claimed "Plurality of Arrays of Ticket
              Images." ............................................................................................................ 29

       B.     Substantial Evidence Exists to Support a Finding From a Reasonable Jury
              That the PlayCentral Has the Claimed "Means for Dispensing.".......................... 35

IV.    SUMMARY JUDGMENT SHOULD BE GRANTED IN GTECH'S FAVOR
       THAT GTECH COMPLIED WITH THE MARKING STATUTE ................................ 36

V.     CONCLUSION................................................................................................ 39

# TABLE OF AUTHORITIES

Page No.

**CASES**

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999) .................................................. 19

*Bose Corp. v. JBL, Inc.*, 274 F.3d 1354 (Fed. Cir. 2002) ............................................................. 32

*Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372 (Fed. Cir. 2005) ...................................... 19

*Catalina Mkg. Int'l, Inc. v. Coolsaving.com, Inc.*, 289 F.3d 801 (Fed. Cir. 2002)...................... 18

*Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374 (Fed. Cir. 2000) .............................. 20, 21, 22, 28

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303
    (Fed. Cir. 1998)................................................................................................................ 22, 23

*Dorel Juvenile Grp. v. Graco Children's Prods.*, 2005 U.S. App. LEXIS 23964
    (Fed. Cir. Nov. 7, 2005)........................................................................................................ 18

*Envirco Corp. v. Clestra Cleanroom*, 209 F.3d 1360 (Fed. Cir. 2000) ........................................ 27

*Gart v. Logitech, Inc.*, 254 F.3d 1334 (Fed. Cir. 2001) ................................................................ 38

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2004) ................................ 19

*Insituform Tech. Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360 (Fed. Cir. 2004) ....................... 34

*Interactive Pictures Corp. v. Infinite Pictures, Inc.* 274 F.3d 1371 (Fed. Cir 2002).................... 33

*Izumi Prods. v. Koninklijke Philips Electronics N.V.*, 315 F. Supp. 2d 589 (D. Del. 2004) ........ 18

*JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324 (Fed. Cir. 2005). .......................... 22, 23

*Keller v. United States*, 58 F.3d 1194 (7th Cir. 1995) .................................................................. 23

*Kraft Foods, Inc. v. Int'l Trading*, 203 F.3d 1362 (Fed. Cir. 2000).............................................. 31

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353 (Fed. Cir. 2002).................... 18

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ..................................................... 18

*Nomos Corp. v. Brainlab, Inc.*, 239 F. Supp. 2d 430 (D. Del. 2003) ...................................... 22, 23

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) .......................................... 18

*Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30 (1929) ........................................................... 23

*Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910 (Fed. Cir. 2005) ................................. 36

*Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002) ................................. 37

*Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*, 157 F.3d 1311 (Fed. Cir. 1998).................... 26

*Vulcan Eng. Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366 (Fed. Cir. 2002) ................................... 23

*WMS Gaming Inc. v. Intl. Game Techn.*, 184 F.3d 1339 (Fed. Cir. 1999) .................................... 19

*Zenith Labs v. Bristol Myers*, 19 F.3d 1418 (Fed. Cir. 1994)....................................................... 24

**STATUTES**

35 U.S.C. § 102................................................................................................................................ 2

35 U.S.C. § 112......................................................................................................................... passim

35 U.S.C. § 287(a) .......................................................................................................................... 36

**RULES**

Fed. R. Civ. P. 56(c) ....................................................................................................................... 18

## INTRODUCTION

Plaintiff GTECH Corporation ("GTECH") respectfully submits this brief in opposition to the motion for summary judgment by Defendants ("Scientific Games") that: (1) claims 20 and 21 of U.S. Patent No. 4,982,337 (the "'337 patent," Ex. A[1]) are not infringed, (2) claim 18 of U.S. Patent No. 5,222,624 (the "'624 patent," Ex. B) is not infringed, and (3) GTECH is precluded from obtaining pre-suit damages due to an alleged failure by GTECH and its predecessors to mark products with the '337 and '624 patent numbers.

