

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/912,005 | 07/10/92 | BURR | R    3390-2030 |

| EXAMINER |
|---|
| BOLLINGER, D |

| APT UNIT | PAPER NUMBER |
|---|---|
|  | 15 |

GREGOR N. NEFF
C/O CURTIS, MORRIS & SAFFORD
530 5TH AVE.
NEW YORK, NY 10036

DATE MAILED: 3101

09/14/92

**EXAMINER INTERVIEW SUMMARY RECORD**

All participants (applicant, applicant's representative, PTO personnel):

(1) David Bollinger

(3) Mr. Robert Burr

(2) Mr. Gregor Neff

(4) _____

Date of Interview: 8/26/92

Type: ☐ Telephonic  ☒ Personal (copy is given to ☐ applicant ☒ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☒ No. If yes, brief description: _____

Agreement ☐ was reached with respect to some or all of the claims in question. ☒ was not reached.

Claims discussed: Claims of record.

Identification of prior art discussed: Art of record.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Discussed the combination of Groves & Knee 1935. Applicant present material showing commercial success. The Examiner indicated that filing a declaration under 37 CFR 1.132 showing commercial success by presentation of such material would be favorably considered. The Examiner also pointed out that claims 51 & 33 depend from cancelled claim 26.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached.)

Unless the paragraphs below have been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1–7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

☐ Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action.

Examiner's Signature

PTOL-413 (REV. 1-84)

**ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER**

RECEIVED

PATENT
3390-2030    OCT 13  AM II: 15

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#76
10-14-92

| | | |
|---|---|---|
| Applicant | : | Robert L. Burr |
| Serial No. | : | 07/912,005 |
| Filed | : | July 10, 1992 |
| For | : | TICKET DISPENSER MACHINE AND METHOD |

### DECLARATION UNDER RULE 132
#### (37 C.F.R. §1.132)

Robert L. Burr hereby declares and states:

1. He is the inventor in the above-identified patent application. He also is President and Chief Executive Officer of Lottery Enterprises, Inc. ("LEI"), 7320 Convoy Court, San Diego, California 92111. He has personal knowledge of the facts stated in this Declaration.

2. LEI is making and selling lottery ticket dispensers using the invention disclosed and claimed in this patent application. Specifically, LEI sells the "ITR 7000" line of lottery ticket dispensers shown in Exhibits A, B, C and D which are attached to this Declaration.

3. Exhibit A is a photograph of a four-window table-top model of the ITR 7000 dispenser, each window displaying tickets from a different instant-winner lottery ticket game. A string of tickets is driven downwardly past each window by an electric motor drive system when the customer inserts a bill into the machine and presses the button below the window.

GNN9:2030.DEC                    -1-

PATENT
3390-2030

4. Exhibit B is a floor-model, four-window dispenser shown in a typical installation as part of the Virginia Lottery system.

5. Exhibit C is a four-page brochure entitled "ITR®-7000 Instant Ticket Retailer". It shows an eight-window floor model of the ITR-7000 dispenser on the cover, as well as two-window and four-window models.

6. Exhibit D is a booklet entitled "LEI Company Profile" printed July 18, 1992. The last four pages of this booklet comprise a copy of Exhibit C.

7. Exhibit E is a copy of a brochure showing the "ITR 5000" Instant Ticket Retailer" sold by Lottery Concepts International, Inc., a predecessor of LEI.

8. Exhibit F is a copy of a recent issue of a San Diego, California newspaper reporting on the award of a substantial contract for purchase of ITR 7000 machines from LEI.

9. As it is explained on the sixth page of Exhibit D, the LEI Company Profile, the ITR 7000 machine was preceded by the ITR 5000 and the ITR 6000 machines.

10. The ITR 5000 had no windows. IT was not successful. It produced little or no increase in sales over prior manual dispensing methods, and was not ordered by any lottery system.

11. The ITR 6000 was the first model which had windows. This machine is the one shown in the drawings of this

GNN9:2030.DEC                    -2-

PATENT
3390-2030

patent application.  The windows, with the tickets moving past
them while being dispensed, proved to be a major improvement.
The sales of tickets from a vending machine such as that shown in
the patent application drawings showed substantial increases over
sales using prior methods.  However, the dispensing mechanism
needed revision to make it simpler, more compact and reliable.

12.  In the ITR 7000 machine, the windows feature from
the ITR 6000 were kept, but the dispensing mechanism was replaced
and improved.  The ITR 7000, like the ITR 6000, has a housing
with at least one window through which tickets can be seen but
not touched by a person outside the housing.  The ITR 7000 has
electrically-powered means for moving a continuous strip of the
tickets past the window and dispensing a pre-determined number of
them to an operator.  The windows continued to be a major factor
in the improved sales of the dispenser as compared with prior
methods.

13.  As it is explained on the third page of Exhibit D,
the Company Profile, the ITR 7000 went into production in June of
1990.  Subsequently, tests were performed on the machines by a
number of state lottery systems in a substantial number of
states.  As it is explained on page four of Exhibit D, the tests
showed that the ITR 7000 increased sales by from 2 to 10 times
over the prior sales methods.  A summary of some of the tests
conducted is given on page five of Exhibit D.

PATENT
3390-2030

14.  Field tests of the ITR 7000 started in Virginia in
September of 1990.  In March 1991, the Virginia Lottery awarded
LEI a contract to supply 2,000 units at a cost of more than
$4,000 each.

15.  The results of tests conducted on behalf of the
Virginia Lottery by Scientific Games, Inc., an independent
organization, to determine the sales increases produced by the
ITR 7000 in use in Virginia are shown on page seven of Exhibit D.
The average sales increase achieved was 186.5 percent.

16.  The results of similar tests conducted by the
Washington Lottery and the Pennsylvania Lottery are shown on
pages eight and nine of Exhibit D.  Those tests also showed very
substantial sales gains over prior methods.

17.  Subsequent to the contract award by the Virginia
Lottery, contracts have been awarded to LEI to supply the ITR
7000 machines to the state lotteries in Delaware, Colorado,
Vermont and California.  The numbers of units to be ordered in
Delaware, Colorado and Vermont is open-ended, with some of the
initial quantities being set forth on page 3 of Exhibit D.

18.  The California order alone requires LEI to deliver
around fifteen million dollars worth of the machines by November
1, 1992.

19.  When LEI started business, it had no sales of any
product.  The ITR 7000 was its first and only product.  Its sales
have been achieved with only relatively modest expenditures for

GNN9:2030.DEC                           -4-

PATENT
3390-2030

advertising, publicity and selling, due to the lack of funds by
our fledgling enterprise.  It is my belief that any commercial
success we have had is due mostly to the merits of the ITR 7000
equipment.

20.  I also believe that, although the success of the
ITR 7000 is not due exclusively to the use of the windows
invention of this patent application, the windows invention has
played a major role in such success.  The feature frequently is
mentioned by state lottery personnel as an important feature, and
field tests, starting with the ITR 6000, consistently have shown
that the windows invention attracts attention, gives confidence
and information to the ticket buyer, and greatly enhances the
chances of convincing the customer to make what is basically an
impulse purchase.

I hereby declare that all statements made herein of my
own knowledge are true and that all statements made on
information and belief are believed to be true; and further that
these statements were made with the knowledge that willful false
statements and the like so made are punishable by fine or
imprisonment, or both, under Section 1001 of Title 18 of the
United States Code and that such willful false statements may

PATENT
3390-2030

jeopardize the validity of the application or any patent issued
thereon.

Date: _____ , 1992      _____
                                           Robert L. Burr

Exhibit A



Exhibit B



ALL-STATE LEGAL SUPPLY CO.   1-800-222-0510   EO.11

Exhibit C



# A TROUBLE-FREE DISPENSER WITH SPLIT-SECOND SPEED.

The consumer-activated INSTANT TICKET RETAILER (model ITR™-7000) opens up uncharted marketing opportunities for retailing instant lottery tickets. The ITR™-7000 is designed to streamline the marketing of instant lottery tickets by opening up new markets which heretofore have not been available to lotteries. Specifically, these markets can be identified as those where sales now exist but at a level far below potential (typically food chain stores, liquor stores, etc) and locations where potential exists but instant tickets are not being offered for sale (private clubs, bars, malls, etc).

The ITR™-7000 is simple to operate. The customer inserts a dollar bill, in any denomination of one, five, ten or twenty dollars and makes a selection from one to eight separate games. It's simple. It's convenient. And it's secure. Additionally, each ITR™-7000 dispensing unit stores up to 3,000 tickets for a maximum of 24,000 tickets per machine. This coupled with the fact that it keeps track of

all the accounting and inventory of each game and tied in with the LEI FILE SERVER™ will alert the lottery in ample time to replenish ticket stock when it becomes low and will make distribution of tickets routine.

The ITR™-7000 has an optional attention-getting LED scrolling sign to attract impulse buyers. The sign is loaded from the LEI FILE SERVER™ at lottery headquarters or other remote locations to promote special games or winning jackpots.

The ITR™-7000 is available in four convenient models. All include standard bill acceptors and/or optional coin acceptors (see -C). the -2 houses two dispensers, the -4 houses four dispensers, the -6 houses six dispensers and the -8 houses eight dispensers. All models are available as counter tops, wall mounts or stand-alone terminals. The stand-alone models offer two options: Twin-L legs or security storage cabinet.

Quite simply, LEI's ITR™-7000 will revolutionize the way you'll market Instant Lottery Tickets.



