DECLA...ION FOR PATENT APPLICATION (⌐. OR SOLE)
(Under 37 CFR § 1.63; with Power of Attorney)

CURTIS, MORRIS & SAFFORD, P.C. File No. . . . . . . . . . . . . . . . . . . . . 332-2130

...s a below named inventor, I hereby declare that:
...y residence, post office address and citizenship are as stated below next to my name.
I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention ENTITLED:
SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
the specification of which
☐ is attached hereto.
☒ was filed on . . December 3, 1987 . . . . as Application Serial No. . . 07/128,070 . . . . . . .
with amendment(s) through . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (if applicable, give dates).

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56 (a).

I hereby claim foreign priority benefits under Title 35, United States Code, § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s) [list additional applications on separate page]:

| | | | Priority Claimed: |
|---|---|---|---|
| Number: | Country: | Filed (Day/Month/Year): | Yes    No |

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Prior U.S. Application(s) [list additional applications on separate page]:

| Application Serial No.: | Filed (Day/Month/Year): | Status (patented, pending, abandoned): |
|---|---|---|

I hereby appoint . . . . . . Gregor N. Neff . . . . . . . . . . . . . . . . . . . , Registration No. . . 20,596 . . . and . . Abigail F. Cousins, Registration No. 29,292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . and CURTIS, MORRIS & SAFFORD, P.C., Registration No. 12761, or their duly appointed associate, my attorneys, with full power of substitution and revocation, to prosecute this application, to make alterations and amendments therein, to file continuation and divisional applications thereof, to receive the Patent, and to transact all business in the Patent and Trademark Office and in the Courts in connection therewith, and specify that all communications about the application are to be directed to the following correspondence address:

Gregor N. Neff . . . . . . . . . . . . . , Esq.          Direct all telephone calls to: (212) 840-3333
c/o CURTIS, MORRIS & SAFFORD, P.C.                          to the attention
530 Fifth Avenue
New York, New York 10036          of . . . . . . Gregor N. Neff . . . . . . . . . . . . . . . . . . . . . . . . .

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

INVENTOR(S):
Signature: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date: 2/10/88
Full name of sole or first inventor: Robert L. Burr
Residence: 7515 Charmant Drive, Suite 1407, San Diego, California
Citizenship: U.S.A.

Signature: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date: . . . . . . . . . . . . . . . . . .
Full name of 2nd joint inventor (if any): Laird A. Campbell
Residence: Rt. 2, Box 223, Laceys Springs, Alabama
Citizenship: U.S.A.

Signature: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date: . . . . . . . . . . . . . . . . . .
Full name of 3rd joint inventor: Donald H. Keagle
Residence: 2018 Hensel Avenue, Huntsville, Alabama
Citizenship: U.S.A.
[Similarly list additional inventors on separate page]

Post Office Address(es) of inventor(s):
[if different from residence]

Note: In order to qualify for reduced fees available to Small Entities, each inventor and any other individual or entity having rights to the invention must also sign an appropriate separate "Verified Statement (Declaration) Claiming [or Supporting a Claim by Another for] Small Entity Status" form [e.g. for Independent Inventor, Small Business Concern, Nonprofit Organization, individual Non-Inventor].

GTech v. Scientific Games
04-128-JJF

GTECH 000647

DECLARATION FOR PATENT APPLICATION (continued)

CURTIS, MORRIS & SAFFORD, P.C. File No. 332-2130
.............................

INVENTOR(S) [Additional]

Signature: ....................................................Date ....................
    Full name of 4th joint inventor: Alfred L. Fulton
    Residence: 9423 O Jay Drive, Huntsville, Alabama 35803
    Citizenship: U.S.A.

Signature: ....................................................Date: ....................
    Full name of 5th joint inventor:
    Residence:
    Citizenship:

Signature: ....................................................Date: ....................
    Full name of 6th joint inventor:
    Residence:
    Citizenship:

Signature: ....................................................Date: ....................
    Full name of 7th joint inventor:
    Residence:
    Citizenship:

Post Office Address(es) of inventor(s):
    [if different from residence]

Prior Foreign Application(s) [additional]                          Priority Claimed:
Number:              Country:          Filed (Day/Month/Year):         Yes    No

Prior U.S. Application(s) [additional]
Application Serial No.:        Filed (Day/Month/Year):      Status (patented, pending, abandoned)

Page 2 (of 2)

GTech v. Scientific Games
04-128-JJF

GTECH 000648

DECLA___ION FOR PATENT APPLICATION (___ OR SOLE)
(Under 37 CFR § 1.63; with Power of Attorney)

CURTIS, MORRIS & SAFFORD, P.C. File No. 332-2130

As below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention ENTITLED:

SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS

the specification of which

☐ is attached hereto.

☒ was filed on December 3, 1987 as Application Serial No. 07/128,070

with amendment(s) through ............................................ (if applicable, give dates).

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56 (a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s) [list additional applications on separate page]:

| Number: | Country: | Filed (Day/Month/Year): | Priority Claimed: Yes  No |
|---|---|---|---|

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

Prior U.S. Application(s) [list additional applications on separate page]:

| Application Serial No.: | Filed (Day/Month/Year): | Status (patented, pending, abandoned): |
|---|---|---|

I hereby appoint Gregor N. Neff and Abigail F. Cousins, Registration No. 29,292, Registration No. 20,596 and CURTIS, MORRIS & SAFFORD, P.C., Registration No. 27261, or their duly appointed associate, my attorneys, with full power of substitution and revocation, to prosecute this application, to make alterations and amendments therein, to file continuation and divisional applications thereof, to receive the Patent, and to transact all business in the Patent and Trademark Office and in the Courts in connection therewith, and specify that all communications about the application are to be directed to the following correspondence address:

Gregor N. Neff ......................, Esq.
c/o CURTIS, MORRIS & SAFFORD, P.C.
530 Fifth Avenue
New York, New York 10036

Direct all telephone calls to: (212) 840-3333
to the attention
of ... Gregor N. Neff

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

INVENTOR(S):

Signature: ..............................................  Date: ...............................

Full name of sole or first inventor: Robert L. Burr
Residence: 7515 Charmant Drive, Suite 1407, San Diego, California
Citizenship: U.S.A.

Signature: Laird A. Campbell  Date: Feb. 10, 1988

Full name of 2nd joint inventor (if any): Laird A. Campbell
Residence: Rt. 2, Box 223, Laceys Springs, Alabama
Citizenship: U.S.A.

Signature: Donald H Keagle  Date: Feb. 19, 1988

Full name of 3rd joint inventor: Donald H. Keagle
Residence: 2018 Hensel Avenue, Huntsville, Alabama
Citizenship: U.S.A.

[Similarly list additional inventors on separate page]

Post Office Address(es) of inventor(s):
[if different from residence]

Note: In order to qualify for reduced fees available to Small Entities, each inventor and any other individual or entity having rights to the invention must also sign an appropriate separate "Verified Statement (Declaration) Claiming [or Supporting a Claim by Another for] Small Entity Status" form [e.g. for Independent Inventor, Small Business Concern, Nonprofit Organization, individual Non-Inventor]

DECLARATION FOR PATENT APPLICATION (continued)

CURTIS, MORRIS & SAFFORD, P.C. File No. 332-2130 . . . . . . . . . . . . . . . . . . . . . . . .

INVENTOR(S) [Additional]

Signature: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date 10 Feb 88 . . . . . . .
    Full name of 4th joint inventor: Alfred L. Fulton
    Residence:  9423 O'Jay Drive, Huntsville, Alabama  35803
    Citizenship:  U.S.A.

Signature: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date: . . . . . . . . . . . . . . . . . . .
    Full name of 5th joint inventor:
    Residence:
    Citizenship:

Signature: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date: . . . . . . . . . . . . . . . . . . .
    Full name of 6th joint inventor:
    Residence:
    Citizenship:

Signature: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Date: . . . . . . . . . . . . . . . . . . .
    Full name of 7th joint inventor:
    Residence:
    Citizenship:

Post Office Address(es) of inventor(s):
    [if different from residence]

Prior Foreign Application(s) [additional]                                    Priority Claimed:
Number:                    Country:              Filed (Day/Month/Year):        Yes    No

Prior U.S. Application(s) [additional]
Application Serial No.:        Filed (Day/Month/Year):        Status (patented, pending, abandoned)

Page 2 (of 2)

GTech v. Scientific Games                                    GTECH 000650
   04-128-JJF

332-2130
PATENT



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants: ROBERT L. BURR et al.

Serial No.: 07/128,070

Filed     : December 3, 1987

For       : SYSTEM AND METHOD FOR
            DISTRIBUTING LOTTERY
            TICKETS

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on __March 11, 1988__

Abigail F. Cousins, Reg. No. 29,292
Name of Applicant, Assignee or Registered Representative

Abigail F. Cousins
Signature

March 11, 1988
Date of Signature

VERIFIED STATEMENT OF FACTS BY ORIGINALLY NAMED
JOINT INVENTORS

Hon. Commissioner of Patents & Trademarks
Washington, D.C. 20231

Sir:

    We, Robert L. Burr, Laird A. Campbell and Donald H. Keagle state that:

    1. Robert L. Burr, Laird A. Campbell and Donald H. Keagle are the inventors named on the title page of the above-identified Application Serial No. 07/128,070, filed December 3, 1987 without a Declaration for SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS.

    2. The invention defined in the claims of said application was invented jointly by Robert L. Burr, Laird A. Campbell, Donald H. Keagle and Alfred L. Fulton.

    3. The invention defined in the claims of said application was developed for and now is included in a product commercially sold by SCI Technology, Inc., an assignee of said application. This product incorporates various aspects of the present invention for which said patent application was prepared and filed.

-1-

GTech v. Scientific Games
04-128-JJF

GTECH 000651

332-2130
PATENT

4.   The invention described and claimed in said Application Serial No. 07/128,070 was originally conceived in part by Robert L. Burr and was further conceived and developed at SCI Technology, Inc. by Laird A. Campbell, Donald H. Keagle and Alfred L. Fulton.

5.   At the time of the preparation of said Application Serial No. 07/128,070, during the latter half of November and the beginning of December, 1987 and at the time of its filing on December 3, 1987, Robert L. Burr firmly believed that the invention defined by the claims of this application had been invented jointly by him with certain employees of SCI, Technology, Inc., and relied on the identification of joint inventorship supplied to him by SCI Technology, Inc.  Further, at the time of the preparation and filing of said application, Laird A. Campbell and Donald H. Keagle each firmly believed that the invention defined by the claims of said application were developed jointly by them with Robert L. Burr, and did not appreciate that Alfred L. Fulton was entitled to be named as a joint inventor.  In view of this belief, the application was filed with a title page naming Robert L. Burr, Laird A. Campbell and Donald (H.) Keagle as the joint inventors of the invention described and claimed therein.

