IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| GTECH CORPORATION, | ) | REDACTED VERSION – PUBLICLY FILED |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04-138-JJF |
| v. | ) | |
| | ) | *Confidential – Filed Under Seal* |
| SCIENTIFIC GAMES INTERNATIONAL, INC., | ) | |
| SCIENTIFIC GAMES HOLDINGS | ) | |
| CORPORATION, SCIENTIFIC GAMES | ) | |
| FINANCE CORPORATION, and SCIENTIFIC | ) | |
| GAMES CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## GTECH'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF U.S. PATENTS 4,982,337 AND 5,222,624 ARE NOT INVALID UNDER 35 U.S.C. § 102

Dated: Dec. 16, 2005

Josy W. Ingersoll (#1088)
Karen Keller (#4489)
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200

Douglas E. Ringel
KENYON & KENYON
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
*Attorneys for Plaintiff GTECH Corporation*

## TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ................................................................................................ 1

II.  EVEN IF IT WERE *CAPABLE* OF DOING SO, THE IOWA PAT DID NOT
     DISPLAY "A PLURALITY OF ARRAYS OF TICKET IMAGES" AND,
     THEREFORE, IT DOES NOT ANTICIPATE CLAIM 18 OF THE '624 PATENT................ 2

III. THE IOWA PAT DID NOT HAVE MEANS FOR ORDERING "A PLURALITY OF
     TICKETS IN A SINGLE BATCH" AND THEREFORE DOES NOT ANTICIPATE
     CLAIMS 20 AND 21 OF THE '337 PATENT. .................................................... 6

IV.  CONCLUSION........................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

Cases

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek Inc.,*
　　424 F.3d 1293 (Fed. Cir. 2005) ............................................................................... 4, 5

*High Tech Med. Instrumentation v. New Image Indus.,*
　　49 F.3d 1551 (Fed. Cir. 1995) ................................................................................... 4

*Juicy Whip Inc. v. Orange Bang, Inc.,*
　　292 F.3d 728 (Fed. Cir. 2002) ................................................................................. 4, 5

*Trintec Indus., Inc. v. Topp-U.S.A. Corp.,*
　　295 F.3d 1292, 1296 (Fed. Cir. 2002) ......................................................................... 5

*Union Carbide Chems. & Plastics*
　*Tech. v. Shell Oil Co.,*
　　308 F.3d 1167 (Fed. Cir. 2002) ................................................................................. 8

*Wright Med. Tech., Inc. v. Osteonics Corp.,*
　　122 F.3d 1440 (Fed. Cir. 1997) ................................................................................. 7

Statutes

35 U.S.C. § 102 ........................................................................................... 1, 2, 6, 8, 11

35 U.S.C. § 103 ......................................................................................................... 8

I.    INTRODUCTION

Scientific Games' Answering Brief makes clear that the issue of no invalidity under 35 U.S.C. § 102 is one that can and should be resolved on summary judgment. Scientific Games' brief makes clear that, even if all of the evidence presented by Scientific Games about the Iowa PAT machine is construed in its favor, the correct resolution of two questions of law compels a conclusion of no anticipation. Accordingly, the issue is properly determined by the Court, not a jury, and summary judgment should be granted in GTECH's favor.

With respect to claim 18 of the '624 patent, Scientific Games concedes that the Iowa PAT machine never actually displayed "a plurality of arrays of ticket images." Scientific Games nevertheless argues that the Iowa PAT anticipates the claim because, as it was allegedly offered for sale,          **Redacted**                However, the law of anticipation requires that the allegedly anticipating device actually meet all of the claim limitations, not just be *capable* of meeting the claim limitations. Thus, as a matter of law, even accepting Scientific Games' allegations of fact regarding the Iowa PAT machines, those machines do not anticipate. Moreover, the machines also do not anticipate because the evidence does not show the Iowa PAT was capable of operating in a manner which actually was covered by claim 18.

With respect to claims 20 and 21 of the '337 patent, the issue is claim construction, again a matter of law. The '337 patent uses the term "plurality of tickets in a single batch" to mean a group of tickets that are purchased with a *single* order; the claimed machine can dispense multiple tickets without the need to place multiple orders for tickets. For the purpose of resolving this motion, there is no dispute between the parties about how the Iowa PAT actually operated

**Redacted**

# Redacted

Scientific Games nevertheless argues that

the claim term "plurality of tickets in a single batch" can be construed to cover a plurality of

tickets purchased by the customer pressing an order button multiple times, once for each ticket.

That is an incorrect construction that is contradicted by the '337 patent and by Scientific Games'

own expert, who conceded that the Iowa PAT did not have means for ordering or dispensing a

"plurality of tickets in a single batch." Under the correct claim construction, which is a matter of

law, the Iowa PAT machine does not anticipate.

## II.    EVEN IF IT WERE *CAPABLE* OF DOING SO, THE IOWA PAT DID NOT DISPLAY "A PLURALITY OF ARRAYS OF TICKET IMAGES" AND, THEREFORE, IT DOES NOT ANTICIPATE CLAIM 18 OF THE '624 PATENT.

Scientific Games does not dispute that the Iowa PAT, in the form in which it was

allegedly deployed in Iowa,

# Redacted

As GTECH pointed out in its Opening Brief, this display does not meet the

claim requirement of "a plurality of arrays of ticket images," and, therefore, the Iowa PAT

cannot anticipate claim 18 of the '624 patent. (D.I. 133 at 15,17).

In its Answering Brief, Scientific Games does not even attempt to argue that the Iowa

PAT machine as allegedly deployed in Iowa anticipates the claim. (D.I. 147 at 13 (Scientific

Games "set[s] aside the question of whether Scientific Game's PAT as deployed in Iowa (with

only three icons) is an anticipation under 35 U.S.C. § 102")). Instead, Scientific Games argues

that the Iowa PAT machine as offered for sale to Iowa, not as actually deployed in Iowa, anticipates.  (D.I. 147 at 13).

**Redacted**

Therefore, it does not create a material factual dispute sufficient to avoid summary judgment.  *Juicy Whip Inc. v.*

---

[1]     "Opening Ex. __" indicates exhibits filed with GTECH's Opening Brief, D.I. 133.  "Ex. __" indicates exhibits filed with this Reply Brief.

**Redacted**

*Orange Bang, Inc.*, 292 F.3d 728, 737, 743 (Fed. Cir. 2002) (reversing denial of JMOL where a document presented in support of an alleged prior public use corroborated that a component of a prior art system did exist, but the document failed to show that the alleged prior art system actually performed the exact claimed function using the component).

# Redacted

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) (being "capable" of satisfying a claim element does not satisfy it); *accord High Tech Med. Instrumentation v. New Image Indus.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995) (a device is not covered by a claim simply because it is possible to alter it in a way that would satisfy the claim limitation). In *Cross Medical*, the claim at issue, for an orthopedic surgical implant, recited "an anchor seat means which has a lower

bone interface operatively joined to said bone segment". *Cross Med.*, 424 F.3d at 1299. The

accused product actually had an anchor seat, but as shipped, the anchor was not joined to a bone.

Rather, the anchor seat of the device only contacted bone when a surgeon implanted it. The

patentee argued that the accused device, as shipped, was covered by the claim because it was

"capable" of contacting bone, e.g., when the device was installed by a surgeon. *Id.* at 1310. The

accused device in *Cross Medical* was capable of meeting the claim element; it did not even

require physical alteration before installation. *Id.* at 1311. However, the Federal Circuit rejected

the patentee's argument that the accused device met the claim element when shipped, holding

that merely being "capable" of meeting a claim element did not meet the claim element. *Id.* A

litigation-driven declaration that talks about what the Iowa PAT was "capable" of doing is not

material, because like *Cross Medical*, "capability" is not legally sufficient to show that the Iowa

PAT met the claim element.

