IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

        Plaintiff,

        v.

SCIENTIFIC GAMES INTERNATIONAL,
INC., SCIENTIFIC GAMES HOLDINGS
CORPORATION, SCIENTIFIC GAMES
FINANCE CORPORATION, and
SCIENTIFIC GAMES CORPORATION,

        Defendants.

C.A. No. 04-138-JJF

**REDACTED VERSION**


## SCIENTIFIC GAMES' REPLY BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT


MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  Attorneys for Defendants


Original Filing Date:  December 16, 2005

Redacted Filing Date:  December 23, 2005

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                              ii

INTRODUCTION                                                                    1

ARGUMENT                                                                        1

    I.      SUMMARY JUDGMENT OF NON-INFRINGEMENT IS REQUIRED IF NO REASONABLE JURY COULD FIND TWO ELEMENTS TO BE EQUIVALENT.                                   1

    II.    SCIENTIFIC GAMES' PLAYCENTRAL KIOSK DOES NOT INFRINGE CLAIMS 20 AND 21 OF THE '337 PATENT.            2

        A.    The Structure In The PlayCentral For Separating Tickets Is Not Equivalent To The Structure Disclosed In The Patent.        2

        B.    There Is No Structure In The PlayCentral That Is Equivalent To The "Kick-Out" Rollers Disclosed In The Patent For Discharging Tickets.        8

        C.    The PlayCentral Has No Structures Equivalent To The Structure Disclosed In The Patent For The "Housing Means."        9

    III.    SCIENTIFIC GAMES' PLAYCENTRAL KIOSK DOES NOT INFRINGE CLAIM 18 OF THE '624 PATENT.                    10

        A.    GTECH Is Estopped From Arguing That The PlayCentral Displays "A Plurality Of Arrays Of Ticket Images" Under The Doctrine Of Equivalents.        11

        B.    There Is No Structure In The PlayCentral That Is Equivalent To The Structure Disclosed In The Patent For Dispensing Tickets.        16

    IV.    GTECH DID NOT PRODUCE ANY EVIDENCE DURING DISCOVERY TO DEMONSTRATE MARKING.                       17

CONCLUSION                                                                      20

ii.

TABLE OF CITATIONS

Page(s)

<u>Cases</u>

*A & E Prods. Group, L.P. v. Mainetti USA Inc.*,
  2004 WL 345841 (S.D.N.Y. 2004) ........................................ 2

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
  423 F.3d 1296 (Fed. Cir. 2005) ........................................ 15

*Bose Corp. v. JBL, Inc.*,
  274 F.3d 1354 (Fed. Cir. 2001) ........................................ 14

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*,
  145 F.3d 1303 (Fed. Cir. 1998) ........................................ 6, 7

*Dunlap v. Schofield*,
  152 U.S. 244 (1894) ........................................ 17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  344 F.3d 1359 (Fed. Cir. 2003) ........................................ 15

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
  389 F.3d 1370 (Fed. Cir. 2004) ........................................ 2

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*,
  370 F.3d 1131 (Fed. Cir. 2004) (*en banc*) ........................................ 12, 13

*Ierardi v. Lorillard, Inc.*,
  1991 WL 158911 (E.D. Pa. 1991) ........................................ 3

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ........................................ 6

*Maxwell v. J. Baker, Inc.*,
  86 F.3d 1098 (Fed. Cir. 1996) ........................................ 17

*Motorola, Inc. v. United States*,
  729 F.2d 765 (Fed. Cir. 1984) ........................................ 17

*Nomos Corp. v. BrainLab, Inc.*,
  239 F. Supp. 2d 430 (D. Del. 2003),
  *aff'd*, 357 F.3d 1364 (Fed. Cir. 2004) ........................................ 2, 3, 6, 7

*Norian Corp. v. Stryker Corp.*, __ F.3d __,
  2005 WL 3288171 (Fed. Cir. 2005) ........................................ 14

<u>TABLE OF CONTENTS (cont'd)</u>

*Praxair Inc. v. ATMI, Inc.*,
    __ F.R.D. __, 2005 WL 2994539 (D. Del. Nov. 8, 2005)      19

*Ranbaxy Pharmaceuticals, Inc. v. Apotex, Inc.*,
    350 F.3d 1235 (Fed. Cir. 2003)      14

*Rhodia Chimie v. PPG Indus. Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005)      16

*Sanitary Refrigerator Co. v. Winters*,
    280 U.S. 30 (1929)      4

*Toro Co. v. Deere & Co.*,
    355 F.3d 1313 (Fed. Cir. 2004)      5

*Tracinda Corp. v. DaimlerChrysler AG*,
    2005 WL 927187 (D. Del. April 20, 2005)      19

*Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*,
    157 F.3d 1311 (Fed. Cir. 1998)      8

*Vulcan Eng'g Co. v. Fata Aluminum, Inc.*,
    278 F.3d 1366 (Fed. Cir. 2002)      4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)      1, 10

<u>Statutes and Other Authorities</u>

35 U.S.C. § 112, ¶ 6      1, 3, 7, 8

35 U.S.C. § 287(a)      17

INTRODUCTION

GTECH argues that "the issue of infringement, a question of fact, should be left to the jury to decide" (GTECH Ans. Br. at 1). No reasonable jury, however, could find that the accused PlayCentral machine has structures equivalent to the structures disclosed in the '337 patent. Interlott's Rule 30(b)(6) witness in the *Pollard* litigation testified that the PlayCentral does not infringe the '337 patent, and one of the inventors told the Patent Office that a customer-activated machine like the PlayCentral is "significantly differ[ent]" from the machine disclosed in the '337 patent. Moreover, GTECH has admitted it cannot establish literal infringement of the '624 patent under Scientific Games' claim construction, and GTECH is estopped from arguing infringement under the doctrine of equivalents.

