# EXHIBIT 5

# EXHIBIT 5

## SCIENTIFIC GAMES' STATEMENT OF ISSUES OF LAW

I.  NON-INFRINGEMENT

   A.  Generally

   1. To prove infringement, a patent owner bears the burden of proving by a preponderance of the evidence that the accused device has each and every limitation of the properly construed asserted claims. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1049 (Fed. Cir. 2001). Comparison of the accused device to the properly construed claims is a question of fact. *See N. Am. Vaccine v. Am. Cyanamid Co.*, 7 F.3d 1571, 1574 (Fed. Cir. 1993).

   B.  Literal Infringement

   1. Literal infringement may be found only when each and every element in the claim is present in the accused device. *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312-13 (Fed. Cir. 2002).

   2. Means-plus-function limitations cover "the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. Means-plus-function limitations do not cover every possible means for performing the claimed function. *See, e.g., Nomos Corp. v. BrainLAB, Inc.*, 195 F. Supp. 2d 606, 611 (D. Del. 2002) ("[A] means clause does not encompass every means for performing the specified function."), *aff'd*, 357 F.3d 1364 (Fed. Cir. 2004).

3. Literal infringement of a means-plus-function limitation requires that: (a) the accused device perform a function identical to the function recited in the patent claim; and (b) the relevant structure in the accused device is identical or equivalent to the corresponding structure disclosed in the patent specification. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *see also Ishida Co. v. Taylor*, 221 F.3d 1310, 1317 (Fed. Cir. 2000) ("If [an accused device] performs the identical function, an accused device literally infringes . . . only if it is insubstantially different from the corresponding structure in the patent specification.").

4. The test for equivalent structure under § 112, ¶ 6 is "whether the differences between the structure in the accused device and [the structure] disclosed in the specification are insubstantial." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998). An accused device is not equivalent under § 112, ¶ 6 unless it performs the identical function "in substantially the same way, with substantially the same result." *Kemco Sales, Inc. v. Control Papers Co.*, 208 F.3d 1352, 1364 (Fed. Cir. 2000).

C. Doctrine of Equivalents

1. Under the doctrine of equivalents, a patent owner may be afforded relief in exceptional situations where the difference between what is claimed and what is being sold is so insubstantial that to deny recovery would work an injustice on the patent owner. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 62 F.3d 1512, 1517-18 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997). The doctrine of equivalents requires an element-by-element comparison of the claimed invention to the accused device and cannot be used to eliminate completely any claim elements. *See Warner-Jenkinson*, 520 U.S. at 40.

2. The test for whether an element in an accused product is equivalent to the claimed element is whether the differences between the two are insubstantial. *See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). "Insubstantiality may be determined by whether the accused device 'performs substantially the same function in substantially the same way to obtain the same result' as the claim limitation." *Id.* at 813 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

3. "A patentee must still provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Texas Instr. Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); *see also Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003) (holding that a new trial on the doctrine of equivalents was unwarranted because the evidence presented at trial did not meet the "long-standing evidentiary requirements for proof of infringement under the doctrine of equivalents").

4. If the structure of an accused device does not literally infringe a means-plus-function element because the differences between the relevant structures are not insubstantial, a patentee cannot rely on the doctrine of equivalents for that means-plus-function element. *See Chiuminatta*, 145 F.3d at 1311 ("An element of a device cannot be 'not equivalent' and equivalent to the same structure."); *Kemco*, 208 F.3d at 1364 ("Because the 'way' and 'result'p rongs are the same under both [§ 112, ¶ 6] and the doctrine of equivalents tests, a

3

structure failing the [§ 112, ¶ 6 test] under either or both prongs must fail the doctrine of equivalents test for the same reason(s).").

