## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| GTECH CORPORATION,<br><br>                              Plaintiff,<br><br>               v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC.,<br>SCIENTIFIC GAMES HOLDINGS<br>CORPORATION, SCIENTIFIC GAMES<br>FINANCE CORPORATION, and SCIENTIFIC<br>GAMES CORPORATION,<br><br>                              Defendants. | Civil Action No. 04-138-JJF |

### PRELIMINARY JURY INSTRUCTIONS

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Karen Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

OF COUNSEL:
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware

*Attorneys for Defendants Scientific Games et al.*

Pursuant to Delaware Local Rule 51.1(a), Plaintiff GTECH Corporation ("GTECH") and Defendants Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Scientific Games") submit the attached proposed jury instructions for the Court's consideration. [Where the parties have agreed on the instruction, the instruction appears with no qualifying designation.  Where the parties have disagreed in whole or in part on an instruction, alternate proposed language is indicated in brackets.]

## INTRODUCTION

Ladies and gentlemen, you have been selected as jurors in this case.  What I will now say is intended to introduce you to the trial and the law that you will apply to evaluate the evidence that you will hear.  I will also give you detailed instructions on the law at the end of the trial.  All of my instructions are important, and you should consider them together as a whole.  Please listen carefully to everything I say.

This is a case about patent infringement.  The parties are GTECH Corporation, the Plaintiff, and Scientific Games, the Defendant.  **[GTECH VERSION:** GTECH owns United States Patent Number 5,222,624, which you may hear called the '624 patent by the lawyers and witnesses in the case.  GTECH also owns United States Patent Number 4,982,337, which you may hear called the '337 patent by the lawyers and witnesses in the case.**]  [SCIENTIFIC GAMES VERSION:** GTECH owns United States Patent Number 4,982,337, which you may hear called the '337 patent by the lawyers and witnesses in the case.  GTECH also owns United States Patent Number 5,222,624, which you may hear called the '624 patent by the lawyers and witnesses in the case.**]** GTECH contends that Scientific Games has infringed **[GTECH VERSION:** the '624 patent and the '337 patent**] [SCIENTIFIC GAMES VERSION:** the'337 patent and the '624 patent**].** Scientific Games contends that it has not infringed the **[GTECH VERSION:** '624 patent or the '337 patent**] [SCIENTIFIC GAMES VERSION:** '337 patent or the '624 patent**].** Scientific Games also contends that **[GTECH VERSION:** the '624 patent and the '337 patent**] ] [SCIENTIFIC GAMES VERSION:** the'337 patent and the '624 patent**]** are invalid.

**SOURCE:**    The Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware 2004 ("2004 Uniform Jury Instructions")

## PATENT LAW – GENERAL

Now let me tell you a little bit about patent law. Patent law comes from the United States Constitution. The Constitution grants Congress the power to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." With this power, Congress enacted the patent laws.

Tangible goods, processes and methods may be patented. For a good, process or method to be patentable, it must be new and useful. In addition, a good, process or method is patentable only if, when the good, process or method was invented, it was not obvious to a person having ordinary skill in the art of the invention.

Under the patent laws, the United States Patent and Trademark Office in the Washington, D.C. area, which we refer to as the PTO, examines patent applications and determines whether an invention should be granted a United States patent. A patent application must include a number of things, including a detailed description of the invention that is sufficiently full, clear, concise and exact to enable any person skilled in the art of the invention to make and use the invention and a disclosure of the best mode of carrying out the invention known to the inventor at the time the application is filed. The application includes a written description of the invention, called a "specification," and may include drawings that illustrate the invention. A patent specification ends with one or more **[GTECH VERSION:** numbered sentences that are called the patent's claims and] **[SCIENTIFIC GAMES VERSION:** patent claims] that particularly and distinctly define the subject matter that the inventor regards as his or her invention.

When the PTO receives a patent application, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the patent laws. The examiner reviews files of prior work of others in the form of voluminous files of patents and publications. This type of material is called "prior art." Documents

found in the search of prior art are called "references." In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched. All of the papers concerning the examination of a patent application before the PTO are called the "prosecution history" or "file wrapper."

If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant defined the applicant's claimed invention (over the most relevant known prior art), the application is granted as a U.S. patent.

A patent gives its owner the right to exclude others from making, using or selling the patented invention throughout the United States for a specific period of time, usually 20 years from the date the application was filed with the PTO. A person who, without the patent owner's permission, makes, uses, sells, offers to sell or imports into the United States a patented invention is infringing that patent.

Sometimes in a court case, you are also asked to decide about validity, that is, whether the patent should have been allowed at all by the PTO. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or non-obvious in light of the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

You may wonder why it is that you would be asked to consider such things when the patent has already been reviewed by a government examiner. There are several reasons for this. For example, there may be facts or arguments that the examiner did not consider, such as prior art that was not located by the PTO or provided by the applicant. Also, because the patent application process is private, other interested people do not have the opportunity to present materials to the examiner. There is, of course, also the possibility that mistakes were made or

important information overlooked. Examiners have a lot of work to do, and no process is perfect.

You will hear many of the terms I used in this description during the trial. They are summarized in the "Glossary of Patent Terms," which will be given to you along with these instructions. Feel free to refer to this glossary throughout the trial.

**SOURCE:**    The 2004 Uniform Jury Instructions based on the 1993 Uniform Jury Instructions For Patent Cases In The United States District Court For The District Of Delaware

## DUTIES AS JURORS

Now a word about your duties as jurors.  Trial by jury is one of the cornerstones of our free society.  Faithful performance by you of your duties is vital to the administration of justice.

You have two main duties as jurors.  The first is to decide what the facts are based on the evidence that you will see and hear in court.  Deciding what the facts are is your job, not mine, and nothing that I will say or do should influence your **[GTECH VERSION:** determination] **[SCIENTIFIC GAMES VERSION:** view] of the facts in any way.  In deciding what the facts are, you must not engage in guesswork or speculation.  You must not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.  Each side is entitled to the same fair and impartial consideration.

Your second duty is to take the principles of law that I explain to you and apply them to the facts in reaching your verdict.  It is my job to instruct you about the law, and you are bound by the oath you just took to follow my instructions, even if you personally disagree with them.  This includes these instructions and the instructions that I will give you during and after the trial.  All of my instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.


**SOURCE:**    The 2004 Uniform Jury Instructions

## BURDEN OF PROOF

GTECH has the burden to prove patent infringement and **[GTECH VERSION:** its claims of] damages by what is called a preponderance of the evidence. That means GTECH has to produce evidence that, when considered in light of all of the facts, leads you to believe that what GTECH claims is more likely true than not. To put it differently, if you were to put GTECH's and Scientific Games' evidence on the opposite sides of a scale, the evidence supporting GTECH's claims would have to make the scales tip somewhat on its side.

In this case, Scientific Games **[GTECH VERSION:** argues] **[SCIENTIFIC GAMES VERSION:** is urging] that GTECH's patents are not valid. A patent, however, is presumed to be valid **[GTECH VERSION:** unless proven otherwise].[1] Accordingly, Scientific Games has the burden to prove the patents-in-suit are not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. **[GTECH VERSION:** The burden to prove a fact by clear and convincing evidence is a heavier burden than the burden to prove that fact by a preponderance of the evidence.][2]

Some of you may have heard the phrase "proof beyond a reasonable doubt." That burden of proof applies only in criminal cases and has nothing to do with a civil case like this one. You should therefore not consider it in this case.

**SOURCE:**    The 2004 Uniform Jury Instructions

---

[1]    Scientific Games proposes deleting this language.

