IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION,

        Plaintiff,

        v.

SCIENTIFIC GAMES INTERNATIONAL,
INC., SCIENTIFIC GAMES HOLDINGS
CORPORATION, SCIENTIFIC GAMES
FINANCE CORPORATION, and
SCIENTIFIC GAMES CORPORATION,

        Defendants.

C.A. No. 04-138-JJF

**REDACTED VERSION**

**SCIENTIFIC GAMES' MOTION IN LIMINE NO. 1 TO PRECLUDE GTECH
FROM PRESENTING EVIDENCE OR ARGUMENT CONCERNING
SCIENTIFIC GAMES' OPINIONS OF COUNSEL**

Scientific Games International, Inc., Scientific Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games Corporation (collectively, "Scientific Games") respectfully move in limine to preclude GTECH Corporation ("GTECH") from referring to, offering any evidence regarding, or seeking to draw any inferences relating to opinions of counsel received by Scientific Games concerning the patents in suit.

Pursuant to the Court's Scheduling Order, Scientific Games was required to decide by April 15, 2005, whether it intended to assert an advice of counsel defense in defending against GTECH's allegation of willful infringement (D.I. 50). Scientific Games decided not to assert an advice of counsel defense, and not to waive the attorney-client privilege and work-product immunity with respect to its opinions of counsel. On April 15, 2005, Scientific Games supplemented its response to Interrogatory No. 5, stating that it was not relying on an advice of counsel defense and was not waiving the privilege with respect to its opinions of counsel (emphasis added):

> Scientific Games states that it received a written legal opinion concerning U.S. Patent No. 4,982,337, from Lance D. Reich, Esquire, of Arnall Golden Gregory LLP, on April 1, 2004, and that it received a written legal opinion concerning U.S. Patent No. 5,222,624, from Mr. Reich on April 14, 2004. *Scientific Games does not intend to rely on those opinions in defending against GTECH's charge of willful infringement.*

In *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) (*en banc*), the Federal Circuit held that "the assertion of attorney-client and/or work-product privilege and the withholding of the advice of counsel shall no longer entail an adverse inference as to the nature of the advice." GTECH, nevertheless, seeks to introduce evidence at trial concerning the fact that Scientific Games obtained opinions of counsel that it has chosen not to disclose.[1]

GTECH has included Scientific Games' Supplemental Response to Interrogatory No. 5 (quoted above) (*see* PTX 456), as well as Scientific Games' Privilege Log (*see* PTX 43), on its exhibit list (D.I. 175, Ex. 12). GTECH also asked Scientific Games to stipulate to the following facts in connection with the Joint Pretrial Order:

> 23.    Scientific Games does not rely on advice of counsel as a defense to GTECH's assertion that Scientific Games' infringement of the claims of the '337 patent has been and/or continues to be willful.

> 24.    Scientific Games does not rely on advice of counsel as a defense to GTECH's assertion that Scientific Games' infringement of the claims of the '624 patent has been and/or continues to be willful.

*   *   *

---

[1]    One way to deal with the potential prejudice caused by GTECH's attempts to present evidence concerning Scientific Games' opinions of counsel would be to bifurcate damages and willfulness for trial.

27.    Scientific Games has not produced an opinion of counsel on which it can rely with regard to either the '337 patent or the '624 patent.


REDACTED


The only possible reason for offering such evidence would be to suggest to the jury that, because Scientific Games did not disclose its opinions of counsel, it must have received unfavorable advice.  *See Knorr-Bremse*, 383 F.3d at 1345.  As Judge Jordan has noted, there is no reason why a patentee (in light of *Knorr-Bremse*) should be permitted to introduce evidence at trial about an opinion of counsel that was not disclosed:

> . . . I have never yet heard anybody make a reasoned argument to me why it could be put before a jury after the *Knorr-Bremse* opinion that an opinion was received but not tendered.  And in the absence of that, I'm inclined to think there probably isn't a reasoned argument.  That the only reason for putting it in front of a jury would be so that they draw an adverse inference, which was what *Knorr-Bremse* says could not happen.

*Pharmacia & Upjohn Co. v. Sicor Inc.*, C.A. No. 04-833 (D. Del.), Transcript of October 11, 2005 Telephone Conference, at 38 (Ex. B).

4.

GTECH should be precluded from referring to, offering any evidence regarding, or seeking to draw any inferences relating to Scientific Games' opinions of counsel.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____ */s/ Rodger D. Smith II* _____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  Attorneys for Defendants

