# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| GTECH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 04-138-JJF |
| v. | ) | |
| | ) | |
| SCIENTIFIC GAMES INTERNATIONAL, INC., | ) | |
| SCIENTIFIC GAMES HOLDINGS | ) | |
| CORPORATION, SCIENTIFIC GAMES | ) | |
| FINANCE CORPORATION, and SCIENTIFIC | ) | |
| GAMES CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## GTECH'S OPPOSITION TO SCIENTIFIC GAMES'
## MOTION *IN LIMINE* NO. 3
## TO PRECLUDE GTECH FROM PRESENTING
## EVIDENCE CONCERNING MARKING

Dated: February 2, 2006

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH
Corporation*

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Karen Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
alundgren@ycst.com

Scientific Games' motion to preclude GTECH from offering evidence concerning marking should be denied.

Scientific Games for years has had, and continues to have, thousands of GTECH machines in its possession – machines which have on them patent labels with the relevant patent numbers on them. Thus, Scientific Games knows, and Scientific Games has long had the evidence establishing, that GTECH has complied with the patent marking statute.

In this litigation, GTECH diligently complied with its discovery obligations, identifying Mr. Roberts as knowledgeable about GTECH's machines and producing requested documents. Scientific Games deposed Mr. Roberts but **never** questioned him about marking. Scientific Games never asked to inspect GTECH's machines, presumably because Scientific Games already had thousands of those machines in its possession, with the very same patent labels on them that GTECH intends to offer through Mr. Roberts at trial.

## STATEMENT OF FACTS

Scientific Games has owned and operated thousands of instant ticket vending machines ("ITVMs") of GTECH and GTECH's predecessors Interlott Technologies, Inc. ("Interlott") and OnPoint Technologies ("OnPoint"). In West Virginia, during the 1990's, Scientific Games maintained at least 100 ITVMs from OnPoint and Interlott. (*See* Ex. A, SGI005134 (Interlott and OnPoint ITVMs); Ex. B, GTECH052028 (100 Interlott TTS ITVMs)). In Georgia, through at least 2003, Scientific Games maintained at least 500 Interlott ITVMs. (*See* Ex. A, SGI005134 (Interlott ITVMs); Ex. C, SGI024579 (500 Interlott TTS ITVMs)). In Pennsylvania, **from 2003 through the present day**, Scientific Games has owned and operated thousands of GTECH,

OnPoint and Interlott ITVMs.[1]  (*See* Ex. D, GTECH052030 (2400 Interlott TTS ITVMs; 1050 GTECH EDSQ ITVMs); Ex. E, GTECH042635-6 (Scientific Games' March 2005 order to GTECH for 2400 additional GTECH EDSQ ITVMs); Ex. F, SGI061627-29 at SGI061629 (59 OnPoint ITVMs)).  Scientific Games also has Interlott and OnPoint machines at its headquarters. (*See* Ex. G (Whiteman Dep., July 6, 2005, pp. 52-54)).

During the time period relevant to this litigation, since at least the beginning of 2002 through the present, all of GTECH, Interlott and OnPoint ITVMs have consistently been marked with labels having the pertinent patent numbers on them.  (*See* D.I. 155 (Roberts Decl.) at paras. 15-16; D.I. 153 (Zimmer Decl.) at paras. 15-16).  Scientific Games has had access to these labels, and thus the proof of patent marking, through its ownership and operation of thousands of GTECH, Interlott and OnPoint ITVMs.

In this litigation, in GTECH's Initial Disclosures, GTECH identified Brian Roberts as a person having knowledge regarding "Current GTECH ticket dispensing products" (ITVMs). (*See* Ex. H (GTECH's Initial Disclosures, August 13, 2004)).  During fact discovery, GTECH produced documents evidencing patent marking, specifically parts lists for ITVMs listing "LABEL, PATENT."  (*See* D.I. 155 (Roberts Decl.) at Ex. E (p. INLO-009246), Ex. I (p. INLO-010169), Ex. L (p. INLO-074862) and Ex. Q (p. INLO-012308)).  GTECH also produced an electronic image of at least one patent label.  (*See* D.I. 155 (Roberts Decl.) at Ex. R2 (p. GTECH-E 2730)).

