REDACTED -- Public Version, filed February 2, 2006

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GTECH CORPORATION, )
)
)
Plaintiff, )
)            Civil Action No. 04-138-JJF
)
v. )
)
SCIENTIFIC GAMES INTERNATIONAL, INC., )       REDACTED – PUBLIC VERSION
SCIENTIFIC GAMES HOLDINGS )
CORPORATION, SCIENTIFIC GAMES )
FINANCE CORPORATION, and SCIENTIFIC )
GAMES CORPORATION, )
)
)
Defendants. )

---

## MOTIONS *IN LIMINE* BY
## PLAINTIFF GTECH CORPORATION (NOS. 1- 8)

Dated: January 24, 2006

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

**REDACTED -- Public Version, filed February 2, 2006**

Plaintiff GTECH Corporation ("GTECH") respectfully moves *in limine* for the following

relief:

| MOTION NUMBER | MOTION |
|---|---|
| | **REDACTED** |
| 1. | Plaintiff moves *in limine* to exclude ███████████████ |
| 2. | Plaintiff moves *in limine* to ███████████████ ████████████████████████████████ |
| 3. | Plaintiff moves *in limine* to preclude Scientific Games from offering its ████████████████████████████████ |
| 4. | Plaintiff moves *in limine* to exclude: (a) prior art other than the references explicitly relied upon by Scientific Games' experts, and (b) Michael Keefe's lottery ticket experiments. |
| 5. | Plaintiff moves *in limine* to exclude reference to GTECH's not serving the complaint or not notifying Scientific Games that GTECH had filed the lawsuit. |
| 6. | Plaintiff moves *in limine* to exclude comparisons to preferred or commercial embodiments or physical specimens of such commercial embodiments. |
| 7. | Plaintiff moves *in limine* to exclude evidence and testimony concerning: (a) unrelated disputes, (b) prior litigations, (c) indefiniteness, (d) inventorship and (e) inequitable conduct. |

1

**REDACTED -- Public Version, filed February 2, 2006**

8.          Plaintiff moves *in limine* to preclude Scientific Games from offering color photographs of the Iowa PAT.

The bases for Plaintiff's *in limine* motions are set forth in the attached briefs, following the numbered tabs that correspond to the above list. Unless otherwise noted, exhibit references in the attached briefs are to the accompanying Appendix of Exhibits in Support of the Motions *in Limine* by Plaintiff GTECH (Nos. 1 through 8).

                                        Respectfully submitted,

Dated: January 24, 2006          By: _____
                                        YOUNG, CONAWAY, STARGATT &
                                        TAYLOR, LLP
                                        Josy W. Ingersoll (#1088)
                                        John Shaw (#3362)
                                        Andrew A. Lundgren (No. 4429)
                                        The Brandywine Building
                                        1000 West Street, 17th Floor
*Of Counsel:*                           P.O. Box 391
Thomas J. Meloro                        Wilmington, Delaware 19889
Larissa A. Soccoli                      Telephone: (302) 571-6600
Andrew Reibman                          Facsimile: (302) 571-1253
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

                                        2

REDACTED -- Public Version, filed February 2, 2006

TAB 1

REDACTED -- Public Version, filed February 2, 2006

## OPENING BRIEF IN SUPPORT OF
## GTECH'S MOTION *IN LIMINE* NO. 1:

**TO EXCLUDE** ████████████████████████████████

\*    \*    \*

GTECH moves *in limine* to preclude Scientific Games from offering into evidence ███

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ are attached

hereto as Exhibit 1.[1]  ███████████████ are not relevant to any issue in this case, have the

potential to confuse the jury and to prejudice GTECH, will waste trial time, and are hearsay.

### STATEMENT OF FACTS

GTECH acquired the '337 patent through its acquisition of Interlott Technologies, Inc.

("Interlott"). When Interlott owned the '337 patent, On-Point, then a competitor of Interlott,

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

The structure and operation of the "helical" burster are not at issue in this case, nor is the

issue of whether On-Point's machines with "helical" bursters would infringe the '337 patent.

The jury in this case will be faced with comparing the '337 patent to the accused PlayCentral

machine and deciding whether the PlayCentral machine infringes. Evidence regarding On-

---

[1]    Exhibit references are to the accompanying Appendix of Exhibits in Support of the
Motions *in Limine* by Plaintiff GTECH (Nos. 1 through 8).

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

Point's completely different machines and whether they would infringe would be unnecessarily confusing to a jury.

However, that is not the only source of potential jury confusion here.  Gregor Neff, ███ ████████████████████████████████████████ was also the attorney who prosecuted the application for the '337 patent before the U.S. Patent & Trademark Office.  At the time he prosecuted the application for the '337 patent, Gregor Neff was acting on behalf of the prior owners of the rights to the '337 patent.  It was only **after** the '337 patent was acquired years later by Interlott that Gregor Neff ████████████████████████████████████████ These additional facts are a source of further confusion, as the jury may be led to give undue weight ███████████████ because the author of them was the attorney who prosecuted the '337 patent.

The confusion does not end there, however.  To make matters even more confusing, in 2001, after Gregor Neff ████████████████████ Interlott acquired the ITVM business of On-Point.  Thus, On-Point's ITVM assets are now owned by plaintiff GTECH, which acquired Interlott in 2003.  This is a further potential source of confusion, because the jury may erroneously attribute ████████████████████ to GTECH, via Interlott's acquisition of On-Point's business.  GTECH could be erroneously viewed as the recipient ████████████.

Gregor Neff has not been identified by Scientific Games as a trial witness.

## ARGUMENT

Rule 402 of the Federal Rules of Evidence states:

> … Evidence which is not relevant is not admissible.

Rule 403 of the Federal Rules of Evidence states:

**REDACTED**

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In this case, ███████████████ are not relevant to any issue to be tried. The jury is deciding the issue of whether the PlayCentral machine infringes, not whether On-Point machines infringed. Moreover, the issue of infringement by the PlayCentral machine is for the jury to decide based on the claim construction issued by the Court here and based on the evidence presented at trial regarding the accused PlayCentral machine. Gregor Neff had neither when he ████████████████████████.

If Scientific Games were to present the ████████████ to the jury, GTECH would be forced to respond with a detailed presentation of the differences and similarities between On-Point's "helical" burster and the PlayCentral burster. This would be confusing and a waste of time, as there is no reason for the jury otherwise to hear any evidence at all regarding the structure or function of On-Point's "helical" burster.

Similarly, if Scientific Games were to present ██████████████ to the jury, GTECH would be forced to respond with a detailed presentation of the differences and similarities between ████████████████████████ the claim construction of the Court. Again, this would be confusing and a waste of time, as there is no reason for the jury otherwise to hear any evidence at all regarding ████████████████████.

Because Gregor Neff who ████████████████████ prosecuted the '337 patent, the jury could erroneously give undue weight to ██████████. Similarly, because GTECH now owns On-Point's assets, the jury could erroneously view GTECH as the recipient of ████████ and

3

**REDACTED**

again give undue weight to them.  To unravel this confusion, GTECH would need to spend trial time to explain the various relationships between Gregor Neff and the prior owners of the '337 patent, Interlott, and On-Point.  These explanations are a waste of trial time and would be unnecessary if the opinions are excluded, as they should be.

Gregor Neff is not on Scientific Games' trial witness list.  His statements ███████ █████ constitute hearsay.  Scientific Games should not be able to introduce such hearsay without putting Gregor Neff on the stand, giving GTECH the opportunity to cross-examine him. Fed. R. Evid. 802.  No hearsay exception applies here.

Accordingly, ███████████ are inadmissible as irrelevant under Fed. R. Evid. 402, confusing, prejudicial, and a waste of time under Fed. R. Evid. 403, and as hearsay under Fed. R. Evid. 802, and should be excluded.

