IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GTECH CORPORATION,<br><br>                Plaintiff,<br><br>v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC., SCIENTIFIC GAMES HOLDINGS CORPORATION, SCIENTIFIC GAMES FINANCE CORPORATION, and SCIENTIFIC GAMES CORPORATION,<br><br>                Defendants. | Civil Action No. 04-138-JJF<br><br>PUBLIC VERSION filed<br>February 9, 2006 |

## GTECH'S OPPOSITION TO SCIENTIFIC GAMES' MOTION *IN LIMINE* NO. 2 TO PRECLUDE GTECH FROM PRESENTING EXPERT TESTIMONY FROM JOSEPH PERIN CONCERNING THE DUTY OF DUE CARE

Dated: February 2, 2006

Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201
*Attorneys for Plaintiff GTECH Corp.*

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John W. Shaw (#3362)
Karen E. Keller (#4489)
Andrew A. Lundgren (#4429)
1000 West Street, 17th Floor
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
alundgren@ycst.com

I.  **INTRODUCTION**

Scientific Games seeks to preclude GTECH from offering testimony from its expert, Joseph C. Perin, Jr., P.E., concerning the duty of due care. Scientific Games' motion should be denied because Mr. Perin qualifies as an expert under Fed. R. Evid. 702 to provide expert testimony concerning Scientific Games' actions upon learning of the patents-in-suit and the standard of reasonable care in the same circumstances.

II. **BACKGROUND**

**REDACTED**

Scientific Games did not receive appropriate clearance or any opinion from patent counsel about the patents-in-suit upon learning of them or prior to commencement of infringing activity, *i.e.* the launching of its PlayCentral ITVM.

Scientific Games' contends that it exercised "due care" upon learning of the patents and in commencing infringing activity.

**REDACTED**

There is no evidence that the individuals involved in deciding to launch the PlayCentral ever consulted with Mr. Bartolone or Mr. Behm about patents-in-suit at that time.

In light of this background, GTECH proposes to offer the testimony of Mr. Perin to render an expert opinion on the standard for what a reasonable engineer in the position of Messrs. Behm and Bartolone would be expected to do in similar circumstances. Mr. Perin also proposes to offer expert testimony based upon that standard as to whether Scientific Games' response to learning of the patents-in-suit was reasonable.[1] This testimony is explained in Mr. Perin's expert report. (*See* Ex. C, Perin Opening Expert Report at ¶¶ 244-259).

Mr. Perin is an engineer himself, as well as a licensed Professional Engineer, and has worked continuously in engineering roles similar to that of Mr. Bartolone and/or Mr. Behm since

---

[1] As discussed in GTECH's opposition to Scientific Games' Motion *in limine* No.1 , GTECH does not seek to offer testimony from Mr. Perin concerning Scientific Games'             However, GTECH does intend to elicit testimony that Scientific Games did not consult counsel or obtain an opinion of counsel upon learning of the patents-in-suit and launching the PlayCentral.

1983. A copy of Mr. Perin's *curriculum vitae* is attached as Exhibit D. Mr. Perin has experience in dealing with the issue of how to respond to a patent when it comes to a company's attention through an engineer or employee and what the typical, reasonable standard is in such circumstances.

**REDACTED**

Mr. Perin gained experience with how reasonable, prudent engineers handled such situations.[2]

### III.   ARGUMENT

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 explicitly indicates that a witness can be qualified as an expert under Rule 702 based on "specialized knowledge" gained through "knowledge" or "experience." *Id.* Even the cases cited by Scientific Games in their brief confirm as much. *See, e.g., Aloe Coal*

*Co. v. Clark Equip Co.*, 816 F.2d 110, 114 (3d Cir. 1987) ("An expert witness must have such skill, **knowledge, or experience** in the field as to make it appear that his opinion will probably aid the trier of fact in his search for the truth.") (citations omitted) (emphasis added).

"[T]here is no set litmus test to qualify as an expert." *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 653 (3d Cir. 1982) (holding that an engineer, whose only qualifications were sales experience in the field of automotive and agricultural equipment and teaching high school automobile repair, nevertheless could testify in a products liability action involving tractors). Further, there is a "liberal policy of permitting expert testimony which will 'probably aid' the trier of fact." *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87 (3d Cir. 1979); *In re Paoli*, 35 F.3d 717, 741 (3d Cir. 1994) (holding that an expert could testify that unguarded elevator buttons constituted a design defect despite expert's lack of specific background in design and manufacture of elevators). Rule 702 mandates a policy of liberal admissibility, both with respect to the substantive as well as the formal qualifications of experts. *Id.*

As described above, Mr. Perin possesses the "knowledge" and "experience" to qualify him as having "specialized knowledge" on the issue of what the standard of reasonable conduct would have been for a reasonable engineer in the same circumstances as Mr. Behm and Bartolone upon learning of the patents-in-suit. Further, as this District has previously recognized, the type of testimony Mr. Perin proposes to offer is relevant and helpful to the jury:

> "The issue of 'willful' infringement measures the infringing behavior, in the circumstances in which the infringer acted, against an objective standard of reasonable commercial behavior in the same circumstances." *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir 1996). Therefore, [the expert's] opinion on that point is directly relevant to the issue of reasonable corporate behavior and her testimony will provide the jury with a frame of reference upon which to base its conclusions about [the defendant's] behavior.

