# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GTECH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-138-JJF |
| | ) | |
| v. | ) | |
| | ) | PUBLIC VERSION filed |
| SCIENTIFIC GAMES INTERNATIONAL, INC., | ) | February 9, 2006 |
| SCIENTIFIC GAMES HOLDINGS | ) | |
| CORPORATION, SCIENTIFIC GAMES | ) | |
| FINANCE CORPORATION, and SCIENTIFIC | ) | |
| GAMES CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## GTECH'S OPPOSITION TO SCIENTIFIC GAMES'
## MOTION *IN LIMINE* NO. 3
## TO PRECLUDE GTECH FROM PRESENTING
## EVIDENCE CONCERNING MARKING

Dated: February 2, 2006

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH
Corporation*

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Karen Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
alundgren@ycst.com

Scientific Games' motion to preclude GTECH from offering evidence concerning marking should be denied.

Scientific Games for years has had, and continues to have, thousands of GTECH machines in its possession – machines which have on them patent labels with the relevant patent numbers on them. Thus, Scientific Games knows, and Scientific Games has long had the evidence establishing, that GTECH has complied with the patent marking statute.

In this litigation, GTECH diligently complied with its discovery obligations, identifying Mr. Roberts as knowledgeable about GTECH's machines and producing requested documents. Scientific Games deposed Mr. Roberts but **never** questioned him about marking. Scientific Games never asked to inspect GTECH's machines, presumably because Scientific Games already had thousands of those machines in its possession, with the very same patent labels on them that GTECH intends to offer through Mr. Roberts at trial.

## STATEMENT OF FACTS

Scientific Games has owned and operated thousands of instant ticket vending machines ("ITVMs") of GTECH and GTECH's predecessors Interlott Technologies, Inc. ("Interlott") and OnPoint Technologies ("OnPoint").

**REDACTED**

**REDACTED**

During the time period relevant to this litigation, since at least the beginning of 2002 through the present, all of GTECH, Interlott and OnPoint ITVMs have consistently been marked with labels having the pertinent patent numbers on them. (*See* D.I. 155 (Roberts Decl.) at paras. 15-16; D.I. 153 (Zimmer Decl.) at paras. 15-16). Scientific Games has had access to these labels, and thus the proof of patent marking, through its ownership and operation of thousands of GTECH, Interlott and OnPoint ITVMs.

In this litigation, in GTECH's Initial Disclosures, GTECH identified Brian Roberts as a person having knowledge regarding "Current GTECH ticket dispensing products" (ITVMs). (*See* Ex. H (GTECH's Initial Disclosures, August 13, 2004)). During fact discovery, GTECH produced documents evidencing patent marking, specifically parts lists for ITVMs listing "LABEL, PATENT." (*See* D.I. 155 (Roberts Decl.) at Ex. E (p. INLO-009246), Ex. I (p. INLO-010169), Ex. L (p. INLO-074862) and Ex. Q (p. INLO-012308)). GTECH also produced an electronic image of at least one patent label. (*See* D.I. 155 (Roberts Decl.) at Ex. R2 (p. GTECH-E 2730)).

During fact discovery, Scientific Games never issued a document request specific to marking, never asked an interrogatory specific to marking, and never noticed a Rule 30(b)(6)

---

[1] In November 2003, Scientific Games acquired IGT OnLine Entertainment Systems, Inc., and, with it, ownership of the Interlott machines in Pennsylvania.

topic on marking.  Scientific Games never questioned any witness about the patent marking documents that GTECH had produced.  Moreover, Scientific Games never questioned Mr. Roberts about marking at his May 6, 2005 deposition.

In June 2005, at the end of fact discovery, Scientific Games briefly questioned two GTECH witnesses about marking, George Voutes and Patrick Costaregni.  Contrary to Scientific Games' representations, neither Mr. Voutes nor Mr. Costaregni was a Rule 30(b)(6) witness on patent marking (indeed, Scientific Games never asked for a Rule 30(b)(6) witness on patent marking).

**REDACTED**

Scientific Games never followed up on this testimony by asking for a witness knowledgeable about marking or, more importantly, by asking to inspect the machines.  If it had, GTECH would have accommodated the request.  As it stood, however, there was no need, as Scientific Games already had possession of thousands of GTECH machines and, consequently, the evidence of marking.