The question of infringement is a question of fact. Scientific Games contends that there is no genuine issue of material fact that the accused PlayCentral machine does not meet three limitations of '337 patent claims 20 and 21 — the "means for separating," "dispensing means," and "housing means" — and two claim limitations of '624 patent claim 18 — "a plurality of arrays of ticket images" and "means for dispensing." However, as shown in the exhibits accompanying this brief, GTECH has provided evidence, particularly the testimony of two experts, Joseph Perin and Sheila Smith, who will testify at trial that the accused PlayCentral machine infringes the asserted claims. This evidence has been provided both under the claim constructions that GTECH has proposed as well as under the claim constructions that Scientific Games has proposed. Accordingly, regardless of the claim construction adopted, at a minimum, GTECH's evidence — which must be viewed in the light most favorable to GTECH on this motion — demonstrates that the issue of infringement, a question of fact, should be left to the jury to decide.

With respect to Scientific Games' motion for summary judgment concerning patent marking, the facts conclusively establish that GTECH and its predecessors satisfied the patent

---

[1]     "Ex. ___" refers to the exhibits annexed to this brief. "___ Decl. Ex. ___" refers to exhibits annexed to declarations submitted herewith in support of this opposition brief.

marking statute. There is no contrary evidence. Accordingly, summary judgment on this issue should be granted in favor of GTECH.

## NATURE AND STAGE OF THE PROCEEDINGS

GTECH asserts that Scientific Games has infringed claims 20 and 21 of the '337 patent and claim 18 of the '624 patent (collectively "the asserted claims") with its lottery ticket vending machine called the PlayCentral Kiosk ("the PlayCentral").

Fact and expert discovery is complete. Claim construction briefing has been fully submitted, and a *Markman* hearing was held November 18, 2005. GTECH has moved for partial summary judgment that the asserted claims are not invalid under 35 U.S.C. § 102. (D.I. 130). Scientific Games' brief in opposition to that motion is due on December 2, 2005. A pre-trial conference is scheduled for January 12, 2006. A jury trial is set for February 21, 2006.

## BACKGROUND FACTS

GTECH's predecessor Interlott Technologies, Inc. ("Interlott"), which owned both the '337 patent and the '624 patent, was the undisputed leader in lottery instant ticket vending machines ("ITVMs").

REDACTED

GTECH recognized the novelty and commercial value of Interlott's technology and decided to purchase Interlott, investing a substantial amount of money to do so.

REDACTED

. Displaying multiple games, in full color, all at once is the very feature that Robert Burr recognized back in 1989 when the application for the '624 patent was filed, and displaying those multiple games on a video screen is the subject matter of claim 18 of the '624 patent. As the U.S. Patent and Trademark Office recognized by granting the '624 patent, prior to Mr. Burr's invention, nobody had earlier suggested these features. In fact, prior to then, ITVMs that were introduced did not sell multiple instant games; they only sold one instant ticket game at a time.

## STATEMENT OF DISPUTED FACTS

In its brief (D.I. 130), Scientific Games includes a "Statement of Facts" that includes sections of alleged "facts" about the '337 and '624 patents. These alleged "facts" are re-hashed arguments from Scientific Games' claim construction briefing. GTECH has already addressed those claim construction arguments in its two briefs on claim construction (D.I. 112, D.I. 117) and at the *Markman* hearing (D.I. 146), and, thus, will not address them again here. GTECH respectfully refers the Court to that prior briefing and argument. (D.I. 112, D.I. 117, D.I. 146).

Further, while Scientific Games ostensibly sets forth facts concerning Scientific Games' PlayCentral machine in the "Statement of Facts" section of its brief, Scientific Games does not in that section, nor in any other place in its brief, provide a list of facts that Scientific Games considers undisputed and necessary to support the motion. Because there are a number of facts that are necessary to support Scientific Games' motion and that are disputed, GTECH provides this Statement of Disputed Facts. The disputed facts are listed with respect to each of the claim limitations that Scientific Games has addressed in its motion.

## I.    THE '337 PATENT

### A.    "Means for Separating"

Scientific Games contends that there is no genuine issue of material fact as to whether the PlayCentral has the claimed "means for separating" of '337 claims 20 and 21. The following evidence supports a conclusion by a jury to the contrary.

REDACTED

4

REDACTED

2.    Even under Scientific Games' construction, the PlayCentral meets the "means for separating" limitation of '337 claims 20 and 21, because, under 35 U.S.C. § 112, para. 6, the limitation literally covers the identified structure "and equivalents thereof," and the evidence supports a finding of equivalence.  This is demonstrated by the following facts:

REDACTED

---

[2]     GTECH's experts, Joseph C. Perin, Jr., and Shelia Smith, each have submitted two expert reports in this litigation.  Those reports are annexed to their respective Declarations submitted herewith in support of this brief as follows:  "Perin Decl. Ex. A" – Perin Opening Report; "Perin Decl. Ex. B" – Perin Rebuttal Report; "Smith Decl. Ex. A" – Smith Opening Report; "Smith Decl. Ex. B" – Smith Rebuttal Report.