ITR™-7000-2-C
Shown with optional coin acceptor



ITR™-7000-4



ITR™-7000-8-S
Shown with optional LED display



ITR™-7000-8



ITR™-7000-6



# ITR™-7000 ADVANTAGES

## TO THE LOTTERY

- Increase Sales
- Security
- Multi-game Sales (up to 8 games/unit)
- Daily Sales Information
  BY: Agent
    Classification
    Geographical
- LED Sign Downloadable
- Total Accounting And Inventory Control
- Increased Efficiency And Cost Effective Marketing
  FOR: Promotion
    Incentive Programs
    Advertising
- Messages On Terminal Downloadable From Central Computer
  FOR: Individual Agents or all the Agents
- Complete Close-out Of Game
- Total Control Of System (via dial-up communication)
- Real Time Clock (allows automatic communications)
- Information Contained In ITR™
- Battery Backup (in the event of power loss)
- Daily Inventory And Sales Reports (insure ticket availability)
- No Out Of Stock Situations
- Opportunity For New Sales Outlets

## TO THE AGENT

- Increase Sales
- Security
- Total Accounting And Inventory Control
- Reports
  Current day sales
  Daily sales for two days
  Weekly sales for two weeks
  Invoices
- Automatic Reordering Of Tickets
- Point Of Sale Advertising
- Hard Copy Sales Reports
- RS232 Port For Central Control
- Ability To Sell Tickets Anywhere
- Ergonomically Designed Unit
- Automatic Agent ID Imprint (optional)
- Easy To Operate
- Consumer Oriented
- Holds 3,000 Instant Tickets For Each Game
- Small Footprint
- Does Not Require A Sales Clerk
- Contains Its Own Cash Compartment
- Double Security Locks
- Heavy Steel Construction
- Multi-game Sales (up to 8 games unit)

## TO THE CONSUMER

- Availability
- Convenience
- Ability To Purchase A Ticket Anywhere
- Ease Of Purchase
- Choice Of Instant Lottery Game



**ITR™-7000 VERSATILITY**
Standard bill acceptor with installation of optional coin acceptor greatly enhances ticket buyer convenience by offering a multitude of currency choices.



# SPECIFICATIONS

|  | Height | *Width | Depth |
|---|---|---|---|
| ITR™-7000-2 | 27.25" | 15.25" | 18.0" |
| ITR™-7000-4 | 27.25" | 21.25" | 18.0" |
| ITR™-7000-6 | 27.25" | 27.25" | 18.0" |
| ITR™-7000-8 | 27.25" | 33.25" | 18.0" |

115 or 240V AC 47 or 60 Hz 2 Amp
*Optional coin acceptor (-C) adds 4.0" to overall width.



**ITR™-7000 VERSATILITY**
Accepts any size tickets with
widths from 2" to 4" and lengths
from 1¼" to 6".

# LEI FILE SERVER™

As depicted in the diagram, every ITR™-7000 is capable of interrogating over thirty other ITR™-7000's via its smart modem. This feature permits the central PC (at Lottery headquarters or other remote locations) to collect all of the sales and inventory information from any one city or local with a single phone call, thus reducing the necessity of tying up a large number of 800 or WATS lines. Considering connect time, it is estimated that a PC with dual modems can interrogate over 21,000 ITRs™ in a seven hour time span. All communications are done on a dial-up basis eliminating costly dedicated phone lines.

Timely reports are broken down into agent categories, i.e. convenience stores, bars, nightclubs, etc, and also by geographic location. This permits the lottery to pinpoint advertising, agent training or special promotions.

In addition, special messages may be automatically downloaded to the optional LED sign during the interrogation of the ITR™. Messages may be sent to specific agents or to the entire state.

```
                    ┌──────────┐
                    │ Central  │
                    │   PC     │
                    └──────────┘
                     │        │
              ┌────────┐  ┌────────┐
              │ Modem  │  │ Modem  │
              └────────┘  └────────┘
               │    │       │    │
             ┌───┐┌───┐   ┌───┐┌───┐
             │ITR││ITR│   │ITR││ITR│
             └───┘└───┘   └───┘└───┘
              │    │       │    │
             ┌───┐┌───┐   ┌───┐┌───┐
             │ITR││ITR│   │ITR││ITR│
             └───┘└───┘   └───┘└───┘
```

*Lottery Enterprises, Inc.*

**Corporate Headquarters**
7372 Convoy Court
San Diego, California 92111
Tel. (619) 569-5266    Fax (619) 569-9157
Toll Free (800) 879-ITR7
        (800) 879-4877

**East Coast Office**
74 Branch St. #17
Scituate, Massachusetts 02066
Tel. (617) 545-4829    Fax (617) 545-4477



**The Leader In Instant Ticket Dispensing Technology**

©1991LEI    LEI01912500

Exhibit D

# LEI

# COMPANY

# PROFILE

**CORPORATE**
**HEADQUARTERS:**      **LOTTERY ENTERPRISES, INC.**
7320 Convoy Court.
San Diego, CA 92111   USA
Phone:      (619) 569-5266
Fax:        (619) 569-9157
Tech. Support (800) 487-7009

**EAST COAST**
**OFFICE:**            **LOTTERY ENTERPRISES, INC.**
74 Branch Street # 17
Scituate, MA  02066      USA
Phone:      (617) 545-4829
Fax:        (617) 545-4477

**VIRGINIA OFFICE:**   **LOTTERY ENTERPRISES, INC.**
1206 Willard Road
Suite 103
Richmond, VA 23294      USA
Phone:      (804) 755-8702
Fax:        (804) 672-7661

**KEY PERSONNEL:**     **Robert L. Burr,** President & CEO

**John F. Winchester,** Executive Vice President

**Catherine Winchester,** Director of Marketing, Western Region

**John L. Winchester,** Director of Marketing, Eastern Region

**Robert Cooley,** Director of Research and Development

**Don Wesser,** Director of Manufacturing

**Leon Ostapiej,** Director of Quality

**Paul D. Alvarez,** Technical Manager, Western Region

**Herb Herrmann,** Director of Engineering

**William McAdaragh,** Service Manager, Virginia Operations

Lottery Enterprises, Inc. has been manufacturing the ITR™-7000 series Instant Ticket Dispensing machines since June 1990. The ITR™-7000 series is a third generation machine, preceded by the ITR™-7000 and ITR™-6000 terminals which have been in various field tests since 1986.  For the Oregon Lottery, we are proposing our fourth generation model, the ITR™-7500.

Manufacturing facilities are located at the corporate address. The top management of the company has been involved in design concepts, engineering and production of vending machines since 1976. This has included video amusement machines, video poker, keno and quarter horse gaming machines. Since 1985, the management has exclusively designed, manufactured, marketed and field tested lottery instant ticket vending machines.

LEI has 292 man years experience in the Lottery Industry, high technology field and the vending/gaming machine industry.

Lottery Enterprises, Inc. was incorporated in March of 1990. Production of the ITR™-7000 series Instant Ticket Retailer terminal began in June of 1990.

- Field testing commenced in September 1990 resulting in a contract with the **Virginia Lottery** on March 25, 1991 for the installation of 2,000 ITRs™.

- LEI was awarded the contract to supply the **Delaware Lottery** with the ITR™-7000 system. Fifty (50) terminals were be delivered in June. An Additional fifty (50) are scheduled for July with follow-up delivery as required.

- In May 1992 the **Colorado Lottery** purchased terminals for installations in casinos in the gaming towns of Black Hawk and Cripple Creek and other age-controlled environments.

- In June 1992 LEI was informed of a successful bid with the **Vermont Lottery**. The first one hundred (100) units will be delivered in August, 1992.

- LEI was notified in July 1992 as being the apparent successful winner for implementing 2,000 ITVMs for the **California Lottery**, with an option on an additional 4500 terminals.

✓    Active negotiations are continuing with **Maine, Indiana, Washington D.C.** and **Kansas.**

✓    A three month, 20 unit test recently completed in Western Canada in February of 1992.

✓    A 20 unit test began in July 1992 with the Ontario Lottery.

✓    Testing in Iceland began in January of 1992. Australia, Spain, Checzolsovakia, England are scheduled for field test in 1992.

The ITR™-7000 series of Instant Ticket Retailers have been proven to increase tickets sales from 2 to 10 times in those locations which sold lottery tickets either over the counter or manually such as supermarkets and convenience stores. Additionally, it has opened up new markets which heretofore have not been available to lotteries. Specifically, these markets can be identified as private clubs, bars, airports, restaurants, hospitals and shopping malls.

The following is a breakdown of tests conducted by LEI with Lotteries around the world:

| NAME OF LOTTERY OR ORGANIZATION | NUMBER OF ITRs" | TEST BEGAN | TEST ENDED |
|---|---|---|---|
| British Columbia | 2 | 9/91 | 1/92 |
| California | 40 | 3/92 | 5/92 |
| Safeway (CA) | 2 | 7/91 | 9/91 |
| Colorado | 3 | 4/91 | 7/91 |
| Delaware | 4 | 7/91 | 11/91 |
| Washington DC | 3 | 10/90 | 11/90 |
| Iceland | 1 | 1/91 | present |
| Idaho | 4 | 10/90 | 12/90 |
| Hoosier Lottery | 6 | 9/90 | 3/91 |
| Marsh Supermarkets (IN) | 4 | 2/91 | 8/91 |
| Village Pantry (IN) | 4 | 2/91 | 3/91 |
| Kroger Supermarkets (IN) | 3 | 4/92 | 5/92 |
| Kansas | 4 | 6/91 | 9/91 |
| Kentucky | 6 | 1/91 | 4/91 |
| Maine | 4 | 11/90 | 8/91 |
| Maryland | 10 | 2/91 | 4/91 |
| Massachusetts | 4 | 10/91 | 11/91 |
| Minnesota | 1 | 2/92 | 6/92 |
| New Jersey | 2 | 2/92 | 4/92 |
| Ohio | 6 | 10/90 | 1/91 |
| Ontario | 15 | 7/92 | present |
| Pennsylvania | 3 | 5/92 | 7/92 |
| Vermont | 14 | 9/90 | 6/91 |
| Washington State | 3 | 12/91 | 3/92 |
| West Virginia | 6 | 11/91 | 1/92 |
| Western Canada | 20 | 2/92 | 5/92 |

All of these tests were very successful; sales increased from two to ten times over previous sales figures.