6.   Subsequent to the filing of the application on December 3, 1987 without a Declaration, in late December, 1987 and January, 1988, we discovered that, in fact, the invention defined by the claims of said application was developed jointly by Robert L. Burr, Laird A. Campbell, Donald H. Keagle and Alfred L. Fulton, also an employee of SCI Technology, Inc.  The conclusion that an inadvertent error had occurred was reached by January 20, 1988.

-2-

GTech v. Scientific Games
04-128-JJF

332-2130
PATENT

7.   Robert L. Burr, Laird A. Campbell and Donald H. Keagle permitted the filing of said application with a title page naming only themselves as joint inventors without any deceptive intent.

8.   It is our firm belief, in view of the fact that the invention described and claimed in said application was developed in conjunction with an overall product embodying the same and that various features and aspects of the present invention are combined in said product and the the product was developed by and as a result of contributions from several individuals, that the preparation and filing of said application without naming Alfred L. Fulton as a joint inventor was because of inadvertence, confusion and mistake.

9.   Upon the discovery of the facts supporting the naming of Alfred L. Fulton as a fourth joint inventor, these facts were promptly and with diligence communicated to Abigail F. Cousins and Curtis, Morris & Safford, P.C., requesting that they take the necessary action to correct such error and to amend said application to include Alfred L. Fulton with Robert L. Burr, Laird A. Campbell and Donald H. Keagle as joint inventors of the invention described and claimed in said application.

The undersigned further declare that all statements made herein of their own knowledge are true and that all statements on information or belief are believed to be true; and further that these statements are made with the

-3-

GTech v. Scientific Games
04-128-JJF

GTECH 000653

332-2130
PATENT

knowledge that willful and false statements and the like so
made are punishable by fine or imprisonment, or both, under
Section 1001 of Title 18 of the United States Code and that
such willful false statements may jeapordize the validity of
the application or any patent issuing thereon.

ROBERT L. BURR
Date: _____

_Laird A. Campbell_
LAIRD A. CAMPBELL
Date: _Feb 10 1988_

_Donald H Keagle_
DONALD H. KEAGLE
Date: _2-10-1988_

AC:AC7:15

-4-

GTech v. Scientific Games
04-128-JJF

GTECH 000654

332-2130
PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:  ROBERT L. BURR et al.

Serial No.:  07/128,070

Filed     :  December 3, 1987

For       :  SYSTEM AND METHOD FOR
             DISTRIBUTING LOTTERY
             TICKETS

I hereby certify that this correspondence is being
deposited with the United States Postal Service
as first class mail in an envelope addressed to:
Commissioner of Patents and Trademarks,
Washington, D. C. 20231, on   March 11, 1988

Abigail F. Cousins, Reg. No. 29,292
Name of Applicant, Assignee or Registered
Representative

Abigail F Cousins
Signature

March 11, 1988
Date of Signature

VERIFIED STATEMENT OF FACTS BY OMITTED JOINT INVENTOR

Hon. Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

I, Alfred L. Fulton, state that:

1.   Robert L. Burr, Laird A. Campbell and Donald
H. Keagle are the inventors named on the title page of
Application Serial No. 07/128,070, filed on December 3,
1987, without a Declaration for SYSTEM AND METHOD FOR
DISTRIBUTING LOTTERY TICKETS.

2.   The invention defined in the claims of said
application was invented jointly by Robert L. Burr, Laird A.
Campbell, Donald H. Keagle and myself.

3.   The invention defined in the claims of said
application was developed for and is now included in a
product commercially sold by SCI Technology, Inc., an
assignee of said application and by whom I am employed.
This product incorporates various aspects of the present
invention for which said application was prepared and filed.

4.   The invention described and claimed in said
application was originally conceived in part by Robert L.
Burr and was further conceived and developed at SCI
Technology, Inc. by Laird A. Campbell, Donald H. Keagle and

-1-

GTech v. Scientific Games
04-128-JJF

GTECH 000655

332-2130
PATENT

myself. However, at the time of the preparation and filing
of said application in the latter half of November and early
December, 1987, I was not aware of my entitlement to be
named as a joint inventor. As soon as I learned of my
entitlement and that said application had been filed without
naming me as joint inventor, I approached the other named
inventors at SCI Technology, Inc. and further discussed with
them and representatives of SCI Technology, Inc. the facts
concerning the development of the invention described and
claimed in said application. By January 20, 1988, it was
determined that an error had been inadvertently made in
omitting my name as a joint inventor.

5.   It is my firm belief, in view of the fact
that the invention described and claimed in said application
was developed in conjunction with an overall product
embodying the same and that various features and aspects of
the present invention are combined in said product and that
the product was developed by and as a result of
contributions from several individuals, that therefore it
was because of inadvertence, confusion and mistake that I
was erroneously omitted from the title page of said
application and was erroneously not named as joint inventor
without any deceptive intent on my part or on the part of
any of the other three joint inventors.

6.   Upon discovering the foregoing, these facts
were promptly and with diligence communicated to Abigail F.
Cousins and Curtis, Morris & Safford, P.C. requesting that
they take the necessary action to correct such error and to
amend said application to name Robert L. Burr, Laird A.
Campbell, Donald H. Keagle and Alfred L. Fulton as joint

-2-

GTech v. Scientific Games
04-128-JJF

GTECH 000656

332-2130
PATENT

inventors of the invention described in the claims in said application.

     The undersigned declares further that all statements made herein of his own knowledge are true and that all statements made on information or belief are believed to be true; and further that these statements are made with the knowledge that willful and false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon.

ALFRED L. FULTON

Date: 10 Feb 88

AFC:AC7:16

-3-

GTech v. Scientific Games
04-128-JJF

GTECH 000657

332-2130
PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants:   ROBERT L. BURR et al.

Serial No.:   07/128,070

Filed      :   December 3, 1987

For        :   SYSTEM AND METHOD FOR
               DISTRIBUTING LOTTERY
               TICKETS

I hereby certify that this correspondence is being
deposited with the United States Postal Service
as first class mail in an envelope addressed to:
Commissioner of Patents and Trademarks,
Washington, D.C. 20231, on __March 11, 1988__

Abigail F. Cousins, Reg. No. 29,292
Name of Applicant, Assignee or Registered
Representative

_Abigail F. Cousins_
Signature

__March 11, 1988__
Date of Signature

### CONSENT OF ASSIGNEE

The Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

The undersigned, on behalf of an Assignee of the
above-identified application consisting of Lottery Concepts
International and Robert L. Burr as joint owners, is
authorized to and hereby does consent to the amendment of
this application to add Alfred L. Fulton as a joint inventor
on behalf of the above-identified Assignee.

LOTTERY CONCEPTS
INTERNATIONAL AND
ROBERT L. BURR

By: _[signature]_
    Robert L. Burr

Date: _2/18/88_

AC:AC7:15

GTech v. Scientific Games
04-128-JJF

GTECH 000658

332-2130
PATENT



## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants: ROBERT L. BURR et al.

Serial No.: 07/128,070

Filed : December 3, 1987

For : SYSTEM AND METHOD FOR
DISTRIBUTING LOTTERY
TICKETS

I hereby certify that this correspondence is being
deposited with the United States Postal Service
as first class mail in an envelope addressed to:
Commissioner of Patents and Trademarks,
Washington, D.C. 20231, on MARCH 11, 1988

Abigail F. Cousins, Reg. No. 29,292
Name of Applicant, Assignee or Registered
Representative

Abigail F. Cousins
Signature

March 11, 1988
Date of Signature

### CONSENT OF ASSIGNEE

Hon. Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

       The undersigned, an officer of SCI Technology,

Inc., an Assignee of the above-identified application, is

authorized to and hereby does consent to the amendment of

this application to add Alfred L. Fulton as a joint inventor

on behalf of SCI, Technology, Inc.


                              SCI Technology, Inc.

                              By: _____

                              Date: _____

AC:AC7:15



UNITED STATES DEPARTMENT OF COMMERCE
**Patent and Trademark Office**
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

#4

**COPY MAILED**

MAY 31 1988

OFFICE OF ASSISTANT
COMMISSIONER FOR PATENTS

```
In re Application of         :
Robert L. Burr, et al        :
Serial No. 07/128,070        :  DECISION ON PETITION
Filed: December 3, 1987      :  UNDER 37 CFR 1.48(a)
For: SYSTEM AND METHOD FOR   :
     DISTRIBUTING LOTTERY     :
     TICKETS                  :
```

This is a decision on the petition under 37 CFR 1.48(a) filed
March 16, 1988, requesting that the name of the inventors in the
application be corrected.  The petition is being decided by the
undersigned rather than in the examining group so that
application processing, including the issuance of the filing
receipt, may proceed with the actual inventors being named in the
application.

This application was filed on December 3, 1987, pursuant to 37
CFR 1.53(b) without an executed oath or declaration.

Application Branch mailed a Notice To File Missing Parts Of
Application Under 37 CFR 1.53(d) on January 14, 1988, requiring
an oath or declaration in compliance with 37 CFR 1.63 and a
surcharge.  In response thereto, applicants timely filed (with a
petition and fee for a one month extension of time), inter alia,
the petition and fee, the surcharge, declarations under 37 CFR
1.63, a verified statement of facts by the original named
inventors and written consents of the assignees.

The petition and verified statement of facts show that an error
occurred in failing to name Alfred L. Fulton as a co-inventor,
that Burr had jointly invented the claimed subject matter with
employees of SCI, Technology, Inc (SCI); that Burr relied on the
inventorship identification supplied to him by SCI (presumably in
informing patent counsel), that in view of the various features
developed by different individuals not of the same organization
Fulton was inadvertently not named due to confusion and mistake.
The error was discovered by January 20, 1988.  The petition and
verified statement of facts show that the error occurred without
deceptive intent.

The petition to correct inventorship is granted.

The application is being returned to the Special Handling Unit of
Application Branch for further processing with the names of the

GTech v. Scientific Games
04-128-JJF                                          GTECH 000660

Serial No. 07/128,070                    -2-

inventors as shown on the executed declarations under 37 CFR 1.63
filed on March 16, 1988.

*H. Bernstein*

Hiram H. Bernstein
Special Program Examiner
Office of the A/C for Patents

*MT*

Conferee: J. Michael Thesz

Gregor N. Neff, Esq.
C/O Curtis, Morris & Safford, P.C.
530 Fifth Avenue
New York, NY  10036

GTech v. Scientific Games
04-128-JJF

GTECH 000661

PATENT
332-2130

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant      :  Robert L. Burr et al.

Serial No.     :  07/128,070

Filed          :  December 3, 1987        Group 230

For            :  SYSTEM AND METHOD FOR
                  DISTRIBUTING LOTTERY TICKETS

530 Fifth Avenue
New York, New York  10036
November 14, 1988

POWER TO INSPECT
AND COPY APPLICATION

Hon. Commissioner of Patents and Trademarks
Washington, D. C. 20231

Sir:

       We hereby grant Ms. Patsy M. Paxton and

Ms. Katherine L. Cantwell, Cantwell and Paxton, Inc.,

2001 Jefferson Davis  Highway, Suite 1003, Arlington, Virginia

22202-3603, the power to inspect and make copies of the above-

identified patent application.