# Redacted

Accordingly, even if 12 icons were arguably present on the Iowa PAT, no

evidence put forward by Scientific Games shows that the icons were displayed as a "plurality of

arrays," as required by claim 18. For at least this additional reason, the Iowa PAT should not be

found to anticipate claim 18. *Juicy Whip Inc.*, 292 F.3d at 743 (reversing denial of JMOL where

there was not clear and convincing evidence that the prior art devices were "complete

embodiments" of the claimed invention); *see also Trintec Indus., Inc. v. Topp-U.S.A. Corp.*, 295

F.3d 1292, 1296 (Fed. Cir. 2002) (even minimal or obvious differences from the prior art prevent

anticipation).

III.    THE IOWA PAT DID NOT HAVE MEANS FOR ORDERING "A PLURALITY
OF TICKETS IN A SINGLE BATCH" AND THEREFORE DOES NOT
ANTICIPATE CLAIMS 20 AND 21 OF THE '337 PATENT.

The only issue raised by Scientific Games in opposition to GTECH's motion for

summary judgment that claims 20 and 21 are not invalid under 35 U.S.C. § 102 is one of claim

construction, a question of law.  The claim phrase at issue is "a plurality of tickets in a single

batch," and the issue presented on this motion is whether that phrase, as properly construed,

embraces a machine that requires the customer to press an order button multiple times to receive

multiple tickets, once for each ticket.

For purposes of this motion, there is no dispute about how the Iowa PAT actually

operated:

# Redacted

None of the testimony, documents,

or affidavits cited by Scientific Games disputes that this is how the Iowa PAT operated.  Thus,

there is no material factual dispute.

GTECH argued in its claim construction briefing that the meaning of "operable for

ordering a plurality of tickets in a single batch" was "to allow ordering of a plurality of tickets,

i.e., two or more, in a single batch".  (D.I. 112 at 27).  Scientific Games did not dispute this

construction.  (D.I. 115 at 26 (function is "ordering a plurality of tickets in a single batch")).  The

claim requirement of ordering a plurality of tickets "in a *single* batch" requires that the tickets be

ordered together, i.e., in a *single* order rather than one at a time in multiple orders.

Scientific Games now attempts to improperly read the claims as if they did not include

the "in a single batch" language, effectively equating "ordering a plurality of tickets in a single

batch" just "ordering a plurality of tickets," leaving "in a single batch" devoid of meaning. *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1444 (Fed. Cir. 1997) (holding that it is improper to "eviscerate" a claim limitation by construing it to render a term "surplusage"). Scientific Games' construction is contrary to the plain meaning of the claim language and is inconsistent with the claims, specification, and prosecution history of the '337 patent, as described in more detail below.

**Redacted**

**Redacted**

**Redacted**

**Redacted**

In describing the illustrated embodiment, the specification states:

_____

3

**Redacted**

While GTECH has not moved for summary judgment on the issue of obviousness, GTECH does dispute Scientific Games' allegations that the asserted claims were obvious. However, the issue of obviousness under 35 U.S.C. § 103 over a *combination* of two systems is irrelevant to this motion, because invalidity under 35 U.S.C. § 102 requires that *every element* of the claim be satisfied by a *single* prior art system or reference. *Union Carbide Chems. & Plastics Tech. v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002).

-8-

> [A]ny number of tickets from 1 through 999 may be dispensed
> simply by depressing the appropriate numerical push-button and
> the entry button 38. ... *[I]f the sales agent depresses the*
> *numerical push-button bearing the digit "5" and then the entry*
> *button [thereby placing a single order for multiple tickets],*
> *remote unit 14 will automatically deposit five separated lottery*
> *tickets into dispensing outlet 34.*

Opening Ex. B, '337 Patent, 7:56-8:2 (emphasis added).

The '337 patent additionally describes ordering a plurality of tickets in a single batch in

connection with the flowchart illustrated in Figure 12. The specification states that a single order

can be placed for "N tickets," i.e., a plurality of tickets, and then the machine automatically

dispenses the "N tickets" without further user input:

> At step 202, if an input was received from keypad 37, program 200
> proceeds to step 205, wherein *it is determined whether a ticket*
> *number command has been received, ordering the dispensing of*
> *N tickets.* If such a ticket number command has been received,
> program 200 proceeds to step 206 wherein stream of tickets 50 is
> moved to bring line of weakness 56 to bursting positions 70 . . . .
> In step 207, leading ticket 52 is burst from the next following
> ticket 54 and in step 208 the dispensing of another ticket is
> recorded as sales data. In step 209 *it is determined [automatically*
> *by the machine] whether N tickets have been dispensed and if not*
> *control returns to step 206 so that the next leading ticket 52 may*
> *be dispensed.* If N tickets have been dispensed in step 209, control
> returns to step 202.

Opening Ex. B, '337 Patent, 15:54-16:1 and Fig. 12 (emphasis added).

The prosecution history also supports the construction that "a single batch" means a

single user order. During the prosecution of the '070 Application, which became the '337 patent,

the Applicant's attorney argued as follows regarding claim 50, 51 and 69 (which became claims

20, 21 and 32 when the '337 patent issued):

> Another highly advantageous feature of the invention, emphasized
> in claims 50, 51, and 69, for example, is one in which each ticket
> in a batch of tickets ordered by a particular customer is

> individually separated from the other tickets in the batch so that the
> tickets are dispensed one at a time.

Ex. A, '070 Filewrapper, Amendment, May 17, 1989, at 38. Claim 69 of the '070 Application,

also mentioned in the above quote, later became claim 32 of the '337 patent, which recites:

> means for causing said dispenser to issue a plurality of tickets, the
> number of which corresponds to *an order* for a batch of tickets,
> and means for operating said separator means to separate each of
> said tickets from the others in said batch.

Opening Ex. B, '337 patent, at 22: 8-12 (emphasis added). The language makes clear that "a

single batch" means "an order," i.e., a single order.

There is no genuine issue of material fact that the Iowa PAT did not have means for

ordering or dispensing a plurality of tickets "in a single batch." Scientific Games' own evidence

shows that the Iowa PAT operated by the customer placing an order for a first ticket by pressing

a button, the machine then dispensing that single ticket, then the customer placing an order for a

second ticket by pressing the button again, and so on. As Scientific Games' own expert

admitted, this does not meet the claim language.

IV.   **CONCLUSION**

For the above reasons, GTECH respectfully requests that the Court grant partial summary judgment that claims 18 of the '624 patent and claims 20 and 21 of the '337 patent are not invalid under 35 U.S.C. § 102.

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

Dated: Dec. 16, 2005          By:   _Karen L. Keller_

Josy W. Ingersoll (#1088)
Karen Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201
*Attorneys for Plaintiff GTECH Corporation*

# EXHIBIT A



*·72.·v·*  *10 5*  *25*

PATENT
3390-2010

*8/a*

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

*5/30/89*
*Coselin*

Applicant:       Robert L. Burr, et al.