ARGUMENT

I.    SUMMARY JUDGMENT OF NON-INFRINGEMENT IS REQUIRED IF NO REASONABLE JURY COULD FIND TWO ELEMENTS TO BE EQUIVALENT.

"Where the evidence is such that no reasonable jury could determine two elements to be equivalents, district courts are obliged to grant partial or complete summary judgment." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997). "[I]f prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve." *Id.*

"Although the issue of whether an accused device includes a structural equivalent under § 112, ¶ 6 is a question of fact, . . . the district court may find the absence of an equivalent where no reasonable jury could have found that the accused device has an equivalent to the disclosed structure." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389

2.

F.3d 1370, 1378 (Fed. Cir. 2004); *see also Nomos Corp. v. BrainLAB, Inc.*, 239 F. Supp. 2d 430, 438 (D. Del. 2003) ("[N]o reasonable jury could conclude that the accused structure is the same or an equivalent of the claimed structure."), *aff'd*, 357 F.3d 1364 (Fed. Cir. 2004).

## II.    SCIENTIFIC GAMES' PLAYCENTRAL KIOSK DOES NOT INFRINGE CLAIMS 20 AND 21 OF THE '337 PATENT.

GTECH argues that the issue of infringement of the '337 patent "should be left for the jury because genuine issues of material fact exist" (GTECH Ans. Br. at 19). No reasonable jury, however, could find that the PlayCentral structure is identical or equivalent to the structures disclosed in the '337 patent.

### A.    The Structure In The PlayCentral For Separating Tickets Is Not Equivalent To The Structure Disclosed In The Patent.

REDACTED

.

Mr. Wagoner's testimony is binding on GTECH, and establishes that the separating mechanism of the PlayCentral does not infringe the '337 patent. *See A & E Prods. Group, L.P. v. Mainetti USA Inc.*, 2004 WL 345841, at *6 (S.D.N.Y. 2004) ("Testimony of a Rule 30(b)(6) witness . . . is binding on the party that designated the witness."); *Ierardi v.*

*Lorillard, Inc.*, 1991 WL 158911, at *3 (E.D. Pa. 1991) ("Under Rule 30(b)(6), defendant has an

obligation to prepare its designee to be able to give binding answers on [its] behalf . . . .").


### REDACTED


        The '337 patent does not cover every possible means for bursting lottery tickets.

*See Nomos Corp. v. BrainLAB, Inc.*, 195 F. Supp. 2d 606, 611 (D. Del. 2002) ("[A] means clause

does not encompass every means for performing the specified function."), *aff'd*, 357 F.3d 1364

(Fed. Cir. 2004).

        The "means for separating" covers only "the corresponding structure . . .

described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. The only structure

described in the '337 patent for separating tickets is the combination of: (a) a burster wheel 68

with a dull, rounded edge that is moveably mounted; (b) two sets of rollers 60, 62, 64, 66 -- one

set on each side of the perforation to be separated -- which hold the strip of tickets in tension as

the burster wheel is brought into contact with the tickets; and (c) a bursting blade drive means

that includes a burster block 98, a burster motor 100, cable spool arrangement 102, and

tensioning spring 104 (*see* D.I. 115 at 15-21; D.I. 116 at 10-14).

        The structure in the PlayCentral for separating tickets is totally different from the

structure disclosed in the '337 patent. The PlayCentral machine does not use a movably

mounted, dull-edge burster wheel. The PlayCentral uses a flat, pointed, stationary blade. The

PlayCentral does not use two sets of rollers to hold the tickets on either side of the perforation to

be separated as the bursting blade is brought into contact with the tickets. And the PlayCentral

does not have a "bursting blade drive means for bringing the bursting blade into bursting contact with the stream of tickets at the bursting position." In the PlayCentral, the tickets are folded at the perforation, which is then brought into contact with the stationary blade.

REDACTED                    This is not a case where parts are moved to different locations within the same mechanism. *See Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1374 (Fed. Cir. 2002) ("[I]t does not matter, from a mechanical or engineering standpoint, whether the posts and receptacles are located on the gondola or the flask . . . ."); *see also Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929) ("A close copy which . . . although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement.").

The PlayCentral uses *different* parts to separate lottery tickets in a *different* way from what is disclosed in the '337 patent. There is no dull, rounded-edge burster wheel found anywhere in the PlayCentral. There are not two sets of pinch rollers found anywhere in the PlayCentral. There is no "bursting blade drive means" found anywhere in the PlayCentral.

Moreover, the structure in the PlayCentral for separating tickets is not identical or equivalent to the structure disclosed in the '337 patent.

REDACTED

5.

REDACTED

*See Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1324 (Fed. Cir. 2004) ("To the extent the district court gave the cam greater weight in considering . . . [the] structure as a whole, this was appropriate given the cam's central role.").[2]

The substantial difference between the two mechanisms is also demonstrated by the fact that the blade in the PlayCentral would not work in the mechanism of the '337 patent.

REDACTED                                    Conversely, the burster wheel of the '337 patent would not work in the mechanism of the PlayCentral.

REDACTED                                    There are also no structures in the PlayCentral that cause the bursting blade to move.

REDACTED

---

[1]    GTECH ignores Mr. Burr's testimony its Answering Brief, even though Scientific Games cited it in its Opening Brief (D.I. 130 at 21-22).

[2]

REDACTED

REDACTED                    GTECH is wrong.  It is critically important to

understand how the parts work in each mechanism, and to understand which parts are moving

and why.

In *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303,

1308-09 (Fed. Cir. 1998), the court determined that the relevant structure disclosed in the

specification was a "skid plate," which the court described as "a generally flat hard plate that

straddles the leading edge of the cutting blade."  The patentee argued that the "wheels of the

accused device are equivalent because 'in use, the [accused] wheels compress to form flattened

planes on each side of the saw blade, coinciding with the structure of a skid plate.'"  *Id.* at 1309.