     5.    If the structure of an accused device does not literally infringe a means-plus-function element because it does not perform the identical function, it might be equivalent under the doctrine of equivalents if the differences in the functions are insubstantial. *Kemco*, 208 F.3d at 1364. Under the function-way-result test for determining insubstantiality, "the accused structure must perform substantially the same function, in substantially the same way, to achieve substantially the same result, as the disclosed structure." *Id.*

     6.    A patent owner cannot use the doctrine of equivalents to cover subject matter that could not have been patented over the prior art. *See Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1367 (Fed. Cir. 1999). Determining if the prior art limits a particular scope of equivalents is a question of law. *See Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 981 (Fed. Cir. 1999).

     7.    A patentee cannot make a narrowing amendment to a claim during prosecution, and then use the doctrine of equivalents to recapture what the patentee gave up. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002). Prosecution history estoppel applies when the patentee narrows the literal scope of a claim for a substantial reason relating to patentability, or makes statements or arguments to the PTO to obtain a claim. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003).

     8.    "[T]he rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims creates a presumption of prosecution history estoppel." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1134 (Fed. Cir.

2004) (en banc). A rebuttable presumption arises that the patentee has surrendered all territory between the original claim and the amended claim. *See Festo*, 344 F.3d at 1367.

9. To rebut the presumption, the patentee must show that "at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Id.* at 1368 (quoting *Festo*, 535 U.S. at 741). There are only three ways in which the patentee can overcome the presumption of surrender:

> [T]he patentee must demonstrate that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent.

*Id.* (quoting *Festo*, 535 U.S. at 740-41).

10. Whether the patentee has rebutted the presumption of surrender is a question of law for the court. *See Festo*, 344 F.3d at 1367.

II. <u>INVALIDITY</u>

    A. <u>Generally</u>

1. The courts are the final arbiter of patent validity and, although courts may take cognizance of and benefit from the proceedings before the Patent Office, the question of validity is ultimately for the courts to decide. *See Quad Env't Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991).

2. The presumption of validity can be overcome by clear and convincing evidence. *See Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1375 (Fed.

Cir. 2001). "The presentation at trial of additional evidence that was not before the PTO does not change the presumption of validity or the standard of proof, although the burden may be more or less easily carried because of the additional evidence." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996). "New prior art not before the PTO may so clearly invalidate a patent that the burden is sustained merely by proving its existence and applying the proper law . . . ." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-60 (Fed. Cir. 1984).

    B.    <u>Anticipation</u>

        1.    A patent claim is invalid for anticipation under 35 U.S.C. § 102 if "a single prior art reference discloses, either expressly or inherently, each limitation of the claim." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1349 (Fed. Cir. 2002). Whether a patent claim is anticipated is a question of fact. *See Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001).

        2.    A patent claim is invalid under 35 U.S.C. § 102(b) if it covers an invention that "was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." An invalidating public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996) (citing *In re Smith*, 714 F.2d 1127, 1134 (Fed. Cir. 1983)). "Section 102(b) may bar patentability by anticipation if the device used in public includes every limitation of the later claimed invention . . . ." *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002).

        3.     A patent claim is invalid under the on-sale bar of 35 U.S.C. § 102(b) if a product embodying the claimed invention was the subject of a commercial offer for sale, and the claimed invention was ready for patenting. *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). "A single sale or even a single offer to sell . . . is sufficient to trigger the 'on sale' bar." *Cordant Tech., Inc. v. Alliant Techsystems Inc.*, 45 F. Supp. 2d 398, 406 (D. Del. 1999). The on-sale bar applies even where the sale or offer for sale is not made by the patentee. *See Abbott Labs. v. Geneva Pharm., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999).

        4.     "A reference anticipates a claim if it discloses the invention 'such that a skilled artisan could take its teachings in combination with his own knowledge of the particular art and be in possession of the invention.'" *In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995) (quoting *In re LeGrice*, 301 F.2d 929 (C.C.P.A. 1962)). "[A]nticipation may be established if a missing claim element is within the knowledge of one of ordinary skill in the art." *AT&T Corp. v. Excel Commc'ns, Inc.*, 1999 WL 1050064, at *17 (D. Del. 1999).