[2]    Scientific Games proposes deleting this sentence.

6

## EVIDENCE

The evidence you will consider consists of the sworn testimony of witnesses, the exhibits admitted into evidence, and any facts the parties admit or agree to. Nothing else is evidence. The lawyers' statements and arguments are not evidence; their questions and objections are not evidence. My comments or questions are not evidence. Nothing you see or hear outside the courtroom is evidence.

From time to time it may be the duty of the attorneys to make objections to evidence that should not be presented at this trial under the rules of evidence. It is my duty as the judge to rule on those objections and decide whether you can consider the evidence in question. My decisions about the admission of evidence are governed by rules of law. You must not be influenced by any objection or by my reasons for making an evidentiary ruling. If I sustain an objection or order evidence stricken from the trial, do not speculate about what a witness might have said or what an exhibit might have shown. You must not consider that evidence.

Use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Make your decisions about the trial based only on the evidence, as I have defined it here, and nothing else.

**SOURCE:**    The 2004 Uniform Jury Instructions

## WITNESSES – CONFLICTS IN TESTIMONY

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. For example, you may be guided by the appearance and demeanor of the witnesses as they testified and the witnesses' apparent fairness in giving their testimony. Other factors which **[GTECH VERSION:** may influence your evaluation of a witness' credibility**] [SCIENTIFIC GAMES VERSION:** may**]** include the existence of evidence that is inconsistent with the testimony given or evidence that at some other time the witness said or did something (or failed to say or do something) that was different from the testimony the witness gave at trial. You may also consider any bias or interest the witness may have in the outcome of these proceedings.

You should remember that a simple mistake does not necessarily mean that the witness is not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness makes a misstatement, you must consider whether it is simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

If you find the testimony in this case to be in conflict, it will be your duty at the end of the case to reconcile the conflicts if you can. If you cannot do so, it is your duty to disregard that portion of the testimony that you, in your judgment, consider not to be worthy of credit.

Lastly, the number of witnesses presented is not important; concentrate on how believable the witnesses are and how much weight you believe their testimony deserves.

**SOURCE:**     The 2004 Uniform Jury Instructions

8

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

In this trial, the parties may present "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness that, if you believe the testimony, directly proves a fact. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of facts and circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**SOURCE:**     The 2004 Uniform Jury Instructions

## EXPERT WITNESSES

When scientific, technical or other specialized knowledge may be helpful to the jury, a person who has special knowledge, skill, education, training or experience in that technical field, called an expert witness, is permitted to state an opinion on those matters.

The value of this kind of testimony depends upon the qualifications and skill of the witness, the sources of the witness's information, and the reasons supplied for any opinions given. You should consider this kind of testimony like all other testimony you hear and weigh it by the same tests. However, as with any other witness, you are not required to accept any expert's opinions. It will be up to you to decide whether to rely upon them.

**SOURCE:**     The 2004 Uniform Jury Instructions

## GENERAL INSTRUCTION

Until this case is submitted to you for your deliberation, you are to keep an open mind and not decide any issue in this case. You also must not discuss this case with anyone, remain within hearing of anyone discussing it, or read, watch, or listen to any discussion of the case in any news or other media. After this case has been submitted to you, you must discuss this case only in the jury room when all members of the jury are present.

It is important that you wait until all the evidence is received and you have heard my instructions on the applicable rules of law before you deliberate among yourselves. The only evidence you may consider will be the evidence presented at trial. Because of this, you should not attempt to gather any information on your own that you think might be helpful. Do not do any outside reading on this case and do not in any other way try to learn about the case outside the courtroom.

The reason for these rules, as I am certain you will understand, is that you must decide this case solely on the evidence presented at the trial.

**SOURCE:**    The 2004 Uniform Jury Instructions

## COURSE OF THE TRIAL

The case will now begin.

First, GTECH may make an opening statement outlining its case. Then Scientific Games may make an opening statement outlining its case. Neither side is required to make an opening statement. Opening statements are not evidence; their only purpose is to help you understand what the evidence will be.

Next, the parties will present their evidence. GTECH will first introduce the evidence that it believes will support its claims. When GTECH is finished, Scientific Games will introduce evidence to defend against GTECH's claims. GTECH then has the opportunity to offer rebuttal evidence.

After you have heard all of the evidence, I will instruct you on the law that you must apply in this case. Then each side may make a closing argument, although no one is required to do so. The closing arguments are not evidence; their only purpose is to give each side the opportunity to summarize its case and to help you understand the evidence it has presented.

Finally, after the closing arguments, you will deliberate and arrive at your verdict.


**SOURCE:**    The 2004 Uniform Jury Instructions

12

## GLOSSARY OF PATENT TERMS

| | |
|---|---|
| Assignment | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| Claims | The part of a patent that defines the limits of invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| Disclosure or Description | The part of the patent specification that explains how the invention works and usually includes a drawing. |
| File wrapper or Prosecution history | The written record of proceedings in the Patent Office including the original patent application and subsequent communications between the Patent Office and the applicant. |
| Patent application | The initial papers filed in the United States Patent and Trademark Office (Patent Office or PTO) by an applicant.  These typically include a specification, drawings and the oath (Declaration) of applicant. |
| Patent examiners | Personnel employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and the disclosure adequately describes the invention. |
| Prior art | Any information that is used to describe public, technical knowledge prior to the invention by the applicant or more than a year prior to his/her application. |
| References | Any item of prior art (publication or patent) used to determine patentability. |
| Specification | The part of the patent application or patent that describes the invention and concludes with one or more claims. |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GTECH CORPORATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC., )<br>SCIENTIFIC GAMES HOLDINGS )<br>CORPORATION, SCIENTIFIC GAMES )<br>FINANCE CORPORATION, and SCIENTIFIC )<br>GAMES CORPORATION, )<br><br>Defendants. ) | Civil Action No. 04-138-JJF |

**JOINT [PROPOSED] GENERAL JURY INSTRUCTIONS**

Dated:

## 1.    GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION

Members of the jury, I will now instruct you about the law that you must follow in deciding this case.

I will start by reminding you about your duties as jurors and the instructions you heard at the beginning of the case.

I will then explain the positions of the parties and the law you will apply in this case.

Last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.


**SOURCE:**    The 2004 Uniform Jury Instructions § 1.1

## 1.2    JURORS' DUTIES

Remember your duties as jurors as I explained them to you at the beginning of the case. You must decide what the facts are from the evidence you saw and heard in court. Nothing I have said or will say should influence your **[GTECH VERSION:** determination**] [SCIENTIFIC GAMES VERSION:** view**]** of the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. All parties are entitled to the same fair and impartial consideration.

You must also take the principles of law that I will now explain to you and apply them to the facts in reaching your verdict. You are bound by the oath you took to follow my instructions, even if you personally disagree with them.

All of my instructions are important, and you should consider them together as a whole. This includes the instructions that I gave you when we started and during trial. I will not repeat my earlier instructions about evidence and how to weigh and consider it. You have copies of these instructions, however, and you should refer to them as you feel necessary.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**SOURCE:**    The 2004 Uniform Jury Instructions § 1.2

3

### 1.3    BURDENS OF PROOF

GTECH has the burden to prove its claims of patent infringement and its claims of damages by a preponderance of the evidence. That means GTECH must produce evidence that, when considered in light of all of the facts, leads you to believe that what GTECH claims is more likely true than not. To put it differently, if you were to put GTECH's and Scientific Games' evidence on the opposite sides of a scale, the evidence supporting GTECH's claims would have to make the scales tip somewhat on its side.