Original Filing Date:  January 24, 2006

Redacted Filing Date:  February 1, 2006

500714

# EXHIBIT A

Redacted

# EXHIBIT B

— SHEET 1 —

**1**

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           IN AND FOR THE DISTRICT OF DELAWARE
 3                      - - -
 4   PHARMACIA & UPJOHN COMPANY,      :  CIVIL ACTION
 5            Plaintiff and           :
 6            Counter-defendant,      :
 7      v.                            :
 8   SICOR INC., and SICOR            :
     PHARMACEUTICALS INC.,            :
 9                                    :
10            Defendants and          :  NO. 04-833 (KAJ)
              Counter-Claimants.
11                      - - -
12                 Wilmington, Delaware
              Tuesday, October 11, 2005 at 3:00 p.m.
13                 TELEPHONE CONFERENCE
14                      - - -
15   BEFORE:     HONORABLE KENT A. JORDAN, U.S.D.C.J.
16                      - - -
     APPEARANCES:
17
18   MORRIS NICHOLS ARSHT & TUNNELL
     BY:  MARYELLEN NOREIKA, ESQ.
19
              and
20
     McDONNELL BOEHNEN HULBERT & BERGHOFF, LLP
21   BY:  DANIEL A. BOEHNEN, ESQ.,
          JOSHUA R. RICH, ESQ., and
22        GRANTLAND G. DRUTCHAS, ESQ.
          (Chicago, Illinois)
23
              Counsel for Pharmacia & Upjohn
24            Company
25
                       Brian P. Gaffigan
                       Registered Merit Reporter
```

**2**

```
 1   APPEARANCES: (Continued)
 2
 3   ASHBY & GEDDES
     BY:  JOHN G. DAY, ESQ.
 4
              and
 5
     SONNENSCHEIN NATH & ROSENTHAL, LLP
 6   BY:  REID L. ASHINOFF, ESQ. and
          DAVID R. BAUM, ESQ.
 7        (New York, New York)
 8            and
 9   SONNENSCHEIN NATH & ROSENTHAL, LLP
     BY:  JORDAN A. SIGALE, ESQ.
10        (Chicago, Illinois)
11            Counsel for Sicor Inc. and Sicor
              Pharmaceuticals Inc.
12
13
14                    - oOo -
15              P R O C E E D I N G S
16       (REPORTER'S NOTE:  The following telephone
17   conference was held in chambers, beginning at 3:00 p.m.)
18            THE COURT:  Hi, this is Judge Jordan.  Who do I
19   have on the line?
20            MS. NOREIKA:  Good afternoon, Your Honor.  It's
21   Maryellen Noreika from Morris Nichols for plaintiff
22   Pharmacia; and I have with me, Dan Boehnen and Joshua Rich
23   of the McDonnell Boehnen firm in Chicago.
24            MR. BOEHNEN:  Also with us in Chicago is Grant
25   Drutchas.
```

**3**

```
 1            MS. NOREIKA:  Oh.  I apologize, Grant.
 2            THE COURT:  All right.  Who do I have on for
 3   Sicor?
 4            MR. DAY:  Good afternoon, Your Honor.  On behalf
 5   of Sicor, you have John Day from Ashby & Geddes as local
 6   counsel; and from the Sonnenschein firm in New York, Reid
 7   Ashinoff and David Baum; and from Sonnenschein's office in
 8   Chicago, Jordan Sigale.
 9            THE COURT:  All right.
10            MR. ASHINOFF:  Good afternoon, Your Honor.
11            THE COURT:  Good afternoon.  Well, by my count,
12   this is the fifth time we're getting together in this case
13   because we have discovery issues.  So this is not a good
14   record, ladies and gentlemen, but we're going to plow
15   through what we've got here.
16            Before we start, however, I have a question
17   for the folks at Sicor, and that is, I got the in camera
18   submission that you sent over.  Did you send a version,
19   redacted, if you thought necessary, of your legal argument
20   to the opposing counsel?
21            MR. ASHINOFF:  Your Honor, what we served on
22   the opposing counsel is a motion that we filed and a
23   privilege log that listed the privilege material that the
24   Court got.  What we served in camera on the Court was the
25   short discussion of the substance of the privileged material
```

**4**