During fact discovery, Scientific Games never issued a document request specific to marking, never asked an interrogatory specific to marking, and never noticed a Rule 30(b)(6)

---

[1]  In November 2003, Scientific Games acquired IGT OnLine Entertainment Systems, Inc., and, with it, ownership of the Interlott machines in Pennsylvania.

topic on marking. Scientific Games never questioned any witness about the patent marking documents that GTECH had produced. Moreover, Scientific Games never questioned Mr. Roberts about marking at his May 6, 2005 deposition.

In June 2005, at the end of fact discovery, Scientific Games briefly questioned two GTECH witnesses about marking, George Voutes and Patrick Costaregni. Contrary to Scientific Games' representations, neither Mr. Voutes nor Mr. Costaregni was a Rule 30(b)(6) witness on patent marking (indeed, Scientific Games never asked for a Rule 30(b)(6) witness on patent marking). Mr. Voutes and Mr. Costaregni testified that, to answer the marking questions, they would consult a person in GTECH's manufacturing department or would look at the machines. (D.I. 185 at Ex. E, pp. 39-41, & Ex. F, pp. 121-122). Scientific Games never followed up on this testimony by asking for a witness knowledgeable about marking or, more importantly, by asking to inspect the machines. If it had, GTECH would have accommodated the request. As it stood, however, there was no need, as Scientific Games already had possession of thousands of GTECH machines and, consequently, the evidence of marking.

Months later, on September 16, 2005, Scientific Games **for the first time** indicated its allegation that GTECH could not prove marking, in its damages expert's report. On November 14, 2005, Scientific Games filed a summary judgment motion including the same allegation. (D.I. 130). In GTECH's response, GTECH submitted declarations from Mr. Roberts and Mr. Richard Zimmer. The declaration of Mr. Roberts attached patent marking documents that GTECH had produced during discovery, along with pictures that had been taken of various machines. (D.I. 153; D.I. 155).

In Scientific Games' summary judgment reply brief, even though Scientific Games has thousands of GTECH machines in its possession, Scientific Games presented **no** evidence that

GTECH had failed to comply with the patent marking statute. Because GTECH's evidence of patent marking is uncontroverted, GTECH requested that summary judgment on the issue be granted in GTECH's favor. (D.I. 149).

## ARGUMENT

A court should consider the following factors in determining if a witness or evidence should be excluded:

> (1) the prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance.

*Greate Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994).

In its motion, Scientific Games seeks to exclude the following:

> (1)  testimony from Mr. Roberts;
>
> (2)  exhibits on marking allegedly not produced during discovery; and
>
> (3)  testimony from Mr. Zimmer.

(D.I. 185 at 5).

GTECH addresses each of these separately.

## A.    Testimony from Mr. Roberts

GTECH identified Mr. Roberts in initial disclosures as a person knowledgeable about GTECH's machines. Scientific Games deposed Mr. Roberts but did not question him about marking of the machines. Scientific Games complains that GTECH did not identify him as a witness specifically knowledgeable about "marking," but Scientific Games never requested a witness to testify specifically about "marking." GTECH identified Mr. Roberts as knowledgeable about the machines, and Scientific Games had the opportunity to question him about the labels and patent markings on the machines. Because GTECH identified Mr. Roberts

and Scientific Games had the opportunity to depose him, there is no prejudice to Scientific

Games if Mr. Roberts testifies at trial. By contrast, there is extreme prejudice to GTECH if he is

prevented from testifying. Accordingly, Scientific Games' request to preclude Mr. Roberts from

testifying should be denied.

**B.      Exhibits On Marking Allegedly Not Produced During Discovery**

In its brief, Scientific Games asserts, "During fact discovery, GTECH … did not produce

any documents demonstrating marking of any products with the numbers of the patents in suit."

(D.I. 185 at 3). That assertion is simply wrong. GTECH produced documents evidencing

marking during fact discovery, including the documents identified on GTECH's exhibit list as

PTX 476, PTX 477, PTX 478, PTX 479, PTX 658, PTX 659, PTX 661 and PTX 662. (D.I. 175

at Ex. 12).