# REDACTED

4

REDACTED -- Public Version, filed February 2, 2006

### CONCLUSION

For the foregoing reasons, Scientific Games should be precluded from offering into evidence ███████████████.

Respectfully submitted,

Dated: January 24, 2006

By: _A̶n̶d̶r̶e̶w̶ ̶A̶.̶ ̶L̶u̶n̶d̶g̶r̶e̶n̶_____

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201
*Attorneys for Plaintiff GTECH Corporation*

**REDACTED**

5

REDACTED -- Public Version, filed February 2, 2006

**TAB 2**

REDACTED -- Public Version, filed February 2, 2006

## OPENING BRIEF IN SUPPORT OF
## GTECH'S MOTION *IN LIMINE* NO. 2:

**TO PRECLUDE REFERENCE TO** ████████████
████████████ **TO SCIENTIFIC GAMES CONCERNING THE PATENTS-IN-SUIT,**
<u>**BASED UPON ITS REFUSAL TO PRODUCE**</u> ████████████ **TO GTECH**

\* \* \*

GTECH hereby moves *in limine* to preclude Scientific Games from presenting any

evidence that raises its ████████████████████████████ to rebut

GTECH's allegations of willful infringement of the patents-in-suit, because Scientific Games did

not produce ████████████ during discovery.

### STATEMENT OF FACTS

Scientific Games has maintained an assertion of attorney-client privilege with respect to

████████████████████████████. Scientific Games has withheld

████████████ from discovery. (*See* Ex. 2, Scientific Games' Supplemental Response to

Plaintiff's Interrogatory No. 5, April 15, 2005.)

### ARGUMENT

A party should not be able to introduce evidence regarding advice of counsel as a "sword"

to rebut a charge of willfulness, while at the same time using the "shield" of the attorney-client

privilege to prevent its opponent from discovering the substance of that advice.

In *Software AG Inc. v BEA Systems, Inc.*, 2005 U.S. Dist. LEXIS 6021, \*5-7 (D. Del.

2005) (Ex. 3), the defendant (BEA) sought to introduce evidence that its pre-litigation

correspondence with the plaintiff was handled by a patent attorney, in an effort to show lack of

willfulness. However, that party simultaneously asserted privilege as to that patent attorney's

1

**REDACTED**

private communications with the defendant. The court determined that "[t]he true value to BEA of this evidence is that it will permit BEA to give the jury a subtle 'wink wink,' in the hope that the jury will draw the improper inference that the patent attorney's involvement demonstrates BEA's lack of intent." *Id.* at *7. The court stated that given the obvious prejudice to the plaintiff, it would not permit the defendant to introduce the fact that the patent attorney was involved in defendant's pre-litigation correspondence with the plaintiff.

Courts have precluded defendants from relying on opinion letters that they chose to withhold, thus denying plaintiffs the opportunity to conduct appropriate discovery. *See Wright Manufacturing, Inc. v. Great Dane Power Equipment Inc., et al.*, 1998 U.S. Dist. LEXIS 19484, *1 & 8 (D. MD 1998) (Ex. 4); *Keyes Fibre Co. v. Packaging Corp. of America*, 763 F. Supp. 374, 376 (N.D. Ill. 1991). Similarly, courts have not permitted a party to raise a defense involving advice of counsel if the party resists discovery of the substance of the rendered advice on the grounds of attorney-client privilege. *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1012 (N.D. Ill. 1993); *see also Trouble v. Wet Seal*, 179 F.Supp.2d 291, 304 (S.D.N.Y. 2001); *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001); *Hamburger Color Co. v. Pan Chem. Corp.*, 1996 WL 537847, *2 (E.D. Pa. 1996)(Ex. 5). "Defendants cannot have it both ways; they cannot seek refuge in consultation with counsel as evidence of their good faith, yet prevent [plaintiffs] from discovering the contents of the communication." *Dorr-Oliver*, 834 F.Supp. at 1012. "[T]he privilege which protects attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (*citing U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)).

Evidence of advice of counsel includes the assertion that the substance of the advice of counsel was followed. *See, e.g., Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486 (3d Cir. 1995). Evidence of advice of counsel also includes the assertion that legal advice was sought, even if reliance on the advice is affirmatively disavowed or not mentioned. *Dorr-Oliver*, 834 F.Supp. at 1012 (rejecting distinction between asserting fact of consultation with counsel as part of defense to willful trademark infringement and asserting reliance on the content of the legal opinion); *In re ML-LEE Acquisition Fund II*, 859 F. Supp. 765, 767-68 (D. Del. 1994) (Judge Farnan) (rejecting distinction between the act of seeking legal advice and reliance on substantive advice). For instance, in *In re ML-LEE Acquisition Fund II*, this Court rejected the defendant's distinction between the "act" of consulting counsel as opposed to relying upon the substantive advice of counsel, because both tend to show that the defendants behaved in good faith. *In re ML-LEE Acquisition Fund II*, 859 F. Supp. at 767. Moreover, in *Dorr-Oliver*, the court ruled that any distinction between the fact of consultation and reliance on advice of counsel "defies logic." *Dorr-Oliver*, 834 F. Supp. at 1012. The court held that the "defendants must have disclosed the advice of counsel or they are precluded from raising the fact of legal consultation as part of their good faith argument." *Id.*

 Scientific Games should be precluded from using attorney-client privilege as both a shield and a sword.

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

## CONCLUSION

For the foregoing reasons, Scientific Games should be precluded from presenting any

evidence ███████████████████████████████████████████

Respectfully submitted,

Dated: January 24, 2006                    By: _____

                                                YOUNG, CONAWAY, STARGATT &
                                                TAYLOR, LLP
                                                Josy W. Ingersoll (#1088)
                                                John Shaw (#3362)
                                                Andrew A. Lundgren (No. 4429)
                                                The Brandywine Building
                                                1000 West Street, 17th Floor
*Of Counsel:*                                   P.O. Box 391
Thomas J. Meloro                                Wilmington, Delaware 19889
Larissa A. Soccoli                              Telephone: (302) 571-6600
Andrew Reibman                                  Facsimile: (302) 571-1253
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

**REDACTED**

4

REDACTED -- Public Version, filed February 2, 2006

**TAB 3**

REDACTED -- Public Version, filed February 2, 2006

## OPENING BRIEF IN SUPPORT OF
## GTECH'S MOTION *IN LIMINE* NO. 3:

**TO PRECLUDE SCIENTIFIC GAMES FROM** ██████████████

████████████████████████████████████

\*   \*   \*



## BACKGROUND OF THE LOST PROFITS ISSUE

As part of GTECH's damages case, GTECH alleges that Scientific Games' accused infringing PlayCentral machines have caused GTECH to lose sales and, consequently, profits. GTECH intends to show at trial that if Scientific Games had not been able to offer or ship the PlayCentral machines because they are infringing, GTECH would have been able to sell additional GTECH machines to fill the pertinent contracts in issue.

To prove lost sales, GTECH has the initial burden to show with a reasonable probability that, "but for" the infringement, GTECH would have made the asserted additional sales if the infringing PlayCentral machines were not available. *Grain Processing Corp. v. American Maize-*

1

**REDACTED**

*Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). Once such a showing is made, the burden shifts to Scientific Games to show that the claim is unreasonable. *Id.* Scientific Games may do so by presenting evidence that it would have been able to replace its infringing PlayCentral machines with an available, non-infringing machine that would have been acceptable to its customers. *Id.*

## STATEMENT OF FACTS

The only instant ticket vending machines ("ITVM's") on the market during the period of infringement besides GTECH's machines and the accused PlayCentral machines were machines from a third party company, Pollard Ltd. GTECH intends to offer proof at trial that because of the superiority of GTECH's machines, because of customer preference for GTECH's machines, because of the nature of Pollard's business, and because Scientific Games has in fact offered and delivered GTECH's machines and not Pollard's machines, if the PlayCentral were not available, Scientific Games and its customers would have turned to GTECH, not Pollard, for machines.