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 (D. Del. 2004) (allowing expert testimony of witness on the standard of behavior when a corporation is confronted with an allegation of infringement and the reasonableness of the accused infringer's response as measured against that standard). Further, Mr. Perin should be permitted to testify and offer his expert opinion regarding the reasonableness of Scientific Games' actions, and inaction, in light of the standard:

> It is certainly not unprecedented to allow an expert to testify regarding the reasonableness of an alleged infringer's response to an accusation of patent infringement. For example, in *In re Hayes Microcomputer Prods., Inc. Patent Litigation*, an expert was permitted to opine on whether an opinion letter provided the defendant 'a reasonable basis for believing in good faith that the '302 patent was invalid.' The expert's testimony was part of the evidence considered by the jury in its finding of willful infringement.

*Oxford Gene*, 345 F. Supp. 2d at n.8 (internal citations omitted).

Scientific Games' argument that Mr. Perin's background, education and experience do not qualify him to testify as an expert under Fed. R. Evid. 702 should be rejected as a basis to preclude the **admissibility** of his testimony, but rather should be directed to the **weight** of it:

> Mergen's argument that Ms. Copperthite's education and personal experience do not qualify her as an expert may be appropriate fuel for "vigorous cross-examination" and "presentation of contrary evidence," but those arguments are more appropriately directed to the weight of her testimony, rather than its admissibility. . . . Her reasoning on the standard of reasonable commercial behavior, whether one agrees with it or not, is straightforward and relevant.

*Oxford Gene*, 345 F. Supp. 2d at 443; *see also Knight*, 596 F.2d at 88.

## III. CONCLUSION

For the above reasons, GTECH respectfully requests that the Court deny Scientific Games' motion *in limine* to preclude GTECH from presenting expert testimony from Joseph Perin concerning the duty of due care.

Respectfully submitted,

Dated: February 2, 2006

By: /s/ Andrew A. Lundgren

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Karen Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
alundgren@ycst.com

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH Corporation*

# EXHIBIT A

**CONFIDENTIAL EXHIBIT REMOVED**

# EXHIBIT B

**CONFIDENTIAL EXHIBIT REMOVED**

# EXHIBIT C

# CONFIDENTIAL EXHIBIT REMOVED

# EXHIBIT D

**JOSEPH C. PERIN, JR., P.E.**
9781 COOPER WOODS CT.
CINCINNATI, OH 45241
H#513.984.8887
JOSEPH.PERIN@FUSE.NET

**EXPERIENCE**
**2004-PRESENT**
    HARRIS CORP., BROADCAST COMMUNICATIONS DIV., MASON, OH.
    SOFTWARE ENGINEER, PRODUCT DEVELOPMENT, NETWORKING GROUP.
    Responsible for resolving existing defects and refining feature set of the Shelf Control Module (SCM-1) which provides SNMP agent support for the Intraplex family of T1/E1 data transmission products. Product is a multi-tasking PowerPC-based card sporting an Ethernet port that allows secure access and control via Web browser, Telnet session, SNMP Manager, and/or IntraGuideIP Host.

**1995-2004**   GTECH CORP./INTERLOTT TECHNOLOGIES, INC., MASON, OH.
    SEPT. 2003-OCT. 2004, SR. SOFTWARE ENGINEER, GTECH
    <<<GTECH ACQUIRES INTERLOTT 09/18/2003>>>
    DEC. 2000-SEPT. 2003, SOFTWARE ENGINEERING MANAGER, INTERLOTT
    DEC. 1995-DEC. 2000, DIRECTOR OF ENGINEERING, INTERLOTT
    SEPT. 1995-DEC. 1995, ENGINEERING PROJECT MANAGER, INTERLOTT
    Maintained dual roles on small engineering staff serving as both a principal technical contributor and technical manager (project, program, and staff).
    <u>Departmental management</u>. Assign personnel to projects/tasks, monitor and review performance, advise administration regarding progress and estimated completion dates. Evaluate departmental needs as regard tools and personnel, weighing resource requirements against budgetary constraints. Procure and integrate new resources into departmental workflow.
    <u>Contract management</u>. When departmental workload assumes proportions that overwhelm internal resources, assign tasks to technical contractors, monitor and review performance, and test and integrate contractor output.
    <u>Project management</u>. Formulate and administer technical development plan to move project from concept to completion. Guided multiple models through standards compliance testing (FCC, UL, CSA, CUL, CE).
    <u>Technical unit contributor</u>. Complete technical duties as member of project team.
    <u>Product maintenance</u>. Support Production and Field Service with Engineering support as required.
    <u>Product/Project advisory function</u>. When Sales is presented with new opportunities and new markets which they feel can be attacked only by new products or variants of current products, outline technical options for Sales and Administration, estimating technical difficulty of and resource requirements for each. Conversely, if Engineering, independent of Sales/Administration, recognizes a potential opportunity, issue new product/project proposal to Sales/Administration.