Months later, on September 16, 2005, Scientific Games **for the first time** indicated its allegation that GTECH could not prove marking, in its damages expert's report.  On November 14, 2005, Scientific Games filed a summary judgment motion including the same allegation. (D.I. 130).  In GTECH's response, GTECH submitted declarations from Mr. Roberts and Mr. Richard Zimmer.  The declaration of Mr. Roberts attached patent marking documents that GTECH had produced during discovery, along with pictures that had been taken of various machines.  (D.I. 153; D.I. 155).

In Scientific Games' summary judgment reply brief, even though Scientific Games has thousands of GTECH machines in its possession, Scientific Games presented **no** evidence that

GTECH had failed to comply with the patent marking statute. Because GTECH's evidence of patent marking is uncontroverted, GTECH requested that summary judgment on the issue be granted in GTECH's favor. (D.I. 149).

**ARGUMENT**

A court should consider the following factors in determining if a witness or evidence should be excluded:

> (1) the prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance.

*Great Bay Hotel & Casino v. Tose*, 34 F.3d 1227, 1236 (3d Cir. 1994).

In its motion, Scientific Games seeks to exclude the following:

> (1)  testimony from Mr. Roberts;

> (2)  exhibits on marking allegedly not produced during discovery; and

> (3)  testimony from Mr. Zimmer.

(D.I. 185 at 5).

GTECH addresses each of these separately.

**A.     Testimony from Mr. Roberts**

GTECH identified Mr. Roberts in initial disclosures as a person knowledgeable about GTECH's machines. Scientific Games deposed Mr. Roberts but did not question him about marking of the machines. Scientific Games complains that GTECH did not identify him as a witness specifically knowledgeable about "marking," but Scientific Games never requested a witness to testify specifically about "marking." GTECH identified Mr. Roberts as knowledgeable about the machines, and Scientific Games had the opportunity to question him about the labels and patent markings on the machines. Because GTECH identified Mr. Roberts

and Scientific Games had the opportunity to depose him, there is no prejudice to Scientific

Games if Mr. Roberts testifies at trial.  By contrast, there is extreme prejudice to GTECH if he is

prevented from testifying.  Accordingly, Scientific Games' request to preclude Mr. Roberts from

testifying should be denied.

**B.     Exhibits On Marking Allegedly Not Produced During Discovery**

In its brief, Scientific Games asserts, "During fact discovery, GTECH … did not produce

any documents demonstrating marking of any products with the numbers of the patents in suit."

(D.I. 185 at 3).  That assertion is simply wrong.  GTECH produced documents evidencing

marking during fact discovery, including the documents identified on GTECH's exhibit list as

PTX 476, PTX 477, PTX 478, PTX 479, PTX 658, PTX 659, PTX 661 and PTX 662.  (D.I. 175

at Ex. 12).

There is only one patent marking exhibit on GTECH's exhibit list that even arguably was

not produced during fact discovery, but that exhibit (PTX 475, D.I. 175 at Ex. 12) is simply a set

of photographs of actual, physical ITVMs.  The photographs did not exist during fact discovery,

as they were taken only after Scientific Games disputed marking.  However, the underlying

machines from which the photographs were taken are duplicative of the actual machines in

Scientific Games' own possession, custody and control.  Thus, Scientific Games has had access

to this same evidence during all of fact discovery.

Under the standard set forth in *Greate Bay*, the photographs of the actual machines

should not be precluded.  There is no prejudice or surprise to Scientific Games, as thousands of

the actual machines have been and still are in Scientific Games' own possession.  Moreover,

Scientific Games never asked to inspect machines in GTECH's possession.  By contrast, the

preclusion of this evidence would be highly prejudicial to GTECH.

### C.     Testimony from Mr. Zimmer

Frankly, GTECH had not expected that patent marking would be an issue at all, because both parties know well that GTECH has complied with the marking statute. Scientific Games did not make an issue of patent marking during fact discovery. However, when Scientific Games indicated in its rebuttal damages expert report and summary judgment motion that it would dispute GTECH's ability to prove marking, GTECH identified Mr. Zimmer nearly two months ago as a witness for trial on the issue. GTECH represented that Mr. Zimmer's trial testimony would be limited to the patent marking facts set forth in his summary judgment declaration. Because Mr. Zimmer had not been deposed, GTECH offered to make Mr. Zimmer available for a deposition. GTECH's counsel wrote:

> If the issue of patent marking is an issue that Scientific Games intends to dispute at trial, then GTECH intends to call Richard Zimmer as a witness. The subject matter of Mr. Zimmer's testimony would be patent marking by Interlott and GTECH, which is addressed in Mr. Zimmer's declaration submitted with GTECH's summary judgment answer brief.
>
> Please let us know whether patent marking is an issue that Scientific Games intends to dispute at trial. If so, we are willing to make Mr. Zimmer available for a short deposition.