REDACTED

REDACTED

REDACTED

**B.     "Dispensing Means"**

Scientific Games contends that there is no genuine issue of material fact as to whether the PlayCentral has the claimed "dispensing means" of '337 claims 20 and 21. The following evidence supports a conclusion by a jury to the contrary.

REDACTED

4.     Even under Scientific Games' construction, the PlayCentral meets the "dispensing means" limitation of '337 claims 20 and 21, because, under 35 U.S.C. § 112, para. 6, the limitation literally covers the identified structure "and equivalents thereof," and the evidence supports a finding of equivalence. This is demonstrated by the following facts:

4(a).     The parties have essentially the same proposed construction of this "dispensing means" limitation, with the parties agreeing that the structure disclosed in the '337 patent to perform the recited function is a pair of exit or "kick-out" through a dispensing outlet opening. (D.I. 130 at 28-29).

REDACTED

9



### C.    "Housing Means"

Scientific Games contends that there is no genuine issue of material fact as to whether the PlayCentral has the claimed "housing means" of '337 claims 20 and 21.  The following evidence supports a conclusion by a jury to the contrary.

REDACTED

REDACTED

6.     Even under Scientific Games' construction, the PlayCentral meets the "housing means" limitation of '337 claims 20 and 21, because, under 35 U.S.C. § 112, para. 6 (which Scientific Games argues applies to this limitation), the limitation would literally cover the identified structure "and equivalents thereof," and the evidence supports a finding of equivalence.  This is demonstrated by the following facts:

REDACTED

11

REDACTED

## II.    THE '624 PATENT

### A.    "A Plurality of Arrays of Ticket Images"

Scientific Games contends that there is no genuine issue of material fact as to whether the PlayCentral has the claimed "plurality of arrays of ticket images." The following evidence supports a conclusion by a jury to the contrary.

7.    Under GTECH's proposed construction, the term "plurality of arrays" means more than one grouping, arrangement or ordering of two or more things, and "ticket images" means graphical representations of the tickets for sale in the machine. "Ticket images" does not require an exact picture or replica of the ticket. The "icons" on the PlayCentral game selection screen represent the actual tickets dispensed by the machine and do so through the use of graphical elements.

REDACTED

REDACTED

. Thus, the PlayCentral meets the "plurality of arrays of ticket images" limitation of '337 claims 20 and 21.

8.    Even under Scientific Games' construction, the PlayCentral meets the "plurality of arrays of ticket images" limitation of '337 claims 20 and 21. This is demonstrated by the following facts:

8(a).    If the term "ticket images" is construed to require an exact picture or replica of the ticket, the display of rows of "icons" on the PlayCentral game selection screen with each icon having a direct link to an exact replica of the ticket on the purchase screen is equivalent to an plurality of arrays of exact pictures or replicas of tickets. The PlayCentral game selection screen shows multiple rows of "icons," and, when an "icon" is pressed, the PlayCentral shows a purchase screen that shows a replica of the actual ticket represented by the "icon."

REDACTED

REDACTED

8(b).    If the term "array" is construed to require a strip of multiple tickets, then the

limitation is met by equivalents because each "icon" on the PlayCentral game selection screen is

equivalent to a strip, representing a game with multiple tickets in the machine.

REDACTED

REDACTED

## B.    "Means for Dispensing"

Scientific Games contends that there is no genuine issue of material fact as to whether the PlayCentral has the claimed "means for dispensing" of '624 claim 18. The following evidence supports a conclusion by a jury to the contrary.

REDACTED

10.    Even under Scientific Games' construction, the PlayCentral meets the "means for dispensing" limitation of '624 claim 18. This is demonstrated by the following facts:

10(a). Scientific Games' construction is that the structure corresponding to the "means for dispensing" limitation of '624 claim 18 is the same as the structure it identifies as corresponding to the "means for separating" in '337 claims 20 and 21. Accordingly, GTECH refers to the disputed facts referenced above with respect to that claim limitation.

10(b). Scientific Games' construction also is that structure corresponding to the "means for dispensing" limitation of '624 claim 18 includes an outlet opening, outfeed rollers, a receptacle and a keypad. Scientific Games does not dispute that the PlayCentral contains an outlet opening and receptacle, nor does it dispute in its motion that the PlayCentral has a keypad

or the equivalent thereof.