# EVOLUTION OF THE ITR™

The administration of the Instant Ticket product line has been and continues to be labor intensive, whereas the other product lines offered by the lotteries, namely Lotto, Pick 3/4, by their very nature are technologically advanced. In order to reduce the amount of labor dedicated to the Instant Ticket product line and thus streamline and mechanize the administration of the games, an intensive market research project was initiated by Lottery Enterprises, Inc. personnel in April 1985. Lottery personnel, including Directors, lottery agents and consumers in the United States and Canada were interviewed. The result of our research indicated that the most pressing problems arise in the following areas: accounting, security, agent motivation, marketing, relevant sales statistics and availability of the product. With this information in mind, the Instant Ticket Retailer was designed and manufactured. Each of the problem areas were addressed and became part of the Instant Ticket Dispenser.

Our first Instant Ticket Dispenser, the ITR™-5000 series was agent operated and was field tested in Vermont. It became clear immediately that this was not what the lottery, agent and consumer wanted. The consumer wanted to see the product, and have the ability to activate the terminal and have a choice of games. The agent and lottery concurred and in addition wanted a secure cash drawer.

The results of the initial field research led to the ITR™-6000 series. This series incorporated all of the suggestions gleaned from the customer, lottery and lottery agent. The 6000 series was designed to permit viewing of the tickets through a window and handle up to four games. This series was larger and the tickets being dispensed were cut and dropped into a cup; but it was very difficult to maintain the proper bursting measurement, causing tickets to be mutilated. In addition, it was discovered that the majority of consumers wanted to be able to buy an uncut string of tickets and separate them.

The latest design, the ITR™-7000 has many advantages and improvements over the 6000. These include:

- ✓ The 7000 series machines are half the size of the 6000 series. The largest capacity 8-dispenser machine can securely store **24,000** instant tickets in half the size of the 6000 series 4-dispenser machine.
- ✓ The 7000 takes up less floor space, to the delight of retailers.
- ✓ The 7000 has fewer moving parts.
- ✓ Loading and unloading of tickets are automatic.
- ✓ No confusing keypad entries are required from the customer. They simply press the appropriate button to dispense their tickets.
- ✓ Tickets are dispensed to the consumer who can **separate one or a group of tickets**, hence, a more reliable method and consumer appeal.
- ✓ The 7000 series permits up to eight different games.
- ✓ Automatic printing of sales and inventory reports on a daily basis.
- ✓ The 7000 procedures are easier for the agent to learn. Training time is minimal.
- ✓ The data input menus have been streamlined to make it easier for the agent to do routine procedures.
- ✓ All sales reports are printed at the push of a button from the Main Menu. Stepping through confusing menu options to print reports has been eliminated.
- ✓ Software upgrades are easier to install, service technicians do not need to be called out. Some agents using the 7000 are doing it themselves now.
- ✓ Diagnostic routines are much more advanced providing faster and more reliable troubleshooting operations.
- ✓ A modular design provides quick and simple upgrades and module replacements.
- ✓ The 7000 series can easily be customized to individual needs of agents.

UNIQUE FEATURES OF THE ITR™-7000:
- ✓ Ability to store and dispense up to eight different games/ **3000** tickets per dispensing unit.
- ✓ Automatic printing of daily sales/inventory report at midnight or at the time the agent selects.
- ✓ Audit trail report
- ✓ Dual processors insuring reliability
- ✓ High speed dial-up communications procedures
- ✓ Programmable attract mode
- ✓ Daylight Savings Time setting that will automatically adjust the system time when necessary.
- ✓ Programmable CLERK ID numbers. This allows the manager to monitor all access to the machine, with hard copy reports showing the date and time each clerk accessed the machine.
- ✓ Hard copy report of lifetime sales from the machine. This figure can only be changed by technician or lottery personnel with proper access code.

VIRGINIA LOTTERY
Example of Sales Increases using the ITR-7000



| | 45 DAYS WITHOUT ITR | 45 DAYS WITH ITR | INCREASE |
|---|---|---|---|
| Giant #180 | $200 | $600 | 200.00% |
| Spotlight Video | $747 | $1,196 | 60.11% |
| Bowl America | $835 | $1,909 | 128.62% |
| Sadler Truck Stop | $551 | $2,000 | 262.98% |
| Woolworth #1721 | $487 | $2,108 | 332.85% |
| Kroger Supermarket #228 | $684 | $2,260 | 230.41% |
| Shoppers Supermarket #28 | $746 | $2,295 | 207.64% |
| Whites Truck Stop | $758 | $2,311 | 204.88% |
| Dixie Pig Resturant | $1,171 | $3,024 | 158.24% |
| Total sales for test period | $6,179 | $17,703 | 186.50% |

This information was compiled by Scientific Games, Inc. resulting from an independent survey in March 1992
Kroger Supermarket #228 data includes 25 days only

Last printed on 3/20/1992                                    copyright 1992, Lottery Enterprises, Inc.

## WASHINGTON LOTTERY
### Example of Sales Increases using the ITR-7000



| ITR Model Number | ALBERTON'S #472 ITR-7000-4 | BAYVIEW MARKET ITR-7000-4 |
|---|---|---|
| Prior Weekly Avg. | $600 | $200 |
| Week 1 | $1,196 | $747 |
| Week 2 | $3,024 | $1,171 |
| Week 3 | $2,295 | $746 |
| Week 4 | $1,909 | $835 |
| Week 5 | $2,260 | $684 |
| Week 6 | $2,311 | $758 |
| Week 7 | $2,000 | $551 |
| Week 8 | $2,108 | $487 |
| Week 9 | $2,005 | $729 |
| Week 10 | $1,942 | $645 |
| Week 11 | $1,961 | $754 |
| Week 12 | $2,231 | $601 |
| Week 13 | $2,263 | $817 |
| Week 14 | $2,138 | $818 |
| Total sales to date for test period: | $29,643 | $10,343 |
| Average weekly sales: | $2,117 | $739 |
| $ Increase over average: | $1,517 | $539 |
| % Increase over average: | 252.89% | 269.39% |

• Week 1 was a partial week        Last printed on 3/24/1992        copyright 1992, Lottery Enterprises, Inc.

PENNSYLVANIA LOTTERY
Example of Sales Increases using the ITR-7000



| | FESTIVAL FOOD | PHAR MOR | TRUCK/AMERICA |
|---|---|---|---|
| ITR Model Number | ITR-7000-4 | ITR-7000-4 | ITR-7000-4 |
| Prior Weekly Avg. | $100 | $50 | $625 |
| Week 1 | $326 | $942 | $1,044 |
| Week 2 | $332 | $674 | $1,545 |
| Week 3 | $327 | $726 | $1,390 |
| Week 4 | $411 | $695 | $1,526 |
| Week 5 | $460 | $706 | $1,452 |
| Week 6 | $462 | $292 | $1,167 |
| Week 7 | $360 | $577 | $1,184 |
| Total sales for test period: | $2,678 | $4,612 | $9,308 |
| Average weekly sales: | $383 | $659 | $1,330 |
| $ Increase over average: | $283 | $609 | $705 |
| % Increase over average: | 282.57% | 1217.71% | 112.75% |

Last printed on 7/18/1992                    copyright 1992, Lottery Enterprises, Inc.

*Virginia*

## An Update on

# Virginia's Instant Ticket Vending Machines

*Prepared by the Virginia Lottery*

Virginia became the first state to begin a large-scale installation of instant ticket vending machines (ITVMs) last summer. In just six months, the program has proven profitable for retailers and popular with players.

When the first machine was installed in June, at a Giant grocery store in an affluent northern county, the Lottery had planned to concentrate only in the northern Virginia area for the first 12 months. But as the Lottery quickly worked a few start-up glitches out of the program, the Lottery sales department decided to move the program to three other parts of the state: south to Richmond, west to Harrisonburg and east to the Norfolk area.

"Consumer convenience, accessibility to multiple games, higher visibility and less labor intensive are factors that make ITVMs the right choice for higher, more profitable sales in many retail locations," says Ken Thorson, the Lottery's director.

More than 250 machines have been installed. They are currently being installed at a rate of 30 per week.

During this first year of the program, Virginia is concentrating on supermarkets, chain drug stores and bowling centers. In addition, Burger King restaurants have made an application to install the vending machines in 16 of its franchised restaurants in the eastern part of the state.

The Lottery Enterprises Inc. machines installed at each location sell four instant games at a time. To access instant tickets through the vending machine, players first insert a $1, $5,



Player purchases a ticket through the Virginia Lottery's instant ticket vending machine.

$10 or $20 bill, according to the amount they wish to play. Next, they select the game or games they wish to purchase, press a button to release the ticket through an opening and rip off the ticket along the perforation.

"Players like having more than one game available," says Sam Chandler, who oversees lottery sales at a Safeway grocery store in Fairfax, Va. "Most people have a favorite game, and with the instant vending machines there's a better chance of finding the game they want to play in our store." Safeway grocery stores had been selling only one game through the checkout stands.

Retailers have averaged weekly sales of 1,000 tickets per machine, with some retailers selling as many as 5,500 tickets per week.

Chris Borglin, whose F.W. Woolworth Co.'s store received the first ITVM in the Richmond, Va. area, says the store sold 600 tickets on Saturday during the first week. Prior to that, it generally took a week to sell the same amount of tickets, Borglin says.

Virginia will install more than 100 vending machines a month and will seek new types of businesses to sell lottery tickets through the vending machines until the demand has been satisfied. The Lottery may install as many as 2,000 instant ticket vending machines.

"The machine stays busy all of the time," says William McMillian, an assistant manager at an Arlington Rite Aid drugstore in Virginia. "We sell three times as many tickets than what we had been selling through the registers."

✦



# A TROUBLE-FREE DISPENSER WITH SPLIT-SECOND SPEED.



ITR™-7000-2-C
Shown with optional coin acceptor

The consumer-activated INSTANT TICKET RETAILER (model ITR™-7000) opens up uncharted marketing opportunities for retailing instant lottery tickets. The ITR™-7000 is designed to streamline the marketing of instant lottery tickets by opening up new markets which heretofore have not been available to lotteries. Specifically, these markets can be identified as those where sales now exist but at a level far below potential (typically food chain stores, liquor stores, etc) and locations where potential exists but instant tickets are not being offered for sale (private clubs, bars, malls, etc).