                    Respectfully submitted,

                    CURTIS, MORRIS & SAFFORD, P.C.

            By    _Gregor N. Neff_
                    Gregor N. Neff
                    Reg. No. 20596
                    Attorneys for Applicants
                    530 Fifth avenue
                    New York, New York 10036
                    (212) 840-3333

GTech v. Scientific Games
04-128-JJF                                    GTECH 000662



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/128,070 | 12/03/87 | BURR                                  R | 332-2130 |

```
┌                                    ┐
  CURTIS, MORRIS & SAFFORD
  530 FIFTH AVENUE
  NEW YORK, NY 10036
└                                    ┘
```

| EXAMINER |
|---|
| RUGGIERO, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 236 | 6 |

DATE MAILED:       02/03/89

This is a communication from the examiner in charge of your application.

**COMMISSIONER OF PATENTS AND TRADEMARKS**

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.     35 U.S.C. 133

**Part I**    **THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**
1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☑ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449    4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☑ Information on How to Effect Drawing Changes, PTO-1474    6. ☐ _____

**Part II**    **SUMMARY OF ACTION**

1. ☑ Claims _1-49_ _____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _1-49_ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☑ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable;
    ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____
has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However,
the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are
corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO
EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received

    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 7-82)       **EXAMINER'S ACTION**

Serial No. 128,070                                    -2-

1.      This application has been filed with informal drawings which are acceptable for examination purposes only. Formal drawings will be required when the application is allowed.

2.      The disclosure is objected to because of the following informalities:   At claim 11, line 2, "on" should be changed to "an" for proper syntax.

    Appropriate correction of the disclosure is required.

3.      Claims 15-19 and 28-47 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

    In claim 15, line 4, it appears that the word "rotations" should be changed to locations. Claims 16-19 incorporate the deficiencies of claim 15 by dependence. In claim 30, the wording "manually accessible outlet ..." is repeated at line 14. Claims 31-45 incorporate the deficiencies of claim  30 by dependence. In claim 28, line 2, the intended meaning of the wording "selectively placeable" is unclear in the claimed context. Claim 29 incorporates the deficiency of claim 28 by dependence. In claim 46, there is no antecedent reference for "said unit". Claim 47 incorporates the deficiency of claim 46 by dependence. In addition, the wording "said bursting" in claim 44 lacks antecedent basis. Also in claim 39, there is no

GTech v. Scientific Games
04-128-JJF

Serial No. 128,070                                    -3-

antecedent basis for "said determining means".  It would

appear that claim 39 should ultimately be dependent on

claim 34.

4.        The following is a quotation of the

appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this

Office action:

     A person shall be entitled to a patent unless-

5.        (a) the invention was known or used by others
          in this country, or patented or described in a
          printed publication in this or a foreign
          country, before the invention thereof by the
          applicant for patent.

6.        Claims 1-20 and 46-48 are rejected under 35

U.S.C. 102a as being anticipated by Koza et al.

          Koza et al discloses an amusement gaming

system which includes a lottery ticket dispenser, col.

3, line 62.  Included are a central processor 24, a

plurality of remote units 20 which dispense tickets,

each of the remote units including a terminal controller

70 which among other things, stores data in memory, col.

13, line 8.  Further, a communication means 22 couples

the remotes 20 with the central processor 24.  The

communication means included a modem, col. 6, line 45,

142, col. 9, line 30 wherein messages are transmitted at

selected at selected intervals, col. 19, line 5.  These

messages include account request data. col. 6  line 64.

The remote unit farther includes a message display 34

and a printer 60 which prints the lottery tickets, col.

4, line 35.  With regard to claim 20, the remote

GTech v. Scientific Games
04-128-JJF                                        GTECH 000665

Serial No. 128,070                               -4-

terminal 20 of Koza et al includes the requisite
box-like module, control panel, ticket storage and
ticket dispensing means.  It is noted that the playing
of an amusement game results in the dispensing of a
lottery ticket under control of game logic 51.  With
regard to claims 46-48, it is noted that Koza et al
provides for the detection and storage of information
relating to the opening and closing of remote terminal
doors.

7.        The following is a quotation of 35 U.S.C. 103
which forms the basis for all obviousness rejections set
forth in this Office action:

> A patent may not be obtained though the invention
> is not identically disclosed or described as set
> forth in section 102 of this title, if the
> differences between the subject matter sought to be
> patented and the prior art are such that the
> subject matter as a whole would have been obvious
> at the time the invention was made to a person
> having ordinary skill in the art to which said
> subject matter pertains.  Patentability shall not
> be negatived by the manner in which the invention
> was made.
>
> Subject matter developed by another person, which
> qualifies as prior art only under subsection (f)
> and (g) of section 102 of this title, shall not
> preclude patentability under this section where the
> subject matter and the claimed invention were, at
> the time the invention was made, owned by the same
> person or subject to an obligation of assignment to
> the same person.

8.        Claims 20-25, 30 and 41 are rejected under 35
U.S.C. 103 as being unpatentable over Hartmann.

          Hartmann discloses a lottery ticket dispenser
including module, ticket storage means, control panel 20
and ticket dispenser means (microprocesor 70) responsive

**GTech v. Scientific Games**
**04-128-JJF**                                    **GTECH 000666**

Serial No. 128,070                                    -5-

to the control panel. Further, a ticket number
specification signal is provided as discussed at col. 2,
line 62 and col. 4, line 51. Also, the tickets in
Hartman are stored in a fan-fold stream separable along
perforated lines of weakness 22 to be separated by
separating means 30. As such, Hartman discloses the
invention substantially as claimed with the exception
that tickets are dispensed at the front surface of the
dispensing module where the control panel is located.
However, the location of the dispensing outlet is
clearly a matter of design choice. To locate the
dispensing outlet at the back surface would be an obvious
modification and well within the scope of the patent to
Hartmann.

9.        Claims 26, 31-33, 36-38 are rejected under 35
U.S.C. 103 as being unpatentable over Hartmann in view
of Roetter et al. The merits of Hartmann have been
discussed in par. 8, above. In addition, Hartmann
provides for the determination of ticket length and
includes[a] leading edge detector. It is recognized that
Hartmann uses a rotary cutter to separate the tickets
rather than a bursting operation as claimed. However,
bursting apparatus for separating webs of material along
lines of weakness is well known as exemplified by
Roetter et al. The advantages of the bursting operation
are discussed at cols. 1 and 2 of Roetter et al.
Further, the application of a bursting apparatus to a
ticket dispenser is at least implied at col. 1, lines
35. It would be obvious to apply a bursting technique

Serial No. 128,070                                        -6-

to the system of Hartmann to separate the tickets
therein in view of the advantages suggested by Roetter
et al.

10.      Claim 40 is rejected under 35 U.S.C. 103 as
being unpatentable over Hartmann in view of Koza et al.

        The merits of Hartmann have been discussed in
par. 8, above.  As such, Hartmann discloses the claimed
invention with the exception of the feature of detecting
opening of the ticket storage door.  However, as discussed
in par. 6, above, Koza et al clearly discloses such
detection and advantage of same at col. 24, lines 11-15.
It would be obvious to provide such door access
detection feature in the system of Hartmann in view of
the teachings of Koza et al.

11.      Claims 27-29, 42-45 and 49 are rejected under
35 U.S.C. 103 as being unpatentable over Troy et al
in view of Hartman. Troy et al
discloses a wagering system in which tickets are
dispensed, Figs. 8 and 9 and in which the player
console, Fig. 1, communicates with central processor 144,
Fig. 2 over modem 146, for example. The console is
provided with a display 128 for displaying messages from
central processor 144.  In addition, Troy et al provides
printing apparatus for printing checks, etc., Fig. 10,
which, among other things, includes printing of vendor
identification, col. 19, lines 38,  As such, Troy et al
discloses the claimed invention with the exception of
the features of ticket number specification and
fan-fold storage with separation along lines of
weakness.  However, these features are disclosed by

GTech v. Scientific Games
04-128-JJF

Serial No. 128,070                                    -7-

Hartmann along with advantage of same as discussed in par. 8, above. It would be obvious to provide such ticket number specification and fan-fold separation features in the system of Troy et al in view of the teachings of Hartmann.

12.    Claims 34 and 35 would be allowable if rewritten to overcome the rejection under 35 U.S.C. 112 and to include all of the limitations of the base claim and any intervening claims.

13.    The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

14.    Any inquiry concerning this communication or earlier communications from the examiner should be directed to J.F. Ruggiero whose telephone number is (703) 557-0470.

    Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 557-2878.

JOSEPH RUGGIERO
PRIMARY EXAMINER
ART UNIT 236

RUGGIERO:mrt
1/24/89

# MISSING PAGE(S) FROM THE

# U.S. PATENT OFFICE

# OFFICIAL FILE WRAPPER

#6- PTO 1474 per

**Patent Imaging Corporation**
*Patent Legal and Scientific Information Service*
**2001 Jefferson Davis Highway
Crystal Plaza One, Suite 600
Arlington, VA 22202-3610
(703) 553-0000**

PTO - 948
(Rev. 8 -82)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

ATTACHMENT TO
PAPER NUMBER        6

S.N. *128070*

GROUP

## NOTICE OF PATENT DRAWINGS OBJECTION

Drawing Corrections and/or new drawings may only be
submitted in the manner set forth in the attached letter,
"Information on How to Effect Drawing Changes" PTO-1474.

A. ☑ The drawings, filed on *12-3-81*, are objected to as informal for reason(s)
checked below:

1. ☐ Lines Pale.

2. ☑ Paper Poor.

3. ☑ Numerals Poor.

4. ☑ Lines Rough and Blurred.

5. ☐ Shade Lines Required.

6. ☐ Figures Must be Numbered.

7. ☐ Heading Space Required.

8. ☐ Figures Must Not be Connected.

9. ☐ Criss-Cross Hatching Objectionable.

10. ☐ Double-Line Hatching Objectionable.

11. ☐ Parts in Section Must be Hatched.

12. ☐ Solid Black Objectionable.

13. ☐ Figure Legends Placed Incorrectly.

14. ☐ Mounted Photographs.

15. ☐ Extraneous Matter Objectionable.
    [37 CFR 1.84 (1)]

16. ☐ Paper Undersized; either 8½" x 14",
    or 21.0 cm. x 29.7 cm. required.

17. ☐ Proper A4 Margins Required:
    ☐ TOP 2.5 cm.      ☐ RIGHT 1.5 cm.
    ☐ LEFT 2.5 cm.     ☐ BOTTOM 1.0 cm.

18. ☑ Other:
    *Descriptive matter*
    *obj.*

B. ☑ The drawings, submitted on *12-3-81*, are so informal they cannot be
corrected. New drawings are required. Submission of the new drawings MUST be
made in accordance with the attached letter.