Serial No.:      128,070

Filed:           December 3, 1987

For:             SYSTEM AND METHOD FOR DISTRIBUTING
                 LOTTERY TICKETS

Examiner:        J. Ruggiero

Group:           230

                              530 Fifth Avenue
                              New York, New York 10036
                              May 17, 1989.

I hereby certify that this correspondence is being
deposited with the United States Postal Service as
first class mail in an envelope addressed to:
Commissioner of Patents and Trademarks, Washington,
D.C. 20231, on May /7    , 1989.
                    Gregor N. Neff
Name of Applicant or Registered Representative

                    Signature
              May /7 , 1989
              Date

## AMENDMENT

Honorable Commissioner of Patents
    and Trademarks
Washington, DC  20231

Sir:

        In response to the official action of February 3, 1989,
please amend the above-identified patent application as follows:

gn/3390.amd  070  05/23/89  128070        1          1 105    72.00 CK

PATENT
3390-2010

IN THE SPECIFICATION

On page 1, line 1, delete "SYSTEM AND METHOD FOR DISTRIBUTING LOTTERY TICKETS".

Page 3

line 1, change "important" to -- desirable --;

line 2, after "necessary" insert a comma;

line 3, after "reasons", insert a comma;

line 7, change "are" to -- is --;

line 9, change "in", first occurrence, to -- of -- and change "provide the tickets in a" to -- dispense tickets --;

line 10, insert -- stored in -- before "fan-fold"; change "stream" to -- form --;

line 11, change "double feeding present" to -- unintentionally dispensing too many tickets --;

line 14, after "lengths." insert -- Furthermore, tickets easily can slip in the dispensing mechanism, or for other reasons can be fed inaccurately. --;

line 14, change "It" to -- Therefore, it --;

line 15, after "a" insert -- ticket --; delete "within the dispensing unit";

line 16, change "the stream" to -- one another --;

line 18, change "since again for security reasons" to -- despite the variation in the --;

gn/3390.amd                    2

PATENT
3390-2010

line 19, delete "generally only complete tickets
are redeemable." and insert -- size of tickets and slippage or
inaccuracy in the dispensing mechanism. --.

Page 4,
line 2, insert a hyphen between "system" and
"wide";
line 28, after "fan-fold" insert -- strip or --.
Page 8, line 22, change "partial elevational
mechanical" to -- perspective --.
Page 9,
line 1, change "an elevational mechanical" to -- a
perspective --;
line 7, change "fundamental" to -- certain --;
line 9, change "DETAILED DESCRIPTION OF THE
PRESENT INVENTION" to -- GENERAL DESCRIPTION --.
Page 10,
line 2, change "is" to -- can be placed --;
line 3, delete "placeable";
line 6, after "or", insert -- alternatively, it --
;
line 7, after "be", insert -- located --;
line 9, delete "(Fig. 10)";
line 10 after "between" insert -- each of --;
change "modem" to -- modems --; after "and" insert -- the --;
line 14, delete "thereat";

gn/3390.amd                    3

PATENT
3390-2010

line 19, after "with" insert -- the --; delete "central computer";

line 20, delete "12"; insert a hyphen between "dialing" and "up";

line 21, delete "respective";

line 22, after "to" insert -- the --;

line 23, start a new paragraph beginning at "Central"; change "can operate" to -- operates --.

Page 11,

line 3, delete "respectively";

line 6, after "control" insert -- station --;

line 14, after "12" insert a comma; after "day," insert -- once --;

line 15, change "week" to -- once each week, --;

line 21, change "without the" to -- with minimum --; after "without" insert -- the --;

line 22, change "through the mails." to -- which occur when such data is sent by mail."; start a new paragraph with "Furthermore,";

line 24, insert hyphens between "up", "to" and "the";

line 26, change "know" to -- determine --;

line 27, change "stack" to -- stock --;

gn/3390.amd                    4

PATENT
3390-2010

line 28, insert a period after "out"; change
"which is a valuable commercial" to -- This capability is
commercially --;

Delete line 29 and replace it with -- advantageous
and helps to stabilize cash flow. Also, the information --;

line 30, insert -- can be used to -- before
"efficiently".

Page 12,

line 1, insert a comma after "separately";

line 16, change "application to -- use --.

Page 13,

line 5, change "through" to -- thorough --;

line 8, change "compueter" to -- computer --;
insert -- to -- after "programmed".

line 10, insert hyphens between "up", "to" and
"the"

Page 14,

line 12, insert -- housing with a -- before
"front";

line 14, after "behind" insert -- a --; delete
"A";

line 15, start a new paragraph by inserting "An";
delete "corresponding,";

line 17, change "important" to -- advantageous --;

line 24, insert a comma after "28".

gn/3390.amd                    5

PATENT
3390-2010

Page 15,

line 5, change "32" to -- 28 --;

line 6, change "may be provided at an" to -- is --; delete "angle";

line 7, after "reasons" insert -- ; that is, --;

line 8, insert a period after "32"; change "but the" to -- The --;

line 9, after "inclination" insert -- of panel 32 --;

line 15, change "prevents" to -- minimizes the chances of --;

line 20, change "within" to -- which is located inside of the --;

line 21, change "unit 40 may be a microprocessor based" to -- circuit 40 is a microprocessor-based --;

line 22, insert a period after "14"; change "and is" to -- It will be --;

line 23, start a new paragraph with "Push-buttons";

line 24, insert a comma after "0-10".

Page 16,

line 1, change "to" to -- into --;

line 3, insert a hyphen between "sign" and "on";

line 4, insert a comma after "button", second occurrence;

gn/3390.amd                6

PATENT
3390-2010

line 5 delete "entry";

line 7, start a new paragraph at "In particular,"

line 9 delete "38";

line 12 change "display" to -- number --; change "device" to -- display;

line 17 start a new paragraph at "Alternatively,";

line 18, delete "38"; after "then" insert -- the --;

line 19, delete "38";

line 20, after "five", delete the comma;

line 26 delete "when not handling tickets";

line 27, after "accurate" insert -- when the agent is not handling tickets --; start a new paragraph with "Each".

Page 17,

line 1, after "40" insert (Figure 10) --;

line 2, change "may also" to -- also may --;

line 3 change "therein" to -- in memory --;

line 6, after "to" insert -- the --;

line 7, change "may receive" to -- receives --;

line 8, after "from" insert -- the --;

line 12, after "and" insert -- issued --;

line 13, change "presented at front surface 38 through slot 39" to -- in the front surface 28, through a slot 39. --; start a new paragraph at "As mentioned";

gn/3390.amd                    7

PATENT
3390-2010

line 16, insert a comma after "customers";

line 18, change "a", second occurrence, to -- the --;

line 19, change "device" to -- display --; after "on" insert -- the --;

line 20, delete "and";

line 29, start a new paragraph with "Alternatively,";

line 30, change "presented" to -- issued --.

Page 18,

line 3, insert quotations around "off";

line 5, start a new paragraph with "In";

line 6, insert quotations around "normal";

line 9, start a new paragraph at "In"; insert quotations around "communication";

line 12, change "unit 14 and" to -- the unit 14 and the --;

line 14, insert a comma after "12" and "actuated";

line 16, insert a comma after "12";

line 19, start a new paragraph with "Advantageously,";

line 26, insert a comma after "thereof";

line 28, delete "advertising data indicative of";

line 29, change "may" to -- will --.