The court rejected that argument, holding that the rotatably mounted wheels of the accused

device were not equivalent to the fixed skid plate disclosed in the patent.  *Id.* at 1309 ("Since the

wheels and the skid plate are substantially different from each other, they cannot be equivalent,

and no reasonable jury could so find.").

In *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1332 (Fed.

Cir. 2005), the court determined that the relevant structure was L-shaped plates.  The court held

that the "donut-shaped plates" of the accused device (which prevented "rotational" movement)

were not equivalent to the L-shaped plates described in the patent (which prevented "linear, up

and down" movement).  *Id.* at 1334-35.

In *Nomos Corp. v. BrainLAB, Inc.*, 239 F. Supp. 2d 430, 436 (D. Del. 2003),

*aff'd*, 357 F.3d 1364 (Fed. Cir. 2004), the relevant structure was "a fixed ultrasound probe and a

bracket or fixation device that maintains the ultrasound probe perpendicular to the treatment

table and constrains it to rotate or move along the axis of the table . . . ."  The defendant argued

that it did not infringe, because the accused system used a handheld ultrasound probe that could be moved by a surgeon to scan a patient's body at different angles. *Id.* at 433. The Court granted summary judgment of non-infringement -- holding that a movable handheld ultrasound probe was not equivalent to a fixed mounted ultrasound probe. *Id.* at 436 ("[N]o reasonable jury could conclude that the accused structure is the same or an equivalent under Section 112, Paragraph 6 of the claimed structure. . . ."). The Federal Circuit affirmed, holding that the accused handheld probe was not equivalent to the fixed mounted probe disclosed in the patent. *See Nomos Corp. v. BrainLAB USA, Inc.*, 357 F.3d 1364, 1369 (Fed. Cir. 2004).

There is no genuine issue of material fact that the separating mechanism of the PlayCentral (which moves a strip of tickets into a flat, pointed, stationary blade) is substantially different from the separating mechanism disclosed in the '337 patent (which uses pinch rollers to hold a strip of tickets in tension and moves a dull-edged burster wheel across the tickets), and does not literally infringe claim 20 of the '337 patent.

Because the separating mechanism of the PlayCentral is not equivalent under § 112, ¶ 6 to the structure disclosed in the '337 patent, the PlayCentral also cannot infringe under the doctrine of equivalents. *See Chiuminatta*, 145 F.3d at 1311 ("An element of a device cannot be 'not equivalent' and equivalent to the same structure."). Moreover, GTECH cannot argue that the use of a fixed blade was after-developed technology. The inventors testified that they considered -- and rejected -- the idea of using a fixed blade. *See id.*

GTECH claims that Scientific Games has

REDACTED

That is what GTECH's counsel attempted to suggest to Mr. Fulton in its questioning

of him, but

REDACTED

B.    There Is No Structure In The PlayCentral That Is Equivalent To The "Kick-Out" Rollers Disclosed In The Patent For Discharging Tickets.

REDACTED

The '337 patent states that the "kick-out" rollers discharge the separated ticket from the machine: "Exit rollers **64, 66** operate as 'kick-out' rollers to discharge the separated leading ticket **52** from dispensing path **57** into dispensing outlet **34**" (D.I. 130, Ex. A, col. 10, ll. 45-48).

There is no structure in the PlayCentral that discharges the separated ticket from the machine. The separated ticket simply drops by gravity into a receptacle, and gravity is not a structure.              REDACTED

And gravity is not equivalent structure under § 112, ¶ 6. *See Unidynamics Corp. v. Automatic Prods. Int'l Ltd.*, 157 F.3d 1311, 1322 (Fed. Cir. 1998) ("Gravity performs the action of closing the door in both LCM4 versions. Therefore, neither version of the LCM4 machine literally infringes any claim of the '750 patent.").

9.

There is no genuine issue of material fact that there is no structure in the PlayCentral that is identical or equivalent to the "kick out" rollers disclosed in the '337 patent for discharging tickets.

       C.       The PlayCentral Has No Structures Equivalent To The Structure Disclosed In The Patent For The "Housing Means."

REDACTED

That is not what Mr. Burr told the Patent Office in prosecuting the '624 patent. Mr. Burr told the Patent Office that a clerk-activated terminal (as described in the '337 patent) is "significantly differ[ent]" from a customer-activated terminal (like the PlayCentral) (D.I. 130, Ex. C at GTECH 000175-76; emphasis added):

> Each of the above three references shows an instant winner lottery ticket dispenser which is intended to be attended by an agent. . . . The devices . . . are not suitable for use as unattended ticket vending devices. *They significantly differ from the present invention . . . .*[3]

Indeed, the '337 patent itself stresses the importance of not having one person handle both the tickets and the money. *See* D.I. 130, Ex. A, col. 7, ll. 16-25 ("This structure eliminates the need for the sales agent to physically receive the lottery tickets from unit **14** and to personally hand the lottery tickets to the customer, as is done in conventional lottery ticket dispensers."); *see also id.,* col. 8, ll. 5-9 ("[T]he sales agent may concentrate on receiving money

---

[3]     Again, GTECH ignores Mr. Burr's statements to the Patent Office, even though Scientific Games cited them in its Opening Brief (D.I. 130 at 32).

and giving change, a task which is both easier to perform and more likely to be accurate when the agent is not handling tickets.").

REDACTED

There is no genuine issue of material fact that the PlayCentral does not have structures equivalent to the structure disclosed in the '337 patent for the "housing means." The PlayCentral does not have a front surface that faces a sales agent, or a back surface that faces a customer.