        5.     Absent express disclosure, a prior art reference still anticipates "if [the] missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharm. Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). "To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

    C.    <u>Obviousness</u>

        1.     A patent claim is invalid for obviousness under 35 U.S.C. § 103, "if the differences between the subject matter sought to be patented and the prior art are such that the

subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art." *See In re Mayne*, 104 F.3d 1339, 1341 (Fed. Cir. 1997) ("The legal determination under section 103 is whether the claimed invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made.").

    2.    To establish obviousness, a party must show "some objective teaching in the prior art or that knowledge generally available to one of ordinary skill in the art would lead that individual to combine the relevant teachings of the references." *In re Fine*, 837 F.2d 1071, 1074 (Fed. Cir. 1988). The teaching may come from the prior art references themselves. *See In re Sernaker*, 702 F.2d 989, 994 (Fed. Cir. 1983).

    3.    "[T]here is no requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention." *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997). The motivation to combine may come from the knowledge generally available to one of ordinary skill in the art. *See Duro-Last Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1109 (Fed. Cir. 2003). It may also come from the nature of the problem to be solved, leading persons of ordinary skill in the art to look to references relating to possible solutions to the problem. *See In re Rinehart*, 531 F.2d 1048, 1954 (C.C.P.A. 1976).

    4.    "A determination of obviousness under 35 U.S.C. § 103(a) is a legal conclusion involving factual inquiries." *Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1572 (Fed. Cir. 1996). The underlying factual inquiries of an obviousness determination include: (a) the scope and content of the prior art; (b) the differences between the prior art and the claims; (c) the level of ordinary skill in the art; and (d) objective evidence of nonobviousness, the so-called "secondary considerations." *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

5.      Several factors may be considered in determining the level of ordinary skill in the art, including: (a) the education level of the inventors; (b) the types of problems encountered in the art; (c) the prior art solutions to those problems; (d) the rapidity with which innovations are made; (e) the sophistication of the technology; and (f) the education level of the active workers in the field. *See Environmental Designs. Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983). Not all of these factors may be present in every case, and one or more of these or other factors may predominate in a particular case. *Id.* at 696-97.

6.      Objective indicia of non-obviousness may be considered in reaching a determination of obviousness. *See Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983). "The existence of such evidence, however, does not control the obviousness determination." *Richardson-Vicks, Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483 (Fed. Cir. 1997). "Evidence of secondary considerations . . . [is] but a part of the 'totality of the evidence' that is used to reach the ultimate conclusion of obviousness." *Id.*

7.      "[A] nexus between the merits of the claimed invention and the evidence of secondary considerations is required in order for the evidence to be given substantial significance in an obviousness determination." *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1026 (Fed. Cir. 1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999) (en banc). The weight afforded such secondary considerations depends upon their nature and their relationship to the merits of the invention. *See Stratoflex*, 713 F.2d at 1538. For example, commercial success is demonstrated only if there is proof that the success was a direct result of the unique characteristics of the patented subject matter. *See Cable Elec. Prods.*, 770 F.2d at 1027.

8.  The patentee bears the burden of proof of establishing a prima facie case of nexus between claimed secondary considerations and the merits of the patented invention. *See Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).

D.  Indefiniteness

1.  A patent claim is invalid under 35 U.S.C. § 112, ¶ 2, if it fails to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." A patent claim fails to satisfy this requirement if a person of ordinary skill in the art could not "understand the scope of the subject matter that is patented when reading the claim in conjunction with the rest of the specification." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005).

2.  "[I]f one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112." *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (*en banc*).

3.  "To meet the definiteness requirement, structure disclosed in the specification must be clearly linked to and capable of performing the function claimed by the means-plus-function limitation." *Default Proof Credit Card Sys.*, 412 F.3d at 1299 (holding patent claim invalid for failure to disclose structure corresponding to "means for dispensing").

4.  "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Atmel Corp. v. Information Storage Devices*, 198 F.3d 1374, 1378 (Fed. Cir. 1999).