Scientific Games has the burden to prove that the patents-in-suit are not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

In addition, GTECH must prove its claims of willful infringement by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to GTECH's other claims in this case.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

**SOURCE:**    The 2004 Uniform Jury Instructions § 1.3

## 2.    THE PARTIES' CONTENTIONS

### 2.1    GTECH'S CONTENTIONS

GTECH contends that Scientific Games' PlayCentral Kiosk infringes claim 18 of the '624 patent. GTECH contends that Scientific Games' PlayCentral Kiosk infringes claims 20 and 21 of the '337 patent. These claims may be referred to as "the asserted claims." The other claims of the patents in suit may be referred to as "unasserted claims."

GTECH further contends that Scientific Games' infringement of the claims of the '624 patent and the '337 patent was willful. GTECH also contends that it is entitled to damages adequate to compensate GTECH for Scientific Games' infringement, including lost profits.

5

## 2.2    SCIENTIFIC GAMES' CONTENTIONS

Scientific Games contends that its PlayCentral Kiosk is not covered by claims 20 or 21 of the '337 patent or claim 18 of the '624 patent, and that, as a result, Scientific Games has not infringed those patent claims.

Scientific Games also contends that claims 20 and 21 of the '337 patent and claim 18 of the '624 patent are invalid because they were anticipated or rendered obvious by the prior art.  Scientific Games also contends that  claim 18 of the '624 patent is invalid for indefiniteness. [3]

Finally, Scientific Games contends that GTECH is not entitled to recover lost profits damages for any alleged infringement, and that any reasonable royalty damages are limited by the existence of the non-infringing alternatives that were available to Scientific Games.

---

[3]    GTECH objects to reference to indefiniteness in these contentions as this issue is a matter of law that will be resolved by the claim construction.

6

## 3.    INFRINGEMENT

At the beginning of the trial I gave you some general information about patents and the patent system and a brief overview of the patent laws that relate to this case. If you would like to review my earlier instructions at any time during your deliberations, they will be available to you in the jury room.

As I stated before, GTECH alleges that Scientific Games infringes certain claims of the **[GTECH'S VERSION:** '624 and '337 patents] **[SCIENTIFIC GAMES VERSION:** the '337 and '624 patents]**.** If any person makes, uses, sells or offers to sell what is covered by a patent claim without the patent owner's permission, that person is said to *infringe* the patent. I will now instruct you on the specific rules you must follow in deciding whether GTECH has proven that Scientific Games has infringed one or more of the claims of the patents here.

**SOURCE:**    The 2004 Uniform Jury Instructions § 3

### 3.1    INFRINGEMENT – BURDEN OF PROOF

To prove infringement of a patent, GTECH must persuade you by a preponderance of the evidence that Scientific Games has infringed a claim in the patent.  **[SCIENTIFIC GAMES VERSION:** That is, GTECH must show that it is *more likely than not* that Scientific Games has infringed a claim in the patent.**]**

**SOURCE:**    The 2004 Uniform Jury Instructions § 3.1

### 3.2    PATENT CLAIMS

### 3.2.1    PATENT CLAIMS – GENERALLY

To decide whether Scientific Games has infringed GTECH's patents, you will have to understand the patent "claims." As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of a patent. The claims describe the invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making, doing or selling. Claims may describe products, such as machines or chemicals, or they may describe methods for making or using a product. Only the claims of the patent can be infringed. **[GTECH VERSION:** A patent also includes drawings and discussion of examples of the invention, but the drawings and examples cannot be infringed.**]** You should not compare Scientific Games' PlayCentral Kiosk **[GTECH VERSION:** with any specific example set out in the '624 or '337 patents or] with any product used by GTECH. You must only compare Scientific Games' PlayCentral Kiosk with the *claims* of the **[GTECH VERSION:** patent] **[SCIENTIFIC GAMES VERSION:** patent**,** as I will define them for you,**]** when making your decision regarding infringement.

Each claim of a patent represents separate patent protection given to a patent owner, and you must individually consider each of the patent claims involved in this case. The law does not require infringement of all the claims in a patent. There is infringement and entitlement to damages if a single claim of the patent has been infringed.

**SOURCE:**    The 2004 Uniform Jury Instructions § 3.2.1

### 3.2.2   PATENT CLAIMS – DEPENDENT AND INDEPENDENT

Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

There are two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. In simple terms, an independent claim stands on its own two feet. An independent claim is read alone to determine the elements that must exist to infringe the claim. Claim 20 of the '337 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes all of the elements in the claims to which it refers. Therefore, to determine what a dependent claim covers, you must look at both the elements of the dependent claim and the claim or claims to which it refers.

For example, claim 21 of the '337 is a dependent claim. It refers to claim 20. For a product to infringe dependent claim 21, the product must have all the elements of both claim 20 and claim 21. Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that independent claim are not infringed.


**SOURCE:**     The 2004 Uniform Jury Instructions § 3.2.2

### 3.3    PATENT INFRINGEMENT

A patent owner may enforce his right to stop others from making, using, offering for sale or selling the patented invention by filing a lawsuit for patent infringement. Here, GTECH has sued Scientific Games and has alleged that Scientific Games' PlayCentral Kiosk infringes at least one claim of the '624 patent or the '337 patent. I will refer to Scientific Games' PlayCentral Kiosk as the accused product.

Deciding whether a claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to the accused product to determine whether every element of the claim can be found in the accused product. This element-by-element comparison is your responsibility as the jury for this case.

**[GTECH VERSION:** There are two ways in which a patent claim may be directly infringed. First, a claim may be literally infringed. Second, a claim may be infringed under what is called the "doctrine of equivalents." I will explain literal and doctrine of equivalents infringement shortly. Keep in mind that intent to infringe, actual knowledge of a patent, or knowledge that you are infringing a patent, is not part of a claim of patent infringement.] **[SCIENTIFIC GAMES VERSION:** Keep in mind that actual knowledge of a patent, or knowledge that you are infringing a patent, is not necessary, nor is intent to infringe necessary.] In short, direct infringement can be established even if Scientific Games had a good faith belief that its actions were not infringing any patent and even if Scientific Games did not know of the patent.

**SOURCE:**    The 2004 Uniform Jury Instructions § 3.3

11

**[SCIENTIFIC GAMES VERSION: DIRECT INFRINGEMENT – LITERAL**

GTECH's patent claims are literally infringed if Scientific Games' PlayCentral Kiosk includes every element in GTECH's patent claims.  If Scientific Games' PlayCentral Kiosk omits any element recited in GTECH's patent claims, Scientific Games does not literally infringe that claim.

Source:          The 2004 Uniform Jury Instructions § 3.3.1]⁴

---

⁴          GTECH proposes including the identical instruction at p. 17 of these instructions.

12

### 3.3.1   MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function. For example, let's say that a patent describes a table in which the legs are glued to the tabletop. One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop." This second type of claim limitation is called a "means-plus-function" limitation. It describes a means for performing the function of securing the legs to the tabletop, rather than **[SCIENTIFIC GAMES VERSION:** expressly] reciting the glue **[GTECH VERSION:** per se.]

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures. In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, **[GTECH VERSION:** and any equivalent structure that performs the function of securing the legs to the tabletop.] **[SCIENTIFIC GAMES VERSION:** and any structure equivalent to the glue for performing the function of securing the legs to the tabletop.]

Claim 18 of '624 patent and claim 20 of the '337 patent include means-plus-function limitations. In instructing you about the meaning of a means-plus-function claim limitation, I will tell you, first, the function that each of the means-plus-function claim limitations performs; and second, the structure disclosed in the patent specification that corresponds to each means-plus-function limitation.