```
 1   and the actual privileged material.  We did not serve copies
 2   of the discussion and description of the privilege material
 3   or the actual material on our adversary.
 4            THE COURT:  All right.  I need to have you
 5   identify yourself for the record.
 6            MR. ASHINOFF:  It's Reid Ashinoff.  I'm sorry,
 7   Your Honor.
 8            THE COURT:  All right.  Mr. Ashinoff, that's not
 9   going to cut it.  I'm going to quote to you what I said in
10   our last teleconference on the 19th of September.  Page 24
11   of the transcript:
12            "You can certainly submit your documents in
13   camera and your legal arguments ought to be submitted so
14   that the other side can respond to them."
15            Later on the same page:
16            "In short, you give me the documents but you
17   give your arguments to the attorney side, too, so they can
18   respond unless it's something genuinely extraordinary that
19   you think will get past me; all right?"
20            And what I was trying to communicate there and
21   what I will reemphasize is I'm not going to let you give me
22   legal argument without an opportunity for them to respond to
23   legal argument.
24            MR. ASHINOFF:  Your Honor, I don't think we cite
25   any law at all in the material we submitted in camera.  What
```

SHEET 10

**37**

1    couple of weeks to respond to.
2         And then if you folks on the Sicor side want to
3    do some follow-up deposition discovery, targeted at
4    inquiring about specific facts that are revealed in the
5    context of these interrogatory responses, you're free to
6    do that.
7         I take the point that Pharmacia is making here,
8    which is it's so broadly worded, it can't help but really be
9    a circumstance where somebody is asked to know every fact
10   pertaining to every contention and that's a little bit much
11   to put on a deponent.
12        So that is the resolution to that. You want to
13   treat them as contention interrogatory attorneys. Done.
14   Answer them in two weeks.
15        And then if you have some follow-up and more
16   targeted and specific 30(b)(6) effort you want to make,
17   Sicor, you follow up on it that way.
18        MR. ASHINOFF: Thank you, Your Honor.
19        THE COURT: Now, let me tell you one last thing.
20   And this is for you, Mr. Ashinoff, in the discussions that
21   you are going to be having with your client, to the extent
22   again that this is helpful.
23        And again, we're treading here carefully and
24   I'm very careful when we talk about the attorney-client
25   privilege. I want to assure you I have not made lightly

**38**

1    the decision I made about how to approach the bifurcation
2    request. To the extent it's helpful in your discussing
3    with your client my understanding of the Knorr opinion, I
4    view Knorr-Bremse as saying no adverse inference can be
5    drawn from either failing to get an opinion or declining to
6    produce it; that you are entitled to get your opinion and
7    to stay silent about it.
8         Viewing it that way, I have never yet heard
9    anybody make a reasoned argument to me why it could be
10   put before a jury after the Knorr-Bremse opinion that an
11   opinion was received but not tendered. And in the absence
12   of that, I'm inclined to think there probably isn't a
13   reasoned argument. That the only reason for putting it
14   in front of a jury would be so they draw an adverse
15   inference, which with what Knorr-Bremse says could not
16   happen.
17        So I give that to you as my best reading of
18   Knorr, in the absence of people having really been able to
19   put it forth, but I think it only fair, since people are
20   trying to grope around and make a decision, that they grope
21   a little less blindly. I hope that is helpful to you.
22        MR. ASHINOFF: It is, Your Honor. And it
23   actually comports with literally a 100-year old doctrine
24   in federal law in other appellate courts to the extent of
25   saying that to force somebody to assert the privilege in

**39**

1    front of a jury is reversible error and that comports with
2    what Your Honor is saying.
3         THE COURT: Okay. Well, I thank you for your
4    time today. I hope it has been helpful in getting some
5    things worked out. Let me tell you real quickly what I'm
6    looking for as a date in February because this is going to
7    appear in a revised scheduling order that we'll put out.
8    I'm going to see you folks for argument on February 3rd
9    instead of January 19th. That's a Friday. All right?
10        MR. BOEHNEN: Your Honor, one quick point for
11   Pharmacia.
12        THE COURT: Yes.
13        MR. BOEHNEN: Can we have a new date when our
14   briefs in opposition to bifurcation will be due? I would
15   suggest two weeks after they produced papers to us if they
16   chose to rely upon them.
17        THE COURT: Mr. Ashinoff, you're fine with that,
18   I assume.
19        MR. ASHINOFF: Yes, as long as Mr. Boehnen
20   doesn't in the interim try to put my witness in the chair
21   and force us to go through all kinds of contortions about
22   privilege.
23        THE COURT: Well, I'm sure everybody wants to be
24   efficient here, or at least I would like to think so.
25        Mr. Boehnen, you take that point, I'm sure.

**40**

1         MR. BOEHNEN: Yes, sir.
2         MR. ASHINOFF: Your Honor, one last comment on
3    what Your Honor last said, and I apologize for this.
4         This law firm has an annual weekend once a year
5    where it gathers its partners and their spouses and et
6    cetera and it happens to be February 1st through 4th of
7    2006.
8         THE COURT: Okay. That is enough said. I will
9    not trample on a firm tradition. If it's the 1st through
10   the 4th, then I'm shifting you guys to the next day I can
11   give you. And I think it's, yes, the next day I can give
12   you is the 9th and that's when I will set you down. We'll
13   do this at 10:00 a.m. on February 9th.
14        Can you do that, Mr. Boehnen?
15        MR. BOEHNEN: Yes, sir.
16        THE COURT: Okay.
17        MR. ASHINOFF: Thank you very much, Your Honor.
18        MR. SIGALE: Your Honor, I'm sorry. This is
19   Mr. Sigale. We left open the claim construction dates. You
20   were suggesting December 12th for the opening brief. The
21   opposition brief would be due?
22        THE COURT: It will follow the ordinary course:
23   Two weeks for answer, one week for reply.
24        MR. SIGALE: Right, which would be the 26th of
25   December; and inasmuch as I don't observe Christmas, I would

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on February 1, 2006, I caused to be electronically filed under seal Scientific Games' Motion in Limine No. 1 to Preclude GTECH from Presenting Evidence or Argument Concerning Scientific Games' Opinions of Counsel (Redacted Version) with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE  19899

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

> Josy W. Ingersoll
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, DE  19899

### BY FEDERAL EXPRESS

> Thomas J. Meloro
> Kenyon & Kenyon
> One Broadway
> New York, NY  10004

> _/s/ Rodger D. Smith II_
> Rodger D. Smith II (#3778)
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com
>     Attorneys for Defendants