There is only one patent marking exhibit on GTECH's exhibit list that even arguably was

not produced during fact discovery, but that exhibit (PTX 475, D.I. 175 at Ex. 12) is simply a set

of photographs of actual, physical ITVMs. The photographs did not exist during fact discovery,

as they were taken only after Scientific Games disputed marking. However, the underlying

machines from which the photographs were taken are duplicative of the actual machines in

Scientific Games' own possession, custody and control. Thus, Scientific Games has had access

to this same evidence during all of fact discovery.

Under the standard set forth in *Greate Bay*, the photographs of the actual machines

should not be precluded. There is no prejudice or surprise to Scientific Games, as thousands of

the actual machines have been and still are in Scientific Games' own possession. Moreover,

Scientific Games never asked to inspect machines in GTECH's possession. By contrast, the

preclusion of this evidence would be highly prejudicial to GTECH.

**C.      Testimony from Mr. Zimmer**

Frankly, GTECH had not expected that patent marking would be an issue at all, because both parties know well that GTECH has complied with the marking statute. Scientific Games did not make an issue of patent marking during fact discovery. However, when Scientific Games indicated in its rebuttal damages expert report and summary judgment motion that it would dispute GTECH's ability to prove marking, GTECH identified Mr. Zimmer nearly two months ago as a witness for trial on the issue. GTECH represented that Mr. Zimmer's trial testimony would be limited to the patent marking facts set forth in his summary judgment declaration. Because Mr. Zimmer had not been deposed, GTECH offered to make Mr. Zimmer available for a deposition. GTECH's counsel wrote:

> If the issue of patent marking is an issue that Scientific Games intends to dispute at trial, then GTECH intends to call Richard Zimmer as a witness. The subject matter of Mr. Zimmer's testimony would be patent marking by Interlott and GTECH, which is addressed in Mr. Zimmer's declaration submitted with GTECH's summary judgment answer brief.
>
> Please let us know whether patent marking is an issue that Scientific Games intends to dispute at trial. If so, we are willing to make Mr. Zimmer available for a short deposition.

(*See* Ex. I (e-mail dated December 5, 2005)).

Mr. Zimmer had been identified previously, during fact discovery. On May 6, 2005, Mr. Roberts identified Mr. Zimmer as a person knowledgeable about the manufacturing of the machines. Mr. Roberts testified as follows:

> Q. Now, other than you, are you aware of anyone currently employed at GTECH who was involved in the conception, research, design, engineering, development, testing, manufacture, operation of ITVMs made, used, sold or offered for sale by Interlott?

> A. The only person that I am aware of would be in the capacity
> here of manufacturing.
>
> Q. And who is that person?
>
> A. A gentleman by the name of Rich Zimmer.

(*See* Ex. J (Roberts Dep., May 6, 2005, p. 202)). Scientific Games never followed up on this testimony with a request for testimony from Mr. Zimmer or from anyone else on marking.

Applying the *Greate Bay* factors, there is no prejudice or surprise to Scientific Games. Mr. Zimmer was identified during fact discovery, and, in any event, his testimony is about machines which are in Scientific Games' own possession. Even if the fact that Scientific Games has not deposed Mr. Zimmer were prejudicial, that is easily cured, as GTECH two months ago offered Mr. Zimmer for a deposition. There is no bad faith on GTECH's part, as GTECH simply did not expect Scientific Games to dispute the marking issue, on which there can be no legitimate dispute.

## CONCLUSION

For the above reasons, GTECH respectfully requests that the Court deny Scientific

Games' motion *in limine* no. 3 to preclude GTECH from presenting evidence and testimony

concerning marking.

Respectfully submitted,

Dated: February 2, 2006    By:    _Andrew A. Lundgren_____

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Karen Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
*Of Counsel:*    1000 West Street, 17th Floor
Thomas J. Meloro    P.O. Box 391
Larissa A. Soccoli    Wilmington, Delaware 19889
Andrew Reibman    Telephone: (302) 571-6600
KENYON & KENYON LLP    Facsimile: (302) 571-1253
One Broadway    alundgren@ycst.com
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH
Corporation*

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on February 2, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE 19801

I further certify I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com

*Attorneys for GTECH Corporation*