Patrick Costaregni, GTECH's Rule 30(b)(6) witness on the issue, testified as follows:



2

**REDACTED**



(Ex. 6, Deposition of P. Costaregni, June 7, 2005, pp. 28:1-8; 31:27-32:2; 32:19-25; 36:21-25

(objections omitted)).

GTECH sought discovery from Scientific Games regarding any alleged available non-

infringing alternatives on which Scientific Games was planning to rely to rebut GTECH's lost

profits claim. GTECH asked the following interrogatory:

> **Interrogatory No. 3:**
> Identify each TVM that Defendants contend is a non-infringing
> substitute or acceptable non-infringing alternative for PlayCentral
> Kiosk, and describe the market for PlayCentral Kiosk, and identify
> each person with knowledge of the TVMs and market and each
> document relating to the TVMs and market.

(Ex. 7, Plaintiff GTECH Corporation's First Set of Interrogatories, Aug. 27, 2004, p. 4).

3

**REDACTED**

Scientific Games initially objected to the interrogatory as premature; however, even after

GTECH's damages contentions were clear, Scientific Games never provided a response. (Ex. 8,

Scientific Games' Responses to Plaintiff's First Set of Interrogatories, Oct. 4, 2004, p. 6).

In a Rule 30(b)(6) deposition notice to Scientific Games, GTECH specifically requested a

witness to testify regarding Scientific Games' alleged non-infringing alternatives. That notice

included the following topic:

> 38.    Any products which Scientific Games believes or alleges
> are acceptable, non-infringing substitutes or alternatives to the
> inventions claimed in the patents-in-suit, including: (a) all reasons
> why such products would be acceptable to the customers who use
> Scientific Games' ITVMs and/or PlayCentral Kiosks; (b) all
> reasons why such products would be available to Scientific Games;
> (c) all reasons why such products would not be infringing the
> patents-in-suit; (d) all attempts by Scientific Games to implement
> such a system; and (e) any successes and failures in implementing
> such a system.

(Ex. 9, Plaintiff GTECH Corporation's Notice of Deposition of Defendants Scientific Games

International, Inc., et al. Pursuant to Fed. R. Civ. P. 30(b)(6), March 29, 2005, pp. 8-9).

Scientific Games objected to this Rule 30(b)(6) topic and never designated a witness to

respond to it. (*See* Ex. 10, Letter from Smith to Soccoli of May 16, 2005).

Scientific Games did designate a Rule 30(b)(6) witness to testify about most other

damages topics, Ms. Janine Whiteman. Ms. Whiteman's deposition took place 30 days after Mr.

Costaregni's deposition. Thus, at the time of Ms. Whiteman's Rule 30(b)(6) deposition,

Scientific Games was well aware of GTECH's position regarding the absence of available non-

infringing alternatives. Ms. Whiteman testified as follows:

4

REDACTED -- Public Version, filed February 2, 2006



(Ex. 11, Deposition of J. Whiteman, July 6, 2005, p. 86:2-15 (objection omitted)).

After the close of fact discovery, GTECH served its opening damages expert report, on August 12, 2005.  On September 16, 2005, Scientific Games served its rebuttal damages expert report, from Marion Stewart.



Moreover, by withholding disclosure of this proposed alternative until long after the close of fact discovery, Scientific Games prevented GTECH from questioning Scientific Games fact witnesses to test the merits of the proposed alternative.

5

**REDACTED**

**REDACTED -- Public Version, filed February 2, 2006**



because, despite GTECH's requests, Scientific Games did not tell

GTECH about this alleged alternative until over four and a half months **after** GTECH deposed

Mr. Bartolone (Mr. Bartolone was deposed April 27, 2005).



6

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

(Ex. 13, Deposition of M. Stewart, November 3, 2005 at pp. 75:17-23; 76:4-9; 76:16-24).



(*See* Ex. 12, Rebuttal Expert Report of Marion Stewart at pp. 8-9).  On the day that Scientific Games served Dr. Stewart's report, Scientific Games produced a document from the project.  (*See* Ex. 14, Letter from Smith to Soccoli of Sept. 16, 2005).  However, GTECH never had this or any other documents regarding this project during fact discovery, so GTECH was unable to ask any knowledgeable witness about them.



7

REDACTED

REDACTED -- Public Version, filed February 2, 2006



8

**REDACTED**

**REDACTED -- Public Version, filed February 2, 2006**

(Ex 13, Deposition of M. Stewart at pp. 78:2-79:5; 79:17-24; 83:8-16).

REDACTED -- Public Version, filed February 2, 2006

## ARGUMENT

I.    The ███████████████████████████████████████████████
Because, Under Federal Circuit Precedent, It Was Not "Available" As a Matter of
Law, and It Could Lead The Jury to an Erroneous Damages Calculation.

A proposed alternative that was not "available" at the time of the infringing activity is

deficient as a matter of law. *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed.

Cir. 2003). While a product need not be actually on the market to be "available," the record does

need to establish that it "readily" could have been put on the market. *Id.* at 1122.

In *Micro Chemical*, the Federal Circuit reversed the lower court judgment because the

accused infringer's proposed alternative, a hypothetical product, was not "available" as matter of

law. The record showed that the proposed alternative would have taken 984 design hours, 330

testing hours, and a number of months to develop. The Federal Circuit contrasted this to the

alternative in *Grain Processing*, in which the whole process took only two weeks:

> In *Grain Processing*, for example, the material and know-how for
> the alleged substitute were readily available [to the infringer] at the
> time of infringement. *Id.* at 1354. According to the record in that
> case, the infringer "had all of the necessary equipment, know-how,
> and experience" to make the substitution at that time. *Id.*
> Therefore, the infringer was able to convert to the substitute
> manufacturing process in the remarkably short period of two
> weeks. *Id.* at 1346. In *Grain Processing*, even the ready
> availability of material and know-how alone did not make the
> substitute process "available" for the lost profits calculus. This
> court also weighed the fact that "the high cost of a necessary
> material can conceivably render a substitute 'unavailable.'" *Id.*
> Similarly, this court noted that the finding that an infringer had to
> design or invent around the patented technology to develop an
> alleged substitute weighs against a finding of availability. *Id.* In
> sum, this court in Grain Processing weighed the factors that would
> show the substitute's effect on the market.

10

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

> In this case, the record evidence does not support the district
> court's grant of summary judgment on the availability of the
> Lextron Type 5 machine. The record shows that Lextron did not
> have the necessary equipment, know-how, and experience to make
> the Type 5 machine at the time of infringement. Lextron expended
> 984 hours to design the Type 5 machine and another 330 to test it.
> Charles Hofff, a Lextron engineer, worked full-time for several
> months on the design of the Type 5 machine. Thereafter, he
> continued to work part-time on the project, estimating that he
> tested and rejected five potential design changes. Lextron took
> over four months to convert all of its infringing Type 2 machines to
> Type 5 machines.

*Micro Chemical*, 318 F.3d at 1123. Based on the facts, the Federal Circuit held that the proposed

alternative was not available as a matter of law. *Id.*



The jury could improperly use it as a factor in determining the

amount of damages to award. Moreover, this cannot be corrected post-trial, because a post-trial

ruling that the proposed alternative was not "available" would require a new trial on damages.

**II.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Should Be Precluded
Because Scientific Games Withheld Disclosure of It During Discovery.**

**REDACTED**

**REDACTED -- Public Version, filed February 2, 2006**

The *Micro Chemical* case sets forth certain factors pertinent to whether an alleged non-infringing alternative was "available." These include the extent to which the accused infringer had the necessary equipment, know-how, and experience to make the proposed alternative. *Micro Chemical*, 318 F.3d at 1123.

Here, Scientific Games prevented GTECH from obtaining critical discovery on these factors, withholding disclosure ██████████████████████████████ until long after the close of fact discovery. Moreover, Scientific Games to this date has produced only one document regarding its attempts to develop ████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████, Scientific Games should be precluded from introducing evidence and argument regarding it.