<u>GTECH/Interlott Highlights:</u>

- VuLink. Led "connectivity" project endowing Interlott ITVMs with ability to communicate with GTECH on-line lottery terminals and central system.
- ACS. Led "connectivity" project endowing Interlott ITVMs with ability to communicate with Interlott host by way of dial-up.
- SmartLoad/SmartLoadPlus. Developed integrated, scanner-capable, table-driven load feature.
- ParallelLinePrinterController PCB. HW/SW, retention of backward compatibility.
- Peripherals. Highly familiar with wide range of vending equipment peripherals including bill acceptors, coin acceptors, character/graphic displays, modems, printers, scanners, motors, encoders, sensors, etc.
- SCDM. Smart Card Dispensing Machine development team leader.

**1990-1995 RONAN ENGINEERING CO./MEASUREMENTS DIV., FLORENCE, KY.**
**PROJECT ENGINEER.** Principal engineer, analog/digital circuit design, software development for industrial instrumentation and control equipment OEM. Projects incorporated both Intel and Motorola family microcontrollers and CPLDs to perform embedded sensing, computation, control, and communications functions. Developed PC-based firmware for use in in-house production/assembly test beds. Developed new product proposals outlining preliminary specifications and projected resource requirements. Identified, qualified, approved, and procured engineering design/analysis tools and lab test instrumentation. Prepared budgets, cost estimates, and amortization schedules for same. Assist in Novell network management and administration functions. Aided in development of formal procedures for design specification, review, and release in preparation for ISO 9000 registration.

**1987-1990 THE OHMART CORP., CINCINNATI, OH.**
**ELECTRONIC DESIGN ENGINEER, INSTRUMENTS GROUP.**
Analog/digital circuit design/analysis. Project responsibility for "sensor" clusters incorporating a variety of transducers (temperature, light, radiation). Firmware development for MCS-51-based smart sensors. Developed variety of test fixtures for use by manufacturing to qualify products. Served as engineering liaison on interdepartmental "concurrent engineering" team formed to better move new product from development to market.

**1984-1986 GENERAL ELECTRIC CORP./AEBG, EVENDALE, OH.**
**ENGINEERING CO-OP, COMMERCIAL COMBUSTION DESIGN.**
Conducted design studies of critical ignition system components using electromagnetic FEA tools, thus detecting problem regions and proposing design improvements. Reviewed vendor requests for design and manufacturing changes, submitting recommendations (accept/reject) and bases for such. A method to improve energy transfer efficiency of ignition systems resulted in first patent. Sponsored by GE to attend VAX/VMS and DSP training seminars.

**1983-1984 STELLAR SYSTEMS, INC., CINCINNATI, OH.**
    **ENGINEERING CO-OP.** Fabricated prototype of SSI's i8096 In-Circuit Emulator. Developed assembly language code for various test fixtures. Assisted in layout of multi-layer through-hole and surface mount PCBs.

**EDUCATION**   1988-9   Graduate courses, College of Engineering, University of Cincinnati
                1987     B.S.E.E., College of Engineering, University of Cincinnati
                1982     B.S. Marketing, Northern Kentucky University

**PATENTS**     6,356,794   Item Dispensing System Network
                6,351,688   Item Dispensing System
                6,038,492   Item Dispensing System
                5,943,241   Item Dispensing System
                5,166,477   Cable & Termination for High Voltage & High Frequency Apps

**PROFESSIONAL SOCIETIES**
P.E., Ohio State Board of Registration for Professional Engineers
Senior Member, Institute of Electrical and Electronics Engineers
Member, Computer Society, Institute of Electrical and Electronics Engineers

**TOOLKIT**
Programming Languages: C/C++, VB, ASM
Scripting Tools: VBA, VisualDialog
Debuggers/Simulators
Version Control: MKS Source Integrity, MS Visual Source Safe, WinCVS
PCB Design: Protel, Orcad, Pads
Instrumentation: ICE, Logic Analyzer, Line Monitor, O-Scope, Spectrum Analyzer
Project Management: MS Project
Data Base: MS Access

**REFERENCES**   Available upon request

...End of resume...

# EXHIBIT E

**CONFIDENTIAL EXHIBIT REMOVED**