(*See* Ex. I (e-mail dated December 5, 2005)).

Mr. Zimmer had been identified previously, during fact discovery.

**REDACTED**

-6-

**REDACTED**

Scientific Games never followed up on this testimony with a request for testimony from Mr. Zimmer or from anyone else on marking.

Applying the *Greate Bay* factors, there is no prejudice or surprise to Scientific Games. Mr. Zimmer was identified during fact discovery, and, in any event, his testimony is about machines which are in Scientific Games' own possession. Even if the fact that Scientific Games has not deposed Mr. Zimmer were prejudicial, that is easily cured, as GTECH two months ago offered Mr. Zimmer for a deposition. There is no bad faith on GTECH's part, as GTECH simply did not expect Scientific Games to dispute the marking issue, on which there can be no legitimate dispute.

## **CONCLUSION**

For the above reasons, GTECH respectfully requests that the Court deny Scientific

Games' motion *in limine* no. 3 to preclude GTECH from presenting evidence and testimony

concerning marking.

Respectfully submitted,

Dated: February 2, 2006          By:   _____

YOUNG, CONAWAY, STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (#1088)
John Shaw (#3362)
Karen Keller (#4489)
Andrew A. Lundgren (#4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19889
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
alundgren@ycst.com

*Of Counsel:*
Thomas J. Meloro
Larissa A. Soccoli
Andrew Reibman
KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

Douglas E. Ringel
KENYON & KENYON LLP
1500 K Street NW
Washington, DC 20005
Telephone: (202) 220-4200
Facsimile: (202) 220-4201

*Attorneys for Plaintiff GTECH
Corporation*

-8-

# EXHIBIT A

# CONFIDENTIAL EXHIBIT REMOVED

# EXHIBIT B

# CONFIDENTIAL EXHIBIT REMOVED

# EXHIBIT C





# GEORGIA

**GEORGIA**

**Contact Names:**
Ms. Rebecca Paul, President and CEO

The Georgia Lottery
250 Williams Street • Suite 3000
Atlanta, GA 30303
(404) 215-5000

**Population of Georgia: 8,186,453**

**Contract Terms:**
Lease/extent of contract
• Renewed through May 2003
• Original award May 1993; Interact is the subcontractor

**Machines Currently Installed: 500**

**Models:**
TT8 5000, TT8 6000

**Contractual Obligation and Scope:**
Interact's responsibilities include field maintenance and all related services through Scientific Games. As the subcontractor, Interact has also been responsible for
• Manufacturing
• Delivery and installation
• Training of the Lottery personnel, Scientific Games personnel and all retailers
• Preventive maintenance
• Field service and maintenance
• Provide replacement parts
• "800" Rapid Response service line

The Georgia Lottery Corporation sold 4,205,000 tickets via 200 Interlott ITVMs from June 29 through October 31, 1993

# DISTRICT OF COLUMBIA

**DISTRICT OF COLUMBIA**

**Contact Names:**
Ms. Jeannie Mitchell, Executive Director

The D.C. Lottery
2101 Martin Luther King, Jr. Drive
District of Columbia 20020
(202) 645-8000

**Population of D.C.:572,059**

**Contract Terms:**
Standard lease
• Awarded contract for new machines in January 2002
• Originally deployed in 1997
• Open ended contract

**Machines Currently Installed: 86**

**Models:**
TT8 12000, EDS-S 12000, EDS-S 16000

**Contractual Obligation and Scope:**
Interlott is responsible for:
• Manufacturing
• Delivery
• Maintenance
• Provide replacement parts

# COLORADO

**COLORADO**

**Contact Names:**
Mr. Mark Zamarripa, Director

The Colorado Lottery
201 West 8th Street
Pueblo, CO 81003
(303) 759-9819

**Population of Colorado: 4,301,261**

**Contract Terms:**
Standard lease
• Renewed award in April 2000 for refurbished machines
• Additional order for 148 ITVMs
• Renewal for 2 years with 2 one year extensions
• Original award March 1990; initial order for SGI ITVMs