REDACTED

REDACTED

III.   **MARKING OF MACHINES WITH THE '337 AND '624 PATENT NUMBERS BY GTECH AND ITS PREDECESSORS.**

REDACTED

12.    Interlott, a previous assignee of the '337 patent and the '624 patent, and GTECH, the current assignee of the '337 patent and the '624 patent, have marked their ITVMs that have bursters with the number of the '337 patent.  Since at least the beginning of 2002, Interlott and GTECH have marked all or substantially all of these machines with the number of the '337 patent.  (Roberts Decl. at ¶¶ 4-11, 14-15; Zimmer Decl.[4] at ¶¶ 2-11, 14-15).  Interlott and GTECH have also marked their ITVMs that display "live" tickets through windows (one embodiment of the '624 patent, in addition to the video embodiment which has not been practiced by GTECH or Interlott) with the number of the '624 patent.  Since at least the beginning of 2002, Interlott and GTECH have marked all or substantially all of these machines

---

[3]    "Roberts Decl." refers to the Declaration of Brian Roberts submitted herewith in support of this opposition brief.
[4]    "Zimmer Decl." refers to the Declaration of Richard Zimmer submitted herewith in support of this opposition brief.

with the number of the '624 patent. (Roberts Decl. at ¶¶ 4-5, 12-14, 16; Zimmer Decl. at ¶¶ 2-3, 10-14, 16).

ARGUMENT

## I.    RELEVANT LEGAL AUTHORITY

Summary judgment is appropriate only where the totality of the record demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Catalina Mktg. Int'l, Inc. v. Coolsaving.com, Inc.*, 289 F.3d 801, 807 (Fed. Cir. 2002); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003). Summary judgment is inappropriate when, as here, there are factual disputes about whether the accused product falls within the claims. *See, e.g., Dorel Juvenile Grp. v. Graco Children's Prods.*, 2005 U.S. App. LEXIS 23964, at *9-10 (Fed. Cir. Nov. 7, 2005) (attached as Ex. JJ); *Izumi Prods. v. Koninklijke Philips Electronics N.V.*, 315 F. Supp. 2d 589, 599-600 (D. Del. 2004).

While claim construction is an issue of law, the ultimate question of infringement — whether an accused product meets each and every element of the properly construed claim — is a question of fact. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). Infringement determinations are inherently factual, particularly when they require assessments of structural equivalents and/or consideration of infringement under the doctrine of equivalents. "Because infringement under the doctrine of equivalents often presents a difficult factual determination, a summary conclusion that a reasonable jury could not find infringement is often illusive." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1360 (Fed. Cir. 2002). Even where two devices are physically different, the question of whether they are equivalent structures in a means-plus-function analysis is a question of fact for the jury. *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1432, 1436-7 (Fed. Cir. 2004) (reversing

18

summary judgment of non-infringement which held that a floppy disk and a tape drive were not equivalent structures).

In evaluating a summary judgment motion, the evidence of the non-movant, here GTECH, is presumed true, and a court must "draw[s] all justifiable inferences in favor of the non-movant." *See Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1376 (Fed. Cir. 2005).

## II.    THE ISSUE OF INFRINGEMENT OF THE '337 PATENT SHOULD BE LEFT FOR THE JURY BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST.

### A.    Substantial Evidence Exists to Support a Finding From a Reasonable Jury That the PlayCentral Has the Claimed "Means for Separating."

As detailed above in the Statement of Disputed Facts, GTECH's evidence supports a finding that the PlayCentral meets the claimed "means for separating" limitation. On this motion, this evidence must be viewed in the light most favorable to GTECH. A reasonable jury could accept the testimony of Mr. Perin, as well as GTECH's other evidence, and find in GTECH's favor on this issue. The issue should not be decided on summary judgment.

Under 35 U.S.C. § 112, para. 6, structures are equivalent if they are insubstantially different. *WMS Gaming Inc. v. Intl. Game Tech.,* 184 F.3d 1339, 1353 (Fed. Cir. 1999). For a means-plus-function element governed by § 112, para. 6, such as the "means for separating" in '337 claims 20 and 21, equivalents of corresponding structure shown in the patent specification are *literally* included within the claim scope. *See Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999).

The parties agree that the corresponding structure for the "means for separating" includes three elements that work in combination — "a separator member, which functions in combination with a 'holding means and a drive means.'"