The ITR™-7000 is simple to operate. The customer inserts a dollar bill, in any denomination of one, five, ten or twenty dollars and makes a selection from one to eight separate games. It's simple. It's convenient. And it's secure. Additionally, each ITR™-7000 dispensing unit stores up to 3,000 tickets for a maximum of 24,000 tickets per machine. This coupled with the fact that it keeps track of all the accounting and inventory of each game and tied in with the LEI FILE SERVER™ will alert the lottery in ample time to replenish ticket stock when it becomes low and will make distribution of tickets routine.

The ITR™-7000 has an optional attention-getting LED scrolling sign to attract impulse buyers. The sign is loaded from the LEI FILE SERVER™ at Lottery headquarters or other remote locations to promote special games or winning jackpots.



ITR™-7000-4

The ITR™-7000 is available in four convenient models. All include standard bill acceptors and/or optional coin acceptors (see -C). the -2 houses two dispensers, the -4 houses four dispensers, the -6 houses six dispensers and the -8 houses eight dispensers. All models are available as counter tops, wall mounts or stand-alone terminals. The stand-alone models offer two options: Twin-L legs or security storage cabinet.

Quite simply, LEI's ITR™-7000 will revolutionize the way you'll market Instant Lottery Tickets.



ITR™-7000-6



ITR™-7000-8-S
Shown with optional LED display



ITR™-7000-8



# ITR™-7000 ADVANTAGES

## TO THE LOTTERY

- Increase Sales
- Security
- Multi-game Sales (up to 8 games/unit)
- Daily Sales Information
  BY: Agent
      Classification
      Geographical
- LED Sign Downloadable
- Total Accounting And Inventory Control
- Increased Efficiency And Cost Effective Marketing
  FOR: Promotion
       Incentive Programs
       Advertising
- Messages On Terminal Downloadable From Central Computer
  FOR: Individual Agents or all the Agents
- Complete Close-out Of Game
- Total Control Of System (via dial-up communication)
- Real Time Clock (allows automatic communications)
- Information Contained In ITR™
- Battery Backup (in the event of power loss)
- Daily Inventory And Sales Reports (insure ticket availability)
- No Out Of Stock Situations
- Opportunity For New Sales Outlets

## TO THE AGENT

- Increase Sales
- Security
- Total Accounting And Inventory Control
- Reports
  Current day sales
  Daily sales for two days
  Weekly sales for two weeks
  Invoices
- Automatic Reordering Of Tickets
- Point Of Sale Advertising
- Hard Copy Sales Reports
- RS232 Port For Central Control
- Ability To Sell Tickets Anywhere
- Ergonomically Designed Unit
- Automatic Agent ID Imprint (optional)
- Easy To Operate
- Consumer Oriented
- Holds 3,000 Instant Tickets For Each Game
- Small Footprint
- Does Not Require A Sales Clerk
- Contains Its Own Cash Compartment
- Double Security Locks
- Heavy Steel Construction
- Multi-game Sales (up to 8 games unit)

## TO THE CONSUMER

- Availability
- Convenience
- Ability To Purchase A Ticket Anywhere
- Ease Of Purchase
- Choice Of Instant Lottery Game



**ITR™-7000 VERSATILITY**
Standard bill acceptor with installation of optional coin acceptor greatly enhances ticket buyer convenience by offering a multitude of currency choices.



# SPECIFICATIONS

|  | Height | *Width | Depth |
|---|---|---|---|
| ITR™-7000-2 | 27.25" | 15.25" | 18.0" |
| ITR™-7000-4 | 27.25" | 21.25" | 18.0" |
| ITR™-7000-6 | 27.25" | 27.25" | 18.0" |
| ITR™-7000-8 | 27.25" | 33.25" | 18.0" |

115 or 240V AC 47 or 60 Hz 2 Amp
*Optional coin acceptor (-C) adds 4.0" to overall width.



**ITR™-7000 VERSATILITY**
Accepts any size tickets with widths from 2" to 4" and lengths from 1¼" to 6".

# LEI FILE SERVER™

As depicted in the diagram, every ITR™-7000 is capable of interrogating over thirty other ITR™-7000's via its smart modem. This feature permits the central PC (at Lottery headquarters or other remote locations) to collect all of the sales and inventory information from any one city or local with a single phone call, thus reducing the necessity of tying up a large number of 800 or WATS lines. Considering connect time, it is estimated that a PC with dual modems can interrogate over 21,000 ITRs™ in a seven hour time span. All communications are done on a dial-up basis eliminating costly dedicated phone lines.

Timely reports are broken down into agent categories, i.e. convenience stores, bars, nightclubs, etc, and also by geographic location. This permits the lottery to pinpoint advertising, agent training or special promotions.

In addition, special messages may be automatically downloaded to the optional LED sign during the interrogation of the ITR™. Messages may be sent to specific agents or to the entire state.

Central PC
Modem          Modem
ITR ↔ ITR      ITR ↔ ITR
ITR ↔ ITR      ITR ↔ ITR

**Lottery Enterprises, Inc.**
**Corporate Headquarters**
7372 Convoy Court
San Diego, California 92111
Tel. (619) 569-5266    Fax (619) 569-9157
Toll Free (800) 879-1TR7
        (800) 879-4877

**East Coast Office**
74 Branch St. #17
Scituate, Massachusetts 02066
Tel. (617) 545-4829    Fax (617) 545-4477



**The Leader in Instant Ticket Dispensing Technology**

©1991LEI    LEI01912500

Exhibit E

# I T R 5000™

## INSTANT TICKET RETAILER

ITR COMBINES ERGONOMIC DESIGN AND ADVANCED TECHNOLOGY FOR INCREASING SALES AND REDUCING COSTS ASSOCIATED WITH DISPENSING INSTANT LOTTERY TICKETS.

FEATURES:

- HOLDS UP TO 1500 INSTANT TICKETS.

- ACCOUNTING AND INVENTORY CONTROL FOR LOTTERY AND AGENT.

- ENHANCED SECURITY.

- LCD (LIQUID CRYSTAL DISPLAY) PROGRAMMABLE FOR ADVERTISING.



- DIAL-UP COMMUNICATIONS TO CENTRAL COMPUTER.

- AGENT AND CONSUMER ORIENTED.

- INSTANT SALES AND INVENTORY REPORTS.

- INCREASED SALES OPPORTUNITIES.

- AUTOMATIC AGENT ID IMPRINT.

- EASY FOR AGENT TO OPERATE.

- DISPENSES ANY SIZE TICKET UP TO 2" × 4".

LOTTERY CONCEPTS INTERNATIONAL, INC.

# I T R 5000™

## INSTANT TICKET RETAILER

The ITR terminal has a small foot print to fit in tight selling areas such as encountered in convenience stores yet is able to promote the instant ticket product, especially with the LCD option.

The ITR terminal has a 16 key keypad and an LCD display for the agent. The agent need only key in the number of tickets required and depress "enter" to dispense the tickets to the customer. The keypad uses membrane technology for trouble free operation, and is laid out in two sections. The first section is numbered 0-10, and "CE" (clear entry), the remaining four keys are labeled "SIGN ON", "REPORT", "CASH", AND "ENTER". The logical, ergonomic design of the keypad insures all functions available are initiated with simple, easy to follow key strokes.

The agent LCD is used to display the dollar amount to be collected. All report functions can be written on this 16 character display.

An adjustable ticket bin is provided to accomodate tickets from 2.0" to 4.0" wide, and fan folded in sections of five tickets each, to a maximum of 1500 tickets. An alarm will sound when out of stock or a power low (brown out) condition. The change of ticket size can be accommodated by the terminal with only simple adjustments which can be carried out by an agent or lottery representative.

A real time clock is supplied for time and date tracking (24-hour). The clock can be used for many communication functions such as auto dial out to host computer for sales reporting, allow communications only at specified times, time stamp certain transactions, and dial-up for after hours data collection.

No marks, holes, or notches of any kind are required on the ticket stock.

A compact printer is available to give a hard copy of the sales reports. This option is extremely important where agents need to reconcile sales after each shift, or verify transactions of a previous date.

### SPECIFICATIONS

Height: 12.0"    Width: 9.0"    Length: 15.0"

Weight: 16 lbs.

115 VAC 60 Hz 50 Watts  .50 Amps

Capacity: 1500 tickets

Ticket Sizes: 1.25" to 2.00" long. 2.75" to 4.00" wide.

### OPTIONS

1200-baud modem.

20 Colume thermal printer.

80 character backlit programmable LCD customer display.

Marketed exclusively by:
Lottery Concepts International
74 Branch Street  Suite 17
Scituate, MA 02066
(617) 545-4829

West Coast Office:
7515 Charmant Drive Suite 1407
San Diego, CA 92122
(619) 546-7601

© 1987 LCI
9/87 - 1000

Exhibit F

ird-quarter divi-
uarter, payable
: is the 103th
go-based equity

a store today on
vately held Dal-
ores in eight

quarter loss, in-
ie. Its six-month
be able to repay
· protection.
irces Inc., a min-
aunderer Rich-

ne of $981,000,
onth net to $2.3
in operations in
ative results.

customer assis-
· with power
? move came
could jam, lock-
side.

azor blade com-
tend to the ad-
eral judge ruled
iade by Judge
Vilkinson Sword
· Co.

warded $1.16
i she suffered
quired her to
push a button
h day. Co-work-
as clearly in,

vistar Interna-
i retirees'
iled in U.S. Dis-
irt either pro-
ie company to
le.

iod of its lower
ires are availa-
on, Paris, Am-
178 round-trip,

r 1 percent,
hown since the

eclining to $214

iff and wire reports



Union-Tribune / JAMES SKOVMAND

**Local Jackpot:** *Robert Burr, president of Lottery Enterprises Inc., demonstrates the machine that dispenses scratch-off lottery tickets.*

# State awards $15 million contract for lottery ticket vending devices

By CRAIG D. ROSE, Staff Writer

A small San Diego company has won a $15 million state contract to supply thousands of scratch-off lottery ticket vending machines, with the first machines expected in local Vons and Ralphs grocery stores by next week.