GTech v. Scientific Games
04-128-JJF

GTECH 000671

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 128,070 | GROUP ART UNIT 236 | ATTACHMENT TO PAPER NUMBER 6 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) R. L. BURR et al | | |

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | 4 6 5 2 9 9 8 | 3-1987 | KOZA et al | 364 | 900 X | |
| B | 4 7 1 6 7 9 9 | 1-1988 | HARTMANN | 364 | 479 X | 8-12-86 |
| C | 4 2 6 1 4 9 7 | 4-1981 | ROETTER et al | 225 | 100 | |
| D | 4 4 9 4 1 9 7 | 1-1985 | TROY et al | 364 | 960 X | |
| E | 3 9 3 1 7 6 1 | 1-1976 | CARRUS | 364 | 900 | |
| F | 4 2 7 5 4 5 6 | 6-1981 | TANAKA et al | 364 | 900 | |
| G | 4 3 2 2 6 1 2 | 3-1982 | LANGE | 364 | 412 X | |
| H | 4 3 7 3 7 2 6 | 2-1983 | CHURCHILL et al | 273 | 139 X | |
| I | 4 7 0 4 5 1 8 | 11-1987 | BRUNN et al | 364 | 412 X | |
| J | | | | | | |
| K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | | | | | |
| P | | | | | | | | |
| Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER RUGGIERO | DATE 1-18-89 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

GTech v. Scientific Games
04-128-JJF

GTECH 000672



62.00        115        230

3390-2010

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant   :   Robert L. Burr, et al.

Serial No.:   128,070

Filed       :   December 3, 1987

For         :   SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS

Examiner    :   J. Ruggiero

Art Unit    :   230

530 Fifth Avenue
New York, New York 10036
May 17, 1989

I hereby certify that this correspondence is being
deposited with the United States Postal Service as
first class mail in an envelope addressed to:
Commissioner of Patents and Trademarks, Washington,
D.C. 20231, on May 17, 1989.
_____
Gregor N. Neff
Name of Applicant or Registered Representative

_____
Signature
May 17, 1989
Date

## PETITION FOR EXTENSION OF TIME

Hon. Commissioner of Patents
    and Trademarks
Washington, DC  20231

Sir:

Under the provisions of 37 CFR 1.136(a), applicants

hereby petition for an extension of time to file the response due

May 3, 1989 in the above-identified application.

070  05/23/89  128070                1 115       62.00 CK

GTech v. Scientific Games
04-128-JJF

GTECH 000673

The requested extension of time is one month, i.e. to June 3, 1989, and applicants enclose herewith a check in the amount of $62.00 in payment of the statutory fee therefor. Please charge any additional fees or credit any excess to our Deposit Account No. 03-3925.

This Petition is filed together with a Response to the Office Action of February 3, 1989.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.
Attorneys for Applicant

By: _____
Gregor N. Neff
Reg. No. 20,996
(212) 840-3333

GTech v. Scientific Games
04-128-JJF

GTECH 000674

MAIL ROOM
MAY 19 1989
PAT. & TRADEMARK OFF.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:  Robert L. Burr, et al.

| | | | |
|---|---|---|---|
| Serial No. | 128,070 | Examiner: | J. Ruggiero |
| Filed | December 3, 1987 | Group No. | 230 |
| For: | SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS. | Date: | May 17, 1989 |

**THE COMMISSIONER OF PATENTS AND TRADEMARKS**
*Washington, D.C. 20231*

Sir: Transmitted herewith is an amendment in the above-identified application.

☐ No additional fee is required.

The fee has been calculated as shown below.     ☐ This is an application of a small entity under 37 CFR 1.9(f), and the amounts shown in parentheses apply.

### Claims as Amended

| (1) | (2) Claims remaining after amendment | (3) | (4) Highest number previously paid for | (5) Present extra | (6) Rate | (7) Additional fee |
|---|---|---|---|---|---|---|
| Total claims | * 48 | Minus | ** 49 | 0 | X | = 0 |
| Independent claims | * 9 | Minus | *** 7 | 2 | X $36 | = $72 |
| | | | Total additional fee for this amendment | | | $72.00 |

\* If the entry in Column 2 is less than the entry in Column 4, write "0" in Column 5.

\*\* If the Highest number of total claims previously paid for is less than 20, write "20" in this space.

\*\*\* If the highest number of independent claims previously paid for is less than 3, write "3" in this space.

☐ This application contains a multiple dependent claim. The required fee of $110($55) has been previously paid ☐, or is paid herewith ☐.

☒ This response is being filed within the ☒ first month, ☐ second month, ☐ third month, ☐ fourth month following the expiration of the term originally set therefor, and the fee of ☐ $56(28) , ☐ $170(85) , ☐ $390(195) , ☐ $610(305) for the requisite extension is due and is ☐paid herewith.

☒ A check in the amount of $.72.00.............. is attached.

☐ Charge $ ..................... to Deposit Account No. 03-3925.

☒ Please charge any additional fees incurred by reason of this response or credit any overpayment to Deposit Account No. 03-3925. A duplicate copy of this sheet is enclosed.

CURTIS, MORRIS & SAFFORD, P.C.
*Attorneys for Applicant(s)*

By .................................................
Gregor N. Neff
Registration No. 20,596

Tel. 212-840-3333

GTech v. Scientific Games
04-128-JJF

GTECH 000675

Case

PATENT
3390-2010

IN THE SPECIFICATION

On page 1, line 1, delete "SYSTEM AND METHOD FOR
DISTRIBUTING LOTTERY TICKETS".

Page 3

line 1, change "important" to -- desirable --;

line 2, after "necessary" insert a comma;

line 3, after "reasons", insert a comma;

line 7, change "are" to -- is --;

line 9, change "in", first occurrence, to -- of --
and change "provide the tickets in a" to -- dispense tickets --;

line 10, insert -- stored in -- before "fan-fold";
change "stream" to -- form --;

line 11, change "double feeding present" to --
unintentionally dispensing too many tickets --;

line 14, after "lengths." insert -- Furthermore,
tickets easily can slip in the dispensing mechanism, or for other
reasons can be fed inaccurately. --;

line 14, change "It" to -- Therefore, it --;

line 15, after "a" insert -- ticket --; delete
"within the dispensing unit";

line 16, change "the stream" to -- one another --;

line 18, change "since again for security reasons"
to -- despite the variation in the --;

gn/3390.amd                    2

GTech v. Scientific Games
04-128-JJF

GTECH 000677

PATENT
3390-2010

line 19, delete "generally only complete tickets are redeemable." and insert -- size of tickets and slippage or inaccuracy in the dispensing mechanism. --.

Page 4,

line 2, insert a hyphen between "system" and "wide";

line 28, after "fan-fold" insert -- strip or --.

Page 8, line 22, change "partial elevational mechanical" to -- perspective --.

Page 9,

line 1, change "an elevational mechanical" to -- a perspective --;

line 7, change "fundamental" to -- certain --;

line 9, change "DETAILED DESCRIPTION OF THE PRESENT INVENTION" to -- GENERAL DESCRIPTION --.

Page 10,

line 2, change "is" to -- can be placed --;

line 3, delete "placeable";

line 6, after "or", insert -- alternatively, it -- ;

line 7, after "be", insert -- located --;

line 9, delete "(Fig. 10)";

line 10, after "between" insert -- each of --; change "modem" to -- modems --; after "and" insert -- the --;

line 14, delete "thereat";

gn/3390.amd                3

GTech v. Scientific Games
04-128-JJF

GTECH 000678

PATENT
3390-2010

line 19, after "with" insert -- the --; delete "central computer";

line 20, delete "12"; insert a hyphen between "dialing" and "up";

line 21, delete "respective";

line 22, after "to" insert -- the --;

line 23, start a new paragraph beginning at "Central"; change "can operate" to -- operates --.

Page 11.

line 3, delete "respectively";

line 6, after "control" insert -- station --;

line 14, after "12" insert a comma; after "day," insert -- once --;

line 15, change "week" to -- once each week, --;

line 21, change "without the" to -- with minimum --; after "without" insert -- the --;

line 22, change "through the mails." to -- which occur when such data is sent by mail."; start a new paragraph with "Furthermore,";

line 24, insert hyphens between "up", "to" and "the";

line 26, change "know" to -- determine --;

line 27, change "stack" to -- stock --;

gn/3390.amd                4

GTech v. Scientific Games
04-128-JJF

GTECH 000679

PATENT
3390-2010

line 28, insert a period after "out"; change "which is a valuable commercial" to -- This capability is commercially --;

Delete line 29 and replace it with -- advantageous and helps to stabilize cash flow. Also, the information --;

line 30, insert -- can be used to -- before "efficiently".

Page 12,

line 1, insert a comma after "separately";

line 16, change "application to -- use --.

Page 13,

line 5, change "through" to -- thorough --;

line 8, change "compueter" to -- computer --; insert -- to -- after "programmed".

line 10, insert hyphens between "up", "to" and "the"

Page 14,

line 12, insert -- housing with a -- before "front";

line 14, after "behind" insert -- a --; delete "A";

line 15, start a new paragraph by inserting "An"; delete "corresponding,"

line 17, change "important" to -- advantageous --;

line 24, insert a comma after "28".

gn/3390.amd                    5

GTech v. Scientific Games
04-128-JJF

GTECH 000680

PATENT
3390-2010

Page 15,

line 5, change "32" to -- 28 --;

line 6, change "may be provided at an" to -- is --; delete "angle";

line 7, after "reasons" insert -- ; that is, --;

line 8, insert a period after "32"; change "but the" to -- The --;

line 9, after "inclination" insert -- of panel 32 --;

line 15, change "prevents" to -- minimizes the chances of --;

line 20, change "within" to -- which is located inside of the --;

line 21, change "unit 40 may be a microprocessor based" to -- circuit 40 is a microprocessor-based --;

line 22, insert a period after "14"; change "and is" to -- It will be --;

line 23, start a new paragraph with "Push-buttons";

line 24, insert a comma after "0-10".

Page 16,

line 1, change "to" to -- into --;

line 3, insert a hyphen between "sign" and "on";

line 4, insert a comma after "button", second occurrence;

gn/3390.amd                    6

GTech v. Scientific Games
04-128-JJF

GTECH 000681

PATENT
3390-2010

line 5 delete "entry";

line 7, start a new paragraph at "In particular,"

line 9 delete "38";

line 12, change "display" to -- number --; change "device" to -- display;

line 17 start a new paragraph at "Alternatively,";

line 18, delete "38"; after "then" insert -- the ---;

line 19, delete "38";

line 20, after "five", delete the comma;

line 26, delete "when not handling tickets";

line 27, after "accurate" insert -- when the agent is not handling tickets --; start a new paragraph with "Each".