Page 19,

gn/3390.amd

8

PATENT
3390-2010

line 2, change "for" to -- (Figure 10) --;

line 3, change "display." to -- to display the message. --;

after line 3, insert the following heading, centered -- TICKET SEPARATOR OR "BURSTER" --

line 6, change "stream headed by a leading ticket" to -- strip or "stream" --;

line 7, after "in" insert -- most --;

line 8, change "provided" to -- stored --;

line 11, change "could accidently could be dispensed" to -- could be dispensed accidently --;

line 13, start a new paragraph with "The"; change "completely removes" to -- essentially eliminates --

line 14, change "in place of a" to -- unintentionally. --;

line 15, change "single ticket first" to -- This is accomplished, in part --; change "a fan-fold" to -- fan-fold form, --

line 16, change "stream and secondly" to -- and --;

line 17, after "separation" insert -- or "burster";

line 19, change "addresses and removes" to -- alleviates --;

line 20, start a new paragraph with "In";

gn/3390.amd                    9

PATENT
3390-2010

line 24, change "further" to -- often --;

line 25, change "which may be fed into and positively held" to -- so that it can be driven --; after "feed" insert -- mechanism --;

line 26, change "feeding" to -- feed --;

line 29, insert a comma after "and";

line 30, insert a comma after "indeed".

Page 20,

line 1, change "The" to -- A -- and start a new paragraph;

line 8, change "folding" to -- fan-folding --;

line 13, start a new paragraph with "Simply";

line 15, change "stream" to -- tickets --;

line 16, insert a period after "ticket"; change "and so" to -- Therefore --;

line 17, after "device" insert -- usually --;

line 19, start a new paragraph at "The";

line 26, start a new paragraph at "A".

Page 21,

line 6, after "fan-fold" insert -- strip or --;

line 8, change "stack 51" to -- fan-fold stack form --;

line 9, after "transportable" insert -- , especially --;

gn/3390.amd                10

PATENT
3390-2010

line 10, after "example," insert -- as many as --
;

line 13, start a new paragraph with "Stream";
change "Stream of tickets 50" to -- Referring now to Figure 6,
the ticket strip 50 --;

line 15, after "56", insert a comma; delete "(Fig.
6)";

line 17, insert a period after "weakness";

line 18, delete "56."; start a new paragraph with
"Stream"; change "Stream of tickets 50" to -- Returning to Figure
5, ticket strip 50 --

line 20, after "towards" insert -- the --; insert
a comma after "34";

line 23, start a new paragraph with "Leading";
before "Leading" insert -- The --;

line 26, after "70", delete "therealong"; delete
"upper and lower";

line 27, after "62" insert -- (also see Figure 7)-
-; delete "upper and lower";

line 28, delete "upper and lower";

line 29, after "transport" insert -- the --; after
"from" insert -- the --; after "to" insert -- the --.

Page 22,

line 1, insert a period after "70"; change "while
upper and lower exit" to -- Exit --;

gn/3390.amd                    11

PATENT
3390-2010

line 4, change "A" to -- As shown in Figure 7, a -
-; delete "(Fig. 8)";

line 5, delete "upper and lower";

line 6, change "upper and lower" to -- the --;

line 9, after "between" insert -- the --;

line 10, after "to" insert -- the --; after "70,"
insert -- a --;

line 13, after "Fig. 5," insert -- and in
perspective in Figure 7, --;

line 15, change "important" to -- advantageous --;

line 18, start a new paragraph at "When";

line 19, delete "upper and lower";

line 20, change "are gripping" to -- grip --;
after "of" insert -- the --;

line 21, change "upper and lower" to -- exit --;
delete "are";

line 22, change "gripping" to grip --; after "of"
insert -- the --;

line 29, delete "nevertheless".

Page 23

line 1, change "stream" to -- strip of --;

line 2, after "by" insert -- the --;

line 6, after "burst" insert -- the --;

gn/3390.amd                    12

PATENT
3390-2010

replace line 9 with -- at least close to the line. --;

Delete lines 10, 11, 12;

line 13, delete "certainly will not be properly dispensed";

line 14, change "effective" to -- used --;

line 16, insert a period after "70"; change "but even" to -- Even --;

line 18, change "weekness" to -- weakness --;

line 19, insert a comma after "70"; change "Furthermore, all systems will" to -- As in any such system --;

line 20, change "have" to -- there is --; after "tolerance" insert -- which tends to prevent perfect alignment --; delete "However,";

line 21, change "in" to -- In --;

line 22, delete "upper and lower";

line 23, delete "upper and lower";

line 24, change "remove" to -- correct --;

line 25, begin a new paragraph at "Specifically,".

Page 24

line 1, after "on" insert -- the --;

line 2, change "line of weakness 56" to -- the tickets --;

line 3, delete "tickets 52 and 54";

gn/3390.amd                    13

PATENT
3390-2010

line 2, change "line of weakness 56" to -- the tickets --;

line 3, delete "tickets 52 and 54";

line 4, change "from dispensing path 57, as indicated in" to -- downwardly from --;

line 5, delete "a solid line,"; after "at" insert -- the --;

line 6, delete "a", second occurrence;

line 7, change "line." to -- lines in the drawings. --;

line 8, change "slip along" to -- slip longitudinally along the --;

line 9, after V-shaped" insert -- ticket-array --; after "with" insert -- the --; begin a new paragraph at "In Fig.";

line 10, change "tickets 52 and 54 will tend to move" to -- the ticket strip 50 moves --;

replace line 11 with -- arrow B until the line of --;

line 13, after "when" insert -- the --;

line 14, after "of" insert -- the --;

line 15, change "tickets" to -- the strip 50 --;

line 16, delete "52 and 54";

line 17, change "reverse feeding stream of tickets" to -- reverse-feeding the strip --;

gn/3390.amd                        14

PATENT
3390-2010

line 20, change "in accordance with" to -- of --
;

Delete lines 21, 22, 23 and 24.

line 25, change "It will be clear that if" to --
If --.

Page 25

line 6, begin a new paragraph at "As illustrated
in";

line 9, change "upper and lower" to -- the --;

line 13, change "upper and lower" to -- the --;
after "64" insert -- and --;

line 14, change "upper and lower" to -- the --;

line 15, begin a new paragraph at "As shown ";
change "may be" to -- is --;

line 17, change stream of tickets" to -- the
ticket strip --;

line 24, change "remote" to -- the dispensing --;

line 20, change "stream" to -- the strip --;

line 29, delete "upper".

Page 26

line 1, delete "and lower"; delete "upper and
lower";

line 2, change "roller" to -- rollers --;

line 5, delete "from fan";

line 6, delete "fold to fan fold";

PATENT
3390-2010

line 10, after "by" insert -- the --;

line 14, change "stream of tickets" to -- the ticket strip --;

line 15, insert a period after "rollers"; change "Although wider" to -- Wider --;

line 17, insert before "In" -- Referring now to Figures 5 and 7, --;

line 23, change "same" to -- single --;

line 26, after "in" insert -- Figures 5 --

line 27 change Fig. 7," to -- and 7, the --; after "as" insert -- the --;

Replace line 28 with -- feed rollers 60 which move the --;

line 29, change "tickets" to -- ticket strip --;

Page 27,

line 2, after "40" insert -- (Figure 10) --;

line 3, change "stream" to -- strip --;

line 6, begin a new paragraph with "Control";

line 7, change "reverse fed" to -- reverse-fed, -- ;

line 14, change "a practical" to -- actuality, --;

line 16, insert a comma after "inch";

line 17, delete "embodiment";

line 20, insert a hyphen between "previously" and "entered";

gn/3390.amd                    16

PATENT
3390-2010

Page 28,

line 1, change "while" to -- The --; change "roller" to -- rollers --;

line 2, change "in gear" to -- at --;

line 3, after "96" insert a period"; change "and upper exit roller 64 thereby" to -- Upper exit rollers 64 are driven by rollers 66. --; begin a new paragraph at "Code";

line 9, begin a new paragraph at "Burster";

line 21, begin a new paragraph at "Burster";

line 22, change "one" to -- the --; change "54" to -- 52 --;

Page 29,

After line 13, insert the heading centered -- IMPRINTING --;

line 21, change "remote" to -- dispensing --;

line 22, begin a new paragraph at "As";

line 28, delete "drivingly".