III.    SCIENTIFIC GAMES' PLAYCENTRAL KIOSK DOES NOT
        INFRINGE CLAIM 18 OF THE '624 PATENT.

GTECH argues that the infringement of the '624 patent "should be left for the jury because genuine issues of material fact exist" (GTECH Ans. Br. at 29).    GTECH is estopped, however, from arguing that the PlayCentral displays "a plurality of arrays of ticket images" under the doctrine of equivalents.    *See Warner-Jenkinson*, 520 U.S. at 39 n.8 ("[I]f prosecution history estoppel would apply . . . , partial or complete judgment should be rendered by the court, as there would be no further *material* issue for the jury to resolve.").

---

4

REDACTED

A.     GTECH Is Estopped From Arguing That The PlayCentral
       Displays "A Plurality Of Arrays Of Ticket Images" Under
       The Doctrine Of Equivalents.

REDACTED

GTECH is precluded, however, from relying on the doctrine of equivalents to

establish that the PlayCentral displays "a plurality of arrays of ticket images," as a result of

prosecution history estoppel.  In the original application, claim 38 depended from claim 23

(D.I. 130, Ex. C at GTECH 000128, GTECH 000131):

> 23.     A lottery ticket vending machine comprising, in
> combination, a housing, display means for displaying an array of
> lottery ticket representations viewable from outside of said housing
> by a customer, said array representing tickets in said machine

available for purchase, acceptor means for receiving and accepting a means of monetary exchange, and means for dispensing said tickets in a number corresponding to the amount of money input into said machine by said customer.

*   *   *

38.    A machine as in claim 23 in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen.

The patent examiner rejected claims 23 and 38, but indicated that claim 38 would be allowable if rewritten in independent form: "[Claim 38 is] . . . objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form . . ." (*id.* at GTECH 000155). Claim 38 was subsequently rewritten in independent form (*id.* at GTECH 000177), and claim 23 was cancelled as a result of rejections over the prior art (*id.*, Ex. D at GTECH 000020).

The Federal Circuit has held that "the rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims creates a presumption of prosecution history estoppel." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1134 (Fed. Cir. 2004) (*en banc*). There, as here, the patent examiner rejected independent claims over the prior art, but stated that some of the dependent claims would be allowable if rewritten in independent form. *See id.* at 1137. The patentee rewrote the dependent claims in independent form, and cancelled the independent claims. *See id.* at 1144.

The Federal Circuit held that the patentee presumptively surrendered equivalents with respect to the limitations that were not present in the cancelled independent claims but which were present in the rewritten claims:

A presumption of surrender . . . arises if rewriting the dependent claims into independent form, along with canceling the original independent claims, constitutes a narrowing amendment. . . . Thus, the fact that the scope of the rewritten claim has remained unchanged will not preclude the application of prosecution history estoppel if, by canceling the original

independent claim and rewriting the dependent claims into independent form, the scope of the subject matter claimed in the independent claim has been narrowed to secure the patent.

*Id.* at 1141, 1142.

Here, the cancellation of application claim 23 and the rewriting of application claim 38 into independent form narrowed the scope of the subject matter claimed in the independent claim to secure the patent. Application claim 23 covered "display means for displaying an array of lottery ticket representations viewable from outside of said housing by a customer," which covered both types of "display means" described in the '624 patent -- the "windows" display and the "video" display. Application claim 23 also covered both types of "lottery ticket representations" described in the patent -- actual lottery tickets and video images of actual lottery tickets. *See* D.I. 130, Ex. B, col. 11, ll. 31-33 ("[E]ither the ticket or a video image of a ticket should be considered to be a 'representation' of the ticket.").

Following the amendment, the scope of the independent claim was narrower. It was limited to a video display for displaying video images of actual lottery tickets ("in which said display means comprises video display means for displaying a plurality of arrays of ticket images on a video screen"). It no longer covered the "windows" display or the use of actual lottery tickets as "lottery ticket representations."[5]

GTECH does not even cite the *Honeywell* case in its Answering Brief. Moreover, the case on which GTECH relies most heavily -- *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354 (Fed.

---

[5]    GTECH argues that the amendment did not add a new limitation "because . . . under Scientific Games' claim construction . . . 'the terms "lottery ticket representations" and "ticket images" are used synonymously . . .'" (GTECH Ans. Br. at 34). Scientific Games does not argue that those terms were used synonymously in the original patent application, but only that they are synonymous in the issued claim.
    REDACTED

Cir. 2001) -- does not address prosecution history estoppel resulting from a dependent claim being rewritten in independent form, as the Federal Circuit has made clear:

> *Bose Corp.* is of no avail . . . . There, we addressed whether the addition of an inherent element to a claim was a narrowing amendment . . . and answered in the negative. *We did not squarely address the effect that rewriting a dependent claim into independent form may have on prosecution history estoppel.*

*Ranbaxy Pharmaceuticals, Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1240 (Fed. Cir. 2003) (emphasis added).

Finally, GTECH argues that there is no prosecution history estoppel because the purpose of the amendment was "tangential to the equivalent actually found in the PlayCentral" (GTECH Ans. Br. at 34). According to GTECH, "[t]he purpose of the amendment related only to the difference between a non-video system and a video system, not relating in any way to what was displayed on the video" (*id.* at 35). The Federal Circuit has made clear, however, that the scope of a surrender of subject matter during prosecution is not limited by what was absolutely necessary to avoid the prior art, but rather by what is ultimately claimed:

> [I]t frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to.

*Norian Corp. v. Stryker Corp.*, __ F.3d __, 2005 WL 3288171, at *5 (Fed. Cir. 2005); *see also Honeywell*, 370 F.3d at 1143-44 ("When the scope of the patent claim is narrowed to secure the patent, the court 'must regard the patentee as having conceded an inability to claim the broader subject matter.'").