III.    WILLFUL INFRINGEMENT

1.    "Whether infringement is willful is a question of fact, and must be established by clear and convincing evidence." *Comark Communs., Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998).

2.    "[A] determination of willfulness is made on consideration of the totality of the circumstances and may include contributions of several factors . . . ." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004). Some of these factors include: "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, and (3) the infringer's behavior as a party to the litigation." *Bott v. Four Star Corp.*, 807 F.2d 1567, 1572 (Fed. Cir. 1986), *cited in Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).

3.    An alleged infringer is not required to obtain an opinion of counsel to satisfy its duty of due care. *See Knorr-Bremse*, 383 F.3d at 1345. It is inappropriate to draw an adverse inference concerning willful infringement from a defendant's failure to consult counsel. *Id.* It is also inappropriate to draw an adverse inference when the alleged infringer invokes the attorney-client privilege and/or work-product privilege with respect to an opinion of counsel. *Id.* at 1344.

4.    An infringer cannot willfully infringe a patent of which it had no notice. *See State Indus., Inc. v. A.O. Smith Co.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a *patent*, the patent must exist and one must have knowledge of it.") (emphasis in original).

11

IV. DAMAGES

    A. Generally

        1. "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. "Adequate to compensate" means that the damages arrived at must be reasonable under the circumstances, *i.e.*, they must be a close approximation of what would be "adequate to compensate" for the "use made of the invention by the infringer." *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse*, 383 F.3d at 1344-45.

        2. A patentee must prove its damages by a preponderance of the evidence. *See Proctor & Gamble Co. v. Paragon Trade Brands*, 989 F. Supp. 547, 599 (D. Del. 1997).

    B. Lost Profits

        1. To recover lost profits damages, a patentee "must show that it would have received the additional profits 'but for' the infringement. The patent owner bears the burden to present evidence sufficient to show a reasonable probability that it would have made the asserted profits absent infringement." *King Instruments Corp. v. Perego*, 65 F.3d 942, 952 (Fed. Cir. 1995).

        2. The Federal Circuit has adopted the *Panduit* test as a standard, non-exclusive method for a patentee to establish lost profits damages. *See Rite-Hite Corp. v. Kelly Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). The *Panduit* test requires the patentee to show: (a) demand for the patented product; (b) absence of acceptable non-infringing

substitutes; (c) manufacturing and marketing capability; and (d) the amount of lost profit. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

        3. Once the patent owner has met its initial burden, "[t]he burden then shifts to the infringer to show that the ['but for' claim] is unreasonable for some or all of the lost sales." *Rite-Hite*, 56 F.3d at 1545.

    C. <u>Reasonable Royalty</u>

        1. A reasonable royalty is defined as the amount that a willing licensor and licensee would bargain for at an arm's-length hypothetical negotiation occurring on the eve of the first infringement. *See Proctor & Gamble*, 989 F. Supp. at 606. For the purposes of the hypothetical negotiation, it is assumed that the parties would know all relevant information. *Id.* "Although this analysis necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual basis for a determination of a reasonable royalty. Any rate determined by the trier of fact must be supported by relevant evidence in the record." *Unisplay S.A. v. American Electronic Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995).

        2. The determination of the amount of damages based on a reasonable royalty is an issue of fact. *Id.* In determining a reasonable royalty, the courts have listed fifteen factors that are considered relevant to that determination. These factors are:

        1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

        2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

        3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of

territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or

>significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee -- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention -- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *aff'd in part*, 446 F.2d 295 (2d Cir. 1971).

3. Under the "willing buyer-willing seller rule," a reasonable royalty must account for a reasonable profit by the supposed licensee (the accused infringer). *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 446 F.2d 295, 299 (2d Cir. 1971).

D. <u>Marking</u>

1. Notice to the public by marking any patented article is required by 35 U.S.C. § 287(a):

>Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after

such notice. Filing of an action for infringement shall constitute such notice.