13

**SOURCE:**   The Federal Circuit Bar Association Draft Model Patent Jury Instructions ("Fed. Cir. Model Jury Instruction") § 7.4 citing 35 U.S.C. § 112 ¶ 6 (1984); *IMS Tech., Inc.* v. *Haas Automation, Inc.,* 206 F.3d 1422, 435-37 (Fed. Cir. 2000); *Odetics, Inc.* v. *Storage Tech. Corp.,* 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp.* v. *VSI Int'l, Inc.,* 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc.* v. *Cardinal Indus., Inc.,* 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *B. Braun Med Inc. v. Abbott Labs,* 124 F.3d 1419, 1424-25 (Fed. Cir. l997).

### 3.3.2    [GTECH VERSION: THE COURT DETERMINES WHAT PATENT CLAIMS MEAN]
### [SCIENTIFIC GAMES VERSION: DIRECT INFRINGEMENT -- LIMITATIONS OF THE ASSERTED CLAIMS]

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of each claim.  You must use the meaning that I give you for each patent claim to decide if the claim is **[GTECH VERSION:** infringed or invalid] **[SCIENTIFIC GAMES VERSION:** valid or infringed.]  You must ignore any different definitions used by the witnesses or the attorneys.

It may be helpful to refer to the copy of the'624  and '337 patents that you have been given as I discuss the claims at issue here.  The claims of the '624 patent are toward the end, starting in column 11.  The claims of the '337 patent are toward the end, starting in column 16.  I will give you a list of the asserted claims of the '624 and '337 patents as part of the verdict form when I conclude my instructions.

[Insert Claim Construction Here]

**SOURCE:**    The 2004 Uniform Jury Instructions § 3.3.2

15

### 3.3.3   OPEN-ENDED OR "COMPRISING" CLAIMS

The beginning, or preamble, to claim 18 of the '624 patent and claim 20 of the '337 patent use the word "comprising." "Comprising" means "including" or "containing." That is, if you find that Scientific Games' PlayCentral Kiosk includes all of the elements in claim 18 of the '624 patent or claim 20 of the '337 patent, the claim is infringed – any additional elements are irrelevant.

For example, a claim to a table *comprising* a tabletop, legs and glue would be infringed by a table that includes those elements, even if the table also includes additional elements, such as wheels on the table's legs.

**SOURCE:**     The 2004 Uniform Jury Instructions § 3.3.3

16

### 3.4    DIRECT INFRINGEMENT – LITERAL[5]

GTECH's patent claims are literally infringed if Scientific Games' PlayCentral Kiosk includes every element in GTECH's patent claims.  If Scientific Games' PlayCentral Kiosk omits any element recited in GTECH's patent claim, Scientific Games does not literally infringe that claim.

**SOURCE:**    The 2004 Uniform Jury Instructions § 3.3.1

---

[5]    Scientific Games proposes inserting this identical instruction on page 12.

17

## [SCIENTIFIC GAMES VERSION: INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS[6]

As I told you, a means-plus-function claim limitation describes a means for performing a particular function. I will now explain the three special rules that apply to the infringement of this type of claim language. First, Scientific Games' PlayCentral Kiosk must perform the function as specified in the claim. Specifically, you must first determine whether Scientific Games' PlayCentral Kiosk performs the required function. If not, the claim containing that means-plus-function element is not infringed.

Second, if Scientific Games' PlayCentral Kiosk does perform the required function, you must identify the structure in Scientific Games' PlayCentral Kiosk that actually performs this function.

Finally, you must determine whether that accused structure is the same as or equivalent to the structure that I have identified in the patent for performing the required function. If the structure of the accused device is the same as, or equivalent to, the structure in the patent that I have described, then the means-plus-function element is present.

Two structures are equivalent if a person of ordinary skill in the art would consider the differences between them to be insubstantial. One way to determine this is to look at whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill would have believed that the structure of the accused product and the structure in the patent were interchangeable as of the date that the patent was issued.

Source:  The 2004 Uniform Jury Instructions § 3.3.6]

---

[6]    GTECH's proposed instruction of means-plus-function claim limitations is set forth on pages 21-22 of these instructions.

### 3.5    DIRECT INFRINGEMENT – DOCTRINE OF EQUIVALENTS

[Scientific Games contends that GTECH is not entitled to rely on the doctrine of equivalents with respect to any claim elements in dispute in this case, and objects to any instruction to the jury on this subject.  If, however, the Court decides that such an instruction will be given, Scientific Games requests the following changes be made, as well as the addition of an instruction on the situations where the doctrine of equivalents is not available.]

If you do not find literal infringement of a claim **[GTECH VERSION:** to have been proven, you must decide whether infringement has been proven] **[SCIENTIFIC GAMES VERSION:** you may consider infringement] under the "doctrine of equivalents."  I have referred to the "doctrine of equivalents" before.  Now it is time to explain this term.

For there to be infringement under the doctrine of equivalents, every claim element must be present in the accused product.  A claim element may be present in an accused product in one of two ways, either literally or under the doctrine of equivalents.  A claim element is literally present if it exists in the accused product just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

A claim element is present in an accused product under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused product are insubstantial.  One way to determine this is to look at whether or not the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.  Another way is to consider whether or not people of ordinary skill in the art believe that the structure of the accused product and the element recited in the patent claim are interchangeable.

19

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether Scientific Games' PlayCentral Kiosk and its elements are equivalent to those defined in GTECH's claims is to be determined as of the time of the alleged infringement.

Equivalence is determined at the time of the activities accused of infringement and is not limited by what was known at the time the patent application was filed or when the patent issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

**SOURCE:**    The 2004 Uniform Jury Instructions § 3.4

**[GTECH VERSION: 3.6    INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS**

As I told you, a means-plus-function claim limitation describes a means for performing a particular function. A means-plus-function limitation may be present in an accused product literally or under the doctrine of equivalents.

To prove that an accused product includes a structure that is literally covered by a means-plus-function limitation, a patent owner must prove, first, that the accused product contains a structure that performs the identical function to the function recited in the means-plus-function limitation. Second, that the structure of the accused product that performs that function must be either identical or equivalent to the corresponding structure disclosed in the patent specification. The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function.

If the function performed by the structure is not identical to the function recited in the means-plus-function limitation, the patent owner may prove that the accused product is covered by the means-plus-function limitation under the doctrine of equivalents. To prove equivalents, the patent owner must prove, first, that the accused product contains a structure that performs an equivalent function to the one recited in the claim limitation, and second, that the structure that performs that function is identical or equivalent to the structure described in the patent specification.

Whether or not the structure or function of the accused product is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the art. A structure or function is equivalent if such

21

an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

One way of determining whether the structure of the accused product is equivalent to the structure disclosed in the specification is to determine whether or not persons of ordinary skill in the art believe that the structure disclosed in the specification and the structure of the accused product are interchangeable. Another way is to determine whether or not the accused structure performs the identical function in substantially the same way to achieve substantially the same result.

Let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The patent in our example discloses glue to secure the legs to the tabletop. Let's assume that the accused device uses nails. They both perform the claimed function of securing the legs to the tabletop. The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, whether in the patent or prosecution history the two are referred to as equivalent, and so on.

**SOURCE:** Fed. Cir. Model Jury Instruction § 8.8 citing 35 U.S.C. § 112 ¶ 6 (1984); *IMS Tech., Inc. v. Haas Automation, Inc.,* 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc. v. Deere & Co.,* 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1266-68 (Fed. Cir.1999); *WMS Gaming Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307-1310 (Fed. Cir.1998); *B. Braun Med. Inc. v. Abbott Labs.,* 124 F.3d 1419, 1424-25 (Fed. Cir. 1997).]