## CONCLUSION

For the foregoing reasons, Scientific Games should be precluded from presenting evidence or argument regarding ████████████████████████████

████████████████████████████

**REDACTED**

12

REDACTED -- Public Version, filed February 2, 2006

Respectfully submitted,

Dated: January 24, 2006

By: _____

YOUNG, CONAWAY STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

13

REDACTED -- Public Version, filed February 2, 2006

**TAB 4**

REDACTED -- Public Version, filed February 2, 2006

OPENING BRIEF IN SUPPORT OF
GTECH'S MOTION *IN LIMINE* NO. 4:

TO EXCLUDE:
(A) PRIOR ART OTHER THAN THE REFERENCES EXPLICITLY
RELIED UPON BY SCIENTIFIC GAMES' EXPERTS, AND
(B) MICHAEL KEEFE'S LOTTERY TICKET EXPERIMENTS

\*   \*   \*

GTECH respectfully moves *in limine* to preclude Scientific Games from offering or entering into evidence the following documents or evidence or any testimony concerning them:

**A.    "Prior Art" Other Than That Specifically Relied Upon**

GTECH hereby moves *in limine* to preclude Scientific Games from offering any evidence or testimony concerning invalidity except for the opinions explicitly expressed by Scientific Games' experts as the basis for their anticipation and obviousness conclusions and the references relied upon for those opinions and conclusions (*i.e.,* the Iowa PAT, U.S. Patent No. 4,716,799 to Hartmann ("Hartmann") and the '337 patent), pursuant to Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Civ. P. 37(c)(1), as well as Federal Rules of Evidence 402 and 403.

(*See* Ex. 16, Opening Expert Report of Keefe at 15; Ex. 17, Opening Expert Report of Myers at 9).

1

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

identified on its 35 U.S.C. § 282 Notice that it may rely at trial on a number of references which

neither of their experts relied upon in support of Scientific Games' invalidity claims.  (*See* Ex.

18, Scientific Games' Notice Pursuant to 35 U.S.C. § 282).  These include the "Other Devices"

mentioned above, as well as U.S. Patent No. 4,261,497 to Roetter et al., and various magazines

(e.g., <u>Public Gaming</u> and <u>Gaming & Wagering Business</u>).  (*Id.*)



Scientific Games' experts should be precluded from offering any invalidity testimony or

opinions aside from those explicitly relied upon in their expert reports.  Similarly, Scientific

Games should be precluded from offering into evidence any of the patents, machines and/or

references listed as "Prior Art Devices," and references listed on their § 282 Notice, other than

those on which Scientific Games' experts based their invalidity opinions.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires an expert witness to

submit a report containing "a complete statement of all opinions to be expressed and the basis

and reasons therefor."  Fed. R. Civ. P. 26(a)(2)(B).  The expert report is intended to disclose "the

testimony the witness is expected to present during direct examination, together with the reasons

2

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

therefor." Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amendments. The report must also disclose "the data or other information considered by the [expert] witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B).

Fed. R. Civ. P. 37(c)(1) states that a party "shall not be permitted to use as evidence at a trial . . . any witness or information not so disclosed . . . unless such failure is harmless or there was substantial justification." Fed. R. Civ. P. 37(c)(1); *see also Pfizer Inc. v. Ranbaxy Labs. Ltd.*, No. 03-209-JJF, 2005 WL 3525681, at *2 (D. Del. Dec 22, 2005) (Ex. 19) (excluding expert testimony that was not disclosed in the expert report or during deposition); *Honeywell Int'l., Inc. v. Universal Avionics Systems Corp.*, 347 F.Supp.2d 129, 134-35 (D. Del. 2004) (precluding expert testimony that was conclusory); *Cuffee v. Dover Wipes Co.*, 334 F.Supp.2d 565, 572 (D. Del. 2004) (precluding expert testimony that was not disclosed prior to close of fact discovery).



Because these are the only invalidity opinions expressed in either expert report, and the only references relied upon, other invalidity arguments or opinions should be precluded, as should presentation or offering of testimony or evidence on these other references. To allow either expert to offer an opinion or testimony or to rely on any other prior art would vitiate the disclosure requirements of Fed. R. Civ. P. 26.

Further, Scientific Games should be precluded from offering these other references into evidence because they have no probative value. Neither expert raises these other references as

3

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

grounds for invalidity. They are not relevant to any other issue, and their presentation to the jury could create confusion and would be prejudicial. GTECH's experts' rebuttal to Scientific Games' invalidity claims is based on the invalidity assertions as they have been espoused by Scientific Games' experts in their expert reports. Because Scientific Games has not provided notice to GTECH of any issue for the jury to decide as to which of these other references are supposedly relevant, GTECH would be unfairly prejudiced if Scientific Games' experts testified or provided evidence regarding these other references.

For the foregoing reasons, Scientific Games should be precluded from offering any evidence or opinions from their experts on invalidity except for those opinions expressly set forth in their expert reports. Scientific Games should also be precluded from offering into evidence or making any arguments concerning references, patents or machines (the "Other Devices" and documents listed on Scientific Games' §282 Notice) other than ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

**B.    Prof. Keefe's Lottery Ticket Experiments**



4

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006



**REDACTED**



REDACTED -- Public Version, filed February 2, 2006



(Ex. 21, Keefe Dep. at 187:20- 190:25).

████████████████████████████████ constitutes spoliation of evidence

which is sanctionable under Fed. R. Civ. P. 37. The Court has the inherent authority to impose

sanctions for destruction of evidence. *See, e.g., In re Wechsler*, 121 F. Supp. 2d 404, 427 (D.

Del. 2000). Appropriate sanctions may include preclusion of evidence. *Id.*; *Schmid v.*

*Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994). The facts and circumstances to be

considered in determining the appropriate sanction for spoliation depends on the degree of fault

6

**REDACTED**

**REDACTED -- Public Version, filed February 2, 2006**

of the destroying party, the degree of prejudice from the spoliation, and whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and that, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Schmid*, 13 F.3d at 79.

The obligation to retain and produce evidence relied upon by an expert in connection with his expected testimony is explicitly clear through Fed. R. Civ. P. 26. Further, ███████████████████████████████████ ███████████████████████████. This was not inadvertent nor was it an accident.

As for prejudice, this spoliation of evidence is highly prejudicial to GTECH. Scientific Games essentially performed experimental work, relied on some of it, and discarded the rest. ██



GTECH has never had the opportunity to inspect the evidence destroyed or to assess its significance, thereby depriving GTECH of the opportunity to effectively cross-examine Prof. Keefe on this experiment or to present to the jury results that may have in fact been favorable to GTECH.

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

Accordingly, pursuant to FRE 403 and the Court's inherent authority, the experiment

should be precluded.

Respectfully submitted,

Dated: January 24, 2006                By: _____

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

8

REDACTED -- Public Version, filed February 2, 2006

TAB 5

REDACTED -- Public Version, filed February 2, 2006

## OPENING BRIEF IN SUPPORT OF
## GTECH'S MOTION *IN LIMINE* NO. 5:

## TO EXCLUDE REFERENCE TO GTECH'S NOT SERVING THE COMPLAINT OR NOT NOTIFYING SCIENTIFIC GAMES THAT GTECH HAD FILED THE LAWSUIT

\*   \*   \*

GTECH moves *in limine* to preclude Scientific Games from introducing evidence before the jury that GTECH did not serve the Complaint or otherwise notify Scientific Games that GTECH had filed this action. Scientific Games has indicated that it plans to introduce such evidence, just as it has repeatedly raised the point in its briefs. (*See, e.g.*, Scientific Games' Opening Claim Construction Brief (D.I. 110), at 1 ("GTECH never served the Complaint, or even advised Scientific Games that it had been filed."); *see also* Scientific Games' Opening Brief in Support of its Motion for Summary Judgment (D.I. 130), at 1.)