**Machines Currently Installed: 527**

**Models:**
TT8 6000

**Contractual Obligation and Scope:**
Interlott is responsible for:
• Manufacturing
• Delivery and installation
• Training of the Lottery personnel and all retailers
• Field service and maintenance
• Provide replacement parts
• Preventive maintenance
• "800" Rapid Response service line

# CALIFORNIA



**CALIFORNIA**

**Contact Names:**
Ms. Joan M. Wilson, Director

The California Lottery
600 N. 10th Street
Sacramento, CA 95814
(916) 323-7403

**Population of California: 33,900,000**

**Contract Terms:**
Standard lease
• New award July 2001
• Original award 1992

**Machines Currently Installed: 4,166**

**Models:**
EDS-S 16000
ITR 7300, ITR 8500

**Contractual Obligation and Scope:**
Interlott is responsible for:
• Manufacturing
• Delivery and installation
• Provide replacement parts
• Training of the Lottery personnel and all retailers
• Assistance in "tracking the key accounts"
• Production of full color "walk-in" brochure
• "800" Rapid Response service line

After extensive field testing, Interlott Technologies was awarded the contract for 18 games EDS ITVMs based on the reliability and outstanding performance of the test machines. Interlott's ITVMs generated the highest sales of all machines tested.

# ARIZONA



**ARIZONA**

**Contact Names:**
Ms. Kathleen Pushor, Director

The Arizona Lottery
4740 East University Drive
Phoenix, AZ 85034
(602) 921-4400

**Population of Arizona: 5,130,632**

**Contract Terms:**
Standard lease
• New award in 2000 for 100 twelve games
• Award in July 1996; renewed through June 2003
• Original award in October 1993

**Machines Currently Installed: 323**

**Models:**
TT8 10000

**Contractual Obligation and Scope:**
Interlott is responsible for:
• Manufacturing
• Delivery and installation
• Training of the Lottery personnel and all retailers
• Field service and maintenance
• Provide replacement parts
• Preventive maintenance
• "800" Rapid Response service line

The first installment of machines produced an overall average sales increase of more than 40%. During the same time period, retail locations without ITVMs experienced only a 1.5% increase. Since 1993, ITVMs installed in AZ are responsible for over $80,000,000 in instant ticket sales.

**NEW AWARD**

---

Figure 31a: AZ, CA, CO, DC and GA State Contract Histories

©Interlott Technologies, Inc.
Response to Arizona Lottery RFP Solicitation #AL03-015
April, 2003

SGI0024579

ALL GOALS OF FINAL DEPLOYMENT WERE MET OR EXCEEDED WITH EVERY CONTRACT

# EXHIBIT D

# CONFIDENTIAL EXHIBIT REMOVED

# EXHIBIT E

# CONFIDENTIAL EXHIBIT REMOVED

# CONFIDENTIAL EXHIBIT REMOVED

# EXHIBIT F

# CONFIDENTIAL EXHIBIT REMOVED



# CONFIDENTIAL EXHIBIT REMOVED

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GTECH CORPORATION,<br><br>               Plaintiffs,<br><br>          v.<br><br>SCIENTIFIC GAMES INTERNATIONAL, INC.,<br>SCIENTIFIC GAMES HOLDINGS<br>CORPORATION, SCIENTIFIC GAMES<br>FINANCE CORPORATION, and SCIENTIFIC<br>GAMES CORPORATION,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 04-138-JJF |

## PLAINTIFF GTECH'S INITIAL DISCLOSURES
## PURSUANT TO RULE 26(a), FED. R. CIV. P.

     Pursuant to Rule 26(a), Fed. R. Civ. P., plaintiff GTECH Corporation ("GTECH") hereby

provides its Initial Disclosures to defendants Scientific Games International, Inc., Scientific

Games Holdings Corporation, Scientific Games Finance Corporation, and Scientific Games

Corporation (collectively, "Defendants").

     These disclosures are generally limited to topics associated with the issues raised by the

First Amended Complaint on which GTECH bears the burden of proof. GTECH reserves the

right to supplement these disclosures as necessary during the course of discovery. The

information herein is provided without any admission of the relevance or admissibility of

particular information for any specific purpose.