19

REDACTED

[T]he individual components, if any, of an overall structure that
corresponds to the claimed function are not claim limitations.
Rather, the claim limitation is *the overall structure* corresponding
to the claimed function.

*Caterpillar*, 224 F.3d at 1380 (emphasis added).

In the *Caterpillar* case, the patent concerned "frictionally driven belted work vehicles" — vehicles that have belts that connect and wrap around the front and back wheels on each side of the vehicle — such as farm tractors. *Id.* at 1375. The claim limitations at issue were means-plus-function elements reciting "tensioning means" for "making the belt taut around the wheels" and for "longitudinally separating the front and rear wheels." *Id.* at 1376, 1379. The corresponding structure in the patent for performing these recited functions was a pair of hydraulic cylinders, and angled struts linking the cylinders to a front axle which was mounted on a spherical bearing slidably mounted on a pivot pin connected to the frame, as well as equivalents of this structure. *Id.* at 1379. The district court held that no reasonable jury could have found insubstantial differences between this structure and the accused tractor which lacked a front axle, spherical bearing and angled struts, which had differences in the number and size of parts involved, and which performed the tensioning function differently, i.e. through a "swing link" tensioning system. *Id.* at 1378, 1380.

The Federal Circuit disagreed, vacating the summary judgment of non-infringement and holding that the district court conducted an "impermissible component-by-component analysis to determine that no reasonable jury could find structural equivalence." *Id.* at 1380. Despite "admittedly physical differences between the accused and claimed structures," whether those differences are substantial is an issue of fact for the trier of fact to resolve. *Id.*

> The expert testimony and evidence of known interchangeability were more than sufficient to create a genuine issue of material fact regarding the equivalence of the accused swing link tensioning system to the claimed tensioning means structure under 35 U.S.C. § 112, P. 6, which requires the issue of infringement be submitted to a jury.

*Id.*

21

REDACTED

Scientific Games cites *Nomos Corp. v. Brainlab, Inc.* for the proposition that a fixedly mounted thing (i.e., the separator member in the PlayCentral) cannot be equivalent to a movably mounted thing (i.e., the separator member in the '337 patent), and that for this reason the PlayCentral does not have the "means for separating".   (D.I. 130 at 26-27).   Scientific Games also cites *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, arguing that wheels cannot be equivalent of a fixed plate, and *JVW Enters. v. Interact Accessories, Inc.*, arguing that rotational movement is not equivalent to linear vertical movement. (D.I. 130 at 24-26).   These cases are inapposite.

REDACTED

REDACTED

REDACTED

REDACTED

**B.    Substantial Evidence Exists to Support a Finding From a Reasonable Jury That the PlayCentral Has the Claimed "Dispensing Means."**

The parties agree that claim 20's "dispensing means for dispensing tickets through said outlet opening" is a means-plus-function element governed by 35 U.S.C. § 112, para. 6, and that the claimed function is dispensing tickets through an outlet opening. The parties also agree that the corresponding structure in the '337 patent is a pair of exit or "kick-out" rollers.

REDACTED

REDACTED



### C. Substantial Evidence Exists to Support a Finding From a Reasonable Jury That the PlayCentral Has the Claimed "Housing Means."

Claim 20 recites a "housing means for storing a strip of tickets to be dispensed." GTECH contends that this element is not a means-plus-function element governed by 35 U.S.C. § 112, para. 6 because a "housing," which is recited in the claim, is sufficient structure to perform the recited function of "storing a strip of tickets to be dispensed." *Envirco Corp. v. Clestra Cleanroom*, 209 F.3d 1360, 1365 (Fed. Cir. 2000) (use of "baffle" in "second baffle means" rebutted the presumption § 112, para. 6 applied). Scientific Games contends that this is a means-plus-function limitation and that additional structure, such as a control panel, a dispensing outlet and a front/back orientation wherein the control panel is on one end that faces the agent and the outlet opening is on the other end facing the customer, must be included.[5] However, even if "housing means" were construed as a means-plus-function element, Scientific Games' proposed claim construction is incorrect because it artificially rewrites the function of the claim element — from "storing a strip of tickets to be dispensed" to "storing a strip of tickets to be dispensed and providing a control area for a clerk and an opposite outlet area for a customer" – and improperly imports structure that does not perform the "storing" function. Neither the control panel nor the dispensing outlet stores tickets, and a front/back orientation of surfaces on the housing is not necessary for the housing to perform the recited "storing" function.