Lottery Enterprises Inc., a 2-year-old company in Kearny Mesa, said the initial order calls for up to 2,000 of its vending machines to be installed around the state by November. Options included in the five-year contract could lead to the installation of 4,500 to 6,500 more vending units, said Robert Burr, the company's chief executive officer.

The contract means the company will hire more than 100 people at its local facility and statewide to service the machines, Burr said. Lottery Enterprises currently employs 25 persons in Kearny Mesa, where the machines are manufactured, and 20 in Virginia, where it has installed 1,300 machines.

The California order also is likely to boost em-

ployment at companies that supply Lottery Enterprises with materials and components. Many of those companies are local, minority-owned businesses, Burr added.

State lottery authorities estimate that 400 new jobs will result from the contract.

Lottery Enterprises earlier won contracts to install scratch-off lottery-ticket machines in Delaware, Vermont and Colorado. The Canadian province of Ontario also is currently evaluating company's units, as are authorities in Spain, Iceland and England, Burr said.

Lottery Enterprises says its machines are more convenient than over-the-counter sales and have increased ticket sales dramatically in other states.

"We've seen that every place we've put them in, the tickets are an impulse buy, and our machines are designed with windows so the tickets

See Lottery on Page C-2

C
ri
t;
U

By R
Reute
W
ed.S
terd
to $
Am
clos
deal
T
rou
jing
the
Chi
rest
"S
betv
tant
Ira
A
reta
Rep
said
wan
B
that
plet
acti
M
Beij
a f
wou
Oct
H
mac
the
uns
we
acti
H
jor
Sta
pun
foo
leni
al l
N
por
tex
rea
ing
toy
N
list
far

ernment~la] starting to explain what it will do to stimulate Japan's ailing economy, the Tokyo Stock Exchange is showing signs of life.

After the Nikkei Stock Average capped a prolonged decline Tuesday with a plunge to a six-year low, Finance Minister Tsutomu Hata hurriedly pledged action to prop up stock prices.

He proclaimed the nation's financial crisis, marked by plummeting stocks, sick banks and anemic corporate earnings, "the most severe since World War II."

The Nikkei soared more than 13 percent over the next three days, ending the week at 16,216.88, its highest close in more than a month. While some of the gain was for technical reasons, analysts agree that investors found Hata's comments reassuring.

"The government and papers correctly have created the impression that the situation is turning around," said Paul Mig-

behind. Now it may go beyond just reacting, and people are happy the government is governing again."

Many investors are now

## The Nikkei ended the week at 16,216.88, its highest close in more than a month.

waiting expectantly for next Friday, when Prime Minister Kiichi Miyazawa is expected to announce an emergency government spending package of as much as $55.4 billion to stimulate the sluggish economy.

market's rebound may be short-lived. There's great potential for disappointment.

Hata said Tuesday the government would enact measures to discourage financial firms from selling shares to realize capital gains. He also suggested there would be tax relief for banks burdened with bad debts.

The proposal that has raised the most interest involves creating a syndicate to buy either real estate used as collateral in loans that have gone bad or the loans themselves.

"It looks as if a safety net is being built," Migliorato said.

Japan's economy is expected to grow about 2 percent this year, a sharp decline from last year's 4.5 percent rate.

# Lottery

### San Diego company gets state contract

Continued from Page C-1

pass by as you purchase them," Burr said.

The machines also can provide customers with a choice of up to eight different types of instant tickets. A California test, Burr said, found the machines increased sales by 80 percent.

Lottery Enterprise hopes to introduce later this year a machine to dispense break-open tickets, which are sold by several Western states.

The privately held company, financed by the Ralph L. Evans Trust in Rancho Santa Fe, declined to disclose its sales and income figures.

# Ships

### Navy repair contract to help U.S. shipyards

Continued from C-1

all repairs and modifications to be done by American shipyards. Eight ships hired in late July will be reflagged as U.S. vessels and will be modified in the United States, he stated.

Donovan said the earlier contract allowed foreign repairs because the Navy believed U.S. shipyards would be unable to complete the work because of

pending Navy warship repairs. He changed the policy after the Navy determined that American ship repair firms would be able to satisfy future sealift contracts.

The ships, chartered for at least 17 months, are stationed near potential hot spots, such as the Mideast or Asia. If a conflict occurs, the prepositioned ships would sail to the troubled area, where troops flown in from the United States would pick up their equipment and heavy weapons.

At the beginning of the Persian Gulf crisis, several such ships delivered war material to Saudi Arabia in the weeks following Iraq's invasion of Kuwait.

[Stock market tables — illegible]



RECEIVED
PATCNT

12/0

10-14-92

7MOR

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| Applicant | : | Robert L. Burr |
| Serial No. | : | 07/912,005 |
| Filed | : | July 10, 1992 |
| For | : | TICKET DISPENSER MACHINE AND METHOD |
| Group Art Unit | : | 3101 |
| Examiner | : | D. Bollinger |

530 Fifth Avenue
New York, New York   10036

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to:
Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231, on <u>October 1, 1992</u>

<u>Gregor N. Neff, Reg. No. 20,596</u>
Name of Applicant, Assignee or Registered
Representative

_____
Signature

<u>October 1, 1992</u>
Date of Signature

**AMENDMENT**

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

In response to the Official Action mailed September 14,

1992, please enter the following amendment of the above-

identified patent application:

**IN THE CLAIMS:**

Rewrite claims 1 and 16 as follows:

GNN9:2030.SPA                        -1-

PATENT
3390-2030

1. (Twice Amended)  A ticket dispensing machine, comprising, in combination, a housing, at least one window in said housing through which tickets inside said housing can be seen but not touched by a person outside said housing, a dispensing outlet in said housing, electrically powered means for moving a continuous strip of tickets past said window, and for dispensing through said outlet a pre-determined number of said tickets to an operator of said machine[, and protective means for deterring the operator of the machine from withdrawing from said machine more than said pre-determined number of tickets].

16. (Twice Amended)  A ticket vending method, said method comprising the steps of:

(a)  utilizing electrically powered drive means for moving a strip of mutually-attached tickets past a viewing window in a housing in a manner such that the tickets can be seen from outside said housing, and

(b)  issuing from said housing a pre-determined number of tickets from said array which are ordered by an operator[, and operating means for deterring said operator from withdrawing more than said number of tickets].

Claim 10, line 2, change "protective" to --dispensing--;

Claim 1, line 1, change "26" to --29--.

Claim 32, line 5, change "say" to --said--.

Claim 33, line 1, change "26" to --29--.

GNN9:2030.SPA                    -2-

PATENT
3390-2030

## REMARKS

The undersigned attorney would like to take this opportunity to thank the Examiner for the courtesies extended to him and Mr. Robert L. Burr, the inventor, during the interview which took place on August 26, 1992.

During the interview, the facts and Exhibits in the accompanying Declaration Under Rule 132 were explained to the Examiner to demonstrate the commercial success which has been achieved by the invention. In particular, the test results set forth in Exhibit D were offered to show the impressive ticket sales increases achieved by the machine using the invention.

As it was explained during the interview, the commercial success of the invention, which is far in excess of what might be expected, demonstrates the unobviousness of the invention. The Groves and Knee references simply do not show or suggest the extraordinary increase of ticket sales produced by driving an array of tickets past a window in the dispensing device.

As to the assertion of indefiniteness of claims 1, 2, 4-6, 31 and 33, it is believed that the claims are sufficiently definite. Whether there is a single mechanism for moving the strip and dispensing the tickets, or separate means for each function is not believed to be important to the patentability of the invention because the movement of the ticket array past the window is at the heart of the commercial success, and the means

GNN9:2030.SPA                    -3-

PATENT
3390-2030

disclosed is properly recited as means for performing the moving and dispensing.

Claims 1 and 16 have been sharpened by elimination of the protective means (Claim 1) and the protective step (Claim 16) for preventing unauthorized withdrawal of tickets because that feature is off the main point of the invention. It is believed that the Examiner concurred with this proposal during the interview.

In accordance with the foregoing, and the comments in the Examiner Interview Summary Record, it is believed that the patent application is in condition for allowance.

Accordingly, it is respectfully requested that the application be allowed and passed to issue.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.
Attorneys for Applicant

By _____
Gregor N. Neff
Reg. No. 20,596
(212) 840-3333

GNN9:2030.SPA                    -4-



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/912,005 | 07/10/92 | BURR | R    3390-2030 |

| EXAMINER |
|---|
| BOLLINGER, D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3101 | 18 |

GREGOR N. NEFF
C/O CURTIS, MORRIS & SAFFORD
530 5TH AVE.
NEW YORK, NY 10036

DATE MAILED:
12/16/92

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to *the communications filed 5 October 1992*.
2. ☒ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. ☒ The allowed claims are *1, 2, 4-6, 10-12, 16, 18, 21, 22, 29-33, 35-40, 43-45 & 47*.
4. ☐ The drawings filed on _____ are acceptable.
5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received. [_] not been received. [_] been filed in parent application Serial No. _____ filed on _____
6. ☒ Note the attached Examiner's Amendment.
7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.
8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.
9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. ☒ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☒ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. ___*B*___ CORRECTION IS REQUIRED.
   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.
   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   d. ☒ Formal drawings are now REQUIRED.