Page 17,

line 1, after "40" insert (Figure 10) --;

line 2, change "may also" to -- also may --;

line 3, change "therein" to -- in memory --;

line 6, after "to" insert -- the --;

line 7, change "may receive" to -- receives --;

line 8, after "from" insert -- the --;

line 12, after "and" insert -- issued --;

line 13, change "presented at front surface 38 through slot 39" to -- in the front surface 28, through a slot 39. --; start a new paragraph at "As mentioned";

gn/3390.amd                7

GTECH 000682

PATENT
3390-2010

line 16, insert a comma after "customers";

line 18, change "a", second occurrence, to -- the --;

line 19, change "device" to -- display --; after "on" insert -- the --;

line 20, delete "and";

line 29, start a new paragraph with "Alternatively,";

line 30, change "presented" to -- issued --.

Page 18,

line 3, insert quotations around "off";

line 5, start a new paragraph with "In";

line 6, insert quotations around "normal";

line 9, start a new paragraph at "In"; insert quotations around "communication";

line 12, change "unit 14 and" to -- the unit 14 and the --;

line 14, insert a comma after "12" and "actuated";

line 16, insert a comma after "12";

line 19, start a new paragraph with "Advantageously,";

line 26, insert a comma after "thereof";

line 28, delete "advertising data indicative of";

line 29, change "may" to -- will --.

Page 19,

gn/3390.amd                    8

GTech v. Scientific Games
04-128-JJF

GTECH 000683

PATENT
3390-2010

line 2, change "for" to -- (Figure 10) --;

line 3, change "display." to -- to display the message. --;

after line 3, insert the following heading, centered -- TICKET SEPARATOR OR "BURSTER" --

line 6, change "stream headed by a leading ticket" to -- strip or "stream" --;

line 7, after "in" insert -- most --;

line 8, change "provided" to -- stored --;

line 11, change "could accidently could be dispensed" to -- could be dispensed accidently --;

line 13, start a new paragraph with "The"; change "completely removes" to -- essentially eliminates --

line 14, change "in place of a" to -- unintentionally. --;

line 15, change "single ticket first" to -- This is accomplished, in part --; change "a fan-fold" to -- fan-fold form, --

line 16, change "stream and secondly" to -- and --;

line 17, after "separation" insert -- or "burster";

line 19, change "addresses and removes" to -- alleviates --;

line 20, start a new paragraph with "In";

gn/3390.amd                    9

GTech v. Scientific Games
04-128-JJF

GTECH 000684

PATENT
3390-2010

line 24, change "further" to -- often --;

line 25, change "which may be fed into and
positively held" to -- so that it can be driven --; after "feed"
insert -- mechanism --;

line 26, change "feeding" to -- feed --;

line 29, insert a comma after "and";

line 30, insert a comma after "indeed".

Page 20,

line 1, change "The" to -- A -- and start a new
paragraph;

line 8, change "folding" to -- fan-folding --;

line 13, start a new paragraph with "Simply";

line 15, change "stream" to -- tickets --;

line 16, insert a period after "ticket"; change
"and so" to -- Therefore --;

line 17, after "device" insert -- usually --;

line 18, start a new paragraph at "The";

line 26, start a new paragraph at "A".

Page 21,

line 6, after "fan-fold" insert -- strip or --;

line 8, change "stack 51" to -- fan-fold stack
form --;

line 9, after "transportable" insert -- ,
especially --;

gn/3390.amd                    10

GTech v. Scientific Games
04-128-JJF

GTECH 000685

PATENT
3390-2010

line 10, after "example," insert -- as many as --
;

line 13, start a new paragraph with "Stream";
change "Stream of tickets 50" to -- Referring now to Figure 6,
the ticket strip 50 --;

line 15, after "56", insert a comma; delete "(Fig.
6)";

line 17, insert a period after "weakness";

line 18, delete "56."; start a new paragraph with
"Stream"; change "Stream of tickets 50" to -- Returning to Figure
5, ticket strip 50 --

line 20, after "towards" insert -- the --; insert
a comma after "34";

line 23, start a new paragraph with "Leading";
before "Leading" insert -- The --;

line 26, after "70", delete "therealong"; delete
"upper and lower";

line 27, after "62" insert -- (also see Figure 7)-
-; delete "upper and lower";

line 28, delete "upper and lower";

line 29, after "transport" insert -- the --; after
"from" insert -- the --; after "to" insert -- the --.

Page 22,

line 1, insert a period after "70"; change "while
upper and lower exit" to -- Exit --;

gn/3390.amd                    11

GTech v. Scientific Games
04-128-JJF

GTECH 000686

PATENT
3390-2010

line 4, change "A" to -- As shown in Figure 7, a -
-; delete "(Fig. 8)";

line 5 delete "upper and lower";

line 6, change "upper and lower" to -- the --;

line 9, after "between" insert -- the --;

line 10, after "to" insert -- the --; after "70,"
insert -- a --;

line 13, after "Fig. 5," insert -- and in
perspective in Figure 7, --;

line 15 change "important" to -- advantageous --;

line 18, start a new paragraph at "When";

line 19, delete "upper and lower";

line 20, change "are gripping" to -- grip --;
after "of" insert -- the --;

line 21, change "upper and lower" to -- exit --;
delete "are";

line 22, change "gripping" to grip --; after "of"
insert -- the --;

line 29, delete "nevertheless".

Page 23

line 1, change "stream" to -- strip of --;

line 2, after "by" insert -- the --;

line 6, after "burst" insert -- the --;

gn/3390.amd                    12

GTech v. Scientific Games
04-128-JJF

GTECH 000687

PATENT
3390-2010

replace line 9 with -- at least close to the line. --;

Delete lines 10, 11, 12;

line 13, delete "certainly will not be properly dispensed";

line 14, change "effective" to -- used --;

line 16, insert a period after "70"; change "but even" to -- Even --;

line 18, change "weekness" to -- weakness --;

line 19, insert a comma after "70"; change "Furthermore, all systems will" to -- As in any such system --;

line 20, change "have" to -- there is --; after "tolerance" insert -- which tends to prevent perfect alignment --; delete "However,";

line 21, change "in" to -- In --;

line 22, delete "upper and lower";

line 23, delete "upper and lower";

line 24, change "remove" to -- correct --;

line 25, begin a new paragraph at "Specifically,".

Page 24

line 1, after "on" insert -- the --;

line 2, change "line of weakness 56" to -- the tickets --;

line 3, delete "tickets 52 and 54";

gn/3390.amd                    13

GTech v. Scientific Games
04-128-JJF

GTECH 000688

PATENT
3390-2010

line 2, change "line of weakness 56" to -- the tickets --;

line 3, delete "tickets 52 and 54";

line 4, change "from dispensing path 57, as indicated in" to -- downwardly from --;

line 5, delete "a solid line,"; after "at" insert -- the --;

line 6, delete "a", second occurrence;

line 7, change "line." to -- lines in the drawings. --;

line 8, change "slip along" to -- slip longitudinally along the --;

line 9, after V-shaped" insert -- ticket-array --; after "with" insert -- the --; begin a new paragraph at "In Fig.";

line 10, change "tickets 52 and 54 will tend to move" to -- the ticket strip 50 moves --;

replace line 11 with -- arrow B until the line of --;

line 13, after "when" insert -- the --;

line 14, after "of" insert -- the --;

line 15, change "tickets" to -- the strip 50 --;

line 16, delete "52 and 54";

line 17, change "reverse feeding stream of tickets" to -- reverse-feeding the strip --;

gn/3390.amd                    14

GTech v. Scientific Games
      04-128-JJF

GTECH 000689

PATENT
3390-2010

line 20, change "in accordance with" to -- of --
;

Delete lines 21, 22, 23 and 24.

line 25, change "It will be clear that if" to --
If --.

Page 25

line 6, begin a new paragraph at "As illustrated
in";

line 9, change "upper and lower" to -- the --;

line 13, change "upper and lower" to -- the --;
after "64" insert -- and --;

line 14, change "upper and lower" to -- the --;

line 15, begin a new paragraph at "As shown ";
change "may be" to -- is --;

line 17, change stream of tickets" to -- the
ticket strip --;

line 24, change "remote" to -- the dispensing --;

line 27, change "stream" to -- the strip --;

line 29, delete "upper".

Page 26

line 1, delete "and lower"; delete "upper and
lower";

line 2, change "roller" to -- rollers --;

line 5, delete "from fan";

line 6, delete "fold to fan fold";

gn/3390.amd                    15

GTech v. Scientific Games
04-128-JJF

GTECH 000690

PATENT
3390-2010

line 10, after "by" insert -- the --;

line 14, change "stream of tickets" to -- the ticket strip --;

line 15, insert a period after "rollers"; change "Although wider" to -- Wider --;

line 17, insert before "In" -- Referring now to Figures 5 and 7, --;

line 23, change "same" to -- single --;

line 26, after "in" insert -- Figures 5 --

line 27 change Fig. 7," to -- and 7, the --;
after "as" insert -- the --;

Replace line 28 with -- feed rollers 60 which move the --;

line 29, change "tickets" to -- ticket strip --;

Page 27,

line 2, after "40" insert -- (Figure 10) --;

line 3, change "stream" to -- strip --;

line 5, begin a new paragraph with "Control";

line 7, change "reverse fed" to -- reverse-fed, --;

line 14, change "a practical" to -- actuality, --;

line 16, insert a comma after "inch";

line 17, delete "embodiment";

line 20 insert a hyphen between "previously" and "entered";

gn/3390.amd                    16

GTech v. Scientific Games
04-128-JJF

GTECH 000691

PATENT
3390-2010

Page 28

line 1, change "while" to -- The --; change "roller" to -- rollers --;

line 2, change "in gear" to -- at --;

line 3, after "96" insert a period"; change "and upper exit roller 64 thereby" to -- Upper exit rollers 64 are driven by rollers 66. --; begin a new paragraph at "Code";

line 9, begin a new paragraph at "Burster";

line 21, begin a new paragraph at "Burster";

line 22, change "one" to -- the --; change "54" to -- 52 --;

Page 29

After line 13, insert the heading centered -- IMPRINTING --;

line 21, change "remote" to -- dispensing --;

line 22, begin a new paragraph at "As";

line 28, delete "drivingly".

Page 30

line 3, change "stream" to -- the strip --;

line 4, insert a comma after "therebetween";

After line 11, insert, centered, the heading -- ACCESS MONITORING --;

line 17, change "(Fig. 10)" to -- (see lower right-hand portion of Fig. 10);

line 18, after "to" insert -- the --;

gn/3390.amd                    17

GTech v. Scientific Games
04-128-JJF

GTECH 000692

PATENT
3390-2010

line 17, change "(Fig. 10)" to -- (see lower right-hand portion of Fig. 10);

line 18, after "to" insert -- the --;

line 19, after "of" insert -- the --; delete "118";

line 22, insert a period after "40";

line 23, change "and operation" to -- Operation --;

line 25, change "also used to provide the reports" to -- issued through the slot 39 - the same tape which is used to provide various reports. --;

*u4*

line 26, delete "through slot 39.";

Page 31,

After line 5, insert, centered, -- CONTROL CIRCUIT --;

line 6, after "functional" insert -- block --;

line 12, change "118" to -- 122 --;

line 15, begin a new paragraph at "Lid";

line 16, change "112" to -- 122 --;

line 22, begin a new paragraph at "Code".