Page 30,

line 3, change "stream" to -- the strip --;

line 4, insert a comma after "therebetween";

After line 11, insert, centered, the heading -- ACCESS MONITORING --;

line 17, change "(Fig. 10)" to -- (see lower right-hand portion of Fig. 10);

line 18, after "to" insert -- the --;

gn/3390.amd                    17

PATENT
3390-2010

line 17, change "(Fig. 10)" to -- (see lower right-hand portion of Fig. 10);

line 18, after "to" insert -- the --;

line 19, after "of" insert -- the --; delete "118";

line 22, insert a period after "40";

line 23, change "and operation" to -- Operation --;

line 25, change "also used to provide the reports" to --issued through the slot 39 - the same tape which is used to provide various reports. --;

*u 4*

line 26, delete "through slot 39.";

Page 31,

After line 5, insert, centered, -- CONTROL CIRCUIT --;

line 6, after "functional" insert -- block --;

line 12, change "118" to -- 122 --;

line 15, begin a new paragraph at "Lid";

line 16, change "112" to -- 122 --;

line 22, begin a new paragraph at "Code".

Page 32,

line 5, begin a new paragraph at "Control";

line 8, change "brown out sensed by brown out" to -- "brown-out" sensed by brown-out --;

line 11, change "128 to -- 129 --;

gn/3390.amd                    18

PATENT
3390-2010

After line 28, insert, centered, -- <u>FLOW CHARTS</u> --

;

line 29, before "A" insert -- Figure 12 is --;

Page 33,

line 1, delete "is illustrated in Fig. 12"

PATENT
3390-2010

IN THE CLAIMS:

Cancel claims 1-19, 22, 23, 26, 41 and 47.

Rewrite claims 24, 25, 28, 30, 34, 44, 46 and 48 as
follows:

3 2X. (Amended)  Apparatus according to claim 21,
wherein said lottery tickets stored within said ticket storage
means are connected, and wherein said dispensing means includes
means for <u>individually</u> separating [tickets] <u>each ticket</u> to be
dispensed from the remaining tickets <u>regardless of the number of</u>
<u>tickets being dispensed in one order.</u>

H 25. (Amended)  Apparatus according to claim 30,
wherein said *lottery* tickets stored within said ticket storage means are
connected in a fan-fold stream, said lottery tickets being
<u>delineated</u> [separated] from each other along lines of weakness,
and s̶a̶i̶d̶ separating means [separating] <u>including means for</u>
<u>bursting</u> said lottery tickets <u>apart</u> along said lines of weakness.

6 28. (Amended)  Apparatus according to claim 21, 5
further comprising central data processing means [selectively
placeable in] <u>and means for selectively connecting said data</u>
<u>processing means</u> [communication] with said module for
transmitting at least message data thereto, said message display
means being responsive to said message data to display a message
indicative thereof.

gn/3390.amd                    20

PATENT
3390-2010

30. (Amended) Apparatus for dispensing lottery tickets, comprising:

ticket storage means for storing a plurality of lottery tickets connected in a fan-fold stream headed by a leading ticket, said tickets being separable from each other along lines of weakness;

transport means for feeding said stream of tickets from said ticket storage means along a predetermined dispensing path;

separation means for separating said leading ticket from said stream of tickets along a leading line of weakness between said leading ticket and a next following ticket [manually accessible outlet means for receiving the separated ticket] by bursting said tickets apart along said leading line; and

manually accessible outlet means for receiving the separated ticket.,

34. (Amended) Apparatus for dispensing tickets, comprising:  ticket storage means for storing a plurality of tickets connected in a fan-fold stream headed by a leading ticket, said tickets being separable from each other along lines of weakness; transport means for feeding said stream of tickets from said ticket storage means along a predetermined dispensing path; separation means for separating said leading ticket from said stream of tickets along a leading line of weakness between said leading ticket and a next following ticket; and manually accessible outlet means for receiving the separated ticket,

gn/3390.amd                    21

PATENT
3390-2010

<u>wherein said separation means includes a dull-edged bursting</u>
<u>blade movably mounted adjacent a predetermined bursting position</u>
<u>along said path, holding means for holding said stream of tickets</u>
<u>against substantial deflection from said path at said bursting</u>
<u>position and bursting blade drive means for bringing said</u>
<u>bursting blade into bursting contact with said stream of tickets</u>
<u>at said bursting position to burst said leading ticket from said</u>
<u>next following ticket wherein said separation means includes feed</u>
<u>alignment means for controlling said transport means to bring</u>
<u>said leading line of weakness to said bursting position wherein</u>
<u>said alignment means includes sensor means for detecting a</u>

<u>present position of said leading ticket relative to said bursting</u>
<u>position, determining means for determining a transport direction</u>
<u>and a displacement distance necessary to bring said leading line</u>
<u>of weakness to said bursting position, and transport control</u>
<u>means for generating a transport control signal indicative of</u>
<u>said transport direction and displacement distance, said</u>
<u>transport means being responsive to said transport control signal</u>
<u>for transporting said stream of tickets in said transport</u>
<u>direction by said displacement distance</u> wherein said transport
control means is responsive to transportation of said stream of
tickets by a predetermined incremental distance to generate a
transport pulse, said determining means calculates an integral
number substantially equal to said displacement distance divided
by said incremental [distance] <u>distance</u>, and said transport

gn/3390.amd                         22

PATENT
3390-2010

control means permits transport by said transport means during

generation of said number of said transport pulses to bring said

leading line of weakness to said bursting position.

44. (Amended)  Apparatus according to claim 42, 16

wherein said imprinter means is located adjacent said path

upstream of the position of said [bursting position] separation

means.

46. (Amended)  A method of prevent unauthorized

distribution of [valuable items] lottery tickets, comprising the

steps of:

storing a plurality of instant lottery tickets in an

enclosed storage area within a storage [said] unit;

accessing the interior of said storage area at selected

times to permit deposit and removal of tickets therein;

detecting each access to said interior of said storage

area; and

memorizing and counting each said detected access.

48. (Amended)  Apparatus for dispensing lottery

tickets, comprising:

a box-like module including an interior storage area

within which lottery tickets may be stored prior to dispensing;

normally closed door means openable for accessing said

interior storage area to permit deposit and removal of tickets

therein;

gn/3390.amd                    23

PATENT
3390-2010

detector means for detecting each opening of said door means;

memory means for memorizing and counting each said detected opening.

Claim 20, line 7, change "actuable" to -- actuatable --

Claim 31, line 2, change "edge" to -- edged --;

line 3, change "moveably" to -- movably --;

Claim 33, line 4, insert -- determining -- before "means";

line 7, insert -- for -- after "means".

Add the following new claims 50-72:

50. A ticket dispensing machine for dispensing tickets directly to the purchaser thereof, said dispenser comprising the combination of housing means for storing a strip of tickets to be dispensed, said housing means having an outlet opening accessible to the purchaser of tickets from said machine, means operable for ordering a plurality of tickets in a single batch, means for separating each of said tickets from said strip, dispensing means for dispensing tickets through said outlet opening, and control means for causing each ticket in said batch to be separated and dispensed separately from the other tickets in said batch regardless of the number of tickets in said batch.