Here, the prosecution history does not provide an explanation for why the scope of the "lottery ticket representations" was narrowed to cover only "ticket images" -- and GTECH

has not provided one in its Answering Brief.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003) ("[T]he inquiry into whether a patentee can rebut the . . . presumption under the 'tangential' criterion focuses on the patentee's objectively apparent reason for the narrowing amendment. . . .  [T]hat reason should be discernible from the prosecution history record, if the public notice function of a patent and its prosecution history is to have significance.").

Because the prosecution history does not provide a reason for the amendment -- and GTECH has not provided one -- GTECH has failed as a matter of law to show that the purpose of the amendment was tangential to the accused equivalent.  *See Festo*, 344 F.3d at 1371-72 ("Because the prosecution history reveals no reason for the . . . amendment . . . , and because Festo still identifies no such reason, Festo has not shown that the rationale for the . . . amendment was only tangential to the accused equivalent."); *see also Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1306 (Fed. Cir. 2005) ("[S]ince the prosecution history shows no reason for adding the upper limit to the concentration range, Biagro cannot claim that the rationale for the amendment is merely tangential.").

In any event, the purpose of the amendment was not tangential to the accused equivalent.  The patent examiner rejected the original independent claim because the prior art reference disclosed a "display means . . . for display of the types of articles available," and "[t]he specific articles being lottery tickets [is] considered an obvious matter of choice" (D.I. 130, Ex. C at GTECH 000152-53).  The patentee then amended the claim to address both points -- the type of display means (a "video display means") and what is displayed ("ticket images").  GTECH is seeking to rely on the doctrine of equivalents to capture what is displayed on the PlayCentral within the scope of claim 18 of the '624 patent.  *See Biagro*, 423 F.3d at 1306

("Because both the reason for the amendment and the asserted equivalent relate to the concentration of the fertilizer, we affirm the trial court's conclusion that Biagro has not shown that the rationale underlying the amendment was merely tangential to the accused equivalent."); *Rhodia Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005) ("[T]he relative dustiness of Rhodia's invention was at issue during prosecution and thus the reason for the narrowing amendment cannot be said to be tangential to an equivalent that has that characteristic.").

There is no genuine issue of material fact that Scientific Games' PlayCentral does not display "a plurality of arrays of ticket images," and that GTECH is estopped from relying on the doctrine of equivalents to establish infringement with respect to that claim limitation.

> B.   There Is No Structure In The PlayCentral That Is Equivalent To The Structure Disclosed In The Patent For Dispensing Tickets.

As with the "dispensing means" of claim 20 of the '337 patent, because the dispensing mechanism of the PlayCentral does not have outfeed rollers (or any equivalent structure), there is no genuine issue of material fact that the structure of the PlayCentral is not equivalent to the dispensing mechanism described in the '624 patent. Moreover, because the structure corresponding to the "means for dispensing" of claim 18 of the '624 patent should be construed to include the feeding and bursting mechanism (described in the '337 patent and incorporated into the '624 patent), there is no genuine issue of material fact that the PlayCentral is not substantially equivalent to the dispensing mechanism described in the '624 patent for the reasons discussed above as to why the PlayCentral does not have the "means for separating" of claim 20 of the '337 patent.

IV.    GTECH DID NOT PRODUCE ANY EVIDENCE DURING
       DISCOVERY TO DEMONSTRATE MARKING.

As the patentee, GTECH has the burden of pleading and proving compliance with

the marking requirement of 35 U.S.C. § 287(a).  *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098,

1111 (Fed. Cir. 1996) (citing *Motorola, Inc. v. United States*, 729 F.2d 765, 770 (Fed. Cir. 1984),

and *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) ("The duty of alleging, and the burden of

proving, either [actual notice or constructive notice] is upon the [patentee].")).  If a patentee fails

to mark its patented products, it may recover damages only for the period after the accused

infringer receives actual notice of infringement of the patents.

GTECH did not produce *any* evidence during discovery demonstrating that it (or

its predecessors) had ever marked any products with the numbers of the '337 patent or the '624

patent.  GTECH seeks to escape its failure of proof by arguing that it is "Scientific Games' own

fault" because "Scientific Games never asked . . ." (GTECH Ans. Br. at 38 n.7).  In fact,

Scientific Games did ask -- and GTECH failed to produce the evidence on which it now relies.

Scientific Games requested production of all documents on which GTECH

intended to rely to support its damages claim -- which necessarily included any documents

concerning marking of products sold in the United States (Ex. V at 32):

> Request No. 37:  All documents relating to GTECH's contention
> that it has been damaged by the alleged infringement of the
> Patents-in-Suit by Scientific Games.
>
> Request No. 38:  All documents relating to GTECH's calculation
> of damages caused . . . by the alleged infringement of the Patents-
> in-Suit by Scientific Games.

In response, GTECH said that it would "produce non-privileged documents responsive to this

request to the extent such documents exist" (*id.* at 32, 33).

Scientific Games also asked GTECH to disclose its damages contentions -- which again necessarily included any marking of products sold in the United States (Ex. W):

> State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, . . . and identify each person with knowledge of each such fact and each document relating to that fact.

In its initial response, GTECH said nothing about marking, stating that "this interrogatory is more appropriate for expert discovery . . ." (Ex. X at 15). In its first supplemental response, GTECH again said nothing about marking, stating only that "it is entitled to not less than a reasonable royalty including lost profits" (Ex. Y at 5). In its second supplemental response, GTECH again said nothing about marking (Ex. Z at 5).

Scientific Games also asked GTECH's 30(b)(6) designees -- George Voutes and Pat Costaregni -- whether GTECH had marked its vending machines with the numbers of the '337 patent and the '624 patent.