2. A patent holder that sells patented articles and seeks to recover damages for infringement occurring before suit is filed must show that it complied with the marking or actual notice requirements of 35 U.S.C. § 287(a). *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). A patentee can only recover damages for the period after marking occurred under § 287(a) or after actual notice was given, whichever came first. *Id.* Actual notice requires "an affirmative act on the part of the patentee which informs the defendant of his infringement." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).

3. The patentee has the burden of pleading and proving compliance with the statutory requirements. *See Maxwell v. J. Baker*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (citing *Motorola, Inc. v. United States*, 729 F.2d 765, 770 (Fed. Cir. 1984), and *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) ("The duty of alleging, and the burden of proving, either [actual notice or constructive notice] is upon the [patentee].")).

E. <u>Enhanced Damages</u>

1. Under 35 U.S.C. § 284, a court may "increase the damages up to three times the amount found or assessed." "While willful infringement may allow enhanced damages, such a finding does not compel the district court to grant them. Instead, the decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999).

2.  "A showing of willful infringement or bad faith must support an award of enhanced damages . . . . Enhanced damages are punitive, not compensatory . . . . Therefore, an infringer may generally avoid enhanced damages with [a] meritorious good faith defense and a substantial challenge to infringement." *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 412 (Fed. Cir. 1993).

3.  Even where willful infringement is found, a district court has discretion to deny enhanced damages. *See id.* at 413. If the Court finds willful infringement, it must determine whether or not, under all the circumstances, increased damages are warranted. *See State Indus. Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1576 (Fed. Cir. 1991); *Johns Hopkins Univ. v. CellPro*, 152 F.3d 1342, 1365 (Fed. Cir. 1998) ("[A] finding of willful infringement does not mandate that the district court enhance damages; it merely authorizes the court to do so at its discretion.").

4.  In determining whether to award increased damages, the Court should consider whether the infringer deliberately copied the ideas or design of another, the infringer's behavior as a party to the litigation, the infringer's size and financial condition, the closeness of the case, the duration of the infringer's misconduct, any remedial action of the infringer, the infringer's motivation for harm, and whether the infringer attempted to conceal its misconduct. *See CellPro*, 152 F.3d at 1352 n.16, 1364-65.

F.  <u>Prejudgment Interest</u>

1.  35 U.S.C. § 284 does not require an award of prejudgment interest. "That provision states that interest shall be fixed by the court and . . . leaves the court some discretion in awarding prejudgment interest." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57

17

(1983). It may be appropriate in certain circumstances to limit or even deny prejudgment interest. *Id.* (giving a patent owner's undue delay in prosecuting the infringement suit as one example).

    2. "Under 35 U.S.C. § 284, prejudgment interest ensures adequate compensation for infringement . . . . Prejudgment interest has no punitive, but only compensatory, purposes." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). The interest merely compensates the patent owner for the use of its money between the date of injury and the date of judgment. *Id.*

    3. Prejudgment interest can be awarded only on the compensatory portion of a damage award and cannot be awarded on the incremental portion of an increased damage award. *See Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1389 (Fed. Cir. 1993).

  G. <u>Attorneys' Fees</u>

    1. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Determining whether a case is eligible for an award of attorney fees under § 285 is a two-step process in which the court must first determine whether the case is exceptional and then, after determining that the case is exceptional, determine whether attorney fees are appropriate. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998).

    2. "[F]or a case to be deemed exceptional, there must be some finding, by clear and convincing evidence, of willful infringement, inequitable conduct before the PTO, misconduct during litigation, vexatious or unjustified litigation or some similar exceptional

circumstances." *Biacore AB v. Thermo Bioanalysis Corp.*, 79 F. Supp. 2d 422, 473 (D. Del. 1999). It is only after a specific finding of exceptional circumstances has been made that the discretion to award attorneys fees can be exercised. *See J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1050 (Fed. Cir. 1987).

495489