**[SCIENTIFIC GAMES VERSION: SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED**

[GTECH objects to any instruction to the jury on this subject. If, however, the Court decides that such an instruction will be given, GTECH requests the following changes be made.]

There are situations where resort to the doctrine of equivalents to find infringement is not permitted.

Patent law directly imposes certain limitations on the doctrine of equivalents. It is my duty and responsibility to decide whether or not any of these limitations applies in this case and to instruct you on my decision. In this action, as a matter of law, the doctrine of equivalents analysis cannot be applied to the following elements of the asserted claims:

[List elements on a claim-by-claim basis]

If an element in this list is not literally present within Scientific Games' PlayCentral Kiosk, there can be no infringement of the claim requiring that element.

**[SCIENTIFIC GAMES VERSION**: Secondly, resort to the doctrine of equivalents to find infringement is not permitted if you find that Scientific Games is merely making, using or selling what was in the prior art prior to the patented invention, or what would have been obvious to persons of ordinary skill in the art in light of what was in the prior art. A patent owner should not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent Office.][7]

You may not find infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is not present in the accused device. Thus, if you determine that a

---

[7]    GTECH proposes deleting this section.

23

finding of infringement under the doctrine of equivalents would entirely eliminate a particular

claimed element, then you should not find infringement under the doctrine of equivalents.

Source:  The 2004 Uniform Jury Instructions § 3.5.]

### 3.7    INFRINGEMENT DESPITE SCIENTIFIC GAMES' PATENTS [*SCIENTIFIC GAMES VERSION*: ON IMPROVEMENTS]

Scientific Games has presented evidence that its accused product [**GTECH VERSION:** is patented] [**SCIENTIFIC GAMES VERSION:** represents an improvement of the inventions described in the '337 and '624 patent claims.] Proof of this fact does not mean that Scientific Games cannot infringe GTECH's patent claims. The tests for infringement remain as I have instructed you – if you find Scientific Games' accused product includes all of the elements of at least one of GTECH's patent claims, [**GTECH VERSION:** either literally or under the doctrine of equivalents,] then GTECH's claims are infringed by Scientific Games' product, despite Scientific Games' [**GTECH VERSION:** patents] [**SCIENTIFIC GAMES VERSION:** improvements.]

**SOURCE:**    Adapted from the 2004 Uniform Jury Instructions § 3.6

### 3.8    DETERMINATION OF INFRINGEMENT

Taking each asserted claim of the **[GTECH'S VERSION:** '624 patent or the '337 patent]

**[SCIENTIFIC GAMES VERSION:** '337 patent or the '624 patent] separately, if you find that

GTECH has proven by a preponderance of the evidence that each element of the claim is present,

**[GTECH VERSION**: either literally or under the doctrine of equivalents,] in Scientific Games'

PlayCentral Kiosk, then you must find that Scientific Games' PlayCentral Kiosk infringes that

claim.


**SOURCE:**    The 2004 Uniform Jury Instructions § 3.12

26

### 3.9    WILLFUL INFRINGEMENT

GTECH contends that Scientific Games has willfully infringed the asserted claims of **[GTECH VERSION:** the '624 patent and the '337 patent] **[SCIENTIFIC GAMES VERSION:** the'337 patent and the '624 patent].

When a person becomes aware that a patent may have relevance to their activities, that person has a duty to exercise due care and investigate whether or not their activities infringe any valid claim of the patent. If that person does not do so and infringes the patent claims, then the infringement is willful.

Although GTECH must prove infringement by a preponderance of the evidence, **[GTECH VERSION:** GTECH must prove that Scientific Games willfully infringed by the higher burden of clear and convincing evidence.] **[SCIENTIFIC GAMES VERSION:** GTECH's burden of proving that the infringement was willful is the higher burden of clear and convincing evidence. Therefore, if you find on the basis of the evidence and the law as I have explained it that Scientific Games' PlayCentral Kiosk infringes at least one of the asserted claims, you must further decide whether GTECH has proven that Scientific Games' infringement was willful.] To establish willful infringement, GTECH must prove two things with clear and convincing evidence:

       1.     Scientific Games was aware of the **[GTECH VERSION:** '624 patent or the '337 patent] **[SCIENTIFIC GAMES VERSION:** the'337 patent or the '624 patent].

       2.     Scientific Games **[GTECH VERSION:** acted] **[SCIENTIFIC GAMES VERSION:** proceeded] with its activities without having a reasonable good faith belief that the patent was invalid or that the patent was not infringed.

27

[GTECH VERSION: To determine whether Scientific Games acted with a reasonable good faith belief or whether Scientific Games willfully infringed the '624 patent or, the '337 patent you must consider all of the facts, including the strength of the defenses raised by Scientific Games in this trial and the following factors:

1.    In designing the product accused of infringement, whether Scientific Games intentionally copied GTECH's invention or a product made by GTECH that is covered by the '624 patent or the '337 patent, or whether Scientific Games instead tried to "design around" the patent by designing a product that Scientific Games believed did not infringe the patent claims. Evidence of copying is evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims is evidence that the infringement was not willful.

2.    When Scientific Games became aware of the patent, whether Scientific Games formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether Scientific Games obtained and followed the advice of a competent lawyer. Although the absence of an opinion of counsel does not require you to find willfulness, the obtaining and following of counsel's advice may be evidence that infringement was not willful.]

Keep in mind that a determination by you that Scientific Games has infringed the patent does not automatically mean that the infringement was willful. As I have explained, the infringement is not willful if Scientific Games had a good faith belief that it did not infringe or that the patent was invalid, and if its belief was reasonable under all the circumstances.

28

**SOURCE:**    The 2004 Uniform Jury Instructions § 3.13

## 4.    VALIDITY

Scientific Games contends that **[GTECH VERSION**: claim 18 of the '624 patent and claims 20 and 21 of the '337 patent] **[SCIENTIFIC GAMES VERSION**: claims 20 and 21 of the '337 patent and claim 18 of the '624 patent] are invalid for failure to satisfy the legal requirements of patentability.  In particular, Scientific Games contends that the asserted claims are invalid as anticipated or rendered obvious by the prior art.  **[SCIENTIFIC GAMES VERSION**: Scientific Games also contends that claim 18 of the '624 patent is invalid for indefiniteness.][8]  I will now instruct you on each of these defenses.

**SOURCE:**    The 2004 Uniform Jury Instructions § 4

---

[8]    GTECH objects to the inclusion of the indefiniteness instruction as this issue is a matter of law that will be resolved by the claim construction.

### 4.1    PRESUMPTION OF VALIDITY

The granting of a patent by the Patent Office carries with it the presumption that **[GTECH VERSION**: the patent's] **[SCIENTIFIC GAMES VERSION**: the patent is valid. From issuance of the patent, it is presumed that its] subject matter is new, useful and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put at issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

**[GTECH VERSION**: Scientific Games has the burden of proving invalidity of each claim by clear and convincing evidence.]

**[SCIENTIFIC GAMES VERSION**: This presumption of validity puts the burden of proving invalidity on Scientific Games. While this presumption can be rebutted, the burden is on Scientific Games to do so. This burden requires that Scientific Games prove by clear and convincing evidence that in this case each of the asserted claims is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.]