The only reason Scientific Games has for introducing such evidence is either to attempt to get the jury to conclude that GTECH's conduct in not serving the Complaint was improper or to attempt to get the jury to draw a negative inference regarding GTECH's state of mind. Neither is proper. Such evidence only distracts the jury from the issues being tried, and, moreover, creates an unnecessary and confusing sideshow regarding the Federal Rules of Civil Procedure.

The Federal Rules allow a plaintiff 120 days in which to serve a Complaint. Fed. R. Civ. P. 4(m). In this case, Scientific Games answered GTECH's Complaint 75 days after GTECH filed its original Complaint and did not raise any defense of insufficient service, thereby rendering service by GTECH of the Complaint unnecessary.

1

It is common for litigants to take time after filing a Complaint to consider other action prior to service, and the Federal Rules provide this time. This time allows a plaintiff, for example, to consider whether amendments to the Complaint are necessary or to consider possible settlement positions or other strategy.

If Scientific Games raises the issue of non-service of the Complaint, GTECH will be forced to respond by explaining the Federal Rules, creating an unnecessary sideshow. GTECH may also be forced to respond by introducing evidence of instances in which Scientific Games has taken the full time allowed by the Federal Rules to take a particular action or to serve a particular paper, taking critical trial time just to respond to a point that has no relevance to the matters the jury has to decide.

Accordingly, under Fed. R. Evid. 403, Scientific Games should be precluded from introducing evidence to the jury that GTECH did not serve the Complaint or otherwise inform Scientific Games that it had filed this action.

Respectfully submitted,

Dated: January 24, 2006    By: _____

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway

2

**REDACTED -- Public Version, filed February 2, 2006**

New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

3

REDACTED -- Public Version, filed February 2, 2006

TAB 6

REDACTED -- Public Version, filed February 2, 2006

### OPENING BRIEF IN SUPPORT OF
### GTECH'S MOTION *IN LIMINE* NO. 6:

### TO EXCLUDE COMPARISONS TO PREFERRED OR
### COMMERCIAL EMBODIMENTS OR PHYSICAL SPECIMENS
### OF SUCH COMMERCIAL EMBODIMENTS

*    *    *

GTECH hereby moves *in limine* to exclude evidence, argument, or testimony concerning infringement or non-infringement through comparisons of the accused product, the PlayCentral machine, to a preferred embodiment of an asserted patent or to another commercial product. Further, GTECH moves to preclude Scientific Games from demonstrating or entering into evidence any of its or its predecessors' commercial embodiments, including GTECH's, Interlott's or On-Point's bursters, such as DTX 125 (Interlott Classic Burster).

These types of comparisons and the physical specimens of commercial embodiments are not relevant, invite inappropriate, legally incorrect infringement comparisons between such commercial embodiments and the accused device, are highly prejudicial to GTECH, and are confusing and misleading.

### STATEMENT OF FACTS

GTECH has many commercial embodiments of lottery machines and components thereof. For example, GTECH's predecessor Interlott had various ITVMs (called, *e.g.*, the EDS, EDSQ, etc.) that employed three types of bursters for ticket separation. The original or "classic burster" had three motors, a blunt bursting wheel, cables and spool, pulley, drive rollers, and sensor with operating electronics and hardware. Tickets were aligned so that the perforations were adjacent the bursting wheel. A motor then drove the bursting wheel across the perforations from one side

1

to the other, sequentially bursting the perforations. Interlott later introduced a "mini-burster" with a rack and pinion arrangement to drive the burster wheel, which helped reduce the physical size of the original burster.

On-Point, whose ITVM business was acquired by Interlott (prior to GTECH's acquisition of Interlott), developed a "helical" burster for bursting lottery tickets. (This "helical" burster is what was considered in the On-Point opinions discussed in connection with motion *in limine* 1, *supra*). Interlott thereafter developed the "quad burster," incorporating ideas from On-Point's "helical" technology. The quad burster used a single helical separator to burst tickets across four different packs.

**ARGUMENT**

Any comparison of the accused device to anything other than the properly construed claims of the patents is inappropriate. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) ("Infringement, literal or by equivalence, is determined by comparing an accused product *not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee*, but with the properly and previously construed claims in suit.") (emphasis added); *see also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001) (the scope of a claim often covers more than the embodiments disclosed in the specification); *Spectrum International, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1381 (Fed. Cir. 1998) ("a court may not predicate an infringement determination on a comparison of an accused product with a patentee's commercial embodiment"); *ACCO Brands, Inc. v. Micro Security Devices, Inc.*, 346 F.3d 1075, 1081-82 (Fed. Cir. 2003) ("The language of the claim, not the patent owner's commercial product, is the measure of infringement.").

2

REDACTED -- Public Version, filed February 2, 2006

Here, comparisons of the accused PlayCentral device to the preferred embodiments disclosed in the specification[2] or to any of GTECH's commercial embodiments such as the EDS, EDSQ, GamePoint or the Interlott Classic Burster, mini-burster or quad-burster, for purposes of infringement or non-infringement are legally improper and should be precluded. Further, presentation of physical specimens such as DTX 125, which is described on Defendants' Exhibit List as a physical sample of an Interlott Classic Burster, are irrelevant as they do not tend to make the existence of any fact that is of consequence more probable or less probable. *See* Fed. R. Evid. 401 and 402; *see also Spectrum*, 164 F.3d at 1381; *ACCO*, 346 F.3d at 1081. They are also prejudicial, in that they will have the likely effect of confusing and/or misleading the jury into a legally inappropriate comparison of the accused product to the commercial products. Rule 403 of the Federal Rules of Evidence states:

> [E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... .

Fed. R. Evid. 403. Such is the case here. A jury could be susceptible to an impermissible comparison of two tangible, physical structures, rather than performing the proper, yet abstract, comparison of the accused device to the construction of the claims from the Court. This prejudice is exacerbated in the present case, with the presence of means-plus-function language in the claims. A jury is much more likely to be confused or misled by non-infringement

---

2    GTECH acknowledges that comparisons of the accused device to corresponding structure of a means-plus-function element is permissible. This motion is not intended to exclude such comparisons. The jury will be instructed on the construction of the claims including any corresponding structure for means-plus-function elements, and further that evaluation of those means-plus-function elements entails comparison between the corresponding structure as described in the patent specification and the accused device – not to the structure of any preferred embodiment as a whole or to any commercial embodiment of Plaintiff.

3

REDACTED -- Public Version, filed February 2, 2006

arguments comparing the preferred embodiments to the accused device particularly insofar as those comparisons involve aspects of the preferred embodiments **other than** the corresponding structure identified as part of the means-plus-function element.

Finally, the Court should preclude Scientific Games from offering into evidence or relying in any way on DTX 125 (the physical sample of the Interlott Classic Burster) for the additional reason that Scientific Games did not produce this item to GTECH during discovery, GTECH has not inspected it, and GTECH does not know its source.

## CONCLUSION

For the foregoing reasons, the Court should preclude Defendants from offering evidence or arguing non-infringement by comparing the accused PlayCentral device to the preferred embodiment disclosed in the patent or to commercial embodiments of the Plaintiff. Further, DTX 125, the purported physical specimen of an Interlott Classic Burster, should be excluded.