### A.    PERSONS WITH KNOWLEDGE

The individuals who have knowledge of facts supporting GTECH's material allegations

include:

| Name | Category of Information | Address |
|------|------------------------|---------|
| Robert L. Burr | Inventor of '337 and '624 patents | 7515 Charmant Dr. Ste. 1407 San Diego, CA |
| Donald H. Keagle | Inventor of '337 patent | 2018 Hensel Avenue Huntsville, Alabama |
| Alfred L. Fulton | Inventor of '337 patent | 94236 O'Jay Dr. Huntsville, Alabama |
| Laird A. Campbell | Inventor of '337 patent | Rte. 2, Box 223 Laceys Springs, Alabama |
| Persons associated with, or previously associated with Defendants | design, structure, operation, sales, marketing, and profitability of the accused products | unkown |
| Robert Nealon | Current GTECH ticket dispensing products | GTECH Corporation, Interlott Division 7697 Innovation Way Mason, OH |
| Ed Turek | Development of the patented invention | |
| Brian Roberts | Current GTECH ticket dispensing products; Defendants' instant ticket vending machine products. | GTECH Corporation 3559 Ames Place Carlsbad, CA |

Any contact should be through GTECH's counsel, Kenyon & Kenyon, One Broadway,

New York, NY 10004, (212) 425-7200. GTECH reserves the right to supplement and/or amend

the foregoing disclosure of individuals should any additional information become available.

### B.    DESCRIPTION OF DOCUMENTS

Based upon current information, GTECH may use documents within the following categories of documents, data compilations, and tangible things, in support of its claims, to the extent that any such documents exist and are within GTECH's possession, custody, or control. GTECH provides this listing without any concession, agreement, admission, or waiver of any ultimate determination of relevance, admissibility, or discoverability of particular documents or information for any purpose (particularly at this early stage of the case), and without waiver of any attorney-client privilege, work product immunity or any other privilege or immunity.

    a.    The patents-in-suit and the prosecution histories thereof.

    b.    Documents describing GTECH's ticket dispensing machine products and sales and marketing thereof.

    c.    Documents relating to Defendants' instant ticket vending machine products.

Documents are located at GTECH's facilities at 55 Technology Way, West Greenwich, Rhode Island, and at 7697 Innovation Way, Mason, Ohio. GTECH's disclosure is based upon investigation and currently available information. GTECH reserves its right to identify additional categories of documents as additional information becomes available.

### C.    COMPUTATION OF DAMAGES

This section is premature because discovery has not yet begun, and GTECH does not have a complete understanding as to the totality of Defendants' products that infringe the GTECH patents in suit or the income derived by Defendants from its sale of these infringing products.

D.    **INSURANCE AGREEMENTS**

GTECH is not aware of any applicable insurance agreement at this time relevant to the

subject matter of the pleadings.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Dated: August 13, 2004

Josy W. Ingersoll (#1088)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302-571-6600
Facsimile: 302-571-1253

OF COUNSEL:

Thomas J. Meloro
Robert A. Whitman
Andrew L. Reibman
KENYON & KENYON
One Broadway
New York, New York 10004
Telephone: (212) 425-7200
Facsimile: (212) 425-5288

## CERTIFICATE OF SERVICE

I, Josy W. Ingersoll, Esquire, hereby certify that copies of the foregoing document were caused to be served on August 13, 2004 upon the following counsel of record:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

Josy W. Ingersoll



## Ringel, Douglas

| | |
|---|---|
| **From:** | Ringel, Douglas |
| **Sent:** | Monday, December 05, 2005 9:30 AM |
| **To:** | 'Rodger D. Smith' |
| **Subject:** | GTECH v SciGames (patent marking) |

Dear Rodger,

If the issue of patent marking is an issue that Scientific Games intends to dispute at trial, then GTECH intends to call Richard Zimmer as a witness. The subject matter of Mr. Zimmer's testimony would be patent marking by Interlott and GTECH, which is addressed in Mr. Zimmer's declaration submitted with GTECH's summary judgment answer brief.

Please let us know whether patent marking is an issue that Scientific Games intends to dispute at trial. If so, we are willing to make Mr. Zimmer available for a short deposition.

Best regards,

Doug


Douglas E. Ringel, Esq.
Kenyon & Kenyon
1500 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 220-4225
Fax: (202) 220-4201

This message, including any attachments, may contain confidential, attorney-client privileged, attorney work product, or business confidential information, and is only for the use of the intended recipient(s). Any review, use or distribution by others is prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

# EXHIBIT J

# CONFIDENTIAL EXHIBIT REMOVED