REDACTED

27

REDACTED

III.    **THE ISSUE OF INFRINGEMENT OF THE '624 PATENT SHOULD BE LEFT FOR THE JURY BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST.**

A.    **Substantial Evidence Exists to Support a Finding From a Reasonable Jury That the PlayCentral Has the Claimed "Plurality of Arrays of Ticket Images."**

There is no dispute that under GTECH's proposed construction, the PlayCentral displays a "plurality of arrays of ticket images."

REDACTED

. The PlayCentral displays more than one grouping of two or more of these "icons," i.e. a "plurality of arrays" of these ticket images, as required by claim 18 of the '624 patent. (*See, e.g.*, D.I. 130 at 10 (Fig. 3 showing multiple rows of "icons")).

Scientific Games attempts to escape the embrace of the claim 18 by asking the Court to adopt a strained, improper construction of "plurality of arrays of ticket images." Scientific Games argues that "plurality of arrays of ticket images" should be construed as "more than one array, where each array is a moveable strip of graphical representations (or video images) of actual lottery tickets." (D.I. 130 at 33).

However, even under Scientific Games' proposed construction, the "icons" on the PlayCentral are "ticket images." Scientific Games' proposed definition of the "ticket images" is "graphical representations (or video images) of actual lottery tickets," and the "icons" displayed on the PlayCentral game selection screen meet that definition.

REDACTED

REDACTED

Insofar as Scientific Games' construction of the term "ticket images" requires that the graphical representation of the lottery tickets for sale in the machine be exact pictures or replicas of those tickets (a construction which GTECH submits is incorrect), the "icons" on the game selection screen are nevertheless equivalent to exact replicas or pictures of the tickets because each "icon" is directly linked to a display of an exact replica of the corresponding ticket.

REDACTED

REDACTED

REDACTED

*See supra*, Statement of Disputed Facts, ¶¶ 8(a) – 8(b).

Scientific Games argues that "prosecution history estoppel prevents the application of the Doctrine of Equivalents with respect to the "plurality of arrays of ticket images." (D.I. 130 at 35 n.6). However, even if the Court were to adopt Scientific Games' claim construction, there is no prosecution history estoppel with respect to the claim terms "arrays" or "ticket images," because those terms were already implicitly present in the claim prior to the amendment. *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2002) (an amendment reciting a characteristic already implicitly present did not narrow the claim and thus did not result in prosecution history

estoppel); *Interactive Pictures Corp. v. Infinite Pictures, Inc.* 274 F.3d 1371, 1377-78 (Fed. Cir

2002).   Claim 18 was originally submitted as claim 38 of the '111 application:

> 38. A machine as in Claim 23 in which said display means comprises video
> display means for displaying a plurality of arrays of ticket images on a video
> screen.

(Ex. NN, U.S. Patent Application 07/312,111 at 33).  Claim 38 depended from original claim 23

of the '111 application:

> 23. A lottery ticket vending machine comprising, in combination, a housing,
> display means for displaying an array of lottery ticket representations viewable
> from outside of said housing by a customer, said array representing tickets in said
> machine available for purchase, acceptor means for receiving and accepting a
> means of monetary exchange, and means for dispensing said tickets in a number
> corresponding to the amount of money input into said machine by said customer.

*Id.* at 30.  Claim 38 was allowed on the first office action and was rewritten to incorporate the

limitations of its parent claim 23; claim 23 was rejected over U.S. Patent 3,047,347 to Groves

and was eventually cancelled.  (*See* Ex NN, '111 Application Filewrapper, Office Action mailed

10/11/91, at p. 3;  Ex OO, '005 Application Filewrapper, Preliminary Amendment, July 10,

1992;  Ex. PP, U.S. Patent 3,047,347).

   As a threshold matter, to determine whether there is a prosecution history estoppel

requires an analysis of what subject matter was surrendered by amendment, i.e., what limitations

are present in the allowed dependent claim that were not already present in the cancelled base

claim. *Bose Corp.,* 274 F.3d 1359.  Comparing claim 23 and claim 38, both claim 23 and claim

38 recite a "display means" which displays an "array" of "ticket representations."  Claim 38 adds

only that the "display means" is a "video display", that what is displayed is "a plurality" of

arrays, rather than one, and that the arrays are arrays of "ticket images."  The cancellation of

claim 23, and rewriting of claim 38 did not add the displaying of an "array" as a new claim

limitation.  Accordingly, because "array" was already present in original claim 23, there was no

surrender of patentable subject matter with respect to the term "array" and therefore no prosecution history estoppel with respect to equivalents of the arrays.