-------------------------------------------------------------------------------------------------

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**
☑ Examiner's Amendment
__ Examiner Interview Summary Record, PTOL- 413
__ Reasons for Allowance
__ Notice of References Cited, PTO-892
__ Information Disclosure Citation, PTO-1449

__ Notice of Informal Application, PTO-152
__ Notice re Patent Drawings, PTO-948
__ Listing of Bonded Draftsmen
__ Other

Serial No. 912005                              -2-
Art Unit    3101

    Applicant's directions to amend claim 1 line 1 to change
"26" to --29--, on page 2 of the amendment filed 5 October 1992,
are defective as "26" does not appear in line 1 of claim 1,
therefore; this portion of the above mentioned amendment has not
been entered.

    An Examiner's Amendment to the record appears below.  Should
the changes and/or additions be unacceptable to applicant, an
amendment may be filed as provided by 37 C.F.R. § 1.312.  To
ensure consideration of such an amendment, it MUST be submitted
no later than the payment of the Issue Fee.

    In the claims:

    claim 31 line 1 "26" has been changed to --29--.

    This amendment has been made to correct the dependency of
claim 31 so as not to depend from a canceled claim.  Further, it
was agreed to make such a correction in the interview of
26 August 1992.

    Any inquiry concerning this communication should be directed
to David Bollinger at telephone number (703) 308-1113.

                                  *David H. Bollinger* 12/14/92
                                DAVID H. BOLLINGER
                                PRIMARY EXAMINER
                                GROUP 310

dhb
December 12, 1992



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS .
Washington, D.C. 20231

GREGOR N. NEFF
C/O CURTIS, MORRIS & SAFFORD
530 5TH AVE.
NEW YORK, NY 10036

**NOTICE OF ALLOWANCE**
**AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/912,005 | 07/10/92 | 024 | BOLLINGER, D | 3101 | 1/21/92 |
| First Named Applicant | BURR, | | ROBERT | | |

TITLE OF INVENTION  TICKET DISPENSER MACHINE AND METHOD

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 3 | 3390-2030 | 221-001.000 | 198 | UTILITY | YES | 285.00 | 6/93 |

***THE FEE DUE IS THE AMOUNT IN EFFECT AT THIS TIME. IF THE AMOUNT OF THE ISSUE FEE INCREASES PRIOR TO PAYMENT, APPLICANT WILL BE NOTIFIED OF THE BALANCE OF ISSUE FEE DUE.***

***THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.***

***<u>PROSECUTION ON THE MERITS IS CLOSED.</u>***

***THE ISSUE FEE MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.***

### HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY Status shown above.
If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the patent and Trademark Office of the change in status, or
B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with, pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned. If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date) and serial number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.*

PTOL-85 (REV.7-92) (OMB Clearance is pending)    PATENT AND TRADEMARK OFFICE COPY

585-242 B

**PART B—ISSUE FEE TRANSMITTAL**

*MAILING INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advances orders and notification of maintenance fees will be mailed to addressee entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications. See reverse for Certificate of Mailing.*

1. CORRESPONDENCE ADDRESS

MAIL ROOM
FEB 17 1993
PATENT & TRADEMARK OFFICE

GREGOR N. NEFF
C/O CURTIS, MORRIS & SAFFORD
530 5TH AVE.
NEW YORK, NY 10036

2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change)

INVENTOR'S NAME
Street Address
City, State and ZIP Code
CO-INVENTOR'S NAME
Street Address
City, State and ZIP Code
☐ Check if additional changes are on reverse side

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 07/912,005 | 07/10/92 | 024 | | |

First Named Applicant: BUFE, ROBERT

TITLE OF INVENTION: TICKET DISPENSER MACHINE AND METHOD

Gregor N. Neff, Esq.

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3390-2030 | 221-001.000 | 198 | UTILITY | YES | | |

3. Correspondence address change (Complete only if there is a change)

4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed.

1. Gregor N. Neff, Esq.
   Reg. No. 20,596
2. Curtis, Morris & Safford
   Reg. No. 12,761
3.

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)

(1) NAME OF ASSIGNEE: Donald Sutherland, Trustee of the Ralph T. Evans
(2) ADDRESS (CITY & STATE OR COUNTRY): Box 2348, Rancho Santa Fe, California 92067
(3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION:

☐ This application is NOT assigned.
☒ Assignment has been previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

*PLEASE NOTE: Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.*

6a. The following fees are enclosed:
☐ Issue Fee
☐ Advanced Order - # of Copies

6b. The following fees should be charged to:
DEPOSIT ACCOUNT NUMBER 03-3925
(ENCLOSED PART C)
☐ Issue Fee   ☐ Advanced Order - # of Copies  10
☐ Any Deficiencies in Enclosed Fees

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Signature of party in interest of record)   (Date) 2/12/93

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

**TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE**

PTOL-85B (REV 7-92)(OMB Clearance is pending)

## Certificate of Mailing

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

> Box ISSUE FEE
> Commissioner of Patents and Trademarks
> Washington, D.C. 20231

on _____February 12, 1993_____
                                    (Date)

(Signature) _____

Gregor N. Neff, Esq.

(Typed or Printed Name)

_____February 12, 1993_____
(Date)

Note: If this certificate of mailing is used, it can only be used to transmit the Issue Fee. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

This form is estimated to take 20 minutes to Complete. Time will vary depending upon the needs of the individual applicant. Any comments on the amount of time you require to complete this form should be sent to the Office of Management and Organization, Patent and Trademark Office, Washington, D.C. 20231 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

REVERSE PTOL-85B (REV. 7-92)(OMB Clearance is pending)



55 - 215 GP 311
# 19

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant      :   Robert L. Burr, et al.

Serial No.     :   07/912,005

Filed          :   July 10, 1992

For            :   TICKET DISPENSER MACHINE AND METHOD

Art Unit       :   3101

Examiner       :   D. Bollinger

Batch No.      :   I98

RECEIVED
APR - 7 1993
GROUP 310

530 Fifth Avenue
New York, New York   10036

## PETITION UNDER 37 C.F.R. §1.136(a) and 1.17(a)

Honorable Commissioner of Patents and Trademarks
Washington, D.C.   20231

Sir:

Pursuant to §1.136(a) applicants hereby request a one
month extension of the period for filing formal drawings in
response to the December 16, 1992 Notice of Allowability, Part
II, i.e., up to and including April 16, 1993.

Enclosed herewith is a check for $55.00 in payment of
the fee set forth in §1.17(a) for a small entity for a
one month extension under §1.136(a), 37 C.F.R.

The Commissioner is hereby authorized to charge any
deficiencies or credit any overpayment in the petition fee to
Deposit Account No. 03-3925.

070 AA 04/05/93 07912005                    1 215     55.00 CK

PATENT
3390-2030

A duplicate of this petition is enclosed.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.

By _____
Gregor N. Neff, Esq.
Registration No. 20,595
(212) 840-3333

Enclosures
- Transmittal letter
- Formal Drawings (6 sheets)
- Check ($55.00)

c:\wp51\LEI\2030.Pet



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Robert L. Burr, et al. |
| Serial No. | : | 07/912,005 |
| Filed | : | July 10, 1992 |
| For | : | TICKET DISPENSER MACHINE AND METHOD |
| Art Unit | : | 3101 |
| Examiner | : | D. Bollinger |
| Batch No. | : | I98 |

GROUP 310    APR - 7 1993    RECEIVED

530 Fifth Avenue
New York, New York  10036

PETITION UNDER 37 C.F.R. §1.136(a) and 1.17(a)

Honorable Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

Pursuant to §1.136(a) applicants hereby request a one month extension of the period for filing formal drawings in response to the December 16, 1992 Notice of Allowability, Part II, i.e., up to and including April 16, 1993.

Enclosed herewith is a check for $55.00 in payment of the fee set forth in §1.17(a) for a small entity for a one month extension under §1.136(a), 37 C.F.R.

The Commissioner is hereby authorized to charge any deficiencies or credit any overpayment in the petition fee to Deposit Account No. 03-3925.

PATENT
3390-2030

A duplicate of this petition is enclosed.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.

By _____
Gregor N. Neff, Esq.
Registration No. 20,598
(212) 840-3333

Enclosures
- Transmittal letter
- Formal Drawings (6 sheets)
- Check ($55.00)

c:\wp51\LEI\2030.Pet



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Robert L. Burr, et al. |
| Serial No. | : | 07/912,005 |
| Filed | : | July 10, 1992 |
| For | : | TICKET DISPENSER MACHINE AND METHOD |
| Art Unit | : | 3101 |
| Examiner | : | D. Bollinger |
| Batch No. | : | 198 |

                                    530 Fifth Avenue
                                    New York, New York   10036

### LETTER TRANSMITTING FORMAL DRAWINGS

Honorable Commissioner of Patents and Trademarks
Washington, D.C.  20231

Attention:  Official Draftsman

Sir:

        Pursuant to Part II of the December 16, 1992 Notice of
Allowability, with the term for reply having been extended one
month, enclosed are six (6) sheets of formal drawings to be
made of record in the above-identified patent application.

                        Respectfully submitted,

                        CURTIS, MORRIS & SAFFORD, P.C.

                        By
                            Gregor W. Neff, Esq.
                            Registration No. 20, 596
                            (212) 840-3333

Enclosures
    - Drawings (6 sheets)

912,005

5222624



LOTTERY TICKETS

F I G.1

912,005



F I G. 2

912,005



F I G. 5

F I G. 6

F I G. 3



F I G. 4



F I G. 7



F I G.8

F I G.9

F I G.10



PTO UTILITY GRANT
Paper Number ___

## The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*The
United
States
of
America*



*Acting Commissioner of Patents and Trademarks*

*Attest*

PTO-1584

DSD.



CHANGE OF CORRESPONDENCE ADDRESS

FOR PATENTS

Patent No.         :   5222624

Issue Date         :   06/29/93

Application No.:   912005

Filing Date        :   07/10/92

First Named
    Inventor       :   BURR RL

Case Number        :   3345-2050


Assistant Commissioner for Patents
Washington, D.C.  20231

Dear Sir:

        Please change the Correspondence Address for this

application to:

                Gregor N. Neff, Esq.
                Whitman Breed Abbott & Morgan
                200 Park Avenue
                New York, New York 10166

Tele No.:  (212) 351-3000
Fax No. :

I am the attorney of record.