Page 32,

line 5, begin a new paragraph at "Control";

line 8, change "brown out sensed by brown out" to -- "brown-out" sensed by brown-out --;

line 11, change "128 to -- 129 --;

gn/3390.amd                    18

PATENT
3390-2010

After line 28, insert, centered, -- <u>FLOW CHARTS</u> --

line 29, before "A" insert -- Figure 12 is --;

**Page 33,**

line 1, delete "is illustrated in Fig. 12"

gn/3390.amd                    19

GTech v. Scientific Games
04-128-JJF

GTECH 000694

PATENT
3390-2010

<u>IN THE CLAIMS:</u>

Cancel claims 1-19, 22, 23, 26, 41 and 47.

Rewrite claims 24, 25, 28, 30, 34, 44, 46 and 48 as follows:

3 24. (Amended) Apparatus according to claim 21, wherein said lottery tickets stored within said ticket storage means are connected, and wherein said dispensing means includes means for <u>individually</u> separating [tickets] <u>each ticket</u> to be dispensed from the remaining tickets <u>regardless of the number of tickets being dispensed in one order.</u>

4 25. (Amended) Apparatus according to claim 20, wherein said lottery tickets stored within said ticket storage means are connected in a fan-fold stream, said lottery tickets being <u>delineated</u> [separated] from each other along lines of weakness, and said separating means [separating] <u>including means for bursting</u> said lottery tickets <u>apart</u> along said lines of weakness.

0 28. (Amended) Apparatus according to claim 27,5 further comprising central data processing means [selectively placeable in] <u>and means for selectively connecting said data processing means</u> [communication] with said module for transmitting at least message data thereto, said message display means being responsive to said message data to display a message indicative thereof.

gn/3390.amd                    20

GTECH 000695

PATENT
3390-2010

30. (Amended)  Apparatus for dispensing <u>lottery</u>
tickets, comprising:

      ticket storage means for storing a plurality of <u>lottery</u>
tickets connected in a fan-fold stream headed by a leading
ticket, said tickets being separable from each other along lines
of weakness;

      transport means for feeding said stream of tickets from
said ticket storage means along a predetermined dispensing path;

      separation means for separating said leading ticket
from said stream of tickets along a leading line of weakness
between said leading ticket and a next following ticket [manually
accessible outlet means for receiving the separated ticket] <u>by</u>
<u>bursting said tickets apart along said leading line</u>; and

      manually accessible outlet means for receiving the
separated ticket.,

      9̶2̶. (Amended)  <u>Apparatus for dispensing tickets,</u>
<u>comprising:  ticket storage means for storing a plurality of</u>
<u>tickets connected in a fan-fold stream headed by a leading</u>
<u>ticket, said tickets being separable from each other along lines</u>
<u>of weakness; transport means for feeding said stream of tickets</u>
<u>from said ticket storage means along a predetermined dispensing</u>
<u>path; separation means for separating said leading ticket from</u>
<u>said stream of tickets along a leading line of weakness between</u>
<u>said leading ticket and a next following ticket; and manually</u>
<u>accessible outlet means for receiving the separated ticket.</u>

gn/3390.amd                    21

GTech v. Scientific Games
04-128-JJF

GTECH 000696

PATENT
3390-2010

wherein said separation means includes a dull-edged bursting
blade movably mounted adjacent a predetermined bursting position
along said path, holding means for holding said stream of tickets
against substantial deflection from said path at said bursting
position and bursting blade drive means for bringing said
bursting blade into bursting contact with said stream of tickets
at said bursting position to burst said leading ticket from said
next following ticket wherein said separation means includes feed
alignment means for controlling said transport means to bring
said leading line of weakness to said bursting position wherein
said alignment means includes sensor means for detecting a
present position of said leading ticket relative to said bursting
position, determining means for determining a transport direction
and a displacement distance necessary to bring said leading line
of weakness to said bursting position, and transport control
means for generating a transport control signal indicative of
said transport direction and displacement distance, said
transport means being responsive to said transport control signal
for transporting said stream of tickets in said transport
direction by said displacement distance wherein said transport
control means is responsive to transportation of said stream of
tickets by a predetermined incremental distance to generate a
transport pulse, said determining means calculates an integral
number substantially equal to said displacement distance divided
by said incremental [distrance] distance, and said transport

gn/3390.amd                    22

GTech v. Scientific Games
04-128-JJF

GTECH 000697

PATENT
3390-2010

control means permits transport by said transport means during generation of said number of said transport pulses to bring said leading line of weakness to said bursting position.

44. (Amended) Apparatus according to claim 42, 46 wherein said imprinter means is located adjacent said path upstream of the position of said [bursting position] separation means.

46. (Amended) A method of prevent unauthorized distribution of [valuable items] lottery tickets, comprising the steps of:

storing a plurality of instant lottery tickets in an enclosed storage area within a storage [said] unit;

accessing the interior of said storage area at selected times to permit deposit and removal of tickets therein;

detecting each access to said interior of said storage area; and

memorizing and counting each said detected access.

48. (Amended) Apparatus for dispensing lottery tickets, comprising:

a box-like module including an interior storage area within which lottery tickets may be stored prior to dispensing;

normally closed door means openable for accessing said interior storage area to permit deposit and removal of tickets therein;

gn/3390.amd                    23

PATENT
3390-2010

detector means for detecting each opening of said door means;

memory means for memorizing <u>and counting</u> each said detected opening.

Claim 20, line 7, change "actuable" to -- actuatable --

Claim 31, line 2, change "edge" to -- edged --;

line 3, change "moveably" to -- movably --;

Claim 33, line 4, insert -- determining -- before "means";

line 7, insert -- for -- after "means".

Add the following new claims 50-72:

50. A ticket dispensing machine for dispensing tickets directly to the purchaser thereof, said dispenser comprising the combination of housing means for storing a strip of tickets to be dispensed, said housing means having an outlet opening accessible to the purchaser of tickets from said machine, means operable for ordering a plurality of tickets in a single batch, means for separating each of said tickets from said strip, dispensing means for dispensing tickets through said outlet opening, and control means for causing each ticket in said batch to be separated and dispensed separately from the other tickets in said batch regardless of the number of tickets in said batch.

51. A machine as in Claim 50 in which said tickets are instant-winner lottery tickets.

gn/3390.amd                    24

GTech v. Scientific Games
04-128-JJF                                          GTECH 000699

PATENT
3390-2010

52.  A method of separating tickets from a strip of
tickets in which said tickets are delineated from one another by
lines of weakness, said method comprising the steps of moving
said strip to bring one of said lines to a position near a
separation station, providing means for holding said strip on at
least one side of said one line, and bending said strip along
said one line to facilitate separation of a ticket from said
strip by tearing along said one line.

53.  A method as in Claim 52 including the step of
causing relative transverse motion at said separation station
between a separator member and said strip so as to cause
transverse deflection of said strip and burst said tickets apart
along said line.

54.  A method as in Claim 53 in which said tickets on
each side of said line are gripped releasably, and said relative
transverse motion causes longitudinal adjustment of the position
of said line and tending to locate it at said separation station.

55.  A method as in Claim 52 in which said tearing is
started adjacent one edge of said strip and traverses the strip.

56.  A method as in Claim 53 in which said separator
member has a relatively dull edge, and said relative transverse
motion comprises moving said member across said strip with its
edge contacting said strip along a line spaced transversely of
the plane of longitudinal travel of said strip.

gn/3390.amd                    25

GTech v. Scientific Games
04-128-JJF

GTECH 000700

PATENT
3390-2010

57.  A method as in Claim 52 in which said tickets are pre-printed lottery tickets made of relatively stiff material.

58.  Apparatus for dispensing tickets from a strip of tickets delineated from one another by lines along which the material of said strip is weakened, said apparatus comprising, in combination, means for moving said strip towards a dispensing position, means for holding said strip adjacent one line along which said strip is to be separated, and bending said strip along said line to facilitate tearing of said strip along said one line.

59.  Apparatus as in Claim 58 including separation means, having a separator member and drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip, with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line.

60.  Apparatus as in Claim 59 in which said means for holding said strip holds said strip releasably so that the deflecting contact of said separator member with said strip tends to pull said strip to adjust its longitudinal position in order to align said one line with said member.

61.  Apparatus as in Claim 59 in which said drive means is adapted to break through said strip in one locale and then traverse the strip along said line.

gn/3390.amd                    26

PATENT
3390-2010

62. Apparatus as in Claim 14 in which said drive means includes means for mounting said separator member to traverse said strip, starting from a position in which said separator member is out of contact with said strip.

63. Apparatus as in Claim 15 in which said separator member includes a blunt-edged wheel rotatably mounted to roll along said one line.

64. Apparatus as in Claim 58 in which said tickets are lottery tickets printed on relatively stiff stock and stored in fan-fold form.

65. A dispenser for dispensing tickets from a strip of tickets printed in a strip with the individual tickets being delineated from one another by lines of weakness, moving means for moving said strip by a pre-determined distance to a position in which one of said lines is near a separation location at which adjacent tickets are separated from one another, said moving means comprising drive means for moving said strip by a pre-determined distance, and position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means.

66. A dispenser as in Claim 28 in which said detecting means includes a rotary code member drivably coupled to said strip, and means for detecting the incremental movements of said wheel and converting them into electrical signals.

gn/3390.amd                    27

GTech v. Scientific Games
04-128-JJF

GTECH 000702

PATENT
3390-2010

*Sub*
*B4*        67.  A dispenser as in Claim 66 including an idler
roller driven by the motion of said strip and drivably coupled to
a shaft, said code wheel being mounted on said shaft.

*34*   68.  A dispenser as in Claim *28* including a front edge
detector to detect the front edge of a ticket to be separated,
memory means for storing information corresponding to the
distance said strip is to be driven after its front edge is
detected and before separation, and means for comparing the
stored information with the output of said position detecting
means, and for actuating separating means when a pre-determined
comparison condition is reached.

*Sub*
*B5*        69.  A dispenser as in Claim 68 including separator
means at said separation location, means for causing said
dispenser to issue a plurality of tickets, the number of which
corresponds to an order for a batch of tickets and means for
operating said separator means to separate each of said tickets
from the others in said batch.

70.  A dispenser as in Claim 65 including separator
means for pushing on said strip with a separator member in the
vicinity of said one line while gripping said strip on opposite
sides of said one line to tear said tickets apart along said one
line.

*34*  *71.*  A dispenser as in Claim *31* including input means
for storing corresponding information in said memory means for
tickets of a different size from the first-named tickets.

gn/3390.amd                    28

PATENT
3390-2010

72.  A dispenser as in Claim 65 in which said tickets are lottery tickets printed on relatively stiff stock, and including housing means for storing said tickets in fan-fold form, said dispensing apparatus being mounted in said housing.