51. A machine as in Claim 50 in which said tickets are instant-winner lottery tickets.

gn/3390.amd                    24

PATENT
3390-2010

52.  A method of separating tickets from a strip of
tickets in which said tickets are delineated from one another by
lines of weakness, said method comprising the steps of moving
said strip to bring one of said lines to a position near a
separation station, providing means for holding said strip on at
least one side of said one line, and bending said strip along
said one line to facilitate separation of a ticket from said
strip by tearing along said one line.



53.  A method as in Claim 52 including the step of
causing relative transverse motion at said separation station
between a separator member and said strip so as to cause
transverse deflection of said strip and burst said tickets apart
along said line.

54.  A method as in Claim 53 in which said tickets on
each side of said line are gripped releasably, and said relative
transverse motion causes longitudinal adjustment of the position
of said line and tending to locate it at said separation station.

55.  A method as in Claim 52 in which said tearing is
started adjacent one edge of said strip and traverses the strip.

56.  A method as in Claim 53 in which said separator
member has a relatively dull edge, and said relative transverse
motion comprises moving said member across said strip with its
edge contacting said strip along a line spaced transversely of
the plane of longitudinal travel of said strip.

gn/3390.amd                25

PATENT
3390-2010

57.   A method as in Claim 52 in which said tickets are pre-printed lottery tickets made of relatively stiff material.

58.   Apparatus for dispensing tickets from a strip of tickets delineated from one another by lines along which the material of said strip is weakened, said apparatus comprising, in combination, means for moving said strip towards a dispensing position, means for holding said strip adjacent one line along which said strip is to be separated, and bending said strip along said line to facilitate tearing of said strip along said one line.

59.   Apparatus as in Claim 58 including separation means, having a separator member and drive means for creating motion of said separator member and said strip relative to one another in a direction transverse to the strip, with said member in contact with and deflecting said strip to bend said strip along said one line and burst said tickets apart along said one line.

60.   Apparatus as in Claim 59 in which said means for holding said strip holds said strip releasably so that the deflecting contact of said separator member with said strip tends to pull said strip to adjust its longitudinal position in order to align said one line with said member.

61.   Apparatus as in Claim 59 in which said drive means is adapted to break through said strip in one locale and then traverse the strip along said line.

gn/3390.amd                   26

PATENT
3390-2010

~~25~~ 62. Apparatus as in Claim ~~62~~ 24 in which said drive means includes means for mounting said separator member to traverse said strip, starting from a position in which said separator member is out of contact with said strip.

~~26~~ 63. Apparatus as in Claim ~~62~~ 25 in which said separator member includes a blunt-edged wheel rotatably mounted to roll along said one line.

64. Apparatus as in Claim 58 in which said tickets are lottery tickets printed on relatively stiff stock and stored in fan-fold form.

65. A dispenser for dispensing tickets from a strip of tickets printed in a strip with the individual tickets being delineated from one another by lines of weakness, moving means for moving said strip by a pre-determined distance to a position in which one of said lines is near a separation location at which adjacent tickets are separated from one another, said moving means comprising drive means for moving said strip by a pre-determined distance, and position detecting means for detecting the distance actually moved by said strip and producing an output signal to control said drive means.

~~27~~ 66. A dispenser as in Claim ~~65~~ 28 in which said detecting means includes a rotary code member drivably coupled to said strip, and means for detecting the incremental movements of said wheel and converting them into electrical signals.

gn/3390.amd                    27

PATENT
3390-2010

*Sub*
*B4*

67. A dispenser as in Claim 66 including an idler roller driven by the motion of said strip and drivably coupled to a shaft, said code wheel being mounted on said shaft.

68. A dispenser as in Claim 28 including a front edge detector to detect the front edge of a ticket to be separated, memory means for storing information corresponding to the distance said strip is to be driven after its front edge is detected and before separation, and means for comparing the stored information with the output of said position detecting means, and for actuating separating means when a pre-determined comparison condition is reached.

*Sub*
*B5*

69. A dispenser as in Claim 68 including separator means at said separation location, means for causing said dispenser to issue a plurality of tickets, the number of which corresponds to an order for a batch of tickets and means for operating said separator means to separate each of said tickets from the others in said batch.

70. A dispenser as in Claim 65 including separator means for pushing on said strip with a separator member in the vicinity of said one line while gripping said strip on opposite sides of said one line to tear said tickets apart along said one line.

71. A dispenser as in Claim 31 including input means for storing corresponding information in said memory means for tickets of a different size from the first-named tickets.

gn/3390.amd                    28

PATENT
3390-2010

72. A dispenser as in Claim 65 in which said tickets are lottery tickets printed on relatively stiff stock, and including housing means for storing said tickets in fan-fold form, said dispensing apparatus being mounted in said housing.

## REMARKS

New formal drawings are being submitted herewith, and the Examiner's approval is requested.

The corrections in the specification and claims requested by the Examiner have been attended to. In addition, changes have been made in the specification for the purpose of clarification and correction of minor errors.

The features to which claims 30-45 and 50-70 are directed will be discussed first. These claims are directed to a ticket dispensing means and method, and particularly to the dispensing of lottery tickets which are printed in elongated strips in which individual tickets are delineated from one another by lines of weakness.

The dispensing of such tickets presents special and difficult problems. Enclosed are samples of nine (9) different instant lottery tickets of the type which the invention presently is being used to dispense successfully.[1] Although these tickets

---

[1] The enclosed tickets include two each of "Jackpot Bowling" of Rhode Island; "Winner Take All" and "Aces High" from Massachusetts; "Double Play" from Ohio; "Four Chances" from New Hampshire; "Fireworks", "The Instant Game" and "Mountain Madness" from Vermont; and one sample of "Cadeau Surprise" from Quebec.

gn/3390.amd                           29

PATENT
3390-2010

were issued relatively recently, it is believed that they accurately represent the tickets which were being sold at the filing date of this patent application.

As it can be seen, the tickets are printed on card stock, and have one relatively hard, slick surface. Furthermore, the ticket strips are relatively wide (e.g. 4 inches) so that the perforated line delineating one ticket from the next one is relatively long. Furthermore, the ticket strips usually are supplied by the State Lottery Commissions in fan-fold form.

Such tickets present certain difficulties. Because the cards are so stiff and the perforated lines are so long, the tickets are relatively difficult to tear apart. Also, they are relatively difficult to feed through a dispensing mechanism because of the slick surfaces and stiffness of the card stock.

In view of the foregoing considerations, it is little wonder that the typical prior art dispensing mechanism stored pre-cut tickets rather than dispensing them from perforated strips.

In fact, in most cases in the past, the tickets are pulled out of a container by hand and the number of tickets is counted out and torn off by an attendant. This, of course, is very slow, and is undesirable in that it requires an attendant.

Such mechanisms are not desirable to state authorities because they usually supply such lottery tickets in fan-fold strips. .

gn/3390.amd                    30

PATENT
3390-2010

The Hartmann reference 4,716,799 relied on by the
Examiner attempts to dispense individual tickets from a fan-fold
strip.  However, Hartmann's device is not believed to offer a
commercially viable approach to solving the problems met
successfully by the present invention.