REDACTED

Now, six months after the close of fact discovery and months after Scientific Games asked numerous witnesses -- including GTECH's 30(b)(6) witnesses and its damages expert -- about the subject of marking, GTECH comes forward with evidence of marking in opposing Scientific Games' motion for summary judgment. GTECH should be precluded from relying on evidence that it failed to disclose during discovery.[6]

GTECH submits declarations from Richard Zimmer (D.I. 153) and Brian Roberts (D.I. 155). GTECH never disclosed that Mr. Zimmer was someone with knowledge of any issue in this case -- let alone, marking -- and never disclosed that Mr. Roberts had knowledge concerning marking. Moreover, the first time that the photographs of the various vending machines were disclosed was in response to Scientific Games' motion for summary judgment.[7]

Because GTECH failed to produce any evidence during discovery to establish marking, the Court should grant summary judgment that GTECH is precluded from recovering damages for the period prior to March 4, 2004.

---

[6]     *See, e.g., Praxair Inc. v. ATMI, Inc.*, __ F.R.D. __, 2005 WL 2994539 (D. Del. Nov. 8, 2005) ("As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party."); *Tracinda Corp. v. DaimlerChrysler AG*, 2005 WL 927187 (D. Del. April 20, 2005) (imposing sanctions for failure to comply with discovery and scheduling orders).

[7]     GTECH argues that it produced "documents evidencing patent marking to Scientific Games during discovery" (GTECH Ans. Br. at 38 n.7). Those documents do not demonstrate that GTECH marked its products with the numbers of the '337 patent or the '624 patent. REDACTED

20.

## CONCLUSION

For the foregoing reasons and those stated in Scientific Games' Opening Brief, the Court should grant summary judgment that:  (1) Scientific Games has not infringed claims 20 or 21 of the '337 patent; (2) Scientific Games has not infringed claim 18 of the '624 patent; and (3) GTECH is not entitled to recover damages for the period before March 4, 2004.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Rodger D. Smith II*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  Attorneys for Defendants

Original Filing Date:  December 16, 2005

Redacted Filing Date:  December 23, 2005

# EXHIBIT U

REDACTED

# EXHIBIT V

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GTECH CORPORATION,<br><br>                    Plaintiffs,<br><br>          v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC.,<br>SCIENTIFIC GAMES HOLDINGS<br>CORPORATION, SCIENTIFIC GAMES<br>FINANCE CORPORATION, and SCIENTIFIC<br>GAMES CORPORATION,<br><br>                    Defendants. | Civil Action No. 04-138-JJF |

## PLAINTIFF GTECH CORPORATION'S RESPONSE TO DEFENDANTS' FIRST
## SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS

Plaintiff, GTECH Corporation ("GTECH"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby submits the following responses and objections to Defendants' First Set of Requests for the Production of Documents and Things.

### GENERAL OBJECTIONS

1.      GTECH generally objects to Defendants' requests and "Definitions" to the extent that they attempt to impose obligations beyond those imposed by the Federal Rules of Civil Procedure and/or by the Local Rules of the United States District Court for the District of Delaware ("Local Rules").

REQUEST NO. 37:

        All documents relating to GTECH's contention that it has been damaged by the alleged infringement of the Patents-in-Suit by Scientific Games.

RESPONSE TO REQUEST NO. 37:

        GTECH objects to this request as overly broad and unduly burdensome in calling for "all documents." GTECH objects to the use of the phrase "relating to" as being vague and ambiguous. GTECH also objects to this request in that it seeks information that is neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. GTECH further objects to this request as seeking information that is subject to the attorney-client privilege and/or work product doctrine.

        Subject to and without waiver of these objections and its General Objections, GTECH will produce non-privileged documents responsive to this request to the extent such documents exist.

REQUEST NO. 38:

        All documents relating to GTECH's calculation of damages caused to GTECH's by the alleged infringement of the Patents-in-Suit by Scientific Games.

RESPONSE TO REQUEST NO. 38:

GTECH objects to this request as overly broad and unduly burdensome in calling for "all documents." GTECH objects to the use of the phrase "relating to" as being vague and ambiguous. GTECH also objects to this request in that it seeks information that is neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. GTECH further objects to this request as seeking information that is subject to the attorney-client privilege and/or work product doctrine.

Subject to and without waiver of these objections and its General Objections, GTECH will produce non-privileged documents responsive to this request to the extent such documents exist.


REQUEST NO. 39:

All documents relating to profits that GTECH allegedly lost as a result of the alleged infringement of the Patents-in-Suit by Scientific Games.


RESPONSE TO REQUEST NO. 39:

GTECH objects to this request as overly broad and unduly burdensome in calling for "all documents." GTECH objects to the use of the phrase "relating to" as being vague and ambiguous. GTECH also objects to this request in that it seeks information that is neither relevant to the claim or defense of any party or the subject matter involved in this action, nor reasonably calculated to lead to the discovery of admissible evidence. GTECH further objects to

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that copies of the foregoing document were caused to be served on August 16, 2004 upon the following counsel of record:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

Josy W. Ingersoll

63055.1001

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that copies of the foregoing document were caused to be served on August 16, 2004 upon the following counsel of record:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

Josy W. Ingersoll

# EXHIBIT W

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

                Plaintiff,

        v.

SCIENTIFIC GAMES INTERNATIONAL,
INC.; SCIENTIFIC GAMES HOLDINGS
CORPORATION; SCIENTIFIC GAMES
FINANCE CORPORATION; AND
SCIENTIFIC GAMES CORPORATION,

                Defendants.

Civil Action No. 04-138-JJF

### DEFENDANTS' FIRST SET OF INTERROGATORIES
### DIRECTED TO PLAINTIFF GTECH CORPORATION

        Pursuant to Fed. R. Civ. P. 33, defendants Scientific Games International, Inc.,
Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific
Games Corporation (collectively "Scientific Games") request that plaintiff GTECH Corporation
("GTECH") answer the following interrogatories under oath, within thirty (30) days of service.