**SOURCE:**    The 2004 Uniform Jury Instructions § 4.1

31

## 4.2    ANTICIPATION – GENERALLY

Scientific Games contends that the inventions covered by [GTECH VERSION: claim 18 of the '624 patent and claims 20 and 21 of the '337 patent] [SCIENTIFIC GAMES VERSION: claims 20 and 21 of the '337 patent and claim 18 of the '624 patent] are invalid because they are not new. A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If it is not new, we say that it was "anticipated" by the prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include other patents or devices that were [SCIENTIFIC GAMES VERSION: in public use or offered for sale or] sold before the invention of the [GTECH VERSION: '624 patent and the '337 patent.] [SCIENTIFIC GAMES VERSION: '337 patent or the '624 patent]. Prior art is the general body of knowledge in the public domain, such as articles or other patents [GTECH VERSION: before the invention was made.] It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to [GTECH VERSION: make use [SCIENTIFIC GAMES VERSION: avail itself] of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. To prove that an invention is "anticipated," Scientific Games must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention. [GTECH VERSION: However, if the claimed invention was formed only accidentally or under unusual conditions, it is not an invalidating anticipation.]

**SOURCE:**    The 2004 Uniform Jury Instructions § 4.5

32

### 4.2.1   PRIOR PUBLIC USE

[GTECH VERSION: Scientific Games contends that claim 18 of the '624 patent was anticipated because the invention defined in that claim was publicly used prior to February 17, 1988.

Scientific Games contends that claims 20 and 21 of the '337 patent were anticipated because the invention defined in those claims was publicly used prior to December 3, 1987.]

[SCIENTIFIC GAMES VERSION: Scientific Games contends that claims 20 and 21 of the '337 patent were anticipated because the invention defined in those claims was publicly used prior to December 3, 1986.

Scientific Games contends that claim 18 of the '624 patent was anticipated because the invention defined in that claim was publicly used prior to February 17, 1988.]

[GTECH VERSION: The "public use" of a completed invention before February 17, 1988 for the '624 patent and before December 3, 1987 for the '337 patent invalidates the patent.]

[SCIENTIFIC GAMES VERSION: The "public use" of a completed invention before December 3, 1986 for the '337 patent or before February 17, 1988 for the '624 patent invalidates the patent.] An invention is publicly used when it is made accessible to any member of the public other than the inventor or a person under an obligation of secrecy imposed by the inventor.  [GTECH VERSION: Thus, a patent is not invalidated if the particular device is used by someone other than the inventor, under circumstances where it is not made accessible to the public.]

[GTECH VERSION: If the prior public use was an experimental use that was performed to perfect or complete the invention to determine that it will work for its intended purpose, that use will not invalidate the patent.]

33

**SOURCE:**    The 2004 Uniform Jury Instructions § 4.5.2

**[SCIENTIFIC GAMES VERSION: ON-SALE BAR – GENERALLY**

[GTECH objects to any instruction to the jury on this subject. If, however, the Court decides that such an instruction will be given, Scientific Games requests the following changes be made.]

Scientific Games contends that the asserted claims are invalid because of the on-sale bar. It is against public policy to allow an inventor **[GTECH VERSION:** to commercially exploit his invention by selling or offering it for sale more than one year before the effective filing date of the patent, because this would have the effect of extending the term of the patent as fixed by Congress.] **[SCIENTIFIC GAMES VERSION:** to patent an invention that was offered for sale or sold more than one year before the filing date of the patent.]

The on-sale bar applies when: (i) an embodiment of the patent is the subject of a commercial offer for sale more than one year before the patent application date; and (ii) the invention was ready for patenting at that time. **[GTECH VERSION:** In this case, the critical date is February 17, 1988 for the '624 patent and December 3, 1986 for the '337 patent. Claim 18 of the '624 patent is invalid if you find that the claimed invention was "on sale" before February 17, 1988. Claims 20 and 21 of the '337 patent are invalid if you find that the claimed inventions were was "on sale" before December 3, 1986.] **[SCIENTIFIC GAMES VERSION:** In this case, the critical date is December 3, 1986 for the '337 patent, and February 17, 1988 for the '624 patent. Claims 20 and 21 of the '337 patent are invalid if you find that the claimed inventions were was "on sale" before December 3, 1986. Claim 18 of the '624 patent is invalid if you find that the claimed invention was "on sale" before February 17, 1988.]

35

If you find that such offers for sale were made, then the responsibility shifts to GTECH to prove that the offers **[GTECH VERSION:** were for an experimental use or**]** did not involve completely functional machines or processes.

Source:      The 2004 Uniform Jury Instructions § 4.7**]**

**[SCIENTIFIC GAMES VERSION:**
**ON-SALE BAR – COMMERCIAL OFFER FOR SALE**

In order for there to be an offer for sale, two requirements must be met:  (i) the product must have been the subject of a commercial offer for sale; and (ii) the product must be "ready for patenting."

To establish a commercial offer for sale, Scientific Games must demonstrate that there' was a definite sale or offer for sale in the United States before the critical date, and that the subject matter of the sale or offer for sale **[GTECH VERSION:** anticipated the claimed invention, or would have rendered the claimed invention obvious.**] [SCIENTIFIC GAMES VERSION:** anticipated the claimed invention by its addition to the prior art, or would have rendered the claimed invention obvious when the subject matter of the sale or offer for sale is added to what was known in the art.**]**

**[GTECH VERSION:** A commercial offer for sale occurs when an offer can be accepted in order to make a binding contract.  Determining if a commercial offer has been made requires looking closely at the language of the proposal itself and the interaction between the parties.**]**

An invention is ready for patenting either through a reduction to practice or by proof that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.

A single sale or even a single offer to sell **[GTECH VERSION:** primarily for profit, rather than for experimental purposes,**]** is sufficient to trigger the on-sale bar, even if the offer is not accepted.

Source:  The 2004 Uniform Jury Instructions § 4.7.1]

37

### 4.3    OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would have been obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

1.    Determine the scope and content of the prior art relied upon by Scientific Games.

2.    Identify the differences, if any, between each asserted claim of **[GTECH VERSION:** the'624 patent and claims of the '337 patent**] [SCIENTIFIC GAMES VERSION:** the '337 patent and the'624 patent**]** and the prior art.

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of **[GTECH VERSION:** claim 18 of the '624 patent and claims 20 and 21 of the '337 patent**] [SCIENTIFIC GAMES VERSION:** claims 20 and 21 of the '337 patent and claim 18 of the '624 patent**]** was made.

4.    Consider objective factors of non-obviousness, which I will describe to you in detail later.

Against this background, you must then decide whether **[GTECH VERSION:** Scientific Games has proven by clear and convincing evidence that**]**[9] the claimed subject matter would have been obvious to a person of ordinary skill in the pertinent art.

---

[9]    Scientific Games proposes deleting this language.

**SOURCE:**    The 2004 Uniform Jury Instructions § 4.8

### 4.3.1   SCOPE AND CONTENT OF THE PRIOR ART

In arriving at your decision on the issue of whether or not the claimed invention would have been obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. Prior art includes the following:

1.      **[GTECH VERSION:** Patents that issued before February 17, 1988 for the '624 patent and before December 3, 1986 for the '337 patent;**]** **[SCIENTIFIC GAMES VERSION:** Patents that issued before December 3, 1987 for the '337 patent or before February 17, 1989 for the '624 patent;**]**

2.      **[GTECH VERSION:** Anything in public use or on sale in the United States before February 17, 1988 for the '624 patent and before December 3, 1986 for the '337 patent.**]** **[SCIENTIFIC GAMES VERSION:** Anything in public use or on sale in the United States before December 3, 1986 for the '337 patent or before February 17, 1988 for the '624 patent.**]**

**SOURCE:**     The 2004 Uniform Jury Instructions § 4.8.1

40

### 4.3.2   DIFFERENCES OVER THE PRIOR ART

You must next consider the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to **[GTECH VERSION**: consider] **[SCIENTIFIC GAMES VERSION**: note] differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

**SOURCE:**    The 2004 Uniform Jury Instructions § 4.8.2

### 4.3.3  LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology, and the education of others working in the field.