Respectfully submitted,

Dated: January 24, 2006

By: _____

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200

4

**REDACTED -- Public Version, filed February 2, 2006**

Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

5

**REDACTED -- Public Version, filed February 2, 2006**

**TAB 7**

REDACTED -- Public Version, filed February 2, 2006

OPENING BRIEF IN SUPPORT OF
GTECH'S MOTION *IN LIMINE* NO. 7:

TO EXCLUDE EVIDENCE AND TESTIMONY CONCERNING:
(A) UNRELATED DISPUTES, (B) PRIOR LITIGATIONS, (C) INDEFINITENESS,
(D) INVENTORSHIP, AND (E) INEQUITABLE CONDUCT

\*  \*  \*

GTECH hereby respectfully moves *in limine* to preclude Scientific Games from offering

evidence or testimony concerning the following:

A.    Unrelated Disputes

Mr. Robert Burr is named inventor on both the patents-in-suit. Mr. Burr owned a

company called Lottery Concepts International, Inc. ("LCI"). Mr. Edmund Turek, also named as

a potential witness in this case, initially worked for a company called "SCI". Together Mr. Burr

and LCI and Mr. Turek's group at SCI collaborated in the development of prototype lottery ticket

vending machines. Their initial collaboration gave rise to the invention of the '337 patent by Mr.

Burr and several engineers reporting to Mr. Turek. Later Mr. Turek left "SCI", and founded a

company called BLM Resources, Inc. ("BLM"), which acquired SCI's rights to the project and

continued the collaboration with Mr. Burr and LCI. Mr. Turek even served as a director of LCI.

However, Mr. Burr and Mr. Turek had a "falling-out," resulting in a dispute between Burr and

LCI and Turek and BLM.

The dispute between Burr and LCI and Turek and BLM resulted in a litigation in 1990.

(*See* Ex. 22, *BLM Resources, Inc. v. Lottery Concepts In'l, Inc., Amended Verified Complaint,*

(S.D. Ohio, Civil Action No. C-1-90-170)). BLM sued LCI and Mr. Burr for breach of contract

1

REDACTED -- Public Version, filed February 2, 2006

and for "conversion and piracy" of technology; Burr and LCI counterclaimed against Mr. Turek

for, *inter alia*, breach of fidicuiary duty, tortious interference with business relationships, and

breach of contract. The parties also disputed the ownership of intellectual property that arose out

of SCI's work with Mr. Burr. Notably, the litigation did <u>not</u> involve any issue of patent

infringement or validity. The *BLM v. LCI* litigation eventually settled, and the title of the '337

patent was confirmed as residing with BLM. (*See* Ex. 23, Settlement Agreement.)[3]

Scientific Games should be precluded from introducing evidence regarding disputes

between Mr. Burr and Mr. Turek and their respective companies, as well as the *BLM v. LCI*

litigation. None of these disputes bears any relevance to any claim or defense in this case.

Introducing these disputes into evidence would only be to paint Messrs. Burr and Turek (who

have both been named as potential trial witnesses) and their companies in an unsympathetic light.

The facts concerning the Burr-Turek dispute and *BLM v. LCI* litigations would be confusing to

the jury and highly prejudicial, while being of little if any probative value. Accordingly, such

evidence should be excluded. *See* Fed. R. Evid. 403.

---

3       The Settlement Agreement itself is the only document that is relevant because it is part of the chain of title
to the patents-in-suit. Unless Scientific Games stipulates to ownership, which it has refused to do to date, Plaintiff
may introduce this document to establish patent ownership. The disputes concerning Burr and Turek, however, have
nothing to do with the chain of title particularly since improper ownership has not been alleged as a defense by
Scientific Games here. Further, inventorship has not been pled or identified as a basis for invalidity of the patents
either, as discussed further in section (d) below. Thus, there is simply no probative value to allowing Scientific
Games to air what is nothing more than irrelevant "dirty laundry" to the jury.

REDACTED -- Public Version, filed February 2, 2006

**B.**    **Documents from Prior Litigations**

       **i. Affidavits from the *BLM v. Lottery Concepts Inc.* litigation (DTX 203-205)**

Defendant Scientific Games should be precluded from offering into evidence the three

affidavits from *BLM v. Lottery Concepts Inc.* litigation ("BLM litigation") that it lists on its trial

exhibit list (DTX 203-205).   These affidavits are from SCI employees, Messrs. Hardy, Turek and

Keagle.

These affidavits are inadmissible hearsay not subject to one of the hearsay exceptions

described in the Federal Rules of Evidence.  The three affidavits are out of court statements

offered to prove the truth of the matter asserted, i.e., hearsay. *See* Fed. R. Evid. 801-802.  The

affidavits also do not qualify for any of the hearsay exceptions.  For example, these affidavits do

not fall under the former testimony hearsay exception, Fed. R. Evid. 804(b)(1), because that

exception requires that the former "testimony" had been given as a witness or in a deposition

where the party against whom the testimony is now offered, or a predecessor in interest, had an

opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1).  There was no opportunity here for GTECH, or a predecessor, to have

developed the testimony by direct, cross, or redirect.

These affidavits also should be excluded because they are not relevant and do not make

the existence of any fact that is of consequence to the determination of this action more probable

or less probable. *See* Fed. R. Evid. 401 and 402.

3

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006



As such, this

evidence should also be precluded under Fed. R. Evid. 403, because any possible probative value

is greatly outweighed by the prejudice from the introduction of this evidence.

ii.    **Pleadings from *Interlott Technologies, Inc. v. On-Point Technology Systems, Inc.* litigation (DTX 206-210)**

Scientific Games should be precluded from offering into evidence or relying on any

pleadings from the *Interlott Technologies, Inc. v. On-Point Technology Systems, Inc.* litigation

("*Interlott v. On-Point* litigation"). Scientific Games has listed several pleadings from the

*Interlott v. On-Point* litigation on its Exhibit List, for example DTX 206-210 (Exs. 27 – 31,

respectively). Specifically, these pleadings are the Second Amended Complaint (Ex. 27, DTX

206), On-Point's Answer to Second Amended Complaint (Ex. 30, DTX 209), On-Point's

Amended Answer (Ex. 31, DTX 210), Affidavit of Brian Roberts (Ex. 29, DTX 208) and On-

Point's Response to the Plaintiff's First Set of Interrogatories (Ex. 28, DTX 207). These

documents have no bearing on the present case and are likely to cause significant prejudice by

confusing and misleading the jury.

The jury must decide whether the accused PlayCentral infringes the claims of the patents-

in-suit as those claims are construed by the Court in this case. The *Interlott v. On-Point* litigation

involved one of the asserted patents here, the '337 patent, but a **different** accused product.

Evidence from that case is irrelevant but could lead to jury confusion and may mislead the jury to

4

**REDACTED**

making improper conclusions about the patent and the accused product in the present case. In addition, because the papers were filed with the *Interlott* court, the jury may be inclined to give them unfair weight. The potential prejudice caused by these documents outweighs any marginal relevance these documents may have. Fed. R. Evid. 403.

### iii.    Expert Report of Dennis Guenther (DTX 214) from the *Interlott v. Pollard Banknote Ltd.* Litigation

In the *Interlott v. Pollard Banknote Ltd.*, Interlott retained Prof. Dennis Guenther Ph.D., P.E., as its technical expert, and he provided an expert report on issues of infringement of the '337 patent by Defendant Pollard and its accused ITVM machine. Scientific Games has listed Dr. Guenther's expert report from the *Pollard* litigation on its exhibit list. (D.I. 175, Joint Pretrial Order at Tab 13; Ex. 32, DTX 214). Scientific Games should be precluded from offering Dr. Guenther's report into evidence because it is hearsay not subject to any hearsay exception. Additionally, his report is not relevant to any issue in the present case and is only likely to confuse and/or mislead the jury.

Dr. Guenther's report is inadmissible hearsay under Rule 801 as it is an out of court statement which Scientific Games intends to offer for the truth of the matter asserted. *See* Fed. R. Evid. 802. The Third Circuit has held that an expert report offered by a party in a prior litigation does not qualify as non-hearsay evidence under Fed. R. Evid. 801(d)(2)(C) as an admission by a party-opponent. *Kirk v. Raymark Indus.*, 61 F.3d 147, 163 (3rd Cir. 1995).