The cancellation of claim 23, and rewriting of claim 38 also did not add a new limitation by the inclusion of the word "ticket image." This is because, at least under Scientific Games' claim construction of claim 18 of the '624 patent, "the terms 'lottery ticket representations' and 'ticket images' are used synonymously. . . ." (D.I. 115 at 33). Thus, the addition of the term "ticket images" did not result in a surrender of claim subject matter. *Bose Corp*, 274 F.3d 1359. Accordingly, there is no prosecution history estoppel with respect to equivalents of the term "ticket image" in claim 18 of the '624 patent. *Id.*

Moreover, even if the amendment that led to the allowance of claim 18 was found to be a surrender of patentable subject matter, that amendment did not give rise to prosecution history estoppel versus the PlayCentral as an equivalent, because the amendment that resulted in the allowance of claim 18, the cancellation of base claim 23, was at most tangential to the equivalent actually found in the PlayCentral. The Federal Circuit has held that where the rationale underlying a narrowing amendment bears no more than a tangential relation to the equivalent in question, application of the doctrine of equivalents is not barred by prosecution history estoppel. *Insituform Tech. Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1370-71 (Fed. Cir. 2004). Here, the amendment was at most tangentially related to the equivalent in question, the PlayCentral's display of icons on a video screen. During the prosecution, the base claim 23, which was eventually cancelled, was rejected over a mechanical vending machine for which a patent was originally filed in 1955. (*See* Ex. PP, U.S. Patent 3,047,347). The prior art displayed items through physical windows, and was not a device with a video display of any sort. Thus, even if the reason for the amendment was arguably to avoid a prior art system, the cited prior art was

avoided by adding a "video" display, not by the particular details of what was displayed. If construed as Scientific Games advocates, the PlayCentral differs from the claim only in that icons rather than exact pictures of strips of actual tickets are displayed. The purpose of the amendment related only to the difference between a non-video system and a video system, not relating in any way to what was displayed on the video. Like *Insituform*, the amendment made during the prosecution to avoid a prior art reference that had no video screen whatsoever is at most tangentially related to the equivalent in question.

**B.**    **Substantial Evidence Exists to Support a Finding From a Reasonable Jury That the PlayCentral Has the Claimed "Means for Dispensing."**

The parties agree that the "means for dispensing" of claim 18 of the '624 patent is a "means plus function" element which should be construed under 35 U.S.C. § 112, para. 6, and that the function performed by this element is dispensing tickets in a number corresponding to the amount of money input into the machine by the customer. (D.I. 130 at 36).

REDACTED

The parties agree that the corresponding structure for the recited dispensing function of this element includes a keypad, an outlet opening, a receptacle and kick-out or outfeed rollers. GTECH contends the corresponding structure also includes a gravity chute shown clearly in Figure 5 of the '624 patent, while Scientific Games contends that the feeding and bursting mechanism described in the '337 patent must be included.

REDACTED

35

REDACTED

The evidence supports this conclusion. *See supra*,

Statement of Disputed Facts, ¶¶ 9.

Even under Scientific Games' proposal that the feeding and bursting mechanism of the

'337 patent is included as corresponding structure for this element, there is a genuine issue of

material fact with respect to infringement. *See supra*, Statement of Disputed Facts, ¶¶ 10(a) –

10(b). This is further discussed above with respect to the "means for separating" element of

claim 20 of the '337 patent.

## IV.    SUMMARY JUDGMENT SHOULD BE GRANTED IN GTECH'S FAVOR THAT GTECH COMPLIED WITH THE MARKING STATUTE

Scientific Games asserts that "[t]here is no genuine issue of material fact that GTECH

(and its predecessors) did not mark any products with the numbers of the '337 patent or the '624

patent." (D.I. 130 at 2, 37). This is incorrect. As detailed in the accompanying Declarations of

Brian J. Roberts and Richard Zimmer, GTECH and its predecessors did mark the patented

products with the '337 and '624 patent numbers. Because Scientific Games fails to present any

evidence of failure to mark, summary judgment on this issue should be granted in GTECH's

favor.