Typed or Printed
Name          Gregor N. Neff      . Reg. No. 20,596
_____

Signature
_____

Date
_____

DsD

PATENT
3345-2050

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | R. L. Burr |
| Patent No. | : | 5,222,624 |
| For | : | Windows Ticket Dispenser |
| Issued | : | 6/29/93 |

919 Third Avenue
New York, NY 10022-3852

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to:
Asst. Commissioner for Patents
Washington, D.C. 20230

Gregor N. Neff - Registration No. 20,596
Name of Applicant, Assignee or Registered
Representative

_Gregor Neff_
Signature

_10 apr 01_
Date of Signature

### NOTICE OF CHANGE OF ADDRESS

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Please change the Correspondence Address for the

application to:

- 1 -

KL3.2094262 1

PATENT
3345-2050

*Gregor N. Neff*
*Kramer Levin Naftalis & Frankel LLP*
*919 Third Avenue*
*New York, NY 10022-3852*
*Direct Dial:     212 715 9202*
*Facsimile:       212 715 8000*

I am the attorney of Record.

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:

Gregor N. Neff
Registration No. 20,596
(212) 715-9202

KL3:2094202.1

*U.S. GOVERNMENT PRINTING OFFICE: 1990-258-989

| | ORIGINAL CLASSIFICATION | |
|---|---|---|
| PATENT NUMBER | CLASS | SUBCLASS |
| | 221 | 1 |

| APPLICATION SERIAL NUMBER | CROSS REFERENCE(S) | | | | |
|---|---|---|---|---|---|
| 912005 | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | |
| APPLICANT'S NAME (PLEASE PRINT) | 221 | 2 | 8 | 13 | 25 |
| Burr | 221 | 124 | 129 | 155 | — |
| IF REISSUE, ORIGINAL PATENT NUMBER | | | | | |
| | | | | | |

| INTERNATIONAL CLASSIFICATION (INT. CL. 4) | | |
|---|---|---|
| G 0 7 F | 11/00 | |
| | / | |
| | / | |

| GROUP ART UNIT | ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME) |
|---|---|
| 3101 | PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME) David H. Bollinger |

PTO 270 (10-84)

**ISSUE CLASSIFICATION SLIP**

U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE

| PATENT APPLICATION FEE DETERMINATION RECORD | Application or Docket Number |
|---|---|
| Effective December 16, 1991 | 07/912005 |

### CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $ 345.00 | OR | | $ 690.00 |
| TOTAL CLAIMS | 24 | minus 20 = *4 | x $10= | 40 | OR | x $20 = | |
| INDEPENDENT CLAIMS | 7 | minus 3 = *4 | x 36= | 144 | OR | x 72= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | + 110 = | | OR | + 220 = | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 529 | | TOTAL | |

### CLAIMS AS AMENDED - PART II

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** | Total | *24 | Minus | **24 | = | x $10= | | OR | x $20= | |
| | Independent | *9 | Minus | ***7 | =2 | x 36= | 72.00 | OR | x 72= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 110 = | | OR | + 220 = | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |
| **AMENDMENT B** | Total | * | Minus | ** | = | x $10= | | OR | x $20= | |
| | Independent | * | Minus | *** | = | x 36= | | OR | x 72= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 110 = | | OR | + 220 = | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |
| **AMENDMENT C** | Total | * | Minus | ** | = | x $10= | | OR | x $20= | |
| | Independent | * | Minus | *** | = | x 36= | | OR | x 72= | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 110 = | | OR | + 220 = | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
    The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Form PTO-875
(Rev. 12-91)

*U.S. Government Printing Office: 1992 — 308-890      Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



Staple Issue Slip Here

| POSITION | | INIT. | DATE |
|---|---|---|---|
| CLASSIFIER | | | |
| EXAMINER | | | |
| TYPIST | | 349 | 7-28-92 |
| VERIFIER | | v 42 | 7-29-92 |
| CORPS CORR. | | | |
| SPEC. HAND | | | |
| FILE MAINT. | | | |

## INDEX OF CLAIMS

## SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 221 | 1 | 8/10/92 | DHB |
| | 2 | | |
| | 5 | | |
| | 8 | | |
| | 9 | | |
| | 10 | | |
| | 13 | | |
| | 25 | | |
| | 26 | | |
| | 30 | | |
| | 92 | from | |
| | 123 | parent | |
| | 124 | | |
| | 129, 131 | | |
| | 155 | | |
| | 191 | | |
| | 194 | | |
| | 195 | | |
| | 206 | | |
| | 247 | | |
| 235 | 375 | | |
| 364 | 479 | | |
| above search updated | | 12/1/92 | DHB |

## SEARCH NOTES

| | Date | Exmr. |
|---|------|-------|
| | | |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 221 | 1 | 12/11/92 | DHB |
| | 2 | | |
| | 8 | | |
| | 13 | | |
| | 25 | | |
| | 124 | | |
| | 129 | | |
| | 155 | | |

APPROVED FOR LICENSE ☐

INITIALS _____

07 /912005

| Entered or Counted | | CONTENTS | Received or Mailed |
|---|---|---|---|
| | **1.** *Application* _____ *papers.* | | |
| 13 | 2. Pre Amdt B | July 10, 1992 |
| 14 | 3. Pre Amdt C | July 10, 1992 |
| 15 | 4. A431 & Interview Summary | SEP 14 1992 |
| 16 | 5. Declaration & Exhibits | Oct. 5, 1992 |
| 17 | 6. Amdt D | Oct. 5, 1992 DEC 16 1992 12/14= |
| 4/19/93 19 | 7. Examiners Amdt | |
| | 8. Formal drwgs 6 shts (1 rd) | 3/23/93 |
| 20 | 9. PTO GRANT JUN 9 1993 | |
| 21 | 10. | |
| 22 | 11. | |
| 23 | 12. | |
| 24 | 13. | |
| 25 | 14. | |
| 26 | 15. | |
| 27 | 16. | |
| 28 | 17. | |
| 29 | 18. | |
| 30 | 19. | |
| 31 | 20. | |
| 32 | 21. | |
| 33 | 22. | |
| 34 | 23. | |
| 35 | 24. | |
| 36 | 25. | |
| 37 | 26. | |
| 38 | 27. | |
| 39 | 28. | |
| 40 | 29. | |
| 41 | 30. | |
| 42 | 31. | |
| 43 | 32. | |

# EXHIBIT PP

July 31, 1962          R. C. GROVES          3,047,347

CONTROLLING MOVEMENT OF ARTICLES

Filed April 25, 1955



INVENTOR.

*ROBERT C. GROVES*

BY *Toulmin & Toulmin*

ATTORNEYS

# United States Patent Office

**3,047,347**
Patented July 31, 1962

1

**3,047,347**
**CONTROLLING MOVEMENT OF ARTICLES**
Robert C. Groves, 335 Aberdeen Ave., Dayton, Ohio
Filed Apr. 25, 1955, Ser. No. 503,769
3 Claims. (Cl. 312—39)

This invention relates to the delivering of articles and the control thereof, and the automatic maintaining of records and accounting of the articles and material delivered.

In many dispensing, manufacturing, and packaging operations an important item of information which is desired to have available at any instant is the number of articles or amount of material that has been dispensed or handled up to a predetermined point, or the amount of material or number of articles remaining out of a given group yet to be dispensed or handled.

For example, in dispensing machines, which might dispense such articles as candy bars, or packages of cigarettes or the like, it would be convenient to inspect the machine and determine instantly the number of articles remaining to be dispensed.

In still other instances, as in the case of dispensing certain types of merchandise, nails for instance, it would be desirable, in order to eliminate expensive and time-consuming handling of such merchandise, to have a dispensing mechanism that could readily be adjusted to provide for the dispensing of a predetermined amount of the material being dispensed, with an accounting being kept of the amount dispensed and the amount yet remaining to be dispensed.

With the foregoing in mind, it is a primary object of the present invention to provide a method and apparatus for accomplishing the desirable results referred to above.

A particular object of this invention is the provision of a method and apparatus for maintaining a continuous inventory of material being dispensed from a dispensing device.

In general, the objectives of this invention are attained by utilizing a punched strip which is in positive engagement with a driving or driven member whereby the movement of the strip and movement of the member is positively correlated.

The punched strip is either in the form of a carrier of the articles or material being moved or dispensed, or may form a part of the said articles or material. The driving or driven member either drives the punched strip or is driven thereby, and in either case can be utilized for operating a counter or other quantity indicator, or for actuating a limit control which determines the amount of movement of the punched strip, or may be utilized for controlling the movement of another article or material which is to be combined with the articles or material associated with the punched strip.

The several objects and advantages of this invention will become more apparent upon reference to the following specification, taken in connection with the accompanying drawings, in which:

FIGURE 1 is a more or less diagrammatic perspective view showing a coin-operated dispensing device embodying the principles of my invention;

FIGURE 2 is a perspective view showing a carrier strip adapted for being handled in the dispensing device of FIGURE 1;

FIGURE 3 is a perspective view showing the driving device which drives the punched carrier strip of FIGURE 2;

FIGURE 4 is a section on line 4—4 of FIGURE 3 showing a one-way drive clutch forming a part of the drive train leading to the member which engages the punched carrier strip in FIGURE 3; and

2

FIGURE 5 is a diagrammatic view of an electric control circuit adapted for being associated with the drive train of FIGURE 3.

Referring to the drawings somewhat in more detail, FIGURE 1 illustrates a dispensing device of the coin-operated type which is adapted for dispensing articles that are mounted on a punched carrier strip. Articles to be dispensed in this manner may comprise substantially anything of a size small enough to be packaged in continuous strips and of such a nature as to lend themselves to being dispensed in this manner.