## REMARKS

New formal drawings are being submitted herewith, and the Examiner's approval is requested.

The corrections in the specification and claims requested by the Examiner have been attended to.  In addition, changes have been made in the specification for the purpose of clarification and correction of minor errors.

The features to which claims 30-45 and 50-70 are directed will be discussed first.  These claims are directed to a ticket dispensing means and method, and particularly to the dispensing of lottery tickets which are printed in elongated strips in which individual tickets are delineated from one another by lines of weakness.

The dispensing of such tickets presents special and difficult problems.  Enclosed are samples of nine (9) different instant lottery tickets of the type which the invention presently is being used to dispense successfully.[1]  Although these tickets

---

[1] The enclosed tickets include two each of "Jackpot Bowling" of Rhode Island; "Winner Take All" and "Aces High" from Massachusetts; "Double Play" from Ohio; "Four Chances" from New Hampshire; "Fireworks", "The Instant Game" and "Mountain Madness" from Vermont; and one sample of "Cadeau Surprise" from Quebec.

gn/3390.amd                     29

GTech v. Scientific Games
04-128-JJF

GTECH 000704

PATENT
3390-2010

were issued relatively recently, it is believed that they accurately represent the tickets which were being sold at the filing date of this patent application.

As it can be seen, the tickets are printed on card stock, and have one relatively hard, slick surface. Furthermore, the ticket strips are relatively wide (e.g. 4 inches) so that the perforated line delineating one ticket from the next one is relatively long. Furthermore, the ticket strips usually are supplied by the State Lottery Commissions in fan-fold form.

Such tickets present certain difficulties. Because the cards are so stiff and the perforated lines are so long, the tickets are relatively difficult to tear apart. Also, they are relatively difficult to feed through a dispensing mechanism because of the slick surfaces and stiffness of the card stock.

In view of the foregoing considerations, it is little wonder that the typical prior art dispensing mechanism stored pre-cut tickets rather than dispensing them from perforated strips.

In fact, in most cases in the past, the tickets are pulled out of a container by hand and the number of tickets is counted out and torn off by an attendant. This, of course, is very slow, and is undesirable in that it requires an attendant.

Such mechanisms are not desirable to state authorities because they usually supply such lottery tickets in fan-fold strips.

gn/3390.amd                         30

GTech v. Scientific Games
04-128-JJF

GTECH 000705

PATENT
3390-2010

The Hartmann reference 4,716,799 relied on by the Examiner attempts to dispense individual tickets from a fan-fold strip. However, Hartmann's device is not believed to offer a commercially viable approach to solving the problems met successfully by the present invention.

One drawback of the Hartmann type device is that it cuts the tickets from the strip. This is decidedly inferior to bursting of the tickets from one another. One reason is that errors in locating the cutting line result in the destruction of tickets. This is highly undesirable for any kind of ticket dispenser, but is particularly undesirable in dispensing instant lottery tickets. Placing sliced-up lottery tickets in the hands of consumers can cause a great deal of trouble, in addition to destroying many valuable tickets.

Hartmann probably was influenced to cut the tickets, rather than bursting or tearing them apart, because of the above-mentioned difficulties - the long tear line, the stiff stock, and the handling problems mentioned above. Thus, Hartmann shows that the routine thinking in the prior art would produce a machine which cuts the tickets instead of bursting them. Applicants have departed from the ordinary and routine, and have created an unobvious dispensing device and method in which the tickets are torn or burst apart rather than being cut.

Claim 30 and its dependent claims, and claims 52-64 and 70 are directed to this feature of the invention.

gn/3390.amd                     31

GTech v. Scientific Games
04-128-JJF

GTECH 000706

PATENT
3390-2010

The Examiner's rejection of claim 30 is respectfully traversed. It also is submitted that the other claims directed to this feature are patentable over Hartmann.

Given the problems mentioned above, it would not have been obvious to one skilled in the art to provide a ticket dispensing means and method which facilitates accurate tearing or bursting of the tickets rather than cutting them apart.

Those of ordinary skill in the art would recognize, as did Hartmann, that the ticket stock material is tough and the perforations are long, so that the bursting or tearing of the tickets apart would present substantial problems which could be solved easily by cutting the tickets apart.

In fact, Hartmann himself teaches away from the invention. In Column 1, lines 10-17, Hartmann discloses prior art which tears cards in a perforated strip apart from one another, and then goes on to teach that this is not the way to do it; instead, Hartmann suggests using a rotary cutter.

The Examiner also has cited Roetter 4,261,497, in combination with Hartmann, in rejecting the claims here under discussion.

Roetter does not disclose or suggest the invention, and, like Hartmann, actually teaches away from the invention. Roetter shows a mechanism for bursting printed business forms apart. He does not disclose a ticket bursting machine. The computer paper handled by the Roetter device is relatively thin

gn/3390.amd                    32

GTech v. Scientific Games
04-128-JJF                                              GTECH 000707

PATENT
3390-2010

and can be torn apart relatively easily.  Therefore, Roetter merely suggests stopping one set of rollers while the other set of rollers continues to turn, thus pulling the sheets apart, while being stretched over a roller with spheres on it.

Contrary to the Examiner's assertion that Roetter suggests the use of his invention in bursting tickets apart, Roetter actually teaches away from such a concept.  In Column 1, lines 34-44, he denigrates a prior mechanism used in ticket dispensing.  This hardly is a suggestion that Roetter's invention would be usable in dispensing tickets.

Finally, there is no suggestion in either Hartmann or Roetter that their inventions should be combined.

Applicants have created a particularly desirable and advantageous ticket separation method and apparatus as set forth in new claims 52 and 58.  In this feature of the invention, the weakened line between two adjacent tickets is moved to a position near a separation station, and the strip is held and bent along the line in order to facilitate the accurate tearing of the strip along the line.  Preferably, a separator member is provided. Relative motion between the separator member and the strip is created so as to create transverse deflection and bending of the strip and tear the tickets apart along the line.  This feature of the invention is illustrated schematically in Figures 8A and 8B of the drawings.  The separator member takes the specific form of a wheel 68 (see Figures 5 and 7) which presses downwardly on the

gn/3390.amd                     33

GTECH 000708

PATENT
3390-2010

ticket strip as shown in Figures 8A and 8B to deflect it downwardly to bend the strip along the perforated line and burst the tickets apart.

By bending the strip along the desired tear line, the probability that the stock will tear along the right line is greatly enhanced and made easier. Another excellent advantage of this feature of the invention also is illustrated in Figures 8A and 8B. If the perforation line 56 is not correctly aligned with the bursting wheel at point 70, as the bursting wheel presses downwardly on the ticket stock, it naturally forces the tickets to adjust themselves longitudinally so that the perforation line 56 is correctly aligned with the burster wheel. This automatic mechanical correction means is a clever and unobvious feature of the invention. The invention thus uses one means or mechanism to perform two different functions; bursting the tickets apart, and re-aligning them.

Furthermore, this feature of the invention makes the bursting mechanism much less sensitive to accurate location of the perforation line at the bursting station. All that is necessary is that the perforation line be reasonably close to its desired location, and the automatic correction feature of the invention does the rest. This feature of the invention is emphasized particularly in claims 31, 54 and 60.

. Claims 55, 56, 61 and 62 emphasize the further advantageous feature in that the tearing starts at one point in

gn/3390.amd                34

GTech v. Scientific Games
04-128-JJF

GTECH 000709

PATENT
3390-2010

the strip, and then traverses across the strip. This provides an initial breakthrough, which then progresses across the strip. This makes the separation of the tough card stock considerably easier than if it were attempted to tear through the entire line all at once.

Neither Hartmann nor Roetter, nor any other reference of record shows or suggests these additional advantageous features of the invention.

Another serious drawback of the Hartmann approach to dispensing tickets from a perforated strip is the means for moving the strip accurately to the proper location for cutting. Hartmann depends upon detecting the passage of light through the perforation holes in successive perforation lines in order to initially calibrate his machine to move the tickets the right distance before being cut. This approach has serious inherent flaws.

First, as the Examiner can tell by holding the enclosed lottery ticket samples up to a strong light, the size of the perforation holes varies so significantly that much less light shines through some of the holes than through others. Perhaps more significantly, it does not appear that any light at all shines through the holes in some of the tickets. Hartmann himself admits that light does not shine through the perforation holes reliably, and admits that he must go through a complicated calibration routine in an attempt to overcome this problem.

gn/3390.amd                              35

PATENT
3390-2010

However, even that does not solve the problem when there are no holes at all through which light will shine. Applicant's device does not depend upon light shining through holes in the tickets. Thus, the Hartmann device often is inoperative in dispensing tickets which applicants' device will dispense with ease.

Another problem is created due to the fact that, because of the unreliability of perforations as position indicating means, Hartmann has no reliable means for determining the instantaneous position of the ticket strip. As Hartmann says in Column 5, lines 24-28, "the device according to the present invention does not rely upon the detection of a perforation after calibration to issue a ticket, thus eliminating errors due to blocked perforations." This causes problems in controlling the movement of the strip.

Claim 65 (and the more limited allowed claims 34 and 35) are directed to the advantageous feature of the present invention which overcomes the latter problems of the Hartmann device. Specifically, applicants provide position-detecting means for detecting the distance actually moved by the strip while it is being moved to a bursting or tearing position, and using the signal produced by the detecting means to control the drive means for moving the strip to the desired position. Claim 66 specifies the detecting means as including a rotary code member drivably coupled to the strip, and means for detecting the incremental movements of the code member and converting them into

gn/3390.amd                    36

PATENT
3390-2010

electrical signals.  The code member preferably is the optical code wheel 86 (Figures 5 and 7) which accurately determines the actual position and movement of the ticket strip.

The Examiner might think that the Hartmann device detects the position of the strip by counting electrical pulses delivered to its ticket advance stepper motor 40 (see Figure 1). However, the use of the stepper motor is flawed in that, if there is slippage between the strip and the drive roller driven by the stepper motor, as is so very likely with such stiff and slick materials, then the stepper motor pulse count does not accurately represent the actual position of the ticket strip.  Therefore, Hartmann does not reliably detect the actual movement of the strip by his approach.

As is indicated in claim 67, for example, and as it is explained on page 28 of the specification and shown in Figure 7 of the drawings, the code wheel 86 is secured to a shaft to which rollers 60 are coupled.  The rollers 60 are idlers which move only as the result of movement of the ticket strip.  Thus, if the driven rollers 62 slip when attempting to drive the strip, unlike the Hartmann device, applicants' device does not register movement.