One drawback of the Hartmann type device is that it
cuts the tickets from the strip.  This is decidedly inferior to
bursting of the tickets from one another.  One reason is that
errors in locating the cutting line result in the destruction of
tickets.  This is highly undesirable for any kind of ticket
dispenser, but is particularly undesirable in dispensing instant
lottery tickets.  Placing sliced-up lottery tickets in the hands
of consumers can cause a great deal of trouble, in addition to
destroying many valuable tickets.

Hartmann probably was influenced to cut the tickets,
rather than bursting or tearing them apart, because of the above-
mentioned difficulties - the long tear line, the stiff stock, and
the handling problems mentioned above.  Thus, Hartmann shows that
the routine thinking in the prior art would produce a machine
which <u>cuts</u> the tickets instead of bursting them.  Applicants have
departed from the ordinary and routine, and have created an
unobvious dispensing device and method in which the tickets are
torn or burst apart rather than being cut.

Claim 30 and its dependent claims, and claims 52-64 and
70 are directed to this feature of the invention.

gn/3390.amd                    31

PATENT
3390-2010

The Examiner's rejection of claim 30 is respectfully traversed. It also is submitted that the other claims directed to this feature are patentable over Hartmann.

Given the problems mentioned above, it would not have been obvious to one skilled in the art to provide a ticket dispensing means and method which facilitates accurate tearing or bursting of the tickets rather than cutting them apart.

Those of ordinary skill in the art would recognize, as did Hartmann, that the ticket stock material is tough and the perforations are long, so that the bursting or tearing of the tickets apart would present substantial problems which could be solved easily by cutting the tickets apart.

In fact, Hartmann himself teaches away from the invention. In Column 1, lines 10-17, Hartmann discloses prior art which tears cards in a perforated strip apart from one another, and then goes on to teach that this is not the way to do it; instead, Hartmann suggests using a rotary cutter.

The Examiner also has cited Roetter 4,261,497, in combination with Hartmann, in rejecting the claims here under discussion.

Roetter does not disclose or suggest the invention, and, like Hartmann, actually teaches away from the invention. Roetter shows a mechanism for bursting printed business forms apart. He does not disclose a ticket bursting machine. The computer paper hahdled by the Roetter device is relatively thin

gn/3390.amd                  32

PATENT
3390-2010

and can be torn apart relatively easily.  Therefore, Roetter

merely suggests stopping one set of rollers while the other set

of rollers continues to turn, thus pulling the sheets apart,

while being stretched over a roller with spheres on it.

Contrary to the Examiner's assertion that Roetter

suggests the use of his invention in bursting tickets apart,

Roetter actually teaches away from such a concept.  In Column 1,

lines 34-44, he denigrates a prior mechanism used in ticket

dispensing.  This hardly is a suggestion that Roetter's invention

would be usable in dispensing tickets.

Finally, there is no suggestion in either Hartmann or

Roetter that their inventions should be combined.

Applicants have created a particularly desirable and

advantageous ticket separation method and apparatus as set forth

in new claims 52 and 58.  In this feature of the invention, the

weakened line between two adjacent tickets is moved to a position

near a separation station, and the strip is held and bent along

the line in order to facilitate the accurate tearing of the strip

along the line.  Preferably, a separator member is provided.

Relative motion between the separator member and the strip is

created so as to create transverse deflection and bending of the

strip and tear the tickets apart along the line.  This feature of

the invention is illustrated schematically in Figures 8A and 8B

of the drawings.  The separator member takes the specific form of

a wheel 68 (see Figures 5 and 7) which presses downwardly on the

gn/3390.amd                    33

PATENT
3390-2010

ticket strip as shown in Figures 8A and 8B to deflect it downwardly to bend the strip along the perforated line and burst the tickets apart.

By bending the strip along the desired tear line, the probability that the stock will tear along the right line is greatly enhanced and made easier. Another excellent advantage of this feature of the invention also is illustrated in Figures 8A and 8B. If the perforation line 56 is not correctly aligned with the bursting wheel at point 70, as the bursting wheel presses downwardly on the ticket stock, it naturally forces the tickets to adjust themselves longitudinally so that the perforation line 56 is correctly aligned with the burster wheel. This automatic mechanical correction means is a clever and unobvious feature of the invention. The invention thus uses one means or mechanism to perform two different functions; bursting the tickets apart, and re-aligning them.

Furthermore, this feature of the invention makes the bursting mechanism much less sensitive to accurate location of the perforation line at the bursting station. All that is necessary is that the perforation line be reasonably close to its desired location, and the automatic correction feature of the invention does the rest. This feature of the invention is emphasized particularly in claims 31, 54 and 60.

. Claims 55, 56, 61 and 62 emphasize the further advantageous feature in that the tearing starts at one point in

PATENT
3390-2010

the strip, and then traverses across the strip.  This provides an
initial breakthrough, which then progresses across the strip.
This makes the separation of the tough card stock considerably
easier than if it were attempted to tear through the entire line
all at once.

Neither Hartmann nor Roetter, nor any other reference
of record shows or suggests these additional advantageous
features of the invention.

Another serious drawback of the Hartmann approach to
dispensing tickets from a perforated strip is the means for
moving the strip accurately to the proper location for cutting.
Hartmann depends upon detecting the passage of light through the
perforation holes in successive perforation lines in order to
initially calibrate his machine to move the tickets the right
distance before being cut.  This approach has serious inherent
flaws.

First, as the Examiner can tell by holding the enclosed
lottery ticket samples up to a strong light, the size of the
perforation holes varies so significantly that much less light
shines through some of the holes than through others.  Perhaps
more significantly, it does not appear that any light at all
shines through the holes in some of the tickets.  Hartmann
himself admits that light does not shine through the perforation
holes reliably, and admits that he must go through a complicated
calibration routine in an attempt to overcome this problem.

gn/3390.amd                    35

PATENT
3390-2010

However, even that does not solve the problem when there are no holes at all through which light will shine. Applicant's device does not depend upon light shining through holes in the tickets. Thus, the Hartmann device often is inoperative in dispensing tickets which applicants' device will dispense with ease.

Another problem is created due to the fact that, because of the unreliability of perforations as position indicating means, Hartmann has no reliable means for determining the instantaneous position of the ticket strip. As Hartmann says in Column 5, lines 24-28, "the device according to the present invention does not rely upon the detection of a perforation after calibration to issue a ticket, thus eliminating errors due to blocked perforations." This causes problems in controlling the movement of the strip.

Claim 65 (and the more limited allowed claims 34 and 35) are directed to the advantageous feature of the present invention which overcomes the latter problems of the Hartmann device. Specifically, applicants provide position-detecting means for detecting the distance actually moved by the strip while it is being moved to a bursting or tearing position, and using the signal produced by the detecting means to control the drive means for moving the strip to the desired position. Claim 66 specifies the detecting means as including a rotary code member drivably coupled to the strip, and means for detecting the incremental movements of the code member and converting them into

gn/3390.amd                    36

PATENT
3390-2010

electrical signals.  The code member preferably is the optical code wheel 86 (Figures 5 and 7) which accurately determines the actual position and movement of the ticket strip.

The Examiner might think that the Hartmann device detects the position of the strip by counting electrical pulses delivered to its ticket advance stepper motor 40 (see Figure 1). However, the use of the stepper motor is flawed in that, if there is slippage between the strip and the drive roller driven by the stepper motor, as is so very likely with such stiff and slick materials, then the stepper motor pulse count does not accurately represent the actual position of the ticket strip.  Therefore, Hartmann does not reliably detect the actual movement of the strip by his approach.