### DEFINITIONS

        1.     The "Patents-in-Suit" means United States Patent Nos. 4,982,337 and
5,222,624.

        2.     "Related Patent" or "Related Application" means each patent or
application, whether United States or foreign and whether abandoned or issued, to which any
Patent-in-Suit claims priority, or that claims priority to any of the Patents-in-Suit, or that claims
priority to the same patents and applications to which any Patent-in-Suit claims priority,

supporting GTECH's contentions, and identify each person with knowledge of each such fact and each document relating to that fact.

INTERROGATORY NO. 10:

For each asserted claim of the Patents-in-Suit, identify the field of the invention, state the level of ordinary skill in the art, state each fact relating to your contention, and identify each person with knowledge of that fact and each document relating to that fact.

INTERROGATORY NO. 11:

State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, including but not limited to the methods and factors used in the calculation, and identify each person with knowledge of each such fact and each document relating to that fact.

INTERROGATORY NO. 12:

State each fact supporting your allegation that defendants' infringement of the Patents-in-Suit "has been and will be willful," and identify each person with knowledge relating to each such fact and each document relating to that fact.

INTERROGATORY NO. 13:

Describe in detail all communications that GTECH, or any representative of GTECH, has had with any third party, including but not limited to any state lottery agency, concerning this lawsuit, either or both of the Patents-in-Suit, or any allegation of infringement of any patent by any of the defendants, and identify each person with knowledge of any such communication and each document relating to any such communication.

- 5 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served this 9th day of July 2004 upon the following in the manner indicated:

### BY HAND

Josy W. Ingersoll, Esquire
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899

### BY FEDERAL EXPRESS

Thomas J. Meloro, Esquire
Kenyon & Kenyon
One Broadway
New York, NY  10004

_____
Rodger D. Smith II

# EXHIBIT X

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION, )
)
)
Plaintiffs, )
)                    Civil Action No. 04-138-JJF
)
v. )
)
SCIENTIFIC GAMES INTERNATIONAL, INC., )
SCIENTIFIC GAMES HOLDINGS )
CORPORATION, SCIENTIFIC GAMES )
FINANCE CORPORATION, and SCIENTIFIC )
GAMES CORPORATION, )
)
Defendants. )
)

## PLAINTIFF GTECH CORPORATION'S RESPONSE TO DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff, GTECH

Corporation ("GTECH"), hereby serves the following objections and responses to Defendants',

Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games

Finance Corporation, and Scientific Games Corporation (collectively, "Defendants"), First Set of

Interrogatories.

## GENERAL OBJECTIONS

1.      GTECH objects to the interrogatories to the extent that the interrogatories, the

instructions and/or definitions contained or incorporated therein are inconsistent with and/or

attempt to impose obligations beyond those imposed by the Federal Rules of Civil Procedure

and/or by the Local Rules of the United States District Court for the District of Delaware ("Local

**Interrogatory No. 10**

For each asserted claim of the Patents-in-Suit, identify the field of the invention, state the level of ordinary skill in the art, state each fact relating to your contention, and identify each person with knowledge of that fact and each document relating to that fact.

**Response No. 10**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, GTECH objects to the terms "field of the invention" as vague and overly broad. Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known. GTECH specifically objects to this interrogatory because it is a compound interrogatory which asks discrete questions that should have been asked, and should be counted, as separate interrogatories.

GTECH also objects to this interrogatory as premature and irrelevant to any presently asserted claim or defense in the case. The Patents-in-Suit are lawfully issued and presumed valid.

**Interrogatory No. 11**

State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, including but not limited to the methods and factors used in the calculation, and identify each person with knowledge of each such fact and each document relating to that fact.

14

**Response No. 11**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

As to the extent of the injury suffered and the amount of damages, GTECH objects to the extent that this interrogatory is more appropriate for expert discovery, for which a schedule has been set by the Court.

Subject to the General Objections and the foregoing specific objections, GTECH will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained.

**Interrogatory No. 12**

State each fact supporting your allegation that defendants' infringement of the Patents-in-Suit "has been and will be willful," and identify each person with knowledge relating to each such fact and each document relating to that fact.

**Response No. 12**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to General Objections and the foregoing specific objections, GTECH states that Defendants have had knowledge of their willful conduct and are in the best position to supply information responsive to this request. On information and belief, GTECH asserts that Scientific Games has been aware of the Patents-in-Suit as least as early as its 1997 business interaction with On-Point Technologies regarding ticket vending machines.

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that copies of the foregoing document were caused to be served on August 16, 2004 upon the following counsel of record:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

Josy W. Ingersoll

# EXHIBIT Y

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

               Plaintiffs,

         v.

SCIENTIFIC GAMES INTERNATIONAL, INC.,
SCIENTIFIC GAMES HOLDINGS
CORPORATION, SCIENTIFIC GAMES
FINANCE CORPORATION, and SCIENTIFIC
GAMES CORPORATION,

               Defendants.

Civil Action No. 04-138-JJF

### PLAINTIFF GTECH CORPORATION'S SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 8, 9, 10, 11, 12, AND 14)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff, GTECH Corporation ("GTECH"), hereby serves the following supplemental objections and responses to Defendants', Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Defendants"), Interrogatories Nos. 8, 9, 10, 11, 12, and 14.

### GENERAL OBJECTIONS

GTECH incorporates by reference the General Objections set forth in its *Response to Defendants' First Set of Interrogatories* dated August 18, 2004.

**Interrogatory No. 10**

For each asserted claim of the Patents-in-Suit, identify the field of the invention, state the level of ordinary skill in the art, state each fact relating to your contention, and identify each person with knowledge of that fact and each document relating to that fact.