**SOURCE:**    The 2004 Uniform Jury Instructions § 4.8.3

### 4.3.4  MOTIVATION TO COMBINE

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention.  Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.  **[GTECH VERSION:** Both the suggestion or motivation to combine and the expectation of success must be found in the prior art.**]**

**SOURCE:**     The 2004 Uniform Jury Instructions § 4.8.4

### 4.3.5   OBVIOUSNESS – HINDSIGHT

The question of obviousness is simple to ask but difficult to answer.  A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the **[GTECH VERSION: '624 patent or the '337 patent] [SCIENTIFIC GAMES VERSION: '337 patent or the '624 patent]** as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.  Instead, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

**SOURCE:**    The 2004 Uniform Jury Instructions § 4.8.5

44

### 4.3.6   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

In making your decision as to the obviousness or non-obviousness of the claimed invention, you **[GTECH VERSION:** must**] [SCIENTIFIC GAMES VERSION:** may**]** consider the following objective evidence that may tend to show the non-obviousness of the claims at issue:

1.      commercial success or lack of commercial success of products covered by the patents-in-suit;

2.      a long-felt need in the art that was satisfied by the invention of the **[GTECH VERSION:** '624 patent or the '337 patent**] [SCIENTIFIC GAMES VERSION:** patents-in-suit;**]**

3.      the failure of others to make the invention;

4.      copying of the invention by others in the field;

5.      praise of the invention by the infringer or others in the field; and

6.      the taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the **[GTECH VERSION:**  '624 patent or the '337 patent,**] [SCIENTIFIC GAMES VERSION:** '337 patent or the '624 patent,**]** then any commercial success may have no relation to the issue of obviousness.

**SOURCE:**      The 2004 Uniform Jury Instructions § 4.8.6

### 4.3.7   OBVIOUS TO TRY

The evidence might indicate to you that what the inventors did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard; rather, it is whether the invention as a whole would have been obvious to those of ordinary skill in the pertinent art at the time the invention was made.

**SOURCE:**     The 2004 Uniform Jury Instructions § 4.8.7

## [SCIENTIFIC GAMES VERSION: DEFINITENESS

[GTECH objects to any instruction to the jury on this subject as indefiniteness is a matter of law to be resolved during claim construction. ]

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

If a patentee uses means-plus-function language to claim its invention, the patentee must disclose in the patent specification what is meant by that language. If the patentee fails to disclose in the patent specification what is meant by the claim language, it has failed to satisfy the requirements for writing patent claims. The patent specification must clearly describe and link the structure necessary for performing the required function.

Scientific Games contends that the '624 patent specification fails to adequately describe and link the structure necessary for "dispensing" lottery tickets as required by claim 18.

Sources:  Federal Circuit Bar Association Model Jury Instruction § 10.5; *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291 (Fed. Cir. 2005); *In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994) (*en banc*).]

## 5.    DAMAGES

### 5.1    GENERALLY

If, after considering all of the evidence and the law as I have stated it, you have determined either that: (i) no asserted claim is infringed by Scientific Games, or (ii) clear and convincing evidence shows that any infringed claim is invalid, then your verdict should be for Scientific Games and you need go no further in your deliberations. If **[SCIENTIFIC GAMES VERSION:** you have determined that**]** at least one asserted claim is infringed and is not invalid, you must then turn to the issue of damages.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.1

### 5.2    COMPENSATORY DAMAGES IN GENERAL

Patent law provides that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Scientific Games benefited from, realized profits from or even lost money as a result of the acts of infringement. It is also not relevant if Scientific Games did not foresee that it would cause GTECH damage at the time that it infringed the asserted claims. The only issue is the amount necessary to adequately compensate GTECH for Scientific Games' infringement. Adequate compensation should return GTECH to the position it would have occupied had there been no infringement.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.2

### 5.3    BURDEN OF PROOF

[GTECH VERSION: GTECH has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty.]

[SCIENTIFIC GAMES VERSION: GTECH has the burden of proving damages by a preponderance of the evidence.  As you recall, that means that GTECH has to produce evidence that, when considered in light of all the facts, leads you to believe that what GTECH claims is more likely true than not.  To put it differently, if you were to put GTECH's and Scientific Games' evidence concerning damages on the opposite sides of a scale, the evidence supporting GTECH's claims would have to make the scales tip somewhat on its side.  GTECH is entitled to all damages that can be proven with reasonable certainty.]  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to GTECH's right to recover damages.  On the other hand, GTECH is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or [GTECH VERSION: the result of mere] [SCIENTIFIC GAMES VERSION: left to] conjecture.  You may base your evaluation of reasonable certainty on opinion evidence.  Any doubts regarding the computation of the amount of damages should be resolved against Scientific Games and in favor of GTECH.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.3

### 5.4    DATE DAMAGES MAY BEGIN

[GTECH VERSION: In this case, you should begin calculating damages as of date the infringement began.]  [SCIENTIFIC GAMES VERSION: The date GTECH first gave notice to Scientific Games of its claim of patent infringement is the date at which patent damages begin to be calculated.  That date of notice is in dispute here, and it is up to you to determine the date on which GTECH communicated to Scientific Games a specific charge of infringement.  In any event, the date GTECH first gave notice to Scientific Games of its claim of patent infringement can be no later than March 4, 2004, the filing date of this lawsuit.]

SOURCE:    The 2004 Uniform Jury Instructions § 5.4

### 5.5     METHODS FOR COMPUTING DAMAGES

There are two common methods for computing damages in a patent infringement case.  One is called "lost profits" damages and the other is called "reasonable royalty" damages. **[SCIENTIFIC GAMES VERSION:** These are alternative methods of computing damages; you may award either lost profits or a reasonable royalty for each infringing sale made by the accused infringer.  You cannot, however, award both lost profits and a reasonable royalty for the same sale.]

In determining damages, you should first determine whether GTECH has proven its entitlement to lost profits.  If you find that GTECH is not entitled to lost profits, you should then calculate damages based upon another method, which may include a reasonable royalty.


**SOURCE:**     The 2004 Uniform Jury Instructions § 5.5

### 5.6     LOST PROFITS – GENERALLY

In this case, GTECH is seeking lost profits as its patent damages.  Lost profit damages are the profits GTECH asserts it lost because of the infringement.  They are not the profits Scientific Games actually made.  **[GTECH VERSION:** GTECH's lost profits may be in several different forms, but are commonly in the form of:  (i) lost sales, (ii) eroded prices, or  (iii) increased expenses caused by the infringement.]  In this case, GTECH must establish that **[GTECH VERSION:** the infringement caused its lost profits]  **[SCIENTIFIC GAMES VERSION:** its lost profits were caused by the infringement.  Thus, GTECH must show that "but for" the infringement, GTECH would have made the sales or profits that were allegedly lost.