> Kirk misconstrues the entire premise of calling expert witnesses. In theory, despite the fact that one party retained and paid for the services of an expert witness, expert witnesses are supposed to testify impartially in the sphere of their expertise. . . . Rule 801(d)(2)(C) requires that the declarant be an agent of the party-opponent against whom the admission is offered, and this

5

> precludes the admission of the prior testimony of an expert witness where, as normally will be the case, the expert has not agreed to be subject to the client's control in giving his or her testimony. Since an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give, the expert witness cannot be deemed an agent. . . .

> Because an expert witness is charged with the duty of giving his or her expert opinion regarding the matter before the court, we fail to comprehend how an expert witness, who is not an agent of the party who called him, can be authorized to make an admission for that party.

*Kirk*, 61 F.3d at 164 (internal citations omitted).

This Court addressed a similar question in *Pfizer Inc. v. Ranbaxy Labs., Ltd.*, 2005 U.S. Dist. LEXIS 20793, at *3-*4 (D. Del. Sept. 20, 2005) (Ex. 33). In *Pfizer*, this Court held that the expert reports of two of Defendants' experts were hearsay and were not admissible. This Court held that an expert witness was not an agent for the party; thus the documents were not admissions under Fed. R. Evid. 801(d)(2). *See Pfizer*, 2005 U.S. Dist. LEXIS 20793 at *3-*4.

Dr. Guenther's report also does not qualify under any of the hearsay exceptions set forth in Fed. R. Evid. 803 or 804. For example, it does not fall within the former testimony hearsay exception of Fed. R. Evid. 804(b)(1) at least because, as the Third Circuit held in *Kirk*, unavailability must be established by the proponent of the evidence, Scientific Games here, in order to avail itself of the former testimony exception. Unavailability cannot be established simply through the assertion that Dr. Guenther may be located outside the subpoena power of the Court, particularly when Scientific Games failed to employ "reasonable means" to retain or get Dr. Guenther to testify at trial in this case. *Kirk*, 61 F.3d at 165.

6

The report should also be excluded because it not relevant to any issue pending in the current case. An expert report merely sets forth the **opinions** of one individual who is "supposed to testify impartially within the ambit of their expertise." *Kirk*, 61 F.3d at 164; *Pfizer*, 2005 U.S. Dist. LEXIS 20793 at *4. The opinions – not facts – presented by a different expert in a different case have no relevance to the issues in the present case.

The Guenther report would also be highly prejudicial, and that prejudice outweighs any probative value. Fed. R. Evid. 403. The Guenther report addresses infringement of the '337 patent but against a different product, a machine sold by Pollard, under a different claim construction, which can only serve to confuse and mislead the jury in the present case. The likelihood of juror confusion is extraordinarily high because the report addresses the same patent but in a different context. This subtlety will likely be lost on the jury. The fact that the Guenther report also addresses a different accused product will only increase the already high probability that the jury will be confused or misled by this evidence. The Guenther report should be excluded.

     iv.     **Deposition testimony of David Wagoner from the *Interlott v. Pollard Banknote Ltd.* litigation concerning whether the Instant Technologies device infringes the '337 patent**

Scientific Games should be precluded from offering statements made by David Wagoner during his deposition in the *Interlott v. Pollard Banknote Ltd.* litigation. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ (*See, e.g.*, Ex. 34, Wagoner *Pollard* Dep. at 115). ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

7

**REDACTED**

**REDACTED -- Public Version, filed February 2, 2006**

Federal Rule of Evidence 701 regarding "Opinion Testimony by Lay Witnesses"

provides:

> If the witness is not testifying as an expert, the witness' testimony
> in the form of opinions or inferences is limited to those opinions or
> inferences which are (a) rationally based on the perception of the
> witness, and (b) helpful to a clear understanding of the witness'
> testimony or the determination of a fact in issue, and (c) not based
> on scientific, technical, or other specialized knowledge within the
> scope of Rule 702.

Fed. R. Evid. 701.

Mr. Wagoner's prior testimony ████████████████████████████████

████████████████████ was not testimony providing factual evidence. ████████████

████████████████████████████████████████████████████

However, that testimony was not rationally based on the perception of the witness as required by

Rule 701. ████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

His testimony should therefore be precluded under Rule 701.

Mr. Wagoner's testimony should also be excluded because it is hearsay. The present case

is similar to *Digene Corp. v. Ventana Med. Sys.*, 316 F. Supp. 2d 174, 181 n.6 (D. Del. 2004). In

8

**REDACTED**

REDACTED -- Public Version, filed February 2, 2006

that case, a deposition designation was precluded on the grounds of hearsay because the declarant lacked personal knowledge of the matter about which she testified. ████████████

████████████████████████████████████████████████████████

████████████████████████ Thus, Mr. Wagoner could not have any personal knowledge of whether or nor ████████████████████████████████████████████

████████ In such a circumstance, Mr. Wagoner lacked personal knowledge and thus the statement is hearsay and excludable. *See Digene*, 316 F. Supp. 2d at 181 n.6.

**C.    Indefiniteness**

Scientific Games has indicated it intends to assert a claim that asserted claim 18 of U.S. Patent 5,222,624 ("the '624 patent) is invalid under 35 U.S.C. § 112 for indefiniteness on a single specific ground: that under 35 U.S.C. § 112, ¶2, claim 18 is indefinite if the structure corresponding to the "means for dispensing" element of claim 18 of the '624 patent is not construed to include the feeding and bursting mechanism disclosed in the '337 patent.  (*See* D.I. 175, *Proposed Joint Pre-Trial Order* at Tab 9 (Scientific Games' Statement of Intended Proofs) at ¶ 3; *see also* Ex. 36, *Scientific Games Supplemental Responses to Plaintiff's Interrogatories Nos. 2 and 7*, at 17; Ex. 16, *Opening Expert Report of Michael Keefe*, at ¶73).  Scientific Games has also submitted a proposed jury instruction on indefiniteness, which GTECH has opposed. (*See* D.I. 175, at Tab 6 (Preliminary Jury Instructions).)

The issue of whether claim language is indefinite is an issue of law for the Court.  *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) ("Indefiniteness ... like claim construction, is a question of law that we review de novo.")  "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's

9

**REDACTED**

performance of its duty as the construer of patent claims." *Personalized Media Communications, LLC v. U.S. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998).

The alleged indefiniteness in claim 18 centers on the construction of a "means-plus-function" claim element, the "means for dispensing." "Means-plus-function" elements can be found indefinite if there is no corresponding structure for the element in the specification. *Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc.*, 336 F.3d 1308, 1319 (Fed. Cir. 2003). However, identifying the corresponding structure is part of the Court's task in construing a "means-plus-function" claim element. *Id.* at 1319. In *Intellectual Property*, once the Federal Circuit correctly identified the corresponding structure, the issue of indefiniteness was completely resolved; accordingly it reversed the district court's decision rather than remanding it. *Id.* at 1320 n.10. Similarly, here, the Court's resolution of the correct interpretation of the "means for dispensing" will necessarily include the identification of corresponding structure in the specification. This will completely resolve any question of whether the "means for dispensing" element is indefinite for lacking a corresponding structure.

Because Scientific Games' claim of indefiniteness here will be completely resolved by the Court's claim construction, their proposed jury instruction, and any arguments, evidence, and testimony Scientific Games proffers on the issue of indefiniteness are irrelevant to any issue of fact which the jury needs to resolve in this case, and should be precluded. *See* F.R.E. 401.