The patent marking statute, 35 U.S.C. § 287(a), precludes a patentee from recovering

damages for infringement during a period of time in which the patentee, or its licensee, sold the

patented products without marking them with the patent number and without giving actual notice

of the infringement to the accused infringer. *Sentry Prot. Prods., Inc. v. Eagle Mfg. Co.*, 400

F.3d 910, 918 (Fed. Cir. 2005). The relevant time period for determining whether products were

sold without marking is "during the period of [the accused infringer's] alleged infringement." *Id.*

Where a patentee does not sell products covered by the patent during this period, there is no

limitation on the patentee's ability to recover damages. *Texas Digital Sys., Inc. v. Telegenix,*

*Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002) ("The recovery of damages is not limited where there is no failure to mark, i.e., where the proper patent notice appears on products or where there are no products to mark.")

In this case, there was no failure to mark. The alleged infringement began in 2003. With respect to the '337 patent, since at least as early as 2002 through the present, GTECH and its predecessor Interlott marked all of their ITVMs that have bursters with the '337 patent number. (*See* Roberts Decl. at ¶ 15; Zimmer Decl. at ¶ 15). With respect to the '624 patent, since at least as early as 2002 through the present, GTECH and its predecessor Interlott marked all their ITVMs that show "live" lottery tickets through windows (one embodiment of the '624 patent, in addition to the video embodiment which has not been practiced by GTECH or Interlott) with the '624 patent number. (Roberts Decl. at ¶ 16; Zimmer Decl. at ¶ 16). The other ITVMs manufactured by GTECH or Interlott, which use push-buttons and do not show "live" tickets through windows or show "ticket images" on a video screen, do not use the '624 patent. (*See* Ex. QQ, Stewart Rebuttal Report at 8 ("The push-button technology used in GTECH's ITVMs, for example, is outside the scope of the '624 patent."). Accordingly, there can be no limitation on damages for failure to mark. *Texas Digital*, 308 F.3d at 1220.

In Scientific Games' motion, Scientific Games does not present any evidence -- from actual machines, testimony, or otherwise -- that GTECH or its predecessors failed to mark. Scientific Games simply argues that GTECH has the burden of pleading and proving compliance with the marking statute and that GTECH cannot prove such compliance. (D.I. 130 at 37-38).[6]

---

[6]    Scientific Games cannot argue that GTECH's pleading was insufficient. *See Sentry*, 400 F.3d at 918 (holding that the statement in the pleading that the "infringements have been willful and with full knowledge of the '611 and '781 patents" was sufficient for pleading compliance with the marking statute).

Contrary to Scientific Games's assertion, not only does the evidence establish that GTECH can prove compliance with the marking statute, the lack of contrary evidence from Scientific Games compels the conclusion that no reasonable jury could find that there was a failure to mark. Accordingly, summary judgment should be granted in GTECH's favor on this issue. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001) (based on the evidence, "no reasonable jury could find that Gart failed to comply with section 287(a)").[7]

---

[7] With the evidence so overwhelming on this issue, Scientific Games's motion appears utterly baseless, justifying costs to GTECH. Scientific Games may attempt to argue that it was not aware of the marking evidence, but, even if true, that would be Scientific Games' own fault. GTECH produced documents evidencing patent marking to Scientific Games during discovery , yet Scientific Games never asked any witness about these documents, never asked an interrogatory about marking, never noticed a Rule 30(b)(6) topic on marking, never questioned Mr. Roberts about marking, and never requested to inspect the actual machines in GTECH's possession. Many of the exhibits to the Roberts Declaration are photographs recently taken from these machines, which were available for Scientific Games to inspect.

REDACTED

## V.    CONCLUSION

For all of the above reasons, Scientific Games' motion for summary judgment should be

denied.

YOUNG, CONAWAY, STARGATT
& TAYLOR, LLP

Dated: December 2, 2005          By:  _Josy W. Ingersoll by Andrew A. Lundgren_
Josy W. Ingersoll (#1088)
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
*jingersoll@ycst.com*

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200

Douglas E. Ringel
KENYON & KENYON
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200

*Attorneys for Plaintiff GTECH Corporation*

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on December 2, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on December 2, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
alundgren@ycst.com

*Attorneys for GTECH Corporation*

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on December 9, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld Esquire
>Morris Nichols Arsht & Tunnell
>1201 North Market Street
>Wilmington, DE 19801

I further certify that on December 9, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Andrew A. Lundgren_

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
alundgren@ycst.com

*Attorneys for GTECH Corporation*