In FIGURE 1 the device comprises a frame 20 having a compartment 22 therein, within which is disposed a plurality of strips 24 carrying the articles to be dispensed. Strips 24, as will be seen in FIGURE 2, are perforated along at least one side edge as at 26, and the carrier strip is also perforated by the perforations 28 at regular intervals between the articles 30 that are carried by the carrier strips. The carrier strip is preferably in the form of two webs or filaments, on which the articles are placed and with the webs or filaments being joined or sealed together between the articles and at their side edges, and with the perforations 28 extending across the sealed portions of the carrier strip.

According to this invention the carrier strip is provided with printed numbers or other indicia 31 thereon which indicate either the number of articles that have been dispensed from a strip or the number of articles yet remaining in a carrier strip to displaced. This enables the carrier strip to be made up in lengths of, say, 100 articles, and a cursory inspection of the dispensing device will, at any time, show whether or not is needs refilling.

According to this invention the perforations 26 along the side edges of the carrier strips 24, of which there may be several different types in the device of FIGURE 1, are utilized for driving the strips in the directions of their length to provide for the dispensing thereof from the device. An arrangement for controlling the movement of one of the strips is illustrated in FIGURE 3, with the electric control circuit therefor being illustrated in FIGURE 5.

In FIGURE 3 a pinwheel 32 having pins 34 engages the perforations 26 on one, or both, side edges of the particular carrier strip 24 so that rotation of pinwheel 32 will drive the carrier strip in the direction of its length.

It is preferred for the dispensing device of FIGURE 1 to be of the coin-operated type, and to this end automatic means are provided for rotating the pinwheel 32. This means takes the form of the one-way clutch 36 which connects shaft 38 of pinwheel 32 with shaft 40 which, in turn, is connected through gearing 42 with drive motor M and a counter 44.

The portion of clutch 36 that is connected with shaft 38 is provided with a notched periphery which is adapted for engagement with the latch member 46 which normally prevents rotation of the pinwheel in its dispensing direction, but which is adapted for being withdrawn by energization of solenoid S1 to permit rotation of the pinwheel. This prevents pulling of the carrier strip from the dispensing device manually.

The electric circuit for energizing motor M is illustrated in FIGURE 5. This circuit comprises means for selecting different amounts of rotation of motor M to provide for different lengths of dispensed carrier strips. This is a desirable feature in a coin-operated dispensing device, because a coin drop as at 50 may be provided thereon for receiving coins of different denominations, which will bring about the dispensing of corresponding lengths of the carrier strip. Such a coin-operated dispensing device might be adapted for receiving coins of 5 cents, 10 cents, or 25 cents denominations.

The coin drop is arranged, according to conventional

3,047,347

3

practices; for a 5 cent coin disposed therein to momentarily close a limit switch LS1; for a 10 cent coin disposed therein to momentarily close a limit switch LS2; and for a 25 cent coin disposed therein to momentarily close a limit switch LS3.

The limit switches have associated therewith the relays R1, R2, and R3, respectively, which close during the interval that the pertaining coin-operated limit switch is closed. Each of the said relays has a blade connected to energize a coil of the main relay R4 when closed and also energizes solenoid S1. Main relay R4 has a blade thereon for accomplishing the energization of motor M when the said relay is closed.

Each of relays R1, R2, and R3 has a holding circuit leading through a normally open blade of the retaining relay, and located in the circuits are the normally closed limit switches LS4, LS5, and LS6, respectively. These limit switches have associated therewith the cams 60, 62 and 64, respectively.

The cams are mounted on shaft 40 so that rotation of the shaft will rotate the cams. Each of the cams is provided with a raised portion and a valley, with the valleys differing in length so that each of the limit switches LS4, LS5 and LS6 will open in response to a different amount of angular movement of shaft 40; the smallest movement being required to open LS4; twice as much movement being required to open LS5; and five or six times as much movement being required to open LS6.

A preset torsion spring arrangement 66 is provided which, upon de-energization of motor M, will drive shaft 40 back to its starting position, at which time a stop pin 68 associated with the shaft strikes a stationary abutment 70. This will position the shaft so that each of the cams 60, 62 and 64 will have the actuating element of the pertaining limit switch LS4, LS5, or LS6 at the beginning of the valley portion thereof.

*Operation of the Circuit of FIGURE 5*

The operation of the circuit FIGURE 5 is as follows: With the circuit at rest, solenoid S1 is deenergized and this permits latch member 46 to engage the ratchet wheel and to lock shaft 38 against forward rotation. The machine is placed in operation by inserting a coin in the coin receiver 50 and, depending upon the size of the coin, one of limit switches LS1, LS2 or LS3 will be closed. Depending on which one of the said limit switches are closed, one of relays R1, R2, or R3 will be closed. Whichever relay is closed, a holding circuit will be established therefor through one of its own blades while simultaneously, solenoid S1 will be energized to withdraw latch 46 and also relay R4 will be energized to close its blade which will cause energization of motor M. Energization of motor M will cause driving of shaft 40 and through the one way drive coupling, which includes the ratchet 36, will drive shaft 38. The amount of rotation imparted to the shafts will be determined by the actuation of the one of the limit switches LS4, LS5, and LS6 which pertains to the one of the limit switches LS1, LS2, or LS3 which was closed by the coin actuated device. When the pertaining limit switch is actuated, the holding circuit for the energized relay is opened and this will bring about deenergization of the relay while simultaneously the solenoid S1 will be deenergized and also the energizing coil of relay R4. The motor M is thus deenergized and the latch 46 is released to its latching position and the torsion spring 66 at that time will snap the shaft 40 back to its starting position, at which time finger 68 will engage stop 70. The counter 44 also embodies a one way drive so that it will register the amount of forward rotation of shaft 40 but will not be influenced by the reverse rotation thereof.

By the described arrangement there is provided a novel dispensing device for articles packaged according to my invention on continuous carrier strip means having one or more rows of perforations thereon, and with selective

4

control being provided to determine the amount of movement of each carrier strip handled by the dispensing device. Each actuating mechanism for each carrier strip also includes a counter so that a continuous over-all indication of the number of each article dispensed is available.

The arrangement just described has the perforations along the strip varying in simple numerical ratio to the articles carried by the strip. In the strip illustrated in FIGURES 2 and 3 this numerical ratio is two perforations for each article. It will be apparent, however, that, in the interest of economy or to provide a compact strip which will require the minimum of storage space, the articles might be located on the strip in as close association as possible without regard to the maintaining of a simple numerical ratio between the number of articles and the number of perforations. In dispensing articles carried on strips of this nature it is necessary to provide for a length of feed of the carrier strip.

It will be understood that this invention is susceptible to modification in order to adapt it to different usages and conditions and, accordingly, it is desired to comprehend such modifications within this invention as may fall within the scope of the appended claims.

I claim:

1. In a dispensing device; a frame, a discharge opening therein, said device being adapted for feeding a tubular carrier strip within said frame through said discharge opening, said carrier strip having punched holes distributed uniformly along the length thereof, a driving pinwheel having pins adapted for engaging said series of punched holes, a motor for driving said pinwheel, a one-way drive between the motor and pinwheel, means for controlling the energization of said motor to control the feeding of said strip from said device, said last-mentioned means comprising a plurality of cam means connected with said motor to move in unison with the motor, a limit switch under the control of each said cam means, each switch being actuated by its respective cam means in a different rotated position of said motor, a relay pertaining to each switch, each switch being operable to deenergize its pertaining relay when actuated, each relay being connected with the motor so energization of any of the relays will energize the motor, coin-operated means for selectively energizing said relays thereby selectively making said limit switches effective for de-energizing said motor in response to a predetermined rotation, resilient means operable to return the motor to its starting position upon de-energization thereof, a latch normally effective to lock the pinwheel against rotation, and means connected to said relays operable automatically for making the latch ineffective when the motor is energized and effective when the motor is de-energized.

2. A dispensing device for dispensing tubular strips having uniformly spaced perforations along the side edges, a pinwheel drive member in the device engaging the said perforations, a motor for rotating the drive member, a plurality of cams driven by the motor so as to rotate in unison with the drive member, a one-way drive connecting the motor with drive member, a switch under the control of each said cam, each switch being actuated by its respective cam in a different rotated position of said motor, a relay in circuit with each switch adapted for being deenergized when the pertaining switch is actuated, means for selectively energizing said relays, each said relay being connected in circuit with said motor and being adapted when energized to cause energization of said motor, a latch normally engaged with said drive member operable for preventing forward rotation of said drive member, and means connected to said relays operable for withdrawing said latch from engagement with said drive member simultaneously with the energization of any of said relays.

3. A dispensing device according to claim 2 in which

3,047,347

5

there is a counter connected with the cams to rotate there-
with.

References Cited in the file of this patent

UNITED STATES PATENTS

| | | |
|---|---|---|
| 661,130 | Pape | Nov. 6, 1900 |
| 683,660 | Price | Oct. 1, 1901 |
| 1,304,974 | Helsel | May 27, 1919 |
| 1,895,899 | Schaub | Jan. 31, 1933 |
| 1,946,371 | Walker | Feb. 6, 1934 |

6

| | | |
|---|---|---|
| 2,037,825 | Salfisberg | Apr. 21, 1936 |
| 2,186,302 | Martin | Jan. 9, 1940 |
| 2,258,912 | Steen | Oct. 14, 1941 |
| 2,323,255 | Sutherland | June 29, 1943 |
| 2,368,001 | Cooper | Jan. 23, 1945 |
| 2,599,173 | Hamilton | June 3, 1952 |
| 2,758,710 | Arens | Aug. 14, 1956 |
| 2,767,981 | Hempel | Oct. 23, 1956 |
| 2,801,848 | Taylor | Aug. 6, 1957 |

# EXHIBIT QQ

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT RR

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT SS

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on December 2, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on December 2, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
alundgren@ycst.com

*Attorneys for GTECH Corporation*

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on December 9, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE  19801

I further certify that on December 9, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Andrew A. Lundgren_

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
alundgren@ycst.com

*Attorneys for GTECH Corporation*