Applicants also have a highly superior and very simple method of determining the distance to move each ticket of a given length.  As it is set forth in claims 68 and 69, for example, a front edge detector is provided to detect the front edge of a

gn/3390.amd                    37

GTECH 000712

PATENT
3390-2010

ticket to be separated.  The information telling the mechanism how far to move the ticket after that point is stored in memory, and the ticket is moved until it has moved by that distance. This is a far simpler system than the Hartmann system, which requires a complex calibration routine, etc.

Claims 71 and 36-39 are directed to the extremely simple feature of the invention in which the differing lengths of different tickets is accommodated by simply imputting different information into the memory means to indicate how far each ticket is to be moved.  This is in direct contrast to Hartmann who requires a complicated calibration routine each time a new size of ticket is to be dispensed from the machine.

In applicants' invention, the information can be simply input by operating the keypad on the front of the machine, or by inputting it from a central computer.  Hartmann does not suggest this simplicity.

Another highly advantageous feature of the invention, emphasized in claims 50, 51 and 69, for example, is one in which each ticket in a batch of tickets ordered by a particular customer is individually separated from the other tickets in the batch so that the tickets are dispensed one at a time. At first, this might appear to be disadvantageous.  However, it has unobvious and unpredictable advantages that make it unobvious.

gn/3390.amd                    38

GTECH 000713

PATENT
3390-2010

This feature produces at least three different advantages.  One is that the front edge detector recited in claims 68 and 69 can be used to great advantage in determining a reference point for determining how far to move each ticket. This greatly simplifes the mechanism and circuitry of the device.

A second advantage is that this feature takes advantage of the automatic position adjustment capabilities of the burster mechanism of the invention.  Thus, a correction operation automatically is engaged in for each ticket which is dispensed. This prevents individual small errors in ticket location from accumulating over a long period of time and become major errors.

A third advantage, which is emphasized by claims 50 and 51, is where the housing which dispenses the tickets has an outlet opening (e.g. opening 34 shown in Figure 4 of the drawings) which is accessible to the purchaser of the tickets. If the machine were to issue a strip of say 10 tickets or so without separating each individual ticket from its neighbors, during the dispensing of the tickets the purchaser could grab the end of the uncut strip of tickets and pull many more tickets than he paid for out of the machine.  Thus, the dispensing of one ticket at a time helps prevent theft or vandalism.

It does not appear that Hartmann dispenses tickets directly to the purchaser.  Therefore, he has nothing to even remotely suggest this feature of the invention.

gn/3390.amd                    39

GTech v. Scientific Games
04-128-JJF

GTECH 000714

PATENT
3390-2010

The rejection of claim 20 as being anticipated by Koza
or obvious over Hartmann is respectfully traversed.  Claim 20 is
directed to the feature of the invention in which a control panel
is mounted on the front surface of the ticket dispenser and a
dispensing outlet is located on the rear surface.  This
arrangement is not shown or suggested either by Koza or Hartmann.
In Koza, any lottery ticket which might be dispensed from the
video game terminal is dispensed from a small closed box 42 in
the front of the video game terminal (see Figure 2 and column 3
lines 56-61).  In the Hartmann device (see Figure 1), the ticket
outlet 18 is on the front of the device, just above the control
panel 20.

The arrangement of claim 20 is advantageous in that, in
the typical retail store such as a candy or cigar store, the
dispensing unit can rest on the counter, with the ticket agent or
seller on one side of the counter, and the customer on the other.
The ticket can be issued directly to the customer so that he can
take it quickly and make room for the next person in line.  This
can be very advantageous when there are long lines of people
waiting to buy tickets.  It eases the ticket agent's job and
makes for faster ticket vending, thus increasing both the ticket
seller's commissions and the state's revenues.

Claims 21, 24, 25 and 27-29 depend from and are
allowable with claim 20.  Claim 21 calls specifically for means
to generate a ticket number specification signal to order the

gn/3390.amd                     40

GTech v. Scientific Games
04-128-JJF

GTECH 000715

PATENT
3390-2010

dispensing of multiple tickets. This emphasizes the ease with which multiple tickets can be issued by the ticket agent without his having to handle the tickets.

Claim 24 is directed to the feature discussed above in which each of a batch of tickets is separated from the other tickets, thus providing the security feature described above.

Claims 27-29 are directed to the advantageous message display means mounted at the back surface adjacent the dispensing outlet of applicants' machine. This display is shown at 46 in Figure 4, for example. Moreover, there is a second display on the front of the machine 32 for informing the agent of information that he needs. This second display is recited in claim 29. Claim 28 is directed to central data processing means for selectively transmitting messages to the unit.

The foregoing specific combinations of features are not shown in or suggested by either Koza or Hartmann, or any combination of those references.

Claims 27-29 have been rejected as obvious over Troy in view of Hartmann. The Examiner relies on Troy primarily for his display 128 (Figs. 8 and 9). However, such a display is not provided specifically on the rear surface of a dispensing unit with tickets being dispensed from the same rear surface. Similarly, the features of claims 28 and 29, which also are dependent from claim 20, are not suggested by Troy.

gn/3390.amd                         41

PATENT
3390-2010

Claims 40, 46 and 48 are directed to the feature of the invention in which the opening of an access door to the dispensing unit is detected and counted.  By this means, the agent can determine whether an employee or other person who has no valid reason for entering the cabinet has done so.  Since the number of accesses is recorded and printed out for the agent, he can determine whether security may have been breached.

None of the references suggests the novel concept of these claims in which the number of accesses is counted.  Alarms are sounded and other indicia are activated to indicate when an access door is opened, but an accounting system for openings is a different and novel concept not suggested by these references.  Thus, the Examiner's comment on page 4 of the official action regarding the disclosure of Koza as applied to claims 46-48, does not anticipate the invention as set forth in these claims.

Claims 42-45 and 49 are directed to the feature of the invention in which an imprinter is provided in the dispensing unit to imprint on the ticket itself the identification of the agent or station issuing the ticket.  This concept is not shown or suggested by any of the references.  The Examiner's contention on page 6 of the official action that vendor identification is printed on Troy's checks is not believed to be supported by the reference to the specification.  Moreover, even if some identification of the vendor did appear on the checks, this is not at all the same as imprinting the vendor's identification on

gn/3390.amd                    42

PATENT
3390-2010

each of the lottery tickets.     The checks are used to provide payoffs to winners, whereas lottery tickets still must be redeemed at some later point in time.  By imprinting the vendor's identification on each ticket, the buyer has a convenient reference for determining where to go to claim credit for the winning ticket.

Claims 34 and 35 have been indicated to be allowable if rewritten as suggested by the Examiner.  They have been so rewritten and are believed to be allowable.

The prior art which was cited but not specifically relied on is not believed to be any more pertinent than that relied on.

Accordingly, it is respectfully requested that the claims be allowed and that the application be passed to issue.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.
Attorneys for Applicants

By:   Gregory N. Neff
      Reg. No. 20/596
      (212) 840-3333

gn/3390.amd

43

GTech v. Scientific Games
04-128-JJF

GTECH 000718



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/128,079 | 12/03/87 | BURR | 332-2138 |

CURTIS, MORRIS & SAFFORD
530 FIFTH AVENUE
NEW YORK, NY 10036

| EXAMINER |
|---|
| RUGGIERO, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 236 | 9 |

DATE MAILED: 07/25/89

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined  ☑ Responsive to communication filed on _5-19-89_  ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☑ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.   4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II** SUMMARY OF ACTION

1. ☑ Claims _20, 21, 24 25, 27-40, 42-46 and 48-72_ are pending in the application.
   Of the above, claims _52-57_ are withdrawn from consideration.

2. ☑ Claims _1-19, 22, 23, 26, 41 and 47_ have been cancelled.

3. ☑ Claims _20, 21, 24, 25, 27-29, 34, 35, 50 and 51_ are allowed.

4. ☑ Claims _30-32, 40, 42-46, 48, 49, 58-66, 68 and 70-72_ are rejected.

5. ☐ Claims _33, 36-39, 67 and 69_ are objected to.

6. ☑ Claims _52-57_ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**GTech v. Scientific Games**
**04-128-JJF**

PTOL-326 (Rev. 6-88)

EXAMINER'S ACTION

**GTECH 000719**

Serial Number: 128070                                        -2-

Art Unit: 236

1.      It is noted that page 24, line 4, as presently
amended, has poor syntax.  Also, the first line of claim
46▊, as now amended, has poor syntax.

2.      The drawings are objected to because Reference
numerals "90" at page 26, line 22 of the specification and
"39" at the last line of page 17 are not shown in the
drawing.  Correction is required.

3.      Applicant is required to submit a proposed
drawing correction in response to this Office action.
However, correction of the noted defect can be deferred
until the application is allowed by the examiner.

4.      Claims 61-64 are rejected under 35 U.S.C. 112,
second paragraph, as being indefinite for failing to
particularly point out and distinctly claim the subject
matter which applicant regards as the invention.

        In claim 61, the use of "adapted" in the
expression "adapted to ▆▆ break through" is not
sufficient to provide a positive recitation of
structural cooperation among the elements of the device.
In claim 64, the wording "relatively stiff stock" is
vague and indefinite.  Claim 62 and 63 incorporate the
deficiencies of claim 61 by dependence.

5.      The following is a quotation of the
appropriate paragraphs of 35 U.S.C. 102 that form the
basis for the rejections under this section made in this
Office action:

        A person shall be entitled to a patent unless--

6.          (b) the invention was patented or described in
            a printed publication in this or a foreign
            country or in public use or on sale in this
            country, more than one year prior to the date
            of application for patent in the United
            States.

GTech v. Scientific Games
04-128-JJF                                                    GTECH 000720

Serial Number: 128070                              -3-

Art Unit: 236

7.       Claims 30-32, 58-60 and 64 are rejected under
35 U.S.C. 102(b) as being anticipated by Wescoat '669.

         Wescoat '669 discloses an apparatus for
dispensing lottery tickets including ticket storage
means 34 for storing a plurality of lottery tickets 36
in a fan fold stream separated by lines of weakness 37,
transport means 47 for feeding the tickets, separations
means 71 including breaker bar 72 for separating the
tickets by bursting along the lines of weakness and
manually accessible outlet means 46 for receiving the
separated ticket.  Further included in Wescoat is a
hold down roll 79 which prevents deflection of the
tickets from the feed path during bursting.  Wescoat
also provides a feed alignment means (bowing means 81)
to control the transport means.  Further, with regard to
claim 59, the downward movement of the breaker bar 72 in
Wescoat is considered to be in a direction transverse to
the longitudinal direction of the strip.  With regard to
claim 60, it is noted that the language in the "so that"
clause is given no patentable weight in determining
distinguishable structure.

8.       The following is a quotation of the
appropriate paragraphs of 35 U.S.C. 102 that form the
basis for the rejections under this section made in this
Office action:

         A person shall be entitled to a patent unless-

9.               (a) the invention was known or used by others
                 in this country, or patented or described in a
                 printed publication in this or a foreign
                 country, before the invention thereof by the
                 applicant for patent.

GTech v. Scientific Games
04-128-JJF                                         GTECH 000721