As is indicated in claim 67, for example, and as it is explained on page 28 of the specification and shown in Figure 7 of the drawings, the code wheel 86 is secured to a shaft to which rollers 60 are coupled.  The rollers 60 are idlers which move only as the result of movement of the ticket strip.  Thus, if the driven rollers 62 slip when attempting to drive the strip, unlike the Hartmann device, applicants' device does not register movement.

Applicants also have a highly superior and very simple method of determining the distance to move each ticket of a given length.  As it is set forth in claims 68 and 69, for example, a front edge detector is provided to detect the front edge of a

gn/3390.amd                    37

PATENT
3390-2010

ticket to be separated.  The information telling the mechanism
how far to move the ticket after that point is stored in memory,
and the ticket is moved until it has moved by that distance.
This is a far simpler system than the Hartmann system, which
requires a complex calibration routine, etc.

Claims 71 and 36-39 are directed to the extremely
simple feature of the invention in which the differing lengths of
different tickets is accommodated by simply imputting different
information into the memory means to indicate how far each ticket
is to be moved.  This is in direct contrast to Hartmann who
requires a complicated calibration routine each time a new size
of ticket is to be dispensed from the machine.

In applicants' invention, the information can be simply
input by operating the keypad on the front of the machine, or by
inputting it from a central computer.  Hartmann does not suggest
this simplicity.

Another highly advantageous feature of the invention,
emphasized in claims 50, 51 and 69, for example, is one in which
each ticket in a batch of tickets ordered by a particular
customer is individually separated from the other tickets in the
batch so that the tickets are dispensed one at a time.
At first, this might appear to be disadvantageous.  However, it
has unobvious and unpredictable advantages that make it
unobvious.

gn/3390.amd                 38

PATENT
3390-2010

This feature produces at least three different advantages. One is that the front edge detector recited in claims 68 and 69 can be used to great advantage in determining a reference point for determining how far to move each ticket. This greatly simplifes the mechanism and circuitry of the device.

A second advantage is that this feature takes advantage of the automatic position adjustment capabilities of the burster mechanism of the invention. Thus, a correction operation automatically is engaged in for each ticket which is dispensed. This prevents individual small errors in ticket location from accumulating over a long period of time and become major errors.

A third advantage, which is emphasized by claims 50 and 51, is where the housing which dispenses the tickets has an outlet opening (e.g. opening 34 shown in Figure 4 of the drawings) which is accessible to the purchaser of the tickets. If the machine were to issue a strip of say 10 tickets or so without separating each individual ticket from its neighbors, during the dispensing of the tickets the purchaser could grab the end of the uncut strip of tickets and pull many more tickets than he paid for out of the machine. Thus, the dispensing of one ticket at a time helps prevent theft or vandalism.

It does not appear that Hartmann dispenses tickets directly to the purchaser. Therefore, he has nothing to even remotely suggest this feature of the invention.

gn/3390.amd                    39

PATENT
3390-2010

The rejection of claim 20 as being anticipated by Koza or obvious over Hartmann is respectfully traversed.  Claim 20 is directed to the feature of the invention in which a control panel is mounted on the front surface of the ticket dispenser and a dispensing outlet is located on the rear surface.  This arrangement is not shown or suggested either by Koza or Hartmann. In Koza, any lottery ticket which might be dispensed from the video game terminal is dispensed from a small closed box 42 in the front of the video game terminal (see Figure 2 and column 3 lines 56-61).  In the Hartmann device (see Figure 1), the ticket outlet 18 is on the front of the device, just above the control panel 20.

The arrangement of claim 20 is advantageous in that, in the typical retail store such as a candy or cigar store, the dispensing unit can rest on the counter, with the ticket agent or seller on one side of the counter, and the customer on the other. The ticket can be issued directly to the customer so that he can take it quickly and make room for the next person in line.  This can be very advantageous when there are long lines of people waiting to buy tickets.  It eases the ticket agent's job and makes for faster ticket vending, thus increasing both the ticket seller's commissions and the state's revenues.

Claims 21, 24, 25 and 27-29 depend from and are allowable with claim 20.  Claim 21 calls specifically for means to generate a ticket number specification signal to order the

gn/3390.amd                    40

PATENT
3390-2010

dispensing of multiple tickets.  This emphasizes the ease with
which multiple tickets can be issued by the ticket agent without
his having to handle the tickets.

Claim 24 is directed to the feature discussed above in
which each of a batch of tickets is separated from the other
tickets, thus providing the security feature described above.

Claims 27-29 are directed to the advantageous message
display means mounted at the back surface adjacent the dispensing
outlet of applicants' machine.  This display is shown at 46 in
Figure 4, for example.  Moreover, there is a second display on
the front of the machine 32 for informing the agent of
information that he needs.  This second display is recited in
claim 29.  Claim 28 is directed to central data processing means
for selectively transmitting messages to the unit.

The foregoing specific combinations of features are not
shown in or suggested by either Koza or Hartmann, or any
combination of those references.

Claims 27-29 have been rejected as obvious over Troy in
view of Hartmann.  The Examiner relies on Troy primarily for his
display 128 (Figs. 8 and 9).  However, such a display is not
provided specifically on the rear surface of a dispensing unit
with tickets being dispensed from the same rear surface.
Similarly, the features of claims 28 and 29, which also are
dependent from claim 20, are not suggested by Troy.

gn/3390.amd                    41

PATENT
3390-2010

Claims 40, 46 and 48 are directed to the feature of the invention in which the opening of an access door to the dispensing unit is detected and counted. By this means, the agent can determine whether an employee or other person who has no valid reason for entering the cabinet has done so. Since the number of accesses is recorded and printed out for the agent, he can determine whether security may have been breached.

None of the references suggests the novel concept of these claims in which the number of accesses is counted. Alarms are sounded and other indicia are activated to indicate when an access door is opened, but an accounting system for openings is a different and novel concept not suggested by these references. Thus, the Examiner's comment on page 4 of the official action regarding the disclosure of Koza as applied to claims 46-48, does not anticipate the invention as set forth in these claims.

Claims 42-45 and 49 are directed to the feature of the invention in which an imprinter is provided in the dispensing unit to imprint on the ticket itself the identification of the agent or station issuing the ticket. This concept is not shown or suggested by any of the references. The Examiner's contention on page 6 of the official action that vendor identification is printed on Troy's checks is not believed to be supported by the reference to the specification. Moreover, even if some identification of the vendor did appear on the checks, this is not at all the same as imprinting the vendor's identification on

gn/3390.amd                     42

PATENT
3390-2010

each of the lottery tickets.    The checks are used to provide payoffs to winners, whereas lottery tickets still must be redeemed at some later point in time.  By imprinting the vendor's identification on each ticket, the buyer has a convenient reference for determining where to go to claim credit for the winning ticket.

Claims 34 and 35 have been indicated to be allowable if rewritten as suggested by the Examiner.  They have been so rewritten and are believed to be allowable.

The prior art which was cited but not specifically relied on is not believed to be any more pertinent than that relied on.

Accordingly, it is respectfully requested that the claims be allowed and that the application be passed to issue.

Respectfully submitted,

CURTIS, MORRIS & SAFFORD, P.C.
Attorneys for Applicants

By: _____
Gregor N. Neff
Reg. No. 20/596
(212) 840-3333

gn/3390.amd

43

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on December 20, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE  19801

I further certify that on December 20, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600
kkeller@ycst.com

*Attorneys for GTECH Corporation*