**Supplemental Response No. 10**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, GTECH objects to the terms "field of the invention" as vague and overly broad. Additionally, GTECH specifically objects to the term "each asserted claim" as being vague since discovery has not yet been completed and all the claims to be asserted in this Action cannot yet be known. GTECH specifically objects to this interrogatory because it is a compound interrogatory which asks discrete questions that should have been asked, and should be counted, as separate interrogatories.

GTECH further objects to the extent that this interrogatory is premature given the current stage of the case and is more appropriately the subject of expert discovery, for which a schedule has been set by the Court.

**Interrogatory No. 11**

State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, including but not limited to the methods and factors used in the calculation, and identify each person with knowledge of each such fact and each document relating to that fact.

4

**Supplemental Response No. 11**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

As to the extent of the injury suffered and the amount of damages, GTECH objects to the extent that this interrogatory is more appropriate for expert discovery, for which a schedule has been set by the Court.

Subject to the General Objections and the foregoing specific objections, GTECH has produced or will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained. GTECH's further states that its claim for damages includes that it is entitled to not less than a reasonable royalty including lost profits. Persons having knowledge of the facts concerning this upon which GTECH intends to rely include Patrick Costaregni and George Voutes.

**Interrogatory No. 12**

State each fact supporting your allegation that defendants' infringement of the Patents-in-Suit "has been and will be willful," and identify each person with knowledge relating to each such fact and each document relating to that fact.

**Supplemental Response No. 12**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to General Objections and the foregoing specific objections, GTECH states that Defendants have had knowledge of their willful conduct and are in the best position to

<u>CERTIFICATE OF SERVICE</u>

I, Phillip K. Lum, hereby certify that on this 29thd day of April, 2005, I did cause a true and correct copy of Plaintiff GTech's Supplemental Responses to Defendants' First Set of Interrogatoreis (Nos. 8, 9, 10, 11, 12, and 14) to be served by overnight courier on the following:

Jack B. Blumenfeld, Esq.
Morris, Nichols, Arsht, & Tunnell
1201 N. market Street
Wilmington, DE  19801

Phillip K. Lum

# EXHIBIT Z

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,              )
                                    )
                                    )
                  Plaintiffs,    )
                                    )      Civil Action No. 04-138-JJF
      v.                     )
                                    )
SCIENTIFIC GAMES INTERNATIONAL, INC., )
SCIENTIFIC GAMES HOLDINGS         )
CORPORATION, SCIENTIFIC GAMES     )
FINANCE CORPORATION, and SCIENTIFIC )
GAMES CORPORATION,             )
                                    )
                  Defendants.   )
                                    )

### PLAINTIFF GTECH CORPORATION'S SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NO. 4) AND SECOND SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 8, 9, AND 11)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff,

GTECH Corporation ("GTECH"), hereby serves the following second supplemental objections

and responses to Defendants', Scientific Games International, Inc., Scientific Games Holdings

Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation

(collectively, "Defendants"), Interrogatories Nos. 8, 9, and 11.

### GENERAL OBJECTIONS

GTECH incorporates by reference the General Objections set forth in its

*Response to Defendants' First Set of Interrogatories* dated August 18, 2004.

**Interrogatory No. 11**

State each fact supporting your allegation that GTECH has been or is being damaged by the alleged infringement of the Patents-in-Suit, state the nature and amount of the damages allegedly incurred, describe in detail the calculation of the amount of damages, including but not limited to the methods and factors used in the calculation, and identify each person with knowledge of each such fact and each document relating to that fact.

**Supplemental Response No. 11**

In addition to the General Objections, GTECH objects to this interrogatory as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

As to the extent of the injury suffered and the amount of damages, GTECH objects to the extent that this interrogatory is more appropriate for expert discovery, for which a schedule has been set by the Court.

Subject to the General Objections and the foregoing specific objections, GTECH has produced or will produce available non-privileged documents from which information responsive to this interrogatory may be derived or ascertained.  GTECH further states that its claim for damages includes that it is entitled to not less than a reasonable royalty including lost profits.  Specifically, GTECH states that Defendants have been awarded contracts to deploy ITVM's in several states, including Colorado, Georgia, Tennessee, and Pennsylvania, and that but for Defendants' infringement, ITVM's would have been purchased from GTECH for deployment in those states.  Accordingly, because of Defendants' infringement, GTECH (which includes Interlott, which GTECH acquired) suffered lost profits equal to the amount of profits GTECH would have earned for sale of those ITVM's for deployment in those states.  Persons having knowledge of the facts concerning this upon which GTECH intends to rely include Robert Nealon, David Wagoner, Patrick Costaregni and George Voutes.

5

Dated: May 27, 2005

As to objections:

A33(2

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253

Of counsel:

KENYON & KENYON
Thomas J. Meloro
Larissa A. Soccoli
Andrew L. Reibman
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

6

## CERTIFICATE OF SERVICE

I, John W. Shaw,  hereby certify that on May 27, 2005, copies of the foregoing

document were caused to be served upon the following:

### BY HAND DELIVERY

Jack B. Blumenfield
Morris Nichols Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

_____
John W. Shaw (#3362)

AA

REDACTED

BB

REDACTED



REDACTED

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on December 23, 2005, I caused to be electronically filed Scientific Games' Reply Brief In Support Of Its Motion For Summary Judgment (Redacted Version) with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll, Esquire
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899

and that I caused copies to be served upon the following in the manner indicated:

> BY HAND
>
> Josy W. Ingersoll, Esquire
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE 19899
>
> BY FEDERAL EXPRESS
>
> Thomas J. Meloro, Esquire
> Kenyon & Kenyon
> One Broadway
> New York, NY 10004

> /s/ Rodger D. Smith II
> Rodger D. Smith II (#3778)
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
> rsmith@mnat.com