**SOURCE:**     The 2004 Uniform Jury Instructions § 5.7

### 5.7   LOST PROFITS FROM LOST SALES

GTECH is claiming that it lost sales because of Scientific Games' alleged infringement.  In order to recover lost profits damages for the sales that Scientific Games made, GTECH must show:

1.    There was a demand for the patented product;

2.    GTECH had the ability to meet the market demand;

3.    No acceptable non-infringing substitutes were available; and

4.    The amount of the profit it would have made.

[GTECH VERSION: GTECH is entitled to recover lost profits damages if it establishes that the infringement caused GTECH to lose sales of products that compete with the infringing products, even if the products GTECH would have sold were not covered by the asserted patents. That is, if GTECH establishes that the infringement caused GTECH to lose sales of an unpatented product or a product covered by a different patent, GTECH is entitled to recover the profits it lost for those lost sales.[10]]

GTECH need not negate every possibility that purchasers of Scientific Games' PlayCentral Kiosk might have bought another product or no product at all.  The mere existence of a competing device does not make that product an acceptable substitute.  To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products.  [GTECH VERSION: However, consumer demand for the unique advantages of a patented invention, as opposed to an alleged non-infringing substitute, may suggest that there is no acceptable non-infringing substitutes.] [SCIENTIFIC GAMES VERSION: However, the uniqueness of a patented product suggests that there might be no acceptable non-infringing substitutes.] [GTECH VERSION:  In addition, a proposed competitive substitute does

---

[10]      *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544-1549 (Fed. Cir. 1995) (en banc).

not preclude GTECH from recovering lost profits damages if Scientific Games did not have that proposed substitute actually on-sale or readily available for sale at the time of the infringement. If you find that Scientific Games would have had to design or invent around the patented technology to develop a proposed substitute, that is evidence that the proposed substitute was not readily available to Scientific Games and does not preclude GTECH from recovering lost profits.[11]]

In proving its damages, GTECH's burden of proof is not an absolute one, but rather a burden of reasonable probability. If it is reasonably probable that GTECH lost sales because of the infringement, and it is reasonably probable what amount GTECH would have netted from the denied sales, then Scientific Games is liable for the lost profits on those lost sales.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.8

---

[11]    *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed. Cir. 2003).

## 5.8    LOST PROFITS – COLLATERAL SALES

Under some circumstances, a patent owner may recover lost profits for lost sales of products that it would normally expect to sell with its competing product. In this case, GTECH contends that the competing product is ordinarily sold along with collateral products. If you find that GTECH lost sales of its competing product due to Scientific Games' infringement, you should then determine if the infringement also resulted in GTECH's losing sales of its collateral products.

To recover lost profits on sales of collateral products, GTECH must prove two things. First, GTECH must show that it would probably have sold collateral products if it had made a sale of the competing product. Second, GTECH must show that the collateral products functioned together with the competing product to produce a desired end product or result.[12]

If you find that GTECH has proven these two facts, then the profit that GTECH would have made from those collateral sales should be part of any damages awarded to GTECH.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.9

---

[12]    The word "competing" is substituted for the word "patented" in the model instructions to be consistent with the law that the product the patentee would have sold need not be patented. Rite-Hite Corp. v. Kelley Co., Inc., 56 F.3d 1538, 1544-1549 (Fed. Cir. 1995) (en banc).

**[GTECH VERSION: 5.9     FUTURE PROFITS – DETERMINATION**

In considering the element of future profits, you should determine whether or not Scientific Games' infringement of the '337 patent or the '624 patent prevented GTECH from earning profits that it would have earned but for that infringement. In determining whether or not any part of GTECH's damages constitute future profits, you may consider the past experience of GTECH and Scientific Games in the business, the competition GTECH would have had, and the general market conditions. GTECH cannot rely upon mere speculation.

**SOURCE:**     The 2004 Uniform Jury Instructions § 5.13]

## 5.10    REASONABLE ROYALTY AS A MEASURE OF DAMAGES

If you find that GTECH [**GTECH VERSION:** has not established that the infringement has caused it lost profits damages] [**SCIENTIFIC GAMES VERSION:** is not entitled to recover lost profits,] then GTECH is entitled to [**GTECH VERSION:** damages no less than a reasonable royalty for the use made of the invention by the Scientific Games.] [**SCIENTIFIC GAMES VERSION:** a reasonable royalty with regard to any infringing sales.]   A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall.  Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so [**GTECH VERSION:** warrant, but you may not award less than a reasonable royalty.] [**SCIENTIFIC GAMES VERSION:** warrant.]

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between GTECH and Scientific Games, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, [**GTECH VERSION:** which in this case would be the late third quarter or early fourth quarter 2003 time period.]

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of Scientific Games was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Scientific Games.  You must also assume that GTECH would have been willing to grant a license.  Finally, you must assume that both GTECH and Scientific Games knew all

pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Scientific Games' use of the patented invention, including the opinion testimony of experts.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.14

### 5.10.1    FACTORS FOR DETERMINING REASONABLE ROYALTY

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1.    The royalties received by GTECH for the licensing of others under the '337 patent or the '624 patent;

2.    The rates paid **[GTECH VERSION:** by licensee GTECH, Scientific Games or others**]** for the use of other patents comparable to the '337 patent or the '624 patent;

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    GTECH's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between GTECH and Scientific Games, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    The effect of selling the patented specialty in promoting sales of other products of Scientific Games, the existing value of the invention to GTECH as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.    The duration of the patent and the length of the licenses;

8.    The established profitability of the product made under the patent, its

commercial success and its current popularity;

9.      The utility and advantages of GTECH's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10.     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by GTECH, and the benefits to those who have used the invention;

11.     The extent to which Scientific Games has made use of the invention, and any evidence that shows the value of that use;

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Scientific Games;

14.     The opinion testimony of qualified experts; and

15.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.14.1

### 5.11   INTEREST

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.15

### 5.12    CLOSING STATEMENT – DAMAGES

[GTECH'S VERSION: The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of GTECH. Finally, if you find GTECH is entitled to damages, you may not include or add to the award any sum for purposes of punishing Scientific Games or to set an example.]

[SCIENTIFIC GAMES VERSION: In determining the amount of a damages award, the Court instructs you that the law does not permit an award of damages greater than the monetary loss that GTECH has suffered as a result of Scientific Games' alleged infringement.  If, under the Court's instructions, you find GTECH is entitled to damages, in fixing the amount of such damages, you may not include and/or add to the award of any sum for purposes of punishing Scientific Games or to set an example.]

SOURCE:    The 2004 Uniform Jury Instructions § 5.16

## [SCIENTIFIC GAMES VERSION: EFFECT OF INSTRUCTIONS AS TO DAMAGES

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of GTECH.

**SOURCE:**    The 2004 Uniform Jury Instructions § 5.17]

## 6.    DELIBERATIONS AND VERDICT

### 6.1    INTRODUCTION

My instructions on the law are now finished.  I will end by explaining how you will conduct your deliberations in the jury room and about your possible verdicts.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  If you have any questions or messages, you must write them on a piece of paper, sign them and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.


**SOURCE:**    The 2004 Uniform Jury Instructions § 6.1

### 6.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the evidence with your fellow jurors.  Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges – judges of the facts, and, in the end, your vote must be exactly that – your own vote.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

[[**SCIENTIFIC GAMES VERSION:** Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  What the verdict shall be is your sole and exclusive duty and responsibility.]

**SOURCE:**    The 2004 Uniform Jury Instructions § 6.2

### 6.3    DUTY TO DELIBERATE

You are now free to talk about the case in the jury room.  In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

**SOURCE:**    The 2004 Uniform Jury Instructions § 6.3

### 6.4    COURT HAS NO OPINION

Let me finish by repeating something that I said to you earlier.  Nothing that I have said or done during this trial, **[GTECH VERSION:** nothing about my instructions, and nothing about the form of the verdict**]**  was meant **[GTECH VERSION:** to convey what I think your verdict should be or**]** to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

**SOURCE:**    The 2004 Uniform Jury Instructions § 6.4