**D.    Inventorship**

Incorrect inventorship is a ground for finding a patent invalid under 35 U.S.C. 102(f). *Trovan Ltd. v. Sokymat, SA*, 299 F.3d 1292, 1301 (Fed. Cir. 2002). The named inventors on an issued patent are presumed correct. *Id.* A party challenging the correctness of the named

inventors has the burden to prove incorrect inventorship by clear and convincing evidence. *Id.*

Scientific Games did not raise incorrect inventorship as a defense in this case. Scientific Games' pleadings make only a general statement that the patents in suit are invalid under 35 U.S.C. § 102. *See* D.I. 6 at ¶24. When GTECH asked Scientific Games during discovery what Scientific Games' bases for its invalidity claims were, inventorship was not asserted, nor even referenced. (Ex. 36, *Scientific Games' Supplemental Responses To Plaintiff's Interrogatories Nos. 2 and 7* at 11-13 (invalidity contentions for '337 patent claim 20), 15-17 (invalidity contentions for '624 patent claim 18)). Scientific Games also offered no discussion or opinion from its experts concerning any allegation of incorrect inventorship for either of the patents-in-suit. (*See generally*, Ex. 16, *Opening Expert Report of Michael Keefe Ph.D., P.E*, at 18-25 (invalidity conclusions); Ex. 17, *Opening Expert Report of Brad A. Myers, Ph.D.,* at 11-13 (invalidity conclusions)). Finally, incorrect inventorship has not been identified as one of Scientific Games' intended proofs in the Proposed Joint PreTrial Order. *See* D.I. 175 at Tab 9, ¶2-3 (identifying only intended proofs of anticipation, obviousness, and indefiniteness). Thus, incorrect inventorship is not at issue as a claim or affirmative defense in this case.

Because incorrect inventorship is not a claim or affirmative defense in this case, evidence and argument about any alleged incorrect inventorship is irrelevant. Therefore, Scientific Games should be precluded from eliciting testimony, presenting evidence, or arguing that the named inventors listed on the face of the patents-in-suit are allegedly incorrect, or that others should have been named as inventors.

### E.    Inequitable conduct

A claim of patent unenforceability based on inequitable conduct, like fraud, must be pled

11

with particularity. *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327,

1343-44 (Fed. Cir. 2003); Fed. R. Civ. P. 9(b). As with inventorship, Scientific Games has not

pled inequitable conduct as a defense or counterclaim in this lawsuit. *See generally*, D.I. 6.

Inequitable conduct is also not one of Scientific Games' intended proofs at trial. (*See* D.I. 175 at

Tab 9).

     Absent a properly pled inequitable conduct claim or defense, argument or evidence

related to alleged irregularities in the prosecution are irrelevant and should be excluded to

prevent unfair prejudice. *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997)

(holding that allowing evidence and argument about alleged "prosecution irregularities" to be

presented to the jury was reversible error). "Absent proof of inequitable conduct, the examiner's

or the applicant's absolute compliance with the internal rules of patent examination becomes

irrelevant after the patent has issued." *Norian Corp. v. Struker Corp.*, 363 F.3d 1321, 1329

(Fed. Cir. 2004); *accord Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 2005 U.S. Dist. LEXIS 33393 at *28-

29 (December 16, 2005 D. Del. 2005) (Farnan, J.) (Ex. 37) .

     Testimony or evidence concerning the inventors' knowledge of references that were not

cited to the PTO is therefore irrelevant and not probative of any issue in the case. *See* Fed. R.

Evid. 401, 402. At the same time, such testimony or evidence is highly prejudicial to GTECH

because it improperly puts in the jury's mind an insinuation concerning the propriety of the

patent's issuance. If there were a viable assertion concerning an inventor's failure to disclose

material, non-cumulative references to the PTO, Scientific Games could have, and should have

pled it, with specificity, so that GTECH could prepare to defend against such a charge. Given the

absence of any pleading by Scientific Games to that effect, GTECH would be prejudiced by the

**REDACTED -- Public Version, filed February 2, 2006**

insinuation. Accordingly, any attempt to elicit testimony or other evidence on this issue by Scientific Games should be precluded because it is irrelevant and prejudicial.

## CONCLUSION

For the foregoing reasons, the Court should grant GTECH's motion *in limine* to preclude Defendants from offering or entering into evidence the documents or evidence discussed above, or any testimony concerning them.

Respectfully submitted,

Dated: January 24, 2006

By: _____

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

13

REDACTED -- Public Version, filed February 2, 2006

TAB 8

REDACTED -- Public Version, filed February 2, 2006

OPENING BRIEF IN SUPPORT OF
GTECH'S MOTION *IN LIMINE* NO. 8:

TO PRECLUDE SCIENTIFIC GAMES FROM OFFERING
COLOR PHOTOGRAPHS OF THE IOWA PAT

\*    \*    \*

GTECH hereby moves *in limine* to preclude Scientific Games from offering color

photographs of (purportedly) the Iowa PAT machine.

An element of Scientific Games' invalidity case with regard to the '624 patent is what

was allegedly displayed on the screen of its Iowa PAT machine. During fact discovery, Scientific

Games produced to GTECH a black and white copy of what Scientific Games alleges to be a

photograph of the Iowa PAT (SGI 104830, Ex. 38). The detail as to what was displayed on the

screen is obviously illegible and undecipherable. Scientific Games did not produce a color copy

of that photograph or a duplicate photograph to GTECH during fact discovery, notwithstanding

GTECH's request for **all** documents concerning the PAT. (*See* Ex. 39, Scientific Games'

Responses to Plaintiff's Second Set of Requests for Production of Documents and Things (Nos.

82-91), April 15, 2005, at Response to Request 82).

GTECH conducted discovery unaware that the original color photograph from which the

black and white photocopy was taken was in Scientific Games' possession. This included taking

the depositions of Mark Hoffman and William Behm, the two Scientific Games employees

Scientific Games identified as having knowledge of the Iowa PAT.

**REDACTED -- Public Version, filed February 2, 2006**

While Scientific Games forced GTECH and its experts to work with the illegible black and white photograph, Scientific Games used a color photograph in working with its own experts. Scientific Games' expert Brad Myers testified as follows:



(Ex. 40, Myers Dep. at 114:6-115:117).

After that deposition, GTECH requested to inspect the original of SGI 104830, which Scientific Games subsequently produced as SGI 104830A (Ex. 41). As a comparison of the

**REDACTED**

produced document and the photograph show, the differences between them are so significant that they could, and should, be considered as different documents, the latter of which was withheld from GTECH during the entirety of fact discovery, notwithstanding that Scientific Games had it in its possession all the while. (*Compare* Ex. 38 to Ex. 41).

GTECH was prejudiced by this withholding because it was unable to use this exhibit during depositions or in preparing expert reports. GTECH was precluded from questioning Messrs. Behm and Hoffman, the only two persons identified as having knowledge of the machine allegedly depicted in the photograph, specific questions about the machine based on details shown in the color photograph. Accordingly, Scientific Games should be precluded from using the color photographs (DTX 101, SGI 104830A or any color copies of SGI 104830, *e.g.* Ex. 42, Defendants' Dep. Ex. 123) at trial.

Respectfully submitted,

Dated: January 24, 2006        By: _____

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

3

**REDACTED -- Public Version, filed February 2, 2006**

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

4

REDACTED -- Public Version, filed February 2, 2006

<u>**CERTIFICATE OF SERVICE**</u>

I, Andrew A. Lundgren, hereby certify that on January 24, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld Esquire
>Morris Nichols Arsht & Tunnell
>1201 North Market Street
>Wilmington, DE 19801

I further certify that on January 24, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>_____
>Josy W. Ingersoll (#1088)
>John W. Shaw (#3362)
>Andrew A. Lundgren (#4429)
>The Brandywine Building
>1000 West Street, 17th Floor
>P.O. Box 391
>Wilmington, Delaware 19899-0391
>(302) 571-6600
>alundgren@ycst.com
>
>*Attorneys for GTECH Corporation*

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, hereby certify that on February 2, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> Wilmington, DE 19801

I further certify that on February 2, 2006, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record.

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _____
> Josy W. Ingersoll (#1088)
> John W. Shaw (#3362)
> Andrew A. Lundgren (#4429)
> The Brandywine Building
> 1000 West Street, 17th Floor
> P.O. Box 391
> Wilmington, Delaware 19899-0391
> (302) 571-6600
> alundgren@ycst.com
>
> *Attorneys for GTECH Corporation*